**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

VIDEO GAMING TECHNOLOGIES, INC.,

      *Plaintiff*,

   vs.

CASTLE HILL STUDIOS LLC, *et al.*

      *Defendants.*

CASE NO.: 17-CV-00454-GKF-JFJ

---

<u>**DEFENDANTS' OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS
COMPLAINT**</u>

**JAMES C. HODGES, P.C.**
**A Professional Corporation**

James C. Hodges, OBA #4254
2622 East 21st Street, Suite 4
Tulsa OK 74114
(918) 779-7078
(918) 770-9779 facsimile
JHodges@HodgesLC.com

Duane H. Zobrist (admitted *pro hac vice*)
Jonathan S. Jacobs (admitted *pro hac vice*)
Zobrist Law Group, PLLC
1900 Arlington Blvd. Suite B
Charlottesville, VA 22903
434-977-9666
dzobrist@zoblaw.com
jjacobs@zoblaw.com

## Table of Contents

I.      EXHIBITS ......................................................................................................... iii

II.     TABLE OF AUTHORITIES ............................................................................... iv

III.    PRELIMINARY STATEMENT ............................................................................1

IV.     VGT'S ALLEGATIONS .....................................................................................3

V.      ARGUMENT ......................................................................................................6

      A.      Legal standards. ......................................................................................7

            1.      Request for judicial notice of USPTO records ...............................8

      B.      VGT's trademark infringement claims fail.................................................9

            1.      There is no likelihood of confusion because Castle Hill's marks are not similar to VGT's, and the common words and "themes" between them are ubiquitous in the industry. .................................9

            2.      VGT admits its consumers are "sophisticated professionals," unlikely to be confused by any similarities between the marks.....15

      C.      VGT's trade dress claims fail because the "themes" of its games are generic and ubiquitous, and because the "features" are both functional parts of the game as well as not distinctive..............................................16

            1.      There is no infringement of VGT's themes because Castle Hill's artwork does not look like VGT's, and the themes are ubiquitous on slot machines..........................................................................17

            2.      There is no infringement of VGT's "features" because the features are a functional part of its games and not protectable as trade dress. ..................................................................................18

            3.      VGT has failed to allege facts showing its features are distinctive. ......................................................................................................20

      D.      VGT's theft of trade secrets / confidential business information claims should be dismissed because VGT has failed to specify its trade secrets..22

      E.      VGT's unfair competition claims are derivative, and fail as the trademark and trade dress claims fail.........................................................................24

VI.     CONCLUSION...................................................................................................25

# I.    EXHIBITS

Declaration of Dale Jensen

Exhibit 1, USPTO filings of VGT and Aristocrat.....................................................13

Exhibit 2, USPTO filing of Aristocrat .......................................................13, 15, 16

Exhibit 3, Trademarks comprising "MONEY" ......................................................13

Exhibit 4, Trademarks comprising "HOT".............................................................17

Exhibit 5, Trademarks comprising "GEM" ...........................................................11

Exhibit 6, Trademarks comprising "MR." or "MISTER" .......................................14

Exhibit 7, Trademarks with a mining theme...........................................................11

Exhibit 8, Trademarks with a polar theme..............................................................11

Exhibit 9, Trademarks with an Irish luck theme.....................................................13

Exhibit 10, Trademarks with a western theme........................................................11

Exhibit 11, Trademarks with a porcine theme ........................................................12

Exhibit 14, Trademarks comprising "LUCK" ........................................................13

Exhibit 15, Trademarks comprising "CASH" .........................................................15

Exhibit 16, USPTO filing of VGT ...........................................................................4

Exhibit 17, Trademarks comprising "DIAMOND".................................................11

Exhibit 18, Trademarks comprising "CAPTAIN" or "CAP'N".............................15

Exhibit 19, USPTO filings of CASTLE HILL HOLDING LLC.............................5

Exhibit 20, USPTO filing of Aristocrat ..................................................................13

## II.   TABLE OF AUTHORITIES

*Cases*

*AJB Enters., LLC v. Backjoy Orthotics, LLC*,
    No. 3:16-cv-00758 (VAB), 2016 U.S. Dist.
    LEXIS 174630 (D. Conn. Dec. 16, 2016)……………………………………………22

*Amid, Inc. v. Medic Alert Found. United States, Inc.*,
    241 F. Supp. 3d 788 (S.D. Tex. 2017)…………………………………………....18

*Antioch Co. v. W. Trimming Corp.*,
    196 F. Supp. 2d 635 (S.D. Ohio 2002)………………………………………....19

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937 (2009)………………………………………………..7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955 (2007)……………………………………....7, 8

*Biocore, Inc. v. Khosrowshahi*,
    96 F. Supp. 2d 1221 (D. Kan. 2000)………………………………………….23

*Brill v. Walt Disney Co.*,
    2010 OK CIV APP 132, 246 P.3d 1099……....…………………………………15

*Brunswick Corp. v. Spinit Reel Co.*,
    832 F.2d 513 (10th Cir. 1987)………………………………………………...21

*Cory Van Rijn, Inc. v. Cal. Raisin Advisory Bd.*,
    697 F. Supp. 1136 (E.D. Cal. 1987)………………………………………….10

*Donchez v. Coors Brewing Co.*,
    392 F.3d 1211 (10th Cir. 2004)………………………………………....…15, 21

*Dow Corning Corp. v. Jie Xiao*,
    No. 11-10008-BC, 2011 U.S. Dist.
    LEXIS 54619 (E.D. Mich. May 20, 2011)…………………………………….12

*Duprey v. Twelfth Judicial Dist. Court*,
    760 F. Supp. 2d 1180 (D.N.M. 2009)…………………………………………..8

*Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*,
    289 F.3d 351 (5th Cir. 2002)……………………………………………………18

*Forney Indus. v. Daco of Mo., Inc.*,
    835 F.3d 1238 (10th Cir. 2016)……………………………………………………20

*Gruner + Jahr USA Publ'g v. Meredith Corp.*,
    991 F.2d 1072 (2d Cir. 1993)……………………………………………………12

*Hartford House, Ltd. v. Hallmark Cards, Inc.*,
    846 F.2d 1268 (10th Cir. 1988)……………………………………………………19

*Hornady Mfg. Co. v. Doubletap, Inc.*,
    746 F.3d 995, 1001 (10th Cir. 2014)…………..………………………………...10

*Hensley Mfg. v. ProPride, Inc.*,
    579 F.3d 603 (6th Cir. 2009)……………………………………………….…12

*Inspired by Design, LLC v. Sammy's Sew Shop, LLC*,
    No. 16-CV-2290-DDC-KGG, 2016 U.S. Dist.
    LEXIS 144988 (D. Kan. Oct. 19, 2016)……………………………………...…20

*Kermanshah v. Kermanshah*,
    580 F. Supp. 2d 247 (S.D.N.Y. 2008)………………………………………….8

