**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **VIDEO GAMING TECHNOLOGIES, INC.,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 17-cv-454-GKF-JFJ |
| **CASTLE HILL STUDIOS, LLC, et al.** | ) ) ) |
| Defendants. | ) |

**DEFENDANTS' REPLY IN FURTHER**
**SUPPORT OF MOTION TO DISMISS COMPLAINT**

Defendants Castle Hill Studios, LLC, Castle Hill Holding, LLC, and Ironworks Development, LLC (collectively, "Defendants" or "Castle Hill"), submit this reply in support of their motion to dismiss the claims against them contained in plaintiff Video Gaming Technologies, Inc.'s ("VGT") Complaint (ECF Nos. 29-30).

**INTRODUCTION**

This ill-conceived lawsuit is nothing more than an attempt by VGT to maintain its position as the dominant player in the Class II slot machine industry. VGT's trademark claims (Counts I, III, and IV)[1] fail because Castle Hill's trademarks are not even remotely similar to VGT's trademarks, much less likely to cause consumer confusion. VGT's trade dress claims (Counts II, III, and IV) fail as a matter of law because VGT does not – and cannot – allege that its themes are distinctive in the relevant industry. Finally, VGT's trade secret claim (Count V) fails because VGT does not identify the specific trade secrets at issue, or allege how Castle Hill misused such

---

[1] Count III purports to arise under the Oklahoma Deceptive Practices Act, while Count IV purports to arise under common law. Both Counts III and IV allege unfair competition, trade dress infringement, and trademark infringement.

secrets. Because VGT's complaint is devoid of legally sustainable causes of action, it should be dismissed in its entirety.

## ARGUMENT

### I. VGT'S TRADEMARK CLAIMS CANNOT BE SUPPORTED BY TRADE DRESS ALLEGATIONS

Without fully addressing the arguments in Castle Hill's motion, VGT relies on conclusory allegations in support of its trademark claim, notably blurring the line between the independent legal theories of trademark and trade dress in an attempt to lull the Court into accepting its facially deficient trademark claims.

Castle Hill's Motion to Dismiss includes a chart setting forth each of its allegedly infringing trademarks. *See* Motion (ECF No. 30) at 3-4. A simple side by side comparison of these marks reveals no legally significant similarity between VGT's marks and the Castle Hill marks. Indeed, more than half of the allegedly infringing marks do not share a *single word* with their VGT counterparts. And the shared terms are merely descriptive gambling terms such as JACKPOT, MONEY, and CASH, as confirmed by the disclaimers in VGT's registration. *See*, *e.g.*, COUNTIN' CASH, U.S. Reg. No. 3596682 (CASH disclaimed); BLAZIN' CASH, U.S. Ser. No. 87420482 (CASH disclaimed); WILD COCKATOO CASH, U.S. Ser. No. 87296010 (CASH disclaimed); POLAR JACKPOT FRENZY, U.S. Reg. No. 5168371 (JACKPOT disclaimed); BUG MONEY, U.S. Reg. No. 4760565 (MONEY disclaimed).

Despite confirming that "most of VGT's federally registered trademarks are for word marks" and that "almost all of VGT's and [Castle Hill's] federal trademark registrations are for word marks[,]" Opposition (ECF No. 35) at 8; n.6, VGT provides no explanation of the allegedly infringing nature of Castle Hill's marks. Rather, VGT urges the Court to *ignore* the trademarks that it claims are infringed and to consider instead the "similarity between the marks as a whole[.]"

*Id.* at 8; *see id.* at 10 ("VGT obviously does not claim exclusive rights to use of the word 'money' or any similar word on its own in connection with gaming machines. Rather, VGT alleges infringement based on the marks as a whole.").

Actions for trademark and trade dress involve two separate theories. *See Forney Indus., Inc. v. Daco of Missouri, Inc.*, 835 F.3d 1238, 1244 (10th Cir. 2016) (differentiating between a mark, such as "Nike" on the one hand, and "trade dress," which includes "an object's total image and overall appearance" on the other hand); *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1146 (10th Cir. 2016) ("A trade dress is an object's 'total image and overall appearance', and 'may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques.'"); *Test Masters Ed. Svcs., Inc. v. State Farm Lloyds*, 791 F.3d 561, 564-565 (5th Cir. 2015) (explaining that "trade dress protection is generally focused more broadly than trademark protection.") (internal citations omitted). Disregarding the differences between trademark and trade dress, VGT argues that the overall "similarities between [the] design elements in VGT's games and CHG's games" sustain its trademark claims. Opposition (ECF No. 35) at 9. This conflation of trademark and trade dress is disingenuous and does not serve to bolster VGT's legally insufficient trademark claims.

