IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) VIDEO GAMING TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>1) CASTLE HILL STUDIOS LLC<br>(d/b/a CASTLE HILL GAMING);<br>2) CASTLE HILL HOLDING LLC<br>(d/b/a CASTLE HILL GAMING); and<br>3) IRONWORKS DEVELOPMENT, LLC<br>(d/b/a CASTLE HILL GAMING)<br><br>Defendants. | Case No. 4:17-cv-00454-GKF-mjx |

### PLAINTIFF'S MOTION TO COMPEL TRADE SECRET DISCOVERY AND FOR ENTRY OF A PROTECTIVE ORDER

Plaintiff Video Gaming Technologies, Inc. ("VGT") brings this motion to compel to address Defendants' backsliding on discovery commitments made to this Court and to VGT in order to secure cancellation of the October 30 Scheduling Conference. Given Defendants' refusal to meet and confer about finalizing a protective order—which VGT first proposed more than six weeks ago—VGT also requests entry of a protective order.

VGT filed this action to address the repeated infringement of VGT's trademark and trade dress and the misappropriation of VGT's trade secrets by Defendants Castle Hill Studios LLC, Castle Hill Holding LLC, and Ironworks Development, LLC (collectively, "CHG"), companies led by breakaway VGT employees. The motion to compel arises out of the Scheduling Conference set by the Court for last month to resolve the sole dispute in the parties' Joint Status Report: whether the Court would "delay any discovery Plaintiff obtains from Defendants relating to the alleged misappropriation of trade secrets and confidential information until *Plaintiff has*

*described with reasonable particularity the trade secrets and confidential information at issue.*" Dkt. 32, at 4–5 (emphasis added). To secure cancellation of that Scheduling Conference, CHG's new counsel "agreed to withdraw" its "request that discovery be sequenced as to Plaintiff's trade secrets claim." Dkt. 44 ¶ 5. CHG informed the Court that "[b]ased on this agreement, counsel believe that there is no longer a need for the Scheduling Conference." *Id.* A few days after the Court granted CHG its requested relief, Dkt. 45, however, CHG went back to its previous position that it does not have to provide trade secret discovery until VGT "describe[s] each trade secret claimed in this action."[1] CHG should be held to its commitments and should not be allowed to delay any further its production of indisputably relevant trade secret discovery.

In addition to reneging on the withdrawal of its discovery objection, CHG also has refused to engage in a meet and confer to discuss the substance of the dispute. Although CHG has twice proposed dates to meet and confer, it cancelled those dates after VGT confirmed its availability.[2] Because CHG has failed to respond to VGT's attempts to meet and confer, VGT had no choice but to file this motion to compel.

CHG also has reneged on its promise to negotiate an appropriate protective order, entry of which is necessary for the parties to engage in trade secret discovery. Specifically, VGT has been attempting to negotiate a protective order with CHG since September to handle the exchange of source code and other highly sensitive information. Although the parties appeared to be close to an agreement with CHG's former lawyers, CHG's new lawyers have refused to

---

[1] Ex. A, R. Gill email to G. Rubman (Nov. 6, 2017), to the Declaration of Michael S. Sawyer dated November 14, 2017. Exhibits A through E are attached to this declaration.

[2] Ex. A, R. Gill email to G. Rubman (Nov. 7, 2017 3:08 PM); *id.*, R. Gill email to G. Rubman (Nov. 8, 2017); *id.*, G. Rubman email to R. Gill (Nov. 8, 2017). Counsel for VGT and CHG are both in Washington, DC. VGT's counsel offered to host a meet and confer or go to the offices of CHG's counsel. *Id.*, G. Rubman email to R. Gill (Nov. 7, 2017).

discuss the protective order—thereby violating, among other things, their commitment to make "make best efforts to agree to a protective order" by November 8. Ex. A, R. Gill email to N. Roman (Oct. 27, 2017 3:50 PM); *id.*, N. Roman email to R. Gill (Oct. 27, 2017 3:23 PM). Because a protective order is necessary for trade secret discovery, VGT had no choice but to file this motion asking the Court to enter a protective order.

