**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **VIDEO GAMING TECHNOLOGIES, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-454-GKF-JFJ |
| | ) | |
| **CASTLE HILL STUDIOS, LLC, et al.** | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**
**TRADE SECRET DISCOVERY AND FOR ENTRY OF A PROTECTIVE ORDER**

Defendants Castle Hill Studios, LLC, Castle Hill Holding, LLC, and Ironworks Development, LLC (collectively, "Defendants" or "Castle Hill"), submit this opposition to plaintiff Video Gaming Technologies, Inc.'s ("VGT") Motion to Compel Trade Secret Discovery and For Entry of a Protective Order.

## INTRODUCTION

In an attempt to divert the Court's focus from its inability to plead a viable trade secret claim, Plaintiff Video Gaming Technologies, Inc. ("VGT") has filed what it styles as a "Motion to Compel Trade Secret Discovery and for Entry of a Protective Order." VGT's motion fails because it is based on a mischaracterization of Castle Hill's position, and it is also premature.

As an initial matter, Castle Hill never agreed to drop or otherwise waive any objections it had to VGT's discovery requests regarding trade secrets, as VGT claims. Rather, as the documents VGT attached to its motion plainly show, Castle Hill agreed to drop its request in the parties' joint status report (ECF No. 32) that the Court stay discovery regarding trade secrets and order discovery to be conducted in phases or a bifurcated manner. Instead of seeking to stay trade secret discovery, Castle Hill determined that a more appropriate approach to addressing VGT's lack of specificity

regarding its trade secrets claims would be to raise specific objections to VGT's requests in the normal course of discovery. Importantly, Castle Hill *could not* have agreed to drop objections to VGT's discovery, as VGT claims, even if it had wanted to. This is because at the time of the supposed agreement (and even later when VGT filed this motion to compel), *Castle Hill had not even responded to VGT's discovery requests.* Not surprisingly, VGT's motion fails to explain how Castle Hill could have agreed to withdraw discovery objections that Castle Hill had not yet made.

VGT's motion is flawed in several other fundamental respects. First, the motion is premature. As noted, Castle Hill had not even responded to VGT's discovery requests on November 14th when VGT filed its motion—these responses were not even due until more than a week later, November 22. Without Castle Hill's responses to its discovery requests, VGT had no basis to file this motion to compel. VGT could not have evaluated the substance of Castle Hill's responses and any objections, could not have determined in good faith whether it thought they were inadequate, and could not have adequately met and conferred with Castle Hill to resolve any difference of opinion. Rule 37 does not provide for a "motion to compel" filed *before* a party's deadline to respond to discovery responses. Rather than seek to resolve in good faith a bona fide discovery dispute, VGT seems to be continuing its apparent strategy to drive its much smaller competitor, Castle Hill, out of business by forcing it to incur unnecessary litigation costs.

Next, the objections Castle Hill eventually made to VGT's trade-secret-related discovery requests—more than a week after VGT filed this motion—are supported by well-settled law. The caselaw is overwhelming that VGT must specify with particularity the trade secrets at issue in its complaint *before* Castle Hill produces its highly confidential business information, including source code for its Class II casino games. Courts do not allow discovery on vague and unspecified trade secrets claims like VGT's because:

> (1) lawsuits might be filed as mere "fishing expeditions" if plaintiffs are not required to identify the alleged trade secrets; (2) relevant information cannot be identified if the alleged trade secrets are not known; (3) defendants cannot formulate and/or mount a defense without knowing the alleged trade secrets; and (4) requiring production of the alleged trade secrets ensures that plaintiffs will not mold their causes of action around the discovery that they receive.

*Stone Eagle Servs. v. Valentine*, No. 3:12cv1687, 2013 WL 9554563, at **6-7 (N.D. Tex. Jun. 5, 2013). Notably, VGT's motion fails to address its entitlement to the discovery it seeks or explain what that discovery is.

Finally, VGT's persistent press to force premature discovery battles is wholly unnecessary, as the case has just started. Indeed, the Court has delayed even entering a scheduling order, stating that "Defendants have filed a motion to Dismiss [Doc. #[29] which should first be resolved[.]" There is no discovery deadline in place, so the parties have time to address Castle Hill's objections in the normal course before burdening this Court with a discovery dispute.

For the foregoing reasons, and as set forth below, VGT's motion should be denied.

