# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

VIDEO GAMING TECHNOLOGIES, INC.,    )
   )
        Plaintiff,    )
   )
v.    )    Case No. 17-CV-454-GKF-JFJ
   )
CASTLE HILL STUDIOS LLC    )
(d/b/a CASTLE HILL GAMING);    )
CASTLE HILL HOLDING LLC    )
(d/b/a CASTLE HILL GAMING); and    )
IRONWORKS DEVELOPMENT, LLC    )
(d/b/a CASTLE HILL GAMING),    )
   )
        Defendants.    )

## OPINION AND ORDER

This matter comes before the court on the Motion to Dismiss Complaint [Doc. #29] of

Defendants Castle Hill Studios LLC (d/b/a Castle Hill Gaming), Castle Hill Holding LLC (d/b/a

Castle Hill Gaming), and Ironworks Development, LLC (d/b/a Castle Hill Gaming).[1]  For the

reasons set forth below, the motion is denied.

## I.    Background

This matters relates to the development, manufacture, and distribution of class II bingo-

based player terminals.[2]  The allegations of VGT's Complaint are summarized as follows:

---

[1]For ease of reference, this court will refer to the defendants, collectively, as "Castle Hill Gaming."

[2]The Indian Gaming Regulatory Act, which regulates the operation of gaming by Indian tribes, defines three separate classes of games:  (1) class I gaming, which includes social games and traditional forms of tribal gaming; (2) class II gaming, which includes bingo and, if played in the same location, pull-tabs, lotto, punch boards and tip-jars; and (3) class III gaming, which includes any form of gaming not included in class I or class II.  25 U.S.C. § 2703.  *See also Diamond Game Enters., Inc. v. Reno*, 230 F.3d 365, 367 (D.C. Cir. 2000).

VGT is a developer, manufacturer and distributor of class II bingo-based player terminals in North America, and owns more than two hundred (200) federal trademark registrations and applications in connection with its class II bingo-based games (collectively, "VGT Marks"). VGT's class II game terminals are three (3) reel mechanical games. VGT also possesses common law rights to the trade dress in connection with its three-reel mechanical games, including the following package features: game cabinet, game play sound, award sound, bingo play and pays, red screen free spins, and themes (collectively, "VGT Trade Dress"). In addition to the VGT Marks and VGT Trade Dress, VGT owns trade secrets relating to the development and operation of the three-reel mechanical games, including secrets related to the math underlying the games, the specifics of the manner in which the bingo game is played, and the source code used to operate the games (collectively, "VGT Trade Secrets").

Castle Hill is operated by former VGT employees, including VGT's former vice president of engineering, director of software, and treasurer/director of operations/director of hardware development, who are currently members of Castle Hill's executive team. Additionally, twelve other VGT employees have left VGT to work for Castle Hill.

Although Castle Hill originally manufactured class III games, sometime between March 2015 and June 2016, Castle Hill began developing and offering class II games that closely resembled VGT's class II games. Since March 2015, Castle Hill has launched at least twenty-four (24) class II bingo-based games that use features including three mechanical reels and the same cabinet as used by VGT's three-reel mechanical games, and incorporate marks and themes confusingly similar to the VGT Marks and themes. Further, Castle Hill has utilized the VGT Trade Secrets in the development of Castle Hill's games.

Based on these allegations, the Complaint asserts six counts: (1) federal trademark infringement in violation of the Lanham Act (specifically, 15 U.S.C. § 1114); (2) unfair competition and trade dress infringement for product packaging in violation of the Lanham Act (specifically, 15 U.S.C. § 1125(a)); (3) unfair competition, trade dress infringement, and trademark infringement in violation of the Oklahoma Deceptive Practices Act (78 O.S. §§ 51-56); (4) unfair competition, trade dress infringement, and trademark infringement under common law; (5) misappropriation of trade secrets in violation of the Oklahoma Uniform Trade Secrets Act (78 O.S. §§ 85-94); and (6) misappropriation of confidential business information in violation of common law. *See* [Doc. #2]. Castle Hill moves to dismiss all counts. *See* [Docs. ## 29-30].

## II.    <u>Documents Considered</u>

In support of its motion to dismiss, Castle Hill asks the court to consider over 2,600 pages of documents, most of which are records of the United States Patent and Trademark Office ("USPTO"). Castle Hill requests that the court take judicial notice of the USPTO records pursuant to Fed. R. Evid. 201. *See* [Doc. #30, pp. 14-15]. Additionally, VGT's Complaint attaches six (6) exhibits, which are referenced in VGT's Complaint. Thus, prior to considering whether the claims are adequately pled, the court will first determine the threshold issue of what documents it will consider in ruling on Castle Hill's motion.

