# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1)  VIDEO GAMING TECHNOLOGIES, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-cv-00454-GKF-jfj |
| | ) | |
| 1)  CASTLE HILL STUDIOS LLC | ) | |
| (d/b/a CASTLE HILL GAMING); | ) | |
| 2)  CASTLE HILL HOLDING LLC | ) | |
| (d/b/a CASTLE HILL GAMING); and | ) | |
| 3)  IRONWORKS DEVELOPMENT, LLC | ) | |
| (d/b/a CASTLE HILL GAMING) | ) | |
| | ) | |
| Defendants. | ) | |

## [REDACTED] PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO EXTEND SCHEDULING ORDER DEADLINES

Plaintiff Video Gaming Technologies, Inc. ("VGT") submits this response to the extension request of Defendants Castle Hill Studios, LLC, Castle Hill Holding, LLC and Ironworks Development, LLC (collectively, "Defendants"). Dkt. No. 63. Although VGT does not oppose extending the fact discovery cutoff by 30 days and making similar adjustments to other pretrial deadlines, VGT disagrees with Defendants' request to extend discovery in the Court's Scheduling Order (Dkt. 57) by up to 131 days and to postpone trial by at least five months.

As discussed below, the lengthy extension proposed by Defendants is neither necessary nor appropriate. The parties have in place the framework of a plan that should allow the parties to complete discovery and prepare for trial with only minor modifications to the pretrial schedule. To the extent Defendants believe they need more time, that is a problem of their own making. Whereas VGT has diligently worked toward the April 13, 2018 fact discovery deadline,

Defendants effectively imposed a unilateral three-month discovery stay by producing no documents until after the Court denied their motion to dismiss on January 3, 2018, ignoring VGT's requests to meet and confer during that time, and delaying entry of a protective order until December 22, 2017.

A delay of the trial will unfairly prejudice VGT. As explained below, VGT has uncovered evidence that Defendants intentionally copied VGT's games—including instructions from Defendants' Chief Operating Officer (a former VGT employee) that their games should be made to look more like VGT's, in order to free-ride on players' "familiarity and comfort" with the VGT games. An expeditious schedule is important to limit the harm to VGT—and the benefit to Defendants—resulting from Defendants' deliberate copying.

1.      The parties met and conferred on September 22, 2017 to discuss the schedule in this case, as required by this Court. *See* Dkt. 20.

2.      Shortly after that scheduling conference, the parties agreed to a nine-month discovery period, with phased fact and expert discovery. The parties submitted this agreement in a Joint Status Report. Dkt. 32.

3.      On October 2, 2017, Defendants moved to dismiss. Dkt. 29.

4.      While that motion was pending, Defendants largely refused to participate in discovery. For example, Defendants declined to abide by their agreement to negotiate by November 8, 2017: (a) a protective order governing exchange of confidential information, including source code, and (b) a stipulation governing the production of electronically stored information ("ESI"). Ex. A, Email from G. Rubman to R. Gill (Nov. 8, 2017).

5.      Similarly, Defendants provided barebones responses to VGT's initial requests for production and interrogatories. Defendants initially refused to produce any documents in

response to more than ***three-quarters*** of VGT's document requests, and failed to answer five of the thirteen interrogatories, while providing very little substantive information in response to the others.

6.      VGT was thus forced to resort to motion practice.  Dkt. 47.  Defendants opposed, arguing that the motion was "premature" because there was "no discovery deadline in place." Dkt. 50 at 3.  Defendants took the position that they should not have to produce "source code and other highly confidential information" until VGT identified its trade secrets with particularity, *id.* at 8, yet in the very same paper Defendants argued that "there [was] no immediacy to VGT's motion regarding the terms of a protective order," *id.* at 13—a prerequisite for the trade secret identification requested by Defendants.  VGT's motion eventually resulted in a protective order being entered on December 22, 2017, three months after discovery started.  Dkt. 54, 55.

7.      VGT produced "highly confidential" technical documents and source code, and supplemented its interrogatory responses to identify numerous trade secrets, the week after the Court entered the protective order (*i.e.*, the week between Christmas and New Year's).  This followed VGT's earlier production of non-confidential documents in November.  By contrast, Defendants did not produce a single document until January 10, 2018—a week after the Court denied their motion to dismiss and more than 100 days after discovery commenced.  Dkt. 56.

8.      On January 4, 2018, the day after denying Defendants' motion to dismiss, the Court entered a Scheduling Order.  Dkt. 57.  That Scheduling Order provides for a nine-month discovery period, with fact discovery to close on April 13, 2018 and expert discovery to close on June 22, 2018.

9.      VGT has been working diligently to complete discovery.  Among other things, VGT has provided over seventy pages of interrogatory responses, explaining its claims against

Defendants, and produced regulatory submissions, source code, financial documents, and electronically stored information, such as emails and chat logs.[1]  At the same time, VGT has identified deficiencies in Defendants' discovery responses, and the parties have met and conferred on those deficiencies.  Finally, VGT has deposed two of Defendants' employees and noticed eight more depositions, including a Rule 30(b)(6) deposition of Defendants.

10.    By contrast, Defendants have misspent most of the discovery period.  Among other things, Defendants have failed to respond adequately to VGT's interrogatories (its responses, including objections, are less than 25 pages); Defendants did not send a deficiency letter until January 29, 2018—more than two months after they received VGT's initial responses; and Defendants did not notice a deposition until February 26, 2018—less than two months before the close of fact discovery.[2]

11.    Despite Defendants' delay, the parties developed a workable plan for completing discovery at a March 7 meet-and-confer.  Pursuant to this plan, the parties will supplement their interrogatory responses by March 16, produce additional documents (including continuing to produce ESI) next week, and work to schedule noticed depositions.

