# EXHIBIT E

| | |
|---|---|
| **From:** | Sawyer, Michael |
| **To:** | Flax, Sherry H. |
| **Cc:** | Swanson, Peter; Roman, Neil; Rubman, Gary; jhodges@hodgeslc.com; Jonathan Jacobs; Duane Zobrist; dluthey@gablelaw.com; rgill@saul.com; Schaufelberger, Thomas S. |
| **Subject:** | RE: Video Gaming Technologies, Inc. v Castle Hill Studios LLC, Case No. 17-cv-454-GKF-mjx |
| **Date:** | Friday, November 03, 2017 3:27:00 PM |
| **Attachments:** | VGT-CHG Joint ESI Stipulation.DOCX |

Sherry,

Please find attached a proposed ESI stipulation, which we hope is acceptable to Castle Hill.  If Castle Hill would like to make any revisions to this ESI stipulation, please provide those revisions in a redline by November 7.  Please also provide your availability to meet and confer about any proposed revisions on November 8, so that we can meet the deadline to agree on an ESI stipulation by November 8.

We are also awaiting Castle Hill's proposed revisions to the protective order, which we sent to you on October 26.  Please also provide any redlines to that proposed protective order by November 7, 2017, so that we can discuss them by November 8.

Best,
Mike

**From:** Sawyer, Michael
**Sent:** Thursday, October 26, 2017 9:52 PM
**To:** 'Jonathan Jacobs' <jjacobs@zoblaw.com>
**Cc:** Swanson, Peter <pswanson@cov.com>; Roman, Neil <nroman@cov.com>; Rubman, Gary <grubman@cov.com>; jhodges@hodgeslc.com; Duane Zobrist <dzobrist@zoblaw.com>; dluthey@gablelaw.com; Flax, Sherry H. <Sherry.Flax@saul.com>; rgill@saul.com; Schaufelberger, Thomas S. <tschauf@saul.com>
**Subject:** RE: Video Gaming Technologies, Inc. v Castle Hill Studios LLC, Case No. 17-cv-454-GKF-mjx

Jonny,

Thanks for speaking as well.  I called you earlier today, but because I was unable to reach you by phone, I am writing to keep the discussion moving.  I am also copying the new attorneys that you said would be appearing on behalf of Defendants.

With respect to Highly Confidential Source Code, we appear to be on the same page, with the understanding that the source code can also be shown to current employees of the supplying party during a depo, as explained in the attached draft protective order.

With respect to Highly Confidential materials, we are generally on the same page, but we propose deferring any discussion of showing financial information to party representatives until the parties engage in mediation or settlement discussions.  This is also reflected in the attached draft protective order.

With respect to Confidential information, we remain uncomfortable with CHG showing that information to 5 non-lawyer party representatives of CHG, particularly given that the allegations in this case include misappropriation of confidential business information.  We are not aware of any reason why CHG would need 5 non-lawyer representatives to review VGT's confidential information.  Please let us know why CHG needs so many of its employees to review this information, and also let us know how many total employees CHG has.

Finally, please provide your availability for a call tomorrow to discuss finalizing the protective order.  Because the protective order is a gating event to most trade secret discovery, and because we have been trying to reach agreement on the protective order for several weeks, we plan to raise this issue with Judge Frizzell at the Scheduling Conference on Monday.

Best,
Mike

**From:** Jonathan Jacobs [mailto:jjacobs@zoblaw.com]
**Sent:** Tuesday, October 24, 2017 4:14 PM
**To:** Sawyer, Michael <msawyer@cov.com>
**Subject:** RE: Video Gaming Technologies, Inc. v Castle Hill Studios LLC, Case No. 17-cv-454-GKF-mjx

Thanks for talking Mike.  Does this look right?  Obviously the actual language will be much more specific.

