**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

VIDEO GAMING TECHNOLOGIES, INC.,

    Plaintiff,

vs.

CASTLE HILL STUDIOS LLC, *et al.*

    Defendants.

CASE NO. 17-CV-00454-GKF-JFJ

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE**
**TO MOTION TO EXTEND SCHEDULING ORDER DEADLINES**

    Defendants Castle Hill Studios, LLC, Castle Hill Holding, LLC and Ironworks Development, LLC (collectively, "CHG") have moved for a 90 day extension of all deadlines set forth in the Court's Scheduling Order (Doc. 57), and a modification of the expert discovery schedule. CHG submits this Reply to Plaintiff Video Gaming Technologies, Inc.'s ("VGT") Response to Defendants' Motion (Docs. 65 [redacted] and 66 [sealed in part]). In its Response, while not opposing a 30 day extension of the fact discovery cutoff (or even addressing the experts issue), Plaintiff distorts the current status of the parties' discovery efforts, cynically claiming that the need for more time to conduct discovery "is a problem of [Defendants'] own making" and that a delay of the trial will "unfairly prejudice VGT." Nothing could be farther from the truth, and the Court should extend the deadlines as CHG has requested.

    First, it is *VGT's* failure to provide basic information to CHG concerning its claims that has impeded CHG's ability to complete discovery in this action. For example, CHG served its First Set of Interrogatories and First Set of Requests for Production of Documents and Things *on September 25, 2017*. In those requests, CHG requested that VGT identify exactly which trade secrets it alleges CHG misappropriated, who misappropriated them, and how they were

1

improperly used. To date – over five months later – VGT has still not provided this basic information to CHG, despite repeated and ignored requests to meet and confer on the issue.[1] Likewise, CHG requested that VGT provide details concerning the specific trademarks and specific trade dress features it claims Defendants have infringed upon. In response, Plaintiff has done little more that identify general categories of "shared" trade dress elements and "themes" without detail, leaving it to Defendants to guess at what Plaintiff is claiming. While Plaintiff has finally agreed to provide this information to Defendants by March 16, 2018, in accordance with agreements reached during the parties' meet and confer on March 7, 2018, the reality is that CHG has been significantly hampered in its ability to conduct meaningful discovery on these issues to date as a result.[2]

Similarly, while CHG has produced approximately 7,400 documents to date (comprising nearly 75,000 pages), VGT has produced only about 2,700 thousand documents, totaling less than 11,000 pages (not including source code). In fact, while CHG has produced almost all ESI requested to date (and expects to complete the production within the next week), Plaintiff has produced virtually no ESI at all in this action and not a single financial document relating to Plaintiff's alleged damages – which has made it practically impossible for Defendants to conduct any depositions or properly prepare their own witnesses for deposition. Despite repeated requests

---

[1] Bizarrely, Plaintiff argues in its Response that it was unable to identify its trade secrets with particularity until the Court entered a protective order "on December 22, 2017, three months after discovery started." Response at 3 (citing Dkt. 54, 55). It has now been *nearly three months* since the protective order was entered, and Plaintiff has *still* not identified *which* trade secrets it claims CHG "misappropriated," *who* misappropriated them, *how* they were misappropriated, or how CHG allegedly *used* them.

[2] Defendants requested that Plaintiff meet and confer concerning Plaintiff's discovery deficiencies on January 29, 2018, February 8, 2018, and again on February 26, 2018. Defendants' request was repeatedly ignored. Ultimately, the parties agreed to (and did in fact) meet in person on March 7, 2018 to try to resolve their disputes. *See* Exhibit A (3/7/18 Email from Matt Antonelli to Gary Rubman, confirming the parties' agreements).

from CHG, the best VGT would commit to at the parties' March 7 meet and confer was that Plaintiff would make the production of financial data "as soon as possible," and that it would produce ESI/emails "in the near future." *See* Exhibit A (3/7/18 Email from Matt Antonelli to Gary Rubman). Obviously, Plaintiff's delays have made timely completion of discovery impossible.

In its Response, VGT attempts to excuse its conceded failure to timely produce emails and other ESI based on "Defendants' failure to negotiate an ESI stipulation by the agreed-upon date," asserting that, "[h]ad Defendants agreed to this proposal, email production *would have* been complete long before the current discovery deadline." Response at 4 n.1 (emphasis added). This assertion is astounding and wholly disingenuous because, in reality, after extensive negotiations between the parties to establish a realistic and workable ESI protocol, including a January 4, 2018 meet and confer session, it was **Plaintiff's decision to unilaterally abandon the ESI stipulation on January 4, 2018, claiming it was "unworkable in light of the Scheduling Order" entered by the Court on that same day.** *See* Dkt. 57.

