UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

VIDEO GAMING TECHNOLOGIES, INC.,

    Plaintiff,

vs.

CASTLE HILL STUDIOS LLC, *et al.*

    Defendants.

CASE NO. 17-CV-00454-GKF-JFJ

**REDACTED**

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S
### MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

    Defendants Castle Hill Studios LLC, Castle Hill Holdings LLC, and Ironworks Development LLC (together "Castle Hill") hereby oppose Plaintiff Video Gaming Technologies, Inc.'s ("VGT") motion for leave to file an amended complaint.

    On the eve of the close of discovery, VGT seeks leave to amend its Complaint to add two entirely new causes of action for alleged violations of the Defend Trade Secrets Act and the Virginia Uniform Trade Secrets Act. In a desperate attempt to save face, having failed to find any evidence to support its original theory that Castle Hill actually misappropriated or used VGT's source code in the development of its Class II bingo-based electronic gaming machines, VGT now alleges that Castle Hill has "used and disclosed to a third party" an unrelated "trade secret" of VGT's consisting of an algorithm ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ which Castle Hill has never actually used in its games and never intends to use in its games.

    VGT's attempted amendment is futile, however, because the "trade secret" at issue involves the alleged "use" by CHG of the most common application of the most widely known ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ – the computer source code for which is publically available on the Internet. The information is not secret, nor is it proprietary to Plaintiff.

Additionally, even if it were a trade secret, Castle Hill has *never* deployed the algorithm on any of its electronic gaming machines in the field, nor does Castle Hill have any intention to do so. In fact, as VGT is well-aware, Castle Hill uses a wholly different algorithm ███████ ██████ and has abandoned its efforts to even seek regulatory approval for the algorithm that underlies VGT's new causes of action. Plaintiff has therefore suffered no injury, monetary or otherwise, and lacks standing to assert the new claims. Moreover, Plaintiff has no evidence that CHG misappropriated any documents, electronic information or source code from it. To the contrary, CHG's software engineers remembered the obvious approach to ████████████ that Plaintiff complains about. General know-how and other information learned in the course of employment are not properly the subject of trade secret claims. For all of these reasons, and as set forth below, VGT's motion to amend is futile and should be denied.

I.   BACKGROUND

VGT seeks leave to amend its Complaint against Castle Hill to include new claims related to its (now-abandoned) allegations that Castle Hill somehow misappropriated VGT's source code underlying its Class II slot machines. In its original Complaint, VGT alleged that it has trade secrets related to its source code. *See* Complaint (ECF No. 2) at ¶ 41. VGT made the generic allegation, without any actual evidence and *on information and belief* that Castle Hill "has misappropriated VGT Trade Secrets and other confidential business information." *Id.* at ¶ 93. VGT also alleged, again on information and belief, that former VGT employees who work for Castle Hill, must have shared VGT trade secrets with Castle Hill, including the source code underlying VGT's games, because Castle Hill's games "mimic[] the play of VGT's games." *Id.* at ¶ 97.

Since the filing of the Complaint, Castle Hill has worked hard to try to understand VGT's trade secrets claim, particularly as it relates to VGT's allegation that Castle Hill has misappropriated VGT's source code.  In its discovery responses to date, however, VGT has done little more than identify items it asserts are trade secrets and make broad-sweeping, conclusory allegations regarding alleged similarities between VGT and Castle Hill's finished games.  Castle Hill has asked repeatedly for VGT to identify exactly which trade secrets it alleges Castle Hill misappropriated, who misappropriated them, and how.  VGT however, has still not identified the specific source code it claims was misappropriated, how that code was allegedly misappropriated, or how Castle Hill has allegedly used that code in its own machines.

Despite what VGT now argues, its inability to identify and specify its source code trade secrets claim is ***not*** a result of Castle Hill's conduct during discovery.  Castle Hill simply did not steal VGT's source code. Indeed, Castle Hill has produced more than 20,000 documents, totaling over 100,000 pages in response to VGT's requests for production. Separately, on January 10, 2018 and January 23, 2018, Castle Hill produced to VGT the source code Castle Hill has actually deployed on the gaming machines at issue in this case; since that time, Castle Hill has made several supplemental source code productions.  Despite now having had Castle Hill's source code for nearly five months, VGT has failed to identify *any* specific source code it alleges Castle Hill misappropriated.  To the contrary, Castle Hill's source code productions have established that Castle Hill's representations that it purchased (and then modified) its source code from a third party vendor are in fact true.

