# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1) VIDEO GAMING TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-cv-00454-GKF-jfj |
| | ) | |
| 1) CASTLE HILL STUDIOS LLC | ) | **REDACTED** |
| (d/b/a CASTLE HILL GAMING); | ) | |
| 2) CASTLE HILL HOLDING LLC | ) | |
| (d/b/a CASTLE HILL GAMING); and | ) | |
| 3) IRONWORKS DEVELOPMENT, LLC | ) | |
| (d/b/a CASTLE HILL GAMING) | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE
TO FILE AMENDED COMPLAINT**

# INTRODUCTION

Plaintiff Video Gaming Technologies, Inc. ("VGT") should be granted leave to amend its complaint to add claims for trade secret misappropriation under the federal Defend Trade Secrets Act ("DTSA") and the Virginia Uniform Trade Secrets Act ("VUTSA"), which would encompass certain acts of misappropriation that were recently discovered and that appear to be outside the scope of VGT's existing trade secret claim under Oklahoma law.

In opposing this motion, Defendants do not dispute that there is good cause for amending the complaint under Federal Rule of Civil Procedure ("Rule") 16(b), and they offer no serious argument for denying leave to amend under Rule 15. Defendants' main argument is "futility," but they do not (and cannot) show that the amended complaint fails to state claims under the DTSA or the VUTSA—indeed, the Court already ruled that the same factual allegations support a claim for relief under the similar provisions of the Oklahoma Uniform Trade Secrets Act ("OUTSA"). Dkt. No. 56 at 17–20. Defendants' delay and prejudice arguments are likewise inapt. There is no question VGT raised the ▓▓▓▓ issue (*i.e.*, the issue that led to the need to amend the complaint) promptly upon discovering it and has pursued it diligently, and Defendants have been on notice of the claim all along. Defendants even thanked VGT in April for a "very helpful" explanation that "specifically identified" the basis for the claim. Dkt. No. 74, Sawyer Decl. ("Sawyer Decl."), Ex. M at 1. In short, as Defendants' own counsel admitted, this issue "should be adjudicated in the normal course of this action together with the other claims." Sawyer Decl., Ex. A (May 9 10:38 AM).

Unable to provide any persuasive reason for denying leave to amend, Defendants spend much of the opposition mischaracterizing VGT's trade secret claims. As to the misappropriation of VGT's ▓▓▓▓ algorithm, there is no dispute that Defendants used and disclosed an algorithm remarkably similar to VGT's, which former VGT engineers had "remembered" from

1

their work at VGT.  Dkt. No. 79, Defs.' Opp'n to Pl.'s Mot. for Leave (hereinafter, "Opp'n") at 2.  Defendants argue that the algorithm is not a trade secret, but they improperly focus on individual elements of this multi-step algorithm in isolation.  And they fail to acknowledge that one of their own engineers—who worked on the algorithm while at VGT—testified that the algorithm was ███████████████████████████████████████ ██████████████.  Declaration of Peter Swanson in Supp. of Pl.'s Mot. for Leave ("Swanson Decl."), Ex. S at 48:25–50:24, 84:18–85:13, 87:12–88:5, 223:9–225:21.

No doubt recognizing the weakness in their position, Defendants are quick to point out that they have "no intention" of deploying any games that include the algorithm.  Opp'n at 7.  But the fact is they used the trade secret internally and disclosed it to a testing lab.  Those acts alone give rise to liability and damages under federal and Virginia law.  And despite repeated requests, Defendants have refused to provide an enforceable commitment to cease any further use or disclosure of the algorithm and to retrieve and destroy all copies.

Defendants try to cast this motion as a shift away from VGT's "original theory," which, Defendants say, focused on the copying of source code.  Opp'n at 1.  That is not true.  VGT filed this motion for the simple reason that Defendants were caught before they could use the ████ ███ algorithm in Oklahoma, which would have brought it within the scope of the existing complaint.  As this Court has recognized, the VGT trade secrets described in the complaint are not limited to source code, but include, *inter alia*, "the specifics of the manner in which the bingo game is played in the class II games."  Dkt. No. 56 at 19.

