IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VIDEO GAMING TECHNOLOGIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 17-CV-454-GKF-JFJ |
| ) | |
| CASTLE HILL STUDIOS LLC ) | |
| (d/b/a CASTLE HILL GAMING); ) | |
| CASTLE HILL HOLDING LLC ) | |
| (d/b/a CASTLE HILL GAMING); and ) | |
| IRONWORKS DEVELOPMENT, LLC ) | |
| (d/b/a CASTLE HILL GAMING), ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

This matter comes before the court on the Motion for Leave to File Amended Complaint [Doc. Nos. 71 and 73] of plaintiff Video Gaming Technologies, Inc. ("VGT"). For the reasons set forth below, the motion is granted.

**I. Background and Procedural History**

VGT is a developer, manufacturer, and distributor of class II bingo-based player terminals in North America.[1] Castle Hill is operated by former VGT employees, including VGT's former vice president of engineering, director of software, and treasurer/director of operations/director of hardware development.[2]

---

[1] The Indian Gaming Regulatory Act, which regulates the operation of gaming by Indian tribes, defines three separate classes of games: (1) class I gaming, which includes social games and traditional forms of tribal gaming; (2) class II gaming, which includes bingo and, if played in the same location, pull-tabs, lotto, punch boards and tip-jars; and (3) class III gaming, which includes any form of gaming not included in class I or class II. 25 U.S.C. § 2703. *See also Diamond Game Enters., Inc. v. Reno*, 230 F.3d 365, 367 (D.C. Cir. 2000).

[2] For ease of reference, this court will refer to defendants, collectively, as Castle Hill.

Although Castle Hill originally manufactured class III games, VGT alleges, sometime between March 2015 and June 2016, Castle Hill began developing and offering class II games that closely resembled VGT's class II games, incorporate marks and themes confusingly similar to the VGT Marks and themes, and utilize VGT trade secrets.

Based on these allegations, the Complaint filed in this case asserted six counts: (1) federal trademark infringement in violation of the Lanham Act (specifically, 15 U.S.C. § 1114); (2) unfair competition and trade dress infringement for product packaging in violation of the Lanham Act (specifically, 15 U.S.C. § 1125(a)); (3) unfair competition, trade dress infringement, and trademark infringement in violation of the Oklahoma Deceptive Practices Act (78 O.S. §§ 51-56); (4) unfair competition, trade dress infringement, and trademark infringement under common law; (5) misappropriation of trade secrets in violation of the Oklahoma Uniform Trade Secrets Act (78 O.S. §§ 85-94); and (6) misappropriation of confidential business information in violation of common law. *See* [Doc. No. 2]. Castle Hill filed a motion to dismiss all counts, which this court denied. *See* [Doc. Nos. 29 and 56].

On January 4, 2018, the court entered a Scheduling Order, which imposed a deadline to amend the pleadings of February 2, 2018. The parties proceeded to engage in discovery. VGT alleges that, in March 2018, Castle Hill provided it with discovery indicating that Castle Hill had used and disclosed a VGT trade secret—specifically a proprietary algorithm used in VGT's bingo games—in jurisdictions including Virginia, Nevada, Illinois, and Michigan, but not Oklahoma. Based on this new information and out of concern that the Complaint's Oklahoma Uniform Trade Secrets Act claim would not apply to claims arising from the proprietary algorithm, VGT seeks leave to amend its Complaint to add two new counts: (1) misappropriation of trade secrets in violation of the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, and (2)

misappropriation of trade secrets in violation of the Virginia Uniform Trade Secrets Act, VA. CODE ANN. §§ 59.1-336 to 59.1-343. *See* [Doc. Nos. 71 and 73].

The Second Amended Scheduling Order, the operative scheduling order at this time, includes the following deadlines: fact discovery cut-off of August 3, 2018; expert discovery cut-off of September 28, 2018; the dispositive motion, *Daubert* motion, and motions in *limine* deadline of October 5, 2018; pre-trial conference scheduled for February 4, 2019; and trial scheduled for February 19, 2019. *See* [Doc. No. 101]. The Second Amended Scheduling Order includes no deadline for amendment of pleadings, as the deadline for amendment previously lapsed. [*Id.*].

