# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) VIDEO GAMING TECHNOLOGIES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:17-cv-00454-GKF-JFJ |
| | ) |
| 1) CASTLE HILL STUDIOS LLC | ) **REDACTED** |
| (d/b/a CASTLE HILL GAMING); | ) |
| 2) CASTLE HILL HOLDING LLC | ) |
| (d/b/a CASTLE HILL GAMING); and | ) |
| 3) IRONWORKS DEVELOPMENT, LLC | ) |
| (d/b/a CASTLE HILL GAMING) | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Plaintiff Video Gaming Technologies, Inc. ("VGT") brings this motion to compel Defendants Castle Hill Studios LLC, Castle Hill Holding LLC, and Ironworks Development, LLC (collectively, "Defendants") to (i) provide information requested by VGT's interrogatories and (ii) produce documents requested by VGT—some of which VGT first requested in September 2017. The discovery VGT seeks through this motion is important to VGT's preparation of its trademark, trade dress and trade secret claims, and Defendants have even *agreed* to provide much of the requested discovery. But they have not yet done so despite the impending close of fact discovery. Specifically, Defendants have failed to honor a commitment to supplement discovery responses by July 20 and have reneged on their agreement to produce documents such as financial spreadsheets that are necessary for VGT's damages expert.

VGT has repeatedly sought to resolve these issues prior to filing this motion, and VGT remains hopeful that some or all of the disputes addressed in this motion will be resolved without the need for the Court's assistance. In the event they are resolved while this motion is pending,

VGT will promptly notify the Court of any portions of the motion that have become moot. Given the August 3 deadline for fact discovery and the upcoming August 10 deadline for opening expert reports, however, VGT has no choice but to bring this motion at this time.

I. **BACKGROUND**

VGT is the leading developer, manufacturer, and distributor of Class II bingo-based player terminals in North America, including in Oklahoma, which is one of the largest Class II markets in the United States.[1] A few years ago, several longtime VGT officials left to start a new gaming company, where they hired other VGT employees and began marketing and selling games, including in Oklahoma, that bear unmistakable similarities—in both appearance and gameplay—to VGT's most popular games. These similarities are described and shown in VGT's Complaint, including in Exhibit 4 thereto, which sets forth a number of side-by-side comparisons of VGT's games and Defendants' games. *See* Dkt. No. 2 at Exhibit 4. In this litigation, VGT seeks redress for infringement of its trademarks and trade dress and misappropriation of its trade secrets and confidential information by Defendants.

Over the course of the past ten months, VGT and Defendants have engaged in extensive discovery efforts. Defendants, however, have failed to provide several categories of information, in many cases notwithstanding agreements to provide the information that were reached during an extensive meet and confer process.[2]

---

[1] The Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.*, which regulates gaming on Native American land, establishes three classes of games, each with a different regulatory scheme. The Class II games at issue here include games of chance based on bingo, in contrast to Class III gaming often associated with casinos in Las Vegas.

[2] Over the past many months, the parties have engaged in an extensive meet and confer process, including exchanging letters and emails, and meeting in person on multiple occasions, including a three-hour, in-person meet and confer on July 6, 2018 that addressed all of the requests at issue in this motion. Those efforts resolved some, but not all, of VGT's concerns regarding

II.  **ARGUMENT**

Under Rule 26(b)(1), a party "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Here, Defendants have failed to provide information, documents, and testimony that are both relevant and proportional to the needs of the case.  This failure has already impaired VGT's ability to prepare its case, including its expert reports, and, if uncorrected, this will continue to thwart VGT's trial preparations.  Pursuant to Rule 37(a), Defendants should be ordered to immediately provide this discovery.

A.  **Defendants Should Be Compelled to Supplement Their Interrogatory Responses.**

Defendants have failed to provide adequate responses to several interrogatories.  As discussed more fully below, VGT has repeatedly requested that Defendants correct these deficiencies, and in many cases Defendants already have agreed to provide the requested information, but inexplicably have failed to do so.

**Interrogatory No. 22:**  In this interrogatory, VGT requested basic information about defenses Defendants appear to assert in response to VGT's trade secret misappropriation claims:

> With respect to the VGT Trade Secrets, state the factual and legal bases for any contention that VGT does not own any particular VGT Trade Secret, that any VGT Trade Secret lacks economic value, that any VGT Trade Secret is generally known or readily ascertainable, that VGT has not made reasonable efforts to maintain the secrecy of any VGT Trade Secret, that CHG has acquired any VGT Trade Secret through proper means, or that CHG otherwise is not liable for misappropriation of any VGT Trade Secrets.

---

Defendants' discovery responses.  Given the volume of correspondence between the parties on these issues, VGT is not including with this motion all correspondence relating to the meet and confer process.  If the Court requests, VGT will provide copies of additional correspondence in a supplemental submission.

