UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VIDEO GAMING TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> CASTLE HILL STUDIOS LLC, *et al.* <br><br> Defendants. | CASE NO. 17-CV-00454-GKF-JFJ <br><br> **REDACTED – PUBLIC VERSION** |

**DEFENDANTS' REPLY IN SUPPORT OF**
**MOTION TO COMPEL DISCOVERY**

Defendants Castle Hill Studios, LLC, Castle Hill Holdings, LLC, and Ironworks Development, LLC (collectively, "Defendants" or "Castle Hill"), submit this reply to Plaintiff Video Gaming Technologies, Inc.'s ("VGT") opposition to Defendants' motion to compel discovery. Defendants' motion sought to compel VGT to do two things: (1) produce a witness to testify regarding VGT's efforts to maintain compliance with National Indian Gaming Commission regulations pursuant to Federal Rule of Civil Procedure 30(b)(6); and (2) produce un-redacted copies of its agreements with tribes regarding the placement of VGT games in casinos.

VGT's opposition to the motion makes little effort to offer any justification for its refusal to provide the requested discovery. Instead, VGT incredibly attempts to shift the blame back to Castle Hill for VGT's own discovery failures. This sort of gamesmanship is contrary to the rules and should not be rewarded. Castle Hill timely requested the information it now seeks through motion during fact discovery. The information sought is properly within the scope of discovery and must be produced.

I.  **Information Regarding VGT's Compliance With NIGC Regulations is Relevant and Discoverable**

Castle Hill is entitled to depose a VGT corporate designee regarding VGT's compliance with NIGC minimum technical standards. As set forth in Castle Hill's motion, this information is relevant to at least Castle Hill's illegality and unclean hands defenses. As remedies in this action, VGT seeks Castle Hill's revenues from its allegedly infringing games, as well as "unjust enrichment" damages for Castle Hill's alleged "avoided" research and development costs. In seeking equitable relief, the question of whether VGT is operating thousands of its own games illegally is clearly relevant. Section 1117(a) remedies are awarded "subject to the principles of equity." 15 U.S.C. § 1117(a). Thus, an award of a defendant's profits is not automatic. *See Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 131 (1947); *Bambu Sales, Inc. v. Testini*, No. 87-CV-3190, 1988 WL 138055 (E.D.N.Y. Dec. 21 1988) (plaintiff's illegal sales can diminish recovery under equitable principles even where plaintiff is seeking defendant's profits). VGT does not legitimately contend otherwise; it just does not want Castle Hill to dig further into this issue because it knows that the vast majority of its games are, ████████████ ████████████████████████████████████████████.

Instead, VGT asserts that because Castle Hill questioned certain VGT fact witnesses regarding compliance issues, further discovery would be a "waste of time." *See* VGT Opp'n (Dkt. 123) at 8. As an initial matter, nothing in the federal rules requires Castle Hill to forego Rule 30(b)(6) testimony simply because fact witness testimony has addressed a similar topic. Castle Hill has developed a factual record through questioning various fact witnesses and is now entitled to the corporate designee testimony of VGT. Further, the VGT witnesses who testified on this topic gave testimony that was both incomplete and inconsistent. For example, VGT's VP of Gaming Compliance, Richard Williamson, explained that to qualify for "grandfather" status

2

under the NIGC's minimum technical standards, ███████████████████████████

███████████████████████████████████████████. *See* Ex. 1, Williamson Dep. at 62:10-63:19.  ███████████████████████████████████████████

███████████████████████████████████████████

████████████████. *Id.* at 63:18-23.  Another of VGT's witnesses, a product manager, testified that it was his understanding that the "grandfather" provision applied ████████████

███████████████████████████████████████████ *See* Ex. 2, Harvie Dep. at 55:24-56:22.  VGT President Jay Sevigny, meanwhile, testified that in order to measure NIGC compliance, ███████████████████████████████

███████████████████ *See* Ex. 3, Sevigny Dep. at 191:23-192:9. ████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████ *Id.* at 194:5-11.

