**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

VIDEO GAMING TECHNOLOGIES, INC.,

    Plaintiff,

v.

CASTLE HILL STUDIOS LLC, *et al.*

    Defendants.

CASE NO. 17-CV-00454-GKF-JFJ

**DEFENDANTS' MOTION IN LIMINE TO EXCLUDE**
**EVIDENCE OF ALLEGED "ACTUAL CONFUSION"**

Defendants, Castle Hill Studios LLC, Castle Hill Holdings LLC, and Ironworks Development LLC (collectively, "CHG" or "Defendants"), move *in limine* for an Order precluding Plaintiff Video Gaming Technologies, Inc. ("VGT") from arguing or introducing certain evidence of alleged "actual confusion" between CHG and VGT games.

**I.    VGT'S ALLEGED INSTANCES OF ACTUAL CONFUSION**

During discovery, CHG requested that VGT provide the following information:

> As to each incident known to you of a person having been confused, mistaken, or deceived as to the source of Plaintiff's or Defendant's products, identify each person involved, the dates and reasons for the confusion, the goods or services confused, and any notice received or record made of the confusion.

Interrogatory No. 12. In its response and supplemental response to this Interrogatory, VGT has alleged fourteen instances of "actual confusion" ("VGT Alleged Instances of Confusion"). *See* Pl.'s Sixth Suppl. Objs. & Resps. to Defs.' First Set of Interrogs. (Nos. 1-13), pp. 187-95, relevant portions of which are attached hereto as **Exhibit 1**. The alleged instances are as follows (in roughly chronological order):[1]

---

[1] The summaries of VGT's alleged instances of "actual confusion" are provided solely to identify to the Court the evidence subject to this Motion. CHG does not concede that any of the documents or testimony cited in VGT's discovery responses demonstrate that any consumers were actually confused, nor does CHG concede the meaning or authenticity of any cited documents.

1.      Sometime in 2015, Rich Schneider (Chief Product Officer for Aristocrat – VGT's parent company – and past Interim President at VGT) visited the Choctaw Casino in Durant, Oklahoma. While there, "Mr. Schneider saw CHG's games for the first time and thought the CHG games were VGT games."[2] *Id.* at 191.

2.      In 2015, William Harvey ("Product Owner at VGT") arrived late to the VGT booth at an annual Oklahoma tribal gaming trade show. Mr. Harvey indicated to other VGT employees that he mistakenly went to CHG's booth first, stating that "[t]heir games look just like ours." *Id.* at 188-89.

3.      On September 2, 2015, Jim Marcum (Sales Account Manager at VGT) sent several other VGT employees photographs of the CHG game New Money. Mr. Schneider initially replied to the group "Good stuff," but then, realizing his error, replied again "Looked at them on my phone…..I thought they were our games………." *Id.* at 191 (citing VGT0007569-73).

4.      In May 2016, on an online message board called Jokers Wild Forum, user "KimKyle" said that she hoped that the new Naskila Gaming Casino in Livingston, Texas would have "red screen machines." Another user, "Brandon," indicated that he thought he saw some VGT machines in a picture of the new casino. After KimKyle visited the new casino and played the machines she was "hoping" were "red screen machines" (but she could not tell and "forgot to look at the brand"), a third user, "Warren," commented to KimKyle and Brandon that the games in the picture were possibly CHG games as "VGT wasn't one of the manufacturers that I heard they have" in that casino. *Id.* at 189-90 (citing VGT0001673-87).

5.      Sometime "within the past two years," Craig Eubanks (Game Technician at VGT) mistakenly opened the door of an unidentified CHG game at the Choctaw Casino in Poteau,

---

[2] VGT has not offered and CHG has been unable to locate a produced document supporting this assertion.

2

Oklahoma, believing the game to be a VGT game in need of repair. Quickly realizing his mistake, he notified Laura Bailey (Casino Shift Manager at the Choctaw Casino in Poteau), who said "something to the effect they had made the same mistake." *Id.* at 187-88.

6. Shortly thereafter, Candace Williams (VGT Floor Technician for the Choctaw Casino in Pocola, Oklahoma) asked Mr. Eubanks to fix a game. When Mr. Eubanks notified Ms. Williams that the game at issue was actually a CHG game, Ms. Williams indicated that the game cabinet looked like a VGT cabinet, to which Mr. Eubanks agreed. *Id.* at 188.

