**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1)  VIDEO GAMING TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>1)  CASTLE HILL STUDIOS LLC<br>(d/b/a CASTLE HILL GAMING);<br>2)  CASTLE HILL HOLDING LLC<br>(d/b/a CASTLE HILL GAMING); and<br>3)  IRONWORKS DEVELOPMENT, LLC<br>(d/b/a CASTLE HILL GAMING)<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. 4:17-cv-00454-GKF-jfj<br>)<br>)  **REDACTED**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S MOTION AND BRIEF IN SUPPORT TO EXCLUDE**
**THE TESTIMONY OF W. TODD SCHOETTELKOTTE IN PART**

## Table of Contents

I.  BACKGROUND ................................................................................................ 3

II.  LEGAL STANDARD ........................................................................................ 4

III.  ARGUMENT ..................................................................................................... 5

    A.  **Mr. Schoettelkotte's Opinions Based on Improperly Withheld CHG Financial Information Should Be Stricken.** ........................................... 5

        1.  VGT Diligently Sought CHG Financial Information For More Than a Year. ...................................................................................... 5

        2.  Schedule 11A of Mr. Schoettelkotte's Report Is Based on Improperly Withheld CHG Financial Information. ........................ 7

        3.  Mr. Schoettelkotte's Opinions Based on Schedule 11A Should Be Stricken. ........................................................................... 8

    B.  **Mr. Schoettelkotte's Opinions Based on Confidential Information Improperly Acquired from Former VGT Employees Should Be Stricken.** ......................................................................................... 10

    C.  **CHG Failed to Comply With The Protective Order Before Disclosing VGT Confidential Information to Mr. Schoettelkotte.** .......................... 14

    D.  **Mr. Schoettelkotte's Apportionment Opinion Is Unreliable and Does Not Satisfy The *Daubert* Standard.** ..................................................... 17

        1.  Mr. Schoettelkotte's Apportionment Range Is Based Entirely On A Single Document That Bears No Relationship To CHG. ....................... 18

        2.  Mr. Schoettelkotte's Methodology Fails to Tie The Numbers From ▮▮▮▮▮▮▮▮ to The Value to CHG of Using VGT's Intellectual Property. .................................................................. 19

        3.  Mr. Schoettelkotte's Methodology Relies on an Unsupported Assumption That The Categories of Assets In ▮▮▮▮▮▮ ▮▮▮ Align With VGT's Claims Against CHG. ................. 21

IV.  CONCLUSION ................................................................................................ 23

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION
SUBJECT TO PROTECTIVE ORDER**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allergan, Inc. v. Sandoz Inc.,*
  2011 WL 2563238 (E.D. Tex. June 28, 2011.)................................................................14, 15

*Attorney Gen. of Okla. v. Tyson Foods, Inc.,*
  565 F.3d 769 (10th Cir. 2009) .........................................................................................23

*Bales v. Green,*
  No. 16-CV-106-GKF-JFJ, 2018 WL 1633321 (N.D. Okla. Mar. 27, 2018) ...........................5

*Daubert v. Merrell Dow Pharms., Inc.,*
  509 U.S. 579 (1993).................................................................................................. *passim*

*Dodge v. Cotter Corp.,*
  328 F.3d 1212 (10th Cir. 2003) .......................................................................................22

*Foltz v. State Farm Mut. Auto Inc. Co.,*
  331 F.3d 1122 (9th Cir. 2003) .........................................................................................16

*Gen. Elec. Co. v. Joiner,*
  522 U.S. 136 (1997).........................................................................................................22

*Gen. Steel Domestic Sales, LLC v. Chumley,*
  627 Fed. Appx. 682 (10th Cir. 2015)..................................................................................3

*Goebel v. Denver and Rio Grande W. R.R. Co.,*
  215 F.3d 1083 (10th Cir. 2000) .......................................................................................23

*Kern River Gas Transmission Co. v. 6.17 Acres of Land,*
  156 Fed. Appx 96 (10th Cir. Dec. 2, 2005) ..................................................................10, 25

*Klein-Becker USA, LLC v. Englert,*
  711 F.3d 1153 (10th Cir. 2013) .........................................................................................3

*Norris v. Baxter Healthcare Corp.,*
  397 F.3d 878 (10th Cir. 2005) .........................................................................................20

*Roadway Express, Inc. v. Piper,*
  447 U.S. 752 (1980).........................................................................................................15

*SFF-TIR, LLC v. Stephenson,*
  250 F. Supp. 3d 856 (N.D. Okla. 2017) ..............................................................................5

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

*Skycam, Inc. v. Bennett*,
   2011 WL 2551188 (N.D. Okla. June 27, 2011)....................................................22

*Wilspec Techs., Inc. v. DunAn Holding Grp.*,
   204 P.3d 69 (Okla. 2009)..........................................................................................12

*Witherspoon v. Navajo Ref. Co.*,
   No. CIV. 03-1160BB/LAM, 2005 WL 5988649 (D.N.M. July 18, 2005) ........................20, 23

