## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

VIDEO GAMING TECHNOLOGIES, INC.,

               Plaintiff,

      vs.

CASTLE HILL STUDIOS LLC, *et al.*

              Defendants.

CASE NO. 17-CV-00454-GKF-JFJ

**PUBLIC – REDACTED VERSION**

## DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF DOCUMENTS AND MATERIALS ALLEGEDLY TAKEN BY FORMER VGT EMPLOYEES

Defendants, Castle Hill Studios LLC, Castle Hill Holdings LLC, and Ironworks Development LLC (collectively, "CHG" or "Defendants"), move *in limine* for an Order precluding Plaintiff Video Gaming Technologies, Inc. ("VGT") from arguing or introducing certain evidence of documents and materials that were allegedly taken or retained by former VGT employees after the termination of their employment with VGT.

## I.     INTRODUCTION

In its discovery responses, VGT has alleged seven instances in which a former VGT employee took or retained documents or materials upon leaving VGT (the "Alleged Takings"). *See* Plaintiff's Sixth Supplemental Objections and Responses to Defendant Castle Hill Studio LLC's First Set of Interrogatories (Nos. 1-13) (**Exhibit A**), pp. 142, 150-52. Those instances are as follows:[1]

---

[1] The summaries of the Alleged Takings are provided solely to identify to the Court the evidence subject to this Motion. As stated in CHG's discovery responses, because it does not have personal knowledge of any of the documents or materials involved in the Alleged Takings, CHG is without information or knowledge sufficient to admit or deny whether the documents or materials

1. Aaron Milligan testified in his deposition that, while an employee of VGT, he copied certain examples of artwork that he had created to a personal hard drive in order to maintain a portfolio of his work.  Mr. Milligan further testified that he never told CHG or any CHG employee about the existence of this hard drive and never submitted any of the hard drive's files to CHG or any CHG employee.  The hard drive is no longer functional.  Milligan Dep. at 65:13-72:6 (**Exhibit C**).

2. Paul Suggs testified in his deposition that █████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
█████████████████ Suggs Dep. at 10:2-11:17, 44:9-47:16 (**Exhibit D**).

3. Rich Sisson testified in his deposition that, █████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
█████████████████████████████████████████ Sisson Dep. at 250:2-251:14, 289:9-290:13, 303:14-305:11 (**Exhibit E**).

4. In an online chat with Seth Morgan, Brandon Booker wrote that ████████████████
█████████████████████████████████████ Pl. Exh. 404 (CHG0124577-81) (**Exhibit F**).  Mr. Booker testified in his deposition ██████████████████████

___

were taken or retained when the former VGT employees left VGT.  *See* Defs.' Second Am. Resps. to Pl.'s First Set of Reqs. for Admis. (**Exhibit B**) at pp. 2-12.

███████████████████████████████████████████

█████████. Booker Dep. at 207:8-208:17 (**Exhibit G**).

5.   In online chats with Mr. Booker and Bryan Cody, Seth Morgan indicated ███████

██████████████████████████████████. Pl. Dep. Exh. 461

(CHG0126328-29) (**Exhibit H**); Pl. Exh. 464 (CHG0124581-82) (**Exhibit I**).  Mr. Morgan

testified in his deposition that, ████████████████████████████

████████████████████████████████████████████

████████████.  Mr. Morgan further testified ██████████████████

████████████████████████████████████████████

█████████████.  Finally, Mr. Morgan testified that ███████████████

████████████████████████████.  Morgan Dep. at 37:12-

40:1, 44:20-50:1, 85:1-89:13 (**Exhibit J**).  There is no evidence that CHG knew that Mr.

Morgan had taken the ███████ when he left VGT, and there is no evidence that he ever

used it at CHG. ██████████████████████████████████

█████████████. *Id.* at 46:1-17.

6.   In an online chat with Mr. Roireau, Jason Sprinkle indicated ████████████

█████████████████. Pl. Exh. 304 (CHG0044794) (**Exhibit K**).   Mr. Sprinkle

testified in his deposition ███████████████████████████████████

████████████████████████. Sprinkle Dep. I at 299:8:-301:25

(**Exhibit L**).

