# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| VIDEO GAMING TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> CASTLE HILL STUDIOS LLC, *et al.* <br><br> Defendants. | CASE NO. 17-CV-00454-GKF-JFJ |

**DEFENDANTS' SECOND AMENDED RESPONSES TO PLAINTIFF'S**
**FIRST SET OF REQUESTS FOR ADMISSION**

Defendants Castle Hill Studios LLC, Castle Hill Holdings LLC, and Ironworks Development LLC (together "Castle Hill") submit the following responses to Plaintiff's First Set of Requests for Admission.

**OBJECTIONS TO DEFINITIONS**

1. Castle Hill objects to the definitions of "Castle Hill Gaming," "CHG," "You," "Your," and "Yours" to the extent the definitions purport to relate to or require the disclosure of information from Castle Hill's attorneys that is protected by attorney-client privilege or the work product doctrine, or to the extent the definitions refer to documents or information in the possession of Castle Hill's outside counsel that was obtained through discovery in the course of this litigation.

2. Castle Hill objects to the definition of "Confidential Information" as overly broad, ambiguous, and confusing in that it does not define the specific information that VGT views as confidential. VGT has not described its purported "Confidential Information" with reasonable particularity.

3. Castle Hill objects to the definition of "VGT Documents" as overly broad, ambiguous, and confusing. VGT has not defined or described with reasonable particularity what documents it believes fit the definition of "created by or at VGT, or that are otherwise property of VGT."

4. Castle Hill objects to the definition of "Former VGT Employees" as overly broad, ambiguous, and confusing. VGT has not specified which employees this definition refers to or provided a list of all individuals it has used as "consultants."

5. Castle Hill objects to the definition of "VGT Confidential Information" as overly broad, ambiguous, and confusing. The definition does not specify what information VGT is referring to, nor does it explain or describe any information that VGT believes was "created by or at VGT, or that is otherwise property of VGT." VGT has not described purported "VGT Confidential Information" with reasonable particularity.

**SPECIFIC OBJECTIONS AND RESPONSES**

**REQUEST NO. 1:** Admit that at least one Former VGT Employee took VGT Documents with him/her when leaving VGT.

**AMENDED RESPONSE:** Castle Hill incorporates its objection above to the term "VGT Documents" and because in the context of this request, the phrase is overly broad in not being limited to documents potentially at issue in this action. Castle Hill further objects to this request because it seeks information regarding the actions of individuals who were former VGT employees or "consultants" and the definition is thus overly broad for this reason as well. The Request is further overly broad in that it is not limited to documents given to Castle Hill or within Castle Hill's custody or control.

Without waiving the foregoing objections, Castle Hill responds as follows: Castle Hill has learned in discovery in this action that Aaron Milligan, while an employee of VGT, made copies of certain examples of his artwork that he had created while an employee of VGT to a personal hard drive in order to maintain a portfolio of his artwork. According to his deposition testimony, Mr. Milligan never told Castle Hill about the existence of this hard drive, he never disclosed the contents of the hard drive to Castle Hill, he never told anyone at Castle Hill about the files on the hard drive, he never submitted any of the files contained on the hard drive to Castle Hill, he never accessed any of the files after he stopped working at VGT, and the hard drive containing the files is no longer functional. As Castle Hill has no personal knowledge of the specific files contained on Mr. Milligan's personal hard drive, and therefore does not actually know if they constitute "VGT Documents," as vaguely defined by Plaintiff, and Mr. Milligan does not claim to have ever used or even reviewed the files after ceasing to be a VGT employee, Castle Hill is without knowledge or information sufficient to admit or deny whether Mr. Milligan "took" "VGT Documents" with him when he left VGT, and Castle Hill therefore denies this request.

In addition, Castle Hill has learned in discovery in this action that Paul Suggs, while an employee of VGT, maintained copies of his VGT emails in a PST mail archive stored in a detached storage device at his home network workstation. Mr. Suggs also testified that he would have had a snapshot of source code of the DOS server and DOS client on the same storage device. According to his deposition, this was Mr. Suggs' normal practice for connection reliability due to working from home. Mr. Suggs testified that when he left VGT, he did not delete the copies, but six to eight months later, his device had a critical failure and all of the data was lost. He also testified that he never accessed the VGT information after leaving VGT. As Castle Hill has no personal knowledge of the information on Mr. Suggs' device, and Mr. Suggs

3

does not claim to have ever used or even reviewed the files after ceasing to be a VGT employee, Castle Hill is without knowledge or information sufficient to admit or deny whether Mr. Suggs "took" "VGT Documents" with him when he left VGT, and Castle Hill therefore further denies this request.

