# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OKLAHOMA

VIDEO GAMING TECHNOLOGIES, INC.,

        Plaintiff,

vs.

CASTLE HILL STUDIOS LLC, *et al.*

        Defendants.

CASE NO. 17-CV-00454-GKF-JFJ

**PUBLIC – REDACTED VERSION**

# DEFENDANTS' MOTION TO EXCLUDE
# PLAINTIFF'S EXPERT STACY FRIEDMAN

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................................... i

I.    INTRODUCTION ..........................................................................................................1

II.   FRIEDMAN EXPERT REPORTS AND TESTIMONY .............................................1

   A.   Mr. Friedman's Opinions Regarding the Distinctiveness of VGT's Alleged Trade Dress ........2

   B.   Mr. Friedman's Opinions Regarding the Value of VGT's Class II Development System and Castle Hill's Alleged Avoided Research and Development Costs ...................................................5

   C.   Mr. Friedman's Opinions Regarding Castle Hill's Use of VGT's Source Code .........................6

   D.   Mr. Friedman Did Not Do Any Independent Research to Determine Whether █████████ ████████████████████ is Generally Known ......................................................................7

   E.   Mr. Friedman Summarized Evidence and Testimony of Fact Witnesses....................................8

   F.   Mr. Friedman Offered Legal Conclusions and Opined on Legal Standards...............................9

III.  STANDARD OF REVIEW ...........................................................................................9

IV.   ARGUMENT ...............................................................................................................11

   A.   Mr. Friedman is Not Qualified to Offer an Opinion on the Distinctiveness of VGT's Alleged Trade Dress and His Methodology is Unreliable..........................................................................11

   B.   Mr. Friedman is Not Qualified to Offer an Opinion on the Value of VGT's Class II Development System or Castle Hill's Alleged Avoided Research and Development Costs and His Methodology is Unreliable ..........................................................................................................13

   C.   Mr. Friedman's Methodology is Unreliable for His Technical Opinions ...................................16

      1.   Mr. Friedman Failed to Provide Any Opinion that Castle Hill Copied VGT's Source Code, so his Last-Ditch Effort to Cobble Together Such an Opinion by Summarizing Testimony Must be Excluded. ..............................................................................................................16

      2.   Mr. Friedman Did No Independent Research to Determine Whether █████████ ████████████ is Generally Known, So His Opinions on this Issue Should be Excluded.............................................................................................................................18

   D.   Mr. Friedman Should be Excluded Because his Report Includes Significant Summaries of Evidence and Testimony of Fact Witnesses................................................................................19

   E   Mr. Friedman Should be Excluded Because his Report Includes Improper Legal Conclusions and Legal Standards ....................................................................................................................20

V.    CONCLUSION............................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aircraft Fueling Systems, Inc. v. Southwest Airlines Co.,*
2011 WL 6122627 (N.D. Okla. Dec. 8, 2011) (Frizzell, J.) ....................................................10, 11, 15

*Alexander v. Smith & Nephew, P.L.C.,*
98 F. Supp. 2d 1276 (N.D. Okla. 2000) .............................................................................10, 11, 12, 15

*Bausch & Lomb, Inc. v. Alcon Labs, Inc.,*
79 F. Supp. 2d 252 (W.D.N.Y. 2000)..............................................................................................21

*Bright v. Ohio Nat'l Life Assurance Corp.,*
2012 WL 12888316 (N.D. Okla. Nov. 29, 2012) (Frizzell, C.J.) ....................................................*passim*

*Bright v. Ohio Nat'l Life Assurance Corp.,*
2013 WL 121479 (N.D. Okla. Jan. 9, 2013) (Frizzell, C.J.)............................................10, 11, 12, 20

*Bright v. Ohio Nat'l Life Assurance Corp.,*
2013 WL 12327512 (Jan. 09, 2013) (Frizzell, C.J.) ..........................................................................10

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
509 U.S. 593-95 (1993) ....................................................................................................10, 11, 18

*Gen. Elec. v. Joiner,*
522 U.S. 136 (1997).........................................................................................................................18

*iFreedom Direct Corp. v. First Tennessee Bank Nat. Ass'n,*
2012 WL 3067597 (D. Utah July 27, 2012) ..............................................................................15, 19, 20

*Joe N. Pratt Ins. v. Doane,*
2009 WL 5220646 (S.D. Tex. Dec. 30, 2009) .............................................................................21, 22

*Kumho Tire Co., Ltd. v. Carmichael,*
526 U.S. 137 (1999)..........................................................................................................................10

*National Indemnity Co. v. Nelson, Chipman & Burt,*
2013 WL 12303138 (D. Utah Jan. 22, 2013) ..................................................................................20

*Nimely v. City of New York,*
414 F.3d 381 (2d Cir. 2005) ............................................................................................................20

*Ralston v. Smith & Nephew Richards, Inc.,*
275 F.3d 965 (10th Cir. 2001) .........................................................................................................10

*Skycam, Inc. v. Bennett,*
   2011 WL 2551188 (N.D. Okla. June 27, 2011) (Frizzell, C.J.) ........................................15, 20, 21, 22

*SL Montevideo Tech., Inc. v. Eaton Aerospace, LLC,*
   2005 WL 1923811 (D. Minn Aug. 11, 2005) ...........................................................................21

*Specht v. Jensen,*
   853 F.2d 805 (10th Cir. 1988) .......................................................................................20

*The Pioneer Centres Holding Company Employee Stock Ownership Plan & Trust v. Alterus Fin., N.A.,*
   858 F.3d 1324 (10th Cir. 2017) .....................................................................................20

*TK-7 Corp. v. Barbouti,*
   993 F.2d 722 (10th Cir. 1993) ......................................................................................15

*U.S. v. Hill,*
   749 F.3d 1250 (10th Cir. 2014) .....................................................................................20

*U.S. v. Velarde,*
   214 F.3d 1204 (10th Cir. 2000) .......................................................................................9

## Other Authorities

Fed. R. Civ. Procedure 702 .............................................................................................9, 10

Defendants, Castle Hill Studios LLC, Castle Hill Holdings LLC, and Ironworks Development LLC (collectively, "CHG" or "Defendants"), move for an Order precluding Plaintiff Video Gaming Technologies, Inc. ("VGT") from introducing the testimony or expert reports of VGT's expert witness Stacy Friedman at trial.

