IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) VIDEO GAMING TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> 1) CASTLE HILL STUDIOS LLC <br> (d/b/a CASTLE HILL GAMING); <br> 2) CASTLE HILL HOLDING LLC <br> (d/b/a CASTLE HILL GAMING); and <br> 3) IRONWORKS DEVELOPMENT, LLC <br> (d/b/a CASTLE HILL GAMING) <br><br> Defendants. | Case No. 4:17-cv-00454-GKF-JFJ <br><br> **REDACTED** |

**PLAINTIFF VIDEO GAMING TECHNOLOGIES, INC.'S
OPPOSITION TO DEFENDANTS' MOTION IN LIMINE
TO EXCLUDE EVIDENCE OF ACTUAL CONFUSION**

Defendants Castle Hill Studios LLC, Castle Hill Holdings LLC, and Ironworks Development LLC's (collectively, "CHG") Motion *in Limine* to exclude the fourteen instances of actual confusion identified by Plaintiff Video Gaming Technologies, Inc. ("VGT") (Dkt. 147, "Motion") ignores that courts routinely accept such evidence as the "best evidence of likelihood of confusion." *See Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1534 (10th Cir. 1994) ("Actual confusion in the marketplace is often considered the best evidence of likelihood of confusion."); *First Fid. Bank, N.A. v. Fid. Bank*, No. CIV-05-887-R, 2006 WL 6884605, at *6 (W.D. Okla. Apr. 18, 2006) (citing *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 974 (10th Cir. 2002) ("[E]vidence of actual confusion may be the best evidence of likelihood of confusion."); *Sara Lee Corp. v. Sycamore Family Bakery Inc.*, No. 2:09CV523DAK, 2009 WL 3617564, at *4 (D. Utah Oct. 27, 2009) (citing *Standard Oil Co. v. Standard Oil Co.*,

1

252 F.2d 65, 74 (10th Cir. 1958)) ("Although the Lanham Act only requires likelihood of confusion, actual confusion is recognized as the best evidence of likelihood of confusion."). After all, it is difficult to contend that confusion is unlikely when it has already occurred many times over.

Although CHG's desire to keep out such evidence is understandable, none of the bases it asserts warrants exclusion. As discussed below, the evidence is admissible, relevant, and robust.

**I.      ARGUMENT**

**A.     VGT Can and Will Authenticate All Evidence of Actual Confusion.**

Tacitly acknowledging the admissibility of the other twelve instances of actual confusion, CHG seeks to exclude evidence regarding two instances of confusion on the specious ground that they originate from the Internet. Specifically, CHG challenges postings on the Jokers Wild Forum website, Ex. A, VGT0001673–87,[1] and the Naskila Gaming Facebook page, Ex. B, VGT0001661–72, showing confusion among casino players as to which games are made by VGT and which games are made by CHG.

CHG's position is contrary to prevailing case law: Social media posts and other evidence taken from webpages can be authenticated by "(1) testimony from a witness who states that the evidence is what it is claimed to be, (2) distinctive characteristics of the evidence itself, such as appearance, contents, substance, internal patterns or other distinctive characteristics, taken in conjunction with circumstances, that can authenticate the documentary evidence, or (3) evidence that shows that the documentary evidence is accurately produced through a process or system." *Parker v. State*, 85 A.3d 682, 685 (Del. 2014) (applying Rule 901 of the Delaware Uniform

---

[1] The exhibits for this motion are attached to the Declaration of Rebecca Dalton in Support of Plaintiff's Opposition to Defendants' Motion *in Limine* to Exclude Evidence of Actual Confusion.

Rules of Evidence, which is substantially identical to Rule 901 of the Federal Rules of Evidence) (internal punctuation omitted); *see also* 29 Am. Jur. 2d *Evidence* § 96 (2014) ("A court may take judicial notice of internet material."). Nor are these the only ways to authenticate such evidence. *See, e.g.*, *Parker*, 85 A.3d at 685 ("[t]hese are not the exclusive ways to authenticate social media posts"); *see also O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web."); *United States v. Vayner*, 769 F.3d 125, 133 (2d Cir. 2014) ("the 'type and quantum' of evidence necessary to authenticate a web page will always depend on context").

