IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) VIDEO GAMING TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> 1) CASTLE HILL STUDIOS LLC <br>    (d/b/a CASTLE HILL GAMING); <br> 2) CASTLE HILL HOLDING LLC <br>    (d/b/a CASTLE HILL GAMING); and <br> 3) IRONWORKS DEVELOPMENT, LLC <br>    (d/b/a CASTLE HILL GAMING) <br><br> Defendants. | Case No. 4:17-cv-00454-GKF-JFJ <br><br> **REDACTED** |

### PLAINTIFF VIDEO GAMING TECHNOLOGIES, INC.'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF DOCUMENTS AND MATERIALS ALLEGEDLY TAKEN BY FORMER VGT EMPLOYEES

Discovery in this case revealed that a number of former employees of Plaintiff Video Gaming Technologies, Inc. ("VGT") hired by Defendants Castle Hill Studios LLC, Castle Hill Holdings LLC, and Ironworks Development LLC (collectively, "CHG") took or retained VGT property following their departure from VGT. The misappropriation included VGT source code, an email archive, a VGT development station containing VGT game math, a hard drive containing proprietary art files, physical slot machine components, and a proprietary VGT lease agreement that a CHG officer took from VGT ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ And these materials and information are only what VGT could find based on emails and what the employees were willing to admit in their depositions.

CHG has offered various excuses for this misconduct. After initially declining even to say *whether or not* it had any VGT materials, CHG eventually asserted that it was "unaware" of

VGT materials in its possession. But that turned out to be wrong. The CHG officer who made this statement "under the penalties of perjury," Jason Sprinkle, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Remarkably, and without acknowledging this testimony, CHG's motion *in limine* to exclude evidence of materials taken by former VGT employees (Dkt. 160, "Motion") continues to make the same "incorrect" assertion—*i.e.*, denying any "personal knowledge" of VGT materials in its possession. Mot. at 1 n.1. Aside from contradicting its own 30(b)(6) witness, CHG's Motion suggests it has not bothered to ask its employees if they took anything from VGT (notwithstanding its obligation to conduct a reasonable inquiry). Perhaps CHG does not want the answer.

Regardless, CHG's attempt to bury its head in the sand is unavailing. CHG cannot credibly assert that the use of misappropriated VGT materials by CHG's own employees, including at least one officer (Mr. Sprinkle), "do[es] not reflect any wrongdoing *by CHG* itself." Mot. at 5. CHG is a small company and knows that many of its employees worked at VGT— indeed, that is why they were hired. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This plan permeated the company, with the officers setting a culture of copying VGT games and routinely discussing information from VGT. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] Citations to Exhibit A-Q are to the exhibits attached to CHG's Motion (Dkt. 160); all citations to Exhibits R-JJ are to the accompanying Declaration of Peter Swanson.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████ In these circumstances, CHG cannot claim ignorance regarding its employees' conduct.

CHG's last-ditch argument that the materials have no relation to VGT's claims for misappropriation of trade secrets and confidential information reflects a fundamental misunderstanding of those claims, which center on CHG's repeated and pervasive use of confidential VGT information in developing CHG's games. The confidential materials taken by the former VGT employees are evidence of specific acts of misappropriation and, more broadly, CHG's intent to misuse VGT's proprietary information. In short, they directly undermine CHG's position that the case is about "remembered information." CHG's Mot. Summ. J. (Dkt. 184) at 49; *see also id.* at 47 ("VGT does not allege that Castle Hill 'stole' anything directly from VGT." (emphasis removed)). Although not all materials taken from VGT are confidential, even non-confidential materials are relevant to VGT's trade dress claims because they were used to copy the look and feel of VGT's games.

## I.     BACKGROUND

At the outset of discovery, VGT served an interrogatory asking Defendants to "[d]escribe all information, Documents, and Things in Your Possession, custody or control that (a) any Former VGT Employee brought from VGT to CHG, (b) were created by or at VGT, or (c) are the property of VGT." Ex. V, Interrogatory No. 13 of Video Gaming Technologies, Inc.'s First Set of Interrogatories to Defendants (September 25, 2017).

CHG's initial response did not answer this interrogatory. Instead, CHG stated that "none of the former VGT employees were asked to bring documents with them, and Castle Hill's practice was and is to tell former VGT employees that they are prohibited from bringing to

Castle Hill any documents belonging to Plaintiff." Ex. W, CHG's Resp. to First Interrog. at 11 (November 22, 2017). Mr. Sprinkle verified this response under penalty of perjury. *Id.* at 12.

