**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1) VIDEO GAMING TECHNOLOGIES, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-cv-00454-GKF-JFJ |
| | ) | |
| 1) CASTLE HILL STUDIOS LLC | ) | **REDACTED** |
| (d/b/a CASTLE HILL GAMING); | ) | |
| 2) CASTLE HILL HOLDING LLC | ) | |
| (d/b/a CASTLE HILL GAMING); and | ) | |
| 3) IRONWORKS DEVELOPMENT, LLC | ) | |
| (d/b/a CASTLE HILL GAMING) | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE**
**TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING**
**COMMUNICATIONS BETWEEN COUNSEL AND CHG EMPLOYEES**

Defendants Castle Hill Studios LLC, Castle Hill Holdings LLC, and Ironworks

Development LLC's (collectively, "CHG") Motion *in Limine* (Dkt. 148, "Motion") amounts to

an admission that former Video Gaming Technologies, Inc. ("VGT") employees now at CHG

continue to violate confidentiality obligations they owe VGT by disclosing protected

information.  The issue of these improper *ex parte* communications came up during depositions

of former VGT employees and in connection with CHG's damages expert, Todd Schoettelkotte,

who offered opinions based on discussions he—along with CHG's counsel—had with a former

VGT employee about VGT confidential information.[1]

---

[1] These communications are one of the grounds for VGT's Motion to Exclude portions of Mr.
Schoettelkotte's opinions.  *See* Dkt. No. 163 § III.B (the "Schoettelkotte Motion").

VGT and CHG have taken opposite approaches with respect to handling confidentiality obligations that their employees may owe to the other side.  As discussed below, when faced with the *possibility* that a VGT employee who previously did consulting work for CHG *might* possess emails subject to confidentiality obligations owed CHG, VGT took steps to ensure that the employee did not breach any such obligations. These measures included reaching out to CHG's counsel to discuss an approach for how VGT would collect and review this employee's email and avoiding discussions with this employee that might cause the employee to disclose CHG confidential information.  In stark contrast, when faced with similar circumstances, CHG ignored the ongoing confidentiality obligations that former VGT employees owe VGT, apparently based on the view that the existence of this litigation trumps existing confidentiality obligations.  CHG has not cited a single case that supports this theory.  Instead, they seek to hide their now admitted misconduct behind the cloak of the attorney-client privilege and claims of prejudice if the fact-finder learns about CHG's ongoing failure to respect the confidentiality of VGT's information.

## I.    BACKGROUND

In this lawsuit, VGT asserts that former VGT employees now employed at CHG have developed games that infringe VGT's trademark and trade dress rights and that are based on VGT's trade secrets and confidential business information.

As set forth in VGT's complaint, CHG, which was founded by former VGT employees, employs former VGT employees in key roles, including as Chief Creative Officer/Chief Operating Officer (Jason Sprinkle), Chief Technology Officer (Alan Roireau), software engineers (Paul Suggs, George Weilacher, Brian Cody, Kelly Davis, Robert Gilkerson and Brandon Booker), and artists (Aaron Milligan and Rich Sisson).  *See* Dkt. No. 103 ¶¶ 50-59

(amended complaint).  Since the lawsuit was filed, CHG has continued to recruit and hire former

VGT employees.  During discovery, CHG's Rule 30(b)(6) witness admitted that ███████████

███████████████████████████████████████████████.  *See* Ex. B, 8/1/18

Roireau 30(b)(6) Dep. Tr. 168:2-6.[2]

      The former VGT employees remain bound by agreements with VGT requiring them to

maintain confidentiality of VGT's information.  For example, ██████████████████

████████████████████████████████████████



Ex. C, at III(i); *see also, e.g.*, Ex. D, §3.1 (Sprinkle's VGT Employment Agreement); Ex. E, §§

3-4 (Suggs' VGT Employment Agreement); Ex. F, §§ 1(a)-(b), 2(b) (Booker's VGT

Confidentiality Agreement).  All these agreements (among others) were used at depositions at

which CHG's counsel were present.

      **A.**    **VGT Has Avoided Causing an Employee to Breach Confidentiality Obligations Owed CHG.**

      The contrast between VGT and CHG's approach to confidentiality obligations could not

be more stark.

      VGT's treatment of CHG confidential information is illustrated by its handling of

discovery relating to David Marsh, a VGT employee who had worked for a short time period as

---

[2] Citations to Exhibit A are to the exhibit attached to CHG's Motion; all citations to Exhibits B-J are to the accompanying Declaration of Gary Rubman.

an independent contractor to CHG and, as a result, may owe confidentiality obligations to CHG. When CHG served document requests on VGT that required VGT to review Mr. Marsh's emails, VGT became aware that Mr. Marsh *may* have emails to or from CHG employees on his computer.  Rather than simply collecting and reviewing these emails, however, VGT first reached out to CHG's counsel:

> We write to request your consent to collect and produce communications between Dave Marsh and CHG from the time period when Dave March worked as an independent contractor for CHG.  We would provisionally designate these communications as Highly Confidential with the understanding that you would then re-designate them as appropriate.

