# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1) VIDEO GAMING TECHNOLOGIES, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-cv-00454-GKF-jfj |
| | ) | |
| 1) CASTLE HILL STUDIOS LLC | ) | **REDACTED** |
| (d/b/a CASTLE HILL GAMING); | ) | |
| 2) CASTLE HILL HOLDING LLC | ) | |
| (d/b/a CASTLE HILL GAMING); and | ) | |
| 3) IRONWORKS DEVELOPMENT, LLC | ) | |
| (d/b/a CASTLE HILL GAMING) | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF VIDEO GAMING TECHNOLOGY INC.'S OPPOSITION TO
### <u>DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT STACY FRIEDMAN</u>

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 1

LEGAL STANDARD.................................................................................................... 3

ARGUMENT ................................................................................................................ 3

    I.     MR. FRIEDMAN IS QUALIFIED TO OFFER OPINIONS ON VGT'S
          TRADE DRESS, AND HIS METHODOLOGY IS RELIABLE............................ 3

    II.    MR. FRIEDMAN IS QUALIFIED TO OFFER OPINIONS ON THE
          VALUE OF VGT'S CLASS II SYSTEM DEVELOPMENT AND CHG'S
          AVOIDED RESEARCH AND DEVELOPMENT COSTS, AND HE HAS
          A RELIABLE METHODOLOGY TO SUPPORT HIS OPINIONS. ................... 7

    III.   MR. FRIEDMAN USED A RELIABLE METHODOLOGY TO
          SUPPORT HIS TECHNICAL OPINIONS. ......................................................... 13

    IV.   MR. FRIEDMAN DOES NOT MERELY SUMMARIZE EVIDENCE,
          BUT INSTEAD EXPLAINS HOW THE EVIDENCE SUPPORTS HIS
          OPINIONS.......................................................................................................... 16

    V.    TO THE LIMITED EXTENT MR. FRIEDMAN'S OPINIONS
          INVOLVE LEGAL CONCLUSIONS, THE SAME RULE SHOULD
          APPLY TO BOTH TECHNICAL EXPERTS....................................................... 18

CONCLUSION............................................................................................................. 19

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aircraft Fueling Sys., Inc. v. Sw. Airlines Co.*,
  No. 08–CV–414–GKF–FHM, 2011 WL 6122627 (N.D. Okla. Dec. 8, 2011)......................12

*Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*,
  No. 4:06CV114, 2009 WL 8592874 (N.D. Ohio Aug. 12, 2009) ..........................................19

*Apple Inc. v. Motorola, Inc.*,
  757 F.3d 1286 (Fed. Cir. 2014)...............................................................................................10

*BHC Dev., LC v. Bally Gaming, Inc.*,
  No. 12-2393-JPO, 2014 WL 524665 (D. Kan. Feb. 10, 2014)................................................14

*Core Labs. LP v. Spectrum Tracer Servs., L.L.C.*,
  No. CIV-11-1157-M, 2016 WL 4467443 (W.D. Okla. Mar. 7, 2016) ......................10, 11, 15

*Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*,
  No. 05-CV-329-GKF-SAJ, 2008 WL 1994910 (N.D. Okla. May 5, 2008) .............................3

*GSI Tech., Inc. v. Cypress Semiconductor Corp.*,
  No. 5:11-cv-03613-EJD, 2015 WL 364796 (N.D. Cal. Jan. 27, 2015) ............................10, 11

*iFreedom Direct Corp. v. First Tenn. Bank Nat'l Ass'n*,
  No. 2:09-cv-205-DN, 2012 WL 3067597 (D. Utah July 27, 2012)........................................17

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999).............................................................................................................3, 14

*Murphy v. City of Tulsa*,
  No. 15-CV-528-GKF-FHM, 2018 WL 468286 (N.D. Okla. Jan. 18, 2018) ...........................3

*Nat'l Indem. Co. v. Nelson, Chipman & Burt*,
  No. 2:07-CV-996 TS, 2013 WL 12303138 (D. Utah Jan. 22, 2013)......................................18

*Shuffle Tech Int'l, LLC v. Sci. Games Corp.*,
  No. 15 C 3702, 2018 WL 2009504 (N.D. Ill. Apr. 29, 2018).................................................14

*Skycam, Inc. v. Bennett*,
  No. 09-CV-294-GKF-FHM, 2011 WL 2551188 (N.D. Okla. June 27, 2011) ........... 13, 18-19

*Skycam, LLC v. Bennett*,
  No. 09-CV-294-GKF-FHM, 2013 WL 5328937 (N.D. Okla. Sept. 20, 2013).......................19

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

**Other Authorities**

Fed. R. Evid. 702 ................................................................................................3, 14, 17

Fed. R. Evid. 704(a) ...................................................................................................19

