**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

VIDEO GAMING TECHNOLOGIES, INC.,

    Plaintiff,

v.

CASTLE HILL STUDIOS LLC, et al.

    Defendants.

CASE NO. 17-CV-00454-GKF-JFJ

**PUBLIC REDACTED VERSION**

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION**
**TO EXCLUDE THE TESTIMONY OF ROBERT ZEIDMAN IN PART**

Defendants, Castle Hill Studios LLC, Castle Hill Holdings LLC, and Ironworks Development LLC (collectively, "CHG" or "Castle Hill"), hereby oppose Plaintiff's motion to exclude the testimony of Robert Zeidman in part. Mr. Zeidman produced an expert report on August 31, 2018 in response to the report of VGT's technical expert, Stacy Friedman.[1] Mr. Zeidman's analysis was two-fold: first, he examined both Castle Hill and VGT source code and concluded that Castle Hill had not "copied" VGT's source code; second, Mr. Zeidman offered opinions that the algorithms and other "trade secrets" VGT alleges were misappropriated were not trade secrets at all, because, based on his background and experience in software engineering, they relied on information readily available in the public domain or common-sense applications of well-known processes.

VGT challenges Mr. Zeidman's report and opinions on three bases. First, VGT requests that the Court preclude Mr. Zeidman from testifying regarding his source code analysis and the lack of evidence of any copying of source code by Castle Hill. VGT, however, expressly alleged copying of its source code in its complaint, as originally filed and as amended. Its allegations of

---

[1] For all of the reasons set forth in Defendants Motion to Exclude Plaintiff's Expert Stacy Friedman (Dkt. 172), VGT should be precluded from introducing the testimony or expert reports of Mr. Friedman at trial.

misappropriation of its algorithms similarly require an analysis of the underlying source code, which contains the actual implementation of those algorithms.

Second, VGT mischaracterizes the nature of Mr. Zeidman's opinions and argues that because Mr. Zeidman is not an expert on "casino gaming," he cannot offer opinions regarding the software algorithms which VGT claims comprise its trade secrets. But Mr. Zeidman is an expert on computer hardware, software, and software correlation, and holds 22 patents in the areas of software analysis and software comparison, as well as in other specific areas or disciplines of software and hardware design. Because the casino games at issue all operate on computer source code, Mr. Zeidman is more than qualified to offer expert opinions on VGT's computer algorithms.

Finally, VGT seeks to preclude Mr. Zeidman from testifying regarding the ████████ ████████████████████████████████████████████████████ On this issue, VGT merely seeks to suppress unfavorable testimony about its ████████████████████ ████████████. In addition, all of VGT's arguments of potential jury confusion and prejudice under Fed. R. Evid. 403 are now moot, as the Court has recently granted Defendants' Motion to Strike Plaintiff's Jury Demand. Because there is no jury, there is no risk of confusion or prejudice.

I. **EXPERT WITNESS STANDARD**

Under Rule 702, an expert's opinion is admissible if four basic requirements are met: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. "Rule 702 'imposes a special gatekeeping obligation on the trial judge to ensure that an opinion offered by an expert is reliable.'" *U.S. v. Velarde*, 214 F.3d 1204, 1208 (10th Cir. 2000). "A trial court's gatekeeper duty requires two separate inquiries: (1) the witness must be qualified to offer the opinions he is

espousing and (2) the proponent of the witness bears the burden of proving by a preponderance of the evidence that its witness's opinions are both relevant and reliable." *Bright v. Ohio Nat'l Life Assurance Corp.*, 2012 WL 12888316 at *1 (N.D. Okla. Nov. 29, 2012) (Frizzell, C.J.) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141-52).

