# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OKLAHOMA

VIDEO GAMING TECHNOLOGIES, INC.,

                     Plaintiff,

v.

CASTLE HILL STUDIOS LLC, *et al.*

                     Defendants.

CASE NO. 17-CV-00454-GKF-JFJ

**PUBLIC – REDACTED VERSION**

# DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE THE
# TESTIMONY OF W. TODD SCHOETTELKOTTE IN PART

# TABLE OF CONTENTS

I.   THE LEGAL STANDARD ..................................................................................... 2

II.  ARGUMENT ...................................................................................................... 3

    A.   Opinions based on Defendants' work product are entirely proper ................. 3

    B.   Opinions based on conversations with Defendants' employees are proper. ..... 4

    C.   Plaintiff Overreaches with its Protective Order Argument. ........................... 11

    D.   The Apportionment Opinion is Relevant and Reliable. ............................... 14

III. CONCLUSION .................................................................................................. 22

# TABLE OF AUTHORITIES

## CASES

*Aircraft Fueling Systems, Inc. v. Southwest Airlines Co.*,
2011 WL 6122627 (N.D. Okla. Dec. 8, 2011) (Frizzell, J.) ......................................................2, 3

*Allergan, Inc. v. Sandoz Inc.*,
No. 2:09-CV-182, 2011 WL 2563238 (E.D. Tex. June 28, 2011) ................................................13

*BB&T Ins. Svcs., Inc. v. Thos. Rutherford, Inc.*,
No. CL09-4550, 2010 WL 7373709 (Va. Cir. Ct. Feb. 9, 2010) ..................................................11

*Bright v. Ohio Nat'l Life Assurance Corp.*,
2012 WL 12888316 (N.D. Okla. Nov. 29, 2012) (Frizzell, C.J.) ....................................................2

*Bright v. Ohio Nat'l Life Assurance Corp.*,
2013 WL 12327512 (Jan. 09, 2013) ............................................................................................3

*Chambers v. Capital Cities/ABC*,
159 F.R.D. 441 (S.D.N.Y. 1995) .............................................................................................9, 10

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 593-95 (1993) ...........................................................................................................2, 3

*Holiday Inns v. Airport Holiday*,
493 F. Supp. 1025 (N.D. Tex. 1980) ..........................................................................................15

*Micro Consulting, Inc. v. Zubeldia*,
813 F. Supp. 1514 (W.D. Okla. 1990), *aff'd*, 959 F.2d 245 (10th Cir. 1992) ..............................10

*Modern Envts., Inc. v. Stinnett*,
561 S.E.2d 694 (Va. 2002) ........................................................................................................11

*Otter Products, LLC v. Seal Shield, LLC*,
No. 13-CV-01734-MSK-MJW, 2014 WL 1213475 (D. Colo. Mar. 24, 2014) ..........................8, 9

*PGT Trucking, Inc. v. Jones*,
No. 15-1032, 2015 WL 4094265 (W.D. Tenn. July 7, 2015) ......................................................11

*ProductiveMD, LLC v. 4UMD, LLC*,
821 F. Supp. 2d 955 (M.D. Tenn. 2011) ...................................................................................11

*Saini v. Int'l Game Tech.*,
434 F. Supp. 2d 913 (D. Nev. 2006) ...........................................................................................9

*Smith v. Auto-Owners Ins. Co.*,
2018 WL 400767 (D.N.M. Jan. 12, 2018) No. 15-CV-1153 ................................................13, 14

*U.S. v. Velarde*,
    214 F.3d 1204 (10th Cir. 2000)...........................................................................2

*Wirth ex rel. Albert J. Wirth Tr. v. Taylor*,
    No. 2:09-CV-127 TS, 2011 WL 1226075 (D. Utah Mar. 28, 2011).............................14

*Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*,
    170 F.3d 985 (10th Cir. 1999).............................................................................13

## STATUTES

18 U.S.C. §1836(b)(3)(A)(i)(I).................................................................................10

## OTHER AUTHORITIES

Fed. Rule of Evidence 702 .....................................................................................2

## ADDITIONAL REFERENCES

Litigation Services Handbook, The Role of the Financial Expert, Roman L. Weil,
    Daniel Lentz, David P. Hoffman, Fifth Ed. ...........................................................15

Understanding Business Valuation,  Gary R. Trugman, 2nd Ed....................................22

Defendants, Castle Hill Studios LLC, Castle Hill Holdings LLC, and Ironworks Development LLC (collectively, "CHG" or "Castle Hill"), hereby oppose Plaintiff's motion to limit the testimony of W. Todd Schoettelkotte (the "Motion"). (Doc. 163 (under seal)).

