# EXHIBIT 7

# Litigation Services Handbook

## Fifth Edition

### The Role of the Financial Expert

Roman L. Weil

Daniel G. Lentz

David P. Hoffman

Although this section has discussed the use of royalty as a measure of the owner's lost profits, a royalty can also measure the infringer's unjust enrichment as an avoided cost related to the infringed property. Indeed, a royalty's ability to represent both or either measure of damages appears to provide its appeal to some courts. In *Sands, Taylor & Wood v. Quaker Oats*, the Seventh Circuit reversed the award of profits and remanded, suggesting that a royalty would "more accurately reflect the extent of Quaker's unjust enrichment *and* the interest of (the plaintiff) that has been infringed" (emphasis added).[172]

**(c) Calculating the Infringer's Profits.** In trademark infringement and false advertising cases, the court can award the infringer's profits under three distinguishable theories.

1. **Unjust enrichment.** Most cases award the infringer's profits to make the infringer forgo profit it would not have earned but for its wrongful acts and to restore those profits to the owner. Courts refer to such awards as *unjust enrichment*.

2. **Deterrence.** In some cases, the court awards the infringer's profits to deter future infringement, even when the court found the infringer to have acted in good faith. As demonstrated in *Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.* and *Otis Clapp & Son v. Filmore Vitamin Company*, courts sometimes view a recovery's primary purpose under the Lanham Act as making infringement an unprofitable activity.[173]

3. **Proxy for owner's damages.** The courts can award an infringer's profits as a proxy for the owner's damages because the infringer's wrongful act prevented the owner from establishing sufficient sales to provide a basis for calculation. Although based on the infringer's profits, awards of this type approximate damages in competitive relations, assuming that the plaintiff would have made each of the infringer's sales.[174]

The following sections discuss issues that experts encounter in calculating an infringer's profits in Lanham Act cases.

*(i) Burden of Proof in Establishing Sales.*   The owner bears the burden of establishing and quantifying the infringer's sales of the infringing product. In practice, however, an expert for an infringer will almost always make an independent calculation or review the owner's calculation. In cases in which the infringer fails to maintain or produce data adequate to calculate sales with precision, courts have permitted owners to rely on a wide variety of estimation methods.[175]

*(ii) Apportioning Sales and Profits.*   In the marketplace, many factors influence consumers' choices of the companies with which they do business. In addition to advertising and the brand identity associated with a trademark, these factors include pricing, quality of the sales force, functional and aesthetic features of the product, and convenience. These factors affect both the owner and the infringer in an intellectual property case, to the extent that they compete in the same market. The possibility of apportioning the infringer's profits in a Lanham Act case, however, indicates a significant difference in the conceptual approaches to awards based on the owner's damages and those based on the infringer's profits.

When quantifying sales to include in a calculation of the owner's lost profits, one must ask whether the owner would have made the sale but for the infringer's wrongful acts. The owner need not demonstrate that the infringed mark or false advertising offered the sole reason consumers did business with the infringer. The owner must show only that the owner would have made the infringer's sales but for the wrongful act. The owner's lost profits will then equal the profits on the entire sale that the owner would have captured, even if other factors contributed to that sale.

In contrast, an infringer facing claims for the infringer's profits can argue that the court should apportion those profits to reflect the presence and influence of other factors on the consumers' decision to do business with the infringer. If the infringer can present a rational and reasonable means of calculating the effect of factors other than the alleged wrongful acts, the infringer can argue that an award based on the infringer's profits should represent something less than the whole.[176]

The burden for proving the reasonableness of any apportionment method rests with the infringer;[177] however, case law provides little guidance on apportionment. Courts have on occasion accepted theories based on little more than the subjective testimony of fact witnesses. For example, in *Holiday Inns v. Airport Holiday*,[178] the infringer produced testimony by an employee that only 30 percent of its business came from customers specifically seeking a Holiday Inn. The trial court's award of the infringer's profits relied on this testimony when the court ruled that only 30 percent of the infringer's profits related to the unauthorized use of its infringing signs.

In practice, experts can use several analytical techniques to establish apportionment. The simplest method quantifies the proportion of offending content to nonoffending content. For example, the expert can calculate the proportion of square inches of print or seconds of broadcast time devoted to the portion deemed false or misleading in an infringer's total advertising campaign. In other cases under the Lanham Act, as in copyright cases, the court has rejected this approach when the owner could demonstrate that the *value* of the wrongful message or misappropriated mark was disproportionate to its physical representation.

Experts can also use various types of surveys to quantify an apportionment of sales. In addition, when the facts of the case and available data permit, time series analyses of the infringer's sales and profits before and after the alleged wrongful act can help. Finally, experts can compare sales and profits for the alleged infringing product with noninfringing but otherwise comparable products sold by the infringer. This approach resembles the analytical method used in patent cases.

*(iii) Deduction of Costs.*  As with apportionment, the infringer bears the burden of proving expenses to deduct. When calculating damages based on the *owner's* lost sales, one should use incremental profits. The law lacks this clarity with respect to calculating the infringer's profits. At least two general approaches—incremental and percentage (i.e., fully allocated)—appear acceptable in certain situations, as well as a number of hybrids.

The infringer subject to an incremental cost approach can deduct only those expenses that vary with the production and sale of the infringing products at the level of production relevant to the case. The infringer using a percentage-basis