*Le Book Publ'g, Inc. v. Black Book Photography, Inc.*,
    418 F. Supp. 2d 305 (S.D.N.Y. 2005)…………………………………………9

*Mink v. Knox*,
    613 F.3d 995 (10th Cir. 2010)………………………………………………….8

*Mintz v. Subaru of Am.*, No. 16-cv-03384-MMC, 2016 U.S. Dist.
    LEXIS 140773 (N.D. Cal. Oct. 11, 2016)…………………………………...…….9

*Nabisco, Inc. v. Warner-Lambert Co.*,
    220 F.3d 43 (2d Cir. 2000)……………………………………………….…...10

*Robbins v. Okla. ex rel. Dep't of Human Servs.*,
    519 F.3d 1242 (10th Cir. 2008)………………………………………………...8

*Storagecraft Technology Corp. v. Symantec Corp.*,
    No. 2:07 cv 856 CW, 2009 U.S. Dist.
    LEXIS 10608 (D. Utah Feb. 11, 2009)…………………………………………..22

*Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n,*
    651 F.2d 311 (5th Cir. 1981)……………………………………………………12

*Team Tires Plus v. Tires Plus, Inc.,*
    394 F.3d 831 (10th Cir. 2005)……………………………………………………9

*Telebrands Corp. v. Del Labs., Inc.,*
    719 F. Supp. 2d 283 (S.D.N.Y. 2010)……………………………………………9

*Traffix Devices v. Mktg. Displays,*
    532 U.S. 23, 121 S. Ct. 1255 (2001)……………………………………………..19

*Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.,*
    2013 U.S. Dist. LEXIS 33270 (S.D.N.Y. Mar. 8, 2013)………………………...21

*Vail Assocs. v. Vend-Tel-Co., Ltd.,*
    516 F.3d 853 (10th Cir. 2008)……………………………………………………9

*Valu Eng'g, Inc. v. Rexnord Corp.,*
    278 F.3d 1268 (Fed. Cir. 2002)……………………………………………….…19

*Water Pik, Inc. v. Med-Systems, Inc.,*
    726 F.3d 1136 (10th Cir. 2013)………………………………...……….12, 24

**Statutes**

15 U.S.C.S. § 1125 (a) (3)
    (LexisNexis, Lexis Advance through PL 115-61, approved 9/27/17)…………...17

**Rules**

Fed. R. Civ. P 12 (b)
(6)………………………………………………………………7, 8

**Other Authorities**

Restatement of the Law, Torts § 729…………………………………………….…12

Trademark Manual of Examining Procedure 1207.01……………………………….5

### III.   PRELIMINARY STATEMENT

This case is an unfortunate misuse of the legal process to try to stamp out a new competitor. Plaintiff Video Gaming Technologies ("VGT")—the dominant player in the Class II slot machine industry—has sued its new competitor Castle Hill Studios, LLC ("Castle Hill"), claiming Castle Hill has infringed its trademarks and trade dress, and stolen its trade secrets. These claims lack merit and should be dismissed.

For VGT's first claims, purported trademark infringement, the Court need only glance at Castle Hill's trademarks to see that they are nothing like the trademarks VGT claims they infringe. No consumer could possibly be confused into thinking that Castle Hill's "Nugget Mountain" was the same as VGT's word trademark "Crazy Billions." Or that Castle Hill's "New Money" was really VGT's "Mr. Money Bags." Or that "Arctic Cash" was "Polar High Roller." And so forth. Even when looking at the trademarks on the games in the context of the marketplace (*see* Complaint, Ex. 4 for pictures), it is clear the 17 Castle Hill trademarks at issue are so obviously different than the 15 trademarks VGT claims they infringe, that VGT's trademark infringement claims cannot meet *Iqbal* and *Twombly's* plausibility and must be dismissed.

This lack of similarity between Castle Hill's and VGT's trademarks, alone, is enough for dismissal of VGT's trademark infringement claims. But the argument for dismissal is overwhelming in light of hundreds of other federal trademark registrations for slot machines with words and themes similar to VGT's—which completely debunk VGT's insinuation that it somehow has exclusive rights to these words and themes. These other registrations show, *e.g.*, that VGT's "Crazy Billions" is merely one of nearly two dozen other miner-themed slot machines, that there are more than 150 other money-themed slot machines like VGT's "Mr.

Money Bags," and more than 60 other slot machines have a polar/ice theme like VGT's "Polar High Roller." Indeed, every single VGT mark Castle Hill supposedly infringed is just like dozens (or hundreds) of marks on slot machines made by other manufacturers. Because the market is flooded with these common words and themes, any similarities are unremarkable and unlikely to cause confusion.

Moreover, there can be no likely confusion because, as shown by United States Patent and Trademark Office ("USPTO") public records (of which judicial notice is requested), VGT has admitted that its consumers are "all sophisticated professionals" and "extremely discriminating purchasers." This sophistication minimizes any likely confusion with its trademarks and trade dress, even were the marks highly similar. Because the marks are not similar, these sophisticated consumers will not be confused with slot machine titles that share words with other machines.

VGT's trade dress claim fails for the same reason. As for the "themes" piece of its trade dress claims—like the "miner" theme, "money" theme, or "polar/ice" theme—because the artwork on Castle Hill's slot machines looks nothing like the art on VGT's machines, there is no likelihood of confusion. Moreover, Castle Hill's use of the same theme would not cause confusion because these themes are ubiquitous amongst slot machines. As for the "features" part of VGT's trade dress claims—*e.g.* the shape of the cabinet, award bell, or red screen to indicate a bonus round—VGT fails to assert facts alleging these features are (1) distinctive, and (2) not a functional part of its gaming machines. Non-functionality and distinctiveness are requirements for trade dress, and VGT's failure to properly allege them dooms its trade dress claim.

VGT's remaining claims also fail to state claims for relief. VGT's theft of trade secrets and confidential business information claims are too vague to give Castle Hill notice of what alleged trade secrets or information it is to have stolen, or what it did to misuse them. VGT's

2

unfair competition claims are derivative of its trademark and trademark infringement claims, and fail as those underlying claims fail.

## IV.    VGT'S ALLEGATIONS

VGT alleges it is the leading developer of Class II bingo-based slot machines in North America, offering more than 20,000 machines in 140 locations. Compl. ¶ 12. The 1988 Indian Gaming Regulatory Act, enacted to regulate gaming on Native American land, established three different classes of games, each with a different regulatory scheme. *Id.* ¶ 17. In contrast to Class III gaming—the more typical gaming often associated with casinos in Las Vegas—Class II has less restrictive regulations and includes games of chance based on bingo. *Id.*

Castle Hill is a relatively new developer of Class II games that compete directly with VGT games. *Id.* ¶ 49. Founded by veterans of the gaming industry, Castle Hill has quickly made great strides in developing popular Class II games. *Id.* ¶¶ 13-15.

VGT asserts six claims for relief, which can be boiled down to three types: trademark infringement, trade dress infringement, and theft of trade secrets.