## II.  VGT HAS FAILED TO SUFFICIENTLY ALLEGE THAT ITS TRADE DRESS IS DISTINCTIVE AND NON-FUNCTIONAL

VGT does not dispute that it has failed to specify the trade dress features of its games that it claims to be distinctive and thus subject to protection. Instead, VGT relies on images of its games in the Complaint to allege the trade dress features and accuses Castle Hill of "ignoring that the Complaint includes images of [VGT's] games as well as images of its competitors' games[.]" Opposition (ECF No. 35) at 17. VGT references more than a dozen of its own games and a dozen of Castle Hill's games throughout the Complaint, then expects Castle Hill and this Court to guess

the games and the elements of those games that VGT alleges are unique and distinctive for trade dress purposes. It is VGT's responsibility at the pleadings stage to set forth sufficient facts for Castle Hill to understand what it is defending.

VGT relies on *Kimray, Inc. v. Norriseal-Wellmark, Inc.*, No. CIV-16-1167-D, 2017 WL 1906941, at *3 (W.D. Okla. May 8, 2017), in support of its trade dress claims, but *Kimray* is distinguishable from the facts at issue here. In *Kimray*, the manufacturer of a treater valve used in oilfields did not have to specify each design element it alleged to be distinctive and non-functional where only a single and discrete product was at issue. Here, VGT's Complaint identifies more than a dozen of its own games and a dozen of Castle Hill's games, with no specification of the allegedly infringed trade dress elements. VGT references general features, some of which could be construed as trade dress, such as game cabinet, game play sound, award sound, bingo play and pays, and red screen free spins, without specifying how those features are integrated into its games or infringed by Castle Hill's games. VGT further fails to allege facts to support its conclusion that its trade dress features are non-functional. VGT merely repeats the same conclusory allegation that the features it identifies are "arbitrary" and therefore "non-functional," without providing any factual basis demonstrating that those features do not serve gameplay functions. To the contrary, the explanation that VGT does provide demonstrates that the features are indeed functional features of slot machines (for example, an award sound alerting a player that the player has won money). The Complaint is devoid of facts that VGT's trade dress is non-functional.

### III. VGT CANNOT DEMONSTRATE LIKELIHOOD OF CONSUMER CONFUSION

The likelihood of consumer confusion is an element of both the trademark and trade dress claims. *See Water Pik, Inc. v. Med-Sys, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013) (explaining that the central inquiry in determining the viability of an infringement claim is "whether the

consumer is likely to be deceived or confused by the similarity of the marks."); *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222 (10th Cir. 2007) (identifying "likelihood of confusion among customers as to the source of the competing products" as an essential element of trade dress infringement). To satisfy this essential element of its trademark and trade dress claims, VGT merely relies on a conclusory statement that Castle Hill's slot machines have "resulted in actual customer confusion." Complaint ¶ 3; ¶ 90.

This oblique reference to "actual customer confusion" is bereft of the requisite factual support in the Complaint. In failing to define the infringed trademarks or trade dress, the relevant consumers, and the factual basis for its summary conclusion that those consumers are actually confused as to the source of the slot machines, VGT's conclusion of actual consumer confusion is groundless. Even anecdotal examples of actual confusion are insufficient to allege the likelihood of consumer confusion. *See, e.g., Water Pik, Inc.,* 726 F.3d at 1151-52 (rejecting anecdotal examples of actual confusion and explaining that "[w]hat is required for a claim of trademark infringement under the Lanham Act is a *likelihood* of confusion, not merely the possibility of confusion.") (emphasis original); *Estee Lauder, Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1510 (2d Cir. 1997) ("Likelihood of confusion means a probability of confusion; 'it is not sufficient if confusion is merely possible'.") (quoting 3 J. McCarthy, *McCarthy on Trademarks and Unfair Competition* §23:2 (1996)). Because VGT has provided no support for its claims of trademark and trade dress infringement, these claims should be dismissed.