I.   BACKGROUND

   A.   CHG's Commitment To Withdraw Its Request To Delay Trade Secret Discovery Until VGT Describes Its Trade Secrets

During the Rule 26(f) conference, the parties were unable to resolve only one dispute: whether CHG could "delay any discovery Plaintiff obtains from Defendants relating to the alleged misappropriation of trade secrets and confidential information until Plaintiff has described with reasonable particularity the trade secrets and confidential information at issue." Dkt. 32, at 4–5. VGT's position is—and remains—that CHG "should not be permitted to delay responding to Plaintiff's pending discovery requests, which Defendants received before serving discovery requests on Plaintiff," because VGT had already "identified its trade secrets with reasonable particularity in its Complaint" and had agreed to "provide additional information in response to Defendants' pending discovery requests." *Id.* at 4. In the parties' Joint Status report, VGT "request[ed] a scheduling conference to resolve the issue," *id.* at 7, while CHG submitted that "no conference is necessary" because it would "instead file a motion regarding the phased trade secret discovery issue." *Id.*

After receiving the Joint Status Report, the Court set a Scheduling Conference for October 30. Dkt. 33.

Two business days before the Scheduling Conference, CHG requested a postponement on the basis that it would be substituting counsel. Ex. B, J. Jacobs email to N. Roman (Oct. 26, 2017).

After meeting and conferring, the parties agreed to cancel the Scheduling Conference based on CHG's representation that it would "immediately drop its timing-based objections to providing trade secret discovery." Ex. A, R. Gill email to N. Roman (Oct. 27, 2017 3:50 PM); *id.*, N. Roman email to R. Gill (Oct. 27, 2017 3:23 PM).

Once the parties reached agreement, CHG indicated that it would "file a motion to cancel the hearing, and indicate [VGT's] consent" to the motion. *Id.*, R. Gill email to G. Rubman (Oct. 27, 2017 5:32 PM).

In response, VGT asked CHG to "ensure that the motion makes it clear that the parties have reached an agreement with respect to the one issue that had been in dispute relating to the scheduling conference (i.e., [CHG] will be dropping its timing-based objections to the trade secret discovery)." *Id.*, G. Rubman email to R. Gill (Oct. 27, 2017 5:53 PM).

Therefore, when CHG filed its Consent Motion to Strike Scheduling Conference, it stated that "counsel believe that there is no longer a need for the Scheduling Conference" because "Defendants have agreed to withdraw" their "request that discovery be sequenced as to Plaintiff's trade secrets claim." Dkt. 44, ¶ 5.

The backtracking began almost immediately.

After the Court cancelled the Scheduling Conference on October 30, Dkt. 45, CHG renewed a request to VGT to extend the deadline for its discovery responses from October 30 to November 22. Ex. A, S. Flax email to G. Rubman (Oct. 30, 2017).

4

Before agreeing, VGT sought confirmation that CHG would produce its regulatory and testing laboratory submissions (which contain CHG's source code) on November 22 because CHG lacked a "reasonable explanation" for delaying production given its "agreement to drop [its] timing-based objections to trade secret discovery." *Id.*, G. Rubman email to S. Flax (Oct. 30, 2017). Regulatory and testing laboratory submissions[3] are generally required before a game can be deployed in casinos. Because these submissions include source code, they are likely relevant to VGT's claim that CHG misappropriated VGT's source code trade secrets; indeed, CHG's initial disclosures admit that its source code "may be relevant to the allegations in this case." Ex. D, Defendants' Rule 26(A)(1) Initial Disclosures, at 5.

Instead of confirming that it would produce the requested discovery, CHG attempted to rewrite history. CHG claimed that it had only agreed "to withdraw [its] request to produce regulatory submissions and source code after disposition of the pending Motion to Dismiss" and had reserved its right to assert that these materials were not "relevant absent VGT's specification of the trade secrets copied." Ex. A, S. Flax email to G. Rubman (Oct. 31, 2017). Still, CHG offered to "produce the requested materials on Nov. 22," but only "if VGT [agreed] to produce its regulatory submissions and source code . . . on the same date." *Id.*

In response, VGT expressed concern that CHG "may not live up to its end of our agreement and may seek to further delay production of these highly relevant materials." *Id.*, G. Rubman email to S. Flax (Nov. 2, 2017). VGT nonetheless accepted CHG's alternate offer for

---

[3] Gaming companies generally submit each version of source code to laboratories that test the code on hardware similar to that deployed on casino floors. Once the laboratory certifies the source code, gaming companies can seek regulatory approval by providing the testing certification to regulators.