## ARGUMENT

## I. VGT'S MOTION TO COMPEL IS PREMATURE.

VGT filed the instant motion on November 14, 2017, more than a week before Castle Hill's responses and objections to VGT's first interrogatories and requests for production were due. In so doing, VGT has moved to compel "trade secret discovery" without knowing what objections Castle Hill may or may not raise in response to specific requests. VGT did not allege that Castle Hill failed to timely serve responses to discovery. Instead, VGT ran to the Court in a preemptive attack on responses it *believed* it would receive and created a purported "discovery dispute" before discovery responses were served. VGT's Motion is nothing more than an overly-aggressive litigation tactic and is completely unsupported by the Federal Rules or this Court's Local Rules.

It is axiomatic that before moving to compel, Federal Rule of Civil Procedure 37 requires that a party has either failed to respond to discovery, or that after a good faith attempt to meet and confer regarding one party's responses or objections to discovery, there remains a dispute over the party's responses. *See* Fed. R. Civ. P. 37. Nowhere does Rule 37 permit what VGT has now done – filed a motion to compel before responses are even due. This would produce absurd results and defeat the purpose of serving responses and objections in the first place. Courts routinely deny untimely motions to compel such as the one at issue here. *See, e.g., Roberts v. Salano*, No. 08-cv-162-LJO, 2011 WL 345804, at *1 (E.D. Cal. Feb. 1, 2011) (denying motion to compel filed two days before responses to interrogatories were due under discovery order); *Cannon v. Austal USA, LLC*, No. 15-cv-2582-CAB (BLM), 2017 WL 715413, at *2 (S.D. Cal. Feb. 23, 2017) ("The Court will not compel Defendant USA to respond to Plaintiff's requests when Defendant USA's time to respond to the requests has yet to expire. As of this moment, there is nothing for the Court to compel."); *Metzler Contracting Co. v. Stephens*, 642 F. Supp. 2d 1192, 1201 (D. Haw. 2009) (plaintiff's motion to compel "was premature because he filed it before Defendants' response was due."); *Rivera v. Bell*, No. 05-165-M-JCL, 2007 WL 9635868, at *1 (D. Mont. Oct. 23, 2007) (because motion was filed before time to respond to discovery had passed, "motion to compel is premature and will be denied."). On this basis alone, VGT's motion should be denied.

In addition to running afoul of the Federal Rules of Civil Procedure, VGT's motion also fails to comply with this Court's Local Rules. Under LCvR 37.1, a party must certify that counsel has had an in-person meet and confer in an attempt to resolve the issue. Despite what VGT might try to say about its attempts to "meet and confer" with Castle Hill, no such meeting could have taken place before responses were served and reviewed. Under LCvR 37.2, a party filing a discovery motion "shall include a verbatim recitation of each interrogatory, request, answer,

response and objection which is the subject of the motion."  VGT's motion included three of its requests for production as an "addendum," but it did not – and could not have – included Castle Hill's responses.

Rather than attempt to resolve a bona fide dispute, VGT instead seeks an advisory opinion from the Court and a broad-sweeping order that Castle Hill must provide "trade secret discovery." The rules do not provide for such a tactical maneuver and the Court should not condone it.

## II.    VGT MISCHARACTERIZES CASTLE HILL'S POSITION REGARDING SEQUENCING OR STAYING TRADE SECRET DISCOVERY.

VGT bases its entire motion on its contention that Castle Hill agreed to drop its objections to VGT's discovery requests.  This is simply not true.  Castle Hill agreed to drop its request in the joint status report that trade secret discovery be stayed and that it intended to file a motion seeking sequenced discovery.  Castle Hill never agreed to withdraw objections served in response to VGT's discovery—indeed this would have been impossible because Castle Hill's deadline to respond VGT's discovery was not until more than a week after VGT filed its motion.  Obviously, Castle Hill cannot drop objections it had not even asserted.

In its motion, VGT requests that the Court "compel [Castle Hill] to withdraw its request for sequenced trade secret discovery[.]"  *See* Motion at 11.  But Castle Hill has not asked the Court to "sequence" or otherwise stay discovery regarding the trade secrets claims.  Instead of asking the Court to pre-emptively rule regarding trade secrets discovery—as VGT does through the instant motion—Castle Hill's new counsel believed the best approach was to respond to VGT's discovery requests in the normal course and to state any and all objections Castle Hill had to specific requests.

VGT made repeated attempts to extract promises from Castle Hill that its source code and other highly confidential and proprietary information would be produced on November 22, 2017. Castle Hill's decision to defer addressing VGT's demand for trade secret information and trade

secret documents until Castle Hill responded to VGT's requests is consistent with the rules governing discovery and provides no basis for VGT's motion to compel.  VGT served discovery, which Castle Hill has responded to.  If VGT believes those responses are insufficient or disagrees with any objections stated therein, there is a clear procedure under Federal and court rules to address its concerns.  VGT should not be exempted from following the rules and complying with that procedure.