In the Tenth Circuit, when considering a Rule 12(b)(6) motion to dismiss, the court may consider "not only the complaint, but also the attached exhibits . . . ." *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011). This is because, pursuant to Fed. R. Civ. P. 10, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). The court may also consider documents incorporated into the complaint by reference. *Commonwealth Prop.*

*Advocates, LLC*, 680 F.3d at 1201. Here, plaintiff's 6 exhibits are both attached to and referenced in the Complaint. Thus, the court will consider the 6 exhibits attached to VGT's Complaint.

Castle Hill attaches twenty (20) exhibits to its motion to dismiss, as well as a declaration of Dale Jensen. Exhibits 1, 2, 16, and 20 consist of USPTO filings of VGT and its parent company, Aristocrat Technologies, Inc. Only exhibit 16 relates to a trademark cited as relevant to the dispute in VGT's Complaint—"Countin' Cash." The marks that are the subject of exhibits 1, 2, and 20 are not referenced in VGT's Complaint.

Exhibit 19 is USPTO filings of Castle Hill, and relates to marks that allegedly infringe the VGT Marks identified in the Complaint—specifically, "New Money," "Double Hotness," "Genie's Gems," "Mr. Martini," "Mr. Martini Vegas Baby," "Nugget Mountain," "Arctic Cash," "Arctic Ice," "Dublin Your Luck," "Coin Slinger," "Aces and Hogs," "Amazing Ca$h," "10,000 Diamonds," "20,000 Diamonds," "Captain Bacon," and "Amazing Cherry."

Exhibits 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 14, 15, 17, and 18 are primarily composed of USPTO filings of third-parties, but also include spreadsheets created by Dale Jensen, Castle Hill's attorney, purportedly intended to "aid to explain in a summary fashion information about the trademarks lists in the pages after each exhibit's spreadsheet." [Doc. #30-1]. These exhibits are not referenced in the Complaint.

Federal Rule of Civil Procedure 12(d) applies when a party requests the court to consider matters outside of the pleadings. Rule 12(d) provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

No conversion is required, however, "if [the court] takes 'judicial notice of its own files and records, as well as facts which are a matter of public record.'" *Rose v. Utah State Bar,* 471 F.

App'x 818, 820 (10th Cir. 2012) (quoting *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006)). Pursuant to Fed. R. Evid. 201, a court "may judicially notice a fact that is not subject to reasonable dispute." Fed. R. Evid. 201(b). "When presented with a Rule 12(b)(6) motion, the district court has broad discretion in determining whether to accept materials beyond the pleadings." *Brokers Choice of Am., Inc. v. NBC Universal, Inc.,* 861 F.3d 1081, 1103 (10th Cir. 2017).

With regard to the USPTO documents, the court first notes that situations may exist when judicial notice of USPTO documents would be proper. *See Anderson v. Kimberly-Clark Corp.,* 570 F. App'x 927, 932 n.3 (Fed. Cir. 2014) (as relates to patent documents). However, the court must consider the purpose for which judicial notice is sought. For example, although the court may take judicial notice of the authenticity and existence of public documents, judicial notice of the substantive validity of those public documents is improper. *See Tal,* 453 F.3d at 1265 n.24 (noting that, although a court may take judicial notice of matters of public record, "'[t]he documents may only be considered to show their contents, not to prove the truth of matters asserted therein'") (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2002)). *See also Port-A-Pour, Inc. v. Peak Innovations, Inc.,* No. 13-cv-01511-WYD-BNB, 2015 WL 292913, at *3 (D. Colo. Jan. 20, 2015) ("I also agree . . . that a court may take notice only of the authenticity and existence of public documents, not the validity of their contents."); *VirtualAgility, Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1312-13 (Fed. Cir. 2014).

Here, Castle Hill requests that the court take judicial notice of exhibits 3, 4, 5, 6, 7, 8, 9, 10, 11, 14, 15, 17, and 18 to demonstrate that VGT's trademarks and themes are ubiquitous in the industry such that there is no likelihood of confusion. *See* [Doc. #30, pp. 15-20]. In essence, Castle Hill is seeking an evidentiary ruling on the substantive merits of the claims. However, the