12.    Based on these discussions, the parties should be able to complete discovery with a 30-day fact discovery extension.  Indeed, keeping a shorter discovery period will encourage the

---

[1] Any complaint by Defendants that VGT has not timely produced email is belied by Defendants' failure to negotiate an ESI stipulation by the agreed-upon date (as noted above). VGT sent Defendants a draft ESI stipulation on November 3 that contemplated substantial completion of email discovery by January 31, 2018.  Ex. E, Email from M. Sawyer to S. Flax (Nov. 3, 2017) (attaching draft ESI stipulation).  Had Defendants agreed to this proposal, email production would have been complete long before the current discovery deadline.

[2] Although CHG's motion touts its 70,000-page document production, Dkt. 63 ¶ 5, over 60,000 of those pages were produced the business day before CHG filed this motion.  That production includes numerous documents that artificially inflate the page count by using large margins that limit the text to *one* character per line.

parties to litigate the case efficiently by, for example, focusing on important depositions, rather than taking up to 25 depositions per side. Most important, it will allow the parties to maintain the other deadlines set by the Court in its Scheduling Order, including for trial.

13.    Defendants propose that the fact discovery cutoff be extended by 90 days, and that the expert discovery cutoff be extended from June 22 to October 31—a total of 131 days. But this case is not so complex as to warrant an extension of that magnitude; while Defendants point to the number of games at issue, there is substantial overlap between the accused games that will permit efficiencies in discovery and trial. And Defendants incorrectly claim that the parties "collectively listed over eighty (80) potential witnesses for trial," Dkt. 63 ¶ 11—which ignores the substantial overlap in witnesses between the two lists.

14.    Moreover, although Defendants suggest that the extension is needed because depositions will take place in many locations, *see* Dkt. 63 ¶ 13, that merely reflects that Defendants have telecommuting employees residing in different states, not that the case is complex. Because both sides are represented by large teams of attorneys, deposition coverage should not be problematic. (Although this brief is not the proper vehicle to address the dispute, VGT strongly disagrees with Defendants' suggestion "that trial will likely take several weeks to complete." *Id.* ¶ 21. VGT submits that at the appropriate time, the parties should discuss trial with an aim toward avoiding an unnecessary imposition on the Court's and jury's time.)

15.    Defendants' proposed extension would unduly prejudice VGT by delaying trial for at least five months. The discovery Defendants have produced to date has revealed evidence of copying and misappropriation that warrants prompt judicial attention. For example, Defendants' Chief Operating Officer, Jason Sprinkle, instructed his employees to mimic the appearance of VGT's successful "Polar High Roller" game all the way down to the color scheme

and depiction of the "aurora borealis."  Ex. B CHG0008739 ("The colors should follow the polar high roller a little more"); Ex. C CHG0008682 ("I would like some of these [Polar High Roller] colors added, maybe the horizon, think of it as the aurora borealis . . . . for player familiarity and comfort.").

████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████

16.     In light of the foregoing, VGT requests that the Court modify the Scheduling Order as follows (with all other dates, including for trial, remaining unchanged):

| | |
|---|---|
| 5-14-2018 | Fact Discovery Cutoff |
| 5-21-2018 | Plaintiff/Defendants' Opening Expert Identification & Reports Under FRCP 26(a)(2) (Not Filed of Record) |
| 6-8-2018 | Plaintiff/Defendants' Opposition Expert Reports Under FRCP 26(a)(2) (Not Filed of Record) |
| 6-22-2018 | Plaintiff/Defendants' Reply Expert Reports Under FRCP 26(a)(2) (Not Filed of Record) |
| 7-13-2018 | Expert Discovery Cutoff (Interrogatories and Rule 34 requests must be made 30 days in advance of this date) |
| X | Settlement Conference Requested After 7/13/2018 |
| 8-10-2018 | Dispositive Motions and Daubert Motions |
| 8-10-2018 | Motions in Limine (Attorney meeting to resolve issues required before filing) |

March 9, 2018                              Respectfully submitted,

*/s/ Gary Rubman*
Graydon Dean Luthey, Jr., OBA No. 5568
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
Telephone: (918) 595-4821
Facsimile: (918) 595-4990
dluthey@gablelaw.com

Gary M. Rubman
Peter A. Swanson
Michael S. Sawyer
Rebecca B. Dalton
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C.  20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 778-5465
grubman@cov.com
pswanson@cov.com
msawyer@cov.com
rdalton@cov.com
   (admitted pro hac vice)

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1221
Facsimile: (212) 841-1010
nroman@cov.com
   (admitted pro hac vice)

***Counsel for Video Gaming Technologies, Inc.***

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2018, I filed the foregoing via CM/ECF, which caused

the foregoing to be served on the following counsel for Defendants:

Robert C. Gill
Thomas S. Schaufelberger
Matthew J. Antonelli
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
tschauf@saul.com
matt.antonelli@saul.com

Sherry H. Flax
SAUL EWING ARNSTEIN & LEHR, LLP
500 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 332-8764
(410) 332-8785 (facsimile)
sherry.flax@saul.com

James C. Hodges, OBA 4254
JAMES C. HODGES, PC
2622 East 21st Street, Suite 4
Tulsa, OK 74114
Telephone: (918) 779-7078
JHodges@HodgesLC.Com

Duane H. Zobrist
Jonathan S. Jacobs
ZOBRIST LAW GROUP PLLC
1900 Arlington Blvd. Suite B
Charlottesville, VA 22903
Telephone: (434) 658-6400
dzobrist@zoblaw.com
jjacobs@zoblaw.com

*Attorneys for Defendants*

*/s/ Michael S. Sawyer*