1. Highly Confidential Source Code: can be seen by people necessary to litigation (judge, jury, copy vendors, lawyers) and experts that are pre-approved by other side. Cannot be seen by any party.
    a. Must be stored on a computer that is disabled from network connection and USB ports – so no chance someone can hack.
2. Highly Confidential: can be seen by same people as highly confidential.  In addition, each party can designate one person to see highly confidential financial information of other side – other side has to pre-approve the one person.
3. Confidential: can be seen by same people as highly confidential source code, and each party can designate 5 people to see. No pre-approval of these 5 required.

-Jonny

**From:** Sawyer, Michael [mailto:msawyer@cov.com]
**Sent:** Tuesday, October 24, 2017 1:42 PM
**To:** Jonathan Jacobs <jjacobs@zoblaw.com>
**Subject:** RE: Video Gaming Technologies, Inc. v Castle Hill Studios LLC, Case No. 17-cv-454-GKF-mjx

We can use the following dial-in: 1-866-798-7071; access code 16625257# for our 3pm call.

**From:** Jonathan Jacobs [mailto:jjacobs@zoblaw.com]

**Sent:** Monday, October 23, 2017 11:58 AM
**To:** Sawyer, Michael <msawyer@cov.com>; Rubman, Gary <grubman@cov.com>; jhodges@hodgeslc.com; Duane Zobrist <dzobrist@zoblaw.com>
**Cc:** dluthey@gablelaw.com; Roman, Neil <nroman@cov.com>; Swanson, Peter <pswanson@cov.com>
**Subject:** RE: Video Gaming Technologies, Inc. v Castle Hill Studios LLC, Case No. 17-cv-454-GKF-mjx

Hi Mike,

Let's talk at 3:00 p.m. tomorrow. Could I trouble you to send me a calendar invitation with dial-in info?

I didn't see a need for any of the changes you made to the draft I sent earlier. However, I would like to hear your reasons for each change and see whether we can come to an agreement.

Thanks, and talk tomorrow,

Jonny

---

**From:** Sawyer, Michael [mailto:msawyer@cov.com]
**Sent:** Monday, October 23, 2017 10:55 AM
**To:** Jonathan Jacobs <jjacobs@zoblaw.com>; Rubman, Gary <grubman@cov.com>; jhodges@hodgeslc.com; Duane Zobrist <dzobrist@zoblaw.com>
**Cc:** dluthey@gablelaw.com; Roman, Neil <nroman@cov.com>; Swanson, Peter <pswanson@cov.com>
**Subject:** RE: Video Gaming Technologies, Inc. v Castle Hill Studios LLC, Case No. 17-cv-454-GKF-mjx

Thanks, Jonny. Would you be able to send a proposed red line to the draft we sent last week so that the call will be productive?

I am available to speak from 1–2 pm and 3–6 pm Eastern tomorrow. Please let me know what time works best for you.

Best,
Mike

---

**From:** Jonathan Jacobs [mailto:jjacobs@zoblaw.com]
**Sent:** Friday, October 20, 2017 4:00 PM
**To:** Sawyer, Michael <msawyer@cov.com>; Rubman, Gary <grubman@cov.com>; jhodges@hodgeslc.com; Duane Zobrist <dzobrist@zoblaw.com>
**Cc:** dluthey@gablelaw.com; Roman, Neil <nroman@cov.com>; Swanson, Peter <pswanson@cov.com>
**Subject:** RE: Video Gaming Technologies, Inc. v Castle Hill Studios LLC, Case No. 17-cv-454-GKF-mjx

Thanks, Mike. How about we talk Tuesday afternoon. Are you available?

-Jonny

---

**From:** Sawyer, Michael [mailto:msawyer@cov.com]
**Sent:** Wednesday, October 18, 2017 2:34 PM
**To:** Jonathan Jacobs <jjacobs@zoblaw.com>; Rubman, Gary <grubman@cov.com>; jhodges@hodgeslc.com; Duane Zobrist <dzobrist@zoblaw.com>
**Cc:** dluthey@gablelaw.com; Roman, Neil <nroman@cov.com>; Swanson, Peter <pswanson@cov.com>
**Subject:** RE: Video Gaming Technologies, Inc. v Castle Hill Studios LLC, Case No. 17-cv-454-GKF-mjx

Jonny,

Please find attached our proposed changes to your draft with changes in redline to account for, inter alia, the exchange of source code.  Please provide your availability for a call to discuss this week, so that we can get a motion on file next week.