As for the depositions, Plaintiff unilaterally noticed (with no consultation over scheduling) over a dozen depositions to occur in Virginia, Pennsylvania, South Carolina and Georgia in late February and March alone (including dates when Defendants' counsel was scheduled to be in trial), without first producing relevant ESI or answering basic interrogatories about its claims. Faced with the impending discovery cutoff (which Plaintiff repeatedly refused to even discuss any extension of as "premature"), on February 26, 2018, Defendants served five notices of depositions for dates in March, for witnesses located in Tulsa, Nashville and Virginia. In response, on March 5, 2018, Plaintiff unilaterally rejected *all* of Defendants' deposition dates, stating that it would work on finding "available dates for each of the witnesses" and "be back in

touch soon." *See* Exhibit B (March 5, 2018 E-mail from Michael Sawyer to Matthew Antonelli). To date, nearly two weeks after Defendants served the deposition notices, Plaintiff has *still* not provided available dates for any of these witnesses.[3]

The reality is that Plaintiff has identified more than a dozen depositions it intends to take, with additional names to be added; CHG has already identified ten individuals it currently intends to depose, with additional names to be added once Plaintiff provides the promised documents and supplemental interrogatory responses. These depositions will be held in Charlottesville and Richmond, Virginia, Tulsa, South Carolina, Tennessee, Pennsylvania, and Michigan. As Plaintiff's counsel stated in the meet and confer that it is "unlikely" we will be able to arrange a schedule that will not require counsel to repeatedly fly back and forth to these locations to conduct the depositions, there is simply no way the depositions can be completed by May 14, as Plaintiff now proposes.

In addition, Plaintiff's assertion that "Defendants' proposed extension would unduly prejudice VGT by delaying trial," Response at 5, as "[t]he discovery Defendants have produced to date has revealed evidence of copying and misappropriation that warrants prompt judicial attention," *id.*, is outlandish. Citing a single out of context e-mail, and irrelevant (and incomplete) deposition testimony (which VGT filed under seal), Plaintiff pretends that it has found "smoking gun" evidence "of copying and misappropriation that warrants prompt judicial

---

[3] Defendants raised this issue at the March 7 meet and confer, and proposed an exchange of available dates for counsel and the witnesses by March 9. Plaintiff refused to agree, vaguely asserting that counsel would be "happy to work with you to coordinate scheduling of the depositions that both sides have noticed." *See* Exhibit C (March 9, 2018 E-mail from Gary Rubman to Matthew Antonelli). Defense counsel immediately responded with a concrete proposal to schedule a telephone conference on March 13 or 14 "to hash out a deposition schedule that makes sense for all involved." *Id.* (March 9, 2018 E-mail from Henry Platt to Gary Rubman). Plaintiff's counsel has not even extended the courtesy of responding to this invitation to date.

4

attention," *id.*, asserting that an "expeditious schedule is important to limit the harm to VGT – and the benefit to Defendants – resulting from Defendants' deliberate copying." *Id.* at 2.

Defendants decline to address VGT's specious factual allegations in this Reply. Suffice it to say that Defendants strongly disagree with the meaning and import of the cited "evidence." That is why we need a trial, and that is why Defendants are entitled to conduct meaningful and complete discovery in this action. Moreover, the notion that VGT is being "harmed" or "prejudiced" by the modification of the case deadlines is wholly disingenuous.

First, as Defendants noted in their Motion, in light of the voluminous documents that have been and continue to be produced in this case, the fact that the parties have identified dozens of potential trial witnesses, and the many issues related to each of the more than twenty (20) CHG games that VGT has alleged to be at issue in this matter, many of which will require detailed expert testimony, CHG believes that a three-day trial of this matter is unrealistic, and anticipates that trial will likely take several weeks to complete. Motion at 5. <u>Plaintiff does not dispute this in its Response</u>; it merely states that it "disagrees" with this assessment and "submits that at the appropriate time, the parties should discuss trial with an aim toward avoiding an unnecessary imposition on the Court's and jury's time."[4]  Response at 5. In short, neither party *actually* believes that a three-day *jury* trial is a realistic possibility. *In fact, in the Parties' Joint Status Report, Plaintiff anticipated that its portion of the trial will take "4-6 days," and Defendants anticipated that they would need "15 days" to put on their case.* (Dkt. 32 at 7). The

---

[4] In fact, Defendants attempted to have this discussion during their March 7, 2018 meet and confer.  Plaintiff's counsel refused to give an estimate of expected trial time, merely stating that it was "possible" to do the trial in three days because a Judge in Delaware state court only gives parties "ten and half hours" to put on their cases.  When directly asked if Plaintiff would stipulate that it would take no more than a day and half to put on its case before the jury in this action, counsel (appropriately) refused to so commit.  It is simply not even a remotely realistic possibility.