In fact, in recent communications and in response to Castle Hill's repeated requests that VGT provide further information regarding its source code claims, VGT represented that it has abandoned its original theory and is no longer pursuing claims based on misappropriation of

3

source code trade secrets. *See* June 4, 2018 Email from P. Swanson to R. Gill, Antonelli Decl. **Exhibit A** ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇).[1] In other words, VGT's "on information and belief" allegation that Castle Hill misappropriated its source code has turned out to be completely false.

Instead of withdrawing its claims related to source code, as it should do based on the absence of evidentiary support, VGT instead has chosen to partake in "see what sticks" pleading by attempting to add the new claims through amendment of its Complaint. Importantly, however, instead of adding any actual explanation of the basis for its conclusory allegations made in support of its source code claims, VGT continues to assert that Castle Hill misappropriated its source code "on information and belief." *See* Proposed Amended Complaint at ¶¶ 93, 100, 147, 157.

VGT's proposed amendment is based solely on an experimental alternative ▇▇▇▇▇▇ ▇▇▇▇▇▇ algorithm Castle Hill submitted to a testing lab for review. The assertion that this "algorithm" is a VGT trade secret is demonstrably and objectively false. According to VGT, the "trade secret" is ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" *See* Mot. for Leave at 3-4. Despite VGT's claims that the use of a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ there are literally dozens of websites devoted to this basic process easily identifiable through a Google search. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇



---

[1] All Exhibits referenced in this Opposition are attached to the Declaration of Matthew J. Antonelli in support of Defendant's Opposition to Plaintiff's Motion for Leave to File Amended Complaint ("Antonelli Decl.").

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████ That both CHG and VGT would utilize a ████████████

██████████████████████████████████████████████████████████

████ is hardly surprising, as is the fact that both VGT and CHT explored the use of ████████

████████████. To the contrary, it is an obvious solution.

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████ It is unclear how VGT could possibly claim "trade secret" protection for a widely used process identified on Wikipedia, which it did not develop, and for which it does not have any proprietary rights.

VGT further notes that both companies chose to ████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████. Neither of these points is surprising. ████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

5

███

VGT further suggested in prior correspondence that having a system that ensures ███ ███. It is not – it is simply a fundamental regulatory requirement for Class II games. Finally, VGT has suggested ███ ███ ███. This is a system simply based on common sense, not VGT's "secret." The ███ ███ open source code and readily available on the internet. This idea was not conceived by VGT, it is not exclusive to VGT, and it is not secret. It is obvious, and the result of application of widely-known mathematical principles.

Despite communications from Castle Hill refuting VGT's claim that use of ███ ███ is a "trade secret", VGT nevertheless continues to pursue this claim. This is particularly surprising in light of the fact that VGT discloses its alleged "trade secret" regarding the ███ to its casino customers without confidentiality agreements in place. As one of VGT's employees, Butch McGill, testified, ███ ███ ███. *See* McGill Dep. Excerpt at 125:12-18, 126:4-6, Antonelli Decl. **Exhibit B**.

The manuals VGT provides to its customers include its "███ ███" Antonelli Decl. **Exhibit C** (███ ███). As noted in the ███ ███, the document *containing what VGT claims to be the secret algorithm* has been sent out

into the world ███████████████████████████████████████

███████████████████████████." Even more surprising is that ███████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████. *See* Starr Dep. Excerpt at 274:8-12 & 276:6-15, Antonelli Decl. **Exhibit D**.

Further, and as VGT fails to note in its proposed Amended Complaint, the ██████ ████████████ that forms the basis of its new claims has *not* been deployed by Castle Hill in any of its games in the marketplace, and Castle Hill has no intention of making any such deployment. As Castle Hill explained to VGT in multiple letters and emails prior to VGT's current motion, and as Castle Hill's programmers have confirmed during their depositions, the algorithm that Castle Hill currently uses in its source code underlying its active games uses an entirely different approach ████████████████.[2] As Alan Roireau, Castle Hill's Chief Development Officer, explained during his deposition, Castle Hill ████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████. *See* Roireau Dep. Excerpt at 299: 23 – 300:9, Antonelli Decl. **Exhibit E**.