VGT has served interrogatory responses identifying a number of VGT trade secrets and confidential information that Defendants have used.  Defendants appear to believe they are free to use those trade secrets so long as the former VGT employees did not ***physically*** abscond with

2

source code or documents. Defendants are wrong. The former VGT employees are bound to keep confidential—and not use for Defendants' benefit—any VGT trade secrets of which they have knowledge. Whether they "remembered" the trade secrets, or copied them from a stolen VGT document, they are liable for misappropriation. Granting VGT leave to file the amended complaint will ensure that all of Defendants' misappropriation can be resolved in a single case.

## ARGUMENT

Defendants do not dispute that VGT has shown "good cause for seeking modification [of the scheduling order] under Fed. R. Civ. P. 16(b)(4)." Pl.'s Mot. for Leave to Amend, Dkt. No. 73 (hereinafter, "Mot."), at 8 (quoting *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014)). They only disagree as to whether the more liberal standard of Rule 15 is satisfied. *See id.*; Opp'n at 9. None of Defendants' Rule 15 arguments has any merit.

**I.      Defendants' Futility Arguments Improperly Introduce Matters Outside The Pleadings and Mischaracterize The Evidence.**

Defendants first argue that the federal and Virginia trade secret claims are "futile because [they] will be subject to dismissal." Opp'n at 9. Defendants ignore that the Court ***denied*** their motion to dismiss the existing trade secret claim and held that the allegations in "the Complaint state[] a plausible claim for misappropriation of trade secrets" under Oklahoma law. Dkt. No. 56 at 20. As the Court explained, the Complaint alleges that VGT owns a number of trade secrets concerning its bingo games, *see id.* at 19; and Defendants have misappropriated those trade secrets, to VGT's detriment, through former VGT employees who shared the trade secrets with Castle Hill in violation of a duty of secrecy owed to VGT," *see id.* at 20.

These same allegations (along with a few others in the amended complaint) state a plausible claim under the DTSA and VUTSA. Like the OUTSA, those statutes require allegations that (a) VGT owns a trade secret and (b) Defendants have misappropriated the trade

3

secret.  *See Space Sys./Loral, LLC v. Orbital ATK, Inc.*, No. 4:17-cv-00025-RAJ-LRL, 2018 WL 701280, at *5 (E.D. Va. Feb. 2, 2018) (elements of DTSA claim); *id.* at *6 (elements of VUTSA claim).  All three statutes have similar definitions of "trade secrets," *compare* Okla. Stat. tit. 78, § 86(4) *with* 18 U.S.C. § 1839(3) *and* Va. Code Ann. § 59.1-336; and of "misappropriation," *compare* Okla Stat. tit. 78, § 86(2) *with* 18 U.S.C. § 1839(5) *and* Va. Code Ann. § 59.1-336.  The complaint thus plausibly alleges these DTSA and VUTSA requirements for the reasons the Court explained in its order denying the motion to dismiss.  Dkt. No. 56 at 19–20.  The amended complaint also alleges the one additional element of a DTSA claim:  the "trade secret that is misappropriated . . . is related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1); *see also Space Systems*, 2018 WL 701280, at *5.  Here, VGT has alleged that the "VGT Trade Secrets are related to products and services used in interstate commerce—*i.e.*, VGT's games, which are designed, developed, marketed, leased, and used across multiple states."  Dkt. No. 71-1, ¶ 45; *see also id.* ¶ 141.[1]

Defendants do not acknowledge, let alone attempt to distinguish, the Court's ruling that the trade secret allegations are sufficient to state a claim under Oklahoma law.  Defendants instead rely on matters outside the pleadings, *see* Opp'n at 4–5 (citing various websites), to raise factual disputes concerning the merits of the ▮▮▮▮▮ issue.  Defendants' arguments fail on the merits.  But more importantly, none of these factual disputes is properly resolved at the pleadings stage.  The misappropriation of the ▮▮▮▮▮ algorithm falls squarely within the trade secret allegations that the Court previously found sufficient: the former VGT employees knew about

---

[1] Contrary to Defendants' suggestion (Opp'n at 10), the relevant inquiry under the DTSA is whether the trade secret *owner* (not the defendant) has used the trade secret in interstate or foreign commerce.  *See* 18 U.S.C. § 1836(b)(1); *Space Systems*, 2018 WL 701280, at *6.  In any event, the amended complaint alleges that Defendants' misappropriation of the ▮▮▮▮▮ algorithm and other trade secrets has occurred in interstate commerce.  Dkt. No. 71-1, ¶ 100.

the algorithm and were obligated to keep it secret, yet they used the algorithm in their work for Defendants. Dkt. No. 56 at 20. Accordingly, VGT "ought to be afforded an opportunity to test [its] claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

VGT addresses Defendants' specific arguments below.