## II. Motion to Amend Standard

The Tenth Circuit has recently clarified that "[a]fter a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under FED. R. CIV. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Gorsuch, Ltd. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).

Pursuant to Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Gorsuch, Ltd.*, 771 F.3d at 1240 (quoting *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)). Good cause may be satisfied "if a plaintiff learns new information through discovery or if the underlying law has changed." *Id.*

Federal Rule of Civil Procedure 15(a) permits a party to amend its pleading once as a matter of course within twenty-one (21) days of service or, if the pleading is one to which a responsive pleading is required, within 21 days of service of the responsive pleading or motion. FED. R. CIV.

P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2).

Although leave to amend should be freely given "when justice so requires," FED. R. CIV. P. 15(a)(2), "denial of a motion to amend may be appropriate where there has been shown 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Steadfast Ins. Co. v. Agric. Ins. Co*., No. 05-CV-126-GKF-TLW, 2014 WL 1901175, at *4 (N.D. Okla. May 13, 2014) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "'[T]he grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court.'" *Minter v. Prime Equip. Co.,* 451 F.3d 1196, 1204 (10th Cir. 2006) (alteration in original) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc*., 401 U.S. 321, 330 (1971)).

### III. Analysis

As previously stated, VGT seeks leave to amend its Complaint to assert two additional counts: (1) misappropriation of trade secrets in violation of the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, and (2) misappropriation of trade secrets in violation of the Virginia Uniform Trade Secrets Act, VA. CODE ANN. §§ 59.1-336 to 59.1-343. Both counts are based on allegations that Castle Hill committed acts of appropriation, including, "sometime after May 11, 2016, [Castle Hill] copied and used, in Virginia and elsewhere, a proprietary algorithm used in VGT's bingo games, and [Castle Hill] submitted software code implementing this algorithm from Virginia to a testing lab in another state." [Doc. No. 71-1, ¶ 100].

In opposition, Castle Hill argues: (1) futility of amendment; (2) VGT unduly delayed filing its proposed Amended Complaint; and (3) the proposed amendment would be prejudicial to Castle

Hill. Although Castle Hill's arguments are primarily directed to the Rule 15 standard, as required by the Tenth Circuit, the court will first consider whether VGT satisfies Rule 16's "good cause" requirement.

   A.   *Fed. R. Civ. P. 16(b)*

As previously stated, Rule 16's good cause requirement may be satisfied when the plaintiff learns new information through discovery. *Gorsuch, Ltd., B.C.*, 771 F.3d at 1240. Here, VGT presents evidence that it first received written discovery indicating that Castle Hill submitted source code including a similar algorithm to that used by VGT in its bingo games on March 15, 2018—nearly a month after the deadline to amend pleadings. *See* [Doc. No. 74, ¶ 6; Doc. No. 74-5]. To investigate the scope of the potential misappropriation, VGT requested Castle Hill to produce all versions of source code and communications related to same by March 27, 2018. *See* [Doc. No. 74, ¶ 16; Doc. No. 74-15]. Castle Hill provided responsive documents on April 13, 2018. *See* [Doc. No. 74, ¶ 17; Doc. No. 74-16]. On April 25, 2018, counsel for VGT sent written correspondence to Castle Hill requesting confirmation that Castle Hill would withdraw regulatory submissions related to the algorithm, and identify all parties to which the alleged trade secret had been disclosed. *See* [Doc. No. 74, ¶ 15; Doc. No. 74-14]. Having not reached an agreement with Castle Hill, on May 9, 2018, pursuant to LCvR 7.2(l), VGT notified Castle Hill of its intent to seek leave to amend its Complaint and questioned whether Castle Hill would oppose the request. *See* [Doc. No. 74, ¶ 2; Doc. No. 74-1, p. 7]. The parties discussed the proposed amendment on May 15, 2018, and, on May 18, 2018, Castle Hill formally notified VGT of its objection to amendment of the pleadings. *See* [Doc. No. 74, ¶ 2; Doc. No. 74-1, pp. 3-5]. VGT sought leave to amend on May 21, 2018. *See* [Doc. No. 71; Doc. No. 73].