3

In its response, Defendants raised a series of objections regarding the breadth of the request and their belief (mistaken) that VGT either has failed to adequately describe the trade secrets at issue in this litigation or that aspects of various trade secrets are publicly available. To address Defendants' concerns, VGT worked during the meet and confer process to limit the interrogatory to three specific VGT trade secrets, ███████████████████████████████████ ███████████████████████████████████████████████, which is important to how the games operate. *See* Ex. A, H. Platt email to M. Sawyer (July 9, 2018). Although Defendants promised to provide this supplementation by July 20, *id.*, they failed to do so.

VGT is entitled to understand the basis for Defendants' contentions that they have not misappropriated VGT's trade secrets. Defendants' failure to abide by their previous agreement to provide this information will make it difficult for VGT to explore these issues in the upcoming Rule 30(b)(6) depositions and is interfering with the ability of VGT's experts to prepare their opening expert reports. The Court should order Defendants to provide the requested information immediately.

**Interrogatory No. 23:** This interrogatory seeks financial information about the performance of Defendants' games, broken down on a game-by-game basis:

> For each of the CHG Games, identify, separately for each cabinet type used with the CHG Game (e.g., Retro 3-reel mechanical, Atlas 3-reel video) and for each quarter since CHG began operating to the present, the number of units sold, leased or licensed in the United States; the revenue received by CHG from such sales, leases, and licenses; all direct, indirect, variable, fixed, and overhead costs associated with each of the CHG Games that was incurred by CHG; and all gross, operating, pre-tax and net profits realized by CHG, directly or indirectly, for each of the CHG Games.

Addendum, Interrogatory No. 23. The requested information is relevant to VGT's damages case, including with respect to the possible disgorgement of Defendants' profits in the event that VGT prevails. *E.g.*, 15 U.S.C. § 1117(a); 78 Okl. St. § 88. In their response, Defendants point to

4

thousands of pages of disorganized documents and spreadsheets from which it appears virtually impossible to discern in any reasonable manner much of the information requested in this interrogatory. As the burden of deriving or ascertaining the responsive information from the thousands of pages Defendants cited is far greater on VGT than on the Defendants, this is not a proper use of Rule 33(d). *See* Fed. R. Civ. P. 33(d) (parties can identify documents in response to interrogatories if "the burden of deriving or ascertaining the answer [from those documents] will be substantially the same for either party"). Apparently recognizing that their current response is deficient, Defendants represented during a meet and confer on July 6 that they were in the process of preparing spreadsheets that would contain the requested information. *See* Ex. A, M. Sawyer email to H. Pratt (July 8, 2018). Although they stated that they would produce the information prior to a deposition that was scheduled for July 12, *id.*, Defendants have yet to do so.

Defendants' failure to provide organized and responsive financial information has made it extremely difficult for VGT to inquire intelligently about key aspects of Defendants' financial performance during depositions of Defendants' employees, including the deposition that took place on July 12 of Defendants' CEO, the employee who appears to be the most knowledgeable about Defendants' finances. The information also is highly relevant to the opening damages expert report that VGT will be serving on August 10. By continuing to delay in providing information they previously agreed to provide, Defendants are prejudicing VGT's ability to prepare its opening expert report, likely resulting in the need for VGT's damages expert to submit a supplemental report at some point after Defendants eventually provide the information. Furthermore, it would be unfair and prejudicial if Defendants withheld this information until *their* expert reports or trial. To the extent Interrogatory No. 23 covers any financial information on which Defendants may rely, it must be produced now.

**Interrogatory No. 15:** In their response to Interrogatory No. 15, Defendants relied on Rule 33(d) and stated that they would produce documents from which VGT could ascertain additional information relevant to these interrogatories. *See* Addendum, VGT's Interrogatory No. 15. When Defendants failed to identify the documents they were relying upon, VGT requested that Defendants supplement the responses to identify the documents with specificity, as required by Rule 33(d). Ex. B., R. Dalton email to M. Antonelli (June 7, 2018). After another month passed, VGT repeated this request during a meet and confer on July 6. Defendants then agreed to supplement Interrogatory No. 15 to identify documents by Bates number. *See* Ex. A, H. Platt email to M. Sawyer (July 9, 2018). Defendants have yet to provide the supplemental response and should be ordered to do so promptly.

  **B.**  **Defendants Should be Compelled to Produce Documents Responsive to RFPs 39, 40, 41, and 43 Immediately**

Defendants also continue to delay producing several categories of documents in response to the VGT's requests for production ("RFPs"). Most notably, Defendants have failed to produce documents that clearly show their revenues, profits, and sales by game title—all of which are relevant to VGT's damages analysis. *See* Addendum, VGT's RFP No. 39, 40, 41, and 43. VGT first requested these Documents in September 2017, but Defendants still have not produced a complete set of financial information in a comprehensible format. As noted above (*see* Section II.A), during a meet and confer held July 6, Defendants represented that they were preparing spreadsheets that would include the requested information in a more organized and usable format. Although they promised to do so prior to a deposition scheduled to take place on July 12, *see* Ex. A., they still have not done so. The Court should compel production of this information promptly.