As set forth above, the testimony of VGT witnesses on the topic of NIGC compliance has been incomplete and internally inconsistent.  Castle Hill is entitled to corporate designee testimony from a witness who has been prepared to testify as to Topic 7 of its Rule 30(b)(6) notice and give testimony binding on VGT.  None of the prior fact witnesses were prepared to do so.  To the extent VGT argues that offering such testimony would be "burdensome" at this point in time, that is a burden VGT has created by refusing to timely produce a witness in response to the deposition notice.  As set forth in Castle Hill's motion, in an attempt to resolve the current dispute, Castle Hill offered to forego Rule 30(b)(6) testimony on Topic 7 if VGT would provide certain information in the form of a declaration.  *See* Mot. (Dkt. 118) at Ex. B, H. Platt email to M. Sawyer (July 29, 2018).  VGT declined this suggested proposal.

Moreover, VGT's recent expert reports have further demonstrated the importance of the discovery Castle Hill is seeking. One of VGT's experts, Stacey Friedman, intends to offer testimony to include, among other things, ███████████████████████████████ ███████████████████████████████████████████████████████████████ Ex. 4, Friedman Report at ¶ 72. Indeed, as part of his opinions set forth in his report, Mr. Friedman identifies ███████████████████████████ ███████████████ *Id.* at ¶ 55. VGT intends to argue that it has developed "trade secret" solutions to certain regulations which allow it to offer compliant games. Its expert Mr. Friedman intends to offer opinions regarding VGT's efforts to comply with certain regulatory standards. Castle Hill is entitled to question him regarding VGT's compliance efforts and adherence to NIGC regulatory requirements, and is entitled to this discovery in order to explore and develop counter-arguments to his opinions.

VGT also asserts that its failure to comply with NIGC minimum technical standards "has no relationship" to its claims in this case. However, an important aspect of VGT's alleged trade dress which VGT alleges that Castle Hill has infringed is the cabinet in which it offers its bingo games. *See* First Amended Complaint (Dkt. 103) ("Compl.") ¶¶ 73-74. As VGT's VP for Gaming Compliance testified, in order to qualify as a "grandfathered" game under the relevant NIGC regulations, ████████████████████████████████████████████████ ██████████████ *See* Ex. 1 at 62:10-63:19. Mr. Williamson further explained ██████ ████████████████████████████████████████████████████████████████ ████████████████████ Castle Hill is entitled to further discovery on this issue in order to

understand both VGT's view of the governing regulations and the efforts it has made to comply with the same.

In its opposition, VGT uses the catch-phrases "satellite litigation" and "mini-trial" in an attempt to remove the issue of its regulatory compliance from the scope of this dispute. These efforts are unavailing. VGT filed this lawsuit and alleged that Castle Hill's entry into the Oklahoma Class II EGM market has negatively impacted VGT and its presence in the Class II market. Castle Hill is clearly entitled to explore whether, as VGT's documents admit, out of thousands of EGMs in Oklahoma, only a small sliver of VGT's games are legally operating. This is by no means "satellite litigation." This issue is central to the claims VGT has asserted in this case, is central to VGT's entitlement to the remedies it is seeking, and is central to Castle Hill's defense.

If VGT's games are truly fully-compliant with all NIGC regulations, as it asserts in its opposition, then VGT should have simply produced the requested 30(b)(6) designee and given the testimony. If things are as VGT says they are, then this further discovery should prove of little use to Castle Hill in its defense. But VGT clearly does not want such discovery to occur. VGT's absolute refusal to provide testimony, however, does not affect the permissible scope of discovery. There can be no serious question that Castle Hill's request for 30(b)(6) testimony on the topic of VGT's compliance with NIGC regulations is properly within the scope of discovery in this case. Castle Hill's motion should be granted on this basis.