7. Sometime in 2017, Connie Hollingsworth (a former VGT employee and the wife of a current VGT employee) mistakenly played an unidentified CHG game at One Fire Casino in Okmulgee, Oklahoma, thinking it was "in VGT's Crazy Bill series of games." Ms. Hollingworth's husband, VGT Director of Logistics Rob Hollingsworth, informed her the game was actually a CHG game. *Id.* at 194.

8. In Spring 2017 at the Choctaw Casino in Durant, Oklahoma, James Starr (Executive Vice President of Sales at VGT) told Mr. Marcum "something along the lines of 'those games look pretty good. I didn't know we had those,'" in reference to a bank of unidentified CHG games. *Id.* at 190.

9. On April 26, 2017 at the Choctaw Casino in Durant, Oklahoma, Tracer Hamilton (Senior Assistant General Manager at Lucky Star Casino) played New Money, a CHG game, thinking it was a new version of Mr. Money Bags, a VGT game. Mr. Hamilton contacted Paul Pope (Salesperson at VGT) and expressed interest in having the game installed at Lucky Star. Mr. Pope informed Mr. Hamilton that he believed Mr. Hamilton had played New Money, not a new version of Mr. Money Bags. *Id.* at 193 (citing VGT0007594-95).

10. Sometime in Spring or Summer 2017, "conducting regular investigation of his competitor's offerings," Mickey Ward (Senior Director of Corporate Gaming at Cherokee Nation

3

Entertainment) saw New Money, a CHG game, and thought it was a new version of Mr. Money Bags, a VGT game. Mr. Ward called Josh Akins (Senior Sales Account Manager at VGT) and asked why he had not been told about the New Money game. Mr. Akins informed him that New Money was a CHG game, not a VGT game. *Id.* at 192-93 (citing VGT0006767-79).

11. In a July 30, 2017 Facebook post, a Texas casino, Naskila Gaming, posted photos of players who had recently won jackpots on CHG games. A Facebook user commented "Looks like I need to come play some VGT." Another Facebook user replied "Castle Hill – CHG." *Id.* at 190 (citing VGT0001661-72).

12. In January 2018, Al Roireau (Chief Development Officer at CHG) emailed Rich Sisson (Artist at CHG) a list of CHG games and asked if any titles were missing. Mr. Sisson replied that Crazy Cherry was missing. Crazy Cherry is made by VGT. *Id.* at 195.

13. In March 2018 at the Choctaw Casino in Pocola, Oklahoma, Sheldon Watkins (Regional Manager of Field Services at VGT) asked Mr. Eubanks to fix what Mr. Watkins believed to be a broken VGT machine. When Mr. Eubanks reported that the game was actually a CHG game, Mr. Watkins and Steven Stanart (Technician at VGT) went to the machine and realized it was in fact a CHG game. *Id.* at 194-95.

14. At an unspecified date at an unspecified Choctaw casino, a man believed to be Robert Bearden (a customer) requested that Mr. Eubanks repair a malfunctioning VGT game, saying "something about the game being 'one of your new ones.'" Mr. Bearden purportedly knows that Mr. Eubanks is a VGT employee. *Id.* at 195

## II. ARGUMENT

### A. The Jokers Wild Forum and Naskila Gaming Facebook Postings Cannot Be Authenticated

VGT seeks to use two documents originating from the internet as evidence of "actual confusion": (1) an online message board conversation between eleven different unknown online users on the platform "Jokers Wild Forum," and (2) comments by two Facebook users on a Naskila Gaming Facebook post. *See* VGT Alleged Instances of Confusion Nos. 4, 11, *supra*.

VGT cannot authenticate these online postings. The authentication of any evidence is a condition precedent to its admissibility. Fed. R. Evid. 901(a). An evidentiary item can be authenticated through the production of "evidence sufficient to support a finding that the item is what the proponent claims it is." *Id.* However, VGT has not presented testimony from any of the users who purportedly posted on the Jokers Wild Forum or commented on the relevant Naskila Gaming Facebook post, nor has VGT produced any other evidence demonstrating that the Jokers Wild Forum and Facebook postings are what they purport to be.

Further, VGT cannot assert that the Jokers Wild Forum and Facebook postings are authenticated on the basis of their distinctive characteristics under Federal Rule of Evidence 901(b)(4). *See Clark v. Time Inc.*, 242 F. Supp. 3d 1194, 1205 (D. Kan. 2017), *appeal dismissed*, 727 F. App'x 975 (10th Cir. 2018) (precluding the plaintiff from offering internet comments into evidence because "[t]he court cannot discern from the appearance of [the exhibit] that it is, in fact, genuine comments posted on the internet"). Accordingly, VGT should be precluded from introducing the Jokers Wild Forum and Naskila Gaming Facebook postings into evidence.