**Statutes**

15 U.S.C. § 1117(a) ...........................................................................................................3

**Other Authorities**

Federal Rule of Civil Procedure 26(a)(2)(B) ..................................................1, 3, 10, 24

Federal Rule of Civil Procecure 33(d) ...........................................................................6

Federal Rule of Civil Procedure 37(b)(2)(A) ................................................................15

Federal Rule of Evidence 702............................................................................................1, 5

Oklahoma Rules of Professional Conduct 4.2 ................................................................12

Oklahoma Rules of Professional Conduct 4.4(a).............................................................12

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

Plaintiff Video Gaming Technologies, Inc. ("VGT") moves to exclude portions of the opinions of Castle Hill Gaming's ("CHG") damages expert, Todd Schoettelkotte, pursuant to Federal Rule of Evidence 702, Federal Rule of Civil Procedure 26(a)(2)(B), *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and the Protective Order in this case for the following reasons:

- **Reliance on improperly withheld data relating to CHG's financial information:**  Several of Mr. Schoettelkotte's opinions are based on CHG financial data that CHG improperly withheld during fact discovery.  VGT moved to compel precisely the type of financial data on which Mr. Schoettelkotte relies, but agreed to cancel a hearing on the motion when CHG promised that it would not rely on CHG financial information that had not been produced.  *See* Dkt No. 114.  Because Mr. Schoettelkotte's report does precisely what CHG's counsel agreed not to do, each of his opinions that rely on previously withheld CHG financial information should be excluded.  This issue is discussed below in Section III.A.

- **Reliance on VGT confidential information improperly obtained from CHG employees:**  Certain of Mr. Schoettelkotte's opinions are based on VGT confidential information that Mr. Schoettelkotte obtained (with the assistance of CHG's counsel) from Alan Roireau, VGT's former head of software development who is now an officer at CHG.  Although Mr. Schoettelkotte may rely on information provided by former VGT employees through discovery, neither he nor CHG's counsel are allowed to obtain confidential VGT information from them outside discovery, which amounts to inducing former VGT employees to breach their confidentiality obligations to VGT (and arguably constitutes violations of ethical and other duties).  Mr. Schoettelkotte's opinions based on such improperly obtained VGT confidential information should be excluded.  This issue is discussed below in Section III.B.

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

- **Additional violation of Protective Order:** CHG disclosed VGT confidential information to Mr. Schoettelkotte in violation of Section 7 of the Protective Order, which requires CHG to disclose to VGT in advance any persons who may access VGT confidential information and allow VGT an opportunity to object. CHG provided no such disclosure. VGT first learned of Mr. Schoettelkotte when CHG served his rebuttal expert report on August 31, approximately one month after he started accessing VGT confidential information. Although CHG asserts that this admitted violation of the Protective Order was inadvertent, at least one other court has stricken an expert report in its entirety in similar circumstances. Here, VGT seeks more narrow relief, which is to strike only those portions of Mr. Schoettelkotte's report based on VGT's confidential information. This issue is discussed below in Section III.C.

- **Failure to meet the *Daubert* standard:** More broadly, Mr. Schoettelkotte's opinions regarding the portion of CHG's revenues attributable to CHG's use of VGT's intellectual property (███████ of CHG's profits) is not the result of reliable principles or methods. Even though his opinions relate to the value *to CHG* from using VGT's intellectual property, Mr. Schoettelkotte does not cite any CHG data or documents to support his opinions. Moreover, notwithstanding differences between the scope of VGT's trademark, trade dress, and trade secret claims, Mr. Schoettelkotte opines that the same range should apply to each type of intellectual property—*i.e.*, the percentage of CHG's revenue due to its infringement of VGT's trademarks is the same as the percentage due to its infringement of VGT's trade dress and misappropriation of VGT's trade secrets. Mr. Schoettelkotte provides no support for this opinion. This issue is discussed below in Section III.D.

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

## I.    BACKGROUND

VGT filed this lawsuit to seek redress for CHG's infringement of its trademarks and trade dress and misappropriation of its trade secrets and confidential business information.  The parties engaged in fact discovery relating to damages issues, including serving interrogatories and document requests relating to the revenue, costs, and profits for the CHG games at issue.

On August 10, VGT served an opening report from its damages expert, Melissa Bennis. In her report, Ms. Bennis offered opinions regarding the damages to which VGT is entitled for each of the trademark, trade dress and trade secret/confidential business information claims. With respect to the trademark and trade dress claims, consistent with the terms of the Lanham Act providing for disgorgement of ill-gotten profits, Ms. Bennis identified CHG's revenues from each accused game to calculate CHG's profits from those games.  Under the Lanham Act, the burden then shifts to CHG to prove any costs or deductions that should be made to these revenues.  *See* 15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.").[1]

With respect to the misappropriation of trade secrets and confidential business information claims, Ms. Bennis offered opinions regarding the amount CHG was unjustly enriched as a result of research and development costs it avoided by using VGT trade secrets and confidential business information.  As an alternative, she offered opinions regarding CHG's profits from games developed using misappropriated trade secrets and confidential business information.