7.   In an email to various CHG employees, Mr. Sprinkle attached █████████████

████████████████████████████████████████████

Pl. Exh. 430 (CHG0019196-97) (**Exhibit M**).  Mr. Sprinkle testified in his deposition ███████

████████████████████ Sprinkle Dep. II at 462:5-263:18: (**Exhibit N**).

## II. ARGUMENT

### A. The Alleged Takings are Irrelevant or of Minimal Probative Value Because CHG Never Acquired or Had Knowledge of the Materials

Under the Oklahoma Uniform Trade Secrets Act ("OUTSA"), misappropriation of a trade secret requires either (1) "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;" or (2) "disclosure or use of a trade secret of another without express or implied consent" by a person with knowledge of the trade secret. OKLA. STAT. ANN. tit. 78, § 86(2). Therefore, for misappropriation to have occurred, the misappropriating party must have acquired or otherwise had knowledge of the trade secret. *See id.*

An employer does not acquire or have knowledge of a trade secret merely because an employee acquires or has knowledge of a trade secret. Rather, "it is generally not appropriate to . . . impute an agent's knowledge of a trade secret to the principal," as this would "permit recovery even when the trade secret was not actually communicated to or used by the principal." *Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 792–93 (9th Cir. 1976); *see also Ciena Comms., Inc. v. Nachazel*, No. 09-CV-02845-MSK-MJW, 2010 WL 3489915, at *1, 4 (D. Colo. Aug. 31, 2010). For example, where prior to resigning an employee of the plaintiff company secretly duplicated a hard drive containing the plaintiff's trade secrets and the employee's new employer was unaware of this action, the court held that the employee's trade secret misappropriation could not be imputed to the new employer. *See Ciena Comms., Inc.*, 2010 WL 3489915, at *1, 4.

CHG never knew about or acquired any of the materials involved in the Alleged Takings – all of which obviously occurred while the individuals were still *VGT* employees *before* they became employees (or agents) of CHG. Rather, the materials were never shared with CHG. Mr. Milligan testified that he never informed CHG of the existence of the materials he retained nor shared any of

4

the materials with any CHG employee. *See* Alleged Taking No. 1, *supra*. Mr. Suggs ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See*

Alleged Taking No. 2, *supra*. Mr. Sisson testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Alleged Taking No. 3, *supra*.

Mr. Booker ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and there is no other evidence suggesting

that CHG knew about or ever possessed ▮▮▮▮▮▮▮ *See* Alleged Taking No. 4, *supra*. Mr.

Morgan testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Alleged Taking No. 5, *supra*. Mr.

Sprinkle ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Alleged Taking No. 6, *supra*; Pl. Exh. 430

(CHG0019196-97) ((**Exhibit M**).[2]



Because there is no evidence that CHG ever possessed or even knew about the materials

involved in the Alleged Takings, the Alleged Takings are irrelevant to a claim for misappropriation

of trade secrets under OUTSA. *See* FED. R. EVID. 402. Further, even if the Alleged Takings were

relevant, their minimal probative value is substantially outweighed by the danger of unfair prejudice

and the risk of confusion of the issues. *See* FED. R. EVID. 403. A jury may be prone to place undue

and improper weight on the Alleged Takings, despite the fact that they do not reflect any

wrongdoing *by CHG* itself. The jury may also improperly conclude that if CHG employees had VGT

materials in their possession, those employees must have used those materials during their

---

[2] Further, it would be speculative to assert that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ contained any
confidential information at all. *See* Friedman Dep. at 173:8:-174:1 (**Exhibit O**) (VGT trade secrets
expert Stacy Friedman admitting ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮).

employment with CHG. It may also confuse the jury about the relevant inquiry, as the individual employees are *not* defendants in this action. Accordingly, VGT should be precluded from introducing evidence of the Alleged Takings into evidence.

**B.    The Alleged Takings are Irrelevant or of Minimal Probative Value to the Extent the Materials Do Not Contain the Alleged Trade Secrets At Issue**

VGT has specifically stated that it is *not* asserting that CHG copied VGT's source code. *See* June 4, 2018 Email from P. Swanson to R. Gill, a true and correct copy of which is attached hereto as **Exhibit P** ███████████████████████████████████████ ████████████████████████████████████████ Reply Expert Report of Stacy Friedman, ¶ 73 (**Exhibit Q**) ███████████████████████████████ ████ Friedman Dep. (**Exhibit O**) at 159:1-8 (confirming that Mr. Friedman did not offer an opinion on whether CHG copied VGT source code).  Though misappropriation of VGT's source code is not at issue, several of VGT's Alleged Takings involve former VGT employees allegedly taking or retaining VGT code. *See* Alleged Taking No. 2, s*upra* (alleging that Mr. Suggs retained ████ ████████████; Alleged Taking No. 4, *supra* (████████████████████████ Alleged Taking No. 5, *supra* (alleging that Mr. Morgan retained ██████████).