In addition, Castle Hill has learned in discovery in this action that Rich Sisson, while an employee of VGT, was given permission to take reel strips being thrown away for use in his portfolio. Mr. Sisson testified that he received permission from Dave Marsh to take a flash drive of documents from VGT to use for Mr. Sisson's portfolio. Mr. Sisson testified that this was common. Mr. Sisson testified that he has never used or accessed these VGT materials in his portfolio in his work for Castle Hill. As Castle Hill has no personal knowledge of the information on Mr. Sisson's device, and Mr. Sisson testified that he was given copies of all information contained in his portfolio by authorized representatives of VGT, Castle Hill is without knowledge or information sufficient ot admit or deny whether Mr. Sisson "took" "VGT Documents" with him when he left VGT, and Castle Hill therefore further denies this request.

In addition, Brandon Booker testified that while an employee of VGT, he "may" have taken a copy of code for his self-built, self-designed mobile smart phone app game. As Mr. Booker could not testify with any certainty and merely speculated as to what he "may" or may not have taken, and Castle Hill has no personal knowledge of whether or not Mr. Booker actually "took" "VGT Documents", Castle Hill is without knowledge or information sufficient ot admit or deny whether Mr. Booker "took" "VGT Documents" with him when he left VGT, and Castle Hill further denies this request.

In addition, Castle Hill has learned in discovery of this action that Seth Morgan, while an employee of VGT, had a copy of a piece of graphics code known as PIE on his home computer

4

to work on remotely, and when he left VGT, he still had it on his computer. However, Mr. Morgan specifically testified that he did not intentionally take the code. Mr. Morgan also testified that his child spilled a drink on that computer, and to his knowledge, the computer was no longer functional prior to his employment at Castle Hill. As Castle Hill has no personal knowledge of the information on Mr. Morgan's device, and Mr. Morgan does not claim to have ever used or accessed the files after becoming a Castle Hill employee, Castle Hill is without knowledge or information sufficient to admit or deny whether Mr. Morgan "took" "VGT Documents" with him when he left VGT, and Castle Hill therefore further denies this request.

In addition, Castle Hill has learned in discovery that George Weilacher, while an employee of VGT, worked from home on a single occasion with the approval of his supervisor. For the purpose of working from home on official VGT business, Mr. Weilacher testified that he transferred VGT code to his home computer via thumb drive. Mr. Weilacher testified that on the same day, he deleted the code from his thumb drive and personal hard drive. Mr. Weilacher also testified that the thumb drive stopped working and was recycled in 2013 or 2014, that most of the computer has been recycled, and that the hard drive has been fully reformatted. As Castle Hill has no personal knowledge of the information on Mr. Weilacher's device, and Mr. Weilacher does not claim to have ever used or accessed the files after becoming a Castle Hill employee, Castle Hill is without knowledge or information sufficient to admit or deny whether Mr. Weilacher "took" "VGT Documents" with him when he left VGT, and Castle Hill therefore further denies this request.

In addition, Castle Hill has learned in discovery of this action that Alan Roireau, upon leaving VGT, took his VGT-issued laptop to the VGT IT department and was given authorization to keep the laptop. Mr. Roireau testified that prior to allowing him to keep the

5

laptop, the IT department "scrubbed" the laptop, and that there was nothing on it except an operating system when it was returned to him. As Castle Hill has no personal knowledge of the information on Mr. Roireau's device, and Mr. Roireau testified that the device contained no VGT information, Castle Hill is without knowledge or information sufficient to admit or deny whether Mr. Roireau "took" "VGT Documents" with him when he left VGT, and Castle Hill further denies this request.