## I.    INTRODUCTION

VGT's technical expert, Stacy Friedman, has disclosed opinions which should be excluded at trial.  First, Mr. Friedman opines on various trade dress issues, including the distinctiveness of VGT's alleged trade dress.  However, Mr. Friedman admitted in his deposition that the appearance and features of Class II games are outside of his expertise.  He is therefore unqualified to offer testimony regarding the distinctiveness of VGT's alleged trade dress.  In addition to his admission disqualifying this opinion, Mr. Friedman's lack of Class II experience, and his reliance on photographs selected by VGT's counsel, also renders his methodology unreliable.  Second, Mr. Friedman, who is not an accountant, opines on "avoided research and development costs," which he also admitted is outside of his expertise.  He is therefore not qualified to offer opinions on valuation issues.  Mr. Friedman admitted that he did not review any financial documents in connection with his valuation opinion, rendering his methodology unsupportable.  Third, Mr. Friedman opines on various technical issues.  However, several of his methodologies are unreliable.  Finally, Mr. Friedman improperly summarizes "facts" and offers legal opinions (*e.g.*, opining on what constitutes a "trade secret" and "misappropriation").  Plaintiff should be precluded from offering Mr. Friedman's testimony and reports at trial.

## II.    FRIEDMAN EXPERT REPORTS AND TESTIMONY

VGT's technical expert opining on VGT's trade dress and trade secret claims is Stacy Friedman.  *See* Opening Expert Report of Stacy Friedman ("Report"), dated August 10, 2018.  A true and correct copy of this Report is attached hereto as **Exhibit A**.  Mr. Friedman summarizes his

1

opinions on these subjects in Section III of his Report, at ¶¶ 11-15.  Mr. Friedman also issued a reply report in response to Castle Hill's rebuttal experts.  *See* Reply Expert Report of Stacy Friedman, dated September 14, 2018 ("Reply Report").  A true and correct copy of the Reply Report (without exhibits) is attached hereto as **Exhibit B**.

### A.    Mr. Friedman's Opinions Regarding the Distinctiveness of VGT's Alleged Trade Dress

In Mr. Friedman's opening report, he states as follows:



*See* Report ¶ 13 (emphasis added).

Mr. Friedman testified that he does not have a degree in marketing.  *See* Friedman Dep. at 42:12-14.[1]  He has never created a consumer confusion survey.  *See id.* at 46:10-14.  Before this case, his familiarity with Class II gaming was limited to acting as an expert on "a couple of cases" involving patent infringement.  *Id.* at 46:16-47:7.  Mr. Friedman does not live in a Class II jurisdiction, and only plays Class II games when he is in a Class II environment.  *Id.* at 47:13-17.

The only time he has played VGT's games was in October 2017 – approximately a year ago – in preparation for this case, on a trip with VGT's counsel to a single casino in Oklahoma.  *See id.* at 48:1-19.  Mr. Friedman testified that the trip was ████████████████████████████ ████████████████████████████████████████████████████  *Id.*  Directly

---

[1] True and correct copies of the cited pages from the transcript of Mr. Friedman's deposition are attached hereto as **Exhibit C**.

relevant to his distinctiveness opinion was Mr. Friedman's admission that he could not even recall which VGT games he played.  *See id.*

The only time Mr. Friedman has played Castle Hill's games was on the same trip, in October 2017.  *Id.* at 49.  He similarly could not recall which Castle Hill games he played.  *Id.* at 49:20-50:2. The October 2017 trip was the most recent time Mr. Friedman played a Class II game.  *Id.* at 278:15-22.  Excluding his casino trip with VGT's counsel for this case, Mr. Friedman's most recent experience playing a Class II game was in 2010, though it was not in a tribal casino.  *Id.* at 279:2-7; Report ¶ 8.

Mr. Friedman's opinion that VGT's games are distinctive is based on his review of photos and videos of games and "hands on game play experience of the VGT games."  *See* Friedman Dep. at 253:9-21.  But Mr. Friedman admits that his "hands on experience" playing VGT's games is limited to his one visit to the Indigo Sky Casino in October 2017 for this case.  *See id.* at 253:22-254:14.  Mr. Friedman tried to explain this away by comparing similarities between Class II games ████████████████████████████████ Class III games found in a typical Las Vegas-style casino.  *See id.* at 254:8-255:13.  Mr. Friedman also tried to establish the relevance of his experience as an expert in cases involving other Class II games.  However, Mr. Friedman admitted that these cases all involved patent infringement and/or regulatory issues, so this experience is not relevant to the issue of distinctiveness, and does not qualify him to give such an opinion.  *See id.* at 255:15-257:8.  Mr. Friedman could not recall with any specificity the appearance of any of the games he worked on in any of the other cases where he has previously served as an expert.  *Id.* at 277:3-9.

Although Mr. Friedman states that he is ██████████████████████████████ ████████████ *id.* at 257:9-21, and admits that he did not even look at all of the various VGT Class II games in the field, *id.* at 308:2-10, Mr. Friedman nonetheless claims that a subset of VGT's games are "distinctive."