Specifically in the context of user comments or reviews showing consumer confusion, courts have held evidence such as a "website printout of the Yelp webpage and user reviews [to be] admissible." *Rib City Franchising, LLC v. Bowen*, No. 2:15-CV-00636, 2015 WL 6695723, at *5 & n. 6 (D. Utah Nov. 3, 2015). Courts have found such evidence of actual confusion to be admissible even when the online posts are anonymous. *See You Fit, Inc. v. Pleasanton Fitness, LLC*, No. 8:12-CV-1917-T-27EAJ, 2013 WL 521784, at *5 (M.D. Fla. Feb. 11, 2013) ("While these anonymous posts are not conclusive evidence of actual confusion, they are indicative of potential consumer confusion."). And they have overruled hearsay objections to such evidence of actual confusion on the ground that it "demonstrate[s] the declarant's then existing state of mind." *See Univ. of Kansas v. Sinks*, 565 F. Supp. 2d 1216, 1231 (D. Kan. 2008) (online post admissible "to show that the declarant was confused").

CHG's reliance on *Clark v. Time Inc.*, 242 F. Supp. 3d 1194 (D. Kan. 2017), *appeal dismissed*, 727 F. App'x 975 (10th Cir. 2018), is misplaced. That case stands only for the unremarkable proposition that comments from a webpage require authentication just like any other form of documentary evidence—not that online postings cannot be authenticated. *Id.* at

1205 ("A proponent may establish authenticity by the evidence's 'appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.'"). In that case, unlike here, "plaintiff ha[d] no response to defendants' challenge to the document's authenticity." *Id.*

Here, by contrast, VGT intends to present testimony from a VGT employee authenticating the Internet postings. *See Foreword Magazine, Inc. v. OverDrive, Inc.*, No. 1:10-CV-1144, 2011 WL 5169384, at *3 (W.D. Mich. Oct. 31, 2011) ("The lower courts generally hold that an affidavit of a witness, when viewed in combination with circumstantial indicia of authenticity (such as the existence of the URL, date of printing, or other identifying information) would support a reasonable juror in the belief that the documents are what the proponent says they are.") (citing, *inter alia*, *United States v. Meienberg*, 263 F.3d 1177, 1181 (10th Cir. 2001)); *Toytrackerz LLC v. Koehler*, No. Civ. A. 08-2297-GLR, 2009 WL 2591329, at *6 (D. Kan. Aug. 21, 2009) ("To authenticate printouts from a website, the proponent must present evidence from a witness with personal knowledge of the website at issue stating that the printout accurately reflects the content of the website and the image of the page on the computer at which the printout was made."); *United States v. Needham*, 852 F.3d 830, 836 (8th Cir. 2017) ("Exhibits depicting online content may be authenticated by a person's testimony that he is familiar with the online content and that the exhibits are in the same format as the online content.").

Moreover, CHG's misleading argument that VGT has not produced "evidence demonstrating that the Jokers Wild Forum and Facebook postings are what they purport to be," Mot. at 5, disregards evidence from CHG's own officials and employees supporting the authentication testimony VGT intends to offer. ███████████████████████████████████████

4



Therefore, at a minimum, CHG's challenge to evidence of actual confusion in the form of postings on the Jokers Wild Forum website and the Naskila Gaming Facebook page is premature. The Court should await a proffer of such evidence before making determinations of authenticity and admissibility.

**B.     All VGT Evidence of Actual Confusion Is Relevant.**

Similarly, CHG has it backward when it argues, *see* Mot. at 6, that instances of actual confusion involving VGT employees, CHG employees, and casino employees are irrelevant. To the contrary, it is even *more* noteworthy that those most familiar with the games—those who make them, lease them, and service them—have been confused. If such insiders mistake VGT and CHG games for one another, one can only imagine the difficulty faced by players trying to

discern differences between them. Indeed, it seems unlikely that there could be more powerful evidence of actual confusion.