After VGT pointed out that the response did not indicate *whether* CHG had any VGT documents or things, CHG supplemented its response to state that "CHG is unaware of any documents in its possession, custody or control that are responsive to this request." Ex. X, CHG's Am. Resp. to First Interrog. at 12 (February 5, 2018). Mr. Sprinkle also verified this response under penalty of perjury. *Id.* at 13.[2]

VGT also served the following request for admission pursuant to Rule 36: "Admit that at least one Former VGT Employee took VGT Documents with him/her when leaving VGT." Ex. Y, Request for Admission No. 1 of Video Gaming Technologies, Inc.'s First Set of Requests for Admission to Defendants (January 5, 2018). In response, CHG claimed that it had made a "reasonable inquiry," but was "without knowledge or information sufficient to admit or deny what every former VGT employee or consultant may or may not have done at the time he or she left VGT. On this basis, and without waiver of the foregoing objections, Castle Hill denies this request." Ex. Z, CHG's Resp. to First Set of Req. for Admis. at 2-3 (February 5, 2018).

CHG supplemented its response twice, eventually including a description of evidence showing that eight former employees took VGT documents or materials with them following their employment. *See* Ex. B at 2–6. For each of the eight employees, some of whom are now officers of CHG, CHG denied the request on the ground that it did not have "knowledge or information sufficient to admit or deny" whether the employee took VGT documents with him when he left VGT. *See id.*

---

[2] VGT served a similar interrogatory that sought an identification of any VGT materials that CHG has "ever had" in its possession, custody, or control. Ex. II at 3. CHG provided the same response that it is "unaware" of any such materials. *Id.*

CHG's Rule 30(b)(6) witness was asked about its discovery responses on this subject.



CHG's Motion details the evidence of materials taken by former VGT employees, which it places into seven categories (hereinafter, the "Misappropriated Materials"). Mot. at 2–4. Yet CHG reaffirms the "incorrect," know-nothing position from its discovery responses—*i.e.*, "CHG is without information or knowledge sufficient to admit or deny whether the documents or materials were taken or retained when the former VGT employees left VGT." *Id.* at 1 n.1.

II.     ARGUMENT

CHG moves to exclude evidence of the Misappropriated Materials under Federal Rules of Evidence 402 and 403. Although nominally a "motion *in limine*," CHG's Motion effectively seeks summary judgment that CHG cannot be held liable for the Misappropriated Materials. Contrary to CHG's arguments, this evidence—which refutes CHG's refrain that the case is limited to "remembered information"—is relevant and admissible.

      A.    **The Misappropriated Materials Are Relevant to VGT's Claims for Misappropriation of Trade Secrets and Confidential Information and Its Claim for Trade Dress Infringement.**

5

As explained below, all but one of the Misappropriated Materials are relevant to VGT's misappropriation claim that former VGT employees working for CHG used VGT's trade secret and confidential information in violation of their duties to VGT, and the remaining item is relevant to VGT's claim for trade dress infringement.



Lease Agreement (No. 7).³ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mr. Sprinkle's ▮▮▮▮▮▮ of the VGT lease agreement is an act of misappropriation for which CHG is liable and for which VGT is entitled to monetary and injunctive relief.⁴

CHG's contention that it "never knew about or acquired any of the materials involved in the Alleged Takings" and that the "materials were never shared with CHG," Mot. at 4, are demonstrably false as to the lease agreement. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As CHG's own authority explains, it is well established that, "in general, 'actions of corporate officers and directors are attributable to the

---

³ The numbers in the subheadings in this section refer to the paragraphs in the Motion describing the Misappropriated Materials. Mot. at 2–4.

⁴ CHG erroneously asserts that VGT does not contend that the lease agreement is confidential information. Mot. at 6. In the very interrogatory responses CHG attaches to its Motion, VGT identified the agreement as an example of the confidential information that CHG misappropriated. Ex. A at 151. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

corporate entity.'" *Ciena Commc'ns Inc. v. Nachazel*, Civil Action No. 09-cv-02845, 2010 WL 3489915, at *4 (D. Colo. Aug. 31, 2010) (quoting *In re Stat-Tech Sec. Litig.*, 905 F. Supp. 1416, 1422 (D. Colo. 1995)) (referring to this as an "unremarkable proposition"); *see also Burlington N. & Santa Fe Ry. Co. v. Phillips Petroleum Co.*, 164 F. Supp. 2d 1272, 1276 (N.D. Okla. 2001) ("[A corporation] can only act through its officers and employees, and these acts are attributed to the corporation under the principles of agency." (citing *Magnum Foods, Inc. v. Cont'l Cas. Co.*, 36 F.3d 1491, 1499 (10th Cir. 1994))).