Ex. G, Email from R. Dalton to CHG counsel (Mar. 5, 2018).  More than a week later, in response to a follow-up email from VGT, CHG eventually sent a one-word response: "Agreed."

*Id.* (Mar. 13, 2018).  Recognizing the importance of respecting Mr. Marsh's confidentiality obligations to CHG, however, VGT wrote CHG again to seek further clarification:

> Thank you for agreeing with our proposed approach to collecting Dave Marsh's communications with CHG.  For the avoidance of doubt, can you please confirm that CHG will not take the position that, by providing these materials to us or participating in this litigation, Mr. Marsh has violated any confidentiality obligations that may exist in his independent contractor agreement with CHG?

*Id.* (Mar. 22, 2018).  CHG responded as follows:

> This will confirm that CHG will not take the position that Mr. Marsh has violated his confidentiality obligations to CHG by producing documents in responses to CHG's requests for production of documents, or by giving testimony in response to our request for his deposition or at trial.  This presumes that we receive copies of anything he produces from when he was a CHG consultant.

*Id.* (Mar. 23, 2018).

At no point did CHG's counsel ever take the position that lawyers are allowed to engage in *ex parte* communications with former employees of the other side about confidential information of that side as long as those communications relate to the litigation.  To the contrary,

4

CHG's counsel specifically limited their response to production of documents or giving testimony at deposition or at trial. *Id.*

**B.      CHG Has Engaged in Improper *Ex Parte* Communications With Former VGT Employees.**

CHG admits in its Motion that its counsel engaged in *ex parte* communications with former VGT employees about VGT confidential information. *See* Mot. at 4 ("Discussions by CHG's employees of the trade secret and confidential information claims with counsel in connection with the defense of this litigation were entirely proper.").

Even aside from the admissions in the present Motion, the improper communications are clear from Mr. Schoettelkotte's expert report and deposition, as well as the conduct of CHG's counsel at depositions:

**Mr. Schoettelkotte's Expert Report and Deposition:**  As discussed in the Schoettelkotte Motion (Dkt. No. 163 § III.B), portions of Mr. Schoettelkotte's opinions on damages issues are based on ███████████████████████████████████████████. Mr. Schoettelkotte acknowledged at his deposition that he████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████ Ex. H, 9/22/18 Schoettelkotte Dep. Tr. 25:17-26:11; *id.* at 26:17-27:2 (██████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ).

**Deposition of Paul Suggs:**  During the deposition of this former VGT employee, now a software developer and mathematician at CHG, Mr. Suggs testified that he██████████████ ██████████████████████████████████. Ex. A, 6/8/18 Suggs Dep. Tr. 64:18-25.

CHG's counsel then ████████████████████████████████████████. *Id*.  Later,

CHG's counsel appeared to acknowledge that ██████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

██████████████████████████████ *Id.* 255:14-20.

**Deposition of Brandon Booker:**  During the deposition of Mr. Booker, a former VGT

employee who is now a software engineer at CHG, CHG's counsel refused███████████████

█████████████████████████████████████████████████████████████. Ex. I,

7/10/18 Booker Dep. Tr. 259:22-272:6.  CHG's counsel went so far as to████████████████

████████████████████████████████████████████████████

██████████████████ *See id.* 260:3-12, 261:23-262:14, 271:22-272:6.

**Deposition of Jason Sprinkle:**  Counsel also refused to allow Mr. Sprinkle, CHG's

Chief Creative Officer and Chief Operating Officer, to answer questions abou████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████. Ex. J, 5/18/18 Sprinkle Dep.

Tr. 100:9-101:6.

## II.    ARGUMENT

CHG's position proceeds from the erroneous premise that the existence of this litigation

gives CHG and its lawyers *carte blanche* to discuss with former VGT employees information

that it never would have been allowed to discuss but for this litigation.  Rather than dispute that

former VGT employees disclosed VGT confidential information to CHG or that they thereby

violated confidentiality obligations owed VGT, CHG argues that evidence of these

communications is irrelevant and privileged and that, in any event, the probative value of such evidence is outweighed by the risk of unfair prejudice. CHG does not cite any authority for the proposition that litigation trumps the existence of confidentiality obligations.

### A. CHG's *Ex Parte* Communications With Former VGT Employees About VGT's Confidential Information Are Improper and Unfairly Prejudicial to VGT.