## INTRODUCTION

Defendant Castle Hill Gaming's ("CHG's") Motion fails to justify the sweeping relief it seeks: exclusion of all the testimony of VGT's casino industry expert Stacy Friedman. *See* Dkt. 172 at 1 (hereinafter, "Motion" or "Mot."). Notably, although CHG challenges Mr. Friedman's expertise, Mr. Friedman has nearly two decades of game design experience and is uniquely qualified to testify on issues such as design and functionality of the VGT games, alternative designs available to CHG, and the benefits to CHG of using VGT's confidential business information ("CBI") in developing its games.[1] Similarly, although CHG also criticizes Mr. Friedman's methodology as unreliable, CHG ignores that Mr. Friedman analyzed technical documents and source code, interviewed VGT witnesses, reviewed deposition transcripts, played the games at issue, and reviewed photographs and videos of the games. Accordingly, CHG's Motion should be denied.

## BACKGROUND

In his nearly two decades as a professional casino game designer, Mr. Friedman has "personally designed, implemented, tested, and analyzed . . . dozens of single- and multi-player wagering games for both Internet and land-based casinos." Ex. A ¶ 1. Mr. Friedman's design experience includes work for both industry leaders and startups (some of which were sold to IGT, one of the world's largest gaming companies, for more than $500 million). Ex. 1, Friedman CV. He has invented dozens of patented gaming methods and systems. Ex. A ¶ 6. And he has appeared in both national and gaming-industry press to discuss casino gaming. Ex.

---

[1] Citations to lettered exhibits are to the exhibits attached to CHG's Motion (Dkt. 172); all citations to numbered exhibits are to the accompanying Declaration of Michael S. Sawyer.

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

1, Friedman CV.  Mr. Friedman also has served as an expert witness on casino game design in federal and state court cases around the country.  Ex. 1, Friedman CV.

Mr. Friedman's gaming experience includes work on the types of games at issue in this case (bingo-based Class II games).  He has "designed and/or mathematically analyzed many different types of bingo games" for both Internet and land-based gaming companies, including recent work for a Class II company on bingo math issues.  Ex. A ¶ 7.  And he has consulted as an expert on "bingo-related matters," including assisting the Alabama Attorney General in an investigation of Class II games.  Ex. A ¶ 8.  That consulting experience required him to, *inter alia*, "analyze the inner workings of certain Class 2 games."  Ex. C, 256:1–3.

In the present case, Mr. Friedman applies that casino gaming experience and expertise to offer opinions on such core issues as the development of casino games, the nature of a casino floor, and the effect of the look and feel of a game on a player's willingness to play.  Ex. A ¶¶ 9, 16–27.  CHG offers no argument to exclude his opinions regarding these issues.

Mr. Friedman also applies his experience and expertise to offer opinions relating to the availability of alternatives to VGT's trade dress features and the overall similarity between the appearance of CHG's games and VGT's games.  Ex. A ¶¶ 32–48.  The only specific argument CHG offers concerning these opinions is addressed to a single sentence regarding the "distinctive" appearance of VGT's games.  *See* Mot. at 11–13.

Finally, Mr. Friedman applies his experience and expertise to offer opinions regarding technical issues related to VGT's claims for misappropriation of trade secrets and CBI, including the nature of VGT's know-how, the steps VGT took to protect its trade secrets and CBI, and the ways that CHG has used and benefitted from VGT's confidential information and know-how.  Ex. A ¶¶ 55–126.  Once again, CHG's motion addresses only a subset of those opinions.

CONTAINS HIGHLY CONFIDENTIAL INFORMATION
SUBJECT TO PROTECTIVE ORDER

### LEGAL STANDARD

A witness may provide expert testimony if the witness is qualified based on "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "Nothing [in Rule 702] is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony." Fed. R. Evid. 702 advisory committee's note to 2000 amendment. Thus, "an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156 (1999); *see also Murphy v. City of Tulsa*, No. 15-CV-528-GKF-FHM, 2018 WL 468286, at *5 (N.D. Okla. Jan. 18, 2018) (applying "specialized knowledge and experience to the facts of this matter . . . is a reliable methodology").

A trial court's gatekeeping role is "not a prevailing concern in a bench trial or hearing to the court, because the court functions as the trier of fact." *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, No. 05-CV-329-GKF-SAJ, 2008 WL 1994910, at *1 (N.D. Okla. May 5, 2008). Such is the case here.

### ARGUMENT

### I.   MR. FRIEDMAN IS QUALIFIED TO OFFER OPINIONS ON VGT'S TRADE DRESS, AND HIS METHODOLOGY IS RELIABLE.

CHG's challenge to Mr. Friedman's trade dress opinions centers on a single sentence in a summary section in his Opening Report in which he refers to VGT's trade dress as "distinctive." *See* Mot. at 2 (citing Opening Rpt. ¶ 13); *see also id.* at 11–13 (arguing that "Mr. Friedman is not qualified to offer opinions on the distinctiveness of VGT's alleged trade dress").