## II. ARGUMENT

### A. VGT's Alleged Concerns Regarding Jury Confusion are Moot

Throughout its motion, VGT repeatedly argues that various aspects of Mr. Zeidman's testimony could mislead or confuse the jury. *See, e.g.*, VGT Mot. at 9, 10, 17, 18. When the Court granted Castle Hill's motion to strike the jury demand, all of the arguments VGT makes regarding potential jury confusion were rendered moot. Furthermore, while the court in a bench trial must still ensure that expert testimony is admissible under *Daubert*, the "gate-keeping function is less important because 'the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise[.]'" *Valley View Dev. Inc. v. U.S. ex rel. U.S. Army Corps of Eng'rs*, 721 F. Supp. 2d 1024, 1047 (N.D. Okla. 2010) (citing *Atty. Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009); *see Perez ex rel. Cardenas v. Henneberry,* No. 09-CV-1681-WJM-MEH, 2011 WL 1743734, at *2 (D. Colo. May 5, 2011) (same). Accordingly, a "judge conducting a bench trial maintains greater leeway in admitting questionable evidence, weighing its persuasive value upon presentation." *Id.*

### B. Mr. Zeidman's Opinions Regarding Source Code Copying and Analysis of VGT and Castle Hill Source Code are Relevant and Will be Helpful to the Court

#### i. *In a case regarding software source code trade secrets, it is appropriate to include an analysis of the actual source code*

VGT's trade secrets claim has now been narrowed to only a few remaining items, which relate to the design or functionality of its games. *See* VGT Mot. at 4-5. These remaining trade

3

secrets which VGT alleges have been misappropriated are encompassed or otherwise set forth in VGT's source code. VGT's allegations arise, in part, from the fact that certain former VGT software engineers work at Castle Hill.

Remarkably, VGT's expert Mr. Friedman did not examine or compare the source code at issue. Instead, he relied on VGT witnesses who told him that Castle Hill's game functionality was "similar" to VGT's. Mr. Friedman's report alleged that Castle Hill had "misappropriated" two specific algorithms, ████████████████████████████████████████████ ████████████. To rebut this allegation, Castle Hill's expert started in the obvious place to begin, examining the actual source code that sets forth and implements the algorithms at issue. Ultimately, after comparing both VGT and Castle Hill source code using a proprietary software program he designed, CodeSuite, Mr. Zeidman concluded that there was no indication of source code copying. Ex. 1, Zeidman Report ¶ 135; Ex. 2, Zeidman Dep. at 94:9-14.

In arguing that Mr. Zeidman's source code analysis should be excluded, VGT misses several fundamental points. First, the CodeSuite program (and Mr. Zeidman's corresponding analysis) does not relate only to *literal* copying of source code. Rather, CodeSuite looks at both literal and non-literal copying, and also examines whether the two sets of source code include similar functionality. *See* Zeidman Dep. at 52:11-20 ████████████████████████████████████ ████████████████████████████████████. Mr. Zeidman also performed a manual review of source code in connection with his analysis. In a case where VGT claims that Castle Hill misappropriated certain of its algorithms (which themselves are actually implemented *in VGT source code*), it only makes sense that Castle Hill be permitted to offer expert opinion regarding the lack of similarities between the code, both on a literal and functional basis.

Second, VGT fails to inform the Court that Mr. Friedman and Mr. Zeidman have different opinions regarding whether or not a source code analysis was appropriate in a case such as this. In

4

his report, for example, Mr. Zeidman notes that *Mr. Friedman's report* is unreliable because, while he opined on various functionalities of source code, Mr. Friedman failed to identify the relevant source code or even state whether he actually reviewed the source code at issue. Ex. 1 at ¶ 96. VGT, on the other hand, purports that it is appropriate in a case dealing with trade secrets set forth in software source code for its expert to not even address the actual source code. This is a dispute between the experts regarding the appropriate analysis and methodology; the Court should hear testimony from Mr. Zeidman on this point. *See Antonick v. Electronic Arts, Inc.*, 841 F.3d 1062 (9th Cir. 2016) (in copyright infringement case, plaintiff could not demonstrate infringement where it failed to demonstrate similarities between the actual source code at issue).