Castle Hill produced a timely report and disclosure for its damages expert W. Todd Schoettelkotte on August 31, 2018. Through its Motion, Plaintiff seeks to limit the testimony of Mr. Schoettelkotte as follows:

- Plaintiff seeks to prevent Castle Hill from using work-product prepared by its damages expert specifically for the preparation of his report in rebuttal to Plaintiff's damages expert report, which information did not otherwise exist in the format presented in the normal course of Defendants' business, as a penalty for not having been produced in discovery.

- Despite the fact that all of Plaintiff's experts spoke with, and relied on, information obtained directly from VGT personnel in forming their expert opinions in this case, VGT seeks to prohibit Mr. Schoettelkotte's use of information that he obtained from Defendants' personnel in defense of the trade secrets claims in this case.

- VGT tries to use the protective order that it asked for and obtained in this case as a vehicle to strike and preclude certain portions of Mr. Schoettelkotte's opinions. In this regard Plaintiff seeks to use the protective order not as a shield to protect its information, but as a sword and a litigation tool to gain unfair tactical advantage unrelated to the merits of this case. Plaintiff also raises the novel, and unsubstantiated, argument that the attorney-client privilege does not apply to communications between employees of Defendants and defense counsel about the trade secrets claim, although Plaintiff never challenged any assertion of privilege by Defendants.

- VGT seeks to preclude Mr. Schoettelkotte from testifying about his apportionment of CHG revenues in an effort to determine which profits are attributable to Defendants' alleged use of the intellectual property at issue, as opposed to revenues that were derived from another source.

1

Plaintiff seeks to preclude CHG from pointing out that Mr. Schoettelkotte relies on an admission made in connection with Plaintiff's acquisition by Aristocrat, which determined that ███████ █████████████████████████████████████████████████████████

## I. THE LEGAL STANDARD

Under Rule 702, an expert's opinion is admissible if four basic requisites are met:

(a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)    the testimony is based on sufficient facts or data;

(c)    the testimony is the product of reliable principles and methods; and

(d)    the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "Rule 702 'imposes a special gatekeeping obligation on the trial judge to ensure that an opinion offered by an expert is reliable.'" *U.S. v. Velarde*, 214 F.3d 1204, 1208 (10th Cir. 2000). "A trial court's gatekeeper duty requires two separate inquiries: (1) the witness must be qualified to offer the opinions he is espousing and (2) the proponent of the witness bears the burden of proving by a preponderance of the evidence that its witness's opinions are both relevant and reliable." *Bright v. Ohio Nat'l Life Assurance Corp.*, 2012 WL 12888316 at *1 (N.D. Okla. Nov. 29, 2012) (Frizzell, C.J.) (citation omitted). Plaintiff does not argue that Mr. Schoettelkotte is not qualified.

On the issue of reliability, the Supreme Court in *Daubert* identified four nonexclusive factors the trial court may consider: (1) whether the opinion is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operations; and (4) whether the theory has been accepted in the scientific community. *See Aircraft Fueling Systems, Inc. v. Southwest Airlines Co.*, 2011 WL 6122627, at

*5 (N.D. Okla. Dec. 8, 2011) (Frizzell, J.) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 593-95 (1993)).

The Court's inquiry is "flexible," but the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Bright v. Ohio Nat'l Life Assurance Corp.*, 2013 WL 12327512 at *1 (Jan. 09, 2013). "At a minimum, the expert should describe the method he used in reaching, and the data supporting, his determination." *Id.* "The second prong of the *Daubert* inquiry concerns relevancy or 'fit.'" *Aircraft Fueling Systems, Inc.*, 2011 WL 6122627 at *6. The trial court must determine if the proffered evidence aids the trier of fact. *See id.* However, Plaintiff admits in its Motion that apportionment is relevant and is Defendants' burden. Motion at 4.

## II.    ARGUMENT

### A.    Opinions based on Defendants' work product are entirely proper.

Plaintiff claims that Defendants withheld Schedule 11A to Mr. Schoettelkotte's expert report in discovery, and that Schedule 11A should be excluded, together with any opinions based on it. Schedule 11A contains a breakdown of Castle Hill payroll expenses by department. However, as Defendants informed Plaintiff, Mr. Schoettelkotte's Schedule 11A did not exist during the discovery period, and was therefore not produced in discovery.