For its trademark infringement claims, VGT alleges that certain Castle Hill games "incorporate marks and themes confusingly similar to those of VGT's games." *Id*. ¶ 72. VGT sets forth the allegedly-infringing Castle Hill trademarks at issue in Exhibit 4 of the Complaint, which VGT states is a "full comparison of [Castle Hill's] Infringing Games with their VGT counterparts." *Id.*

The Complaint's Exhibit 4 lists the following 17 Castle Hill trademarks along with the 15 VGT trademarks (all but one of which are word marks) they supposedly infringe:

| VGT Trademark | Type | CH's Trademark | Common Word Element or Theme |
|---|---|---|---|
| Crazy Billions | Word Mark | Nugget Mountain (Reg. pending) | No common word element. Miner theme |

3

| VGT Trademark | Type | CH's Trademark | Common Word Element or Theme |
|---|---|---|---|
| Mr. Money Bags | Word Mark | New Money® (Reg. 4,871,351) | The word and theme "money" |
|  | Logo |  | The word and theme "money" |
| Polar High Roller | Word Mark | Arctic Cash® (Reg. 4,998,719) and Arctic Ice (Reg. pending) | No common word element. Polar / arctic theme |
| Lucky Leprechaun | Word Mark | Dublin' Your Luck® (Reg. 5,079,233) | One common word element, "luck" Irish luck theme |
| Hot Red Ruby | Word Mark | Double Hotness® (Reg. 5,079,235) | The syllable and theme "hot" |
| Gems and Jewels | Word Mark | Genie's Gems® (Reg. 5,079,236) | The word "gem" No common theme, except perhaps precious stones |
| Mr. Millionaire | Word Mark | Mr. Martini® (Reg. 5,079,232) Mr. Martini: Vegas Baby (Reg. pending) | One common word and theme, "Mr." |
| Greenback Jack | Word Mark | Coin Slinger® (Reg. 4,875,096) | No common word element Wild west cowboy theme |
| Planetary Pigs | Word Mark | Aces & Hogs® (Reg. 4,998,721) | No common word element Pig theme |
| Countin' Cash | Word Mark | Amazing Ca$h® (Reg. 5,100,738) | The word and theme "cash" Note: VGT's USPTO registration disclaims the word "cash" *See* Jensen Decl. Ex. 16 |
| Diamond Fever | Word Mark | 10,000 Diamonds® (Reg. 5,079,234) 20,000 Diamonds® (Reg. 5,187,336) | The word "diamond" Diamond / precious stones theme |
| Radiant Rocks | Word Mark | 10,000 Diamonds® (Reg. 5,079,234) 20,000 Diamonds® (Reg. 5,187,336) | No common word element. Precious stones theme |
| Cap'n Crabby's Ca$h | Word Mark | Captain Bacon® (Reg. 5,100,736) | One common word "Captain" No common theme |
| Red Hot Rubies | Word Mark | Pink Sapphires (Reg. pending) | No common word element Precious stones theme |

4

As shown above, with the exception of the logo for Castle Hill's "New Money" game, each of Castle Hill's trademarks VGT complains about has already been registered with the USPTO as a trademark (12 registered), or is pending registration (4 pending). Declaration of Dale Jensen ("Jensen Decl."), Ex.19.[1] Never once during the registration process for any of these marks—which has been ongoing since 2014—did VGT appear before the USPTO to oppose or contest a Castle Hill mark. Jensen Decl. Ex. 19. And, of course, before registering Castle Hill's marks, the USPTO's trademark examiners were required to conduct a search and determine that none of VGT's marks were confusingly similar to Castle Hill's. *See* Trademark Manual of Examining Procedure 1207.01 ("The examining attorney must conduct a search of USPTO records to determine whether the applicant's mark so resembles any registered mark(s) as to be likely to cause confusion or mistake, when used on or in connection with the goods or services identified in the application.").

VGT's trade dress infringement claims are comprised of both its game "themes" and game "features." The "themes" apparently arise out of the trademarks listed above, such as a miner theme for VGT's "Crazy Billions" game, an Irish luck theme for its game "Lucky Leprechaun," a wild West theme for "Greenback Jack," and so forth (themes listed in the right column of the table above). *Id.* ¶¶ 32-34. For the game "features," VGT alleges there are five, namely:

- Game cabinet: the cabinet that houses the game;

- Game play sound: the sound of the mechanical reels spinning;

- Award sound: a bell that rings to indicate a player winning;

---

[1] The undersigned attorney certifies that he will hold and maintain the signed original of the Jensen Declaration until all appeals have been exhausted or the time for seeking appellate review has expired. CM/ECF Administrative Guide, page 9.

- Bingo play and pays: the winning bingo patterns, the way the bingo balls drop, and the pay tables showing how much is paid for each winning pattern;

- Red screen free spins: a red screen appears and the reels spin automatically to indicate bonus spins.

*Id.* ¶¶ 22-27. VGT asserts, without explanation, that "[t]he combination of the above individual trade dress features is inherently distinctive because it is unique and does not describe the 3-Reel Mechanical Games." *Id.* ¶ 28. VGT also asserts, again without explanation, that because alternates are available for each of these features, the features are "non-functional" and are thus protectable as trade dress. *Id.* VGT also asserts that Castle Hill has infringed its trade dress by copying the themes from VGT games and by copying these five features. *Id.* ¶¶ 72, 75.

For its trade secret claim, VGT never specifically identifies its supposed secrets. VGT says only that it has trade secrets "relating to" the "underlying math" and the "source code" for the games, and then describes generally the role of the math and code in its gaming machines. *Id.* ¶¶ 41-43. VGT then asserts "on information and belief" that Castle Hill has stolen "information relating to" its undefined trade secrets, and claims that this theft is "evident based on the fact the play of [Castle Hill's] games . . . mimics the play of VGT's games." *Id.* ¶ 98.

## V.    ARGUMENT

VGT's trademark infringement claims fail because its trademarks do not look like Castle Hill's. Even viewed in the marketplace, where a Castle Hill mark shares a similar word or "theme" with a VGT mark, the shared words or themes are ubiquitous, and present in at least dozens (and often hundreds) of other slot machine games from different manufacturers. Because the market is flooded with these words and themes, any similarities are unremarkable and unlikely to cause confusion.

6

Moreover, there is no likely confusion because VGT has admitted that consumers of its slot machines (and, by extension, Castle Hill's slot machines) are "all sophisticated professionals" and "extremely discriminating purchasers." This sophistication minimizes any likely confusion with its trademarks and trade dress, especially because the marks are not similar.

VGT's trade dress claims fail for the same reason as its trademark infringement claim. Because each of VGT's "themes" is omnipresent in the slot machine world, Castle Hill's use of them does not cause any confusion. Further, for the "features" VGT claims make up its trade dress, VGT fails to allege facts showing these features are (1) distinctive, and (2) not simply functional parts of its games. Because VGT fails to allege a factual basis for its conclusory assertion of non-functionality and distinctiveness, its trade dress claim fails as a matter of law.