## IV. THE COMPLAINT FAILS TO IDENTIFY VGT'S TRADE SECRETS

A claim of misappropriation of trade secrets under Oklahoma law requires allegations concerning: 1) the existence of a trade secret; 2) the misappropriation of that trade secret by the defendant; and 3) use of that trade secret by the defendant to the plaintiff's detriment. *See MTG*

*Guarnieri Mfg, Inc. v. Clouatre*, 239 P.3d 202, 209 (Okla. Civ. App. 2010). VGT has failed to properly plead facts in support of any of these elements. Other than making generalized reference to "underlying math" and "source code," VGT makes no attempt to explain the specific trade secrets it alleges are at issue. Likewise, the only "facts" VGT alleges regarding Castle Hill's purported misappropriation of trade secrets are that certain former VGT employees are employed by Castle Hill. Complaint ¶ 50; ¶¶ 94-98. Based on nothing other than its own conjecture, VGT then concludes that former VGT employees have "shared information relating to the VGT Trade Secrets" which VGT claims is "evident" because Castle Hill's games are alleged to "mimic the play" of certain VGT games. Complaint ¶ 98.

Importantly, VGT identifies more than a dozen Castle Hill games, so-called "Infringing Games," but fails to indicate which of those games is alleged to have been created using VGT's trade secrets, and what trade secrets are alleged to have been used in which game's development. Based on the allegations of the Complaint, it is impossible for Castle Hill to discern what it is alleged to have misappropriated from VGT. Such conclusory statements, without properly pleaded supporting facts, fail to state a claim. *See, e.g., Hall v. Bellmon*, 935 F.3d 1106, 1110 (10th Cir. 1991) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based.").

## **CONCLUSION**

VGT has failed to state a claim upon which relief can be granted against Castle Hill. For the reasons stated herein and as set forth in Defendants' brief in support of motion to dismiss complaint, Defendants respectfully request that the Court dismiss all claims against them contained in VGT's Complaint.

Dated:  November 6, 2017　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　 s/ James C. Hodges
　　　　　　　　　　　　　　　　　　　James C. Hodges, OBA #4254
　　　　　　　　　　　　　　　　　　　JAMES C. HODGES, P.C.
　　　　　　　　　　　　　　　　　　　2622 East 21st Street, Suite 4
　　　　　　　　　　　　　　　　　　　Tulsa, Oklahoma 74114
　　　　　　　　　　　　　　　　　　　(918) 779-7078
　　　　　　　　　　　　　　　　　　　(918) 770-9779 (facsimile)
　　　　　　　　　　　　　　　　　　　JHodges@HodgesLC.com

　　　　　　　　　　　　　　　　　　　Robert C. Gill (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　Thomas S. Schaufelberger (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　Matthew J. Antonelli (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　SAUL EWING ARNSTEIN & LEHR, LLP
　　　　　　　　　　　　　　　　　　　1919 Pennsylvania Avenue, NW, Suite 550
　　　　　　　　　　　　　　　　　　　Washington, D.C. 20006
　　　　　　　　　　　　　　　　　　　(202) 295-6605
　　　　　　　　　　　　　　　　　　　(202) 295-6705 (facsimile)
　　　　　　　　　　　　　　　　　　　robert.gill@saul.com
　　　　　　　　　　　　　　　　　　　tschauf@saul.com
　　　　　　　　　　　　　　　　　　　matt.antonelli@saul.com

　　　　　　　　　　　　　　　　　　　Sherry H. Flax (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　SAUL EWING ARNSTEIN & LEHR, LLP
　　　　　　　　　　　　　　　　　　　500 E. Pratt Street, Suite 900
　　　　　　　　　　　　　　　　　　　Baltimore, Maryland 21202
　　　　　　　　　　　　　　　　　　　(410) 332-8764
　　　　　　　　　　　　　　　　　　　(410) 332-8785 (facsimile)
　　　　　　　　　　　　　　　　　　　sherry.flax@saul.com

　　　　　　　　　　　　　　　　　　　*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 6th day of November, 2017, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to Plaintiff's counsel:

Graydon Dean Luthey, Jr.
Neil K. Roman
Gary M. Rubman
Peter A. Swanson
Michael S. Sawyer
Rebecca B. Dalton

*Attorneys for Plaintiff*

                                          *s/ James C. Hodges*
                                        JAMES C. HODGES