5

simultaneous production of these materials on November 22 and agreed to extend the discovery deadline on the basis of that agreement. *Id.*

After receiving its requested extension, CHG retracted even its alternate offer of a simultaneous exchange of regulatory submissions and source code. Instead, CHG resurrected its position from the Joint Status Report that CHG is not required to provide trade secret discovery until VGT "describes each trade secret claimed in this action." *Id.*, R. Gill email to G. Rubman (Nov. 6, 2017). "Once" it has "this information," CHG asserted, it "will be in position to determine the scope of discovery that . . . is appropriate for this claim." *Id.*

VGT promptly informed CHG that its position is "directly contrary to [CHG's] previous representation to the Court in the motion to strike the scheduling conference." *Id.*, G. Rubman email to R. Gill (Nov. 6, 2017).

CHG disagreed, stating that it was not "making trade secret discovery dependent on obtaining ruling on the motion to dismiss." *Id.*, R. Gill email to G. Rubman (Nov. 7, 2017 3:08 PM). Of course, this was not the objection that prompted the request for a Scheduling Conference.

### B. CHG's Refusal To Meet And Confer About Its Resurrected Position

VGT has repeatedly attempted to meet and confer about CHG's reversal of positions on trade secret discovery, but CHG has refused to engage in this process.

VGT first requested a meet and confer on October 30, hours after the Court cancelled the Scheduling Conference. Ex. A, G. Rubman email to S. Flax (Oct. 30, 2017). CHG refused to provide its availability because one team member was at trial the week of October 30. *Id.*, S. Flax email to G. Rubman (Oct. 31, 2017).

6

VGT then attempted to meet and confer the following Monday, November 6. *Id.*, G. Rubman email to S. Flax (Nov. 2, 2017). Again, CHG refused to provide its availability. *Id.*, R. Gill email to G. Rubman (Nov. 6, 2017).

Next, VGT sought to meet and confer on November 7 or the morning of November 8. *Id.*, G. Rubman email to R. Gill (Nov. 6, 2017). CHG finally responded, asking for VGT's availability to meet and confer the afternoon of November 8. *Id.*, R. Gill email to G. Rubman (Nov. 7, 2017 3:08 PM). VGT promptly provided its availability for that afternoon. *Id.*, G. Rubman email to R. Gill (Nov. 7, 2017).

By that afternoon, however, CHG sought to move the meet-and-confer to Monday, November 13. *Id.*, R. Gill email to G. Rubman (Nov. 8, 2017). VGT promptly informed CHG that it was available all day Monday, November 13 to meet and confer. *Id.* G. Rubman email to R. Gill (Nov. 8, 2017).

But CHG again went silent and never provided its availability to meet and confer on Monday. *See id.*

### C.  CHG's Failure To Honor Its Commitment To Make "Best Efforts To Agree To A Protective Order" By November 8

Before the Rule 26(f) conference in September, VGT sent CHG a proposed protective order to handle the exchange of source code and other highly confidential information. Ex. C, M. Sawyer email to D. Zobrist (Sept. 22, 2017).

It took three weeks, and repeated emails from VGT, before CHG substantively responded with a proposed protective order of its own. *Id.*, J. Jacobs email to G. Rubman (Oct. 13, 2017).

VGT responded to CHG's proposed protective order within three business days and arranged a call to discuss. *Id.*, M. Sawyer email to J. Jacobs (Oct. 18, 2017). VGT's principal

7

changes to CHG's proposed protective order were added to account for "the exchange of source code." *Id.*

On October 24, the parties discussed the protective order by telephone and came close to agreement on most terms. The only dispute at that point appeared to be the number of non-lawyer party employees who could be provided access to confidential material. *See id.*, J. Jacobs email to M. Sawyer (Oct. 24, 2017); M. Sawyer email to J. Jacobs (Oct. 26, 2017).

On October 26, however, new counsel appeared for CHG and sought to cancel the October 30 Scheduling Conference. Ex. B, J. Jacobs email to N. Roman (Oct. 26, 2017).

VGT promptly advised the new lawyers of the status of the protective order negotiations and requested that, in exchange for agreeing to cancel the Scheduling Conference, CHG "make best efforts to agree to a protective order" by November 8. Ex. A, N. Roman email to R. Gill (Oct. 27, 2017 3:23 PM). CHG agreed to do so. *Id.*, R. Gill email to N. Roman (Oct. 27, 2017 3:50 PM).