Moreover, Castle Hill notes that this entire "trade secret discovery" dispute could have been avoided or narrowed if VGT had simply responded to Castle Hill's pending interrogatories requesting additional information regarding the trade secrets claim.  Castle Hill's First Set of Interrogatories to VGT, a copy of which is attached hereto as <u>Exhibit 1</u>, include the following:

> **INTERROGATORY 4:**
> State all facts supporting your misappropriation of trade secrets claim. (As part of your answer, describe with specificity each trade secret you claim CHG misappropriated, and for each such trade secret (hereafter in this interrogatory, "it") state when it was taken, how it was taken, who took it, how CHG obtained it, how CHG has used it (including, if applicable, in which CHG Games it has been used), why it has independent economic value, the approximate value of it, VGT's efforts to keep it secret, when such efforts to keep it secret began and finished, and why it could not be derived independently with publicly-available information.)

> **INTERROGATORY 5:**
> State all facts supporting your claim for misappropriation of confidential business information asserted in the Complaint. (As part of your answer, describe with specificity each piece of confidential business information you claim CHG misappropriated, and for each such piece of information (hereafter in this interrogatory, "it") state when it was taken, how it was taken, the name(s) of each person who took it, how CHG obtained it, how CHG has used it (including, if applicable, in which CHG Games it has been used), why it has independent economic value, the approximate value of it, all VGT's efforts to keep it secret, when such efforts to maintain secrecy began and finished, and why it

could not be derived independently with publicly-available information.)

**INTERROGATORY 6:**
   State the background and history of each trade secret and each piece of confidential business information listed in your responses to Interrogatories 4 and 5. (Include as part of your answer when the trade secret or confidential information (hereafter in this interrogatory, "it") was created; the name, address, and telephone number of each person who helped create it; why it was created; how it has been used (including, if applicable, the name of each VGT Game in which it has been used); the name, address, and phone number of each person who has had access to it; when such persons had access; which of the persons who had access actually accessed it and when; and where and how it has been stored since it came into existence.)

Instead of spending its resources providing full and complete answers to Castle Hill's interrogatories targeted at the basis of VGT's trade secrets and confidential information claims, VGT filed this motion to compel. If VGT truly had a good faith basis for its misappropriation claims, then it would have provided the information requested as it is obligated to do under the discovery rules. Without this information, Castle Hill is unable to understand the nature of the trade secrets, the circumstances surrounding how VGT alleges secrets were misappropriated, or how VGT alleges such a secret has been used by Castle Hill. For Castle Hill to respond without knowing the factual basis for VGT's claims would permit VGT to attempt to fashion its claims around Castle Hill's discovery responses.

VGT's complaint fails to state a claim for misappropriation because it fails to define or specify the alleged trade secrets at issue. Recognizing that perhaps VGT wanted to limit the information regarding its trade secrets that were included in the publicly-available complaint, Castle Hill served the above-referenced interrogatories seeking clarification and further

information.[1]  Having failed to even attempt to better specify its trade secrets, VGT should not

now be heard to complain about lack of information from Castle Hill.

## III.    VGT HAS FAILED TO IDENTIFY ITS ALLEGED "TRADE SECRETS" WITH PARTICULARITY.

While Castle Hill's specific objections and responses to VGT's discovery are not currently

before the Court, Castle Hill's objection to VGT's trade-secret-related discovery is entirely proper.

The law is clear that before requiring Castle Hill to produce its source code and other highly

confidential information, VGT must first define its alleged trade secrets at issue with particularity.

VGT's premature motion is a conspicuous effort to circumvent this law.

A plaintiff seeking a defendant's trade secrets carries a heavy burden to establish its

entitlement to discovery.  *See In Re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1190 (10th Cir.

2009) (explaining that the party seeking trade secret discovery must "establish that the disclosure

of trade secrets is relevant and necessary to the action." (quoting *Centurion Indus., Inc. v. Warren

Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981)); *Hartley Pen Co. v. U.S. Dist. Ct.*, 287 F.2d

324, 330 (9th Cir. 1961) (explaining that "the burden rests upon the party seeking disclosure to

establish that the trade secret sought is relevant and necessary to the prosecution or defense of the

case before a court is justified in ordering disclosure.").  In order to meet this burden, courts

consistently require trade secrets plaintiffs to state their alleged secrets with particularity.