*effect* of the information contained in the third-party USPTO filings on VGTs claims in this litigation is subject to "reasonable dispute" and therefore is not the proper subject of judicial notice.[3] *See Port-A-Pour, Inc.,* 2015 WL 292913, at *3; *VirtualAgility, Inc*., 759 F.3d at 1312-13. Nor make the court such an evidentiary ruling without converting Castle Hill's motion to dismiss into a motion for summary judgment. *See Navajo Nation v. Urban Outfitters, Inc.,* 935 F. Supp. 2d 1147, 1157 (D.N.M. 2013) (refusing to consider USPTO records, reasoning "[o]ther portions of those same [USPTO] records may support Plaintiffs' interpretation of the file histories, and thus the evidentiary value of the materials submitted by Defendants is subject to 'reasonable dispute,' and thus not best suited for judicial notice. This evidentiary consideration is exactly the type of analysis suitable for summary judgment, not a motion to dismiss."); *Midwest Innovative Prods., LLC v. Kinamor, Inc.,* No. 16-CV-11005, 2017 WL 2362571, at *2 (N.D. Ill. May 31, 2017) (refusing to take judicial notice of USPTO documents for use in comparing plaintiff's product to allegedly infringing product, as such inquiry was typically resolved at motion for summary judgment stage); *Facebook, Inc. v. Teachbook.com, LLC,* 819 F. Supp. 2d 764, 771-73 (N.D. Ill. 2011); *ContourMed Inc. v. Am. Breast Care L.P.,* No. H-15-2769, 2016 WL 1059531 (S.D. Tex. Mar. 17, 2016).

This court will not convert Castle Hill's motion to dismiss to a motion for summary judgment. Accordingly, the court will not consider exhibits 3, 4, 5, 6, 7, 8, 9, 10, 11, 14, 15, 17, and 18.[4]

---

[3]Nor are the spreadsheets prepared by Castle Hill's counsel the proper subject of judicial notice, as the summaries are not a matter of public record. *Cf. Tal,* 453 F.3d at 1264 n.24.

[4] Exhibits 12 and 13 were not submitted to the court and, therefore, are not considered.

For the same reasons, the court will not consider exhibits 1, 2, and 20 to Castle Hill's motion. The exhibits are neither referenced in VGT's Complaint nor the proper subject of judicial notice as the effect of the records on VGT's claims may be reasonably disputed by VGT.

In contrast, exhibit 16 relates to a trademark that is referred to in the Complaint. However, the trademark history is not referred to in the Complaint. Further, the exhibit is not central to the plaintiff's claim and therefore is not incorporated by reference into the Complaint. *See GFF Corp. v. Associated Wholesale Grocers, Inc*., 130 F.3d 1381, 1384 (10th Cir. 1997) ("Notwithstanding these general principles, if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the *complaint and is central to the plaintiff's claim*, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.") (emphasis added). Exhibit 16 is an examiner's amendment, not the trademark issued to VGF or even the entirety of the application itself. Further, VGT asserts common law claims, which are independent of the federal trademark statutes. Although the exhibit may have some evidentiary value later in the proceedings, the exhibit is not of the type of document generally considered at the motion to dismiss stage (like the governing contract in a breach of contract claim). Because the trademark history is not referred to in VGF's Complaint and the examiner's amendment is not central to VGT's claims, exhibit 16 is not incorporated by reference into VGT's Complaint.

Castle Hill, however, requests that the court take judicial notice of the USPTO document in exhibit 16 for the purposes of establishing that VGT has disclaimed the word "cash." *See* [Doc. #30, p. 10]. The court may not notice public records for the truth of the matter asserted. *See Tal,* 453 F.3d at 1265 n.24. Thus, exhibit 16 is not the proper subject of judicial notice for the reasons requested by Castle Hill, and the court will not consider it.

The court also declines to consider exhibit 19, USPTO filings of Castle Hill. Although the filings relate to allegedly infringing marks, the trademark history is not referred to in the Complaint, nor is the trademark history of the marks central to VGT's claims. Further, the court declines to take judicial notice of the documents for the truth of the matter asserted as requested by Castle Hill. *See* [Doc. #30, p. 11].

Based on the foregoing, the court will not consider any matter outside the pleadings[5], and will consider Castle Hill's motion as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## III.  <u>Motion to Dismiss Standard</u>

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim that "fail[s] to state a claim upon which relief can be granted." "To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Brokers' Choice of Am., Inc.,* 861 F.3d at 1104 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' are insufficient." *Estate of Lockett ex rel. Lockett v. Fallin*, 841 F.3d 1098, 1107 (10th Cir. 2016) (quoting *Twombly,* 550 U.S. at 555). "Dismissal is appropriate if the law simply affords no relief." *Commonwealth Prop. Advocates, LLC,* 680 F.3d at 1202.

---

[5]Because the court will not consider any exhibits to Castle Hill's motion to dismiss, the declaration of Dale Jensen, which relates to the retrieval of the USPTO documents and the methodology utilized to create the summaries, is rendered moot.

**IV.**   <u>Analysis</u>

As previously stated, VGT's Complaint asserts six causes of action, all of which Castle Hill moves to dismiss. The court will separately consider each cause of action.