Best,
Mike

---

**From:** Jonathan Jacobs [mailto:jjacobs@zoblaw.com]
**Sent:** Friday, October 13, 2017 4:48 PM
**To:** Rubman, Gary <grubman@cov.com>; jhodges@hodgeslc.com; Duane Zobrist <dzobrist@zoblaw.com>
**Cc:** dluthey@gablelaw.com; Roman, Neil <nroman@cov.com>; Swanson, Peter <pswanson@cov.com>; Sawyer, Michael <msawyer@cov.com>
**Subject:** RE: Video Gaming Technologies, Inc. v Castle Hill Studios LLC, Case No. 17-cv-454-GKF-mjx

Hi Gary,

Draft protective order attached.   Our local counsel tells me that the Court prefers its form protective order, and also expects explanations for the changes made to the form.  Because it doesn't look like you used the Court's form as a baseline, I've started anew, with just a few edits to the form agreement, which you can see in redline.

Please let me know if you have any recommended changes to this.  I'm also happy to schedule a call to the extent that may be helpful in resolving any disagreement.

Have a great weekend.

-Jonny

---

**From:** Rubman, Gary [mailto:grubman@cov.com]
**Sent:** Thursday, October 12, 2017 6:26 PM
**To:** Jonathan Jacobs <jjacobs@zoblaw.com>; jhodges@hodgeslc.com; Duane Zobrist

<dzobrist@zoblaw.com>
**Cc:** dluthey@gablelaw.com; Roman, Neil <nroman@cov.com>; Swanson, Peter <pswanson@cov.com>; Sawyer, Michael <msawyer@cov.com>
**Subject:** RE: Video Gaming Technologies, Inc. v Castle Hill Studios LLC, Case No. 17-cv-454-GKF-mjx

Jonathan,

Please let us know when you will be sending your edits to the draft protective order.

Thanks.

- Gary

**Gary Rubman**

**Covington & Burling LLP**
**One CityCenter, 850 Tenth Street, NW**
**Washington, DC 20001-4956**
**T +1 202 662 5465 | grubman@cov.com**
www.cov.com

---

**From:** Jonathan Jacobs [mailto:jjacobs@zoblaw.com]
**Sent:** Monday, October 09, 2017 2:30 PM
**To:** Rubman, Gary <grubman@cov.com>; jhodges@hodgeslc.com; Duane Zobrist <dzobrist@zoblaw.com>
**Cc:** dluthey@gablelaw.com; Roman, Neil <nroman@cov.com>; Swanson, Peter <pswanson@cov.com>; Sawyer, Michael <msawyer@cov.com>
**Subject:** RE: Video Gaming Technologies, Inc. v Castle Hill Studios LLC, Case No. 17-cv-454-GKF-mjx

Thanks, Gary.  Give me a couple of days to check with my client, and I'll send you edits.

Thanks,

Jonny

---

**From:** Rubman, Gary [mailto:grubman@cov.com]
**Sent:** Friday, October 6, 2017 8:50 PM
**To:** jhodges@hodgeslc.com; Duane Zobrist <dzobrist@zoblaw.com>; Jonathan Jacobs <jjacobs@zoblaw.com>
**Cc:** dluthey@gablelaw.com; Roman, Neil <nroman@cov.com>; Swanson, Peter <pswanson@cov.com>; Sawyer, Michael <msawyer@cov.com>
**Subject:** RE: Video Gaming Technologies, Inc. v Castle Hill Studios LLC, Case No. 17-cv-454-GKF-mjx

Counsel,

It has now been two weeks since we sent the proposed protective order, but we have not yet received a response.  Please promptly provide your comments, if any, about the draft.