5

parties were clearly correct (if overly conservative) in their projections, and the trial date will therefore have to be re-set anyway, Plaintiff's half-hearted protestations notwithstanding.

Second, given Plaintiff's failure to provide basic information about its claims in discovery and work with Defendants to establish a workable deposition schedule, it is *Defendants* who are being unduly prejudiced by the current schedule. VGT, as it notes in its Complaint, "is the leading developer, manufacturer, and distributor of Class II bingo-based player terminals in North America," in business since 1991, offering "more than 20,000 player terminals in over 140 locations throughout the United States," and is the "top provider of Class II player terminals" in Oklahoma. Complaint ¶¶ 12-13. CHG, by contrast, is a start-up newcomer to the market, with only about 700 Class II terminals in use. In short, Plaintiff is using this litigation to try to wipe out its much smaller competition in this market, which is why it is so adamantly trying to overwhelm CHG with endless discovery requests, notices of deposition, vague claims, and a rushed trial date; VGT – and its multi-billion dollar parent Aristocrat – is a bully trying to use its vast resources and market power to quash a competitor who dares to challenge its near monopoly in the market. The Court should not deprive Defendants of the opportunity to mount a meaningful defense in this action, which would undoubtedly result in the destruction of the company.

The purpose of the above reply to Plaintiff's Response to the Motion is not intended to embroil the Court in the details of the parties' ongoing discovery disputes. To the contrary, the parties have repeatedly met and conferred in an ongoing attempt to amicably resolve these disputes without unnecessarily burdening the Court, and they continue to do so. That said, the point of the foregoing is to present the simple reality that this process has taken, and continues to take, significant time and resources, and the notion that discovery can be completed within the

current schedule (or even with an additional 30 days) is frankly unrealistic. Defense counsel will, of course, continue to try to work with Plaintiff's counsel in a good faith effort to expedite the discovery process and complete it in a timely manner; that said, given the sheer number of depositions expected, the ongoing document productions, and the expected number of experts to be presented,[5] it simply cannot be done within the current schedule or, for that matter, with only an additional 30 days.

WHEREFORE, Defendants respectfully request that the Court extend the deadlines set forth in its initial Scheduling Order as requested in Defendants' Motion and Proposed Order.

Dated:  March 11, 2018                                      Respectfully submitted,


/s/ Robert C . Gill
Robert C. Gill (admitted *pro hac vice*)
Thomas S. Schaufelberger (admitted *pro hac vice*)
Henry A. Platt (admitted *pro hac vice*)
Matthew J. Antonelli (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
tschauf@saul.com
henry.platt@saul.com
matt.antonelli@saul.com

Sherry H. Flax (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
500 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 332-8764
(410) 332-8785 (facsimile)
sherry.flax@saul.com

---

[5] Defendants' explained why the current expert discovery schedule is also unrealistic in their Motion. Dkt. 63 at 4. As Plaintiff does not in any way contest Defendants' argument, or, indeed, address it in any way, Defendants request that the Court modify the expert discovery deadlines as requested in Defendants' Motion.

        Jeremy B. Darling (admitted *pro hac vice*)
        SAUL EWING ARNSTEIN & LEHR, LLP
        One PPG Place, Suite 3010
        Pittsburgh, Pennsylvania  15222
        (412) 209-2508
        (412) 209-2592 (facsimile)
        jeremy.darling@saul.com

        James C. Hodges, OBA #4254
        JAMES C. HODGES, P.C.
        2622 East 21st Street, Suite 4
        Tulsa, Oklahoma 74114
        (918) 779-7078
        (918) 770-9779 (facsimile)
        JHodges@HodgesLC.com

        *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of March, 2018, I electronically transmitted the attached **DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO EXTEND SCHEDULING ORDER DEADLINES** to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Graydon Dean Luthey, Jr., OBA 5568
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
(918) 595-4821
(918) 595-4990 facsimile
dluthey@gablelaw.com
*Counsel for Video Gaming Technologies*

Gary M. Rubman
Peter Swanson
Michael Sawyer
Rebecca B. Dalton
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, D.C. 20001-4956
(202) 662-6000
(202) 778-5465 facsimile
grubman@cov.com
pswanson@cov.com
msawyer@cov.com
rdalton@cov.com
*Counsel for Video Gaming Technologies*

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1221
 (212) 841-1010 facsimile
nroman@cov.com
*Counsel for Video Gaming Technologies*

*Robert C. Gill*
Robert C. Gill