Mr. Roireau further testified, clearly and unequivocally, that while Castle Hill explored development of a ██████████████████████████, and submitted the same for regulatory approval to a testing lab, Castle Hill has since abandoned that approach and decided not to ██████ ████████████████████████. In response to questions regarding the status of obtaining regulatory approval for the proposed █████████████████████████████████████

---

[2] Remarkably, VGT previously alleged, without any explanation or basis, that Castle Hill's current (entirely different) approach to ████████████████ was also a misappropriated VGT "trade secret." VGT has failed to withdraw this spurious accusation, despite its admission that VGT itself does not use this method for ████████████████.

███████████████████████████████████████████." *Id.* at 338:10-14.

Mr. Roireau further explained:



*Id.* at 353:5 – 354:2.  Mr. Roireau's testimony is clear – Castle Hill has *never* used the ███████ ███████████ at issue in the source code for any of its active machines, has withdrawn the request for approval of the source code with that algorithm from the testing lab, and has absolutely no intention of ever deploying it in the future (because Castle Hill has developed other ways to complete ███████████████████ for its machines).  Undeterred by these facts, VGT nevertheless seeks to amend its Complaint to allege on "information and belief" that Castle Hill has "misappropriated" the ███████████████ algorithm.  VGT's futile attempt to do so should be denied.

## II.   ARGUMENT

While Federal Rule 15(a) provides for leave to amend to be "given freely," it is proper for a district court to deny leave to amend upon a showing of undue delay, prejudice to the opposing party, bad faith, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *See Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (leave to amend properly denied as untimely where filed four months after deadline for amending pleadings); *Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1199 (10th Cir. 2006) (futility of amendment is proper basis for denial of leave to amend). The Tenth Circuit has found proposed amendments to be futile where the complaint, as amended, would be subject to dismissal. *Id.* (quoting *Bradley v. J.E. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004).

In *Lind Health,* the district court properly exercised its discretion in denying a proposed amendment where the plaintiffs sought to add claims seeking damages that were unavailable under ERISA. *See id.* at 1200-01 (affirming denial of leave to amend). Likewise, in *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, the Tenth Circuit affirmed the district court's refusal to grant leave to amend where the plaintiff's complaint had failed to state a claim upon which relief could be granted under Rule 12(b)(6) and amendment would have been futile. 964 F.2d 1022, 1028 (10th Cir. 1992).

### A.   VGT's Amendment Would be Futile

Here, VGT's proposed amendment would be futile because it will be subject to dismissal. As set forth above, VGT's alleged "trade secret algorithm" is based on public, well-known and widely understood mathematical principles. Indeed, as noted, the ███████████████ ██████████████████ is nothing that VGT invented, developed, or owns, and information about how to use this approach ████████████████████████

███ is publically available. VGT cannot credibly allege, therefore, that the ███████ ███ is "not generally known or readily accessible by proper means," but that is exactly what VGT purports in its proposed Amended Complaint. *See* Proposed Amended Complaint ¶ 141.

Likewise, VGT's proposed Amended Complaint seeks relief which VGT is not entitled to and has no standing to pursue, and is subject to dismissal for this reason as well. *See, e.g.*, *Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir. 2016) (explaining that to satisfy standing requirements, plaintiff must demonstrate "injury in fact", a causal connection between the injury and conduct complained of, and likelihood that the injury will be redressed by a favorable decision); *First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) (plaintiff seeking injunctive relief must demonstrate irreparable injury in the absence of the relief sought). In both its proposed Count VII and Count VIII, VGT asserts that Castle Hill "will continue the infringing use" of the ███████████ algorithm "unless enjoined" (*see* ¶¶ 146, 156). But VGT knows full well, based on communications from Castle Hill and Mr. Roireau's sworn testimony, that Castle Hill has withdrawn the allegedly "misappropriated" algorithm from regulatory consideration and has no intention of re-submitting it, pursuing it further, or ever deploying it in the field. It is hard to imagine, therefore, how VGT could ever meet its burden to demonstrate that Castle Hill has used or intends to use the alleged "trade secret" in interstate commerce as required under 18 U.S.C. § 1836(b)(1).