*First*, Defendants distort the nature of VGT's algorithm in order to claim (incorrectly) that the algorithm is generally known. For example, contrary to Defendants' assertions, Opp'n at 4, VGT does not contend that the ▮▮▮▮ alone is a trade secret. *See* Sawyer Decl., Exs. G & N. Rather, VGT's trade secret lies in its multi-step algorithm ▮▮▮▮ ▮▮▮▮ ▮▮▮▮ *See id.* The ▮▮▮▮ is but one component of this multi-step process. *See id.*

"The fact that some or all of the components of the trade secret are well-known does not preclude protection for a secret combination, compilation, or integration of the individual elements." Restatement (Third) of Unfair Competition § 39 (1995); *see also Hertz v. Luzenac Group*, 576 F.3d 1103, 1109 (10th Cir. 2009) (applying same rule in a UTSA jurisdiction). While Defendants strain to find individual components of VGT's algorithm in public sources— none of which relate to ▮▮▮—Defendants provide no evidence that the entirety of VGT's algorithm is generally known. To the contrary, Paul Suggs, ▮▮▮▮ ▮▮▮▮, *see* Swanson Decl., Ex. S at 48:25–50:24, 223:9–225:21, conceded that VGT's algorithm was ▮▮▮▮ ▮▮▮▮, *see id.* at 85:15–21.

*Second*, Defendants inaccurately assert that VGT "has no evidence . . . that Castle Hill developed its ▮▮▮▮ algorithm based on information stolen, taken, or otherwise

5

copied from VGT." Opp'n at 11. To the contrary, Mr. Suggs  testified that he

. Swanson Decl., Ex. S at 48:25–50:24. And Mr. Suggs conceded that Defendants'

*Id.* at 223:9–226:3.

Defendants' trade secret liability does not turn on whether the former VGT employees committed a physical theft. "An agent is not free to use or disclose a principal's trade secrets" by "retain[ing] them in the agent's memory," because "[f]eats of human memory . . . should not be privileged as instruments of disloyal conduct." Restatement (Third) Of Agency § 8.05, cmt. c (2006).[2] "The Uniform Trade Secrets Act does not distinguish between written and memorized information," and it "does not require a plaintiff to prove actual theft or conversion of physical documents." *Ed Nowogroski Ins., Inc. v. Rucker*, 971 P.2d 936, 946 (Wash. 1999) (analyzing statutory text virtually identical to text in the VUTSA and OUTSA); *accord Central Plastics Co. v. Goodson,* 537 P.2d 330, 334 (Okla. 1975) (adopting same rule under common law).

Defendants further obfuscate the issue by suggesting that the original complaint was limited to allegations of source code copying. *See* Opp'n at 1. That is not so. As the Court

---

[2] *See also* Restatement (Third) of Unfair Competition § 42, Reporters' Note, cmt. d (1995) ("[T]he defendant's reliance on memory is not a defense if the information is in fact a trade secret."); 4 Milgrim on Trade Secrets App. 15A (2018), reprinting D. Bender, "Trade Secret Protection of Software," 38 Geo. Wash. L. Rev. 909, 938–941 (1970) (noting that this rule applies "especially [to] technological trade secrets").

6

recognized in its order on the motion to dismiss, the Complaint identified categories of trade secrets other than source code, including "the specifics of the manner in which the bingo game is played in the class II games." Dkt. No. 56 at 19. While these particular methods and techniques may be embodied in source code (*e.g.*, the source code that implements the ▓▓▓▓▓ algorithm), they can be misappropriated without copying the code itself. *See* 18 U.S.C. 1839(3), (5)(B); *see also* Okla. Stat. tit. 78, § 86(2), (4); Virginia Code Ann. § 59.1-336.