Based on the foregoing, good cause exists to modify the scheduling order deadline for amendment of pleadings. VGT bases its proposed amendment on documents gathered during discovery, which were not known to VGT prior to the deadline to amend pleadings. Castle Hill argues that VGT unduly delayed seeking leave to amend after receipt of the discovery related to the proprietary algorithm on March 18, 2018. However, this a complex case involving substantial amounts of electronic discovery and discovery disputes. The court is not persuaded that VGT's decision to obtain additional information to confirm the existence of a viable cause of action through discovery prior to seeking leave to amend constitutes undue delay. *See Rodgers v. Beechcraft Corp.,* No. 15-CV-0129-CVE-PJC, 2016 WL 3951155, at *3 (N.D. Okla. July 20, 2016); *Estate of Roemer v. Shoaga,* No. 14-CV-01655-PAB-NYW, 2016 WL 11184883, at *8 (D. Colo. Oct. 26, 2016). Nor will the court discourage good-faith attempts to resolve disputes without court intervention. Thus, VGT's request satisfies the Rule 16 "good cause" standard for seeking leave to amend after expiration of the deadline to amend pleadings in the Scheduling Order.

    B.    *Fed. R. Civ. P. 15(a)*

As previously stated, Castle Hill argues that VGT's request to amend does not satisfy the Rule 15 standard to amend pleadings for three separate reasons: (1) futility of amendment; (2) VGT unduly delayed filing its proposed Amended Complaint; and (3) the proposed amendment would be prejudicial to Castle Hill. The court will separately address each argument.

    1.    <u>Futility</u>

The Tenth Circuit holds "[a] proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Fields v. City of Tulsa*, 753 F.3d 1000, 1012 (10th Cir. 2014) (quoting *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013)). To determine

whether a claim would be subject to dismissal, district courts must apply the FED. R. CIV. P. 12(b)(6) standard. *Id.* at 1012-13.

"To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.,* 861 F.3d 1081, 1104 (10th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' are insufficient." *Estate of Lockett ex rel. Lockett v. Fallin*, 841 F.3d 1098, 1107 (10th Cir. 2016) (quoting *Twombly,* 550 U.S. at 555). "Dismissal is appropriate if the law simply affords no relief." *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc*., 680 F.3d 1194, 1202 (10th Cir. 2011).

VGT seeks leave to amend its Complaint to add claims for misappropriation of trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, ("DTSA") and the Virginia Uniform Trade Secrets Act, VA. CODE ANN. §§ 59.1-336 to 59.1-343 ("VUTSA"). The DTSA "provides a private cause of action against those who have misappropriated trade secrets related to a product or service intended for interstate commerce." *Blue Star Land Servs., LLC v. Coleman*, No. CIV-17-931-R, 2017 WL 6210901, at *4 (W.D. Okla. Dec. 8, 2017). To establish a DTSA claim, plaintiff must establish:

> (1) the existence of a trade secret that relates to a product or service used in, or intended for use in, interstate or foreign commerce; (2) the acquisition of the trade secret, or the use or disclosure of the trade secret without consent; and (3) the person acquiring, using, or disclosing the trade secret knew or had reason to know that the trade secret was acquired by improper means.

*Arctic Energy Servs., LLC v. Neal*, No. 18-CV-00108-PAB-KLM, 2018 WL 1010939, at *2 (D. Colo. Feb. 22, 2018).