6

Furthermore, although Defendants have produced profit and loss statements through 2016, they have not produced this information for 2017 or any of 2018. The Court should compel production of this information promptly.

## III.   CONCLUSION

For the foregoing reasons, VGT requests that the Court order Defendants to provide complete responses to VGT's interrogatories and to produce documents requested by VGT.

July 30, 2018                                  Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　*/s/ Gary Rubman*
　　　　　　　　　　　　　　　　　　　　　　Graydon Dean Luthey, Jr., OBA No. 5568
　　　　　　　　　　　　　　　　　　　　　　GABLE GOTWALS
　　　　　　　　　　　　　　　　　　　　　　1100 ONEOK Plaza
　　　　　　　　　　　　　　　　　　　　　　100 West Fifth Street
　　　　　　　　　　　　　　　　　　　　　　Tulsa, OK 74103-4217
　　　　　　　　　　　　　　　　　　　　　　Telephone: (918) 595-4821
　　　　　　　　　　　　　　　　　　　　　　Facsimile: (918) 595-4990
　　　　　　　　　　　　　　　　　　　　　　dluthey@gablelaw.com

　　　　　　　　　　　　　　　　　　　　　　Gary M. Rubman
　　　　　　　　　　　　　　　　　　　　　　Peter A. Swanson
　　　　　　　　　　　　　　　　　　　　　　Michael S. Sawyer
　　　　　　　　　　　　　　　　　　　　　　Rebecca B. Dalton
　　　　　　　　　　　　　　　　　　　　　　COVINGTON & BURLING LLP
　　　　　　　　　　　　　　　　　　　　　　One CityCenter
　　　　　　　　　　　　　　　　　　　　　　850 Tenth Street, NW
　　　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20001-4956
　　　　　　　　　　　　　　　　　　　　　　Telephone: (202) 662-6000
　　　　　　　　　　　　　　　　　　　　　　Facsimile: (202) 778-5465
　　　　　　　　　　　　　　　　　　　　　　grubman@cov.com
　　　　　　　　　　　　　　　　　　　　　　pswanson@cov.com
　　　　　　　　　　　　　　　　　　　　　　msawyer@cov.com
　　　　　　　　　　　　　　　　　　　　　　rdalton@cov.com
　　　　　　　　　　　　　　　　　　　　　　　　(admitted pro hac vice)

　　　　　　　　　　　　　　　　　　　　　　Neil K. Roman
　　　　　　　　　　　　　　　　　　　　　　COVINGTON & BURLING LLP
　　　　　　　　　　　　　　　　　　　　　　The New York Times Building

620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1221
Facsimile: (212) 841-1010
nroman@cov.com
  (admitted pro hac vice)

*Counsel for Video Gaming Technologies, Inc.*

# ADDENDUM

**Interrogatories**

## VGT'S INTERROGATORY NO. 15:

Describe in detail the relationship between and among each of Castle Hill Studios LLC, Castle Hill Holdings LLC, and Ironworks Development, LLC, including without limitation the corporate relationships between and among each entity, the responsibilities of each of the entities with respect to designing, manufacturing, distributing, advertising, promoting, selling or offering for sale, or leasing the CHG Games, and the entity employing each of the CHG employees identified in Your Rule 26(A)(1) Initial Disclosures.

## CHG'S RESPONSE TO INTERROGATORY NO. 15:

CHG objects to this interrogatory as overly broad and unduly burdensome. Without waiver of these objections, CHG states that Castle Hill Holdings LLC ("CHH") is a Delaware Limited Liability Company. CHH is the Sole Member of Castle Hill Studios LLC, a Nevada Limited Liability Company. CHH is the Sole Member of Ironworks Development LLC, a Virginia Limited Liability Company. CHG will produce documents from which further information responsive to this request can be derived or ascertained.

## VGT'S INTERROGATORY NO. 22:

With respect to the VGT Trade Secrets, state the factual and legal bases for any contention that VGT does not own any particular VGT Trade Secret, that any VGT Trade Secret lacks economic value, that any VGT Trade Secret is generally known or readily ascertainable, that VGT has not made reasonable efforts to maintain the secrecy of any VGT Trade Secret, that CHG has acquired any VGT Trade Secret through proper means, or that CHG otherwise is not liable for misappropriation of any VGT Trade Secrets.