II. **VGT Offers No Justification for its Decision to Withhold Relevant Information and Produce Only Redacted Versions of its Agreements With Tribes**

VGT's opposition makes no attempt to explain why it chose to produce only redacted versions of its agreements with its tribal customers. As set forth in Castle Hill's motion, Castle Hill requested those documents on February 6, 2018. Despite having obtained copies of Castle

Hill's agreements with its tribal customers, VGT refused to produce its tribal agreements (notwithstanding repeated assurances that it would be doing so) and dragged its feet for months until it buried them within an 8,000 page document production made on July 27, 2018, only seven days before the close of discovery.

Not *one single time* between February 6th and July 27th did VGT indicate to Castle Hill that it would be producing only redacted versions of the documents. For this reason alone, any objection VGT has to production of the complete documents has been waived. Even now, it remains unclear what VGT's basis for its redactions are. VGT's opposition points to no timely-stated objection that VGT made during discovery that would justify any redactions. Indeed, VGT made no such timely objections to the production of its tribal agreements. To the contrary, VGT affirmatively agreed to produce the agreements, and provided Castle Hill with absolutely no advance notice that it was going to redact information from the documents. When Castle Hill inquired on the eve of discovery closing why the agreements had not been produced, VGT's response was: ███████████████████████████████████████ *See* Mot. (Dkt. 118) at Ex. B (July 27 Email from M. Sawyer). VGT's decision to then produce only redacted versions is pure gamesmanship that is completely unsupported by the rules. Unredacted documents must be produced.

In its opposition, VGT offers two "arguments" in support of its refusal to provide the tribal agreements. First, VGT argues, the information in its tribal agreements is "not relevant." *See* Opp'n at 13. This is an incredible argument that is belied by the fact that VGT requested Castle Hill's agreements with tribes (which Castle Hill produced **in April** in un-redacted form). If information regarding relationships with tribes is "not relevant", then why did VGT's counsel email Castle Hill on July 24, 2018 to identify four specific tribal agreements that it believed

Castle Hill still needed to produce? *See* Mot. (Dkt. 118) at Ex. B (July 24, 2018 Email from R. Dalton). In fact, and as Castle Hill informed VGT in response to Ms. Dalton's email, Castle Hill had already produced the four documents in question. VGT, meanwhile, did not produce its agreements for several more days, and then only did so in redacted form – again, without any forewarning to Castle Hill or any indication of what had been redacted or VGT's basis for doing so. The fact that VGT requested and received this information from Castle Hill is reason alone to order VGT to produce the same information.

Additionally, VGT has alleged that Castle Hill's games "often appear in the same casinos as the VGT 3-Reel Mechanical Games." (Compl. ¶ 85). VGT further alleges that "CHG sales representatives seek the placement of CHG's games in the middle of VGT games to increase the likelihood that players will confuse the Infringing Games with VGT games." (Compl. ¶ 87). Castle Hill is entitled to unredacted copies of VGT's agreements with its tribal customers to learn about the terms under which VGT places its EGMs with those customers, and in order to fairly respond to and to defend against these allegations by VGT. Since VGT has Castle Hill's agreements, it already has the documents on both sides of this equation that is relevant to these allegations. VGT's efforts to deprive Castle Hill of the opportunity to the same evidence is unwarranted and unduly prejudicial. The agreements are material to the litigation and are discoverable, and should be produced as requested and agreed.

VGT's purported "relevance" argument is also completely untimely. If VGT wanted to object to the relevance of its agreements with tribes, it could and should have done so between February 6th and July 27th, but it chose not to. Instead, it affirmatively represented on multiple occasions that the tribal agreements were being produced, without ever explaining that redactions would be made. Now, incredibly, VGT asserts that Castle Hill is not entitled to the

redacted information unless Castle Hill can "explain the relevance of the redacted information." *See* Opp'n at 13. That is of course not the standard for discovery, and the idea that Castle Hill is required to "explain the relevance" of information it has not yet seen or reviewed is absurd.[1] The tribal agreements are properly within the scope of discovery in this case. VGT does not assert otherwise. They must be produced in their entirety.