### B. Confusion Among Non-Consumers is Irrelevant or *De Minimis* and Fails the Rule 403 Balancing Test

To be relevant, evidence of actual confusion "should demonstrate actual confusion among consumers in the marketplace." *Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 557 (10th Cir.

1998). Where evidence of actual confusion demonstrates confusion among non-consumers, courts have found such evidence to be *de minimis* or irrelevant. *See id.* (finding evidence of actual confusion among the plaintiff's "acquaintances" to be *de minimis*); *Klein-Becker USA, LLC v. Prod. Quest Mfg., Inc.*, 429 F. Supp. 2d 1248, 1253-54 (D. Utah 2005) (finding evidence of actual confusion among the plaintiff's employees to be irrelevant).

VGT should therefore be precluded from offering instances of "actual confusion" into evidence to the extent those instances are based on confusion among non-consumers. Of VGT's fourteen alleged instances of "actual confusion," eight involve confusion among two groups of non-consumers. Six of VGT's alleged instances involve confusion solely among VGT or CHG employees.[3] *See* VGT Alleged Instances of Confusion Nos. 1, 2, 3, 8, 12 & 13, *supra*. Two of VGT's alleged instances purportedly involve actual confusion among casino employees who lack purchasing power: (1) Laura Bailey, a Casino Shift Manager at the Choctaw Casino in Poteau, Oklahoma, and (2) Candace Williams, a Floor Technician at the Choctaw Casino in Pocola, Oklahoma.[4] *See* VGT Alleged Instances of Confusion Nos. 5 & 6, *supra*. These alleged instances do not demonstrate "actual confusion among consumers in the marketplace" and thus are irrelevant or, at best, *de minimis*, and are inadmissible.

The court should therefore exclude these instances of actual confusion as irrelevant. *See* Fed. R. Evid. 402. If the alleged instances of actual confusion among non-consumers are considered to be *de minimis* rather than irrelevant, the court should hold that the balancing test set forth in Rule 403

---

[3] Two more of VGT's alleged instances involve actual confusion among both a VGT employee and a casino employee lacking purchasing power. Thus, in total, eight of VGT's fourteen alleged instances of actual confusion at least partially involve confusion among VGT or CHG employees.

[4] As these job titles suggest, there is no indication that these individuals were responsible for contracting with VGT, CHG, or any other gaming company. As casino employees, they were also not actual *players* of the VGT games, whom VGT's survey expert claims to be the relevant consumer.

of the Federal Rules of Evidence weighs in favor of exclusion. The minimal probative value of *de minimis* instances of actual confusion among non-consumers is dwarfed by the dangers of unfair prejudice and the risk of confusion of the issues that such evidence creates. *See* Fed. R. Evid. 403. Evidence of actual confusion among non-consumers could, for example, cause the jury to believe that actual confusion among consumers must exist as well, which is an improper inference. It may also confuse jurors about the relevant inquiry. Because these instances are insufficient to establish actual confusion, VGT should be precluded from offering instances of "actual confusion" among non-consumers into evidence.

**C.     The "Actual Confusion" Evidence Among Consumers is *De Minimis* and Fails the Rule 403 Balancing Test**

VGT's evidence of "actual confusion" among consumers is similarly *de minimis*. Under the Lanham Act, a plaintiff has the burden of establishing "a substantial likelihood of confusion in the marketplace."[5] *Medi-Flex, Inc. v. Nice-Pak Prod., Inc.*, 422 F. Supp. 2d 1242, 1252 (D. Kan. 2006). Anecdotal evidence demonstrating that confusion has occasionally occurred is insufficient because at most it establishes a possibility of confusion, rather than a likelihood of confusion. *Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1150-511 (10th Cir. 2013). Accordingly, "isolated, anecdotal instances of actual confusion may be *de minimis* and may be disregarded in the confusion analysis." *Id.* at 1150; *see also* 4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:14 (5th ed.) ("Evidence of only a small number of instances of actual confusion can be dismissed as inconsequential or *de minimis*."). The Tenth Circuit has consistently recognized limited instances of actual confusion to be *de minimis*. *See, e.g., Water Pik, Inc.*, 726 F.3d at 1151 (finding four instances of actual confusion to be *de minimis*); *King of the Mountain Sports, Inc. v. Chrysler*

---

[5] Put another way, the Seventh Circuit requires that a "[p]laintiff must prove a likelihood of confusion among a significant number of people who buy or use, or consider buying or using, the product or similar products." 7th Cir. Civ. Jury Instr. 13.1.2.3 (2017) (**Exhibit 2**).