---

[1] *See, e.g., Gen. Steel Domestic Sales, LLC v. Chumley,* 627 Fed. Appx. 682, 686–87 (10th Cir. 2015) (noting that burden shifting framework is routinely used in trademark infringement cases) (citing multiple cases); *Klein-Becker USA, LLC v. Englert,* 711 F.3d 1153, 1163 (10th Cir. 2013) (apply Lanham Act's burden-shifting approach to disgorgement of profits).

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

CHG did not serve any expert reports in the opening round, despite bearing the burden on cost deductions and apportionment.

On August 31, however, CHG served a rebuttal report from Mr. Schoettelkotte. *See* Ex. A.[2] This was the first time VGT learned of Mr. Schoettelkotte's role in the case. Most of Mr. Schoettelkotte opinions focused on three topics: (1) costs incurred by CHG that he believes should be deducted when determining profits for purposes of the trademark and trade dress claims (the "Deduction Opinions") (*see id.* ¶¶ 25-43); (2) adjustments that he believes should be made to the calculation of CHG's avoided research and development costs attributable to misappropriation of trade secrets and confidential information (the "Avoided R&D Opinions") (*see id.* ¶¶ 45-56); and (3) the portion of CHG's revenues attributable to CHG's use of VGT's trademarks, trade dress and trade secrets (the "Apportionment Opinions") (*see id.* ¶¶ 59-70).

VGT took Mr. Schoettelkotte's deposition on September 22. Attached as Exhibit B are excerpts from Mr. Schoettelkotte's deposition relevant to this motion.

## II.    LEGAL STANDARD

Under Federal Rule of Evidence 702, the proposed testimony of an expert witness is admissible only if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principle and methods to the facts of the case. *See Daubert*, 509 U.S. at 589-97. "The proponent of the expert's opinion testimony bears the burden of establishing that the expert is qualified, that the methodology he or she uses to support his or her opinions is reliable, and that his or her opinion fits the facts of the case and

---

[2] All citations to "Ex. __" are to the accompanying Declaration of Gary Rubman.

4

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION
SUBJECT TO PROTECTIVE ORDER**

thus will be helpful to the jury." *SFF-TIR, LLC v. Stephenson*, 250 F. Supp. 3d 856, 1001 (N.D.

Okla. 2017).

In addition, the Federal Rules require parties to disclose any witness who may be

introduced at trial, as well as a written report containing "a complete statement of all opinions

the witness will express and the basis and reasons for them [and] the facts or data considered by

the witness in forming them." *Bales v. Green*, No. 16-CV-106-GKF-JFJ, 2018 WL 1633321, at

*2 (N.D. Okla. Mar. 27, 2018).

## III.    ARGUMENT

### A.    Mr. Schoettelkotte's Opinions Based on Improperly Withheld CHG Financial Information Should Be Stricken.

#### 1.    VGT Diligently Sought CHG Financial Information For More Than a Year.

Since the earliest stages of discovery, VGT has requested financial information from

CHG relevant to the damages issues in this case, including information about the revenue, costs,

and profits attributable to CHG's accused games.  More than one year ago—on September 25,

2017—VGT requested documents sufficient to show "the gross and net profits realized by CHG,

directly or indirectly, for each of the [accused games]." Ex. C at Request No. 40; *see also id*. at

Request No. 39 (documents sufficient to show revenues of accused games).  In responses served

on November 22, CHG initially refused to produce any responsive documents.  Ex. D at 14-15.

More than two months later (on January 29), CHG served amended responses in which it agreed

to search for and produce responsive documents.  Ex. E at 17-18.

When CHG failed to produce its financial information, a lengthy meet and confer process

ensued.  *See, e.g.,* Ex. F (email chain between VGT and CHG counsel).  On May 25, after it

became clear that CHG would not be producing the information in response to VGT's document

requests, VGT served Interrogatory No. 23, which requested, *inter alia*, revenue, "all direct,

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

indirect, variable, fixed and overhead costs," and "all gross, operative, pre-tax and net profits realized by CHG" for the accused games. *See* Ex. G. In its response, relying on Fed. R. Civ. P. 33(d), CHG identified previously produced documents that contain portions of the information requested in Interrogatory No. 23 and stated that it would be producing additional responsive documents. *See* Ex. H.

When CHG again failed to produce the detailed financial information VGT had requested, another meet and confer process ensued. *See* Ex. I (email chain between VGT and CHG counsel). Although CHG ultimately agreed to provide updated information before a deposition on financial topics scheduled to take place July 12, *see id.* at 1, CHG did not do so. After further efforts failed, on July 30 VGT moved to compel CHG to respond to several discovery requests, including Interrogatory No. 23. *See* Dkt. No. 105. As VGT explained in that motion, "[t]o the extent Interrogatory No. 23 covers any financial information on which Defendants may rely, it must be produced now." *Id.* at 5.