Further, VGT has not claimed that its artwork constitutes a trade secret or is confidential. Two of the Alleged Takings involve former VGT employees allegedly taking or retaining artwork from their time at VGT for use in their portfolios. *See* Alleged Taking No. 1, *supra* (alleging that Mr. Milligan retained copies of his artwork); Alleged Taking No. 2, *supra* (alleging that Mr. Sisson retained ███████████████████).

VGT also has not claimed that its ███████████████ constitutes a trade secret or is confidential.  One of the Alleged Takings, however, involves Mr. Sprinkle allegedly taking or retaining a ████████████████ *See* Alleged Taking No. 7, *supra*.

As the above cited Alleged Takings do not relate to the alleged trade secrets at issue in this case, VGT should be precluded from introducing them into evidence on the basis that they are irrelevant. *See* FED. R. EVID. 402.  Further, even if these Alleged Takings were found to be relevant, they are of little probative value and that value is substantially outweighed by a danger of unfair prejudice or confusing the issues. *See* FED. R. EVID. 403.  Introduction of these Alleged Takings would be highly prejudicial, as it may cause a jury to, for example, incorrectly infer that if CHG employees improperly retained VGT materials such as code and artwork, then they must have retained the alleged trade secrets at issue in this case.  It may also confuse the jury as to which information or alleged trade secrets are actually at issue in this case.  As a result, VGT should be precluded from entering into evidence the Alleged Takings to the extent that they do not involve or relate to the alleged trade secrets at issue in this case.

## III.   CONCLUSION

For the foregoing reasons, CHG respectfully requests that the Court enter an Order precluding VGT from introducing or referencing the foregoing evidence of documents and materials allegedly taken or retained by former VGT employees after the termination of their employment with VGT.

Dated:  October 12, 2018                    Respectfully submitted,

                                            */s/ Robert C. Gill*
                                            Robert C. Gill (admitted *pro hac vice*)
                                            Henry A. Platt (admitted *pro hac vice*)
                                            Thomas S. Schaufelberger (admitted *pro hac vice*)
                                            Matthew J. Antonelli (admitted *pro hac vice*)
                                            Jeremy B. Darling (admitted *pro hac vice*)
                                            SAUL EWING ARNSTEIN & LEHR, LLP
                                            1919 Pennsylvania Avenue, NW, Suite 550
                                            Washington, D.C. 20006
                                            (202) 295-6605
                                            (202) 295-6705 (facsimile)
                                            robert.gill@saul.com
                                            henry.platt@saul.com

7

tschauf@saul.com
matt.antonelli@saul.com
jeremy.darling@saul.com

Sherry H. Flax (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
500 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 332-8764
(410) 332-8785 (facsimile)
sherry.flax@saul.com

James C. Hodges, OBA #4254
JAMES C. HODGES, P.C.
2622 East 21st Street, Suite 4
Tulsa, Oklahoma 74114
(918) 779-7078
(918) 770-9779 (facsimile)
JHodges@HodgesLC.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of October, 2018, a copy of the foregoing **DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF DOCUMENTS AND MATERIALS ALLEGEDLY TAKEN BY FORMER VGT EMPLOYEES – PUBLIC REDACTED VERSION** was served via the Court's ECF system on the following:

Graydon Dean Luthey, Jr.
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
(918) 595-4821
(918) 595-4990 (facsimile)
dluthey@gablelaw.com
*Counsel for Plaintiff*

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1221
(212) 841-1010 (facsimile)
nroman@cov.com
*Counsel for Plaintiff*

Gary M. Rubman
Peter Swanson
Michael Sawyer
Rebecca B. Dalton
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
(202) 778-5465 (facsimile)
grubman@cov.com
pswanson@cov.com
msawyer@cov.com
rdalton@cov.com
*Counsel for Plaintiff*

*/s/ Robert C. Gill*
Robert C. Gill