In addition, Jason Sprinkle was questioned in his deposition regarding a document discussing a VGT development station; however, Mr. Sprinkle testified that he did not take a VGT development machine from VGT. Castle Hill likewise has no personal knowledge of the existence of the alleged development station. Mr. Sprinkle testified that VGT gave him permission to take his VGT-issued company phone after the VGT IT department inspected the phone. Castle Hill does not have personal knowledge as to the contents of the VGT-issued phone. Mr. Sprinkle was also questioned regarding a lease agreement which Mr. Sprinkle testified he would have had from his time at VGT. Castle Hill does not have personal knowledge as to the origin or nature of the lease agreement, and therefore does not actually know if it constitutes a "VGT Document," as vaguely defined by Plaintiff, nor does Castle Hill have personal knowledge as to whether Mr. Sprinkle "took" "VGT Documents". Castle Hill is therefore without knowledge or information sufficient to admit or deny whether Mr. Sprinkle "took" "VGT Documents" with him when he left VGT, and Castle Hill therefore denies this request.

In addition, upon reasonable inquiry, Castle Hill is without knowledge or information sufficient to admit or deny what any other former VGT employee or consultant may or may not

6

have done at the time he or she left VGT, and, on this basis, and without waiver of the foregoing objections, Castle Hill denies this request for admission.

**REQUEST NO. 2:**  Admit that at least one Former VGT Employee brought VGT Documents with him/her from VGT to CHG.

**AMENDED RESPONSE:**  Castle Hill incorporates its objections above to the terms "Former VGT Employee" and "VGT Documents," and will respond based on Castle Hill employees known to be former employees of VGT.  Subject to the foregoing objections, Castle Hill responds, after reasonable inquiry, as follows:  Denied.

**REQUEST NO. 3:**  Admit that at least one Former VGT Employee made VGT Documents available to CHG.

**AMENDED RESPONSE:**  Castle Hill incorporates its objections above to the terms "Former VGT Employee" and "VGT Documents," and will respond based on Castle Hill employees known to be former employees of VGT.  Subject to the foregoing objections, Castle Hill responds, after reasonable inquiry, as follows:  Denied.

**REQUEST NO. 4:**  Admit that VGT Documents are in your possession, custody, or control.

**AMENDED RESPONSE:**  Castle Hill incorporates its objections above to the terms "VGT Documents" and "your."  Subject to the foregoing objections, Castle Hill responds, after reasonable inquiry, as follows:  Denied.

**REQUEST NO. 5:** Admit that at least one Former VGT Employee took VGT Confidential Information with him/her when leaving VGT.

**AMENDED RESPONSE:** Castle Hill incorporates its objections above to the terms "Former VGT Employee" and "VGT Confidential Information." Castle Hill further objects to this request because it seeks information regarding the actions of individual former VGT employees and consultants and is not limited to documents or information given to Castle Hill or within Castle Hill's custody or control.

Without waiving the foregoing objections, Castle Hill responds as follows: Castle Hill has learned in discovery in this action that Aaron Milligan, while an employee of VGT, copied certain artwork files, that he had created while an employee of VGT, to a personal hard drive. According to his deposition testimony, Mr. Milligan never told Castle Hill about the existence of this hard drive, he never disclosed the contents of the hard drive to Castle Hill, he never told anyone at Castle Hill about the files on the hard drive, he never submitted any of the files contained on the hard drive to Castle Hill, he never accessed any of the files after he stopped working at VGT, and the hard drive containing the files is no longer functional. As Castle Hill has no personal knowledge of the specific files contained on Mr. Milligan's personal hard drive, and therefore does not actually know if they constitute "VGT Confidential Information," as vaguely defined by Plaintiff, and Mr. Milligan does not claim to have ever used or even reviewed the files after ceasing to be a VGT employee, Castle Hill is without knowledge or information sufficient to admit or deny whether Mr. Milligan "took" "VGT Confidential Information" with him when he left VGT, and Castle Hill therefore denies this request.