In comparing the cabinets at issue, Mr. Friedman acknowledged the cabinets of both manufacturers can come with toppers, but Mr. Friedman said he ██████████████████ ███████████ during his trip to Indigo Sky Casino, did not take pictures, and his opinions of the toppers are based on photographs he reviewed which were provided to him.  *See id.* at 266:2-267:9.  Mr. Friedman even conceded that VGT's art style is inconsistent.  *See id.* at 264:4-6 ████ ███████████████████████████████████████████).  He went on to agree that other manufacturers in the Class II field use cartoon characters on their games.  *See id.* at 320:5-9.  Mr. Friedman does not know whether other Class II manufacturers use a mechanical bell or any bell to indicate a win, and admitted ████████████████████████████████████████████ ██████████████  *Id.* at 300:10-16.



Mr. Friedman also could not recall the sounds from the VGT or Castle Hill mechanical bells from his trip to the Indigo Sky Casino – all of his opinions are based on videos he reviewed for his report.  *Id.* at 316:18-317:5.  Mr. Friedman admitted that there are two issues that could arise from listening to a sound recording instead of experiencing sounds in person: the recording could be sped up or slowed down, which would affect pitch, and that if the recording is sufficiently low fidelity that may affect perception of the pitch.  *Id.* at 317:15-319:15.

Mr. Friedman also could not offer any opinion on whether other manufacturers use a strobe light on top of their games:



*Id.* at 303:15-17.  Mr. Friedman did not even know whether or not VGT's own strobe light had a white light inside to function as a call attendant feature. *Id.* at 316:14-17 ██████████████ ████.

For free spin bonus features, Mr. Friedman's "knowledge" is limited to what he was shown by VGT's counsel in the form of videos.  Other than VGT and Castle Hill's games, he did not identify any free spin features that he had actually seen in person.  *Id.* at 340:22:-342:3.

**B.    Mr. Friedman's Opinions Regarding the Value of VGT's Class II Development System and Castle Hill's Alleged Avoided Research and Development Costs**

In his expert report Mr. Friedman opined that ██████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████  *See* Report ¶ 59.  Mr. Friedman references these figures throughout his report.  *See, e.g., id.* at ¶ 96.  Mr. Friedman also opined that Castle Hill was able to develop its Class II system in less time than VGT████████████████████████ ████████  *See id.* at ¶ 95.  Mr. Friedman based these opinions on a single email from former VGT employee and current Castle Hill employee, Alan Roireau.  *See* Report at ¶¶ 59, 96; *see also* VGT Dep. Ex. 138 (CHG0015728), a true and correct copy of which is attached as **Exhibit D**, discussions he had with VGT employees, and his own experience.  *See* Report ¶¶ 55-59; Friedman Dep. at 221:18-224:20.

Mr. Friedman does not have a degree in accounting, and he had no educational courses or formal work experience in accounting.  *See* Friedman Dep. at 41:5-7.  He also has no education or training in the field of valuing software.  *Id.* at 41:18-42:3.  While Mr. Friedman acknowledged that there are recognized methods for valuing software, he admitted that he is not familiar with any of them.  *Id.* at 42:5-11.

Although Mr. Friedman stated that ██████████████████████████████ ████████████████████████████████████████████████████████  Friedman Dep. at 223:12-224:4, Mr. Friedman admitted that he had not actually reviewed *any* underlying Castle Hill or VGT financial records before issuing his opinion.  Instead, Mr. Friedman relied upon Al

5

Roireau's email and conversations with VGT employees for his understanding of the development cost of VGT's Class II system. *See id.* at 224:8-232:11. The VGT employees with whom Mr. Friedman spoke are software engineers, not accountants. *Id.* at 225:13:-226:11. The types of records those VGT software engineers allegedly reviewed were only to confirm the number of engineers who worked on various projects. There is no indication that any VGT financial records were reviewed or provided any basis for the opinions. *Id.* at 226:12-227:5. Mr. Friedman did not personally review any VGT time records for the software engineers to determine how much time was spent on development of the VGT code. *Id.* at 227:1-5.

As the basis for Castle Hill's alleged avoided development costs, Mr. Friedman relied upon summaries contained in Castle Hill's expert report and a "pitch deck" or marketing presentation for his understanding of the Castle Hill development costs and allegedly avoided costs. *See id.* at 224:8-232:11. Mr. Friedman conceded that his opinion was not intended to actually quantify the costs which were allegedly avoided:



*See id.* at 227:19-228:2.

### C.     Mr. Friedman's Opinions Regarding Castle Hill's Use of VGT's Source Code

In his expert report Mr. Friedman did not assert or opine that Castle Hill copied VGT's source code. *See* Reply ¶ 73 ███████████████████████████

████. Mr. Friedman confirmed that he did not opine on this issue during his deposition:



*See* Friedman Dep. at 159:5-8; *see also* Friedman Dep. at 168:13-19.

Mr. Friedman did not provide a "literal copying" analysis to determine whether copying had occurred. *See* Friedman Dep. at 151:16-152:15. Mr. Friedman has no prior experience using the CodeSuite software which Castle Hill's expert, Robert Zeidman, used to compare VGT and Castle Hill's source code. *See id.* at 152:16-153:3. Mr. Friedman did not take the CodeSuite certification training. *See id.* at 156:13-15. Mr. Friedman did not use CodeSuite, and none of his opinions are related to the use of CodeSuite. *See id.*

Despite confirming he has no opinion about CHG using VGT source code, Mr. Friedman wants to summarize evidence and testimony which purportedly demonstrates that former VGT employees took source code when they left VGT. *See* Report ¶¶ 103-106. Mr. Friedman opined that the former VGT employees ████████████████████████████ *See* Report ¶ 108. Even worse, Mr. Friedman admitted in his deposition that he *did not actually review any of the evidence* he wants to summarize in his "expert opinion," nor does he have any other evidence supporting such an opinion:



*See* Friedman Dep. at 168:20-169:12.