Contrary to CHG's suggestion, *see* Mot. at 6, there is no rule or presumption that such confusion is irrelevant. *See Sara Lee Corp. v. Sycamore Family Bakery Inc.*, No. 2:09CV523DAK, 2009 WL 3617564, at *4 (D. Utah Oct. 27, 2009) ("These incidents include both confusion by those involved regularly in the sale and distribution of food products like bread, as well as confusion among ordinary consumers."); *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 321 (3d Cir. 2015) ("The likelihood of confusion with which the Lanham Act is concerned is not limited to confusion of products among purchasers."); 4 J. Thomas McCarthy on Trademarks and Unfair Competition, § 23:5 (5th ed.) ("Relevant confusion among non-purchasers may well extend beyond the confusion of those persons positioned to influence directly the decisions of purchasers.").[2]

To the contrary, courts have recognized the relevance of such confusion in the precise circumstance here. Specifically, they have held that "non-consumer confusion may . . . be relevant to the 'likelihood of confusion' inquiry in three specific and overlapping circumstances—namely where there is confusion on the part of: (1) potential consumers; (2) *non-consumers whose confusion could create an inference that consumers are likely to be confused*; and (3) non-consumers whose confusion could influence consumers. In all three

---

[2] CHG's citations to *Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 557 (10th Cir. 1998), and *Klein-Becker USA, LLC v. Prod. Quest Mfg., Inc.*, 429 F. Supp. 2d 1248, 1253-54 (D. Utah 2005), are inapposite. The court in *Heartsprings* considered relevance of confusion from plaintiff's "random acquaintances" with no connection to either party's industry. *See Heartsprings*, 143 F.3d at 557. The court in *Klein-Becker* cited *Heartsprings* without analysis and then cursorily addressed the status of those confused in assessing likelihood of success on the merits of trademark and trade dress claims, which goes to weight accorded evidence, not admissibility.

6

instances, the non-consumer confusion bears a relationship to the existence of confusion on the part of consumers themselves." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1214–17 (9th Cir. 2012) (emphasis added) ("such an approach appears to be consistent with rulings from other courts").

As noted, confusion on the part of those particularly knowledgeable about the products at issue can be even *stronger* evidence than confusion on the part of unsophisticated customers. *See Imagineering, Inc. v. Van Klassens, Inc.*, 53 F.3d 1260, 1265 (Fed. Cir. 1995) ("Because dealers and experts are more sophisticated about the origins and sources of products lines than average consumers, their confusion is highly probative on the question of whether a likelihood of confusion exists.") (internal punctuation omitted); *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 297 (S.D.N.Y. 2002) (confusion of "quintessential sophisticated buyer . . . speaks volumes about the likely confusion of less informed customers"); *CSC Brands LP v. Herdez Corp.*, 191 F. Supp. 2d 1145, 1152 (E.D. Cal. 2001) (finding confusion of member of trade to be "particularly significant" because entity "would likely be less at risk to be confused").

Accordingly, here, confusion of VGT, CHG, and casino employees, all of whom work with these games on a daily basis, is, if anything, stronger evidence of likelihood of confusion than confusion on the part of casual casino visitors, who spend less time in casinos and therefore are at greater risk of being confused. In short, far from being irrelevant, confusion of VGT, CHG, and casino employees "speaks volumes about the likely confusion of less informed consumers." *GTFM, Inc.*, 215 F. Supp. 2d at 297.[3]

---

[3] It also bears mention that in other contexts CHG takes the inconsistent position that casinos are the only relevant customers because they lease EGMs directly from manufacturers like VGT and CHG and that CHG does so precisely because CHG wishes to emphasize the casinos' sophistication, *see* CHG's Motion for Summary Judgment (Dkt. 184), ¶ 57 ("The relevant customers for the games at issue are tribal casinos. . . . The tribal casino customers in the current

7

C. **VGT's Evidence of Actual Confusion Is Not *De Minimis*.**

CHG's last attempt to keep from the factfinder this probative evidence—its argument that VGT's evidence of actual confusion is *de minimis* and unfairly prejudicial, *see* Mot. at 8—is unavailing, and not just because CHG incorrectly assumes that it will succeed in excluding evidence of confusion among VGT, CHG, and casino employees, as discussed above.