VGT is also entitled to use the lease agreement to impeach Mr. Sprinkle. As noted above, he stated, under penalty of perjury, that "CHG is unaware of any documents in its possession, custody or control" that (a) any former VGT employee brought from VGT to CHG, (b) were created by or at VGT, or (c) are the property of VGT. Ex. X at 12. ████████ ████████████████████████████████—a fact that contradicts his sworn interrogatory verification. VGT should be permitted to question Mr. Sprinkle on this inconsistency at trial.

Development Station (No. 6). ████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████ This document thus provides another example of Mr. Sprinkle retaining VGT materials and seeking to use them on behalf of CHG (and constitutes further evidence that contradicts his sworn interrogatory verification).

Although CHG points to ████████████████████████████████ ████████████████████, Mot. at 5, that is not binding on the fact-finder, who could (and should) credit Mr. Sprinkle's statement to another CHG officer before litigation commenced, over his self-interested assertions during his deposition.

CHG also argues that "it would be speculative to assert that the VGT development station contained any confidential information," Mot. at 5 n.2, but this is at odds with ▮

Finally, it bears emphasis that even if Mr. Sprinkle was unsuccessful ▮ ▮, the very attempt to do so shows CHG's intent to misappropriate VGT's information.

<u>Source Code (Nos. 2, 4, 5)</u>. CHG employees admitted in documents and/or deposition testimony that they took VGT source code or other computer files following their employment:

- ▮

---

5 ▮ It is unclear how CHG could have complied with its obligations to conduct a reasonable investigation in connection with VGT's discovery requests if it did not ask CHG's employees about these issues, particularly those employees who had worked at VGT.

- ███████████████████████████████
  ██████████████████████████████
  ██████████████████████████████
  ████████████████████████
  ██████████████████████
  ████████████████████████

- ███████████████████████████████
  ███████████████████████████████
  ████

CHG argues that this misappropriation is irrelevant because VGT does not claim that CHG copied its source code, Mot. at 6, but that misses the point. VGT's trade secret claim is based, in part, on CHG's copying of algorithms or other functionality that is reflected in source code (*e.g.*, VGT's ███████████). While the functionality can be copied without copying or even having the source code, keeping the code could have facilitated such copying and would be inconsistent with CHG's position that all of the misappropriated information was "remembered." Dkt. 184 at 49.

Although CHG credits the litigation-driven excuses offered by the former employees, Mot. at 4–5, CHG overlooks evidence pointing in the other direction. For example, ████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

---

6 ████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

██████████████████████████

████████████████████████████████████

██████████████████████████████████,

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

 CHG is free to offer at trial the witnesses' stories ████████████████████ ██████████████████████████████████████, but the fact-finder should be permitted to evaluate the credibility of these witnesses. And even if their excuses are accepted, their possession of code following their employment with VGT (which is not in dispute for Messrs. Suggs and Morgan) makes it more likely that they recalled the contents of the code (including the functionality embodied in the code) once they started working for CHG.

 <u>Computer Graphics Files (No. 1)</u>. ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████   CHG argues that Mr. Milligan never accessed the hard drive after he left VGT and never shared the graphics files with CHG, Mot. at 4–5, but the factfinder is free to evaluate this self-interested testimony, particularly given the substantial evidence of copying VGT's artwork.

Reel Strips (No. 3). ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████

In its Motion, CHG falsely claims that "Mr. Sisson testified that ████████████

████████████████████████████████████." Mot. at 5.

CHG ignores ████████████████████████████

---

[7] CHG states that VGT has not claimed that its artwork is confidential. Mot. at 6. Although public artwork by definition is not confidential, VGT does contend that the computer graphics files that Mr. Milligan misappropriated are proprietary. VGT so stated in an interrogatory response, Ex. A at 143, which CHG ignores.

[8] In this context, a reel strip refers to the printed material containing the various symbols (bars, cherries, etc.) that appear on a slot machine reel.



VGT does not contend that these reel strips were confidential, ▮▮▮▮▮ ▮▮▮▮▮ supports VGT's claim for trade dress infringement. This claim is centered on CHG's detailed copying of the look and feel of VGT's games, including the cabinet, which houses the reels. ▮▮▮▮▮ ▮▮▮▮▮[10]

### B. The Misappropriated Materials Are Relevant to Intent.

The Misappropriated Materials are also relevant to VGT's contention that CHG's misconduct was willful and malicious—an issue that bears on VGT's request for monetary relief, injunctive relief, and attorney's fees. *See, e.g., Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1161 (10th Cir. 2013) ("Under the Lanham Act, plaintiffs must show either actual damages or willful action on the part of the defendant as a prerequisite to recover disgorgement of profits."); 78 Okla. Stat. § 88(B) (providing for exemplary damages for willful and malicious misappropriation).