As discussed in the Schoettelkotte Motion (Dkt. No. 163 at 12), under Oklahoma law it is unlawful for a person to intentionally interfere with contractual or business relationships. *See Wilspec Techs., Inc. v. DunAn Holding Grp.*, 204 P.3d 69, 74 (Okla. 2009) (establishing elements of intentional interference claim). Moreover, the Oklahoma Rules of Professional Conduct prohibit counsel from using methods of obtaining evidence that violate the rights of a third party, such as VGT. *See* Okla. R. Prof'l Conduct 4.4(a) ("In representing a client, a lawyer shall not use . . . methods of obtaining evidence that violate the legal rights of [a third party]."); *see also* Okla. R. Prof'l Conduct 4.2 at Cmt. No. 7 ("In communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization.") (citing Rule 4.4).

To be clear, VGT has no objection to CHG or its counsel conferring with former VGT employees about this litigation as long as the former VGT employees do not disclose VGT confidential information.

By communicating with them about VGT's confidential information, however, CHG has caused those employees to breach confidentiality obligations they continue to owe VGT. Such *ex parte* communications unfairly prejudice VGT by providing CHG an unfair advantage in this litigation (*e.g.*, VGT has no access to the same former employees outside the discovery process) and eliminating VGT's ability to assert the attorney-client privilege, where appropriate.

Ironically, it is CHG that now asserts the attorney-client privilege, even though the underlying communications are about *VGT's* confidential information.  This position is particularly problematic because VGT has no way to find out who else—including CHG employees not formerly at VGT—participated in these discussions.  Indeed, Mr. Schoettelkotte

███████████████████████████████████████████████████████████████

██████████████████████████████████████████.  *See* Ex. H, 9/22/18

Schoettelkotte Dep. Tr. 23:20-24:3 (████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████).  Mr. Watson is not a former VGT employee and, under the protective order entered in this case, is not allowed access to VGT's confidential information.  *See* Dkt. No. 55 §§ 4-6.[3]

As also discussed in the Schoettelkotte Motion (Dkt. 163 at 12-13), CHG's counsel had opportunities during discovery to ask former VGT employees about confidential VGT information.  For example, Mr. Roireau was deposed twice, with three CHG lawyers in attendance at both depositions.  Had CHG's counsel used these opportunities to ask Mr. Roireau about VGT confidential information,[4] VGT would have had the opportunity to assert privilege objections and ensure that only those allowed access to confidential information under the protective order were present.

---

[3] Although parties are allowed to disclose Confidential information to up to three directors, officers, employees, or other representatives, *see* Dkt. No. 55 § 4(b)(iv), such individuals must first be disclosed to the other side.  *See id.* § 7.  CHG has not provided any such disclosures.  Even if they had done so, such individuals are not allowed access to Highly Confidential information.  *See id.* § 5-6.

[4] Alternatively, CHG could have noticed a separate deposition of Mr. Roireau or, for that matter, any of the other former VGT employees.

**B.      Communications Between CHG's Counsel and Former VGT Employees Are Relevant and Not Unfairly Prejudicial.**

CHG's argument that the *ex parte* communications with former VGT employees about VGT confidential information are irrelevant[5] is undermined by the acknowledgment in its motion of the low standard, *i.e.*, evidence is relevant so long as it has "any tendency to make a fact more or less probable than it would be without the evidence" when "the fact is of consequence in determining the action." Mot. at 2 (quoting *Gaige v. SALA Motor Freight Line, LLC*, 672 F. App'x 787, 790 (10th Cir. 2016)). As CHG also acknowledges, "a fact is 'of consequence' when its existence would provide the fact-finder with a basis for making some inference, or chain of inferences, about an issue that is necessary to a verdict." Mot. at 2 (quoting *SFF-TIR, LLC v. Stephenson*, 250 F. Supp. 3d 856, 1006 (N.D. Okla.), *reconsideration denied*, 264 F. Supp. 3d 1148 (N.D. Okla. 2017)).

The communications are relevant for multiple reasons. For example, in the event the former VGT employees testify at trial that they have complied with the confidentiality obligations they owe VGT, evidence about these communications is relevant to proving otherwise. The communications also are relevant to VGT's request for enhanced damages and attorney's fees. In the event of a finding of liability, the Court has discretion to enhance the amount of damages as well as to award reasonable attorney fees. *See, e.g.*, 15 U.S.C. § 1117(a). CHG employees' continuing disregard for their confidentiality obligations to VGT—for purpose of providing CHG an unfair advantage in the litigation—is relevant to the Court's exercise of this discretion, and VGT should be allowed to create a full record on this issue.