The body of Mr. Friedman's report, however, does not refer to, or offer an opinion on, the ultimate issue of distinctiveness (which is one element of VGT's trade dress claim), *see* Ex. A ¶¶ 32–48, and VGT confirms that Mr. Friedman will not offer an opinion on distinctiveness at

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

trial.  More broadly, although VGT disagrees with CHG's arguments on distinctiveness, to eliminate an issue in dispute, VGT withdraws any statement concerning "distinctiveness" in Mr. Friedman's reports.

Although this agreement should resolve the dispute raised in Section I of CHG's Motion, which does not challenge Mr. Friedman's trade dress opinions in the body of his report, VGT addresses below the merits of CHG's arguments in the event that CHG attempts to argue for the first time in reply that those arguments warrant exclusion of Mr. Friedman's trade dress opinions. Any such argument would be untimely and would fail on the merits.

At the outset, it is worthwhile to provide an overview of Mr. Friedman's trade dress-related opinions.  Some concern general game design issues not specific to the VGT or CHG games at issue—for example, his opinion that it is difficult to create a successful casino game (Ex. A ¶¶ 16–18), his opinion that casino gaming startups face an uphill battle (*id.* ¶¶ 19–20), his opinion about trend-following in designing casino games (*id.* ¶¶ 21–22), his opinions about the nature of the gaming floor and what draws players to games (*id.* ¶¶ 23–27), and his opinions about the unique challenges faced by Class II game designers (*id.* ¶¶ 28–31).  Others are specific to the VGT and CHG games at issue:  First, he explains that alternatives are available to the features that make up the VGT trade dress that CHG has mimicked, including alternative cabinet chasses and configurations, alternative candles or strobes, alternative sounds, and alternative free spin features (*id.* ¶¶ 32–40); and, second, he opines that the look and feel of CHG's games is more similar to VGT's games than any other third-party game of which he is aware, including the third-party games that CHG has identified as most similar (*id.* ¶¶ 41–48).

All these opinions are proper expert testimony.

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

CHG's primary attack is based on erroneous assertions about Mr. Friedman's qualifications. Most notably, CHG claims, without citation (and erroneously), that "Mr. Friedman admitted in his deposition that the appearance and features of Class II games are outside of his expertise." Mot. at 2. CHG also asserts, again falsely, that he lacks experience in the Class II field outside of his work as an expert witness: "[b]efore this case, his familiarity with Class II gaming was limited to acting as an expert on 'a couple of cases' involving patent infringement." Mot. at 2; *see also id.* at 11 (similar).

Mr. Friedman has made plain his experience and expertise. As he testified, and explained in his reports, in his work as a game designer, he has "designed and/or mathematically analyzed many different types of bingo games for [his] clients," including specific examples of bingo development work both in Internet contexts and for a Class II game vendor, before this litigation. Ex. A ¶ 7; Ex. C, 47:2–4; Ex. 2, Friedman Dep. Tr. 185:2–5. Aside from his work on specific games, Mr. Friedman has substantial familiarity with the appearance of casino games (both Class II and Class III) from his work and involvement in the gaming industry over two decades; through his work, he has "spent substantial time in casinos across the country and [is] familiar with numerous games made by many different companies, including companies [he has] worked for and games [he has] personally helped develop." Ex. B ¶ 13; Ex. 2, Friedman Dep. Tr. 277:22–278:10.

Unable to dispute Mr. Friedman's widespread knowledge of casino games and game design, CHG questions the number of times Mr. Friedman has *played* Class II games. Mot. at 11. But this has no bearing on his qualifications as an expert on casino games and game design. Indeed, CHG never explains why his playing of VGT and CHG games during a casino visit in

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION
SUBJECT TO PROTECTIVE ORDER**

October 2017, coupled with review of photographs, videos, and artist renderings, was

insufficient to allow him to understand the trade dress features at issue in the case.

More fundamentally, CHG's focus on *playing* games misses the point because most of

the trade dress features can be observed without playing a game and the remaining features can

be observed by watching (or listening to) others playing. In this respect, it bears mention that

CHG overlooks that Mr. Friedman has "been to other Class 2 facilities," Ex. C, 255:15–256:1, as

part of his "20 years" of consulting work "in and out of both Class 2 and Class 3 casinos." Ex. 2,

Friedman Dep. Tr. 277:22–278:10. That includes more than 500 visits to casinos, including

more than 25 visits to casinos with Class II bingo-based gaming machines as well as visits to

more than 20 conferences with Class II vendors. Ex. 3, Friedman Decl. ¶ 9.

CHG also incorrectly discounts the importance of Mr. Friedman's unquestioned expertise

with the appearance of Class III games (*i.e.*, traditional slot machines). *See* Mot. at 12. Class III

games appear side-by-side with Class II games in Oklahoma casinos, and the same gaming

companies make both types of games, which can include the same or similar design elements—

*e.g.*, the same cabinet can be used for both Class II and Class III games. *See* Ex. C, 254:8–

255:13; Ex. 2, Friedman Dep. Tr. 291:19–292:20. ███████████████████

██████████████████████████████████████████████

████████████   *See* Ex. A ¶¶ 42–43; Ex. 4, Fulton 30(b)(6) Dep. Tr. 23:5–27:14, 33:13–43:9.