Third, a central aspect of Mr. Zeidman's source code comparison analysis was examining Castle Hill's ███████████████████████████████████████████. One of VGT's allegations is that Castle Hill's development of games was accelerated through its alleged misappropriation of VGT trade secrets and confidential information. Mr. Zeidman offers opinions regarding the fact that ███████████████████████████████████████████ ███████████ Zeidman Dep. at 249:23-250:17. The degree to which Castle Hill was able to rely on ███████████████████████████████████ to speed up its Class II development, is a central defense to VGT's claims. Mr. Zeidman should be permitted to opine regarding ████████████████ in Castle Hill code and how that is different from VGT code.

    ii. *Even though it does not claim source code copying, VGT's claims still implicate Castle Hill's source code*

Despite VGT's recent admission that Castle Hill did not copy its source code, VGT's allegations and expert opinions still implicate source code and make Mr. Zeidman's opinions regarding source code comparison appropriate and helpful. In its Amended Complaint, VGT defines the "VGT Trade Secrets" as including "the source code used to operate the games." Am. Compl. (Dkt. 103) at ¶ 41. VGT further alleges that Castle Hill has misappropriated the VGT Trade

5

Secrets because "the play of CHG's games, including without limitation, the payouts, bingo mechanics, and volatility, *which are determined by the source code* and underlying math of the game, mimics the play of VGT's games." *Id.* ¶ 98 (emphasis added); *see id.* ¶¶ 93, 100, 147, 157 (alleging that Castle Hill misappropriated VGT Trade Secrets, which includes source code). Despite now admitting that it has no evidence of source code copying, VGT has not withdrawn or amended the allegations of its Amended Complaint.[2] Given these allegations, Castle Hill must be permitted to offer the opinions of Mr. Zeidman regarding his comparison of Castle Hill and VGT code.

Moreover, VGT is incorrect that Mr. Zeidman's source code analysis is not a proper rebuttal to Mr. Friedman's report. In his report, Mr. Friedman sets forth the alleged basis for his conclusion that Castle Hill "acquired, used, and disclosed" VGT trade secrets and confidential information. Mr. Friedman points to the fact that Castle Hill hired a number of former VGT engineers. *See* Ex. 3, Friedman Report at ¶¶ 89-93. Mr. Friedman further claims that Castle Hill employees ███ ███ *See* Ex. 3 at ¶ 100. Finally, Mr. Friedman's report cites a number of instances of ███ ███ ███ ███ ███

VGT points to these alleged instances of former employees ███ ███

---

[2] This is particularly concerning given that VGT amended its complaint, with leave of Court, *on the eve of the close of discovery*, long after it had determined that, contrary to the allegations in its original complaint, there is absolutely no evidence that Castle Hill ever copied or misappropriated VGT's source code. VGT has never explained why it failed to remove those frivolous allegations from the amended complaint, consistent with its obligations under Fed. R. Civ. P. 11(b)(3).

6

███████████████████████████████████████████████████████

████████████████. By accusing Castle Hill employees of stealing VGT source code, VGT has placed the source code of the two companies directly at issue. An important aspect of Castle Hill's defense to these allegations is that there is no evidence whatsoever of any of the foregoing items, including VGT source code, being copied or implemented in Castle Hill's code.

Even where literal copying is no longer an issue, expert opinion regarding lack of source code similarly remains relevant. *See Vehicle Mkt. Research, Inc. v. Mitchell Int'l, Inc.*, No. 09-2518-JAR, 2015 WL 5021951 (D. Kan. Aug. 21, 2015). In *Vehicle Mkt.*, the plaintiff requested that the court exclude a defense expert's testimony regarding source code copying because the plaintiff did not claim that the defendant "literally copied the source code." *Id.* at *2. Nevertheless, the plaintiff argued that the defendant had "re-architectured" certain concepts from the plaintiff's code. *Id.* The court concluded that despite the fact that literal copying was not alleged, the expert's testimony regarding the similarities between the two parties' code was relevant to plaintiff's claims. *Id.*

VGT makes the very same argument as the plaintiff in *Vehicle Mkt.*. But just as in that case, where the plaintiff alleged that "concepts" from its code had been incorporated into the defendants' code, VGT continues to allege that Castle Hill misappropriated certain algorithms and also that Castle Hill misappropriated confidential "know how" in its own source code development. Under these circumstances, the Court should reach the same conclusion as the court in *Vehicle Mkt.* and deny VGT's motion to limit Mr. Zeidman's testimony.