Significantly, Plaintiff's own experts relied on similar information obtained from conversations with VGT personnel and with VGT's other experts, and such information was not produced to Defendants in discovery. *See* Ex. 1, Stacy Friedman report excerpts, at ¶¶ 56, 58, 59, 63, 64, 71, 77, 80, 81, 82, 86, and Ex. B (relying on information from conversations with Josh Davis and Chris Shults); Ex. 2, Melissa Bennis report excerpts, at pp. 3, 18, 19, 29, 33, 34, and 35 (relying on information from "discussions" with Josh Davis, Jay Sevigny, and Stacy Friedman). Plaintiff cannot reasonably complain about Mr. Schoettelkotte having obtained information from Castle Hill personnel, given its own experts' reliance on information similarly obtained from VGT.

Moreover, Plaintiff has not been prejudiced in any way.  Plaintiff had a full and fair opportunity to question Mr. Schoettelkotte during his deposition about Schedule 11A.  Plaintiff's expert had a full and fair opportunity to analyze Schedule 11A before producing her rebuttal report.  Defendants had the same opportunity to question Plaintiff's experts.  In this regard, Defendants received 236 pages of schedules from VGT's damages expert, Melissa Bennis, with her Expert Report dated August 10, 2018.  Defendants then received *another* 258 pages of schedules from Ms. Bennis with her Reply Report on September 14, 2018.  Defendants did not receive these schedules from Plaintiff in advance in discovery.  Like Mr. Schoettelkotte's schedules, those schedules prepared by Ms. Bennis represented her work product in connection with her report.

Plaintiff really objects to Schedule 11A because it is part of Defendants' efforts to offset their costs and expenses against revenue to reach a reasonable profit number.  Plaintiff, on the other hand, wants that profit number to be as high as possible.  This issue is a battle for the experts, and the Court should consider all the testimony on this issue at trial and give it such weight as it deems just and proper.  Plaintiff's motion to exclude this information before trial should be denied.

**B.    Opinions based on conversations with Defendants' employees are proper.**

Plaintiff argues that portions of Mr. Schoettelkotte's opinions on the issue of Plaintiff's claim for avoided research and development costs should be stricken, on the basis that Mr. Schoettelkotte and defense counsel relied on information "improperly obtained from a former VGT employee."  Motion at 10.  These allegations are outrageous.  According to VGT, the mere fact that it has asserted a trade secrets claim against Defendants divests Defendants of the right to discuss the merits of that claim, even when those communications take place with counsel in connection with efforts to defend against the claim.  Plaintiff's position is unsupported by the parties' protective order or governing law, is unreasonable, and is against public policy.

4

Plaintiff bases its argument on discussions that took place between Mr. Schoettelkotte and Mr. Alan Roireau of Defendants, who is a former VGT employee, about information that Mr. Roireau recalled from working at VGT, in preparation of a rebuttal report on the very issues raised in VGT's damages expert report. *See* Motion at 10-11. This is an important point, because the confidential information which is implicated by Plaintiff's Motion (and VGT's damages expert report) is information that Mr. Roireau remembered from his experience working at VGT. Plaintiff's argument is not based on written materials allegedly taken from VGT by Mr. Roireau, because there are no such documents. The argument also is not based on VGT information that was shown by defense counsel *to* Mr. Roireau, because no such information was shown to Mr. Roireau by counsel.

According to VGT, Mr. Schoettelkotte and counsel for Defendants "obtained confidential VGT information from Mr. Roireau notwithstanding Mr. Roireau's continuing confidentiality obligations to VGT." Motion at 12. Also according to VGT, counsel for Defendants should have questioned Mr. Roireau only in the presence of VGT's counsel about the confidential information at issue, and should not have done so outside of the presence of Plaintiff's counsel. *Id.* at 12-13. Plaintiff provides no authority for this suggested protocol. Plaintiff apparently takes the novel position that the attorney-client privilege does not apply to communications between Defendants and their counsel in defense of the trade secrets claim.

The information discussed by Mr. Roireau and Mr. Schoettelkotte related directly to Plaintiff's claim for avoided research and development costs. By asserting that claim, VGT made the voluntary election to place information about its research and development costs, as compared with those of Defendants, directly at issue in this litigation. Plaintiff cannot feign surprise at Defendants' efforts to learn about and defend against the claim.