VGT's remaining claims also fail to state claims for relief. Its theft of trade secrets and confidential business information claims are too vague to give Castle Hill notice of what alleged trade secrets or information it is to have stolen, or what it did to misuse them. VGT's unfair competition claims are derivative of its trademark and trade dress infringement claims, and fail as those claims fail.

## A.    Legal standards.

Rule 12(b)(6) of the Federal Rules of Civil Procedure enables a defendant to seek dismissal by challenging the sufficiency of a complaint. It requires that a plaintiff provide "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546, 570, 127 S. Ct. 1955 (2007). "[A] plaintiff's obligation to provide the grounds of this 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not [suffice] . . ." *Id.* at 555 (citations omitted). "Factual allegations must be enough to raise the right of relief above the speculative level." *Id.* s*ee also, Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (a plaintiff's complaint

must set forth more than a threadbare recital "of the elements of a cause of action, supported by mere conclusory statements").

The U.S. Court of Appeals for the Tenth Circuit has held that to survive a motion to dismiss, a complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. *Id. Twombly*, *supra*, 550 U.S. at 570; *Mink v. Knox*, 613 F.3d 995 (10th Cir. 2010).

> [P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible.

*Id.* The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief. *Robbins v. Okla. ex rel. Dep't of Human Services*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 127 S Ct. at 1974) (citations omitted).

In ruling on a Rule 12(b)(6) motion, the Court may consider documents that are "incorporated in the complaint by reference," such as the documents VGT attaches as exhibits to its Complaint. *See, e.g.*, *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 258 (S.D.N.Y. 2008). Moreover, a court may go beyond facts alleged in the pleading to consider the effect of matters subject to judicial notice, such as official records of the USPTO. *Duprey v. Twelfth Judicial Dist. Court*, 760 F. Supp. 2d 1180, 1193 (D.N.M. 2009) ("Facts subject to judicial notice may be considered without converting a motion to dismiss into a motion for summary judgment.").

## 1.  Request for judicial notice of USPTO records.

Throughout this brief, Defendants cite to records from the USPTO. Under Rule 201 of the Federal Rules of Civil Procedure, Defendants respectfully request the Court take judicial notice

of these USPTO records, as more fully described in the attached Declaration of Dale Jensen. *See, e.g., Telebrands Corp. v. Del Laboratories, Inc.*, 719 F. Supp. 2d 283, 287 n.3 (S.D.N.Y. 2010) ("The Court may properly take judicial notice of official records of the United States Patent and Trademark Office").

> **B.    VGT's trademark infringement claims fail.**

> **1.    There is no likelihood of confusion because Castle Hill's marks are not similar to VGT's, and the common words and "themes" between them are ubiquitous in the industry.**

The "key inquiry" in a trademark infringement claim is "the likelihood of confusion between two similar marks." *Team Tires Plus, Ltd. v. Tires Plus, Inc.*, 394 F.3d 831, 833 (10th Cir. 2005). To determine likelihood of confusion, courts evaluate six non-exhaustive factors: "(1) evidence of actual confusion between the marks, (2) the strength of the contesting mark, (3) the intent of the alleged infringer in adopting the contested mark, (4) the degree of similarity between the marks, (5) the similarity of the parties' services and manner in which they market them, and (6) the degree of care consumers are likely to exercise in purchasing those services." *Vail Assocs., Inc. v. Vend–Tel–Co., Ltd.*, 516 F.3d 853, 863 (10th Cir. 2008).

Although the evaluation of these factors is often done at the summary judgment stage, "[i]n some instances, however, the question of whether a likelihood of confusion exists can be determined at the pleading stage and based on a consideration of less than all of the factors, such as where the parties have obviously dissimilar marks." *Mintz v. Subaru of Am.*, No. 16-cv-03384-MMC, 2016 U.S. Dist. LEXIS 140773, at *2-5 (N.D. Cal. Oct. 11, 2016); *Le Book Publ'g, Inc. v. Black Book Photography, Inc.*, 418 F. Supp. 2d 305, 310-12 (S.D.N.Y. 2005) (dismissing trademark infringement claim where "[t]he degree of similarity element here overwhelms any possibility of confusion" because "plaintiff and defendants here have obviously dissimilar

marks."); *see also, Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46-48 (2d Cir. 2000) ("[a]lthough we generally do not treat any one [] factor as dispositive in the likelihood of confusion inquiry" in an "appropriate case, the similarity of the marks factor can be dispositive"); *Cory Van Rijn, Inc. v. Cal. Raisin Advisory Bd.*, 697 F. Supp. 1136, 1145 (E.D. Cal. 1987) (dismissing trademark infringement claim because of the "absence of substantial similarity" between the marks).

Here, the Court need look no further than Castle Hill and VGT's trademarks themselves to see that the lack of any similarities between them requires dismissal of VGT's trademark infringement claims. *See Hornady Mfg. Co. v. Doubletap, Inc.*, 746 F.3d 995, 1001-1005 (10th Cir. 2014) ("The similarity of the marks is the first and most important factor."). Indeed, eight of Castle Hill's seventeen allegedly-infringing marks do not share a word, or even a syllable, with their VGT counterparts, making it difficult to understand how anyone could possibly be confused. As shown in the table below, VGT's "Crazy Billions" is nothing like Castle Hill's "Nugget Mountain," nor does Castle Hill's "Coin Slinger" evoke VGT's "Greenback Jack," and so on. Castle Hill's marks simply do not look or sound anything like VGT's.

| VGT Trademark | Type | CH's Trademark | Common Word Element or Theme |
|---|---|---|---|
| Crazy Billions | Word Mark | Nugget Mountain (Reg. pending) | No common word element. Both games use a gold miner theme, which is the subject of 18 other registered or pending marks for gaming machines. Jensen Decl. Ex. 7. |
| Polar High Roller | Word Mark | Arctic Cash® (Reg. 4,998,719) and Arctic Ice (Reg. pending) | No common word element. The polar / arctic theme is the subject of 55 other registered or pending marks for gaming machines. Jensen Decl. Ex. 8. |
| Greenback Jack | Word Mark | Coin Slinger® (Reg. 4,875,096) | No common word element. The artwork depicts a wild west theme, which is the subject of at least 15 other registered or pending marks for gaming machines. Jensen Decl. Ex 10. |

| VGT Trademark | Type | CH's Trademark | Common Word Element or Theme |
|---|---|---|---|
| Planetary Pigs | Word Mark | Aces & Hogs® (Reg. 4,998,721) | No common word element. The pig theme is the subject of 26 other registered or pending marks for gaming machines. Jensen Decl. Ex 11. |
| Radiant Rocks | Word Mark | 10,000 Diamonds® (Reg. 5,079,234) 20,000 Diamonds® (Reg. 5,187,336) | No common word element. The precious stones theme appears in over 250 other marks registered or pending marks for gaming machines (even considering just marks with the word "gem" or diamond) Jensen Decl. Ex. 5, 17. |
| Red Hot Rubies | Word Mark | Pink Sapphires (Reg. pending) | No common word element. The precious stones theme appears in over 250 other marks registered or pending marks for gaming machines (even considering just marks with the word "gem" or diamond) |