CHG, however, has failed to make any effort, let alone best efforts, to agree to a protective order. VGT sent CHG's new attorneys four emails about the protective order, but CHG has refused to respond substantively about any of them. *See, e.g.*, *id.*, G. Rubman email to R. Gill (Nov. 8, 2017); *id.*, G. Rubman email to S. Flax (Nov. 2, 2017); Ex. C, M. Sawyer email to S. Flax (Nov. 3, 2017); *id.*, M. Sawyer email to J. Jacobs (Oct. 26, 2017).

## II.     ARGUMENT

### A.     The Court Should Compel CHG To Withdraw Its Request For Sequenced Trade Secret Discovery And To Produce Its Regulatory and Testing Lab Submissions Immediately.

VGT brings this motion to compel CHG to honor its discovery commitments.

Last month, CHG told this Court that it would "withdraw" its "request," Dkt. 44 ¶ 5, to "delay any discovery Plaintiff obtains from Defendants relating to the alleged misappropriation

of trade secrets and confidential information until Plaintiff has described with reasonable particularity the trade secrets and confidential information at issue," Dkt. 32, at 4–5.

Just ten days later, however, CHG renewed its request to delay trade secret discovery until VGT first "describe[s] each trade secret claimed in this action." Ex. A, R. Gill email to G. Rubman (Nov. 6, 2017).

In light of this clear record, CHG should not be permitted to recast its withdrawn request as relating to disposition of its motion to dismiss rather than VGT's identification of trade secrets. Nothing in the Joint Status Report indicates that CHG sought to delay trade secret discovery pending disposition of the motion to dismiss, *see* Dkt. 32, nor is there a basis for doing so, *TSM Assocs., LLC v. Tractor Supply Co.*, No. 08-CV-230-JHP-FHM, 2008 WL 2404818, at *1 (N.D. Okla. June 11, 2008) ("Staying discovery during the pendency of a motion to dismiss is not the usual course.").

Even apart from the principle that litigants should be held to their commitments, CHG should be directed to provide trade secret discovery immediately because its regulatory and testing laboratory submissions (including source code) are plainly relevant to this action for misappropriation of source code trade secrets and responsive to VGT's discovery requests. *See* Addendum. CHG in its initial disclosures *concedes* that "the source code used for Castle Hill games" "may be relevant to the allegations in this case," and CHG indicated that it may use such code to support its defenses in the litigation. Ex. D, Defendants' Rule 26(A)(1) Initial Disclosures, at 5. Moreover, there can be no claim of burden because CHG has already compiled the materials for submission to third parties; indeed, CHG has acknowledged that it is able to "produce the requested materials on Nov. 22." Ex. A, S. Flax email to G. Rubman (Oct. 31, 2017). CHG's only objection to their production is its resuscitated position that VGT must first

9

"describe each trade secret claimed in this action." *Id.*, R. Gill email to G. Rubman (Nov. 6, 2017).

### B. The Court Should Enter a Protective Order So That Trade Secret Discovery May Proceed.

Although VGT intends to describe its trade secrets in more detail, CHG is preventing VGT from doing so by refusing to negotiate a protective order. For nearly two months, CHG has refused to engage in discussions, routinely taking weeks even to respond to correspondence regarding the protective order. *See, e.g.*, Ex. C, M. Sawyer email to S. Flax (Nov. 3, 2017); *id.*, G. Rubman email to J. Jacobs (Oct. 6, 2017). More recently, CHG has failed to abide by its commitment to "make best efforts to agree to a protective order" by November 8. Ex. A, R. Gill email to N. Roman (Oct. 27, 2017 3:50 PM); *id.*, N. Roman email to R. Gill (Oct. 27, 2017 3:23 PM).

This failure is particularly troubling in light of CHG's decision to resurrect its request for sequenced trade secret discovery. That is, CHG refuses to provide any trade discovery until VGT describes its trade secrets more fully. Yet, at the same time, CHG refuses to negotiate a protective order, thereby preventing VGT from providing the more detailed description that CHG claims to need.

Before CHG retained new lawyers for this case, the parties were close to agreement on a protective order; the only apparent dispute between the parties at that point was the number of non-lawyer party representatives that could see confidential material. *See* Ex. C, Email from M. Sawyer to J. Jacobs (Oct. 26, 2017). CHG proposed five; VGT proposed one because of the nature of the allegations in the case and the fact the parties sell similar products to the same customers. *Id.* Since CHG retained new counsel, CHG has refused to discuss even this issue.