Requiring a trade secrets plaintiff to provide this information prior to the defendant

responding to discovery serves two fundamental purposes: 1) putting the defendant on notice of

the nature of the plaintiff's trade secrets claims; and 2) enabling the defendant to determine the

---

[1]    Consistent with this position, counsel for Castle Hill informed VGT on November 6, 2017 that, "We have asked in our discovery requests for VGT to describe each trade secret claimed in this action. Once we have this information Castle Hill will be in a position to determine the scope of discovery that is appropriate for this claim."  *See* Mot. at Sawyer Decl., Ex. A.

relevance of specific discovery requests. *Vesta Corp. v. Amdoc Mgmt. Ltd.*, 147 F. Supp. 3d 1147, 1155 (D. Or. 2015). This requirement minimizes the burden on the defendant, protects the defendant's own trade secrets, and, most significantly, because "requiring the plaintiff to state its claimed trade secrets prior to engaging in discovery ensures that it will not mold its causes of action around the discovery it receives." *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 681 (N.D. Ga. 2007) (granting motion to compel description of trade secrets). Indeed, the "growing consensus [among courts] seems to be in favor of requiring those plaintiffs bringing claims of trade secret misappropriation to identify, with reasonable particularity, the alleged trade secrets at issue." *StoneEagle Svcs., Inc. v. Valentine*, No. 3:12-cv-1687-P, 2013 WL 9554563, at *2 (N.D. Tex. June 5, 2013).

Courts consistently require trade secret plaintiffs to identify their alleged secrets with "reasonable particularity." *See, e.g., United Svcs. Auto Ass'n v. Mitek Sys., Inc.*, 289 F.R.D. 244, 249 (W.D. Tex. 2013) (plaintiff required to provide list identifying each trade secret and explaining how such secrets differ from information available in the public domain); *AutoMed Tech., Inc. v. Eller*, 160 F. Supp. 2d 915, 925-26 (N.D. Ill. 2001) (requiring plaintiff to particularize its trade secrets in order to avoid unnecessary disclosure of defendant's confidential information and "so we can evaluate the relevance of plaintiff's discovery and address any objections."); *Switch Commc'ns Grp. v. Ballard*, No. 2:11-cv-285-KJD, 2012 WL 2342929, at *5 (D. Nev. June 19, 2012) (before defendant was required to respond to trade secret discovery, plaintiff had to "specifically describe what particular combination of components renders each of its designs novel or unique, how the components are combined, and how they operate in unique combination."); *Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, No. 3:12-cv-220-WWE, 2012 WL 3113162, at *2 (D. Conn. July 31, 2012) (plaintiff had to describe its trade secrets with reasonable specificity

because "defendants are entitled to an explanation of plaintiff's theory of the case before plaintiff gets the benefit of defendants' discovery.") *Ikon Office Sols., Inc. v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. 3:08-cv-539-RLV-DCK, 2009 WL 4429156, at \*4 (W.D.N.C. Nov. 25, 2009) (requiring plaintiff to "sufficiently" identify the trade secrets it alleged were misappropriated).

VGT has failed to identify its trade secrets with the "reasonable particularity" required to entitle it to the "trade secret discovery" sought in its motion.  This is evident upon a review of VGT's Complaint, and is also addressed in Castle Hill's pending motion to dismiss.  In the Complaint, VGT never even defines its trade secrets, but instead alleges only that it has secrets that "relate" to "the math underlying the games, the specifics of the manner in which the bingo game is played in the games (including the process and timing for the ball drops), and the source code used to operate the games[.]"  Complaint at ¶ 41 (ECF No. 2).  These vague and conclusory allegations are insufficient to explain what the trade secrets actually are, how they work, and how Castle Hill is alleged to have misappropriated them.  Further, VGT's Complaint identifies more than ten of its own games and ten of Castle Hill's games that are at issue in this litigation, but makes no effort to explain how "trade secrets" relate to those specific games at issue.  Castle Hill is not required to guess regarding what VGT's trade secrets claim actually is, and VGT is not entitled to mold its claims "after the fact" around Castle Hill's discovery.

In the event the Court has any doubt that VGT has failed to identify its trade secrets with "reasonable particularity," *DeRubeis* is instructive.  In *DeRubeis*, a manufacturer of products for underground mapping identified its alleged trade secrets in an interrogatory answer as follows:

- Software developed, owned and/or licensed to [Witten] that it uses to create its final deliverables from the raw positioning and radar data collected from a radar array positioning system, such as a "total station" or Global Positioning System.

- Data processing algorithms developed, owned, and/or licensed to [Witten], which it uses to merge the positioning data with the radar array data.

- Software and processes developed, owned, and/or licensed to [Witten] regarding channel equalization filters, data adaptive filters and the use of filters that operate on channels, frames, or trace time series.

- Processes for the use of MATLAB software in data processing or interpretation steps of radar array data.