**A. Federal Trademark Infringement in Violation of 15 U.S.C. § 1114**

Castle Hill argues that VGT's federal trademark infringement claim fails because there is no likelihood of confusion, due to two primary reasons: (1) Castle Hill's marks are not similar to VGT's, and the common words and themes between them are ubiquitous in the industry, and (2) VGT admits its consumers are "sophisticated professionals," unlikely to be confused by any similarities between the marks. The court is not persuaded that dismissal is appropriate based on either argument at this stage of the litigation.

The federal trademark infringement statute, 15 U.S.C. § 1114, imposes civil liability for the use in commerce of any counterfeit, copy or imitation of a registered mark, when such use is likely to cause confusion in the marketplace.[6] *See* 15 U.S.C. § 1114(1)(a). "Likelihood of confusion forms the gravamen for a trademark infringement action." *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999). The Tenth Circuit considers six "nonexhaustive factors" to determine the likelihood of confusion between two marks: "(1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting its mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks." *Sally Beauty Co., Inc. v. Beautyco, Inc.,* 304 F.3d 964, 972 (10th Cir. 2002).

---

[6] Pursuant to statute, "trademark" "include[s] any word, name, symbol, or device, or any combination thereof . . . used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127.

Although Castle Hill asserts that "[i]n some instances . . . the question of whether a likelihood of confusion exists can be determined at the pleading stage and based on a consideration of less than all of the factors," [Doc. #30, p. 15], the court is not persuaded in this instance. Castle Hill cites no Tenth Circuit authority for the proposition that dismissal of a trademark infringement claim may be appropriate at the motion to dismiss stage based on consideration of less than all of the factors. Rather, the Tenth Circuit has concluded "[n]o one factor is dispositive, and the final determination of likelihood of confusion must be based on consideration of *all* relevant factors." *Heartsprings, Inc. v. Heartspring, Inc*., 143 F.3d 550, 554 (10th Cir. 1998) (emphasis in original). *See also King of the Mountain Sports, Inc.*, 185 F.3d at 1090 ("'All of the factors are interrelated, and no one factor is dispositive.'") (quoting *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1530 (10th Cir. 1994)); *Sally Beauty Co., Inc.,* 304 F.3d at 972 (same).

Further, in the Tenth Circuit, likelihood of confusion is a question of fact. *Sally Beauty Co., Inc.*, 304 F.3d at 972; *Heartsprings, Inc*., 143 F.3d at 553; *Vail Assocs., Inc. v. Ved-Tel-Co.*, 516 F.3d 853, 857 (10th Cir. 2008). Thus, in Tenth Circuit trademark cases, "courts have been careful to prevent 12(b)(6) motions from becoming premature summary judgment motions." *Advanced Baseball Acad., LLC v. Google, Inc.*, No. 14-2461-CM, 2015 WL 1440656, at *4 (D. Kan. Mar. 30, 2015) (citing *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1252 (10th Cir. 1999; *Navajo Nation v. Urban Outfitters, Inc.,* 935 F. Supp. 2d 1147, 1156-58 (D.N.M. 2013)). *See also Adams v. Grand Slam Club*, No. 12-CV-2938-WJM-BNB, 2014 WL 103782 (D. Colo. Jan. 10, 2014) (concluding likelihood of consumer confusion "is a question of fact and should not be determined conclusively on a motion to dismiss"). Accordingly, this court will consider only whether VGT has sufficiently pled allegations regarding the likelihood of consumer confusion so as to state a plausible claim for federal trademark infringement.

Castle Hill urges the court to determine that VGT has failed to plead a plausible trademark infringement claim based on the marks themselves, because "Castle Hill's marks simply do not look or sound anything like VGT's." [Doc. #30]. However, "[t]he degree of similarity between marks rests on sight, sound, and meaning. The[e] court must determine whether the allegedly infringing mark will confuse the public when singly presented, rather than when presented side by side with the protected trademark." *Sally Beauty Co., Inc.,* 304 F.3d at 972 (internal citations omitted). *See also Heartsprings, Inc.,* 143 F.3d at 555 ("[B]ecause we must consider the parties' trademarks in their entirety as they are experienced by consumers in the marketplace, we are not free to focus solely on name similarity.").