Best regards,

- Gary


**Gary Rubman**

Covington & Burling LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 5465 | grubman@cov.com
www.cov.com

---

**From:** Sawyer, Michael
**Sent:** Friday, September 22, 2017 3:15 PM
**To:** Duane Zobrist <dzobrist@zoblaw.com>; Jonathan Jacobs <jjacobs@zoblaw.com>
**Cc:** dluthey@gablelaw.com; Roman, Neil <nroman@cov.com>; Rubman, Gary <grubman@cov.com>; Swanson, Peter <pswanson@cov.com>
**Subject:** Video Gaming Technologies, Inc. v Castle Hill Studios LLC, Case No. 17-cv-454-GKF-mjx

Counsel,

Please find attached a proposed protective order for the above-captioned matter.  We would appreciate your prompt consideration of this proposed order.

Best,
Mike

**Michael Sawyer**

Covington & Burling LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 5257 | msawyer@cov.com
www.cov.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) VIDEO GAMING TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> 1) CASTLE HILL STUDIOS LLC <br> (d/b/a CASTLE HILL GAMING); <br> 2) CASTLE HILL HOLDING LLC <br> (d/b/a CASTLE HILL GAMING); and <br> 3) IRONWORKS DEVELOPMENT, LLC <br> (d/b/a CASTLE HILL GAMING), <br><br> Defendants. | Case No. 4:17-cv-00454-GKF-mjx |

**[DRAFT] STIPULATION REGARDING PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

It is hereby stipulated and agreed, by and between Plaintiff Video Gaming Technologies, Inc. and Defendants Castle Hill Studios LLC, Castle Hill Holding LLC, and Ironworks Development, LLC (Plaintiff and Defendants, collectively, "the Parties," and each a "Party"), this Stipulation Regarding Production of Documents and Electronically Stored Information ("Stipulation") shall govern discovery of electronically stored information ("ESI") in this case as described in Federal Rule of Civil Procedure 34 and this Court's Guidelines for Discovery of Electronically Stored Information.

**I.     Preservation**

The Parties have discussed and confirmed their preservation obligations and agree that preservation of potentially relevant ESI will be reasonable and proportionate.

**II.    Scope of E-mail Discovery**

Each Party shall be responsible for generating a searching protocol that it believes in good faith will return a reasonably high proportion of responsive documents or ESI. For emails of the custodians identified in accordance with this paragraph, the Parties agree to use search terms to identify potentially responsive emails according to the following protocol:

a) Each Party will provide (i) a list of proposed custodians for the opposing Party and (2) the proposed search terms for each custodian on the list.

b) The Parties agree to limit the number of custodians whose email will be searched to a maximum of twelve (12) custodians per side, unless otherwise agreed to by the Parties or for good cause shown to the Court.

c) Each requesting Party shall limit the requested search terms to a total of twenty-five (25) search terms per custodian per side, unless otherwise agreed to by the Parties or for good cause shown to the Court. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system," "computer" w/5 "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. A disjunctive set of terms modified with a conjunctive limitation (*e.g.*, ("computer" or "system") and "hard drive") shall count as a single term. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production.

d) A particular search term that returns a disproportionate amount of non-responsive documents would be objectionable. In such cases, the Parties agree to work together to revise the search term as appropriate.

e) The total number of emails or attachments to be produced for each custodian shall not exceed 10,000.

f) The Parties agree to the following schedule for exchanging and agreeing upon the lists of proposed custodians and search terms:

1. By November 30, 2017, the Parties will exchange lists of their proposed custodians and search terms for each of the proposed custodians.

2. By December 15, 2017, each Party shall provide the other Party with hit reports showing the number of emails or attachments responsive to each search term. To the extent the total number of emails or attachments exceeds 10,000 for a custodian, the Parties will engage in good faith negotiations to revise the search terms so that a production of fewer than 10,000 documents can be run.