Similarly, VGT's proposed Amended Complaint contains a request for money damages in Count VII and VIII based on an allegation that VGT knows to be false. VGT alleges that "[o]n information and belief, [Castle Hill] has received revenues and profits" as a result of Castle Hill's alleged use of the "misappropriated" algorithm. VGT has absolutely no basis for this

10

assertion and, as set forth above, the sworn testimony of Castle Hill's witnesses is that Castle Hill never received regulatory approval for the algorithm at issue and therefore could not deploy it in the field and receive revenue. Mr. Roireau's testimony in this regard could not be any clearer. It is difficult to understand how VGT is complying with its obligations under Rule 11 when it is making allegations "on information and belief" regarding facts it knows to be false. VGT's proposed amendment does little more than generally opine that Castle Hill's use of ▇▇▇▇ – using basic mathematical principles – is "similar" to VGT's use of ▇▇▇▇.

Moreover, the fact that certain Castle Hill employees used to work at VGT is ***not*** a decisive factor in finding "misappropriation" of trade secrets; nor are Castle Hill's employees required to "forget" everything they worked on at VGT. An employee is permitted to use the knowledge, skill, and experience gained in future employment, including employment that competes with the former employer. VGT would have this Court require that its employees self-lobotomize when they leave its employment, and never use basic mathematical principles again if they used them while a VGT employee. This is simply not the law.

Here, VGT has not alleged – and has no evidence – that Castle Hill developed ▇▇▇▇ based on information stolen, taken, or otherwise copied from VGT. Rather, the nature of VGT's allegation is that Castle Hill's programmers were aware that VGT used a well-known type of ▇▇▇▇ for which source code is freely available online – ▇▇▇▇ – and independently developed an algorithm at Castle Hill using a similar approach. What makes little sense regarding VGT's allegation is that VGT knows full well that Castle Hill's ▇▇▇▇ algorithm has not yet been

approved by a testing lab. If Castle Hill had "misappropriated" the algorithm from VGT, then why was VGT's algorithm approved while Castle Hill's was not? Furthermore, VGT's allegation that Castle Hill "disclosed" the algorithm to a third-party is a red herring. The algorithm was submitted to a testing lab, as all source code regarding Class II games is required to be. To seek regulatory approval of its own source code, including the algorithm at issue, VGT itself was required to submit the algorithm to a testing lab. And the testing lab at issue is one that *both* VGT and Castle Hill have used, so VGT has *already* disclosed its alleged "trade secret" to the *same* lab for approval. Even if the algorithm is a "trade secret," disclosure to a testing lab, which is required to keep the source code confidential and secret, has caused no "harm" to VGT. And Castle Hill's sworn testimony is that the code line has been withdrawn from testing lab consideration in favor of a different approach.

Castle Hill does not and will not use the method which VGT complains about. Because the claims VGT attempts to add would be subject to dismissal, its amendment is futile and should be denied.

**B.    VGT Has Unduly Delayed Filing its Proposed Amended Complaint**

In its Motion, VGT attempts to make much about the timing and sequence of discovery in this case. But VGT ignores the fact that both parties have been producing documents to one another on an ongoing, rolling basis, and indeed continue to do so. Further, VGT alleges that it learned "for the first time" about Castle Hill's development of the algorithm at issue in early March. VGT, however, still waited to file its proposed amendment until more than two months later, in late May. VGT's delay is inexcusable and appears designed to distract the parties from focusing on completing the necessary discovery before discovery closes in mid-July.

During the December 6, 2017 hearing on VGT's premature motion to compel discovery, Castle Hill expressed concerns regarding VGT's failure to identify its trade secrets claims – particularly as they relate to source code – with specificity.  Since that time, VGT has continued to fail to identify its claims with specificity, instead engaging in wide-ranging discovery to fish for some supporting evidence.  The fact remains, however, that VGT has had Castle Hill's source code for many months, has sent it to its expert witnesses, and has taken depositions of virtually all Castle Hill coders and programmers.  Despite full knowledge that Castle Hill did not copy or otherwise misappropriate VGT's source code, VGT continues to stand on its unsubstantiated "on information and belief" allegations.  This litigation strategy is improper and should not be rewarded.