*Third*, Defendants dispute whether VGT adequately secured its algorithm, claiming (erroneously) that the algorithm has been "sent out into the world." Opp'n at 6–7. Defendants misinterpret testimony that VGT makes ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, *see* Antonelli Decl. (Dkt. No. 80), Ex. B at 126:4–6, to mean that a *different* type of ▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓ which describes its ▓▓▓▓▓▓ algorithm—is also made available to operators. That is incorrect. The ▓▓▓▓▓▓▓▓ is not given to operators (or anyone without a confidentiality agreement), as VGT explained in a recent interrogatory response. In fact, Mr. Suggs conceded that the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Swanson Decl., Ex. S at 84:18–85:13, 87:12–88:5.[3]

*Fourth*, Defendants contend that because they have stopped misappropriating VGT's algorithm (after being caught), VGT is not entitled to any relief. Opp'n at 10–11. This overlooks the *past* misappropriation—*i.e.*, Defendants' internal use of the algorithm and disclosure to a third-party testing lab. Dkt. 71-1, ¶ 100. This gives rise to liability under the

---

[3] Defendants also attempt to draw inferences from stock language on the copyright page stating the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Antonelli Decl., Ex. C, VGT0001789. But ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Further, the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Antonelli Decl., Ex. C, VGT0001789.

7

DTSA and the VUTSA, both of which allow VGT to recover damages, including at least "a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret." 18 U.S.C. § 1836(b)(3)(B); Va. Stat. Ann. § 59.1-338(A).[4]

Further, the fact that Defendants have allegedly ceased testing or use of the algorithm does not deprive the Court of jurisdiction to issue injunctive or declaratory relief. As the Supreme Court has explained: "[A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. . . . . Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013); *see also InnoSys, Inc. v. Mercer*, 364 P.3d 1013, 1023–24 (Utah 2015) (applying rule to trade secret action where defendant stopped further misappropriation). While Defendants state they have "no intention" of further using or disclosing the algorithm, Opp'n at 10, this is not a binding commitment. *See Ind v. Colorado Dep't of Corr.*, 801 F.3d 1209, 1213 (10th Cir. 2015) (voluntary cessation does not moot case unless the "interim relief or events have completely and *irrevocably* eradicated the effects of the alleged violation" (emphasis added)). Nor does this "completely . . . eradicate[] the effects of the [misappropriation]," *id.*, as Defendants have not agreed to destroy all copies of the algorithm or notify the testing lab of VGT's trade secret claim, let alone obtain assurances against further dissemination. *See* 4 Milgrim on Trade Secrets §15.02 (2018) ("[I]t is axiomatic that unprotected disclosure of a trade secret destroys the secret.").

---

[4] Defendants improperly accuse VGT of falsely alleging in the amended complaint that Defendants have received revenues and profits from the use of the ▮▮▮▮▮▮ algorithm. *See* Opp'n at 10–11. The amended complaint contains no such allegation. The allegation that Defendants selectively quote in their opposition does not refer to, and is not limited to, the misappropriation of the ▮▮▮▮▮▮ algorithm, but rather it encompasses each of the VGT trade secrets that Defendants have misappropriated, including those in Defendants' deployed games for which they have indisputably obtained revenue. Dkt. No. 71-1 ¶¶ 147, 157.

## II.     VGT Acted Diligently In Seeking Leave To Amend.

Defendants do not dispute that (a) their misappropriation of the ▮▮▮▮ algorithm was not disclosed in discovery until March 2018, Mot. at 4; (b) VGT raised the issue almost immediately, *id.* at 6; and (c) the parties subsequently engaged in discussions and discovery on this issue up until the time VGT filed the present motion, *id.* at 6, 19.  Yet Defendants claim VGT should have filed the motion sooner.  Opp'n at 12.  There is no merit to this contention.

As an initial matter, even assuming that VGT could have sought leave to amend based solely on the document produced in March 2018, there is nothing unreasonable about seeking leave to amend within two months "from the time when the facts upon which the amendment is based became known to the movant."  *Bales v. Green*, No. 16-CV-106-GKF-JFJ, 2018 WL 840762, at *2 (N.D. Okla. Feb. 13, 2018).  In *Bales*, this Court permitted an amendment requested within 100 days of a change in the governing law.  *See id.*

Here, VGT sought to investigate the issue and confer with Defendants before seeking leave to amend.  It was Defendants, not VGT, who repeatedly slowed down this process:

- Defendants did not respond substantively to VGT's March 22 letter until **twelve days** later, *see* Sawyer Decl., Ex. K, and waited another **ten days** to produce source code and documents, *see* Sawyer Decl. ¶ 17.