"The VUSTA's elements are similar to the DTSA and require a plaintiff to prove: (1) the existence of a 'trade secret'; and (2) the 'misappropriation' of that trade secret by the defendant." *Space Systems/Loral, LLC v. Orbital ATK, Inc.*, 306 F. Supp. 3d 845, 855 (E.D. Va. 2018). "[A]n alleged trade secret must 'meet all the criteria listed in the statute: (1) independent economic value; (2) not known or readily ascertainable by proper means; and (3) subject to reasonable efforts to maintain secrecy.'" *Id.* (quoting *Trident Prods. & Servs., LLC v. Canadian Soiless Wholesale, Ltd.*, 859 F. Supp. 2d 771, 778 (E.D. Va. 2012), *aff'd per curiam*, 505 F. App'x 242 (4th Cir. 2013)). As for misappropriation,

> the plaintiff must establish two elements: (1) that the defendant acquired, disclosed, or used a trade secret developed by the plaintiff through improper means (namely, without express or implied consent); and (2) that the defendant knew or had reason to know that its knowledge of the trade secret was either acquired under circumstances giving rise to a duty to maintain its secrecy or derived through a person owing such a duty to the plaintiff.

*Id.*

Castle Hill argues that VGT's proposed amendment to add DTSA and VUSTA claims would be futile because the alleged trade secret—the proprietary algorithm used in VGT's bingo games—is well-known in the field and therefore cannot constitute a trade secret. Further, Castle Hill asserts that VGT routinely discloses the algorithm without confidentiality or non-disclosure agreements, belying the existence of a legally protected trade secret. *See* [Doc. No. 79, pp. 5-7 and 9-10]. In support thereof, Castle Hill invites the court to consider various websites, VGT bingo reference manuals, and deposition excerpts.

"Because the futility analysis relies upon a Rule 12(b)(6) standard, the Court may not consider evidence outside the pleadings." *Jeter v. Wild West Gas, LLC,* No. 12-CV-411-TCK-

PJC, 2015 WL 5970992, at *4 (N.D. Okla. Oct. 14, 2015); *see also Brokers' Choice of America, Inc.*, 861 F.3d at 1103 (in ruling on Rule 12(b)(6) motion to dismiss, "the court can "consider documents attached to or referenced in the complaint if they 'are central to the plaintiff's claim and the parties do not dispute [their] authenticity'") (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)). Here, the websites, manuals, and deposition excerpts are neither attached to nor referenced in the proposed Amended Complaint. *See* [Doc. No. 71-1]. Accordingly, the court declines to consider the websites, VGT bingo reference manuals, and deposition excerpts, and will consider whether the Amended Complaint plausibly states a DTSA and VUTSA claim based solely on the pleading's allegations.

VGT's proposed Amended Complaint alleges that trade secrets existed in the source code used to operate VGT's class II games, and includes the following specific allegation:

> [Castle Hill] has committed certain acts of misappropriation in the development of [Castle Hill's] games after May 11, 2016, the effective date of the DTSA. These acts of misappropriation have occurred in a number of states, including Virginia, and in interstate commerce. For example, on information and belief, sometime after May 11, 2016, CHG copied and used, in Virginia and elsewhere, a proprietary algorithm used in VGT's bingo games, and [Castle Hill] submitted software code implementing this algorithm from Virginia to a testing lab in another state.

[Doc. No. 71-1, ¶¶ 41 and 100]. The trade secrets are alleged to be "confidential and never . . . shared with the public," and "integral to [VGT's] business operations." [*Id.* ¶ 44]. Like the original Complaint, the proposed Amended Complaint, further alleges that "[t]he VGT Trade Secrets possess independent economic value by virtue of not being generally known to, nor readily ascertainable through legitimate means by, other persons who could benefit financially from their disclosure or use." [*Id.* ¶ 45]. As previously concluded by the court with regard to the Complaint, the specific manner in which the VGT trade secrets possess independent economic value by virtue of not being generally known is implicit throughout the proposed Amended Complaint—

nondisclosure protects VGT against the manufacture of infringing machines by its competitors. Further, with regard to maintenance of secrecy, the proposed Amended Complaint alleges that VGT: (1) restricted access to the trade secrets and other confidential information; (2) restricted access to computer networks that contained the trade secrets and other confidential information; (3) required employees to sign employment agreements that included nondisclosure provisions; and (4) required employees to attend presentations related to the protection of trade secrets. [*Id.* ¶ 46]. Based on these allegations, the court may reasonably infer the existence of a trade secret, reasonable secrecy, and independent economic value resulting from this secrecy for purposes of a DTSA and VUTSA claim.