**CHG'S RESPONSE TO INTERROGATORY NO. 22:**

[redacted]





**VGT'S INTERROGATORY NO. 23:**

For each of the CHG Games, identify, separately for each cabinet type used with the CHG Game (e.g., Retro 3-reel mechanical, Atlas 3-reel video) and for each quarter since CHG began operating to the present, the number of units sold, leased or licensed in the United States;

the revenue received by CHG from such sales, leases, and licenses; all direct, indirect, variable, fixed, and overhead costs associated with each of the CHG Games that was incurred by CHG; and all gross, operating, pre-tax and net profits realized by CHG, directly or indirectly, for each of the CHG Games.

**CHG'S RESPONSE TO INTERROGATORY NO. 23:**

Castle Hill objects to this Interrogatory as overly broad and unduly burdensome. Castle Hill further objects to this interrogatory as vague and ambiguous, including to the extent that it seeks information for "each cabinet type used." Castle Hill further objects to the Interrogatory as compound. The Interrogatory itself has three subparts, each of which counts as a separate interrogatory and therefore this Interrogatory (in addition to VGT's First through Fifth sets of Interrogatories, many of which included interrogatories with numerous subparts) exceeds the total number permitted under Rule 33.

Subject to and without waiver of the foregoing objections, Castle Hill states that it has already produced financial documents containing information responsive to this request regarding Castle Hill's costs, revenues, and profits associated with its games. Those documents include, but are not limited to: tax returns for 2014 through 2016 (CHG0132958 – CHG0134085); a copy of Castle Hill's balance sheet (CHG0120282 – CHG0120284); and, a copy of Castle Hill's profit and loss statement (CHG0120285 – CHG0120290). Information regarding the financial performance of Castle Hill's games is contained in the more than one thousand reports tracking game performance, including but not limited to the following documents: EGM performance reports (CHG012291 – CHG0122969); and reports regarding coin-in/coin-out numbers for Castle Hill's games (CHG0120668 – CHG0122626). Pursuant to

Rule 33(d), Castle Hill will produce additional documents from which the information sought in this Interrogatory may be readily derived or ascertained.

**Requests for Production**

**VGT'S REQUEST FOR PRODUCTION NO. 39:**

All Documents and Things sufficient to show, on a quarterly basis, the revenues of each of the Accused Games sold or leased from the date of first use to present.

**CHG'S RESPONSE TO VGT'S REQUEST FOR PRODUCTION NO. 39:**

CHG will perform a reasonable search for responsive, relevant and nonprivileged documents sufficient to show CHG's revenues for the Accused Games.

**VGT'S REQUEST FOR PRODUCTION NO. 40:**

All Documents and Things sufficient to show, on a quarterly basis, the gross and net profits realized by CHG, directly or indirectly, for each of the Accused Games sold or leased from the date of first use to present.

**CHG'S RESPONSE TO VGT'S REQUEST FOR PRODUCTION NO. 40:**

CHG will perform a reasonable search for responsive, relevant and nonprivileged documents sufficient to show CHG's gross and net profits for the Accused Games.

**VGT'S REQUEST FOR PRODUCTION NO. 41:**

All Documents and Things sufficient to show, on a quarterly basis, CHG's gross and nets profits since CHG began operating.

**CHG'S RESPONSE TO VGT'S REQUEST FOR PRODUCTION NO. 41:**

CHG will perform a reasonable search for responsive, relevant and nonprivileged documents sufficient to show CHG's gross and net profits.

**VGT'S REQUEST FOR PRODUCTION NO. 43:**

All Documents and Things sufficient to show the number of units of each of the Accused Games in operation by month and year and the names and locations of the casinos where the units are or were operating.

**CHG'S RESPONSE TO VGT'S REQUEST FOR PRODUCTION NO. 43:**

CHG will perform a reasonable search for responsive, relevant and nonprivileged documents sufficient to show the number of units of each Accused Game and the names and locations of the casinos where operating.

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2018, I filed the foregoing Plaintiff's Motion to Compel Discovery via ECF, which caused a true and correct copy of the foregoing to be delivered to the following counsel for Defendants:

Robert C. Gill
Thomas S. Schaufelberger
Matthew J. Antonelli
Henry A. Platt
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
tschauf@saul.com
matt.antonelli@saul.com
henry.platt@saul.com

Sherry H. Flax
SAUL EWING ARNSTEIN & LEHR, LLP
500 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 332-8764
(410) 332-8785 (facsimile)
sherry.flax@saul.com

James C. Hodges, OBA 4254
JAMES C. HODGES, PC
2622 East 21st Street, Suite 4
Tulsa, OK 74114
Telephone: (918) 779-7078
JHodges@HodgesLC.Com

Duane H. Zobrist
Jonathan S. Jacobs
ZOBRIST LAW GROUP PLLC
1900 Arlington Blvd. Suite B
Charlottesville, VA 22903
Telephone: (434) 658-6400
dzobrist@zoblaw.com
jjacobs@zoblaw.com

*Attorneys for Defendants*

                                             */s/ Gary Rubman*