As VGT President Jay Sevigny explained during his deposition, VGT considers the Native American tribes to be its "customers", and the leases it enters with those tribal customers include things such as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 3, Sevigny Dep. at 44:6-8. Meanwhile, VGT's 30(b)(6) designee on the topic of the relief VGT is seeking from Castle Hill for its claims in this case explained that one of the ways VGT alleges it has "suffered" as a result of Castle Hill's allegedly infringing game titles is: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 5, Kovach Dep. at 28:25 – 29:4. VGT's ▮▮▮▮▮▮▮▮▮▮ is directly related to the relationships it has with the Native American tribes. Castle Hill is entitled to complete information regarding those relationships.

The only other justification VGT offers for withholding of information regarding its tribal agreements is that the agreements contain "highly sensitive" information. But, as VGT is well aware, the parties have a stipulated protective order in this case, and both parties have been

---

[1] While it is impossible for Castle Hill to discern exactly what VGT chose to redact, VGT's redactions appear to encompass things such as the term of the agreement (number of months/years); the financial arrangement (fees paid by VGT to the tribe, profit-sharing based on game performance, etc.); information regarding the number and title of VGT games the tribe agrees to place on the casino floor; and information regarding certain performance metrics that VGT games must meet or else risk being removed by the casino. Representative samples of the nearly 100 redacted agreements VGT produced are included as Exhibits 6-8.

producing documents to one another with various confidentiality designations, including a "Highly Confidential" designation (essentially "Attorneys Eyes Only"). The protective order offers VGT all the protection it needs to prevent disclosure of sensitive information. To the extent VGT believes otherwise, the burden was on it to timely object and explain what information it felt could not be protected by the governing order, and why that information needed to be redacted. VGT failed to do so prior to producing the redacted agreements and further failed to do so in its opposition. VGT must produce the requested documents, as it promised to do many months ago.

### III.   Conclusion

For the foregoing reasons, Castle Hill respectfully requests that the Court order VGT to produce the requested documents to Castle Hill and to designate a witness to provide Rule 30(b)(6) testimony as set forth above.

Dated: August 27, 2018

Respectfully submitted,

*/s/ Robert C. Gill*
Robert C. Gill (admitted *pro hac vice*)
Thomas S. Schaufelberger (admitted *pro hac vice*)
Sherry H. Flax (admitted *pro hac vice*)
Matthew J. Antonelli (admitted *pro hac vice*)
Jeremy B. Darling (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
tschauf@saul.com
sherry.flax@saul.com
matt.antonelli@saul.com
jeremy.darling@saul.com

James C. Hodges, OBA #4254
JAMES C. HODGES, P.C.
2622 East 21st Street, Suite 4
Tulsa, Oklahoma 74114
(918) 779-7078
(918) 770-9779 (facsimile)
JHodges@HodgesLC.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 27th day of August, 2018, a copy of the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL – REDACTED PUBLIC VERSION** was served via the Court's ECF system on the following:

Graydon Dean Luthey, Jr.  
GABLE GOTWALS  
1100 ONEOK Plaza  
100 West Fifth Street  
Tulsa, OK 74103-4217  
(918) 595-4821  
(918) 595-4990 (facsimile)  
dluthey@gablelaw.com  
*Counsel for Plaintiff*

Neil K. Roman  
COVINGTON & BURLING LLP  
The New York Times Building  
620 Eighth Avenue  
New York, NY 10018-1405  
(212) 841-1221  
(212) 841-1010 (facsimile)  
nroman@cov.com  
*Counsel for Plaintiff*

Gary M. Rubman  
Peter Swanson  
Michael Sawyer  
Rebecca B. Dalton  
COVINGTON & BURLING LLP  
One City Center  
850 Tenth Street, NW  
Washington, DC 20001-4956  
(202) 662-6000  
(202) 778-5465 (facsimile)  
grubman@cov.com  
pswanson@cov.com  
msawyer@cov.com  
rdalton@cov.com  
*Counsel for Plaintiff*

                                         */s/ Robert C. Gill*  
                                           Robert C. Gill