*Corp.*, 185 F.3d 1084, 1092–93 (10th Cir. 1999) (finding seven instances of actual confusion to be *de minimis*); *Universal Money Centers, Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1534–36 (10th Cir. 1994) (finding an affidavit from a customer stating that he was confused and two affidavits by the plaintiff's employees regarding a number of instances of customer confusion to be *de minimis*).

VGT has identified just six instances of actual confusion among (alleged) consumers.[6] *See* VGT Alleged Instances of Confusion Nos. 4, 7, 9, 10, 11 & 14, *supra*. As "isolated, anecdotal instances of actual confusion," these six instances indicate a mere possibility of confusion, and are therefore *de minimis*. *Water Pik, Inc.* 726 F.3d at 1150. The probative value of these anecdotal instances is also extremely weak. For example, with respect to the Jokers Wild Forum, the only individual who was theoretically "confused" was "Brandon," who had thought he saw VGT games in an on-line photo. Since we do not know the actual identity of "Brandon," there is no way to even discern whether he is an *actual* consumer of VGT's games. *See* Instance 7, *supra*. Similarly, Ms. Hollingsworth, a former VGT employee married to a current VGT employee, does not even identify the CHG game she mistakenly believed to be a VGT game (or even the type of cabinet the VGT game was in). *See* Instance 7, *supra*. Likewise, with respect to the incident at the unspecified Choctaw casino on an unspecified date that may or may not have involved customer Robert Bearden, there is no indication of *which* CHG game was allegedly confused with a VGT product. *See* Instance 14, *supra*.

The *de minimis* probative value of these instances is substantially outweighed by the risk of unfair prejudice and confusion among the trier of fact. *See* Fed. R. Evid. 403. As to the evidence from the Jokers Wild Forum and Naskila Gaming Facebook posts in particular, CHG would be substantially prejudiced in that it would have no opportunity to cross-examine the individuals who

---

[6] As set forth *supra*, eight of VGT's fourteen alleged instances of actual confusion involve only non-consumers.

purportedly made those online comments, since the identity of those individuals is unknown. As to the instances of actual confusion more generally, the jury may be prone to place undue and improper weight on these instances, particularly given their anecdotal and hearsay nature. In any event, introduction of these instances would also be a waste of time because of their minimal probative value. Accordingly, VGT should be precluded from introducing its alleged instances of actual confusion among consumers into evidence.

## III.     CONCLUSION

For the foregoing reasons, CHG respectfully requests that the Court enter an Order precluding VGT from introducing or referencing the foregoing evidence of "actual confusion" between VGT and CHG games.

Dated: October 12, 2018                     Respectfully submitted,

*/s/ Robert C. Gill*
Robert C. Gill (admitted *pro hac vice*)
Henry A. Platt (admitted *pro hac vice*)
Thomas S. Schaufelberger (admitted *pro hac vice*)
Matthew J. Antonelli (admitted *pro hac vice*)
Jeremy B. Darling (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
henry.platt@saul.com
tschauf@saul.com
matt.antonelli@saul.com
jeremy.darling@saul.com

Sherry H. Flax (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
500 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 332-8764
(410) 332-8785 (facsimile)

        sherry.flax@saul.com

        James C. Hodges, OBA #4254
        JAMES C. HODGES, P.C.
        2622 East 21st Street, Suite 4
        Tulsa, Oklahoma 74114
        (918) 779-7078
        (918) 770-9779 (facsimile)
        JHodges@HodgesLC.com

        *Counsel for Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 12th day of October, 2018, I caused a copy of the foregoing **DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF ALLEGED "ACTUAL CONFUSION"** to be filed via the Court's ECF system, which will provide electronic notification of filing to the following counsel for Plaintiff:

Graydon Dean Luthey, Jr.
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
(918) 595-4821
(918) 595-4990 (facsimile)
dluthey@gablelaw.com
*Counsel for Plaintiff*

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1221
(212) 841-1010 (facsimile)
nroman@cov.com
*Counsel for Plaintiff*

Gary M. Rubman
Peter Swanson
Michael Sawyer
Rebecca B. Dalton
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
(202) 778-5465 (facsimile)
grubman@cov.com
pswanson@cov.com
msawyer@cov.com
rdalton@cov.com
*Counsel for Plaintiff*

                                              */s/ Robert C. Gill*
                                              Robert C. Gill