The next day, CHG served four documents containing additional financial information and a supplemental response to Interrogatory No. 23 in which it added Bates numbers for those four documents. CHG then informed the Court that VGT's motion to compel with respect to Interrogatory No. 23 was "moot" in light of the recently produced documents. Dkt. No. 110 at 5-6.

The Court scheduled a hearing on VGT's motion to compel for September 2. Before that hearing, VGT offered to cancel the hearing if CHG confirmed that its recent document production and supplemental response "reflect all responsive information that Defendants have and that Defendants will not be relying on any information that is responsive to [VGT's requests] that Defendants have withheld." Ex. J, Email from G. Rubman to CHG counsel (Aug. 2, 2018).

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

After CHG's counsel confirmed that CHG was not withholding responsive information, *id.* (Email from B. Gill to G. Rubman), VGT informed the Court that the hearing could be cancelled. *See* Dkt. No. 114 ("Based on VGT's understanding that Defendants have provided the confirmation VGT requested, VGT believes the hearing scheduled for this afternoon on the motion to compel can be cancelled.").

CHG did not inform VGT or the Court that it was continuing to withhold responsive financial data on which it intended to rely.

      2.    <u>Schedule 11A of Mr. Schoettelkotte's Report Is Based on Improperly Withheld CHG Financial Information.</u>

Less than one month after VGT agreed to cancel the motion to compel hearing, VGT was surprised when CHG served a rebuttal report from Mr. Schoettelkotte that relies on CHG financial information responsive to Interrogatory No. 23 that was not previously produced.[3]  Mr. Schoettelkotte's Deduction Opinions relied on interrelated schedules appended to his report, including Schedule 11A, titled ████████████████████████████████ ████████████████ Ex. K (Schedule 11A from Schoettelkotte's report).  Schedule 11A contains ████████████████████████████████████████████████████ ██████████████████████████████████████████ *Id.*

Unlike many other schedules in his report, Mr. Schoettelkotte did not identify any Bates numbers in Schedule 11A.  Rather, he identifies the source as simply ████████████ *Id.*[4] Mr. Schoettelkotte testified at his deposition that he ██████████████████████

---

[3] VGT also was surprised given that CHG had never previously disclosed Mr. Schoettelkotte, as required by the Protective Order.  *See infra* Section II.C.

[4] Mr. Schoettelkotte acknowledges in his report that he "reviewed and considered documents and data that CHG has produced, *or that will be produced as part of this report…*" Ex. A, Rpt. ¶ 8 (emphasis added).

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

███████████████████████████████████████████.  *See* Ex. B, Dep. Tr. 250:16-24.  ████████████████████████████, *id.* at 251:4-14, but believes it █████████████████████████████  *Id.* at 251:15-252:2.  CHG's counsel then jumped in:  ████████████████████████████████████ ███████████  *Id.* at 252:3-4.

Following the deposition, VGT sent emails seeking confirmation that the financial information in Schedule 11A was not previously produced.  *See* Ex. L (Email chain between G. Rubman and B. Gill).  On October 2, CHG finally admitted that it was not.  *See* Ex. M, Email from B. Gill to G. Rubman (Oct. 2, 2018).  In an apparent attempt to justify CHG's conduct, counsel asserted that the "document did not exist during the discovery period."  *Id.*  CHG's counsel made this statement even though Schedule 11A ███████████████████████ ████████████████.  *See* Ex. K (Schedule 11 A).  Indeed ████████████████ █████████████████████ the August 3, 2018 close of fact discovery.  *See id.*

The financial information contained in Schedule 11A is precisely the type of information VGT requested in Interrogatory No. 23, among other requests, *see* Ex. G (requesting information about "all direct, indirect, fixed and overhead costs" associated with CHG's accused games), and at issue in VGT's motion to compel.

       3.     <u>Mr. Schoettelkotte's Opinions Based on Schedule 11A Should Be Stricken.</u>

There are at least three reasons why the Court should strike Schedule 11A and all opinions that depend on the information in Schedule 11A.[5]

---

[5] In addition to Schedule 11A itself, VGT believes this includes Schedules 3, 3.1, 3B, 3C, 3C.1, 3D, 3D.1, 4, 4.1, 4B, 4C, 4C.1, 5, 5.1, 5B, 5C, 5C.1, 5D, 5D.1, 6, 6.1, 6B, 7, 7.1, 7C, 7D, and 9, as well as any opinions of Mr. Schoettelkotte that rely on those schedules.

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION
SUBJECT TO PROTECTIVE ORDER**

First, VGT went to great lengths to get this type of CHG financial information during fact discovery—including moving to compel—but CHG repeatedly dragged its feet and ultimately represented that it had produced all such information on which it would be relying. *See* Ex. J, B. Gill email to G. Rubman (Aug. 2, 2018); Dkt. No. 114.  As noted, CHG even represented to the Court that VGT's motion to compel a further response to Interrogatory No. 23 was "moot" in light of its recently produced documents and supplemental response. *See* Dkt. No. 110 at 5-6. Having made these assurances, on which VGT relied in withdrawing the motion to compel, CHG should not be permitted to provide its expert the very materials and information at issue in that motion.