In addition, Castle Hill has learned in discovery in this action that Paul Suggs, while an employee of VGT, maintained copies of his VGT emails in a PST mail archive stored in a

detached storage device at his home network workstation. Mr. Suggs also testified that he would have had a snapshot of source code of the DOS server and DOS client on the same storage device. According to his deposition, this was Mr. Suggs' normal practice for connection reliability due to working from home. Mr. Suggs testified that when he left VGT, he did not delete the copies, but six to eight months later, his device had a critical failure and all of the data was lost. He also testified that he never accessed the VGT information after leaving VGT. As Castle Hill has no personal knowledge of the information on Mr. Suggs' device, and Mr. Suggs does not claim to have ever used or even reviewed the files after ceasing to be a VGT employee, Castle Hill is without knowledge or information sufficient to admit or deny whether Mr. Suggs "took" "VGT Confidential Information" with him when he left VGT, and Castle Hill therefore further denies this request.

In addition, Castle Hill has learned in discovery in this action that Rich Sisson, while an employee of VGT, was given permission to take reel strips being thrown away for use in his portfolio. Mr. Sisson testified that he received permission from Dave Marsh to take a flash drive of documents from VGT to use for his portfolio. Mr. Sisson testified that this was common. Mr. Sisson testified that he has never used or accessed these VGT materials in his portfolio in his work for Castle Hill. As Castle Hill has no personal knowledge of the information on Mr. Sisson's device, and Mr. Sisson testified that he was given copies of all information contained in his portfolio by authorized representatives of VGT, Castle Hill is without knowledge or information sufficient ot admit or deny whether Mr. Sisson "took" "VGT Confidential Information" with him when he left VGT, and Castle Hill therefore further denies this request.

In addition, Brandon Booker testified that while an employee of VGT, he "may" have taken a copy of code for his self-built, self-designed mobile smart phone app game. As Mr.

9

Booker could not testify with any certainty and merely speculated as to what he "may" or may not have taken, and Castle Hill has no personal knowledge of whether or not Mr. Booker actually "took" "VGT Confidential Information", Castle Hill is without knowledge or information sufficient ot admit or deny whether Mr. Booker "took" "VGT Confidential Information" with him when he left VGT, and Castle Hill further denies this request.

In addition, Castle Hill has learned in discovery of this action that Seth Morgan, while an employee of VGT, had a copy of a piece of graphics code known as PIE on his home computer to work on remotely, and when he left VGT, he still had it on his computer. However, Mr. Morgan specifically testified that he did not intentionally take the code. Mr. Morgan also testified that his child spilled a drink on that computer, and to his knowledge, the computer was no longer functional prior to his employment at Castle Hill. As Castle Hill has no personal knowledge of the information on Mr. Morgan's device, and Mr. Morgan does not claim to have ever used or accessed the files after becoming a Castle Hill employee, Castle Hill is without knowledge or information sufficient to admit or deny whether Mr. Morgan "took" "VGT Confidential Information" with him when he left VGT, and Castle Hill therefore further denies this request.

In addition, Castle Hill has learned in discovery that George Weilacher, while an employee of VGT, worked from home on a single occasion with the approval of his supervisor. For the purpose of working from home on official VGT business, Mr. Weilacher testified that he transferred VGT code to his home computer via thumb drive. Mr. Weilacher testified that on the same day, he deleted the code from his thumb drive and personal hard drive. Mr. Weilacher also testified that the thumb drive stopped working and was recycled in 2013 or 2014, that most of the computer has been recycled, and that the hard drive has been fully reformatted. As Castle Hill

has no personal knowledge of the information on Mr. Weilacher's device, and Mr. Weilacher does not claim to have ever used or accessed the files after becoming a Castle Hill employee, Castle Hill is without knowledge or information sufficient to admit or deny whether Mr. Weilacher "took" "VGT Confidential Information" with him when he left VGT, and Castle Hill therefore further denies this request.

In addition, Castle Hill has learned in discovery of this action that Alan Roireau, upon leaving VGT, took his VGT-issued laptop to the VGT IT department and was given authorization to keep the laptop. Mr. Roireau testified that prior to allowing him to keep the laptop, the IT department "scrubbed" the laptop, and that there was nothing on it except an operating system when it was returned to him. As Castle Hill has no personal knowledge of the information on Mr. Roireau's device, and Mr. Roireau testified that the device contained no VGT information, Castle Hill is without knowledge or information sufficient to admit or deny whether Mr. Roireau "took" "VGT Confidential Information" with him when he left VGT, and Castle Hill further denies this request.