**D.    Mr. Friedman Did Not Do Any Independent Research to Determine Whether** ████████████████████████████ **is Generally Known**

Mr. Friedman opined in his report that ████████████████████████████ is the subject of Plaintiff's trade secret claim, is not generally known. *See* Report ¶ 70. Mr. Friedman goes on to opine that the ████████████████████████████

7



████████████████ Report ¶ 71. ███████████████████

████████████████████████ *See* Report ¶ 72.

Mr. Friedman admits in his report that ███████████████████████

████████████████████████████████ that he is

███████████████████████████████

██████  *See* Report ¶ 70.  Mr. Friedman relies upon the testimony of a former VGT

employee/current Castle Hill employee for Mr. Friedman's opinion that ████████████

████████████████ *See* Report ¶ 70

However, Mr. Friedman did not do any independent analysis before rendering his opinions

that █████████████████████████

*See* Friedman Dep. at 134:20-135:8.

### E.     Mr. Friedman Summarized Evidence and Testimony of Fact Witnesses

Mr. Friedman's report contains significant amounts of summarized documentary evidence

and deposition testimony.  Mr. Friedman summarizes the documents and testimony regarding, *inter

alia*, VGT's alleged trade dress and Castle Hill's selection of its game features, *see, e.g.*, Report ¶¶ 35-

40, █████████████████████████████████████

████████████████ *see* Report ¶¶ 74-78, and alleged use by Castle Hill of VGT's alleged

trade secrets, *see* Report ¶¶ 88-126.  Mr. Friedman's Reply similarly summarizes testimony regarding

VGT's alleged trade dress and trade secrets.  *See, e.g.,* Reply ¶¶ 36, 40, 48, 124.

### F.    Mr. Friedman Offered Legal Conclusions and Opined on Legal Standards

Mr. Friedman's Report contains numerous conclusions of law. *See, e.g.,* Report ¶¶ 28-30 (Indian Gaming Regulatory Act); ¶¶ 49-54 (trade secret and misappropriation definitions). Moreover, Mr. Friedman made numerous conclusory statements and gave legal opinions about misappropriation of trade secrets and confidential business information, including legal conclusions about what information was misappropriated from VGT and whether it constitutes a trade secret. *See, e.g.,* Report ¶¶ 56-60, (VGT developed "trade secrets and confidential information"); ¶¶ 95-98, 110 (Castle Hill development speed); ¶¶ 111-126 ("CHG misappropriated" VGT's alleged trade secrets). Mr. Friedman's Reply also contains legal opinions. *See, e.g.,* Reply ¶ 69. In his Reply, Mr. Friedman even explains how he provided statements on the law and legal opinions in his opening Report. *See id.* ███████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████

## III.    STANDARD OF REVIEW

Under Rule 702, an expert's opinion is admissible only if four basic requisites are met:

    (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    (b)    the testimony is based on sufficient facts or data;

    (c)    the testimony is the product of reliable principles and methods; and

    (d)    the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "Rule 702 'imposes a special gatekeeping obligation on the trial judge to ensure that an opinion offered by an expert is reliable.'" *U.S. v. Velarde*, 214 F.3d 1204, 1208 (10th Cir.

2000). "A trial court's gatekeeper duty requires two separate inquiries: (1) the witness must be qualified to offer the opinions he is espousing and (2) the proponent of the witness bears the burden of proving by a preponderance of the evidence that its witness's opinions are both relevant and reliable." *Bright v. Ohio Nat'l Life Assurance Corp.*, 2012 WL 12888316 at *1 (N.D. Okla. Nov. 29, 2012) (Frizzell, C.J.) (citing *Kumbo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 52 (1999)).

The Court determines whether an expert is qualified to render an opinion based on "knowledge, skill, experience, training, or education." *See Bright v. Ohio Nat'l Life Assurance Corp.*, 2013 WL 121479 at *2 (N.D. Okla. Jan. 9, 2013) (Frizzell, C.J.) (citing Fed. R. Evid. 702; *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001)).

As to the issue of reliability, the Supreme Court in *Daubert* identified four nonexclusive factors the trial court may consider: (1) whether the opinion is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operations; and (4) whether the theory has been accepted in the scientific community. *See Aircraft Fueling Systems, Inc. v. Southwest Airlines Co.*, 2011 WL 6122627, at *5 (N.D. Okla. Dec. 8, 2011) (Frizzell, J.) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 593-95 (1993)).

The Court's inquiry is "flexible," but the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Bright v. Ohio Nat'l Life Assurance Corp.*, 2013 WL 12327512 at *1 (Jan. 09, 2013) (Frizzell, C.J.). "At a minimum, the [expert] should describe the method he used in reaching, and the data supporting, his determination." *Alexander v. Smith & Nephew, P.L.C.*, 98 F. Supp. 2d 1276, 1284 (N.D. Okla. 2000). "The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of a non-scientific, experience based-testimony." *Aircraft Fueling Systems,* 2011 WL 6122627 at *5. "The Court

10

cannot rely on an expert's mere assurance that the methodology and data are reliable." *Alexander,* 98 F. Supp. 2d at 1293. "An expert's testimony may be excluded where it is based on subjective beliefs or unsupported speculation which is no more than *ipse dixit* guesswork." *Bright v. Ohio Nat'l Life Assurance Corp.*, 2012 WL 12888316 at *2 (N.D. Okla. November 29, 2012) (Frizzell, C.J.).