Most fundamentally, neither of the two circumstances warranting application of any *de minimis* rule is present here. The Tenth Circuit has explained that "a plaintiff must demonstrate more than isolated instances of actual confusion when (1) the trademarked product and the defendant's product are not physically similar or are not used for similar purposes, or (2) the defendant has put on its own substantial evidence demonstrating no significant actual confusion—for example, testimony from consumers stating that they were not confused." *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1076 (10th Cir. 2009). Here, however, the products are physically similar; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[4] And CHG has introduced no evidence—in the form of a consumer survey or otherwise—of an absence of actual confusion. Therefore, even accepting CHG's characterization of the instances of confusion as isolated, they are still admissible.

---

market are knowledgeable and sophisticated about gaming machines. These customers are familiar with VGT products and the manufacturers of other games in other casinos.").

[4] Tellingly, in CHG's Motion for Summary Judgment, CHG does not include images of the VGT and CHG machines, but rather conclusorily asserts that they are dissimilar and therefore are unlikely to be confused. VGT's opposition includes such images.

The cases cited by CHG are distinguishable for these and other reasons, including that *none* arose in the context of a motion *in limine*. In *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1091-92 (10th Cir. 1999), the court reasoned that the trademarked product and the defendant's product were not similar ("[t]his disconnection greatly reduces the relevance of the similarity of products factor") and that "the visual impact of the plaintiff's mark and the defendants' logo differ[ed] dramatically." Similarly, the court in *Universal Money Centers, Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1535-36 (10th Cir. 1994), found that the proffered "evidence of actual confusion is especially undermined in this case by the sheer lack of similarity between the marks" and that the defendant had "introduced substantial, reliable evidence in support of its motion for summary judgment demonstrating no significant actual confusion in the marketplace." Finally, in *Water Pik, Inc. v. Med-Sys., Inc.*, the court considered only three confirmed incidents of alleged confusion[5] and noted the defendant's affirmative evidence of lack of confusion in the form of reliable survey results. *See* 848 F. Supp. 2d 1262, 1274-75 (D. Colo. 2012), aff'd, 726 F.3d 1136 (10th Cir. 2013).

In addition, each of the cases cited by CHG involved seven or fewer instances of confusion, half or less than the fourteen instances that CHG seeks to exclude. Indeed, we are aware of no case in the Tenth Circuit finding evidence of actual confusion to be *de minimis* evidence where, as here, there have been more than seven instances of actual confusion. *See Hornady Mfg. Co. v. Doubletap, Inc.*, 746 F.3d 995, 1005 (10th Cir. 2014) (citing *Water Pik*, *Universal Money Centers*, and *King of the Mountain* in finding three instances to be *de minimis*).

---

[5] The court excluded one of the four original instances as irrelevant because the allegedly confused witness "stated that her mistake was a typographical error." *Water Pik*, 848 F. Supp. 2d at 1274 & n.7.

9

On the other hand, even a single instance of actual confusion may be "worthy of consideration." *See Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 522 (10th Cir. 1987) ("Although this is evidence of a single instance, the confused owner is precisely the one whose confusion is most significant.") (internal quotation omitted). Other courts have found that even "six incidents over six to ten years" exceed the *de minimis* threshold. *Am. Century Proprietary Holdings, Inc. v. Am. Century Cas. Co.*, 295 F. App'x 630, 638 (5th Cir. 2008) ("Given the parties and their respective lines of business, we would not necessarily expect more instances of 'actual confusion' to have come to light."); 4 McCarthy on Trademarks, § 23:14 ("[G]iven the proper factual setting, even just a few instances of actual confusion can provide very persuasive evidence of how and why confusion can occur.").