The improper taking of VGT materials by CHG employees shows an overall intent to misuse VGT's proprietary information and copy VGT's games, whether or not the materials were actually used in developing CHG's games. *See U.S. Gypsum Co. v. Lafarge N. Am. Inc.*,

---

[9] ▮▮▮▮▮

[10] Even if the Court does not find evidence of the Misappropriated Materials affirmatively admissible, it would become admissible if CHG (or any former employee) claims at trial that no former employee took materials from VGT and/or brought those materials to CHG or that that the former employees complied with their confidentiality obligations to VGT.

No. 03 C 6027, 2009 WL 3871823, at *5 (N.D. Ill. Nov. 17, 2009) (finding that "[e]vidence concerning the scope and variety of [confidential] information acquired by Defendants may, however, be relevant for the purpose of demonstrating Defendants' possible intent, motive, or plan in acquiring the information"); *Miller UK Ltd. v. Caterpillar, Inc.*, No. 10 C 3770, 2013 WL 474380, at *4 (N.D. Ill. Feb. 7, 2013) (reasoning that "it is difficult to imagine documents more relevant to this case than those evidencing Caterpillar's intent to acquire Miller's [trade secret] information"). Such evidence is also probative of CHG's opportunity to misappropriate VGT's confidential information, as well as to show the absence of mistake or accident in CHG's actions. *See* Fed. R. Evid. 404(b)(2) ("This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").

### C. CHG Cannot Claim Prejudice Based on Its Own Wrongdoing with Respect to the Misappropriated Materials.

CHG's argument that the Misappropriated Materials should be excluded under Rule 403 as unfairly prejudicial and confusing essentially repeats CHG's relevance arguments—*i.e.*, CHG is not responsible for the misappropriation of these materials and they do not reflect trade secret or confidential information of VGT, Mot. at 5, 7—and should be rejected for the same reasons. Because the Misappropriated Materials are examples of "the precise conduct for which [CHG is] charged," any prejudice resulting from the admission of this evidence is not *unfair* prejudice. *See U.S. v. Schneider*, 594 F.3d 1219, 1227 (10th Cir. 2010) ("While the evidence is certainly prejudicial, it is not unfairly prejudicial.").

### III. CONCLUSION

For the foregoing reasons, CHG's Motion should be denied.

| | |
|---|---|
| November 16, 2018 | */s/ Gary M. Rubman*<br>Graydon Dean Luthey, Jr., OBA No. 5568<br>GABLE GOTWALS<br>1100 ONEOK Plaza<br>100 West Fifth Street<br>Tulsa, OK 74103-4217<br>Telephone: (918) 595-4821<br>Facsimile: (918) 595-4990<br>dluthey@gablelaw.com<br><br>Gary M. Rubman<br>Peter A. Swanson<br>Michael S. Sawyer<br>Rebecca B. Dalton<br>COVINGTON & BURLING LLP<br>One CityCenter<br>850 Tenth Street, NW<br>Washington, D.C. 20001-4956<br>Telephone: (202) 662-6000<br>Facsimile: (202) 778-5465<br>grubman@cov.com<br>pswanson@cov.com<br>msawyer@cov.com<br>rdalton@cov.com<br>   (admitted pro hac vice)<br><br>Neil K. Roman<br>COVINGTON & BURLING LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>Telephone: (212) 841-1221<br>Facsimile: (212) 841-1010<br>nroman@cov.com<br>   (admitted pro hac vice)<br><br>***Counsel for Video Gaming Technologies, Inc.*** |

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2018, I filed a redacted version of the foregoing via CM/ECF, which caused the foregoing to be served on the following counsel for Defendants:

Robert C. Gill
Thomas S. Schaufelberger
Matthew J. Antonelli
Henry A. Platt
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
tschauf@saul.com
matt.antonelli@saul.com
henry.platt@saul.com

Sherry H. Flax
SAUL EWING ARNSTEIN & LEHR, LLP
500 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 332-8764
(410) 332-8785 (facsimile)
sherry.flax@saul.com

James C. Hodges, OBA 4254
JAMES C. HODGES, PC
2622 East 21st Street, Suite 4
Tulsa, OK 74114
Telephone: (918) 779-7078
JHodges@HodgesLC.Com

Duane H. Zobrist
Jonathan S. Jacobs
ZOBRIST LAW GROUP PLLC
1900 Arlington Blvd. Suite B
Charlottesville, VA 22903
Telephone: (434) 658-6400
dzobrist@zoblaw.com
jjacobs@zoblaw.com

*Attorneys for Defendants*

/s/ Gary Rubman