---

[5] Although CHG asserts in the heading to this section of its brief that the communications also are privileged, *see* Mot. § II(A), CHG makes no such showing. Most notably, CHG fails to disclose the identities of each person involved in the communications, without which information it is not possible to assess a privilege claim.

CHG's final argument, that it would be unfair to "forc[e] counsel to invoke the attorney-client privilege at trial," Mot. at 4, ignores that nothing forces them to do so. As an initial matter, although CHG repeatedly refers to the communications as being privileged, it has not provided sufficient information about the communications from which it can be determined whether a privilege applies. *See supra* note 5. Regardless, if CHG is concerned about the appearance of asserting the privilege at trial, it does not need to raise the objection; rather, it can allow the CHG witnesses to testify about these communications. *See, e.g.*, *SFF-TIR, LLC*, 250 F. Supp. 3d at 1006 ("Evidence is not unfairly prejudicial merely because it damages a party's case.") (citing *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008), and other cases). Indeed, to the extent CHG employees testify at trial that they have complied with confidentiality obligations owed to VGT, the use of privilege to prevent VGT from inquiring about the communications with counsel would be an improper use of the privilege as a shield and sword. *See Seneca Ins. Co., Inc. v. W. Claims, Inc.*, 774 F.3d 1272, 1278 (10th Cir. 2014) (referring to the "well-established principle that 'attorney-client communications cannot be used both as a sword and a shield'") (quoting *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1552 (10th Cir. 1995)).

More broadly, the irony of CHG's position bears emphasis: on the one hand, CHG is concerned about the appearance of raising privilege objections relating to *ex parte* communications with former VGT employees about *VGT* confidential information; on the other hand, by engaging in these *ex parte* communications, CHG deprived VGT of the ability to assert any of its own privileges that might apply to the underlying information.

### C.    CHG Should Be Ordered to Produce a Privilege Log

To the extent that CHG intends to assert privilege to prevent former VGT employees from testifying about their communications with CHG lawyers regarding VGT confidential

information, CHG should be required to promptly produce a privilege log.  At a minimum, the log should identify the dates of all such communications, the general subject matter of the communications, the form of the communications (*e.g.*, email, memo, oral, etc.), and the identities of each person involved in the communications.

## III.    CONCLUSION

For the foregoing reasons, CHG's Motion should be denied.

November 16, 2018                              Respectfully submitted,

                                               */s/ Gary M. Rubman*
                                               Graydon Dean Luthey, Jr., OBA No. 5568
                                               GABLE GOTWALS
                                               1100 ONEOK Plaza
                                               100 West Fifth Street
                                               Tulsa, OK 74103-4217
                                               Telephone: (918) 595-4821
                                               Facsimile: (918) 595-4990
                                               dluthey@gablelaw.com

                                               Gary M. Rubman
                                               Peter A. Swanson
                                               Michael S. Sawyer
                                               Rebecca B. Dalton
                                               COVINGTON & BURLING LLP
                                               One CityCenter
                                               850 Tenth Street, NW
                                               Washington, D.C.  20001-4956
                                               Telephone: (202) 662-6000
                                               Facsimile: (202) 778-5465
                                               grubman@cov.com
                                               pswanson@cov.com
                                               msawyer@cov.com
                                               rdalton@cov.com
                                                  (admitted pro hac vice)

                                               Neil K. Roman
                                               COVINGTON & BURLING LLP
                                               The New York Times Building
                                               620 Eighth Avenue

New York, NY 10018-1405
Telephone: (212) 841-1221
Facsimile: (212) 841-1010
nroman@cov.com
   (admitted pro hac vice)

***Counsel for Video Gaming Technologies, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2018, I filed a redacted version of the foregoing

Plaintiff's Opposition to Defendants' Motion in Limine to Exclude Evidence and Argument

Regarding Communications Between Counsel and CHG Employees via ECF, which caused

service to be effected on the following counsel for Defendants:

Robert C. Gill
Thomas S. Schaufelberger
Matthew J. Antonelli
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
tschauf@saul.com
matt.antonelli@saul.com

Sherry H. Flax
SAUL EWING ARNSTEIN & LEHR, LLP
500 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 332-8764
(410) 332-8785 (facsimile)
sherry.flax@saul.com

James C. Hodges, OBA 4254
JAMES C. HODGES, PC
2622 East 21st Street, Suite 4
Tulsa, OK 74114
Telephone: (918) 779-7078
JHodges@HodgesLC.Com

Duane H. Zobrist
Jonathan S. Jacobs
ZOBRIST LAW GROUP PLLC
1900 Arlington Blvd. Suite B
Charlottesville, VA 22903
Telephone: (434) 658-6400
dzobrist@zoblaw.com
jjacobs@zoblaw.com

*Attorneys for Defendants*

*/s/ Gary M. Rubman*

13