Similarly, CHG improperly attacks Mr. Friedman's methodology as unreliable because,

according to CHG, his opinions "were primarily drawn from videos and documents." Mot. at 12.

CHG misunderstands the basis for Mr. Friedman's opinions. His opinion that VGT's and CHG's

games are more similar than any third-party games of which he is aware relies on his two

decades of experience designing games for casinos, which requires him to have an understanding

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

of games available in the marketplace. *See* Ex. 2, Friedman Dep. Tr. 277:22–278:10. Similarly, Mr. Friedman's opinions about the availability of alternatives to the trade dress features at issue are based on his knowledge of the options available to companies in creating games—an issue squarely within his expertise as a game designer. Mr. Friedman reviewed photographs of third-party games to confirm and bolster these opinions. Notably, CHG does not contend that these photos and videos are inaccurate representations of the games; nor does CHG cite authority supporting its claim that an expert may not familiarize himself with the products at issue in a trade dress case in this manner.[2]

## II.    MR. FRIEDMAN IS QUALIFIED TO OFFER OPINIONS ON THE VALUE OF VGT'S CLASS II SYSTEM DEVELOPMENT AND CHG'S AVOIDED RESEARCH AND DEVELOPMENT COSTS, AND HE HAS A RELIABLE METHODOLOGY TO SUPPORT HIS OPINIONS.

Nor is there anything to CHG's challenges to Mr. Friedman's opinions on the benefits to CHG of using VGT's proprietary know-how. Based on his experience developing casino games and his review of the materials in this case, Mr. Friedman opines that ████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████

CHG seeks to exclude Mr. Friedman's opinions regarding development costs on the false premise that they are based on "a single email from former VGT employee and current Castle

---

[2] CHG mischaracterizes Mr. Friedman's testimony about the bonus spins feature, claiming that "[h]is knowledge of free spin bonus features is limited to videos and photographs he was shown by counsel." Mot. at 12. To the contrary, Mr. Friedman testified that he has actually "designed games that involve free spin features." Ex. 2, Friedman Dep. Tr. 335:16–336:7.

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

Hill employee, Alan Roireau." Mot. at 13. ████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████ Ex. 5, Watson 7/12/2018 Dep. Tr. 250–251.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████ Although Mr. Roireau's calculations support and inform Mr. Friedman's

opinion on development costs, CHG's suggestion that the email was the only substantial basis

for the opinion mischaracterizes and oversimplifies Mr. Friedman's analysis.

Mr. Friedman's report explains the basis for his cost development opinions. Mr.

Friedman started by evaluating the number of VGT development employees ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████ Because many of those development employees worked in areas

not directly implicated by the █████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

He then analyzed the cost of those engineers based on ███████████████████ as well as

his own experience with the cost of casino game development. ████████████████

████████████████████████████████████████████ Mr. Friedman

then compared VGT's cost of developing its Class II engine to CHG's cost of developing its

Class II engine. ██████████████████████████████████████████

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

Mr. Friedman also evaluated the proportion of CHG's development cost savings attributable to CHG's use of VGT know-how as opposed to other potential factors. *See* Ex. A ¶¶ 88–110. There are three steps to this analysis.

*First*, Mr. Friedman evaluated the time it took CHG to bring its Class II system to market, ███████████████████████████████████████████████████ ████████████████████████ *Id.* ¶ 89.

*Second*, Mr. Friedman explained the ways in which CHG's access to and use of VGT know-how ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ █████████████████████████████████████████████ ██████████████████████████████████████████████ █████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████

*Third*, and finally, Mr. Friedman considered ████████████████████████ █████████████████████████████████████████████ ████████████████████████████████████████████ █████████████████████████████████████

Based on the foregoing analysis, Mr. Friedman concluded that ████████████████ ████████████████████████████████████████████████████████

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION
SUBJECT TO PROTECTIVE ORDER**

███████████████████████████████████████ Ex. A ¶ 110.

CHG's assertion that Mr. Friedman is "not qualified to offer opinions on the value of VGT's Class II system, or Castle Hill's alleged avoided research and development costs" because Mr. Friedman lacks an accounting degree or other accounting experience, Mot. at 13–14, fails for at least two reasons.