### C. Mr. Zeidman is Qualified to Offer the Opinions Set Forth in his Report

VGT next attacks Mr. Zeidman's opinions by alleging that he is not qualified to opine on matters relating to "casino gaming." In making this argument, VGT mischaracterizes the nature of its own claims and the nature of Mr. Zeidman's opinions. VGT does not challenge Mr. Zeidman's qualifications to offer opinions regarding software development and engineering, or regarding

7

common algorithms used in various implementations in software, nor could it credibly do so. Mr. Zeidman has a Master's degree from Stanford in electrical engineering, and degrees from Cornell University in electrical engineering and physics. He has worked as a computer software and hardware designer for over 35 years, written nearly a dozen books, and has testified in numerous cases regarding software copying, trade secret theft, and patent infringement. *See* Ex. 1 at Ex. A (Zeidman Resume). His background further includes significant experience in matters involving ███████████████████████. Ex. 2 at ¶¶ 8-10. Mr. Zeidman's expertise in the fields of software development and trade secret disputes is further demonstrated by the document attached to VGT's motion as Exhibit A, excerpts from *The Software IP Detective's Handbook*, which Mr. Zeidman authored.

    The opinions Mr. Zeidman will offer in this case will appropriately fall within his area of knowledge and expertise. While VGT attempts to cast its alleged trade secrets as unique to the casino industry, they are not. Rather, the two specific algorithms VGT alleges Castle Hill misappropriated relate to ███████████████████████████████████████████████████████████████████████, which present questions of software source code, computer science, and mathematical algorithms. While VGT happens to apply those concepts in the Class II gaming context, the opinions Mr. Zeidman offers relate to the underlying mathematical algorithms and software functionality at issue.

    VGT takes an unreasonably narrow position on the relevance of expert testimony in this case. While VGT would like to limit the inquiry to whether its algorithms are generally known in the Class II gaming industry, the relevant inquiry is whether the algorithms are generally known in computer science applications generally, and whether they are readily ascertainable by proper means. Mr. Zeidman's background as an expert on computer software analysis and software comparison make him incredibly well-qualified to offer relevant opinions about VGT's software algorithms,

8

whether they are commonly known, and whether they represented customary applications of computer science principles.

For example, Mr. Zeidman testified that he was familiar with ▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉ and that the ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉ is well-known and publicly available. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉ VGT is correct that Mr. Zeidman concludes that VGT's alleged trade secrets are in fact "general practice," widely known, or "common sense." These conclusions, and all of Mr. Zeidman's opinions, are based on Mr. Zeidman's review of VGT's algorithms and software, and his knowledge and experience as an engineer and software expert; Mr. Zeidman need not be a casino industry expert to opine regarding mathematical equations and source code.[4]

---

[3]   VGT alleges that to opine regarding ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ VGT Mot. at 13. Not so. Mr. Zeidman is familiar with the algorithms and processes used in VGT's ▉▉▉▉▉▉▉▉▉▉, and qualified to testify regarding the lack of uniqueness of those algorithms and processes.

[4]   On page 16 of its motion, VGT identifies "mistakes" it alleges Mr. Zeidman made during his deposition testimony. Castle Hill disputes VGT's mischaracterizations of Mr. Zeidman's testimony, but to the extent VGT wants to allege "mistakes" it can do so on cross-examination and in arguments regarding the weight of Mr. Zeidman's opinions. Moreover, the case on which VGT relies, *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398 (6th Cir. 2006), is easily distinguishable. The expert there created his methodology specifically for that case, and the expert's lack of subject-matter knowledge meant he was unable to identify indicia of copying between train designs. Here, Mr. Zeidman has extensive experience regarding trade secret misappropriation, and software and source code copying, and his methodology was not developed specifically for this case. His opinions regarding the algorithms and software solutions at issue in this case are reliable and admissible.

As this court has previously explained, a "proposed expert should not be required to satisfy an overly narrow test of his own qualification." *Okla. v. Tyson Foods, Inc.*, No. 05-CV-329-GKF-PJC, 2009 WL 10271834, at *3 (N.D. Okla. Aug. 17, 2009). "As long as an expert stays within the reasonable confines of his subject area, our case law establishes a lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight." *Id.* (quoting *Compton v. Subaru of Am., Inc.*, 82 F.3d 1513, 1520 (10th Cir. 1996).