When Plaintiff requested entry of the protective order in this case, Defendants objected to the content of the proposed order because of language restricting party access to highly confidential and even to confidential information. *See* Ex. 3, excerpt from Transcript of December 6, 2017 motion hearing at pp. 37-39. As indicated in the transcript, defense counsel expressed concern that such restrictions would negatively affect the ability of counsel to meaningfully communicate with Defendants about the claims and defenses, and would impair the Defendants' ability to participate in and contribute to the defense of the case.

The purpose of the protective order was to provide for the confidentiality of information obtained in the course of this litigation. Plaintiff never disclosed to Defendants' counsel, or to the Court, that in Plaintiff's view Defense counsel would be entirely prohibited from privately communicating with Defendants about the confidential information on which Plaintiff's trade secret claims are based (without providing any "highly confidential" information produced by Plaintiff in discovery *to* Defendants). At no time was it suggested that such communications would need to take place only in the presence of Plaintiff's counsel, or that the attorney-client privilege would not apply to the communications. The very existence of the protective order communicated the opposite point – that such communications were necessary to the defense and would take place in the ordinary course of the litigation, but that they would be covered under the auspices of the protective order.

In the context of discovery in this case since the protective order was entered, Plaintiff has similarly failed to communicate its position that defense counsel is prohibited from discussing the confidential information at issue in this case with Defendants, although Plaintiff did ask odd questions about communications counsel had with Defendants' employees who were previously

employed by VGT during the depositions.[1]  The colloquy between counsel during the deposition of

Paul Suggs, as an example, was as follows:



_____

[1]      These inquiries are the subject of Defendants' Motion in Limine to Exclude Evidence or References to Communications With Counsel.  (ECF No. 149).

████████████████████████████████████

MR. SAWYER: ████████████████████████

Ex. 4, Suggs Dep. at 253:15-256:3.

At no time since this assertion of privilege, or since similar assertions of privilege in other depositions, did Plaintiff obtain an order compelling any employee of Defendants to give testimony notwithstanding an objection based on attorney-client privilege. At no time did Plaintiff even file a motion to challenge such an assertion of privilege. Nor did Plaintiff's counsel provide any authority to support a claim that the assertion of privilege was improper, or to establish that communications between defense counsel and employees of Defendants were improper, even though defense counsel asked point-blank at the Suggs deposition whether it was Plaintiff's position that the privilege does not apply. In response to that inquiry Plaintiff only responded that "I think there is a serious concern," but Plaintiff's counsel did not claim that the attorney-client privilege was inapplicable to the communications, and certainly never asserted that such communications were ethically improper. At no time since the assertion of privilege did counsel for Plaintiff meet and confer with defense counsel in an effort to resolve this issue. Rather than be up front and above board on this issue, Plaintiff instead chose to lay in wait and then sandbag Defendants in an effort to exclude evidence at trial, but without taking any reasonable steps to either resolve the issue, or to even to put Defendants on fair notice of the issue.

Although the authority is limited on this issue, courts have found that confidentiality agreements which prevent the disclosure of relevant information for litigation purposes to be void as against public policy. In *Otter Products, LLC v. Seal Shield, LLC*, No. 13-CV-01734-MSK-MJW, 2014 WL 1213475, at *1 (D. Colo. Mar. 24, 2014), plaintiff and defendant had previously entered into a confidentiality agreement stating that the parties could use certain disclosed information only

for purposes of evaluating a potential business relationship. The same parties were later involved in lawsuits against one another. *Id.* The plaintiff sought a preliminary injunction prohibiting the defendant from disclosing in those lawsuits any information covered by the confidentiality agreement. *Id.* at *5. The court refused to issue the injunction, stating:

> The Court understands this argument to be that the Agreement prevents [the defendant] from disclosing truthful information in the course of pending lawsuits. If that is correct, [the plaintiff] is essentially stating that its private agreement restricts a party from using factual information in the course of non-frivolous litigation (especially in litigation between the two parties to the agreement). In effect, the agreement would permit parties, via contract, to supplement the Federal Rules of Evidence to prevent presentation of relevant, truthful evidence to a fact-finder and court. Enforcement of such provision clearly would not serve the public interest and likely is void against public policy.

*Id.* at *6. Similarly, the District of Nevada stated that confidentiality agreements "might not be enforceable . . . if the agreement is being used by one party within the context of litigation to suppress an adverse party's access to evidence." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 923 (D. Nev. 2006) (dicta).