Even when comparing the trademarks in the marketplace—that is, on the slot machines on which they appear—confusion is still unlikely. *See* Compl. Ex. 4 to see the trademarks on the machines. This is because to the extent the marks incorporate similar "themes" as each of these themes is ubiquitous in the gaming industry. If, for example, VGT had the only diamond-themed slot machine, then the entrance of another machine on the same theme might cause confusion. But here the industry is flooded with machines with these themes. USPTO records show there are over 200 hundred diamond-themed slot machines from manufacturers other than VGT: Dazzling Diamonds, Double Diamond, Diamond Fortune, Pink Diamond, Super Diamonds, Crazy Diamonds, and so on. Jensen Decl. Ex. 17. The same situation exists for the other marks. The USPTO has registered trademarks for at least:

- *17 other* miner-themed games like VGT's "*Crazy Billions*" (e.g. Secret Mine, Gold Nuggets, Money Miner, Mystery Mine, etc.). *See* Jensen Decl. Ex. 7.

- *55 other* polar/ice-themed games like VGT's "*Polar High Roller*" (*e.g.* Pandas and Penguins, Polar Bear Seas, Penguin Paradise, Arctic Blast, etc.). *See* Jensen Decl. Ex. 8.

- *15 other* Wild West-themed games like VGT's "*Greenback Jack*" (*e.g.* Jack Cash, Reel Wild West, Cash Corral, High Noon, etc.). *See* Jensen Decl. Ex. 10.

11

- *25 other* pig-themed games like VGT's "*Planetary Pigs*" (*e.g.* Cosmic Piggy, Pretty Pigs, Pigs on the Run, Happy Pigs). *See* Jensen Decl. Ex. 11.

*See* Jensen Decl. Exs. 3-6, 9, 12-15 and 17-19 for other trademark registrations with the same themes asserted by VGT in this case.

Therefore, because the marks are not similar, and because the themes incorporated in the marks are ubiquitous, there is no likelihood of confusion between these Castle Hill and VGT marks. *See, e.g.*, *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F. 3d 1136, 1156 (10th Cir. 2013) ("there is more than enough distinction between the two marks [Sinu*Cleanse* and SinuSense] to prevent any likelihood of confusion"). *Dow Corning Corp. v. Jie Xiao, No*. 11-10008-BC, 2011 U.S. Dist. LEXIS 54619, at *19 (E.D. Mich. May 20, 2011) (dismissing a trademark claim where the plaintiff's trademarks was not similar to the defendant's trademarks); *Hensley Mfg. v. ProPride, Inc*., 579 F.3d 603, 611 (6th Cir. 2009) (dismissing a case where the "name of ProPride's product, the 'Pivot Point Projection Hitch' or '3P Hitch,' is not even remotely similar to the 'Hensley' trademark")

It is basic that "extensive third party use" of a term is "impressive evidence that there would be no likelihood of confusion." *See Sun Banks of Florida, Inc. v. Sun Federal Savings and Loan Assoc.*, 651 F.2d 311, 316 (5th Cir. 1981); Restatement of the Law, Torts § 729 ("The greater the number of identical or more or less similar trade-marks already in use on different kinds of goods, the less is the likelihood of confusion"). This is especially true where, as here, the shared term is common, and thus "weak." *See Gruner+ Jahr USA Pub. v. Meredith Corp.*, 991 F. 2d 1072, 1077-78 (2nd Cir. 1993). VGT itself apparently agrees with this analysis, as its parent company, Aristocrat recently argued exactly this in a filing before the USPTO, stating "evidence of third party use and registration of similar marks is admissible and relevant to show

that a mark is relatively weak and entitled to only a narrow scope of protection." *See* Jensen Decl., Ex. 2, p. 3-4.

The extensive third party use of the very common words VGT claims to exclusively own is illustrated by the first listed trademark: Castle Hill's "New Money" mark compared with VGT's "Mr. Money Bags." The common word here is "money." Considering this is the gambling industry, it is no surprise that these are *not* the only two slot machines that have "money" in the title. A cursory look through USPTO trademark registrations showed no less than 142 slot machines from other manufacturers with "money" in the title: Old Money, Mama's Money, Mountains of Money, Big Money, Money in the Bank, Money to Burn, Money Match, and so on. *See* Jensen Decl. Ex. 3. Indeed, this word is so common that VGT's parent company, Aristocrat Leisure, Ltd. ("Aristocrat")[2] recently disclaimed the word "money" in a USPTO filings for its registration of the mark "Money Tree" to use with another gaming machine. *See* Jensen Decl. Ex. 20. Because "money" is so commonly used in other games, there is no likelihood of confusion between "Mr. Money Bags" and "New Money."

Similarly, VGT's "Lucky Leprechaun" does not look or sound anything like Castle Hill's "Dublin' Your Luck." The one similarity—the word "luck"—is unremarkable and not likely to cause confusion. Like "money," the word "luck" is another staple of the gaming industry, appearing in some 250 registrations for machines from other manufacturers. *See* Jensen Decl. Ex. 14. Even if one were to narrow the search specifically to "Irish" luck (the common "theme" between these two marks), this theme is legion amongst slot machines, appearing in 32 other

---

[2] *See* Jensen Decl, Ex. 1 (statements showing VGT is a wholly-owned subsidiary of Aristocrat). Moreover, Aristocrat has stated that it exercises "complete control over the nature and quality of the goods and services on or in connection with each" mark used by VGT.

games, like Lucky Shamrock, Leprechaun's World, 10,000 Leprechauns, Luck of the Irish, Pots O' Luck, etc. *See* Jensen Decl. Ex. 9. Considering the plethora of "luck" games, along with the obvious differences in the marks, there is no plausible likelihood of confusion between "Dublin' Your Luck" and "Lucky Leprechaun."