10

VGT thus requests that the Court enter the draft protective order attached to this motion as Exhibit 1, on which CHG has refused to comment for weeks.[4] This draft protective order contains the following changes to the Court's default protective order:

- Highly Confidential Source Code: VGT proposes a new category of designated material to account for the unique protections necessary for source code;

- Sealed Filings: VGT proposes limiting the requirement that a motion to file under seal be granted before sealed filings can be lodged with the Court because most trade secret filings may involve some highly confidential information; and

- Changes to Who May See Protected Material: VGT seeks to limit the types and number of those persons who may have access to protected material to account for the parties' sale of similar products to the same customers, as well as the nature of the allegations in this case.

Because the draft protective order reasonably modifies this Court's default protective order to account for the unique nature of this case (specifically, that source code will be exchanged between competing businesses), VGT requests entry of the proposed protective order attached as Exhibit 1 to this motion. Alternatively, VGT requests that the Court order CHG to promptly negotiate a stipulated protective order so that trade secret discovery may proceed.

This motion complies with the Court's instructions for seeking entry of a protective order.

## III. CONCLUSION

For the foregoing reasons, VGT requests that the Court compel CHG to withdraw its request for sequenced trade secret discovery and immediately produce its regulatory and testing laboratory submissions for all the games at issue in this litigation. VGT further requests that the

---

[4] Exhibit 1 contains the proposed protective order; a version of this order that is redlined against this Court's default protective order is attached as Exhibit E to the accompanying declaration.

Court enter the proposed protective order attached as Exhibit E so that trade secret discovery may proceed.

November 14, 2017                    Respectfully submitted,

*/s/ Gary Rubman*
Graydon Dean Luthey, Jr., OBA No. 5568
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
Telephone: (918) 595-4821
Facsimile: (918) 595-4990
dluthey@gablelaw.com

Gary M. Rubman
Peter A. Swanson
Michael S. Sawyer
Rebecca B. Dalton
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 778-5465
grubman@cov.com
pswanson@cov.com
msawyer@cov.com
rdalton@cov.com
   (admitted pro hac vice)

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1221
Facsimile: (212) 841-1010
nroman@cov.com
   (admitted pro hac vice)

***Counsel for Video Gaming Technologies, Inc.***

# ADDENDUM

**VGT'S REQUEST FOR PRODUCTION NO. 1:**

All Documents and Things referring or relating to regulatory or compliance submissions by CHG concerning each Accused Game, including submissions to any regulatory body, tribe or third-party testing organization involved in reviewing or approving the Accused Games.

**VGT'S REQUEST FOR PRODUCTION NO. 6:**

All versions of source code ever deployed on or tested with the Accused Games, their related servers (including servers used in connection with the bingo call for any of the Accused Games), or other Class II gaming development work.

**VGT'S REQUEST FOR PRODUCTION NO. 7:**

All Documents and Things referring or relating to the math, probability, statistics, payouts, return to player, or other mathematical calculations used in connection with the Accused Games, including PAR sheets and other similar documents.

## CERTIFICATE OF SERVICE

    I hereby certify that on November 14, 2017, I filed the foregoing Plaintiff's Motion to Compel via ECF, which caused a true and correct copy of the foregoing Opposition to be delivered to the following counsel for Defendants:

Robert C. Gill
Thomas S. Schaufelberger
Matthew J. Antonelli
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
tschauf@saul.com
matt.antonelli@saul.com

Sherry H. Flax
SAUL EWING ARNSTEIN & LEHR, LLP
500 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 332-8764
(410) 332-8785 (facsimile)
sherry.flax@saul.com

James C. Hodges, OBA 4254
JAMES C. HODGES, PC
2622 East 21st Street, Suite 4
Tulsa, OK 74114
Telephone: (918) 779-7078
JHodges@HodgesLC.Com

Duane H. Zobrist
Jonathan S. Jacobs
ZOBRIST LAW GROUP PLLC
1900 Arlington Blvd. Suite B
Charlottesville, VA 22903
Telephone: (434) 658-6400
dzobrist@zoblaw.com
jjacobs@zoblaw.com

*Attorneys for Defendants*

                     */s/ Gary Rubman*