- Software developed, owned and/or licensed to [Witten] used to create its final deliverables that is transferred from interpretation of processed radar array data into CADD or similar drawings.

*DeRubeis*, 244 F.R.D. at 679. The manufacturer seeking trade secret discovery alleged that its response was sufficient to identify the trade secrets at issue and entitle it to discovery. The court disagreed, explaining that the disclosure "does not specify any trade secrets at all, but rather reveals the end results of, or the functions performed by, the claimed trade secrets." *Id.*; *see also Vesta Corp.*, 147 F. Supp. 3d at 1156 (rejecting disclosures that did not specify secrets but revealed only end results or functions).

Similarly, VGT's Complaint fails to specify the alleged trade secrets, instead focusing on their function and end result. *See* Complaint at ¶ 42 (alleging the source code "controls other aspects of the games, including the control of the mechanical reels . . ."); ¶ 43 ("The math dictates, among other things, the probabilities of winning, the payouts for each win and the volatility of the game[.]"). Against this backdrop, and given VGT's failure to describe its secrets with "reasonable particularity" as required, its motion for "trade secret discovery" should be denied.

## IV. VGT'S REQUEST FOR PROTECTIVE ORDER IS PREMATURE AND WITHOUT MERIT.

As a further tactic to expedite discovery to which it is not entitled, VGT's motion also requests that the Court enter its proposed Protective Order. VGT's proposed protective order

contains significant departures from this Court's form protective order for highly confidential information. Certain of this language proposed by VGT would operate to severely limit the ability of defense counsel to meaningfully communicate with Castle Hill about this action, and would impair Castle Hill's ability to meaningfully participate in, and assist with, the defense of this case.

For example, this Court's form protective order for highly confidential information provides that confidential information may be accessed by the parties and by in-house counsel for the parties. VGT's proposed order would eliminate access by the parties entirely, and restrict access for in-house counsel to three attorneys. As a small start-up, Castle Hill does not have in house counsel, and therefore has no in-house legal staff to assist with the defense of this action. VGT's proposed protective order also would restrict access to one director, officer or employee, rather than permit five as provided for in this Court's form protective order.

Given that most of the information in this action is likely to be designated as confidential or highly confidential, VGT has proposed a system that would prohibit Castle Hill, as the defendant, from accessing, discussing or analyzing any of the significant discovery information in this action. Such an exclusion would significantly impair Castle Hill's ability to assist in the defense of this case.

This Court's form protective order provides that highly confidential information may be accessed by outside counsel and related staff. Plaintiff has proposed limiting access to highly confidential information only to counsel of record in the litigation, eliminating access by in-house counsel, and prohibiting access by the parties.

The limitations proposed by VGT are unduly restrictive, and are unnecessary based on the allegations in this case. VGT has alleged that Castle Hill personnel have stolen and used Plaintiff's trade secrets, including Plaintiff's source code, to compete against it. Given that Plaintiff alleges

that Castle Hill already has the information at issue in this case, there should be no harm in Castle Hill accessing that information in the defense of this case.

Furthermore, there is no immediacy to VGT's motion regarding the terms of a protective order. Judge Frizzell's recent Minute Order provides that no scheduling order will be entered until Castle Hill's motion to dismiss is resolved.

<u>**CONCLUSION**</u>

As set forth above, VGT's motion to compel is not only premature, it is also baseless because Castle Hill never agreed to drop any objections to VGT's discovery requests. VGT has also failed to define its trade secrets with reasonable particularity. This is a matter the parties should be left to address in the context of their exchange of discovery objections and responses. The motion should be denied.

Dated: November 28, 2017                    Respectfully submitted,

<u>*James C. Hodges*</u>
James C. Hodges, OBA #4254
JAMES C. HODGES, P.C.
2622 East 21st Street, Suite 4
Tulsa, Oklahoma 74114
(918) 779-7078
(918) 770-9779 (facsimile)
JHodges@HodgesLC.com

Robert C. Gill (admitted *pro hac vice*)
Thomas S. Schaufelberger (admitted *pro hac vice*)
Matthew J. Antonelli (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
tschauf@saul.com
matt.antonelli@saul.com

Sherry H. Flax (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
500 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 332-8764
(410) 332-8785 (facsimile)
sherry.flax@saul.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of November, 2017, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to Plaintiff's counsel:

Graydon Dean Luthey, Jr.
Neil K. Roman
Gary M. Rubman
Peter A. Swanson
Michael S. Sawyer
Rebecca B. Dalton

*Attorneys for Plaintiff*

*James C. Hodges*
JAMES C. HODGES