Castle Hill further argues that VGT's federal trademark claim must fail because VGT admitted that its consumers are sophisticated professionals, unlikely to be confused between the marks. [Doc. #30, pp. 21-22]. As previously stated, consumer sophistication is just one of six factors considered by the court to determine likelihood of confusion. Because no one factor is dispositive, any alleged consumer sophistication would not be fatal to VGT's claim. *See Sally Beauty Co., Inc.,* 304 F.3d at 972. Further, this court has declined to take judicial notice of the records in which VGT purportedly admitted consumer sophistication.[7]

VGT alleges that it has an exclusive right to use twenty (20) federally registered trademarks in its computer software or firmware for games. [Doc. #2, ¶ 19]. VGT further alleges that more than half of Castle Hill's class II games incorporate trademarks that are confusingly similar to the

_____

[7]Even if judicial notice was taken of the relevant records, the court is not persuaded that a statement of VGT's parent company in a document submitted to the USPTO would constitute a binding judicial admission in this action. *See Universal Motor Oils Co., Inc. v. Amoco Oil Co.*, No. CIV-89-1662-T, 1990 WL 86178, at *9 (D. Kan. May 24, 1990) (statement in *ex parte* proceeding before USPTO not binding admission in district court case*), modified by Universal Motor Oils Co., Inc. v. Amoco Oil Co*., 743 F. Supp. 1484 (D. Kan. 1990).

VGT Marks, and the exhibits illustrate the manner of display of the trademarks in their entirety as experienced by consumers in the marketplace. [Doc. #2, ¶ 72]. Implicit in the Complaint's allegations is that many of the VGT Marks share at least one common word or structure. [Doc. #2, ¶¶ 68-70; Doc. #2-4]. Additionally, VGT asserts that Castle Hill intentionally used the confusingly similar marks "to lead [players] to believe, incorrectly, that [Castle Hill's] games were developed by VGT, with the goal of enticing players to play [Castle Hill's] games," [Doc. #2, ¶ 82], and that Castle Hill seeks the placement of the infringing games near VGT's games in casinos in order to increase the likelihood of consumer confusion. [Doc. #2, ¶ 87]. Further, VGT alleges that Castle Hill uses identical marketing channels in direct competition with VGT, and that the games utilizing the infringing marks appear in the same casinos, often near each other. [Doc. #2, ¶¶ 84-85]. Castle Hill's use of the infringing marks is also alleged to have resulted in actual confusion. [Doc. #2, ¶ 90]. The court is persuaded that these allegations are sufficient to plead likelihood of confusion and state a plausible claim for trademark infringement in violation of 15 U.S.C. § 1114.[8]

### B. Unfair Competition and Trade Dress Infringement in Violation of 15 U.S.C. § 1125

To the extent that the Complaint's trade dress claim is based on VGT's themes, Castle Hill makes a similar argument for dismissal of the trade dress claim as that made with regard to the

---

[8]The court is not persuaded by the cases cited by Castle Hill in its reply in support of its assertion that VGT's allegations of likelihood of consumer confusion are insufficient, as the courts in those cases were not considering a motion to dismiss. *See* [Doc. #46, pp. 4-5 (citing *Water-Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136 (10th Cir. 2013) (motion for summary judgment); *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222 (10th Cir. 2007) (motion for preliminary injunction); *Estee Lauder, Inc. v. The Gap, Inc.*, 108 F.3d 1503 (2d Cir. 1997) (permanent injunction)]. Further, Castle Hill's arguments in its motion generally relate to ubiquity and rely on matters outside the pleadings, which the court declines to consider.

trademark infringement claim—Castle Hill argues the claim should be dismissed because Castle Hill's themes are not similar to VGT's and, further, the themes are ubiquitous on slot machines. With respect to VFT's features, Castle Hill asserts that the features are functional and therefore are not subject to federal trade dress protection. The court will first consider Castle Hill's arguments regarding VGT's themes.

"The trade dress of a product is its overall image and appearance, and may include features such as size, shape, color or color combinations, texture, graphics, and even particular sales techniques." *Sally Beauty Co., Inc.*, 304 F.3d at 977. "To establish a claim of trade dress infringement, a plaintiff must show: (1) The trade dress is inherently distinctive or has become distinctive through secondary meaning; (2) There is a likelihood of confusion among consumers as to the source of the competing products; and (3) The trade dress is nonfunctional." *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1227 (10th Cir. 2007).

As with trademark infringement, in the Tenth Circuit, likelihood of confusion in the trade dress infringement inquiry is a question of fact, determined on the basis of the same six factors applied to trademark infringement claims. *Id.* Accordingly, the court will not make any determination as to the actual likelihood of confusion at this motion to dismiss stage, and will consider only whether VGT alleges a plausible claim for trade dress infringement. *See Kimray, Inc. v. Norriseal-Wellmark, Inc.*, No. CIV-16-1167-D, 2017 WL 1906941 (W.D. Okla. May 8, 2017) ("The extent to which [defendant's] design and marketing of its valves may cause confusion are topics the parties will explore during discovery.").