3. By December 29, 2017, the Parties will meet and confer to agree on final search terms and custodians for each Party. Once the Parties have agreed on final search terms, no search terms shall be added thereafter in the absence of a further agreement between the Parties or unless good cause is shown to the Court.

4. By January 15, 2018, the Parties will begin producing emails. Email production shall be substantially complete by January 31, 2018.

**III.    Deleted Information**

During the meet-and-confer in accordance with Section II.f.3 above, the Parties will discuss the existence of any deleted ESI, or ESI stored on back-up or archival media, that could be responsive to the issues in this case.

**IV.    Embedded Data and Metadata**

3

General ESI production requests under Federal Rules of Civil Procedure 34 and 45, or compliance with mandatory disclosure requirements of this Court shall include both "embedded data" and "metadata," as defined by this Court's Guidelines for Discovery of ESI under the following guidelines:

a) The Parties are not required to preserve metadata fields that are frequently updated in the ordinary course of business, such as last-opened dates. No Party shall be required to create any metadata for production (e.g., hash value or other metadata not associated with ESI in the ordinary course of business) except that the Parties will create (a) a field to indicate the production volume in which the document is contained and (b) a field to indicate whether or not a document has been designated as Confidential, Highly Confidential, or Highly Confidential Source Code Information pursuant to the Protective Order in this case (see below list of metadata fields). However, a receiving Party may not rely solely on that field to identify information and documents that are subject to the Protective Order to be entered in this case. Any document bearing a confidentiality stamp (*e.g.*, "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL") on the produced image or media is to be afforded confidential treatment under the Protective Order regardless of whether there is an entry in this field.

b) Absent a showing of good cause, ESI productions shall not include metadata except that the following fields shall be included in the production if such fields exist in the ordinary course of business and are reasonably available to the producing Party:

| Field Name | Field Description |
|---|---|
| VOLNAME | Name of the production volume |
| BEGBATES | Number stamped on first image page of document |
| ENDBATES | Number stamped on last image page of document |
| BEGATTACH | Number stamped on first image page of attachment(s) |

4

| | |
|---|---|
| ENDATTACH | Number stamped on last image page of attachment(s) |
| CBI | Indicates whether a document has been designated as Confidential Information, Highly Confidential Information, or Highly Confidential Source Code Information |
| CUSTODIAN | Where applicable and available, identifies the individual (custodian) from whom the document originated |
| DE-DUPED CUSTODIAN | Where applicable and available, identifies all individuals other than the individual identified in the CUSTODIAN field whose files were de-duplicated but contained a copy of the document |
| FILENAME | Original file name of an electronic document or attachment |
| FILEEXTENSION | Actual file extension for the electronic document |
| NATIVEFILELINK | For documents produced as native file, link to that file |
| TEXTFILELINK | Link to text file produced with document or attachment |
| MD5HASH | Identifies value of an electronic record that can be used for deduplication and authentication generated using the MD5 hash algorithm |
| PARENT_DATE:TIME | The date and time of a parent document. For attachments to emails, this field will be populated with the date sent of its parent email transmitting the attachment. (mm/dd/yyyy hh:mm:ss PM GMT) |
| SENT_DATE:TIME | The date and time an email was sent (mm/dd/yyyy hh:mm:ss PM GMT). |
| RECVD_DATE:TIME | The date and time an email was received (mm/dd/yyyy hh:mm:ss PM GMT). |
| AUTHOR | Author Display Name |
| FROM | Sender |
| TO | Recipient |
| CC | CC |
| BCC | BCC |
| SUBJECT | E-mail Subject |
| ATTACH_COUNT | Number of attachments |
| CREATE_DATE:TIME | The date and time an email or e-file was created (GMT). |
| LASTMOD_DATE:TIME | The date and time an e-file was last modified (GMT). |

To the extent that good cause may exist for providing field information in substantively different field formats, the Parties shall meet and confer and agree on a format.