### C. VGT's Proposed Amendment Would be Prejudicial to Castle Hill

Fact discovery is scheduled to close on July 11, 2018.  The parties are scheduled to attend court-ordered mediation on June 26, 2018.  To allow VGT to amend its complaint and add two new causes of action less than a month before the close of discovery would be highly prejudicial to Castle Hill.  As reflected in the communications between counsel leading up to VGT's filing of the instant motion, Castle Hill has been asking for months for VGT to supplement its prior interrogatory responses to explain the basis of its allegation that Castle Hill has misappropriated VGT's ███████████████████.  At the time VGT filed this motion, VGT had failed to do so and did not provide its supplementation until June 6. 2018.  Again, VGT alleges it learned of the supposed "misappropriation" in March, yet it delayed actually explaining the basis for several months. VGT's delay has substantially impacted Castle Hill's ability to understand VGT's claim regarding the algorithm and Castle Hill source code, and to conduct discovery on

13

this issue. The waters were only further muddied by VGT's recent, belated admission that it "███████████████████████████████████████" *See* **Ex. A.**

VGT's recent admission that Castle Hill did not copy VGT's source code stands in stark contrast to the argument VGT made to the Court as justification for filing a motion to compel before Castle Hill's time to respond to discovery requests had passed. At the motions hearing on December 6, 2017, VGT argued that it ***needed*** trade secret discovery, particularly regarding Castle Hill's source code, so that VGT could file for preliminary injunctive relief:

> Well, we want this case to get moving. We think there's a lot of smoke, we think there's a lot of fire here. In our mind, they are literally copying our games. We won't go into detail there. They're some of our most senior former employees. There's a lot of reason to believe very strongly that they're using our trade secrets. We want this discovery, we want to proceed quickly, and we've been trying to proceed quickly. We want to get to injunctive relief. Once we get that discovery, we think we'll be in a position, depending on what the discovery shows, we think it's going to confirm everything we're saying and we want to file a preliminary injunction and we've told them that and that's why we want this case to move. We want to get into discovery.

**Ex. F** at 16:5-17. It is very telling that despite having had Castle Hill's source code for many months, and despite fact discovery nearly coming to a close, VGT has not moved for injunctive relief. Despite much bluster regarding the "fire" that VGT told the Court it would find in Castle Hill's source code, VGT has no evidence to support and substantiate its source code trade secret allegations. This is why, after many months of pressing for further specificity regarding its trade secrets claims, VGT has now been forced to admit that it "████████████████████████ ████████████████████" For this reason, and because Castle Hill did not steal VGT's source code, Castle Hill has not focused on deposing VGT programmers or coders. If VGT is permitted to add the additional claims, Castle Hill will need to do so during the tight timetable remaining.

The parties are a month away from the close of discovery and have depositions scheduled around the country during the time remaining under the scheduling order. VGT's attempt to

14

further complicate the case by adding additional source code claims – pleaded "on information and belief" – is prejudicial to Castle Hill and should be denied.

## III. CONCLUSION

For the foregoing reasons, Castle Hill respectfully requests that the Court deny VGT's motion for leave to file its proposed Amended Complaint.

Dated: June 22, 2018

Respectfully submitted,

/s/ Robert C. Gill
Robert C. Gill (admitted *pro hac vice*)
Thomas S. Schaufelberger (admitted *pro hac vice*)
Henry A. Platt (admitted *pro hac vice*)
Matthew J. Antonelli (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
tschauf@saul.com
henry.platt@saul.com
matt.antonelli@saul.com

Sherry H. Flax (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
500 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 332-8764
(410) 332-8785 (facsimile)
sherry.flax@saul.com

James C. Hodges, OBA #4254
JAMES C. HODGES, P.C.
2622 East 21st Street, Suite 4
Tulsa, Oklahoma 74114
(918) 779-7078
(918) 770-9779 (facsimile)
JHodges@HodgesLC.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 22nd day of June, 2018, I caused an unredacted copy of the foregoing Defendants' Opposition to Plaintiff's Motion for Leave to File Amended Complaint to be served on the following counsel for Plaintiff via email:

Graydon Dean Luthey, Jr., OBA 5568
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
(918) 595-4821
(918) 595-4990 facsimile
dluthey@gablelaw.com
*Counsel for Video Gaming Technologies*

Gary M. Rubman
Peter Swanson
Michael Sawyer
Rebecca B. Dalton
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, D.C. 20001-4956
(202) 662-6000
(202) 778-5465 facsimile
grubman@cov.com
pswanson@cov.com
msawyer@cov.com
rdalton@cov.com
*Counsel for Video Gaming Technologies*

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1221
(212) 841-1010 facsimile
nroman@cov.com
*Counsel for Video Gaming Technologies*

                                              */s/ Robert C. Gill*
                                              Robert C. Gill