- Following depositions on April 19 and 24 that addressed this trade secret issue, VGT sent Defendants a letter on April 25.  Sawyer Decl., Ex. N.  Defendants did not respond until May 9—**two weeks** later.  Sawyer Decl., Ex. A (May 9 10:38 AM).

- The same day, VGT asked Defendants to consent to the amended complaint.  *Id.* (May 9 2:09 PM).  Defendants failed to provide their position until May 18—**nine days** after VGT's initial request.  *Id.* (May 18 7:19 PM).

Unable to seriously dispute VGT's diligence, Defendants resort to complaining about VGT's "litigation strategy."  Opp'n at 13.  This is baseless.  VGT adequately pled a trade secret claim, and during discovery, VGT has identified several specific trade secrets that Defendants

9

have misappropriated. This "litigation strategy," which has uncovered trade secret violations, is precisely what the Rules contemplate.[5]

### III. Defendants Are Not Prejudiced By The Amendment.

Defendants' argument on prejudice similarly misses the mark. Defendants assert that VGT "delayed actually explaining the basis [for the misappropriation of the  algorithm] for several months," which "impacted [Defendants'] ability to understand VGT's claim." Opp'n at 13. That is not accurate. In an April 11 letter, VGT included a chart comparing Defendants' algorithm to VGT's algorithm, along with citations to supporting documents. Sawyer Decl., Ex. G at 2. In response, Defendants' counsel admitted that VGT's "specific[]" explanation was "helpful":

> We appreciate the effort you have made to **specifically identify** in your chart the steps in CHG's unused ▉▉▉▉ process that you believe to be "similar" to VGT's ▉▉▉▉ ▉▉▉▉ process. **It was very helpful.**

Sawyer Decl., Ex. M at 1 (emphasis added).

Defendants have been free to depose VGT's witnesses on this issue—which Defendants' counsel previously said should "be adjudicated in the normal course of this action together with the other claims." Sawyer Decl., Ex. A (May 9 10:38 AM). That Defendants have chosen not to pursue this issue, *see* Opp'n at 14, is a problem of their own making.

### CONCLUSION

For the foregoing reasons, VGT respectfully requests that this Court grant leave to file its Amended Complaint against Defendants.

---

[5] Defendants assert, without support, that VGT has not identified its claims with specificity. Opp'n at 13. Not so. Following the entry of a protective order on December 22, VGT served an interrogatory response identifying a number of its trade secrets. Sawyer Decl., Ex. C. VGT has subsequently served responses identifying trade secrets that Defendants have misappropriated.

Dated: June 25, 2018

*/s/ Peter A. Swanson*
Graydon Dean Luthey, Jr., OBA No. 5568
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
Telephone: (918) 595-4821
Facsimile: (918) 595-4990
dluthey@gablelaw.com

Gary M. Rubman
Peter A. Swanson
Michael S. Sawyer
Rebecca B. Dalton
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 778-5465
grubman@cov.com
pswanson@cov.com
msawyer@cov.com
rdalton@cov.com
  (admitted pro hac vice)

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1221
Facsimile: (212) 841-1010
nroman@cov.com
  (admitted pro hac vice)

***Counsel for Video Gaming Technologies, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that on June 25, 2018, I filed the foregoing via CM/ECF, which caused the foregoing to be served on the following counsel for Defendants:

Robert C. Gill
Thomas S. Schaufelberger
Matthew J. Antonelli
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
tschauf@saul.com
matt.antonelli@saul.com

Sherry H. Flax
SAUL EWING ARNSTEIN & LEHR, LLP
500 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 332-8764
(410) 332-8785 (facsimile)
sherry.flax@saul.com

James C. Hodges, OBA 4254
JAMES C. HODGES, PC
2622 East 21st Street, Suite 4
Tulsa, OK 74114
Telephone: (918) 779-7078
JHodges@HodgesLC.Com

Duane H. Zobrist
Jonathan S. Jacobs
ZOBRIST LAW GROUP PLLC
1900 Arlington Blvd. Suite B
Charlottesville, VA 22903
Telephone: (434) 658-6400
dzobrist@zoblaw.com
jjacobs@zoblaw.com

*Attorneys for Defendants*

                                                  */s/ Michael S. Sawyer*