As for acquisition through improper means, the proposed Amended Complaint alleges that the play of Castle Hill's games, including the payouts, bingo mechanics, and volatility, mimic the play of VGT's games, which are determined by the source code and underlying math, demonstrating that former VGT employees shared information relating to VGT trade secrets with Castle Hill. [*Id.* ¶¶ 98]. This allegation plausibly asserts acquisition through improper means. The DTSA and VUTSA further require culpability—that is, knowledge that the defendant knew the trade secret was acquired through improper means or under circumstances in which a duty arose to maintain secrecy. *Blue Star Land Servs., LLC*, 2017 WL 6210901, at *6 (quoting 18 U.S.C. § 1839(5)); *Space Systems/Loral, LLC*, 306 F. Supp. 3d at 855. The proposed Amended Complaint alleges that the former VGT employees—now employed by Castle Hill—had reason to know that the trade secret was acquired by improper means by virtue of the former employees' knowledge of the duty to maintain the secrecy of VGT's trade secrets. [Doc. No. 71-1, ¶ 96]. Specifically, the former VGT employees allegedly signed employee agreements that included a confidentiality provision. [*Id.* ¶ 97]. These allegations plausibly assert Castle Hill's culpability.

Finally, with regard to the "relation to interstate commerce" for a DTSA claim, the proposed Amended Complaint includes new allegations that the VGT trade secrets are related to products and services used in interstate commerce because VGT's games were designed, developed, marketed, leased and used across multiple states. [*Id.* ¶ 45]. Moreover, the proprietary algorithm is specifically alleged to have been utilized in Virginia, and then submitted for potential use in another state. [*Id.* ¶ 100].

Based on the foregoing, the court concludes that the proposed Amended Complaint sufficiently asserts plausible claims for misappropriation of trade secrets under both the federal Defend Trade Secrets Act and the Virginia Uniform Trade Secrets Act, satisfying FED. R. CIV. P. 12(b)(6)'s pleading requirements.

In addition, Castle Hill challenges VGT's standing to pursue the DTSA and VUTSA claims because Castle Hill previously withdrew the allegedly misappropriated algorithm from regulation consideration and has no intention of re-submitting it or deploying it into the field.

Constitutional standing requires three elements:

> First, the plaintiff must have experienced an "injury in fact," that is, an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent." Second, there must be a causal connection between the injury and the conduct complained of. Third, it must be likely, not speculative, that the injury will be redressed by the trial court's favorable decision.

*Colo. Envtl. Coal. v. Wenker*, 353 F.3d 1221, 1234 (10th Cir. 2004) (internal citations and quotations omitted). Although plaintiff bears the burden of establishing these elements, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

The proposed Amended Complaint alleges that Castle Hill copied and used a propriety algorithm developed for VGT's class II games resulting in injury to VGT, including weakening VGT's competitive position. [Doc. No. 71-1, ¶¶ 100-01]. Further, the misappropriation allegedly resulted in Castle Hill receiving revenues and profits to which it was not entitled to the detriment of VGT. [Doc. No. 71-1, ¶¶ 147 and 157]. These allegations plausibly state a "concrete and particularized" injury in fact as a result of Castle Hill's conduct.

Castle Hill again invites the court to consider material outside the pleadings to determine VGT's standing. However, it is not clear from the briefs that Castle Hill seeks to assert a FED. R. CIV. P. 12(b)(1) challenge to VGT's standing—pursuant to which the court may be permitted consider material outside the pleadings—rather than a FED. R. CIV. P. 12(b)(6) challenge. *Cf. United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (in addressing factual attack to subject matter jurisdiction, "the court does not presume the truthfulness of the complaint's factual allegations, but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)") (internal quotations omitted). Further, even if the court were to consider the evidentiary material submitted, standing exists. Castle Hill submits evidence that it has withdrawn the allegedly misappropriated algorithm from regulatory consideration and has no intention of deploying it in the field in the future. However, the proposed Amended Complaint includes allegations from which the court may infer *past* misappropriation, as well as the threat of future injury. Castle Hill's evidence does not adequately address past misappropriation.