Second, by withholding the financial information until nearly a month after the close of fact discovery, CHG prejudiced VGT's ability to take discovery relating to that information. VGT was not able to inquire as to, among other things, where it came from, how it was collected, and what was included or excluded. ██████████████████████████████████████ ███████████████████████████████████████████████ VGT was never allowed such an opportunity because it had taken his deposition before it was aware of this information. *See, e.g.*, Ex. A, Rpt. ¶¶ 42, 44 ████████████████████████████████████ ██████████████████████████████████████.

Third, neither CHG nor Mr. Schoettelkotte produced the underlying data that was used as the source of the information in Schedule 11A, contrary to Federal Rule of Civil Procedure 26(a)(2)(B), which requires expert reports to "contain a complete statement of all opinions to be expressed and the basis and reasons therefor" as well as "the data or other information

9

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

considered by the witness in forming the opinions."[6]  "Rule 26(a)(2)'s requirements are

mandatory and self-executing.  [A] party that without substantial justification fails to disclose

information required by Rule 26(a) is not, unless such failure is harmless, permitted to use as

evidence at trial . . . any witness or information not so disclosed."  *Kern River Gas Transmission*

*Co. v. 6.17 Acres of Land*, 156 Fed. Appx 96, 102 (10th Cir. Dec. 2, 2005) (internal citation and

punctuation omitted).  Without access to the data underlying Schedule 11A—and the other

interrelated schedules that depend on Schedule 11A—VGT is unable to test the calculations

underlying many of Mr. Schoettelkotte's Deduction Opinions.

Because CHG had no legitimate basis for withholding from VGT the information

contained in Schedule 11A, all of Mr. Schoettelkotte's opinions that depend on Schedule 11A

should be stricken.  *See supra* at fn. 5.

    **B.**    **Mr. Schoettelkotte's Opinions Based on Confidential Information Improperly Acquired from Former VGT Employees Should Be Stricken.**

Portions of Mr. Schoettelkotte's Avoided R&D Opinions should be stricken on the basis

that Mr. Schoettelkotte relied on confidential VGT information that he and CHG's counsel

improperly obtained from a former VGT employee.  In at least paragraphs 54 and 55 of his

report, Mr. Schoettelkotte relies on discussions he had with ██████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████.  *See* Ex. A, Rpt.

¶¶ 54-55.  Although Mr. Schoettelkotte may rely on information about VGT's development

---

[6] This information is not the only underlying data that Mr. Schoettelkotte failed to produce.  He also withheld ████████████████████████████████████.  *See* Ex. B, Dep. Tr. 288:10-294:8 (████████████████████████████ ██████████████████████████████████████).

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

efforts that ███████ provided during discovery, it was improper for Mr. Schoettelkotte (and

CHG's lawyers) to obtain confidential VGT information directly from ███████ outside of

that process.[7]

███████ continues to ███████████████████. *See* Ex. N at III(i)

███████████████████. When asked at his deposition ███████

█████████████████████████████████

███████████████ Ex. O, Roireau Dep. Tr. 66:16-21. CHG's counsel was

present at that deposition and Mr. Schoettelkotte █████████████████

███████████. *See* Ex. A, Rpt. at Schedule 2 (███████████████

█████████████████).

During the weeks before filing his report in August, Mr. Schoettelkotte had ███████

███████████████████████

███████. *See* Ex. B, Dep. Tr. 22:12-23:11. ███████████████

██████████████████████████

██████████████████████████

██████████████████████████

██████████████████████████

██████████████████████████

██████████████████████████

██████████████████████████

---

[7] ███████████████████████████████

███████████████████████████████

███████████████████

11

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION
SUBJECT TO PROTECTIVE ORDER**

Under Oklahoma law, it is unlawful for a person to intentionally interfere with contractual or business relationships. *See Wilspec Techs., Inc. v. DunAn Holding Grp.*, 204 P.3d 69, 74 (Okla. 2009) (establishing elements of intentional interference claim). Moreover, the Oklahoma Rules of Professional Conduct prohibit counsel from using methods of obtaining evidence that violate the legal rights of a third party, such as VGT. *See* Okla. R. Prof. Cond. 4.4(a) ("In representing a client, a lawyer shall not … use methods of obtaining evidence that violate the legal rights of a [third party]."); *see also* Okla. R. Prof. Cond. 4.2 at comment #7 ("In communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization.") (citing Rule 4.4).[8]

Here, however, Mr. Schoettelkotte and CHG's counsel knowingly obtained confidential VGT information from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮.