In addition, Jason Sprinkle was questioned in his deposition regarding a document discussing a VGT development station; however, Mr. Sprinkle testified that he did not take a VGT development machine from VGT. Castle Hill likewise has no personal knowledge of the existence of the alleged development station. Mr. Sprinkle testified that VGT gave him permission to take his VGT-issued company phone after the VGT IT department inspected the phone. Castle Hill does not have personal knowledge as to the contents of the VGT-issued phone. Mr. Sprinkle was also questioned regarding a lease agreement which Mr. Sprinkle testified he would have had from his time at VGT. Castle Hill does not have personal knowledge as to the origin or nature of the lease agreement, and therefore does not actually know if it

11

constitutes "VGT Confidential Information," as vaguely defined by Plaintiff, nor does Castle Hill have personal knowledge as to whether Mr. Sprinkle "took" "VGT Confidential Information". Castle Hill is therefore without knowledge or information sufficient to admit or deny whether Mr. Sprinkle "took" "VGT Confidential Information" with him when he left VGT, and Castle Hill therefore denies this request.

In addition, upon reasonable inquiry, Castle Hill is without knowledge or information sufficient to admit or deny what any other former VGT employee or consultant may or may not have done at the time he or she left VGT, and, on this basis, and without waiver of the foregoing objections, Castle Hill denies this request.

**REQUEST NO. 6:**  Admit that at least one Former VGT Employee brought VGT Confidential Information with him/her from VGT to CHG.

**AMENDED RESPONSE:**  Castle Hill incorporates its objections above to the terms "Former VGT Employee" and "VGT Confidential Information," and will respond based on Castle Hill employees known to be former employees of VGT.  Subject to the foregoing objections, Castle Hill responds, after reasonable inquiry, as follows:  Denied.

**REQUEST NO. 7:**  Admit that at least one Former VGT Employee made VGT Confidential Information available to CHG.

**AMENDED RESPONSE:**  Castle Hill incorporates its objection above to the terms "Former VGT Employee" and  "VGT Confidential Information," and will respond based on Castle Hill employees known to be former employees of VGT.  Subject to the foregoing objections, Castle Hill responds, after reasonable inquiry, as follows:  Denied.

**REQUEST NO. 8:** Admit that VGT Confidential Information is in your possession, custody, or control.

**AMENDED RESPONSE:** Castle Hill incorporates its objections above to the terms "VGT Confidential Information" and "your." Subject to the foregoing objections, Castle Hill responds, after reasonable inquiry, as follows: Denied.

Dated: July 31, 2018

Respectfully submitted,

*/s/ Robert C. Gill*
Robert C. Gill (admitted pro hac vice)
Thomas S. Schaufelberger (admitted pro hac vice)
Henry A. Platt (admitted pro hac vice)
Matthew J. Antonelli (admitted pro hac vice)
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
tschauf@saul.com
henry.platt@saul.com
matt.antonelli@saul.com

Sherry H. Flax (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
500 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 332-8764
(410) 332-8785 (facsimile)
sherry.flax@saul.com

James C. Hodges, OBA #4254
JAMES C. HODGES, P.C.
2622 East 21st Street, Suite 4
Tulsa, Oklahoma 74114
(918) 779-7078
(918) 770-9779 (facsimile)
JHodges@HodgesLC.com

*Counsel for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of July, 2018, I caused a copy of the foregoing **DEFENDANTS' SECOND AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUESTS FOR ADMISSION** to be served via email on:

Graydon Dean Luthey, Jr., OBA 5568
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
(918) 595-4821
(918) 595-4990 facsimile
dluthey@gablelaw.com
*Counsel for Video Gaming Technologies*

Gary M. Rubman
Peter Swanson
Michael Sawyer
Rebecca B. Dalton
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, D.C. 20001-4956
(202) 662-6000
(202) 778-5465 facsimile
grubman@cov.com
pswanson@cov.com
msawyer@cov.com
rdalton@cov.com
*Counsel for Video Gaming Technologies*

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1221
 (212) 841-1010 facsimile
nroman@cov.com
*Counsel for Video Gaming Technologies*

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Robert C. Gill*
　　　　　　　　　　　　　　　　　　　　　　　Robert C. Gill