"The second prong of the *Daubert* inquiry concerns relevancy or 'fit.'" *Aircraft Fueling Systems,* 2011 WL 6122627 at *6. A trial court must look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact. *See id.*

## IV.    ARGUMENT

### A.    Mr. Friedman is Not Qualified to Offer an Opinion on the Distinctiveness of VGT's Alleged Trade Dress and His Methodology is Unreliable

Mr. Friedman is not qualified to offer opinions on the distinctiveness of VGT's alleged trade dress. The Court determines whether an expert is qualified to render an opinion based on knowledge, skill, experience, training, or education. *See Bright*, 2013 WL 121479 at *1. Mr. Friedman's deposition testimony establishes that he does not have the "knowledge, skill, experience, training, or education" to qualify him to opine on the distinctiveness of VGT's alleged trade dress in this case.

Mr. Friedman does not have a degree in marketing, *see* Friedman Dep. at 42:12-14, and he has never performed a consumer confusion survey. *See id.* at 46:10-14. His experience playing VGT and Castle Hill games is limited to one trip in October 2017 to a single tribal casino for this case. *See id.* at 48:11-49:3. The last time he played a Class II game before that appears to have been in a non-tribal casino in 2010. *See* Friedman Dep. at 279:2-7. His "experience" with Class II games prior to this case is limited to serving as an expert in a few patent cases and a regulatory case, primarily for a single manufacturer, and he cannot recall any specifics of the games in those cases. *See id.* at 255:15-

11

257:8.  Simply put, Mr. Friedman is unqualified to opine on whether the appearance of VGT's games is distinctive.

Mr. Friedman's opinions are also unreliable.  "The Court cannot rely on an expert's mere assurance that the methodology and data are reliable."  *Alexander,* 98 F. Supp. 2d at 1293.  "An expert's testimony may be excluded where it is based on subjective beliefs or unsupported speculation which is no more than *ipse dixit* guesswork."  *Bright*, 2012 WL 12888316 at *2.

First, Mr. Friedman's lack of experience in the Class II field makes his testimony unhelpful to the jury.  Mr. Friedman admittedly has limited knowledge of Class II games other than videos and pictures he has reviewed in connection with this lawsuit.  Mr. Friedman attempts to rely upon his knowledge of patents or software for specific Class II games he has opined on as an expert in the past, and to try to relate the games at issue to Class III games, but this generalized experience is not helpful to assist the jury regarding the distinctiveness of VGT's alleged trade dress.  *See Bright*, 2013 WL 121479 at *2 (citation omitted) ("Though a proffered expert possesses knowledge as to a general field, the expert who lacks specific knowledge does not necessarily assist the jury.").

Mr. Friedman's deposition testimony demonstrates that he is unqualified to offer an opinion on whether VGT's games are distinctive.  Aside from his single October 2017 trip to a single tribal casino, *see* Friedman Dep. 48:11-50:22, Mr. Friedman's opinions in this case were primarily drawn from videos and documents.  Mr. Friedman admitted that he did not know whether other Class II manufacturers used a mechanical bell, or any bell, to signal awards.  *See* Friedman Dep. at 300:10-16. He likewise did not know if other manufacturers used a strobe to indicate a win.  *See* Friedman Dep. at 303:15-17.  His knowledge of free spin bonus features is limited to videos and photographs he was shown by counsel, and he has not seen any other free spin bonus features other than VGT and Castle Hill's in person.  *Id.* at 341:17-342:22.

In short, Mr. Friedman's opinion that VGT's games have a distinctive trade dress is based on nothing more than Mr. Friedman's own unwarranted beliefs. He does not have sufficient industry experience, and did not even attempt to perform sufficient research that might enable him to render a reliable opinion and to assist the jury. Despite his lack of qualifications and limited knowledge of the Class II industry, Mr. Friedman purports to offer a distinctiveness opinion; however, Mr. Friedman failed to perform even a limited investigation to educate himself on VGT's alleged trade dress, Castle Hill's gaming machines, or other competitors' Class II games in the industry before issuing his report, such that his opinions on the distinctiveness of VGT's games is unreliable and solely based on Mr. Friedman's pure *ipse dixit*. Mr. Friedman should be precluded from testifying that VGT's alleged trade dress is distinctive.

**B.    Mr. Friedman is Not Qualified to Offer an Opinion on the Value of VGT's Class II Development System or Castle Hill's Alleged Avoided Research and Development Costs and His Methodology is Unreliable**



In his expert report Mr. Friedman opined that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Report ¶ 59. Mr. Friedman references these figures throughout his report. *See e.g.*, Report ¶ 96. Mr. Friedman also opines that Castle Hill was able to develop its Class II system in less time than VGT ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ *See* Report ¶ 95. Mr. Friedman largely bases these opinions on a single email from former VGT employee and current Castle Hill employee, Alan Roireau. *See* Report, ¶¶ 59, 96; *see also* Exhibit D. Mr. Friedman also purportedly bases his opinions on discussions he had with VGT employees and his own experience. *See* Report ¶¶ 55-59; Friedman Dep. at 221:18-224:20.

Mr. Friedman is not qualified to offer opinions on the value of VGT's Class II system, or Castle Hill's alleged avoided research and development costs. Mr. Friedman does not have a degree in accounting, and has no educational course work or formal work experience in accounting. *See*

Friedman Dep. at 41:5-7. He also has no education or training in the field of valuing software. *Id.* at 41:18-42:3. Although Mr. Friedman acknowledges that there are recognized methods for valuing software, he is not familiar with any of them. *See Id.* at 42:5-11.