That VGT has identified 14 instances of actual confusion is all the more impressive given CHG's recent entry into the market and limited presence in casinos, as well as the barriers to obtaining information about consumer confusion. Indeed, as of July 2018, CHG leased only approximately ▮▮▮▮▮, whereas VGT leases approximately ▮▮▮▮▮, Dkt. 184, ¶ 2. Moreover, most instances of consumer confusion may never come to the attention of VGT (or CHG) because, among other reasons, customer complaints demonstrating confusion are more likely to be directed to casino operators at whose establishments players interact with the product. More broadly, it is hardly surprising that there have not been even more reports of actual confusion here. The Tenth Circuit recognizes that evidence of actual confusion is particularly difficult to find for low-priced products such as the games at issue in this case (in terms of cost to casino patrons). *See Brunswick Corp.*, 832 F.2d at 522 ("[S]uch evidence of

10

actual confusion when the product is low priced is more valuable because purchasers are more likely to avoid the brand in the future than complain.").

Finally, it is difficult to take seriously CHG's claim that it would be unfairly prejudiced by introduction of VGT's evidence of actual confusion because it had "no opportunity to cross-examine the individuals who purportedly made those online comments." Mot. at 8-9. CHG neglects to mention that it made no effort to depose witnesses disclosed by VGT as having been confused or otherwise having knowledge about instances of actual confusion, including Jim Marcum, Constance Hollingsworth, Josh Akins, Sheldon Watkins, Rich Schneider, William Harvey, Candace Williams, Daniel Wenzell, Tracer Hamilton, and Mickey Ward (several of whom submitted declarations describing the confusion, *see, e.g.*, Ex. I, VGT0006765–66 (Marcum), Ex. J, VGT0006767–69 (Akins), Ex. K, VGT0053034–35 (Watkins), Ex. L, VGT0056086–87 (Hollingsworth)).[6] There is no reason to believe that CHG would have noticed depositions of the makers of the online statements when it took no action to depose witnesses identified by VGT who had submitted declarations telling their stories of confusion.

## II.  CONCLUSION

For the foregoing reasons, CHG's Motion *in Limine* to Exclude Evidence of Actual Confusion should be denied.

---

[6] Each of the witnesses who submitted declarations resides or works near Tulsa, where CHG took depositions of other VGT witnesses.

November 16, 2018

*/s/ Gary M. Rubman*
Graydon Dean Luthey, Jr., OBA No. 5568
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
Telephone: (918) 595-4821
Facsimile: (918) 595-4990
dluthey@gablelaw.com

Gary M. Rubman
Peter A. Swanson
Michael S. Sawyer
Rebecca B. Dalton
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 778-5465
grubman@cov.com
pswanson@cov.com
msawyer@cov.com
rdalton@cov.com
   (admitted pro hac vice)

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1221
Facsimile: (212) 841-1010
nroman@cov.com
   (admitted pro hac vice)

***Counsel for Video Gaming Technologies, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2018, I filed a redacted version of the foregoing Opposition to Defendants' Motion In Limine to Exclude Evidence of Actual Confusion via ECF, which caused service to be effected on the following counsel for Defendants:

Robert C. Gill
Thomas S. Schaufelberger
Matthew J. Antonelli
Henry A. Platt
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
tschauf@saul.com
matt.antonelli@saul.com
henry.platt@saul.com

Sherry H. Flax
SAUL EWING ARNSTEIN & LEHR, LLP
500 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 332-8764
(410) 332-8785 (facsimile)
sherry.flax@saul.com

James C. Hodges, OBA 4254
JAMES C. HODGES, PC
2622 East 21st Street, Suite 4
Tulsa, OK 74114
Telephone: (918) 779-7078
JHodges@HodgesLC.Com

Duane H. Zobrist
Jonathan S. Jacobs
ZOBRIST LAW GROUP PLLC
1900 Arlington Blvd. Suite B
Charlottesville, VA 22903
Telephone: (434) 658-6400
dzobrist@zoblaw.com
jjacobs@zoblaw.com

*Attorneys for Defendants*

                                                                               */s/ Gary Rubman*