*First*, there is no requirement that an expert have accounting experience to offer opinions on development costs. To the contrary, it is appropriate, and often necessary, to "rely on technical expertise . . . when evaluating design around options or valuing the importance of the specific, infringing features in a complex device." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (en banc); *see also GSI Tech., Inc. v. Cypress Semiconductor Corp.*, No. 5:11-cv-03613-EJD, 2015 WL 364796, at *2 (N.D. Cal. Jan. 27, 2015) (rejecting argument that "an engineer . . . is not qualified to offer opinions on economic concepts" such as "barriers to entry" or "development time"). Here, Mr. Friedman's technical expertise with casino gaming and bingo-based games qualifies him to value the development costs of VGT's ██████████
████████████████████████████████████████████████ *See Core Labs. LP v. Spectrum Tracer Servs., L.L.C.*, No. CIV-11-1157-M, 2016 WL 4467443, at *2 (W.D. Okla. Mar. 7, 2016) (engineer with decades of experience qualified to "opine on the research-and-development costs [defendant] saved by copying [plaintiff's] technology"); *GSI Tech.*, 2015 WL 364796, at *2 (engineer's "industry experience" qualified him to opine on "development time" of specific technologies).

*Second*, CHG ignores Mr. Friedman's experience with project timelines and budgets in the casino gaming industry. Mr. Friedman has "20 years of experience working with casino

10

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION
SUBJECT TO PROTECTIVE ORDER**

gaming companies in project development," involving "project timelines, feature scopes, budgets, staffing and resource allocation, third-party contract negotiations, build-vs-buy decisions, third-party platform evaluations, regulatory submissions, financing strategies, intellectual property licensing, go-to-market strategies, and dozens of product releases." Ex. B ¶ 141. Such experience with the financial aspects of casino game development qualifies Mr. Friedman to opine on the development costs and time necessary to make casino games. *See Core Labs. LP*, 2016 WL 4467443, at *2; *GSI Tech.*, 2015 WL 364796, at *2.

Nor is there a basis for CHG's criticism of Mr. Friedman's methodology as unreliable because he relies on VGT software engineers, rather than underlying financial records, to evaluate VGT's development costs. Mot. at 14. Again, CHG cites no precedent requiring an expert to rely on financial documents rather than discussions with knowledgeable witnesses. To the contrary, it is appropriate for a technical expert to rely on discussions with knowledgeable witnesses to determine development costs. *Core Labs. LP*, 2016 WL 4467443, at *3 (technical expert's methodology in valuing trade secret system reliable where he "interviewed senior employees of [plaintiff], who only had access to the system, to determine the effort it took in developing [plaintiff's] tracing system"). As Mr. Friedman explained, ███████████

████████████████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
███████████████████████

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

As to Mr. Friedman's analysis of CHG's costs, CHG's argument is remarkable. CHG criticizes Mr. Friedman for relying on "summaries contained in *Castle Hill's* expert report." Mot. at 14–15 (emphasis added). If CHG believes that its own expert report is unreliable, it should be withdrawn. Although CHG relies on *Aircraft Fueling Systems, Inc. v. Southwest Airlines Co.*, No. 08–CV–414–GKF–FHM, 2011 WL 6122627 (N.D. Okla. Dec. 8, 2011), the Court in that case found unreliable the methodology of a certified public accountant based on summary documents from the *offering party*, not the *opposing* party. *See id.* at *6.

According to CHG, Mr. Friedman should have reviewed the data underlying the summary of its development costs in CHG's expert report, Mot. at 15, but CHG admits that this data "*did not exist* during the discovery period and was therefore not produced in discovery." Ex. 9, R. Gill Email to G. Rubman (Oct. 2, 2018) (emphasis added). Mr. Friedman therefore appropriately relied on the best available evidence, ███████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ *See* Ex. A ¶¶ 88–95.

Despite its criticisms of the nature of the evidence Mr. Friedman considered regarding development costs, CHG's motion never suggests that this evidence is inaccurate or unreliable. To the contrary, CHG's ████████████████████████████████████ ████████████████████████████████████. *See* Ex. B ¶ 154; Ex. 2, Friedman Dep. Tr. 231:21–232:22.

Finally, CHG asserts, based on isolated statements in Mr. Friedman's deposition, that his opinions regarding valuation and development time are "*ipse dixit*" and "speculat[ion]," Mot. at 15, overlooking the explanation in Mr. Friedman's reports regarding the basis for his opinions

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

that CHG's access to and use of VGT's confidential information decreased their development time and costs by, *inter alia*, providing them with ███████████

████████████████████████████████████████████

███████████████████████████ *E.g.*, Ex. A ¶¶ 89, 97, 99, 100; Ex. B ¶¶ 155–157.  Mr. Friedman also considered ████████████████████████████

███████████████████████████████████████████████

████████████████████████ Ex. A ¶¶ 95–98; Ex. B ¶¶ 144–147, 152.  Thus, unlike the expert in *Skycam, Inc. v. Bennett*, Mr. Friedman has "set[] forth the grounds for the opinion" he has offered about decreased development time, as required by this Court.  No. 09-CV-294-GKF-FHM, 2011 WL 2551188, at *4 (N.D. Okla. June 27, 2011).[3]

## III.    MR. FRIEDMAN USED A RELIABLE METHODOLOGY TO SUPPORT HIS TECHNICAL OPINIONS.

Although CHG appears to seek exclusion of *all* of Mr. Friedman's technical opinions, the arguments in CHG's motion address only two specific issues: (a) source code copying and (b) his opinion that VGT's ████████████████ is not generally known.  *See* Mot. at 16–19.  Most of Mr. Friedman's technical opinions regarding issues such as ████████████████████

███████████████████████████ remain unchallenged.  *See, e.g.*, Ex. A ¶¶ 74–84.