VGT's argument that Mr. Zeidman must be a casino industry expert to testify in this case is similar to the argument rejected by this court in *Wood v. Cendant Corp.*, No. 03-CV-TCK-FHM, 2006 WL 6862723 (N.D. Okla. Mar. 28, 2006). There, plaintiff's expert had experience in business valuation and Excel-based software, but had never testified as to copyright infringement (the specific claim) or call-center software (the specific industry at issue). *Id.* at *2. Defendant argued that the expert's lack of experience in call-center industry standards precluded her from testifying. The court denied the defendant's request to exclude the expert, explaining that "[w]hat matters is that she can give testimony on what is beneath the expressions common to the industry to find what expressions are within the modules, formulae, data flow, and algorithms, then filter and abstract this information, to determine what substantial similarity, if any, exists among the programs at issue." *Id.* Similarly here, Mr. Zeidman can offer opinions regarding the algorithms, processes, and software at issue, regardless of his prior casino-specific experience.[5] *See Nance v. Innovasis, Inc.*, No. CIV-11-432-D, 2013 WL 7205100, at *3-4 (W.D. Okla. Mar. 20, 2013) (expert's lack of specialization in orthopedic screws was subject to cross-examination, but did not prevent expert from testifying regarding alleged design defects which were based on "general principles of mechanical engineering"); *Metzger v. Am. Fid. Assur. Co.*, No. CIV-05-1387-M, 2008 WL 7180759, at *2-3 (W.D.

---

[5] Moreover, Mr. Zeidman has been retained as an expert in at least one other case involving casino gaming software. Zeidman Dep. at 7:18-8:22.

Okla. Jan. 28, 2008) (expert with general insurance industry experience permitted to testify despite lack of specialization on supplemental cancer insurance benefits because "lack of specialization . . . goes to the weight of the expert opinion and not its admissibility.").

Given his expansive computer science and engineering background, Mr. Zeidman is sufficiently qualified to offer the opinions set forth in his report.

### D. VGT Improperly Seeks to Prevent Mr. Zeidman From Testifying Regarding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in VGT's Source Code

When Mr. Zeidman examined VGT's source code, he discovered ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ Mr. Zeidman notes in his report that VGT's code ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. 1 at ¶ 92. This information is relevant both to Mr. Zeidman's discussion of VGT's alleged confidential information regarding the way its source code ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The results of Mr. Zeidman's review of VGT source code in this regard are both relevant and helpful to the Court. There is no reason to exclude his testimony.

### III. CONCLUSION

Defendants, Castle Hill Studios LLC, Castle Hill Holdings LLC, and Ironworks Development LLC respectfully request that the Plaintiff's motion to exclude the testimony of Robert Zeidman in part be denied.

Dated:  November 16, 2018                    Respectfully submitted,

*/s/ Robert C. Gill*
Robert C. Gill (admitted *pro hac vice*)
Henry A. Platt (admitted *pro hac vice*)
Thomas S. Schaufelberger (admitted *pro hac vice*)
Matthew J. Antonelli (admitted *pro hac vice*)
Jeremy B. Darling (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
henry.platt@saul.com
tschauf@saul.com
matt.antonelli@saul.com
jeremy.darling@saul.com

Sherry H. Flax (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
500 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 332-8764
(410) 332-8785 (facsimile)
sherry.flax@saul.com

James C. Hodges, OBA #4254
JAMES C. HODGES, P.C.
2622 East 21st Street, Suite 4
Tulsa, Oklahoma 74114
(918) 779-7078
(918) 770-9779 (facsimile)
JHodges@HodgesLC.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of November, 2018, I caused a copy of the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE THE TESTIMONY OF ROBERT ZEIDMAN IN PART – PUBLIC REDACTED VERSION** to be filed using the Court's ECF system, which will send a notification of electronic filing to the following counsel for Plaintiff:

Graydon Dean Luthey, Jr.
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
(918) 595-4821
(918) 595-4990 (facsimile)
dluthey@gablelaw.com
*Counsel for Plaintiff*

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1221
(212) 841-1010 (facsimile)
nroman@cov.com
*Counsel for Plaintiff*

Gary M. Rubman
Peter Swanson
Michael Sawyer
Rebecca B. Dalton
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
(202) 778-5465 (facsimile)
grubman@cov.com
pswanson@cov.com
msawyer@cov.com
rdalton@cov.com
*Counsel for Plaintiff*

*/s/ Robert C. Gill*
Robert C. Gill