In *Chambers v. Capital Cities/ABC*, 159 F.R.D. 441, 444 (S.D.N.Y. 1995), the court addressed a similar situation. Plaintiff's counsel sought to initiate ex parte contact with certain of the defendant's former employees – who had signed confidentiality agreements – for the purpose of gathering information. The court stated that "it is against public policy for parties to agree not to reveal, at least in the limited contexts of depositions or pre-deposition interviews concerning litigation arising under federal law, facts relating to alleged or potential violations of such law," and that if the confidentiality agreements were enforced, "plaintiff would plainly be adversely affected by his inability to secure through depositions or pre-deposition interviews in connection with the present litigation, information relevant to his claim." *Id.* at 444-45. The court ultimately held that an adverse inference could be drawn against the defendant unless it notified the relevant former

employees that there would be no consequences associated with disclosing information to plaintiff's counsel. *Id.* at 445-46.

Plaintiff's motion to exclude Mr. Schoettelkotte's opinions on avoided research and development costs should also be denied for a number of other reasons. On the underlying issue of the protected nature of the communications, Plaintiff's claim based on information that Mr. Roireau remembered from his time as a VGT employee is without merit. The Defend Trade Secrets Act ("DTSA") provides that a court may issue an injunction to prevent any actual or threatened misappropriation on such terms as the court deems reasonable, *provided that* the order does not prevent a person entering into an employment relationship, and that conditions placed on such employment shall be based on evidence of threatened misappropriation *and not merely on the information the person knows*." 18 U.S.C. §1836(b)(3)(A)(i)(I) (emphasis supplied). The DTSA does not permit this Court to grant relief based on information Mr. Roireau simply remembers from working at VGT.

The result under Plaintiff's Oklahoma Uniform Trade Secrets Act ("OUTSA") claim is the same. To prevail Plaintiff must prove: "(1) the existence of a trade secret; (2) misappropriation of this secret by the defendants; and (3) use of the secret by the defendants to the detriment of the plaintiff." *Micro Consulting, Inc. v. Zubeldia*, 813 F. Supp. 1514, 1534 (W.D. Okla. 1990), *aff'd*, 959 F.2d 245 (10th Cir. 1992). OUTSA defines "misappropriation" as "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." The "improper means" asserted by Plaintiff is violation of Mr. Roireau's confidentiality obligations to VGT as his former employer.

When Mr. Roireau left VGT's employ he entered into a severance and release agreement with VGT, dated October 17, 2011 (the "Roireau Severance Agreement"). *See* Ex. 5. The Roireau Severance Agreement states that Mr. Roireau agrees to ████████████████████████

10

secrets. . . . obtained through Associate's employment with VGT as confidential. . ." Although Mr. Roireau was employed by VGT in Virginia, the Agreement expressly provides that it ███████ ██████████████████████ *Id.* at p. 3, § XV.[2]  Under Tennessee law "an employee's 'remembered information and relationships with customers are not a trade secret.'" *ProductiveMD, LLC v. 4UMD, LLC*, 821 F. Supp. 2d 955, 967 (M.D. Tenn. 2011) (quoting *PartyLite Gifts, Inc. v. Swiss Colony Occasions*, 246 F. App'x 969, 973 (6th Cir. 2007); *PGT Trucking, Inc. v. Jones*, No. 15-1032, 2015 WL 4094265, at *2 (W.D. Tenn. July 7, 2015).  Under Virginia law, to the extent it would also apply, post-employment restrictions are strictly construed, and if ambiguous or overbroad will not be enforced at all.  *Modern Envts., Inc. v. Stinnett*, 561 S.E.2d 694, 695 (Va. 2002); *BB&T Ins. Svcs., Inc. v. Thos. Rutherford, Inc.*, No. CL09-4550, 2010 WL 7373709, at *5 (Va. Cir. Ct. Feb. 9, 2010) (confidentiality clause with indefinite duration unenforceable).

Plaintiff's damage claim for avoided research and development costs utterly lacks merit for the reasons set forth in Defendants' Motion to Limit the Testimony of Plaintiff's Damages Expert Melissa A. Bennis (Doc. 175), at pp. 4-6, which Defendants incorporate herein by reference.

Plaintiff has failed to establish that its motion to strike a portion of Mr. Schoettelkotte's opinion is supported by the parties' protective order or governing law.  In addition, Plaintiff's conduct in connection with this claim is unreasonable, and its effort to divest Defendants of the ability to communicate with their counsel in the defense of this action is similarly unreasonable and against public policy.  Finally, even if the requested relief were properly available to Plaintiff, it should be denied because the liability and damages components of the claim lack merit.