The same lack of plausibility pertains to the other Castle Hill marks that share a word or syllable with a VGT mark. Again, first and foremost there is no likely confusion because the marks do not look or sound alike: "Hot Red Ruby" is not like "Double Hotness," "Gems and Jewels" is decidedly different from "Genie's Gems," and so forth (as seen when comparing the word marks side by side in the table below). Moreover, the one similar word/syllable in each of these pairs is indistinct and common: Hot, Gems, Mr., Cash, Diamond, and Captain. Not only are these shared words/syllables generally common, they are also common specifically in gaming, as shown in the table below, with each word and theme present in at least dozens (or often hundreds) of other slot machine titles.

| VGT Trademark | Type | CH's Trademark | Common Word Element or Theme |
|---|---|---|---|
| Hot Red Ruby | Word | Double Hotness® (Reg. 5,079,235) | The word element "hot," which appears in 188 registered or pending marks for gaming machines. Jensen Decl. Ex. 4. |
| Gems and Jewels | Word | Genie's Gems® (Reg. 5,079,236) | The word and theme "gem," which appears in 41 registered or pending marks for gaming machines. Jensen Decl. Ex 5. |
| Mr. Millionaire | Word | Mr. Martini® (Reg. 5,079,232) and Mr. Martini: Vegas Baby (Reg. pending) | One word – "Mr.", a syllable that appears in 18 marks registered or pending marks for gaming machines. Jensen Decl. Ex. 6. |

| VGT Trademark | Type | CH's Trademark | Common Word Element or Theme |
|---|---|---|---|
| Countin' Cash | Word | Amazing Ca$h® (Reg. 5,100,738) | The word and theme "cash," which appears in at least 162 registered or pending marks for gaming machines. Note: VGT's USPTO registration disclaims any exclusive right to use the word "cash" in connection with this mark. *See* Jensen Decl. Ex. 15. This disclaimer coupled with the many, many other registrations using "Cash" means there is no likely confusion. |
| Diamond Fever | Word | 10,000 Diamonds® (Reg. 5,079,234) 20,000 Diamonds® (Reg. 5,187,336) | The word and theme "Diamond", which appears in over 200 marks registered or pending marks for gaming machines. Jensen Decl. Ex. 17. |
| Cap'n Crabby's Ca$h | Word | Captain Bacon® (Reg. 5,100,736) | One common word "Captain," which appears in at least 12 marks registered or pending marks for gaming machines. No common theme. Jensen Decl. Ex. 18. |

In sum, VGT's trademark infringement claims as alleged fail because Castle Hill's marks are not similar to VGT's. Even where the marks share a similarity—with one word or the same theme—the similar word or theme is common, especially in the gaming industry, and the subject of at least dozens (and often hundreds) of other slot machines, making any confusion improbable. Since the claim is implausible, it should be dismissed with prejudice.[3]

> **2.  VGT admits its consumers are "sophisticated professionals," unlikely to be confused by any similarities between the marks.**

Although a comparison of the marks is alone sufficient to warrant dismissal of VGT's trademark infringement claims, VGT's conclusory assertion of confusion is contradicted by its

---

[3] This analysis applies equally to all of VGT's trademark infringement claims, Counts I, III, and IV, as likelihood of confusion is a required element under the Lanham Act, the Oklahoma Deceptive Practices Act, and common law. *See Brill v. Walt Disney Co.*, 132, 246 P.3d 1099, 1103 (OK App. 2010) ("In order to establish a *prima facie* common law trademark infringement claim, plaintiff must show . . . likelihood of consumer confusion."); *Donchez v. Coors Brewing Co.*, 392 F.3d 1211 (10th Cir. 2004) (elements of common law trademark or service mark infringement are similar to those required by § 43(a) of the Lanham Act).

own admissions to the USPTO. Indeed, VGT has admitted that its customers are "sophisticated professionals" and "extremely discriminating purchasers," who would not be easily confused by marks that are much more similar than anything alleged in the Complaint.

Just a few months ago, the USPTO had declined to register the trademark "Fast Cash" for VGT's parent company, Aristocrat (like VGT, also a major seller of slot machines) because it was too similar to another trademark "Fast Money." In asking the USPTO to reconsider, Aristocrat stated that because its machines "are not available for purchase or lease by the general public" that its "consumers are all sophisticated professionals in the gambling industry." Jensen Decl. Ex. 2, at pp. 8-9. Aristocrat further therein admitted its consumers are "extremely discriminating purchasers," and that its machines "are not impulse buys, but rather well-researched, in fact, scientifically-researched" purchases. *Id.* Because of this, VGT's parent company argued that "it is appropriate to apply an elevated standard when determining whether a likelihood of confusion exists." *Id.*

Because VGT and Castle Hill sell their gaming machines to the same "discriminating purchasers," such industry veterans are extremely unlikely to be confused even by marks as similar as "Fast Cash" and "Fast Money"—VGT acknowledges that those buyers know exactly from whom they are buying. Of course, where the marks at issue are dissimilar—such as Cap'n Crabby Ca$h v. Captain Bacon, or Hot Red Ruby v. Double Hotness—it is wholly implausible that the "sophisticated" buyer would be confused. *See* Jensen Decl. Ex. 2, p.8.

**C.     VGT's trade dress claims fail because the "themes" of its games are generic and ubiquitous, and because the "features" are both functional parts of the game as well as not distinctive.**

VGT's trade dress claims (Count II-IV) also fail on the face of the Complaint. Infringement based on Castle Hill's alleged copying of VGT's "themes" does not survive because, as discussed above, these themes are generic and ubiquitous in the slot machine

industry. Thus, no one (least of all the "sophisticated" and "discriminating purchasers" who purchase or lease these games) is likely to be confused into thinking a Castle Hill machine is a VGT machine. VGT's infringement-based-on-"features" theory also fails because, as discussed below, the features of its game are both functional and not distinctive, and thus not protectable as trade dress.

To state a claim for trade dress infringement, a plaintiff must show three things: "(1) The trade dress is inherently distinctive or has become distinctive through secondary meaning; (2) There is a likelihood of confusion among consumers as to the source of the competing products; and (3) The trade dress is nonfunctional." *Gen. Motors Corp. v. Urban Gorilla, Ltd Liab. Co*, 500 F.3d 1222, 1226 (10th Cir. 2007).

### 1. There is no infringement of VGT's themes because Castle Hill's artwork does not look like VGT's, and the themes are ubiquitous on slot machines.

VGT's infringement-of-its-"themes" argument fails for lack of likely confusion. When simply comparing the art on both companies' machines, it is apparent that the Castle Hill artwork looks nothing like VGT's. *See* Compl. Ex. 4 (for what VGT calls "a full comparison of [Castle Hill's] Infringing Games with their VGT counterparts"). Understanding this, VGT bases its infringement theory on the fact that the games deal with the same "themes"—miners, the Arctic/ice, money, precious stones, cash, luck, *etc*. But this does not save the argument because these "themes" of which VGT tries to claim ownership are omnipresent on slot machines. As shown in the tables in section II(A) hereof, *supra*, each of the supposed VGT themes can be found in at least dozens (and often hundreds) of other slot machines. Thus, a consumer could never be confused that, *e.g.*, Castle Hill's polar/ice-themed games "Arctic Cash" and "Arctic Ice" are actually VGT's "Polar High Roller" because there are at least *55 other polar/ice-themed games*. Because VGT's trade dress themes are not unique or "inherently distinctive," and are in

17

fact ubiquitous on slot machines, Castle Hill's use of these themes is not likely to cause any confusion with VGT's games.

## 2. There is no infringement of VGT's "features" because the features are a functional part of its games and not protectable as trade dress.

VGT's trade dress claim based on the "features" of its games also fails because these features are a *functional* part of the game, and are not protectable as trade dress. Again, VGT claims five features on its machines are part of the trade dress: game cabinet, game play sound, award sound, bingo play and pays, and red screen free spins.