In support of its trade dress infringement claim, VGT identifies sixteen (16) themes that it claims constitutes its protected trade dress, and, for thirteen of those themes, attaches an illustrative exhibit of the theme. [Doc. #2, ¶ 34; Doc. #2-3; Doc. #2-4]. For three of these themes ("Crazy

Bill," "Mr. Money Bags," and "Polar High Roller"), the Complaint then identifies the elements of the themes that are "nearly identical," including details as to the colors used, graphics, and prominence of certain elements.[9]  [Doc. #2, ¶¶ 68-71].  In light of the number of component parts, it is at least plausible that the overall scheme or "themes" are inherently distinctive.

VGT further alleges that themes are a factor in a player's decision to choose a game and, because of this, VGT has used the trade dress in its advertising and promotional materials.  [Doc. #2, ¶¶ 35-37].  As a result of the advertising and other unsolicited publicity, VGT alleges that the trade dress themes have acquired recognition among the public and are associated with VGT's products and services.  [Doc. #2, ¶ 39].  However, VGT alleges that Castle Hill has marketed their infringing goods in identical marketing channels in direct competition with VGT's products, and Castle Hill seeks to place their games near VGT's games in order to increase the likelihood that players will confuse VGT games with Castle Hill games.  [Doc. #2, ¶¶ 83-87].  Taken together, the court is persuaded it is at least plausible that the themes have acquired a secondary meaning, and of consumer confusion based on the themes.

Castle Hill also argues that the claim of trade dress infringement is invalid because features, such as the game cabinet, game play sound, award sound, bingo play and pays, and red screen free spins are functional and, therefore, not protectable as trade dress.

_____

[9] In its reply, Castle Hill objects to VGT's reference to more than a dozen themes, and argues that the Complaint "expects Castle Hill and this Court to guess the games and the elements of those games that VGT alleges are unique and distinctive for trade dress purposes."  [Doc. #46, pp. 3-4].  However, as mentioned above, the Complaint identifies the themes allegedly infringed on by Castle Hill and, based on the allegations as to the objectionable elements of the "Crazy Bill," "Mr. Money Bags," and "Polar High Roller" themes, the court may infer that the same elements are objectionable in all themes (colors used, graphics, and prominence of certain elements).  Further, Castle Hill has not cited, nor has the court identified, any case law holding that it is inappropriate for a complaint to include allegations as to several different trade dresses.

Pursuant to the federal trade dress statute, "[i]n a civil action for trade dress infringement . . . the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional." 15 U.S.C. § 1125(a)(3). Trade dress is functional "'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.'" *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001) (quoting *Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 165 (1995)). Further, "a functional feature is one the 'exclusive use of [which] would put competitors at a significant non-reputation-related disadvantage.'" *TrafFix Devices, Inc.*, 532 U.S. at 32 (quoting *Qualitex Co.,* 514 U.S. at 165).

However, "[f]unctionality is a question of fact, and depends on the totality of the evidence." *Value Eng'g, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1273 (Fed. Cir. 2002) (internal citations omitted). Thus, at this time, the court will only determine whether the Complaint includes sufficient factual allegations to state a plausible claim for federal trade dress infringement.

In support of its trade dress infringement claim, VGT alleges that individual trade dress features, including the game cabinet, game play sound, award sound, bingo play and pays, and red screen free spins, are distinctive. [Doc. #2, ¶¶ 22 and 28]. VGT further asserts that its choices with regard to each individual feature was arbitrary. *Id.* at ¶¶ 23-27. The individual features are alleged to make noises or provide visual cues that indicate to customers that the games are manufactured by VGT. *Id.* at ¶¶ 23-27. For each individual feature, the Complaint alleges that alternative designs exist.[10] *Id.* Further, the Complaint alleges that *the combination* of the

---

[10] Defendants argue that the availability of alternative designs is irrelevant in light of the United States Supreme Court's ruling in *TrafFix.* [Doc. #30, pp. 24-25]. In *TrafFix*, the Supreme Court declined to consider alternative design possibilities where functionality had been established because the asserted feature was essential to the use of the item—the feature "[wa]s the reason the device work[ed]." *TrafFix*, 532 U.S. at 34. Although the breadth of the *TrafFix* decision has not been addressed by the Tenth Circuit, the court is not persuaded that the Tenth Circuit would

individual trade dress features is inherently distinctive, and that consumers identify VGT's 3-reel mechanical games by the VGT Trade Dress. *Id.* at ¶¶ 29 and 39.