**V.      Production Format and Media**

5

Unless otherwise agreed between the Parties, all documents, including any ESI, shall be produced according to the following parameters:

a) Documents shall be produced as TIFF images, except for spreadsheets or other documents that cannot be easily converted to TIFF format. Documents produced as TIFF images shall be produced as single-page TIFF Group IV images, black and white, at 300 x 300 dpi resolution with a standard delimited concordance format (DAT file) and either IPRO (LFP file) or Opticon (OPT file) format, including document breaks and page counts. The producing Party may, at any time, reproduce any document in color in JPG format or at a higher resolution. Documents reproduced in color or at a higher resolution shall bear the same production number(s) as the originally produced document where practicable. A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF image filename. A commercially acceptable technology for optical character recognition ("OCR") shall be used for all scanned, hard copy documents written in English or other Latin-character language. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents. If particular documents warrant a different format, the Parties shall meet and confer in good faith to arrange for the mutually acceptable production of such documents. The Parties agree not to degrade the searchability of documents as part of the document production process.

b) Images shall be produced using a unique file name that will be the production number of that page (e.g., ABC000001.TIFF). The production number shall appear on the face

of the image. For documents that are produced as native files, the producing Party shall include in the set of TIFF images a slipsheet where the native file would otherwise have been produced indicating the production number of the native file or other document and the confidentiality designation. In addition, native files shall be produced using a name that bears the production number, for example: ABC000002.xls. The producing Party shall also endeavor to indicate any confidentiality designation in the produced filename where possible and reasonable. The confidentiality designation appearing on the slipsheet shall be deemed to apply to the corresponding native file in its entirety. The DAT file shall also include a path to the native file.

c) Parent-child relationships (association between an attachment and its parent document) shall be preserved to the extent such relationships are maintained in the normal course of business in the source repository. The attachment(s) shall be produced adjacent to the parent document in terms of production numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment. Any parent-child relationship will be reflected in the DAT file.

d) The producing Party shall produce as native files Microsoft Excel spreadsheets, Microsoft Access databases, Microsoft PowerPoint presentations and other documents that cannot be converted to a TIFF image format in a readily usable and legible format. In addition, a producing Party shall not be required to produce in TIFF format when the conversion to image TIFF format would impose unreasonable cost on the producing Party and/or would result in unintelligible documents. Under such circumstances, the producing Party shall notify the requesting Party within a reasonable time after learning

7

of the issue and the Parties shall meet and confer regarding an acceptable production format. The Parties will make reasonable efforts to ensure that all documents produced in native format are decrypted, but the Parties have no duty to identify encrypted documents prior to production.

e) A producing Party shall make reasonable efforts to accommodate reasonable requests that documents produced in TIFF format that are unintelligible or not readily usable be produced in another format, such as native format.

f) The producing Party shall make reasonable efforts to accommodate reasonable requests for color images and reasonable requests for higher resolution images if the document as originally produced is illegible or difficult to read. The producing Party shall have the option of producing the native-file version of the documents in response to such requests.

g) The Parties agree to cooperate in good faith to accommodate reasonable requests to deviate from the procedures and protocols outlined above as needed to facilitate the timely and cost-effective production of ESI.

h) Each Party reserves the right to request native files for documents that are difficult to understand when produced in a different format or that contain potentially relevant embedded information, and such requests will not be unreasonably denied.

## VI. Substantial Completion

In order to ensure the timely completion of discovery, the Parties agree to substantially complete production of paper documents and non-email ESI by December 29, 2017, and substantially complete the production of all email ESI by January 31, 2018.