Castle Hill's futility arguments are more appropriately raised through later dispositive motions. *See Hirt v. Unified Sch. Dist. No. 287*, — F. Supp. 3d —, 2018 WL 1609553, at *4 (D. Kan. Apr. 3, 2018). At this stage, for the reasons discussed above, VGT's proposed Amended

Complaint satisfies the FED. R. CIV. P. 12(b)(6) pleading requirements and therefore amendment would not be futile.

    2.    <u>Undue Delay</u>

Castle Hill next argues that VGT's approximately two month delay in seeking leave to amend its Complaint following discovery of the new information constitutes undue delay. As discussed above, the court is not persuaded.

The Tenth Circuit has held that "denial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the delay.'" *Minter,* 451 F.3d at 1206 (quoting *Frank v. U.S. West*, 3 F.3d 1357, 1365-66 (10th Cir. 1993)). Here, VGT sought leave to amend within sixty-five days of receipt of the newly discovered information. During that period, VGT sought additional discovery regarding the algorithm and attempted to negotiate a potential resolution to the proposed new claims with Castle Hill. VGT's efforts to obtain additional information regarding its potential new claims and confer with opposing counsel constitute adequate explanation for delay.

    3.    <u>Prejudice to Castle Hill</u>

Finally, Castle Hill argues that allowing VGT to amend its Complaint would prejudice its ability to conduct discovery regarding VGT's new claims, as well as its pre-existing claim for misappropriation of trade secrets in violation of the Oklahoma Uniform Trade Secrets Act.

Courts in the Tenth Circuit "typically find prejudice only when the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'" *Minter*, 451 F.3d at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)). Prejudice generally exists when the proposed amended claims arise from subject matters wholly different from that presented in the original complaint or "raise significant new factual issues." *Id.* "[T]he expenditure of time,

money, and effort alone is not grounds for a finding of prejudice." *Bylin v. Billings*, 568 F.3d 1224, 1230 (10th Cir. 2009).

VGT's original Complaint asserted a claim for trade secret misappropriation under Oklahoma law. Rather than raising a wholly new subject matter, the DTSA and VUTSA claims also raise a trade secret misappropriation issue, albeit based on a different trade secret. Further, neither the DTSA nor VUTSA impose onerous additional legal requirements than the Oklahoma Uniform Trade Secrets Act. *See Blue Star Land Servs., LLC*, 2017 WL 6210901, at *7. In fact, "[a]lthough the state 'trade secrets' and 'misappropriation' definitions are nearly identical to the DTSA, [an OUTSA] [p]laintiff must additionally show 'use' and 'detriment.'" *Id.*

As for discovery, based on the briefs submitted by the parties, it is clear to the court that the parties have engaged in substantial discovery in this litigation, including discovery directed to trade secret misappropriation. Time remains prior to the fact discovery deadline, and the court would be amenable to allowing additional discovery on this limited area if necessary. Furthermore, expert discovery does not close until September 28, 2018. *See* [Doc. No. 101]. The expenditure of the necessary time and money to conduct discovery regarding the proprietary algorithm at issue in the new claims does not constitute prejudice. *See Bylin*, 568 F.3d at 1230. Moreover, the dispositive motion deadline is not until October 5, 2018, and the pre-trial conference is scheduled for February 4, 2019. As a result, the court concludes Castle Hill has sufficient time to prepare its defense to the DTSA and VUTSA claims.

## IV. Conclusion

WHEREFORE, Plaintiff's Motion for Leave to File Amended Complaint [Doc. Nos. 71 and 73] is granted. Plaintiff shall file its Amended Complaint no later than Friday, July 20, 2018.

DATED this 17th day of July, 2018.

*/s/ Gregory K. Frizzell*
GREGORY K. FRIZZELL, CHIEF JUDGE