During fact discovery, CHG had opportunities to ask Mr. Roireau about knowledge he may have regarding VGT's development of its Class II bingo engine. Three CHG lawyers attended his May 15 deposition when VGT questioned him on these issues, but although a CHG lawyer asked Mr. Roireau questions after VGT completed its questioning, none of the questions

---

[8] The Protective Order in this case confirms that it is not intended to "relieve, change or otherwise affect any obligations or limitations imposed on any person by contract or law regarding the disclosure or use of trade secrets or other confidential or proprietary information." Dkt. No. 55 at 4(b)(iii).

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

related to VGT's development of its bingo engine. When Mr. Roireau was deposed a second

time on August 1, the same three CHG attorneys attended, but none asked him questions on these

or any other topics. Instead of using these opportunities to question Mr. Roireau about VGT

confidential information, CHG waited until later in August when VGT's counsel was not present

and fact discovery had closed.

Similar issues arose in connection with discussions between CHG's counsel and other

former VGT employees now at CHG. Testimony of CHG employees suggests that CHG's

counsel have communicated with them about their knowledge of VGT confidential information.

For example, during the deposition of Paul Suggs (a former VGT employee), CHG's counsel

appeared to acknowledge ███████████████████████████████████████

███████████



Ex. P, Suggs Dep. Tr. 255:14-20. CHG's counsel even refused to allow ███████████████

████████████████████████████████████████████████████████████

███████. *See id.* at 255:14-20; Ex. Q, Sprinkle Dep. Tr. 100:9-101:6; Ex. R, Booker Dep. Tr.

259:22-272:6.

Because Mr. Schoettelkotte relies in paragraphs 54 and 55 of his report on VGT

confidential information obtained improperly from a former VGT employee outside of

discovery, those paragraphs should be stricken. *See* Ex. B, Dep. Tr. 32:8-35:3 (███████████

█████████████████████████████████); *id.* at 35:4-36:18 (█████████████

██████████████████████████████████).

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION
SUBJECT TO PROTECTIVE ORDER**

**C.    CHG Failed to Comply With The Protective Order Before Disclosing VGT
Confidential Information to Mr. Schoettelkotte.**

Portions of Mr. Schoettelkotte's opinions also should be excluded because CHG failed to

comply with the Protective Order's requirements that outside experts be disclosed to VGT before

receiving VGT confidential information. *See* Dkt. No. 55 at ¶ 7 (requiring disclosure of

information about expert and providing an opportunity to object).  VGT first learned of Mr.

Schoettelkotte's involvement in this case on August 31 when it received his expert report.

Although Mr. Schoettelkotte's report discusses VGT confidential information,[9] it is undisputed

that CHG did not previously disclose him to VGT, as the Protective Order requires.

CHG's counsel does not dispute that they violated the Protective Order, but rather call it

an "inadvertent" error. *See* Ex. S, Email from B. Gill to G. Rubman (Sept. 2, 2018).  CHG

retained Mr. Schoettelkotte at least five months before his disclosure to VGT. *See id.* (attaching

protective order certification signed and dated April 5).[10]  *See id.*  CHG's counsel represented

that they first provided confidential information to Mr. Schoettelkotte on August 7, which is 24

days before his disclosure to VGT.  *Id.*, Emil from B. Gill to G. Rubman (Sept. 11, 2018).

At least one other district court has stricken an expert report in a case involving an

"inadvertent oversight" with respect to disclosure of an expert.  In *Allergan, Inc. v. Sandoz Inc.*,

the U.S. District Court for the Eastern District of Texas addressed a similar protective order

violation when Sandoz failed to disclose an expert before serving his report.  2011 WL 2563238,

---

[9] In addition to discussing VGT confidential information in his report, the list of materials that
Mr. Schoettelkotte reviewed includes VGT documents, deposition transcripts of VGT
employees, VGT discovery responses and the opening expert reports of two VGT experts, all of
which contain VGT confidential information. *See* Ex. A at Schedule 2.

[10] Mr. Shoettelkotte testified that, ███████████████████████████████████████████████████
███████████████████████████         Ex. B, Dep. Tr. 24:12-25:6.

14

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

at *1 (E.D. Tex. June 28, 2011). Sandoz properly disclosed each of its other experts (as CHG has done here), but failed to disclose one expert "through an inadvertent oversight." *Id.*

Emphasizing the importance of deterring similar conduct in the future, the court concluded that Sandoz's protective order violation constituted a discovery abuse and struck the expert report as a sanction.[11] *Id.* at *2-3.

For many of the same reasons discussed in *Allergan*, the portions of Mr. Schoettelkotte's report based on VGT confidential information should be stricken.[12]

First, as in *Allergan*, CHG was "well aware of the process and the importance of compliance with the [Protective] Order, and disclosed [] other experts under the Protective Order." *Id.* at *2. CHG had no legitimate reason to violate the Protective Order with respect to Mr. Schoettelkotte. As the *Allergan* court noted, "condoning Defendants' 'inadvertent oversight' would undermine the Court's integrity and ability to enforce its own rules." *Id.* at *2.