Mr. Friedman's methodologies used in arriving at his valuation are entirely unreliable and unhelpful to the jury. First, to arrive at his valuation, Mr. Friedman relied upon improper conclusions about how quickly Castle Hill was able to get to market, stating only, in conclusory fashion, that ███████████████████████████████████████████████████████
████████████████████████████████████ Friedman Dep. at 223:12-224:4. However, Mr. Friedman admitted that he had not actually reviewed *any* underlying Castle Hill or VGT financial records in reaching his opinion. Instead, Mr. Friedman has relied upon Al Roireau's email and conversations with VGT employees for his understanding of the development cost of VGT's Class II system. *See id.* at 224:8-232:11.

The VGT employees with whom Mr. Friedman spoke and on whom he relied are software engineers, not accountants. *Id.* at 225:3-226:7. The records those VGT software engineers reviewed in preparation for consulting with Mr. Friedman were only to confirm the number of engineers working on projects; there is no indication that any VGT financial records were reviewed. *Id.* at 226:12-227:5. Mr. Friedman did not personally review any VGT time records for the software engineers to determine how much time was spent on development of VGT's source code. *See id.* at 227:1-5. And although he offers opinions about alleged avoided research and development costs in reliance on Mr. Roireau's email, Mr. Friedman conceded that his opinion does not actually quantify those costs. *See id.* at 227:10-228:2.

For Castle Hill avoided development costs, Mr. Friedman relied upon summaries contained in Castle Hill's expert report and a marketing "pitch deck" for his understanding of Castle Hill's development costs and allegedly avoided costs. *See id.* at 224:8-232:11. However, an expert's reliance

on summary documents without reviewing the underlying supporting documentation renders the expert's opinions unreliable. *See Aircraft Fueling Systems,* 2011 WL 6122627, at *6. Mr. Friedman's failure to review the underlying VGT and Castle Hill financial documents renders his valuation opinions unreliable.

Second, Mr. Friedman's valuation is mere *ipse dixit.* Mr. Friedman speculates that Castle Hill got to market too quickly. But experts cannot make conclusory and unsubstantiated opinions that a defendant's technology could not have been created in a given period of time without knowledge of the plaintiff's system. *See Skycam, Inc. v. Bennett,* 2011 WL 2551188 at *4 (N.D. Okla. June 27, 2011) (Frizzell, C.J.) (holding such opinions to be unsubstantiated and impermissible *ipse dixit* and that no experts would be permitted to make such conclusory statements "unless testimony setting forth the grounds for the opinion is elicited beforehand."). While Mr. Friedman would have us believe that he has ██████████████ *see* Friedman Dep. at 230:12-14, the Court should not take his word for it. *See Alexander,* 98 F. Supp. 2d at 1293 ("The Court cannot rely on an expert's mere assurance that the methodology and data are reliable.").

Third, Mr. Friedman's adoption of Mr. Roireau's figures of ███████████████ ████████████████████████████████████ not an appropriate methodology. Simply having Mr. Friedman review Mr. Roireau's email and stamp it with approval does not turn it into an expert opinion: a "party may not 'elevate and advocate the value of individual evidence by having it recounted by an expert.'" *iFreedom Direct Corp. v. First Tennessee Bank Nat. Ass'n,* 2012 WL 3067597 at *3 (D. Utah July 27, 2012). Mr. Friedman cannot simply adopt Mr. Roireau's subjective financial opinion without doing any actual analysis. *See TK-7 Corp. v. Barbouti,* 993 F.2d 722 (10th Cir. 1993) ("expert failed to demonstrate any basis for concluding that another individual's opinion on a subjective financial prediction was reliable, other than the fact that it was

the opinion of someone he believed to be an expert who had a financial interest in making an accurate prediction.").

Here, of course, Mr. Roireau has *not* been presented as an expert by either party, and has testified (repeatedly) that his "calculation" was nothing more than a back-of-the-envelope guesstimate, made without any actual supporting data:



Roireau Dep. at 206:7-18 **(Exhibit E)** (emphasis added).

Finally, Mr. Friedman's opinions are not helpful to the jury. His "expert" opinions are yet more back-of-the-envelope calculations based solely on years of development, number of developers, and average salary per developer. *See* Report ¶ 59. Mr. Friedman's opinions regarding the valuation of VGT's game development system and Castle Hill's avoided costs of development are flawed and unreliable, and should be excluded.

**C.    Mr. Friedman's Methodology is Unreliable for His Technical Opinions**

**1.    Mr. Friedman Failed to Provide Any Opinion that Castle Hill Copied VGT's Source Code, so his Last-Ditch Effort to Cobble Together Such an Opinion by Summarizing Testimony Must be Excluded.**

Mr. Friedman's admission that he did not provide an opinion that Castle Hill copied VGT's source code precludes Mr. Friedman from offering any opinion on source code misappropriation at the time of trial. In his expert report, Mr. Friedman specifically declined to give an opinion that Castle Hill copied VGT's source code. *See* Friedman Reply ¶ 73 ████████████████ ████████████████████████    Mr. Friedman confirmed that he gave no such opinion at his deposition:



*See* Friedman Dep. at 159:5-8; *see also* Friedman Dep. at 168:13-19.

Nonetheless, later in his Report, Mr. Friedman summarized various evidence and testimony which, according to Mr. Friedman, purportedly demonstrates that former VGT employees took source code when they left VGT.  *See* Friedman Report ¶¶ 103-106.  Mr. Friedman then went on to opine that the former VGT employees ████████████████████████████  *See* Friedman Report ¶ 108.