Although CHG seeks to exclude Mr. Friedman's opinions on these two specific issues for using an improper methodology, CHG cites essentially no precedent establishing that Mr.

---

[3] Indeed, it appears that the expert in *Skycam* may not have been able to set forth such grounds for his opinion because, as a party employee, 2011 WL 2551188, at *4, he may not have had access to defendant's restricted information under the protective order in that case.  *See* Dkt. 53-3 at 6–7 (attaching *Skycam* protective order as a model for the protective order in this case).  In contrast, Mr. Friedman is an independent expert that has reviewed CHG's highly confidential information.

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

Friedman's methodology is unreliable.  To the contrary, "'[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.'"  *Shuffle Tech Int'l, LLC v. Sci. Games Corp.*, No. 15 C 3702, 2018 WL 2009504, at *3 (N.D. Ill. Apr. 29, 2018) (quoting Fed. R. Evid. 702, advisory committee's note to 2000 amendment); *see also Kumho Tire*, 526 U.S. at 156 ("[A]n expert might draw a conclusion from a set of observations based on extensive and specialized experience.").  That rule applies with particular force to expertise in casino gaming.  *See Shuffle Tech*, 2018 WL 2009504, at *4 ("extensive experience in the casino industry provides a more-than-sufficient basis" for reliable expert testimony); *BHC Dev., LC v. Bally Gaming, Inc.*, No. 12-2393-JPO, 2014 WL 524665, at *2–4 (D. Kan. Feb. 10, 2014) (expert's "twenty-five years of experience in the gaming industry" in technical and consulting positions enabled him to provide a reliable opinion about casino gaming technology).  CHG does not and cannot question Mr. Friedman's two decades of experience in the casino gaming industry, and CHG's arguments fail for this reason alone.

These arguments should also be rejected for the reasons explained below.

Source Code Copying.  CHG takes the unusual step of seeking to exclude Mr. Friedman from offering an opinion regarding source code copying that he has repeatedly said he does not intend to offer.  *See* Mot. at 16–17.  To be clear, Mr. Friedman has not offered and does not intend to offer an opinion that CHG copied source code from VGT.  But that in no way precludes Mr. Friedman from offering an opinion that Castle Hill used "other trade secrets or confidential information," as CHG suggests.  Mot. at 17.  Mr. Friedman's opinions about the other confidential information CHG has used ███████████████████████████ █████████ are supported by the analysis in his reports.  *See, e.g.*, Ex. A ¶¶ 108, 111–126.

14

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION
SUBJECT TO PROTECTIVE ORDER**

CHG appears to use Mr. Friedman's lack of an opinion on source code *copying* as a basis to block Mr. Friedman from testifying about CHG's *access to* VGT's source code, including evidence that former VGT employees took or retained source code following their employment with VGT.[4] But this evidence supports Mr. Friedman's opinion that CHG had, through its employees, access to internal VGT information that goes beyond general industry knowledge. *See* Ex. B ¶ 133; *see also* VGT's Opposition to Defendants' Motion to Exclude Evidence of Documents and Materials Allegedly Taken by Former VGT Employees (Dkt. 216).

███████████████ Similarly, although CHG also asserts that Mr. Friedman's opinion that VGT's ████████████ is not generally known should be excluded because he did no "independent research," Mot. at 18–19, CHG cites no authority for such a requirement. To the contrary, courts have rejected the argument that a technical expert was required to "perform an independent forensic investigation" in order to opine that technology was a trade secret. *Core Labs. LP*, 2016 WL 4467443, at *2–3.

Here, the research Mr. Friedman did supports his opinion. Specifically, he reviewed the development history of the VGT algorithm, explained that VGT's approach to the ████████ ████████ was not the way he would have expected someone to solve this problem, and further explained that, although VGT's implementation solved the problem of ████████████████ ████████████████████████████████████████ Ex. A ¶¶ 63–70. He confirmed his opinion that the algorithm is not generally known by interviewing VGT engineers and

---

[4] CHG incorrectly claims that Mr. Friedman did "not actually review any of the evidence" regarding source code taking. Mot. at 7 (emphasis removed). As Mr. Friedman explained, his report discusses "dozens of references" about information taken from VGT, which he would "have to go back and review." Ex. 2, Friedman Dep. Tr. 164:19-167:20. Rather than show Mr. Friedman those references, CHG asked Mr. Friedman questions based on his knowledge "as [he sat] here." *Id.* at 167:16-169:12.