### C.    Plaintiff Overreaches with its Protective Order Argument.

VGT argues that Defendants failed to comply with the protective order in this case, and that as a consequence the Court should strike portions of Mr. Schoettelkotte's expert opinions.  Plaintiff

---

[2]    VGT's headquarters are in Tennessee.

seeks to use the protective order not to protect confidential information, but as a litigation tool to obtain an opportunistic advantage on its substantive claims. Plaintiff's position is not reasonable, and its motion should be denied.

As Plaintiff recognizes in its Motion, Mr. Schoettelkotte signed the protective order certification on April 5, 2018. Motion at 14 & Exh. S. In that certification Mr. Schoettelkotte agreed to abide by the terms of the protective order. Mr. Schoettelkotte was later given materials that were designated as highly confidential under the protective order. Accordingly, at all times that Mr. Schoettelkotte has had such information he had agreed in writing to be bound by the protective order. Counsel inadvertently failed to provide notice to Plaintiff's counsel that Mr. Schoettelkotte had signed the certification at the time of execution, a point that was promptly communicated to VGT's attorneys when discovered. *See* Ex. 6, E-mail from Robert Gill to Gary Rubman, dated September 2, 2018 (explaining that, notwithstanding the inadvertent error, Mr. Schoettelkotte had, in fact, executed the certification five months earlier).

Plaintiff does not and reasonably cannot controvert the point that the failure to earlier disclose that Mr. Schoettelkotte had signed the protective order certification was inadvertent and harmless. Plaintiff nonetheless argues that it was somehow prejudiced by the failure to earlier disclose Mr. Schoettelkotte. Motion at 16. However, Plaintiff had an opportunity to object to Mr. Schoettelkotte under Section 7 of the protective order, which gives a party seven calendar days to object in writing to the disclosure of highly confidential information covered by the protective other. Plaintiff made no such objection, as they *have* no objection to CHG's expert reviewing protected materials. The issue is therefore moot. Plaintiff also made no other request for an accommodation with regard to its reply expert report, or for depositions. At the time of disclosure the scheduled trial was more than five months away.

Plaintiff relies on *Allergan, Inc. v. Sandoz Inc.*, No. 2:09-CV-182, 2011 WL 2563238 (E.D. Tex. June 28, 2011), to support its position that the Court should grant its motion for violating the protective order. However, *Allergan* is an unreported decision from a trial court outside of our Circuit, which applied Fifth Circuit standards for its analysis.

The Tenth Circuit applies a different test. *Compare id.* at *2 *with Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). Importantly, the Tenth Circuit test includes "bad faith or willfulness" as a factor, while the Fifth Circuit does not. *See Allergan, Inc.*, 2011 WL 2563238, at *2; *Woodworker's Supply, Inc.*, 170 F.3d at 993. Considering that VGT does not contest that the failure to timely identify Mr. Schoettelkotte was inadvertent, this is significant. It is also significant that Plaintiff failed to disclose *Woodworker's Supply* as authority adverse to its position, particularly since it represents controlling law.

*Woodworker's Supply* requires that a court consider the following factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id.* A district court has broad discretion to determine whether a failure to timely identify was substantially justified or harmless. *Id.*

The first factor – prejudice or surprise – typically occurs where the other party is left without sufficient time for discovery. *See, e.g., Smith v. Auto-Owners Ins. Co.*, No. 15-CV-1153 SMV/GBW, 2018 WL 400767, at *3 (D.N.M. Jan. 12, 2018) (finding prejudice where the other party was left without an opportunity to identify experts for rebuttal reports and to depose the untimely identified experts). Based on this, VGT's assertion that it is prejudiced because it assumed that CHG had chosen not to use a damages expert rings hollow. VGT was fully aware of Mr. Schoettelkoette's opinions long before the time for his deposition, and VGT had as much time to analyze his opinions

as CHG had to analyze the opinions of VGT's damages expert, Melissa Bennis, before rebuttal reports were due.

The second factor – ability to cure prejudice – typically happens by extending discovery deadlines. *See, e.g.*, *Wirth ex rel. Albert J. Wirth Tr. v. Taylor*, No. 2:09-CV-127 TS, 2011 WL 1226075, at *2 (D. Utah Mar. 28, 2011) (finding that prejudice was cured where the late disclosing party offered to extend expert witness and expert report deadlines); *Smith*, 2018 WL 400767, at *4 (finding "no workable avenue" for the late disclosing party to cure the prejudice where trial was six weeks away and therefore discovery could not be reopened). Plaintiff here did not request additional time for a deposition or for rebuttal expert reports, and the rebuttal report and deposition took place on schedule. Factors 3 and 4 are not applicable.