Functional matter cannot be protected as trade dress, and it is VGT's burden to assert (and later prove) that its features are not functional. 15 U.S.C.S. §1125 (a) (3) ("In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional."). Of course, this also translates to a pleading requirement, where a trade dress plaintiff must allege a plausible factual basis to meet the element of non-functionality. *See Iqbal*, *supra*, 556 U.S. at 844 (a plaintiff's complaint must set forth more than a threadbare recital "of the elements of a cause of action, supported by mere conclusory statements").

VGT attempts to meet this pleading requirement by repeating a mantra five times, for each of its five features: "Because the [feature] is arbitrary and there are alternate [feature in plural] available, the [] trade dress feature is non-functional." Compl., ¶¶ 23-27 (*e.g.* "Because the choice of cabinet is arbitrary and there are alternate cabinets available, the GAME CABINET trade dress feature is non-functional").

This allegation is legally insufficient to allege VGT's trade dress features are not functional—no matter how many times VGT repeats it. This is because the "availability of

alternative designs is irrelevant" for showing functionality. *See Eppendorf-Netheler-Hinz GMBH v. Ritter GmbH*, 289 F. 3d 351, 357 (5th Cir. 2002); *see also, Amid, Inc. v. Medic Alert Found. United States, Inc.*, 241 F. Supp. 3d 788, 2017 U.S. Dist. LEXIS 37699, at *66-67 (S.D. Tex. Mar. 16, 2017) (finding plaintiff failed to prove non-functionality, even though the product could have been "designed in thousands of other ways, with elements in infinite combinations"); *Antioch Co. v. Western Trimming Corp.*, 196 F. Supp. 2d 635, 640 (S.D. Ohio 2002) (in determining non-functionality, "the Court will not consider whether alternative designs exist"); *but see Valu Engineering, Inc. v. Rexnord Corp.*, 278 F. 3d 1268, 1275 (Fed. Cir. 2002) (holding alternate designs may be a factor in determining functionality).[4]

It is no surprise VGT had trouble alleging facts to prove its game features are not functional. Indeed, even the way VGT describes these features in the Complaint makes clear that they are an integral (and functional) part of making the game work:

- Red screen free spins: Indicate to a player the game is in bonus mode, by the screen turning red and the reels spinning continuously (without hitting a button).

---

[4] Defendants are aware of dated authority from the U.S. Court of Appeals for the Tenth Circuit stating the opposite, namely that the availability of alternate designs *is* a factor in determining non-functionality. *See, e.g.*, *Hartford House, Ltd. v. Hallmark Cards, Inc.*, 846 F.2d 1268, 1273 (10th Cir. 1988).

This was the Fifth Circuit's position as well, before it was reversed in light of the U.S. Supreme Court's decision in *TrafFix Devices, Inc., v. Marketing Displays, Inc. See* 532 U.S. 23, 33-34 (2001) (holding that "there is no need" to engage in "speculation about other design possibilities" for a functional design).

While the Tenth Circuit has not yet had occasion to revisit this issue since *TrafFix*, it would likely follow the well-reasoned decisions of courts holding that under the *TrafFix* case, the availability of alternate designs is no longer relevant to non-functionality. *See, e.g.*, *Antioch Co. v. Western Trimming Corp.*, 196 F. Supp. 2d 635, 640 (S.D. Oh. 2002) ("As a consequence [of the *TrafFix* decision], the Court will not consider whether alternative designs exist" to determine non-functionality).

- Bingo pay and plays: The Bingo patterns show a player what Bingo combinations win; the ball drop (calling Bingo numbers) is how Bingo is played; and the pay tables show a player what winning combinations pay what amounts.

- Award sound: The ringing bell indicates to a player when she has won money.

- Game play sound: Indicates to a player that the reels are spinning, and the game is in play.

- Game cabinet: Houses the game.

Because VGT bases its conclusory assertion of non-functionality only on a legally-irrelevant allegation—that other designs are available—VGT has failed to allege facts supporting non-functionality, and its infringement-based-on-features theory fails to state a claim.

### 3.   VGT has failed to allege facts showing its features are distinctive.

VGT's game features fail to provide a basis for its trade dress claim for a separate and independent reason: VGT fails to allege any facts showing these "features" are distinctive.

To prove trade dress is protectable, a plaintiff must allege facts showing the trade dress is distinctive, either inherently or because it has acquired secondary meaning. *Gen. Motors Corp.*, *supra*, 500 F.3d at 1226. VGT fails to properly allege either inherent distinctiveness or secondary meaning.

To determine inherent distinctiveness, the Court examines three factors: "(1) whether it was a common basic shape or design, (2) whether it was unique or unusual in a particular field, and (3) whether it was a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods viewed by the public as a dress or ornamentation for the goods." *Forney Indus. v. Daco of Mo., Inc.*, 835 F. 3d 1238, 1246 (10th Cir. 2016).[5]

---

[5] In addition to its Lanham Act claim, VGT alleges trade dress infringement under common law and under the Oklahoma Deceptive Practices Act. *See* Compl., Counts III-IV. These claims fail for the same reason VGT's trade dress claims under the Lanham Act claims fail: insufficient or

The Complaint has just one sentence on inherent distinctiveness for its game features: "The combination of the [features] is inherently distinctive because it is unique and does not describe the 3-Reel Mechanical Games." Compl. ¶ 28. This sentence is insufficient to state a claim that VGT's game features are inherently distinctive. Indeed, VGT fails to allege *any* facts whatsoever probative of any factor, such as common basic shape or design, whether unique in the field, or if it was merely a refinement of a well-known ornamentation. Instead, VGT simply lists what its game features are, and then includes a conclusory assertion that the "combination of" these features is "unique." This fails as a matter of law. *See, e.g.*, *Inspired by Design, LLC v. Sammy's Sew Shop, LLC*, No. 16-CV-2290-DDC-KGG, 2016, U.S. Dist. LEXIS 144988, at *13 (D. Kan. Oct. 19, 2016) (no inherent distinctiveness where "plaintiff just offers the conclusory assertion that its trade dress is distinctive and relies only on its [product's] combination of features to prove distinctiveness"); *see also Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1149 (10th Cir. 2016) ("Merely reciting [] nine elements [comprising trade dress] does not create a genuine dispute of fact as to inherent distinctiveness.").[6]

Similarly, VGT has failed to allege any facts to support secondary meaning for any of its game features. Secondary meaning can be shown either by "direct evidence, such as consumer surveys or testimony from consumers," or by "circumstantial evidence such as: (1) the length

---

implausible allegations of the required elements of likelihood of confusion, non-functionality, and secondary meaning. *See, e.g.*, Brunswick Corp. v. Spirit Reel Co., 832 F.2d 513 (10th Cir. 1987).