Additionally, VGT has alleged that its trade dress features are inherently distinctive and/or acquired a secondary meaning. The Complaint identifies the specific features at issue, and asserts that the combination of the individual features is "inherently distinctive because it is unique and does not describe the 3-Reel Mechanical Games." [Doc. #2, ¶¶ 22-28]. Further, the Complaint alleges that consumers often identify VGT's class II games based on the VGT Trade Dress, and seek to play the games due to the Trade Dress. [Doc. #2, ¶¶ 29-31]. Finally, for the reasons discussed herein, the Complaint includes sufficient allegations to nudge its claims toward a plausible assertion of consumer confusion. Based on these allegations as well as the exhibits to the Complaint, the court is persuaded that the Complaint contains sufficient factual allegations to state an at least plausible claim for federal trade dress infringement.

---

interpret *TrafFix* as holding that alternative designs are always irrelevant to functionality in a trade dress inquiry. *See Value Eng'g, Inc.*, 278 F.3d at 1273 ("[W]e conclude that the Court merely noted that once a product feature is found functional based on other considerations there is no need to consider the availability of alternative designs, because the feature cannot be given trade dress protection merely because there are alternative designs available. But that does not mean that the availability of alternative designs cannot be a legitimate source of evidence to determine whether a feature is functional in the first place.") (internal citations omitted); *McAirlaids, Inc. v. Kimberly-Clark Corp.,* 756 F.3d 307, 312 (4th Cir. 2014) ("Thus, *TrafFix* did not alter our precedents that look to the availability of alternative designs when considering, as an initial matter, whether a design affects product quality or is merely ornamental."); *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc.,* 696 F.3d 206 (2d Cir. 2012); *Millennium Labs., Inc. v. Ameritox, Ltd.,* 817 F.3d 1123 (9th Cir. 2015).

### C. Unfair Competition, Trade Dress Infringement, and Trademark Infringement in Violation of the Oklahoma Deceptive Practices Act (78 O.S. §§ 51-56) and Common Law

For the reasons set forth above, the Complaint also states a plausible claim for unfair competition, trade dress infringement, and trademark infringement in violation of the Oklahoma Deceptive Practices Act, 78 O.S. §§ 51-56, and Oklahoma common law. *See Two Men & A Truck Int'l, Inc. v. Two Men & A Truck Movers*, No. 12-CV-00632-R, 2013 WL 12073228 (W.D. Okla. Jan. 14, 2013) (same standards of proof apply to ODPA claims and Oklahoma common law claims as Lanham Act claims). *See also Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 527 (10th Cir. 1987) ("Thus we hold that Section 53(a)(1) of the Oklahoma Act . . . requires the same standards of proof as does an action under Section 43(a) of the Lanham Act."); *Kimray, Inc.,* 2017 WL 1906941, at *4 ("A claim under § 53(A) is treated analogously to [plaintiff's] Lanham Act claims and governed by the same standard."); *Trotter v. Am. Modern Select Ins. Co.*, 220 F. Supp. 3d 1266, 1269 n.4 (W.D. Okla. 2016) ("The Tenth Circuit held in *Brunswick Corp.* that passing off does not require intent to deceive, but rather 'requires the same standards of proof as does an action under Section 43(a) of the Lanham Act.'").[11]

### D. Misappropriation of Trade Secrets in Violation of the Oklahoma Uniform Trade Secrets Act (78 O.S. §§ 85-94)

The Oklahoma Uniform Trade Secrets Act ("OUTSA") prohibits the misappropriation of trade secrets. *See* 78 O.S. §§ 85-94. The OUTSA defines "trade secret" as information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value

---

[11] The parties do not dispute that the same standard applies to the Oklahoma state law unfair competition claims, as the Lanham Act claims. *See* [Doc. #30, p. 13, p. 21 n.3, 26 n.5; Doc. #35, p. 17, p. 27 n.13].

from its disclosure or use," provided that the information "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." 78 O.S. § 86(4). "Misappropriation" means:

    a.    acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

    b.    disclosure or use of a trade secret of another without express or implied consent by a person who:

        (1)    used improper means to acquire knowledge of the trade secret; or

        (2)    at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

            (a)    derived from or through a person who had utilized improper means to acquire it; or

            (b)    acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

            (c)    derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

    c.    before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

78 O.S. § 86(2). To state a claim for misappropriation of trade secrets under the OUTSA, VGT must allege "(i) the existence of a trade secret, (ii) misappropriation of the secret by [Castle Hill], and (iii) use of the secret to [VGT's] detriment." *MTG Guarnieri Mfg., Inc. v. Clouatre*, 239 P.3d 202, 209 (Okla. Civ. App. 2010).

    Castle Hill argues that VGT does not define its trade secrets with sufficient specificity to satisfy the *Twombly* standard and therefore dismissal is warranted. However, the court is not persuaded.