**VII.** **Privileged Materials**

In order to preserve the protections afforded by the attorney-client privilege and work product doctrine to documents and information disclosed by the respective Parties in connection with this litigation, and pursuant to the Court's authority under Federal Rule of Civil Procedure 26(c) and Federal Rule of Evidence 502, the Parties hereby stipulate to the following:

a) Production and/or disclosure of documents and information in this case shall be without prejudice to and shall not waive, for purposes of this case or otherwise, any attorney-client privilege or work product protection that would otherwise apply.

b) For any document withheld in its entirety or produced but redacted, the producing Party will produce privilege/redaction logs in Excel format. A producing Party will produce a separate privilege/redaction log for each production within 30 days of the production of documents for which a privilege is asserted.

c) Communications involving counsel of record or in-house counsel for a party that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

d) If, in connection with this action, documents or information subject to a claim of attorney-client privilege, work product protection or other claim of privilege are produced or disclosed ("Disclosed Information") by the producing Party, the disclosure of such Disclosed Information shall not constitute or be deemed a waiver of any claim of attorney-client privilege or work product protection that the disclosing Party would otherwise be entitled to assert with respect to the Disclosed Information and its subject matter. The non-waiver of claims of attorney-client privilege and work product

protection shall apply to this action as well as any other federal, state, or other proceedings.

e) If a claim of attorney-client privilege or work product is made by a producing Party with respect to disclosed Information, the receiving Party shall, within five business days of receiving notice of the claim of disclosure, return, delete, or destroy that Disclosed Information and delete or destroy the portions of all work product that reflect or are derived from such Disclosed Information, including all copies thereof, and shall make no use of any kind of such Disclosed Information and work product.  Upon request by the producing Party, the receiving Party shall confirm in writing that it has complied with these procedures.

f) If a receiving Party knows or believes it reasonably likely that it has received Disclosed Information, it shall promptly sequester such Disclosed Information and refrain from using both it and the portions of all work product that reflect or are derived from such Disclosed Information.  The receiving Party shall promptly notify the producing Party of the existence of such Disclosed Information in order to permit the producing Party to take protective measures as outlined above.

g) Nothing herein shall limit the receiving Party's right to challenge (on grounds unrelated to the fact or circumstances of the disclosure in this litigation) the disclosing Party's claim that Disclosed Information is protected from disclosure by the attorney-client privilege, work product doctrine, or other asserted privilege.  If, after undertaking an appropriate meet-and-confer process, the Parties are unable to resolve any dispute they have concerning the protection of documents for which a claim of privilege has been asserted, the receiving Party may file the appropriate motion or application as provided

by the Court's procedures to compel production of such material. Any Disclosed Information submitted to the Court in connection with a challenge to the producing Party's claim of attorney-client privilege or work product protection shall not be filed in the public record, but rather shall be redacted, filed under seal, or submitted for in camera review.

h) Nothing in this Stipulation shall waive or limit any protections afforded the Parties under Federal Rule of Evidence 502.

## VIII.  Modification

This ESI Stipulation may be modified by stipulation of the Parties or by the Court for good cause shown.

Attorneys for Plaintiff:

Executed: _____    _____

Graydon Dean Luthey, Jr., OBA No. 5568
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
Telephone: (918) 595-4821
Facsimile: (918) 595-4990
dluthey@gablelaw.com

Gary M. Rubman
Peter A. Swanson
Michael S. Sawyer
Rebecca B. Dalton
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 778-5465
grubman@cov.com
pswanson@cov.com
msawyer@cov.com

11

rdalton@cov.com
  (admitted pro hac vice)

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1221
Facsimile: (212) 841-1010
nroman@cov.com
  (admitted pro hac vice)

***Counsel for Video Gaming Technologies, Inc.***

Attorneys for Defendants:

Executed: _____

**JAMES C. HODGES, P.C.**
**A Professional Corporation**

_____
James C. Hodges, OBA #4254
2622 East 21st Street, Suite 4
Tulsa OK 74114
(918) 779-7078
(918) 770-9779 facsimile
JHodges@HodgesLC.com

Duane H. Zobrist (admitted *pro hac vice*)
Jonathan S. Jacobs (admitted *pro hac vice*)
Zobrist Law Group, PLLC
1900 Arlington Blvd. Suite B
Charlottesville, VA 22903
434-977-9666
dzobrist@zoblaw.com
jjacobs@zoblaw.com