Second, as in *Allergan*, the portions of Mr. Schoettelkotte's report that VGT seeks to strike are "not absolutely critical for Defendant's case." *Id.* Granting the relief VGT seeks will have no effect on Mr. Schoettelkotte's Deductions Opinions or Avoided R&D Opinions, which

---

[11] As the court in *Allergan* noted, the Court has inherent powers to award sanctions, and Federal Rule of Civil Procedure 37 authorizes district courts to impose sanctions for failure to comply with discovery orders, such as protective orders. *See Allergan*, 2011 WL 2563238, at *1-2. The remedies for failure to comply with an order include "directing that . . . designated facts be taken as established for purposes of the action," "prohibiting the disobedient party from … introducing designated matters in evidence," and "dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A); *see Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763 (1980) ("Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'").

[12] Although the court in *Allergan* struck the entire expert report, here VGT seeks to strike only those portions based on VGT's confidential information. VGT submits that the requested remedy is narrowly tailored to address CHG's violation, as Mr. Schoettelkotte was allowed to view CHG's confidential information before being disclosed.

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

are based almost entirely on CHG or public information.[13]  With respect to Mr. Schoettelkotte's

Apportionment Opinions, granting the relief will not affect the primary basis for his opinion

███████████████████████████████████████████████, but it will prevent

him from relying on confidential documents from VGT that Mr. Schoettelkotte appears to be

using to corroborate the opinions he formed ███████████████████████.  *See* Ex. A,

Rpt. ¶¶ 61-68 (███████████████████████████).

Third, VGT was prejudiced by CHG's failure to disclose Mr. Schoettelkotte.  This case

involves valuable trade secrets.  VGT, like any other party to litigation, should be allowed to rely

on the Protective Orders to safeguard its information, including by being given advance notice of

any persons seeking access to its confidential information.  *See, e.g., Foltz v. State Farm Mut.*

*Auto Inc. Co.*, 331 F.3d 1122, 1137 (9th Cir. 2003) ("Among the goals furthered by protective

orders is reducing conflict over discovery and facilitating the flow of information through

discovery.  Where that has happened, changing the ground rules later is to be avoided because

protective orders that cannot be relied upon will not foster cooperation through discovery.")

(quoting Wright, Miller & Marcus § 2044.1).  Moreover, by keeping Mr. Schoettelkotte's role in

the case a secret for so many months, CHG deprived VGT of time to research Mr.

Schoettelkotte's qualifications and prior opinions.  Indeed, before receiving Mr. Schottelkotte's

report, VGT had assumed that CHG had chosen not to use a damages expert.

Fourth, and finally, CHG should not be permitted to identify a new damages expert if it

seeks to do so.  Expert discovery has been completed and trial is only a few months away.  The

---

[13] Aspects of the Avoided R&D Opinions are the subject of a separate argument to strike.  *See*
Section II.B.

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

appropriate remedy for CHG's protective order violation is to strike those portions of Mr.

Schoettelkotte's report based on VGT confidential information.[14]

> **D.      Mr. Schoettelkotte's Apportionment Opinion Is Unreliable and Does Not Satisfy The *Daubert* Standard.**

Mr. Schoettelkotte's Apportionment Opinion—which is intended to approximate the

portion of CHG's revenues from the accused games attributable to CHG's use of VGT's

trademarks, trade dress and trade secrets, as opposed to other factors—is based on unreliable

principles and methodologies that do not pass muster under *Daubert*.

Even though the purpose of a typical apportionment analysis is to determine the value *to*

*the accused infringer* (here, CHG) from using the intellectual property, ███████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████. Indeed, in

discussing his Apportionment Opinion, Mr. Schoettelkotte ████████████████████

███████████████████████████████████████████████████████████████████

███████████████████. By forming his Apportionment Opinion in a vacuum—without

discussing the unique circumstances relating to the accused infringer (CHG)—Mr. Schoettelkotte

apparently would have reached the same opinions regardless of the identity or circumstances of

the accused infringer, which plainly cannot be the case.

Moreover, although he acknowledges that ████████████████████████████

████████████████████, *see* Ex. A, Rpt. ¶¶ 20, 23, 24, Mr. Schoettelkotte

opines that ████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

---

[14] The paragraphs that refer to VGT confidential information include paragraphs 54-56 and 61-68.

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ Mr. Schoettelkotte

has identified no support for a methodology that results in such a scattershot apportionment

range.

Mr. Schoettelkote's Apportionment Opinions bear no indicia of reliability and should be

excluded in their entirety.

1.      Mr. Schoettelkotte's Apportionment Range Is Based Entirely On ███████
████████████████████████████████████████ -

The basis for Mr. Schoettelkotte's proposed range of ██████████ is set forth in

paragraphs 69 and 70 (and Schedule 12) of his report where he discusses what he calls a

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████ [15]

_____

[15] ███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

CONTAINS HIGHLY CONFIDENTIAL INFORMATION
SUBJECT TO PROTECTIVE ORDER

2.    Mr. Schoettelkotte's Methodology Fails to Tie The Numbers From ███████████████████████████████████████████████
███████████████████████

Mr. Schoettelkotte's Apportionment Opinion is based on a leap of faith: an unexplained

assumption that the numbers he derived from ████████████████████████████████
████████████████████████████████████████████████████████████████████████

are somehow indicative of the value *to CHG* from using VGT's intellectual property in

connection with CHG's products. But regardless of the purpose of ████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████. *See* Ex. B, Dep. Tr. 116:5-14 (████████████████████████████████

█████████████████████).

Of course, as a new company trying to establish a presence in the market, ████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████ CHG knew that it needed to make its

games look similar to VGT's. The following examples are illustrative of ████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████:

- ████████████████████████████████████████████████████████████████████
████████████████████

────────────────────

████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**



Despite purporting to conduct an analysis intended to show the value to CHG from using VGT's intellectual property, Mr. Schoettelkotte did not acknowledge any of this evidence. *See, e.g., Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 886 (10th Cir. 2005) (affirming finding that experts' methodology unreliable on basis that they ignored contrary evidence); *Witherspoon v. Navajo Ref. Co.*, No. CIV. 03-1160BB/LAM, 2005 WL 5988649, at *3 (D.N.M. July 18, 2005) (granting *Daubert* for several reasons, including because expert failed to account for contrary evidence).

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

3.    Mr. Schoettelkotte's Methodology Relies on an Unsupported Assumption That ███████████████████████████████████████████████

Even if Mr. Schoettelkotte could justify his sole reliance on the ████████████ ███████████████████, he has failed to support his methodology as being reliable.  Among other things, he incorrectly assumes that the ████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

███████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████

███████████████████████████

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

Finally, the unreliable nature of Mr. Schoettelkotte's methodology becomes even more apparent when it is applied to ██████████████████████████. As noted, Mr. Schoettelkotte appears to believe that ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

Of course, none of these conclusions make sense. Mr. Schoettelkotte's attempt to combine concepts ██████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████.

"An expert's testimony may be excluded where it is based on subjective beliefs or unsupported speculation which is no more than *ipse dixit* guesswork." *Skycam, Inc. v. Bennett*, 2011 WL 2551188, at *3 (N.D. Okla. June 27, 2011); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) ("Generally, the district court should focus on an expert's methodology rather than the

conclusions it generates."); *see also Witherspoon*, 2005 WL 5988649, at *3 ("[A] court should determine whether the witness's conclusion represents an unfounded extrapolation from the data.").

Where, as here, an expert's method is novel or employed in a new way, "a district court may require further indications of reliability." *Attorney Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 780 (10th Cir. 2009). Mr. Schoettelkotte has provided no such indications of reliability and, as discussed above, there is strong evidence to the contrary. Having provided no support for his assumptions, Mr. Schoettelkotte is asking the factfinder to simply accept his speculation at face value. This is not good enough. *See Goebel v. Denver and Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000) ("It is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate."). Mr. Schoettelkotte's Apportionment Opinions should be excluded in their entirety.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Exclude the Testimony of W. Todd Schoettelkotte in Part should be granted.

October 12, 2018                          Respectfully submitted,

*/s/ Gary M. Rubman*
Graydon Dean Luthey, Jr., OBA No. 5568
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
Telephone: (918) 595-4821
Facsimile: (918) 595-4990
dluthey@gablelaw.com

Gary M. Rubman
Peter A. Swanson
Michael S. Sawyer
Rebecca B. Dalton
COVINGTON & BURLING LLP

23

CONTAINS HIGHLY CONFIDENTIAL INFORMATION
SUBJECT TO PROTECTIVE ORDER

One CityCenter
850 Tenth Street, NW
Washington, D.C.  20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 778-5465
grubman@cov.com
pswanson@cov.com
msawyer@cov.com
rdalton@cov.com
   (admitted pro hac vice)

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1221
Facsimile: (212) 841-1010
nroman@cov.com
   (admitted pro hac vice)

***Counsel for Video Gaming Technologies, Inc.***

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2018, I caused an unredacted copy of the foregoing

Plaintiff's Motion to Exclude the Testimony of W. Todd Schoettelkotte in Part to be served on

the following counsel for Defendants, who have consented to email service, via email:

Robert C. Gill
Thomas S. Schaufelberger
Matthew J. Antonelli
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
tschauf@saul.com
matt.antonelli@saul.com

Sherry H. Flax
SAUL EWING ARNSTEIN & LEHR, LLP
500 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 332-8764
(410) 332-8785 (facsimile)
sherry.flax@saul.com

James C. Hodges, OBA 4254
JAMES C. HODGES, PC
2622 East 21st Street, Suite 4
Tulsa, OK 74114
Telephone: (918) 779-7078
JHodges@HodgesLC.Com

Duane H. Zobrist
Jonathan S. Jacobs
ZOBRIST LAW GROUP PLLC
1900 Arlington Blvd. Suite B
Charlottesville, VA 22903
Telephone: (434) 658-6400
dzobrist@zoblaw.com
jjacobs@zoblaw.com

*Attorneys for Defendants*

*/s/ Gary M. Rubman*

25