It is, of course, improper for an expert to simply summarize evidence. But Mr. Friedman's attempt here to summarize allegations that CHG took VGT source code is even more egregious because Mr. Friedman admitted at his deposition that *he did not actually review any of said evidence*, and that he has no other evidence supporting an opinion that CHG stole source code:

████████████████████████████

*See* Friedman Dep. at 168:20-169:5.

Mr. Friedman's opinions that former VGT employees who later went to work at Castle Hill misappropriated VGT source code or other trade secrets or confidential information, and then Castle Hill *used* that source code or other information, is pure *ipse dixit*.  Mr. Friedman admitted numerous times in his deposition that he did not actually offer an opinion regarding source code copying.  Nonetheless, Mr. Friedman opines that Castle Hill incorporated allegedly misappropriated source code and other trade secrets or confidential information, which he admittedly has not even reviewed.  *See* Friedman Dep. at 169:7-12.

Mr. Friedman's methodology is speculative, unreliable, and prejudicial.  Mr. Friedman should be precluded from offering any opinions on source code copying or misappropriation, or misappropriation of trade secrets or confidential information, or of information allegedly taken by former VGT employees and used by Castle Hill.  *See Gen. Elec. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

      **2.**      **Mr. Friedman Did No Independent Research to Determine Whether VGT's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is Generally Known, So His Opinions on this Issue Should be Excluded.**

In his expert report, Mr. Friedman opines that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is not generally known.  *See* Friedman Report ¶ 70.  Mr. Friedman goes on to opine that the ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *Id.* at ¶ 72.  However, Mr. Friedman did not conduct any independent research to determine whether ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Accordingly, his opinion is unsupported, his methodology is unreliable, and his opinions should be excluded.

During questioning at his deposition about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Mr. Friedman admitted that he performed no research on whether the ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮



██████████

Friedman Dep. at 134:20-135:7.

Mr. Friedman's concession that he did not perform *any* independent research to determine whether ████████████████████████████ renders his opinions on this issue completely unsupported and unreliable. Mr. Friedman's sole basis for his opinion that the ████████████████████████████ is testimony of a low-level Castle Hill employee who was speculating on the issue. *See* Friedman Report ¶ 70. Mr. Friedman otherwise admits in his report that ████████████████████████████████████ ███████████████████████████ but that he is █████████ ████████████████████████████ *See* Friedman Report ¶ 70. However, Mr. Friedman admittedly failed to take any steps to confirm his belief. Accordingly, his opinions are merely speculation, and should be excluded. *See Bright*, 2012 WL 12888316 at *2 ("An expert's testimony may be excluded where it is based on subjective beliefs or unsupported speculation which is no more than *ipse dixit* guesswork.").

### D.     Mr. Friedman Should be Excluded Because his Report Includes Significant Summaries of Evidence and Testimony of Fact Witnesses

Mr. Friedman should be precluded from summarizing or characterizing the alleged content of documents and the testimony of fact witnesses. Mr. Friedman spends a significant portion of his expert report and reply report characterizing documents and testimony in the case. *See, e.g.*, Report ¶¶ 35-40, 63-73, 74-78, 88-126; Friedman Reply ¶¶ 36, 40, 48, 124. He does so not to explain the basis for his own opinions, but in an effort to put an "expert" stamp of approval on the purported evidence and to "elevate and advocate the value of the individual evidence by having it recounted by an expert." *iFreedom Direct Corp. v. First Tennessee Bank Nat. Ass'n*, 2012 WL 3067597 at *3 (D. Utah July 27, 2012) (citation omitted).

"[N]o expert or any other witness will be permitted to simply summarize the facts and depositions of others." *iFreedom Direct*, 2012 WL 3067597 at *3; *see also National Indemnity Co. v. Nelson, Chipman & Burt*, 2013 WL 12303138 at *1 (D. Utah Jan. 22, 2013) (same). Expert testimony that is "simply a 'summation' of the evidence or an attempt to make a 'closing argument' via an 'expert' should be excluded." *iFreedom Direct*, 2012 WL 3067597 at *3 (citations omitted). The Court should preclude Mr. Friedman from summarizing or characterizing documents and testimony.

**E.      Mr. Friedman Should be Excluded Because his Report Includes Improper Legal Conclusions and Legal Standards**

Finally, Mr. Friedman should be precluded from giving opinions which are legal conclusions or legal standards.  An expert cannot testify as to what constitutes a trade secret or misappropriation, and an expert cannot argue based on his mere *ipse dixit* that but for knowledge of the plaintiff's system, a defendant's technology would have taken longer to develop.  *Skycam, Inc. v. Bennett*, 2011 WL 2551188 at *4-5 (N.D. Okla. June 27, 2011) (Frizzell, J.).

Mr. Friedman's report is comprised of improper factual summaries and legal opinions.  Such testimony would usurp the Court's role, and would be of no help to the jury.  "[A]n expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts." *See The Pioneer Centres Holding Company Employee Stock Ownership Plan & Trust v. Alterus Fin., N.A.*, 858 F.3d 1324, 1342 (10th Cir. 2017).  And an expert may not opine on whether testimony is credible, even if such evaluation is based on scientific or technical expertise. *See U.S. v. Hill*, 749 F.3d 1250, 1260 (10th Cir. 2014) (citing *Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005)).  "[I]t is axiomatic that the judge is the sole arbiter of the law and its applicability." *See Bright v. Ohio Nat'l Life Assurance Corp.*, 2013 WL 121479 at *3 (N.D. Okla. Jan. 9, 2013) (Frizzell, C.J.) (quoting *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988)).  While an otherwise qualified expert applying a reliable methodology may opine on the ultimate legal issue in a case, an

20

expert cannot submit a report consisting primarily of legal conclusions.  *See Bright*, 2013 WL 12179 at *4.

Mr. Friedman improperly opines on legal standards, asserts that specific deposition testimony is credible, and then applies the law to the expert's summarized version of the evidence, resulting in reports consisting mostly of legal conclusions.  Throughout his reports, Mr. Friedman opines that specific ███████████ and other information are "trade secrets" and "confidential information" and that such "trade secrets" and "confidential information" were "misappropriated" by Castle Hill.  *See, e.g.*, Friedman Report ¶¶ 56-60, 111-126.  Mr. Friedman also opines that Castle Hill's Class II system could not have been developed so quickly without knowledge of VGT's development system.  *See, e.g.*, Friedman Report ¶¶ 95-98, 110.

However, "in trade secret cases, courts have permitted experts to testify about what processes and materials were 'unique;' what information a party possessed; and the custom and usage of the industry – but *not* that the information was a 'trade secret.'"  *Skycam, Inc. v. Bennett*, 2011 WL 2551188 at *5 (N.D. Okla. June 27, 2011) (Frizzell, J.) (emphasis in original) (citing *SL Montevideo Tech., Inc. v. Eaton Aerospace, LLC*, 2005 WL 1923811, at *7 (D. Minn Aug. 11, 2005)).

Likewise, courts have precluded experts from testifying that an alleged trade secret has been "misappropriated."  *See Joe N. Pratt Ins. v. Doane*, 2009 WL 5220646 at *5 (S.D. Tex. Dec. 30, 2009) ("However, to the extent [the expert]'s report attempts to comment on the trade-secret status of the documents with legal conclusions and phrases, such as 'misappropriate' and 'proprietary information,' the [defendants]' second objection to opinion number two is SUSTAINED.  This Court, like other courts, find that expert legal conclusions about whether information consists of 'trade secrets' are unhelpful to the fact finder.");  *Bausch & Lomb, Inc. v. Alcon Labs, Inc.*, 79 F. Supp. 2d 252, 259 (W.D.N.Y. 2000) (precluding expert from testifying about what constitutes trade secret and misappropriation under state law, and also excluding expert from offering "secondhand"

testimony of facts underlying trade secret misappropriation and unfair competition claims allegedly arising from wrongful disclosure of trade secrets by former employee).

An expert cannot give conclusory and unsubstantiated opinions that a defendant's technology could not have been created in a given period of time without in-depth knowledge of the two systems which are the subject of the comparison. *See Skycam, Inc.*, 2011 WL 2551188 at *4 (holding such opinions to be unsubstantiated and impermissible *ipse dixit* and that no experts would be permitted to make such conclusory statements "unless testimony setting forth the grounds for the opinion is elicited beforehand.").

Therefore, Mr. Friedman cannot testify that ██████████ or other information set forth in his report are or constitute "trade secrets" or "confidential or proprietary information," because "this testimony would not be helpful to the jury and invades the province of the jury on a question it is capable of answering without benefit of expert testimony." *See Skycam, Inc.*, 2011 WL 2551188 at *5. For similar reasoning, Mr. Friedman cannot testify that VGT's alleged "trade secrets" or "confidential information" have been "misappropriated." *See Doane*, 2009 WL 5220646 at *5. Mr. Friedman also cannot testify that Castle Hill's Class II system could not have been developed so quickly without knowledge (or negative know-how) of VGT's system. *See Skycam, Inc.*, 2011 WL 2551188 at *4. This essentially reduces Mr. Friedman's opinions to summarizing the documents and testimony in the case, which as discussed *supra*, also should be excluded. Mr. Friedman's opinions are unreliable and unhelpful to the jury. Mr. Friedman's statements of the law and legal conclusions are improper, and should be excluded.

## V.    CONCLUSION

Defendants, Castle Hill Studios LLC, Castle Hill Holdings LLC, and Ironworks Development LLC respectfully request that their motion be granted.

Dated:  October 12, 2018

Respectfully submitted,

/s/ Robert C. Gill
Robert C. Gill (admitted *pro hac vice*)
Henry A. Platt (admitted *pro hac vice*)
Thomas S. Schaufelberger (admitted *pro hac vice*)
Matthew J. Antonelli (admitted *pro hac vice*)
Jeremy B. Darling (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
henry.platt@saul.com
tschauf@saul.com
matt.antonelli@saul.com
jeremy.darling@saul.com

Sherry H. Flax (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
500 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 332-8764
(410) 332-8785 (facsimile)
sherry.flax@saul.com

James C. Hodges, OBA #4254
JAMES C. HODGES, P.C.
2622 East 21st Street, Suite 4
Tulsa, Oklahoma 74114
(918) 779-7078
(918) 770-9779 (facsimile)
JHodges@HodgesLC.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of October, 2018, I caused a copy of the foregoing

**DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT STACY FRIEDMAN – PUBLIC REDACTED VERSION** to be filed using the Court's ECF system, which will provide electronic notification of filing to the following counsel for Plaintiff:

Graydon Dean Luthey, Jr.
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
(918) 595-4821
(918) 595-4990 (facsimile)
dluthey@gablelaw.com
*Counsel for Plaintiff*

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1221
(212) 841-1010 (facsimile)
nroman@cov.com
*Counsel for Plaintiff*

Gary M. Rubman
Peter Swanson
Michael Sawyer
Rebecca B. Dalton
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
(202) 778-5465 (facsimile)
grubman@cov.com
pswanson@cov.com
msawyer@cov.com
rdalton@cov.com
*Counsel for Plaintiff*

*/s/ Robert C. Gill*
Robert C. Gill