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

reviewing the deposition transcript of ███████████████████████████████████████

████████████████████████████████████████████████. *See id.*  He further explained why

VGT's approach used ██████████████████████████████████. *Id.* ¶ 67.  By playing

VGT's games, he determined that the algorithm cannot be readily ascertained from playing the

games. *Id.* ¶ 71.  And he reviewed all the efforts that VGT undertook to maintain the secrecy of

its algorithm. *Id.* ¶¶ 85–87.  He further explained that based on his two decades of experience in

casino gaming, he is not aware of any other disclosure of VGT's algorithm. *See id.* ¶¶ 4, 70.

Finally, after considering CHG's interrogatory responses, which set out CHG's purported

evidence, and Mr. Zeidman's report discussing that evidence, Mr. Friedman explained why none

of those publically available references disclose the entire algorithm or even a substantial portion

of the algorithm. *See* Ex. B ¶¶ 82–89; Ex. 10, Friedman Materials Considered.

Although CHG suggests Mr. Friedman should have undertaken unspecified "independent

research," CHG fails to acknowledge Mr. Friedman's explanation for why he did not do such

research: as he and (other witnesses) have explained, ██████████████████████████

██████████████████ Ex. 2, Friedman Dep. Tr. 350:22–351:12, 360:2–14; Dkt. 179, Davis

Decl. ¶ 18; *id.*, Ex. I, Suggs Dep. Tr. 42:6–43:17; Ex. M, Zeidman Dep. Tr. 220:23–221:16.

Indeed, CHG did research whether the algorithm was known, and yet, as Mr. Friedman

explained, none of the public references CHG identified discloses the VGT ██████████████.

*See* Ex. B ¶¶ 82–89; Ex. 10, Friedman Materials Considered.

## IV.    MR. FRIEDMAN DOES NOT MERELY SUMMARIZE EVIDENCE, BUT INSTEAD EXPLAINS HOW THE EVIDENCE SUPPORTS HIS OPINIONS.

In a two-paragraph argument citing just two unpublished cases, CHG seeks to exclude

more than 60 paragraphs of Mr. Friedman's reports on the ground that he merely summarizes

documents or fact witness testimony, *see* Mot. at 19–20, ignoring that the challenged paragraphs

16

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

of Mr. Friedman's reports discuss the documents and testimony to provide a basis for Mr.

Friedman's opinions—as he is required to do.  *See, e.g.*, Ex. A ¶¶ 33–40 (basis for opinion that

there exist "countless alternative designs [to VGT's trade dress] that VGT's competitors can (and

do) use"); *id.* ¶¶ 63–73 (basis for opinions that VGT's ███████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ *id.* ¶¶ 74–78 (basis

for opinion that knowledge of VGT's ████████████████████████████

██████████); *id.* ¶¶ 88–126 (basis for numerous opinions, including that CHG used "VGT know-

how in designing and building its Class II system," that CHG benefited from access to VGT's

confidential information in terms of decreased development costs and time, that CHG used

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████); Ex. B ¶ 36

(basis for opinion that "the sound of a bell coming through speakers differs from the sound of a

physical bell"); *id.* ¶ 40 (basis for opinion that in "neither the VGT nor CHG games would

players perceive that the free spin features are ██████████████████████████

██████████"); *id.* ¶ 48 (basis for opinion that VGT and CHG use similar bingo patterns); *id.* ¶¶

124–125 (basis for his opinion that ████████████████████████████████

     An expert is *required* to disclose the factual basis for his opinions.  Fed. R. Evid. 702.

Mr. Friedman appropriately identified documents and witness testimony that support his

opinions, and even CHG's cited case acknowledges that such use is proper.  *See iFreedom Direct*

*Corp. v. First Tenn. Bank Nat'l Ass'n*, No. 2:09-cv-205-DN, 2012 WL 3067597, at *3 (D. Utah

July 27, 2012) (expert "may rely on deposition testimony to reach his own opinions").

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

Further, even assuming that Mr. Friedman has done nothing more than summarize other evidence, exclusion would still be inappropriate because this case is to be tried before Your Honor.  As CHG's other cited case holds, in "a bench trial, the finder of fact is unlikely to be confused." *Nat'l Indem. Co. v. Nelson, Chipman & Burt*, No. 2:07-CV-996 TS, 2013 WL 12303138, at *1 (D. Utah Jan. 22, 2013) (declining to strike expert report despite finding that "portions of [the expert's] report improperly summarize the depositions of others"); *see also Tyson Foods*, 2008 WL 1994910, at *1 (gatekeeping role is "not a prevailing concern in a bench trial or hearing to the court, because the court functions as the trier of fact").

**V.     TO THE LIMITED EXTENT MR. FRIEDMAN'S OPINIONS INVOLVE LEGAL CONCLUSIONS, THE SAME RULE SHOULD APPLY TO BOTH TECHNICAL EXPERTS.**

Finally, CHG seeks to preclude Mr. Friedman from providing opinions that allegedly amount to legal conclusions.[5]  In particular, CHG objects to Mr. Friedman's occasional use of the terms "trade secret," "confidential information," and "misappropriate."  Mot. at 20–21.

As an initial matter, it bears emphasis that Mr. Friedman expresses nearly all his opinions in terms of specific technologies, such as ███████████████████████████ ██████████████████████████████████████, rather than legal conclusions. *See* Ex. A ¶¶ 61–126.  For example, Mr. Friedman opines that VGT's ████████████████ is not generally known (*id.* ¶ 70), not readily ascertainable from playing VGT's games (*id.* ¶ 71), and subject to reasonable efforts to maintain secrecy (*id.* ¶¶ 85–87).  The Court has previously permitted expert testimony on such issues, when appropriately phrased.  *See Skycam, Inc.*, 2011 WL 2551188, at *5 ("[T]he court will permit Williams to testify about Skycam's treatment of the

---

[5] CHG also incorrectly claims that Mr. Friedman opines on legal standards.  Mot. at 20.  While Mr. Friedman explains his understanding of the law, *see* Ex. A ¶¶ 49–54, he does not opine on what the law is or should be.

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

alleged 'trade secrets,' custom and practice in the industry regarding such information, whether the alleged trade secrets differed materially from information widely known in the industry, whether Bennett had access to the information, and whether the Actioncam system incorporated the information.  Williams will *not*, however, be permitted to opine that the information was 'trade secret' or 'confidential or proprietary information' . . . .").

Although Mr. Friedman may have used legal terms to discuss these technologies collectively or may occasionally have referred to legal terms with regard to a specific technology, as the Court has previously recognized, "under Rule 704 of the Federal Rules of Evidence, 'an opinion is not objectionable just because it embraces an ultimate issue.'" *Skycam, LLC v. Bennett*, No. 09-CV-294-GKF-FHM, 2013 WL 5328937, at \*9 (N.D. Okla. Sept. 20, 2013) (quoting Fed. R. Evid. 704(a)) (permitting testimony apparently related to ultimate issue of trade secret misappropriation).  In any event, CHG's expert, Mr. Zeidman, has taken the same approach, *see, e.g.*, Ex. 11, Zeidman Rpt. ¶¶ 2, 42, 43, 56, 117, and any rulings as to Mr. Friedman should apply equally to Mr. Zeidman.  *See Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, No. 4:06CV114, 2009 WL 8592874, at \*4 (N.D. Ohio Aug. 12, 2009) (permitting an expert to offer opinions on "subsidiary components of the overall issue" of trade secret misappropriation because "Defendant's expert has done no less in opposition").[6]

## CONCLUSION

For the foregoing reasons, CHG's motion to exclude Mr. Friedman should be denied.

---

[6] Although CHG also rehashes the argument in Section IV.B of its Motion regarding Mr. Friedman's opinion that CHG's development efforts were accelerated due to its use of internal VGT information, Mot. at 22, this argument fails for the reasons discussed in Section II above.

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

Dated: November 16, 2018

*/s/ Gary M. Rubman*
Graydon Dean Luthey, Jr., OBA No. 5568
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
Telephone: (918) 595-4821
Facsimile: (918) 595-4990
dluthey@gablelaw.com

Gary M. Rubman
Peter A. Swanson
Michael S. Sawyer
Rebecca B. Dalton
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 778-5465
grubman@cov.com
pswanson@cov.com
msawyer@cov.com
rdalton@cov.com
   (admitted pro hac vice)

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1221
Facsimile: (212) 841-1010
nroman@cov.com
   (admitted pro hac vice)

***Counsel for Video Gaming Technologies, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2018, I filed a redacted version of the foregoing

Plaintiff's Opposition to Defendants' Motion to Exclude Plaintiff's Expert Stacy Friedman via

ECF, which caused service to be effected on the following counsel for Defendants:

Robert C. Gill
Thomas S. Schaufelberger
Matthew J. Antonelli
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
tschauf@saul.com
matt.antonelli@saul.com

Sherry H. Flax
SAUL EWING ARNSTEIN & LEHR, LLP
500 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 332-8764
(410) 332-8785 (facsimile)
sherry.flax@saul.com

James C. Hodges, OBA 4254
JAMES C. HODGES, PC
2622 East 21st Street, Suite 4
Tulsa, OK 74114
Telephone: (918) 779-7078
JHodges@HodgesLC.Com

Duane H. Zobrist
Jonathan S. Jacobs
ZOBRIST LAW GROUP PLLC
1900 Arlington Blvd. Suite B
Charlottesville, VA 22903
Telephone: (434) 658-6400
dzobrist@zoblaw.com
jjacobs@zoblaw.com

*Attorneys for Defendants*

*/s/ Gary M. Rubman*