It is not in dispute that CHG timely identified its expert under the Court's Scheduling Order. It simply inadvertently failed to disclose that the expert had signed the Protective Order Certification several months earlier. Plaintiff's attempt to gain an unfair litigation advantage based on the inadvertent late disclosure of Mr. Schoettelkotte, which has not actually prejudiced Plaintiff in any way, should be denied.

### D.    The Apportionment Opinion is Relevant and Reliable.

Plaintiff argues that Mr. Schoettelkotte's apportionment argument is based on unreliable principles and methodologies and should be excluded. Plaintiff does not argue that his opinion is not relevant. There is no question that Mr. Schoettelkotte's opinion is relevant based on the express language of the Lanham Act. It also is the result of an accepted and reasonable accounting methodology. Plaintiff's motion should be denied.

As set forth in Section 35(a) of the Lanham Act, it is a defendant's burden to show that a portion of its revenue resulted from factors other than its alleged infringement. Where shown, a

plaintiff should not be permitted to recover revenues unrelated to the alleged infringement. Otherwise, the plaintiff would receive a windfall.

In any market there are a number of factors which may influence a customer's "choices of the companies with which they do business." Ex. 7, excerpt from Litigation Services Handbook, The Role of the Financial Expert, Fifth Edition, p. 18.29. In addition to advertising, and brand identity associated with a trademark or trade dress, these factors can include pricing, quality of the sales force, quality of services provided, functional features, customer relationships, and convenience. *Id.* "These factors affect both the owner and the infringer in an intellectual property case, to the extent that they compete in the same market." *Id.* In this case both VGT and CHG compete in some of the same markets, and offer similar products.

Where a defendant shows these other factors influenced customers' decisions to do business with them, it is appropriate to apportion the amount of the accused infringer's profits to something less than the whole. *Holiday Inns v. Airport Holiday,* 493 F. Supp. 1025 (N.D. Tex. 1980). Plaintiff's own damages expert acknowledges that apportionment is proper. Ms. Bennis discusses in her rebuttal report that ███████████████████████████████████████████████████ ███████████████████████████████████████████████████████████. Ex. 8, excerpt of Bennis Reply Report, p. 19. As such, there is no dispute that apportionment is relevant. Plaintiff only questions the basis for Mr. Schoettelkotte's opinion. Mr. Schoettelkotte provided a range of apportionment values from several sources in order to assist the trier of fact with this assessment.

Mr. Schoettelkotte properly considered available information to provide a range of apportionment values for consideration by the trier of fact. While there is no single methodology for apportionment, courts have relied on testimony from employees, surveys, and other types of financial analysis to show what portion of an alleged infringer's profits are due to the infringing

activity rather than for other reasons.  Ex. 7 at p. 18.30.  Mr. Schoettelkotte took all of these into consideration in arriving at his range of apportionment values.

Contrary to VGT's assertion, Mr. Schoettelkotte's apportionment opinion was not formed in a "vacuum."  Rather, it was tied directly to the facts of the case as informed by his review of discovery documents, deposition testimony, discussions with CHG personnel, and his own independent research and financial analysis.  Ex. 9, Schoettelkotte Dep. at 64, 193-195.

While VGT argues that Mr. Schoettelkotte's apportionment opinion is derived entirely from a "Single Document That Bears No Relationship to CHG," Motion at 18, this ignores and misstates Mr. Schoettelkotte's expert report and testimony.  As Mr. Schoettelkotte explained in his expert report:





\*\*\*

Ex. 13, Expert Report of W. Todd Schoettelkotte, pp. 35-40 and Schedule 12 (footnotes omitted).

Mr. Schoettelkotte also testified in his deposition that his apportionment opinion was based on much more than a "single document":



Ex. 9, Schoettelkotte Dep. at 64:7-25.

Additionally, the very information which VGT claims cannot be considered for an apportionment analysis was prepared for that very purpose



As stated in Mr. Schoettelkotte's expert report (Ex. 13) at paragraph 12:



[3]



Consistent with the documents produced and testimony given in this case, Mr. Schoettelkotte correctly identified the fact that VGT places significant value on customer contracts and relationships, which is separate and apart from the intellectual property assets that are the subject of the alleged infringement in this matter. He therefore properly took this into account in his analysis of the apportionment of CHG's profits which may be considered by the trier of fact.

In order to determine an apportionment range, Mr. Schoettelkotte took into account the documents produced in this case, the testimony, the interviews he conducted, and the independent research and analysis he performed. Using all of this information, he conducted both ▮▮▮▮▮▮▮

19

To conduct the ██████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████████
█████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████

Under the ████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████████
█████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████.

Ultimately Mr. Schoettelkotte determined that an apportionment ratio of approximately



VGT wrongly argues that Mr. Schoettelkotte's apportionment range is flawed because it

allegedly

In this matter VGT is asserting that CHG has infringed its trademarks, trade dress and trade

secrets.  These assets were included in the very assets that were being valued

---

[4]     Under IFRS 3, business combinations are accounted for applying the "acquisition method" which requires "recognizing and measuring the identifiable assets acquired, the liabilities assumed and any non-controlling interest in the acquire[.]" Ex. 14, International Financial Reporting Standard 3 at A146.

According to Appendix A of IFRS 3, an "asset is identifiable if it either: (a) is separable ie capable of being separated or divided from the entity and sold, transferred, licensed, rented, or exchanged, either individually or together with a related contract, identifiable asset or liability, regardless of whether the entity intends to do so; or (b) arises from contractual or other legal rights, regardless of whether those rights are transferable or separable from the entity or from other rights and obligations." Ex. 14 at A163.

VGT claims that Mr. Schoettelkotte used a novel method for apportionment by considering

████████████████████████████████████████████████████████████████████. However,

Mr. Schoettelkotte's methodology is anything but novel. His analysis is based on widely-accepted

and commonly used financial statement analysis, which is routinely used to conduct both valuation

and financial analysis. This commonly accepted analysis provides a way "to analyze the subject

company with respect to other companies of different sizes. By representing the data as

percentages, the size differentials are eliminated between the subject company and its peer group."

Ex. 15, excerpt of Trugman, Gary R., Understanding Business Valuation, 2nd ed. 2002, AIPCA, pp.

125-127.

Finally, all of VGT's criticisms of Mr. Schoettelkotte's opinions go to the weight to be given

to his opinions, not to the admissibility of his testimony.

## III.    CONCLUSION

Defendants, Castle Hill Studios LLC, Castle Hill Holdings LLC, and Ironworks

Development LLC respectfully request that the Plaintiff's motion to limit the testimony of W. Todd

Schoettelkotte be denied.

Dated:  November 16, 2018                    Respectfully submitted,

                                            /s/ Robert C. Gill
                                            Robert C. Gill (admitted *pro hac vice*)
                                            Henry A. Platt (admitted *pro hac vice*)
                                            Thomas S. Schaufelberger (admitted *pro hac vice*)
                                            Matthew J. Antonelli (admitted *pro hac vice*)
                                            Jeremy B. Darling (admitted *pro hac vice*)
                                            SAUL EWING ARNSTEIN & LEHR, LLP
                                            1919 Pennsylvania Avenue, NW, Suite 550
                                            Washington, D.C. 20006
                                            (202) 295-6605
                                            (202) 295-6705 (facsimile)
                                            robert.gill@saul.com
                                            henry.platt@saul.com
                                            tschauf@saul.com
                                            matt.antonelli@saul.com

jeremy.darling@saul.com

Sherry H. Flax (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
500 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 332-8764
(410) 332-8785 (facsimile)
sherry.flax@saul.com

James C. Hodges, OBA #4254
JAMES C. HODGES, P.C.
2622 East 21st Street, Suite 4
Tulsa, Oklahoma 74114
(918) 779-7078
(918) 770-9779 (facsimile)
JHodges@HodgesLC.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of November, 2018, I caused a copy of the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO LIMIT THE TESTIMONY OF W. TODD SCHOETTELKOTTE – PUBLIC REDACTED VERSION** to be filed using the Court's ECF system, which will send notice of electronic filing to the following counsel for Plaintiff:

Graydon Dean Luthey, Jr.
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
(918) 595-4821
(918) 595-4990 (facsimile)
dluthey@gablelaw.com
*Counsel for Plaintiff*

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1221
(212) 841-1010 (facsimile)
nroman@cov.com
*Counsel for Plaintiff*

Gary M. Rubman
Peter Swanson
Michael Sawyer
Rebecca B. Dalton
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
(202) 778-5465 (facsimile)
grubman@cov.com
pswanson@cov.com
msawyer@cov.com
rdalton@cov.com
*Counsel for Plaintiff*

*/s/ Robert C. Gill*
Robert C. Gill