[6] Courts have also used another test called the *Abercrombie* test, to determine inherent distinctiveness, "but because that frame-work was designed for word marks, it is not surprising that it can be difficult to translate in the trade-dress context." *Formey Indus.*, *supra*, 835 F.3d at 1245-46. Even under *Abercrombie*, the Complaint fails for the same reason: VGT fails to allege specific facts to prove inherent distinctiveness under this test either.

and manner of [the mark's] use, (2) the nature and extent of advertising and promotion of the mark and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the name or mark and a particular product or venture." *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216 (10th Cir. 2004).

As with inherent distinctiveness, VGT fails to plead any specific allegations to support secondary meaning. Short of broad, conclusory assertions—that VGT has used its trade dress "in its advertising and promotional material," or that VGT trade dress has "acquired recognition among the public" (Compl. ¶¶ 37, 39)—VGT has failed to allege any facts whatsoever relevant to secondary meaning. Such allegations are insufficient as a matter of law. *See, e.g.*, *Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, 12 Civ. 3599, 2013 U.S. Dist. LEXIS 33270 at *9 (S.D.N.Y. Mar. 8, 2013), (an allegation that plaintiff spent $2.4 million in advertising "not supportive of a finding of secondary meaning" because "there is no contention that any of those advertisements or promotions stressed or emphasized the alleged trade dress"); *AJB Enterprises, LLC v. Backjoy Orthotics, LLC*, 3:16cv758 (VAB), 2016 U.S. Dist. LEXIS 174630 at *14 (D. Conn. Dec. 16, 2016) (holding that the following allegations were insufficient to show secondary meaning: that product sold for over 20 years, sales were widespread, the trade dress of the product "has come to indicate origin with Plaintiff," and the product's configuration was advertised).

Because VGT has not alleged sufficient facts to show either inherent distinctiveness or secondary meaning, its trade dress claim fails on the pleadings, and must be dismissed.

### D. VGT's theft of trade secrets / confidential business information claims should be dismissed because VGT has failed to specify its trade secrets.

VGT's trade secrets claim fails because VGT never specifically defines its trade secrets. VGT says only that it has trade secrets "relating to" the "underlying math" and the "source

22

code," and then proceeds to generally describe the role of the math and code in its gaming machines.  Compl. ¶¶ 41-43.[7]  VGT then asserts "on information and belief" that Castle Hill has stolen "information relating to" its undefined trade secrets, and that this theft is "evident based on the fact the play of [Castle Hill's] games . . . mimics the play of VGT's games."  *Id.* ¶ 98.[8]

These allegations are insufficient. At the pleading stage, a plaintiff must describe the alleged trade secret "with adequate specificity to inform the defendants what it is alleged to have misappropriated."  *Storagecraft Techology Corp. v. Symantec Corp.*, No. 2:07 cv 856 CW, 2009 U.S. Dist. LEXIS 10608 (D. Utah Feb. 11, 2009); *see also Big Vision Private, Ltd. v. E.I. Dupont De Nemours & Co.*, 1 F. Supp. 3d 224, 257 (S.D.N.Y. 2014) (Plaintiff must "describe[] its trade secret[] with sufficient particularity, both at the time of the disclosure and throughout the litigation"); *Sit-Up Ltd. v. IAC/InterActiveCorp.*, No. 05 Civ. 9292 (DLC). 2008 U.S. Dist. LEXIS 12017, 2008 WL 463884, at *10-12 (S.D.N.Y. Feb. 20, 2008) ("Every court to have opined on this issue [of Plaintiff's burden to describe its alleged trade secrets] has ruled that specificity is required").

Instead of meeting these pleading requirements—at a minimum, alleging what its trade secrets are and how Castle Hill has used them—VGT spends most of its time explaining how its

---

[7] VGT also claims it has trade secrets relating to "the specifics of the manner in which the bingo game is played (including the process and timing of ball drops)."  Compl. ¶ 41.  But VGT never says anything more about this—except in an entirely different section for a different claim, where VGT says that "the method for conducting the ball drop" is part of its trade dress.  *Id*. ¶ 26.  Accordingly, this alleged trade secret fails for the same reason as the others: lack of information.

[8] For its Count VI, VGT asserts a common law claim for theft of "confidential business information" as a fallback—in the event the Court finds that VGT's alleged (and undefined) trade secrets do not "rise to the level of trade secret."  *See* Compl., ¶ 131. This claim is similarly undefined, and fails for the same reason VGT's trade secrets claim fails.

former employees left VGT to found Castle Hill, and then asserts, without any basis, that because VGT thinks Castle Hill and VGT games are similar, theft of VGT's trade secrets "is evident."  Compl. ¶ 98.  This, too, is insufficient, for "Plaintiffs must offer more than vague assertions that defendant could not help but use trade secret information." *Biocore, Inc. v. Khosrowshahi*, 96 F. Supp. 2d 1221, 1230 (D. Kan. 2000) (internal quotes omitted).

Because VGT has failed to allege exactly what secrets Castle Hill stole, VGT's trade secrets claim fails and should also be dismissed. *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013) ("the central inquiry [for infringement and unfair competition claims] is the same: whether the junior user's mark is likely to cause confusion with the senior user's mark").

### E.    VGT's unfair competition claims are derivative, and fail as the trademark and trade dress claims fail.

VGT's claims for unfair competition are based solely on trademark and trade dress infringement. *See* Compl. Counts II-IV. . Because of this, the unfair competition claims are derivative and fail as the initial trademark and trade dress claims fail. *See Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013) ("the central inquiry [for infringement and unfair competition claims] is the same: whether the junior user's mark is likely to cause confusion with the senior user's mark"); *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219 (10th Cir. 2004); *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513 (10th Cir. 1987) (Section 53(a)(1) of the Oklahoma Deceptive Trade Practices Act requires "the same standards of proof" as does Section 43(a) of the Lanham Act).

Accordingly, the Court should dismiss Counts II, III, and IV.[9]

---

[9] The trademark infringement and trade dress infringement claims in theses counts are addressed earlier in the brief.

## VI.     CONCLUSION

For the foregoing reasons, the Court should dismiss all counts in VGT's Complaint.

Respectfully submitted,

JAMES C. HODGES, P.C.
A Professional Corporation

_s/ James C. Hodges_
James C. Hodges, OBA #4254
2622 East 21st Street, Suite 4
Tulsa OK 74114
(918) 779-7078
(918) 770-9779 facsimile
JHodges@HodgesLC.com

Duane H. Zobrist (admitted _pro hac vice_)
Jonathan S. Jacobs (admitted _pro hac vice_)
Zobrist Law Group, PLLC
1900 Arlington Blvd. Suite B
Charlottesville, VA 22903
434-977-9666
dzobrist@zoblaw.com
jjacobs@zoblaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of October, 2017, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to Plaintiff's counsel:

Graydon Dean Luthey, Jr.
Neil K. Roman
Gary M. Rubman
Peter Swanson
Michael Sawyer
Rebecca B. Dalton

*s/ James C. Hodges*
JAMES C. HODGES