The Complaint alleges that a trade secret existed in the following: (1) the math underlying VGT's class II games, which dictates the probabilities of winning, payouts, and volatility of each game; (2) the specifics of the manner in which the bingo game is played in the class II games; and (3) the source code used to operate the class II games, which are essentially instructions used to control all aspects of VGT's games. [Doc. #2, ¶¶ 41-43]. The trade secrets are alleged to be "confidential and never . . . shared with the public," and "integral to [VGT's] business operations." [Doc. #2, ¶ 44]. The Complaint further alleges that "[t]he VGT Trade Secrets possess independent economic value by virtue of not being generally known to, nor readily ascertainable through legitimate means by, other persons who could benefit financially from their disclosure or use." [Doc. #2, ¶ 45]. The specific manner in which the VGT Trade Secrets possess independent economic value by virtue of not being generally known is implicit throughout the Complaint— nondisclosure protects VGT against the manufacture of infringing machines by its competitors.

Further, with regard to efforts to maintain secrecy, the Complaint alleges that VGT: (1) restricted access to the Trade Secrets and other confidential information; (2) restricted access to computer networks that contained the Trade Secrets and other confidential information; (3) required employees to sign employment agreements that included nondisclosure provisions; and (4) required employees to attend presentations related to the protection of trade secrets. [Doc. #2, ¶ 46]. Based on these allegations, the court concludes that the Complaint includes sufficient factual allegations of a trade secret. *See Pre-Paid Legal Servs., Inc. v. Cahill*, 171 F. Supp. 3d 1219, 1227-28 (E.D. Okla. 2016) (allegations that defendant misappropriated a trade secret from which plaintiff derived independent economic value were sufficient for trade secret, and concluding that whether the asserted trade secret in fact qualified as a "trade secret" was not properly before the court at the motion to dismiss stage). *See also Cobalt Flux, Inc. v. Positive Gaming AS*, No. 08-

CV-185-TS, 2008 WL 4534182, at *3 (D. Utah Oct. 6, 2008) ("There is no heightened pleading standard for trade secrets claims. A plaintiff is not expected to plead its trade secrets in detail because such disclosure would amount to an effective surrender of the trade secret. The usual notice pleading requirements under Rule 8 apply.") (footnotes omitted).

The court will next consider whether the Complaint includes sufficient factual averments that Castle Hill misappropriated the VGT Trade Secrets to VGT's detriment. The Complaint alleges that, during their employment with VGT, former VGT employees had access to VGT Trade Secrets. [Doc. #2, ¶ 95]. The employees were allegedly required to sign employment agreements which included nondisclosure agreements and attend training regarding trade secrets, [Doc. #2, ¶¶ 46-47, 97]. Thus, the Complaint asserts that the employees were aware that the Trade Secrets were confidential and proprietary, and should not be shared outside VGT. [Doc. #2, ¶ 96]. The former VGT employees subsequently left VGT for Castle Hill, and the Complaint alleges that the former VGT employees shared the VGT Trade Secrets with Castle Hill to enable Castle Hill to development the infringing games. [Doc. #2, ¶ 98]. As a result, the Complaint alleges that VGT has been placed in a weakened competitive position and that Castle Hill has acquired an unfair competitive edge. [Doc. #2, ¶ 100]. These allegations sufficiently assert that former VGT Employees acquired VGT Trade Secrets under circumstances giving rise to a duty to maintain secrecy, and that the former employees subsequently used the VGT Trade Secrets without VGT's consent and to VGT's detriment. Accordingly, the court concludes that the Complaint states a plausible claim for misappropriation of trade secrets in violation of the OUTSA.

### E. Misappropriation of Confidential Business Information in Violation of Oklahoma Common Law

Oklahoma recognizes the common law tort of misappropriation of confidential business information. *Am. Biomedical Grp., Inc. v. Techtrol, Inc.*, 374 P.3d 820, 825 (Okla. 2016). Both

trade secrets and confidential business information require a substantial element of secrecy. *Id.* Further, the information must be procured by improper means. *ABC Coating Co., Inc. v. J. Harris & Sons Ltd.,* 747 P.2d 266, 270 (Okla. 1986).

Castle Hill asserts that the Complaint's common law claim for misappropriation of confidential business information "fails for the same reason VGT's trade secrets claim fails." [Doc. # 30, p. 29 n.8]. For the same reasons discussed above, the court is not persuaded. The court concludes that Complaint includes sufficient factual averments that Castle Hill acquired VGT's confidential business information by improper means to VGT's resultant harm and therefore states a plausible claim for misappropriation of confidential business information in violation of Oklahoma common law.

## V.    Conclusion

WHEREFORE, the motion to dismiss is denied.

DATED this 3rd day of January, 2018.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT