**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

VIDEO GAMING TECHNOLOGIES,
INC.,

      Plaintiff,

v.

CASTLE HILL STUDIOS LLC, *et al.*

      Defendants.

CASE NO. 17-CV-00454-GKF-JFJ

**PUBLIC – REDACTED VERSION**

**DEFENDANTS' MOTION TO STRIKE DECLARATIONS OF STACY FRIEDMAN**
**AND JOSH DAVIS SUBMITTED IN SUPPORT OF PLAINTIFF'S**
**<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   STANDARD OF REVIEW ....................................................................................1

III.  THE COURT SHOULD STRIKE THE FRIEDMAN DECLARATION ..................... 3

    A.  The Friedman Expert Reports and Declaration ............................................. 3

    B.  The Friedman Declaration is an Improper Supplemental Expert Report .................. 6

    C.  The Friedman Declaration is Neither Justified nor Harmless ...................... 8

IV.   THE COURT SHOULD STRIKE THE DAVIS DECLARATION .......................... 11

A.  The Davis Declaration and Prior Related Disclosures................................. 11

B.  The Davis Declaration Contains Improper Expert Opinions, Opinions Not Based on Personal Knowledge, and Information Beyond VGT's Supplemental Discovery Responses.................................................................................................13

C.  The Davis Declaration is Neither Justified nor Harmless ...........................19

V.    CONCLUSION.................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Argo v. Blue Cross & Blue Shield of Kansas, Inc.,*
452 F.3d 1193 (10th Cir. 2006) ........................................................................15, 16

*Aveka L.L.C. v. Mizuno Corp.,*
212 F.R.D. 306 (M.D.N.C. 2002)...............................................................................6

*Bryant v. Farmers Ins. Exchange,*
432 F.3d 1114 (10th Cir. 2005) .......................................................................3, 8, 13

*Cohlmia v. Ardent Health Servs, LLC,*
254 F.R.D. 426 (N.D. Okla. 2008)...........................................................................10

*Cook v. Rockwell Int'l Corp.,*
2006 WL 3533049 (D. Colo. Dec. 7, 2006) ..............................................................7

*Freeman v. Glanz,*
2018 WL 4134669 (N.D. Okla. Aug. 29, 2018) ................................................14, 15

*Jackson v. Teamsters Local Union 922,*
312 F.R.D. 235 (D.D.C. 2015)...................................................................................7

*Jacobsen v. Deseret Book Co.,*
287 F.3d 936 (10th Cir. 2002) .............................................................................9, 19

*Oklahoma v. Tyson Foods, Inc.,*
2009 WL 2252129 (N.D. Okla. July 24, 2009) (Frizzell, J.)...............................*passim*

*Palmer v. Asarco Inc.,*
2007 WL 2253343 (N.D. Okla. Aug. 3, 2007).....................................................7, 11

*Rodgers v. Beechcraft Corp.,*
2016 WL 7888048 (N.D. Okla. Sept. 20, 2016)......................................................10

*Rodgers v. Beechcraft Corp.,*
2017 WL 465474 (N.D. Okla. Feb. 3, 2017) ......................................................*passim*

*S.E.C. v. Nacchio,*
2008 WL 4587240 (D. Colo. Oct. 15, 2008) .............................................................7

*Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,*
17 F.3d 985 (10th Cir. 1999)........................................................................2, 9, 19

**Other Authorities**

Fed. R. Civ. P. Rule 26 ..................................................................................................... *passim*

Fed. R. Civ. P. Rule 37(c)(1) ............................................................................................. *passim*

Fed. R. Civ. P. 56(c)(4) ..........................................................................................................3, 8

Fed. R. Evid. 701 .....................................................................................................................1,3

Fed. R. Evid. 702 ......................................................................................................................14

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER**

Defendants, Castle Hill Studios LLC, Castle Hill Holdings LLC, and Ironworks Development LLC (collectively, "CHG" or "Defendants"), move for an order striking the Declarations of Stacy Friedman and Josh Davis submitted in Support of Plaintiff's Motion for Partial Summary Judgment.

## I.   INTRODUCTION

Plaintiff Video Gaming Technologies, Inc. ("VGT") submitted three declarations in support of its motion for partial summary judgment, two of which Castle Hill moves to strike.

First, VGT submitted a 23-page declaration from its technical expert, Stacy Friedman, which contains new opinions not disclosed in Mr. Friedman's two prior written expert reports. The use of Mr. Friedman's undisclosed expert opinions contained in his declaration is not authorized by the Court's expert disclosure schedule or the Rules governing supplemental expert opinions, and is prejudicial to Defendants.  The Court should strike the declaration.

Second, VGT submitted an 8-page undisclosed expert report cloaked as a declaration from a fact witness, software engineer Josh Davis. Mr. Davis was never disclosed by VGT as an expert in discovery, and he never submitted an expert report.  His testimony stretches beyond lay testimony within his personal knowledge into technical opinions.  His declaration also contains information which Castle Hill requested, and which VGT failed to provide, in discovery. The Court should strike this declaration as well.

## II.   STANDARD OF REVIEW

Rule 26(a)(2)(A) requires that a party disclose the identity of all experts that a party intends to use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705.  *See* Fed. R. Civ. P. 26(a)(2)(A). Rule 26(a)(2)(B)(i) requires production of an expert report containing "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ.

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER**

P. 26(a)(2)(B)(i). Under Rule 26(a)(2)(D), a party must make the disclosures at the times and in the sequence that the court orders. *See* Fed. R. Civ. P. (26)(a)(2)(D).

Rule 26(e)(1) requires a party to supplement disclosures made in discovery, as well as responses to interrogatories and requests for production. *See* Fed. R. Civ. P. 26(e)(1). Rule 26(e)(2), which specifies a parties' obligations to supplement its expert disclosures, provides as follows:

> **Expert Witness**. For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Fed. R. Civ. P. 26(e)(2).

"[A] supplemental expert opinion which attempts to strengthen or deepen opinions expressed in the original expert report 'exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)(1).'" *Oklahoma v. Tyson Foods, Inc.*, 2009 WL 2252129 at *3 (N.D. Okla. July 24, 2009) (Frizzell, J.) (citations omitted).

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless. *See* Fed. R. Civ. P. 37(c)(1). "Under Rule 37(c)(1), a party's failure to disclose the identity of an expert witness or provide an expert report, as required by Rule 26(a)(2), *mandates* that the court exclude expert testimony unless the failure was 'substantially justified or is harmless.'" *Tyson Foods, Inc.*, 2009 WL 2252129 at *3 (quoting Fed. R. Civ. P. 37(c)(1)) (emphasis added). The trial court has broad discretion in determining whether a Rule 26(a) violation is justified or harmless. *See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 17 F.3d 985, 993 (10th Cir. 1999).

An affidavit or declaration used to support or oppose a motion for summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence, and show that

CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

the affiant or declarant is competent to testify on the matters stated. *See* Fed. R. Civ. P. 56(c)(4). On summary judgment, a declaration may not contain expert testimony unless the declarant has first been designated as an expert witness under Rule 26(a)(2). *See Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114, 1122 (10th Cir. 2005). For disclosed experts, Rule 26(a)(2)(B)(i) requires a complete written report containing all opinions and the reasons for those opinions; therefore, any undisclosed expert opinions contained in a declaration beyond those in the original report are inadmissible absent a showing that the nondisclosure was justified or harmless under Rule 37(c)(1). *See Tyson Foods, Inc.*, 2009 WL 2252129 at *5. Any non-expert testimony in the form of opinions or inferences must be (1) rationally based on the perception of the witness; (2) helpful to a clear understanding of the witness's testimony or determination of the facts in issue; and (c) not based on scientific, technical, or other specialized knowledge. *Bryant*, 432 F.3d at 1122-23 (quoting Fed. R. Evid. 701).

## III.   THE COURT SHOULD STRIKE THE FRIEDMAN DECLARATION

### A.   The Friedman Expert Reports and Declaration

VGT has presented Stacy Friedman as a technical expert to opine on VGT's trade dress and trade secret claims.[1] *See* Opening Expert Report of Stacy Friedman ("Report"), dated August 10, 2018. A true and correct copy of this Report is attached hereto as **Exhibit A**. Mr. Friedman summarizes his opinions on these subjects in Section III of his Report, at ¶¶ 11-15. Mr. Friedman also issued a reply report in response to Castle Hill's rebuttal experts' reports. *See* Reply Expert Report of Stacy Friedman, dated September 14, 2018 ("Reply Report"). A true and correct copy of the Reply Report (without exhibits) is attached hereto as **Exhibit B**.

Mr. Friedman authored a 23-page declaration in support of VGT's motion for partial summary judgment. *See* Declaration of Stacy Friedman in Support of Plaintiff's Motion for Partial

---

[1] Castle Hill has filed a *Daubert* motion to exclude the testimony and reports of Stacy Friedman at trial. *See* Doc. 172 (under seal). That motion is currently pending.

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER**

Summary Judgment ("Friedman Declaration"), dated October 11, 2018. A true and correct copy of this Declaration is attached hereto as **Exhibit C**.[2]

The Freidman Declaration is merely a third bite at the apple, and reads like another expert report. It regurgitates, amplifies, and bolsters Mr. Friedman's opinions in his original Report. *Compare* Ex. C, Friedman Declaration ¶¶ 1-9 (expert qualifications) *with* Ex. A, Report ¶¶ 1-9 (same); Ex. C, Friedman Declaration ¶¶ 11-18 (Class II game design and functionality) *with* Ex. A, Report ¶¶ 28-31, 55 (same); Ex. C, Friedman Declaration ¶¶ 19-21 (████████████████████████ ████████) *with* Ex. A, Report ¶¶ 65-66, 69 (same); Ex. C, Friedman Declaration ¶¶ 22-23 (whether VGT takes steps to maintain secrecy of its alleged confidential information) *with* Ex. A, Report ¶¶ 85-87(same); Ex. C, Friedman Declaration ¶¶ 24-29 (████████████████████ ████████████████████) *with* Ex. A, Report ¶¶ 70-71 (same); Ex. C, Friedman Declaration ¶¶ 30-35 (alleged value of ████████████████) *with* Ex. A, Report ¶¶ 72-73 (same); and Ex. C, Friedman Declaration ¶¶ 36-40 (alleged use by Castle Hill of ██████████ ████████████) *with* Ex. A, Report ¶¶ 111-19 (same).

Although Mr. Friedman's Declaration covers the same general topics as his prior reports, it contains substantially new and undisclosed expert opinions. In fact, Mr. Friedman *admits* in his Declaration that his new opinions, including opinions regarding ████████████████ ████████, were not formed until after he reviewed the Declaration of Josh Davis, dated October 10, 2018, well after the dates of Mr. Friedman's reports. *See* Ex. C, Friedman Declaration ¶ 19 (███ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████) (emphasis added). Mr. Freidman

---

[2] A redacted copy of the Friedman Declaration was filed as Doc. 178-7, attached to Plaintiff's Motion for Partial Summary Judgment. An unredacted copy of the Friedman Declaration was filed under seal as an attachment to Doc. 179.

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER**

repeatedly cites to the Davis Declaration and also relies on the Declaration of Richard Williamson, both executed *after* Mr. Friedman's original reports were submitted, to support his new opinions. *See e.g.* Ex. C, Friedman Declaration ¶ 22 (citing Davis Declaration ¶¶ 14-16 and Williamson Declaration ¶ 3, executed October 10, 2018 and October 11, 2018, respectively); Ex. C, Friedman Declaration ¶ 31 (citing Davis Declaration ¶¶ 6-10, 17).

In addition to including new opinions, Mr. Friedman's opinions in his Declaration are substantially more detailed than in his original Report. For example, his opinions regarding ███████ ████████████████████████████████████████████████████████████████████████ ███████. *Compare* Ex. C, Friedman Declaration ¶¶ 19(a)-(f), 20-21 *with* Ex. A, Report, ¶¶ 65-66. Likewise, Mr. Friedman's opinions regarding Castle Hill's alleged misappropriation of ██████████ ████████████ have been substantially updated, and now includes a computer source code analysis and comparison, whereas before Mr. Friedman relied solely on documents, testimony and descriptions from other witnesses. *Compare* Ex. C, Friedman Declaration ¶¶ 36-40 (alleged use by Castle Hill of ████████████████████████) *with* Ex. A, Report ¶¶ 111-19 (same). In fact, in his Reply Report, Mr. Friedman specifically admitted that he did *not* perform a source code comparison.[3] *See* Ex. B, Reply Report ¶ 73 ████████████████████████████████ ██████████████). Mr. Friedman also uses this sur-reply styled "Declaration" as an opportunity to insert commentary on the deposition testimony of Castle Hill's expert, Robert Zeidman, who was deposed *after* Mr. Friedman was deposed and issued all of his reports. *See* Ex. C, Friedman Declaration ¶¶ 38-39.

---

[3] Mr. Friedman's failure to complete a source code analysis is the basis for a portion of Castle Hill's *Daubert* motion seeking to exclude his report and testimony as well as Castle Hill's motion for summary judgment. *See* Doc. 172 at 16-18; Doc. 184, SOF ¶ 71 and pp. 47-48.

CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

Mr. Friedman's new opinions, which were admittedly formed at the eleventh hour after his expert report and after his deposition, but before the summary judgment deadline with no apparent justification, and which are prejudicial to Castle Hill, should be stricken.

**B.      The Friedman Declaration is an Improper Supplemental Expert Report**

The Court should strike the Friedman Declaration because it is an improper supplemental expert report. VGT had an obligation to serve a copy of the Friedman Report containing a "complete statement of all opinions the witness will express and the basis and reasons for them." *See* Fed. R. Civ. P. 26(a)(2)(B)(i). Opening expert reports were due by August 10, 2018, and reply expert reports were due by September 14, 2018. *See* Doc. 101. After providing his Report and Reply Report on those dates, Mr. Friedman was deposed on September 24, 2018. Mr. Friedman did not supplement or correct any of his opinions at any time before expert discovery closed. Instead, VGT waited until the Friedman Declaration was filed on the summary judgment and *Daubert* motions deadlines of October 12, 2018 to supplement Mr. Friedman's opinions.

As explained above, Mr. Friedman included substantially new opinions in his Declaration, including new opinions relating to, *inter alia*, the functionality of ███████████████ ████████, comparisons between Castle Hill and VGT's source code, additional opinions regarding the various elements of VGT's trade secret claims, and analysis of deposition testimony from Castle Hill's expert, who was deposed after the Friedman reports were issued.

This is improper supplementation under the Rules. "Rule 26(e) does not cover failures of omission because the expert did an inadequate or incomplete preparation. To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would reek [sic] havoc in docket control and amount to unlimited expert opinion preparation." *Tyson Foods, Inc.*, 2009 WL 2252129 at *3 (quoting *Aveka L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002)). Rule 26(e) "does not give license to sandbag one's opponent" with opinions that

CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

should have been included in an expert report." *See id.* (citation omitted); *see also S.E.C. v. Nacchio*, 2008 WL4587240 at *3 n.3 (D. Colo. Oct. 15, 2008) (Rule 26(e)(1) supplementation only permitted "for the narrow purpose for correcting inaccuracies or adding information that was not available at the time of the initial report."); *Jackson v. Teamsters Local Union 922*, 312 F.R.D. 235, 237 (D.D.C. 2015) (same) (compiling cases).

The 23-page Friedman Declaration, which contains all of the features of an expert report – including Mr. Friedman's qualifications, an attached curriculum vitae, citations to materials relied upon, and expert opinions, including new ones – "is essentially a new expert report with new opinions." *See Palmer v. Asarco Inc.*, 2007 WL 2253343 at *3 (N.D. Okla. Aug. 3, 2007) (holding defendants would need time to depose plaintiff's expert, prepare a meaningful *Daubert* challenge, and that the "new affidavit presents a clear violation of Rule 26(a)(2), and the rule was designed to prevent exactly this type of late disclosure of expert opinions."). This type of supplemental report "that states additional opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)(1)." *Rodgers v. Beechcraft Corp.*, 2017 WL 465474 at *5 (N.D. Okla. Feb. 3, 2017) (quoting *Cook v. Rockwell Int'l Corp.*, 2006 WL 3533049 at *87 (D. Colo. Dec. 7, 2006)). "To rule otherwise would create a system where preliminary [expert] reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given. This result would be the antithesis of the full expert disclosure requirements stated in Rule 26(a)." *Id.*

The Court should strike the Friedman Declaration, because it is an improper supplemental expert report, and to the extent any portions are proper, they are entirely duplicative and appear to be taken directly from his prior reports. At a minimum, the Court should strike the additional opinions and commentary in the Friedman Declaration which are not copied verbatim from his

CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

original Report.[4] *See Tyson Foods, Inc.*, 2009 WL 2252129 at *8 (striking commentary concerning figures of expert report from expert declaration in support of summary judgment). Given the 20-plus page scope of the "Declaration," to the extent that the Court is not inclined to strike the entire Declaration and cannot decipher which opinions are taken from Mr. Friedman's Report and which are new, the Court should order VGT to bear the burden to identify this information for the Court. *See id.* (ordering plaintiff to file revised affidavit in which each opinion references paragraph in expert report supporting the opinion in the affidavit). Given that all opinions are either duplicative of the existing report or are new, the Court should strike the entire Declaration. *See Rodgers v. Beechcraft Corp.*, 2017 WL 465474 at *5 (striking expert's affidavit and finding restated portions of expert report contained in affidavit are "essentially irrelevant" and new opinions were improper supplementation).

### C.    The Friedman Declaration is Neither Justified nor Harmless

VGT's untimely disclosure of Mr. Friedman's new opinions set forth in the Friedman Declaration is neither justified nor harmless, and the Declaration is therefore inadmissible. Rule 26(a)(2)(B)(i) requires a complete written report containing all opinions and the reasons for those opinions. Any undisclosed expert opinions contained in a declaration beyond those in the original report are inadmissible absent a showing that the nondisclosure was justified or harmless under Rule 37(c)(1). *See Tyson Foods, Inc.*, 2009 WL 2252129 at *5. In determining whether the nondisclosures are

---

[4] In addition to being improper supplemental expert opinions, Mr. Friedman appears to rely upon and copy several paragraphs from the Davis Declaration. Mr. Friedman therefore offers opinions not within his personal knowledge in reliance on Mr. Davis' Declaration. Additionally, the admissibility of Mr. Davis' opinions themselves are challenged, *infra*. The Friedman Declaration should therefore also be stricken because Mr. Friedman lacks personal knowledge and relies upon inadmissible evidence. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *see also Bryant*, 432 F.3d at 1122 (content of summary judgment affidavit must be admissible evidence based on personal knowledge).

justified or harmless, the Court should consider the following factors: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt trial; and (4) the moving party's bad faith or willfulness. *Woodworker's Supply, Inc.*, 17 F.3d at 993.

First, if VGT is able to rely upon the Declaration, Castle Hill will be prejudiced. It is prejudicial to Castle Hill that VGT's expert's reports did not reveal the full scope of what Mr. Friedman would testify to at trial. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002) (prejudicial when expert reports do not identify substance of the experts' testimony). Mr. Friedman's report is an attempt to bolster his original report, and Castle Hill is prejudiced because it cannot now take discovery on his new opinions. *See Tyson Foods, Inc.*, 2009 WL 2252129 at *10 (striking 33-page expert declaration submitted in response to *Daubert* motion, and finding opinions were primarily aimed at bolstering the expert's original report and were "clearly prejudicial to defendants, who have not had an opportunity to conduct discovery on them.").

Castle Hill's experts have already issued their rebuttal expert reports in reliance on Mr. Friedman's Report. *See* Rebuttal Report of Robert Zeidman, dated August 31, 2018. A true and correct copy of this Report (without exhibits) is attached hereto as **Exhibit D**; *see also* Rebuttal Report of Joseph Valandra dated August 31, 2018. A true and correct copy of this Report (without exhibits) is attached hereto as **Exhibit E**; *see also* Rebuttal Expert Report of W. Todd Schoettelkotte Relating to Damages dated August 31, 2018. A true and correct copy of this Report (without schedules and exhibits) is attached hereto as **Exhibit F**. Castle Hill would also need to depose Mr. Friedman regarding his new opinions, and potentially supplement Castle Hill's *Daubert* motion as to Mr. Friedman and its motion for summary judgment, which have already been prepared and are on file with the Court. This would delay the Court's disposition of the many pre-trial motions, and perhaps its scheduled trial, and needlessly cause Defendants to incur additional costs and fee. *See*

CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

*Cohlmia v. Ardent Health Servs, LLC*, 254 F.R.D. 426, 434 (N.D. Okla. 2008) (finding harm and

striking expert reports where defendants commissioned expert reports in reliance on plaintiff's

reports and trial schedule would be impacted). As Magistrate Judge Cleary explained under

analogous circumstances:

> Defendants will be prejudiced if the Plaintiffs are allowed to rely on the untimely
> disclosures set out in their Affidavits. Defendants did not receive Plaintiffs' expert's
> Affidavits until July 12, 2016 – after the close of discovery, after Plaintiffs' experts
> had been deposed, after Defendants' own experts had prepared their expert reports,
> after Defendants filed their Motion for Summary Judgment and after Defendants
> had filed their pending *Daubert* challenges. Allowing Plaintiffs' experts to rewrite their
> expert reports will cause significant prejudice to Defendants' preparation of this case.
> It would require re-opening all of the matters described above to afford Defendants
> an opportunity to consider and respond to the information in the Affidavits. This
> would result in substantial cost and delay to Defendants and would derail the
> efficient resolution of this case.

*Rodgers v. Beechcraft Corp.*, 2016 WL 7888048 at *7 (N.D. Okla. Sept. 20, 2016), *report and recommendation*

*adopted by*, 2017 WL 465474 (N.D. Okla. Feb. 3, 2017) (striking expert affidavits submitted in

response to *Daubert* motions).

Second, there is no reasonable cure. Discovery has closed. Castle Hill has served expert

reports addressing and relying on Mr. Friedman's original Report, has already deposed Mr.

Friedman, and has spent significant resources preparing a motion for summary judgment and a

*Daubert* motion as to Mr. Friedman. It would be unreasonable and impractical to re-open the case to

allow for new rebuttal reports, a new deposition of Mr. Friedman, and supplementation to Castle

Hill's motions, simply because Mr. Friedman did not submit a complete statement of his opinions in

his opening Report. *See Rodgers*, 2016 WL 788048 at *7 (no reasonable cure where substantive

motions had been filed, discovery had closed, and case would need to be re-opened for new expert

reports and "starting the pretrial clock running anew").

Third, the introduction of the Declaration would delay trial. As set forth above, any cure to

allow introduction of the Declaration would require a significant delay of trial in order to re-open

10

CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

expert discovery and pretrial deadlines, including the preparation of summary judgment and *Daubert* motions. *See Palmer*, 2007 WL 2254343 at *4 ("The second and third factors are closely related, because the only way to cure the resulting prejudice would be to delay the trial date."); *Rodgers*, 2016 WL 788048 at *7 (holding re-deposing experts, additional expert reports by defendants' experts, re-opening summary judgment record, and potential re-opening of discovery would disrupt trial schedule).

Fourth, Mr. Friedman's additional opinions suggest bad faith or willfulness. Mr. Friedman or VGT could have indicated to Castle Hill that Mr. Friedman was conducting further source code analysis and that he would be preparing additional opinions, or VGT could have sought leave of Court for additional time for Mr. Friedman to complete his initial Report. VGT did not do so. Instead, Castle Hill and its experts have spent significant time and resources in reliance on Mr. Friedman's initial Report and opinions. His untimely 23-page supplemental expert "Declaration" suggests willful disregard of the Rules. *See Rodgers*, 2016 WL 788048 at *7 (Plaintiffs' failure to alert Defendants that new expert opinions were being prepared weighed against plaintiffs).

The Friedman Declaration is an improper supplemental expert report which is not justified and is harmful to Castle Hill. Accordingly, the Court should strike the Friedman Declaration.

## IV.    THE COURT SHOULD STRIKE THE DAVIS DECLARATION

### A.    The Davis Declaration and Prior Related Disclosures

VGT employee Josh Davis also submitted a declaration in support of VGT's motion for partial summary judgment. *See* Declaration of Josh Davis in Support of Plaintiff's Motion for Partial Summary Judgment ("Davis Declaration"), dated October 10, 2018.  A true and correct copy of the Davis Declaration is attached hereto as **Exhibit G**.[5]

---

[5] A redacted copy of the Davis Declaration was filed as Doc. 178-1, attached to Plaintiff's Motion for Partial Summary Judgment. An unredacted copy of the Davis Declaration was filed under seal as an attachment to Doc. 179.

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER**

Before filing Mr. Davis' undisclosed expert report (styled as a "Declaration"), he had been identified only as a fact witness. As stated above, this Court established the following schedule for the disclosure of experts: (1) opening expert reports due August 10, 2018; (2) opposition expert reports due August 31, 2018; (3) reply expert reports due September 14, 2018; and (4) expert discovery cutoff September 28, 2018. *See* Doc. 101. The Court also required the parties to serve preliminary witness lists earlier in the case. *See id.* VGT served a preliminary witness list on February 16, 2018 and identified Josh Davis as a fact witness, with a separate category for expert witnesses. *See* VGT's Preliminary Witness List and Exhibit List, a true and correct copy of which is attached hereto as **Exhibit H**. On July 8, 2018, VGT served its Supplemental Preliminary Witness List and Exhibit List, again identifying Mr. Davis as a fact witness, with a separate category reserved for expert witnesses. *See* VGT's Supplemental Preliminary Witness List and Exhibit List, a true and correct copy of which is attached hereto as **Exhibit I**.

VGT designated Mr. Davis as a 30(b)(6) witness on the exact issues discussed in his declaration, and he was deposed on these issues on August 3, 2018: (1) the origin, creation, and development of the math underlying the VGT Class II games; (2) identification and creation of ██████████████████████████████████████; and (3) functionality of the VGT Class II games. *See* Deposition of Josh Davis, a true and correct copy of excerpts of which are attached hereto as **Exhibit J**, pp. 19-20. The Davis Declaration was not authored or produced in advance of the deposition, preventing Castle Hill from deposing Mr. Davis regarding its contents and his opinions. Although counsel for VGT was present at the deposition and could have solicited testimony eliminating the need for a declaration, allowing Castle Hill the chance to cross-examine

Mr. Davis on the issues, VGT's counsel elected to only ask Mr. Davis approximately four pages of deposition questions and answers.[6] *See* Ex. J, Davis Dep., pp. 156-60.

VGT did not thereafter designate Mr. Davis as an expert or produce a report for him in accordance with the Court's expert deadlines. Rather, VGT waited to attach the Davis Declaration to its motion for partial summary judgment. VGT's failure to designate Mr. Davis as an expert precludes its use of his undisclosed expert opinions.

Additionally, the Davis Declaration contains impermissible lay opinions not within Mr. Davis' personal knowledge. Mr. Davis also offers various opinions based on his own subjective beliefs and speculation. The Court should strike the Declaration.

Finally, the Davis Declaration includes opinions regarding issues about which Castle Hill requested information during discovery and which VGT failed to timely provide or supplement. VGT should not be permitted to hide the ball regarding its alleged trade secrets and trade secret claims throughout discovery and then submit an affidavit summarizing those same issues, the use of which is unjustified and harmful to Castle Hill. The Court should strike the Davis Declaration.

### B. The Davis Declaration Contains Improper Expert Opinions, Opinions Not Based on Personal Knowledge, and Information Beyond VGT's Supplemental Discovery Responses

The Court should strike the Davis Declaration because it contains improper expert opinions, opinions not based on Mr. Davis' personal knowledge, and information that VGT failed to provide in discovery.

First, Mr. Davis was not designated as an expert under Rule 26(a)(2), so his Declaration, which contains expert testimony, should be stricken. *See Bryant*, 432 F.3d at 1122. Mr. Davis opines about how █████████████████████████████████████ is a "challenging issue"

---

[6] VGT nonetheless criticizes Castle Hill for not questioning its own witness in VGT's Motion to Exclude the Testimony of W. Todd Schoettelkotte in Part. *See* Doc. 163 at 12-13.

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER**

and how a Class II system must comply with specific regulatory requirements. *See* Ex. G, Davis Declaration ¶ 6. He also offers expert opinions on whether ███████████████████ ██████████████████████, *see* Ex. G, Davis Declaration ¶¶ 10, 14-17, including his opinion that ██████████████████████████████████████████████ ███████████████" *See* Ex. G, Davis Declaration ¶ 15. Mr. Davis also opines that he is "█ ███████████████████████████████████████████" because "█ ████████████████████████████████" *See* Ex. G, Davis Declaration ¶ 18. These opinions are all expert opinions. Mr. Davis is a VGT engineer, but there is no basis for him to offer expert testimony about the Class II industry, regulatory requirements, confidentiality agreements with third-parties, or the business of other gaming companies and their practices. *See Freeman v. Glanz*, 2018 WL 4134669 at *7 (N.D. Okla. Aug. 29, 2018) (finding declarant was not a disclosed medical expert and unqualified to offer expert opinions). Moreover, Mr. Friedman has been designated as VGT's expert on these same issues. VGT cannot have it both ways, claiming that *Mr. Friedman's* opinions on these exact issues constitute expert "scientific, technical, or other specialized knowledge," *see* Fed. R. Evid. 702, whereas *Mr. Davis'* opinions on the same issues do not.

Mr. Davis also reviews and opines on various documents, including ██████████ documents in connection with his Declaration, which based on his Declaration are stored in a "██████████ █████████████████" *See* Ex. G, Davis Declaration ¶¶ 4-5, 8-9. He testified in his 30(b)(6) deposition that he performed an ██████████████████████ prior to the deposition. *See* Ex. G, Davis Dep. at 88-89. A review of documents in preparation for a 30(b)(6) deposition demonstrates Mr. Davis does not have personal knowledge of this information. Any opinions based on that review are expert opinions. *See Freeman*, 2018 WL 4134669 at *8 ("[Declarant's] opinion statements in this regard are improper expert opinions given by a non-expert. [Declarant]'s conclusions are

14

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER**

based upon review of documents and video footage, rather than his knowledge as a fact witness."). The Davis Declaration contains undisclosed expert testimony, and it should be stricken.

Second, the Davis Declaration includes opinions not based on Mr. Davis' personal knowledge. Mr. Davis concedes as much in his opening paragraph, indicating that he has personal knowledge of the facts in his Declaration "[e]xcept where otherwise indicated." *See* Ex. G, Davis Declaration ¶ 1.

Mr. Davis includes several statements indicating that he does not base his Declaration on personal knowledge. Mr. Davis includes opinions regarding "the regular practice" of "VGT engineers," but he does not describe how or why he would have personal knowledge of the regular practice of all VGT engineers using any VGT source code. *See* Ex. G, Davis Declaration ¶ 6. These opinions are not based on personal knowledge and are speculative. *See Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (striking paragraphs of affidavit based on lack of personal knowledge where declarant "was not in a position to acquire such comprehensive knowledge" regarding other co-workers); *Freeman*, 2018 WL 4134669 at *8 (affiant's statement that he was "familiar" with employment practices based on observation alone held insufficient to satisfy personal knowledge requirement).

Similarly, in regard to documents describing 

*See* Ex. G, Davis Declaration ¶ 15. He goes on to state that

*See* Ex. G, Davis Declaration ¶ 16. As an engineer, Mr. Davis does not describe how or why he would have personal knowledge of VGT's confidentiality policies with third

CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

parties, nor does he explain how he is personally aware of 

. These opinions are mere speculation and belief.

Mr. Davis' opinions that he is

*See* Ex. G, Davis Declaration ¶ 18. "Under the personal

knowledge standard, an affidavit is inadmissible if 'the witness could not have actually perceived or

observed that which he testifies to.'" *Argo*, 452 F.3d at 1200. Mr. Davis' statements about things he

is "not aware" of are necessarily things he "could not have actually perceived or observed." Because

these opinions are merely speculative and his own subjective beliefs, they are not proper lay opinion

and should be stricken. *See id.* ("[A]t the summary judgment stage, 'statements of mere belief' in an

affidavit must be disregarded.").

Third, the Davis Declaration includes new opinions regarding information and summaries of

information about which Castle Hill requested in discovery and that VGT failed to provide or

supplement. Castle Hill served its First Set of Interrogatories on VGT on September 25, 2017, over

a year ago. A true and correct copy of Castle Hill Studios LLC's First Set of Interrogatories is

attached hereto as **Exhibit K**. The fourth interrogatory requested that VGT:

> State all facts supporting your misappropriation of trade secrets claim. (As part of
> your answer, describe with specificity each trade secret you claim CHG
> misappropriated, and for each such trade secret (hereafter in this interrogatory, "it")
> state when it was taken, how it was taken, who took it, how CHG obtained it, how
> CHG used it (including, if applicable, in which CHG Games it has been used), why it
> has independent economic value, the approximate value of it, VGT's efforts to keep
> it secret, when such efforts to keep it secret began and finished, and why it could not
> be derived independently with publicly-available information).

*See* Exhibit K, Interrogatory No. 4.

VGT responded to Castle Hill's First Set of Interrogatories, and then supplemented its

responses numerous times throughout the discovery period. VGT served its Sixth Supplemental

Objections and Responses on August 3, 2018, the last day of fact discovery. A true and correct copy

16

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER**

of certain excerpts of VGT's Sixth Supplemental Objections and Responses to Defendant Castle

Hill Studio LLC's First Set of Interrogatories (Nos. 1-13) is attached hereto as **Exhibit L**. VGT's

total responses and supplemental responses to Interrogatory No. 4 spans approximately 32 pages.

*See* Exhibit L, at 123-155. While VGT provided some details throughout its 32 page response

regarding its ▆▆▆▆▆▆▆▆▆▆▆, VGT did not provide the same level of detail with citations to

source code as it did in the Davis Declaration. *Compare, e.g.*, Ex. G, Davis Declaration ¶ 12(a) *with*

Exhibit L at 132, 148. In fact, the Davis Declaration (and identical paragraphs in the Friedman

Declaration) was the first time that VGT *ever* provided specific citations to source code for its

▆▆▆▆▆▆▆▆▆ claims.

The Davis Declaration includes additional details that were omitted from VGT's lengthy

interrogatory response. *See e.g.*, Ex. G, Davis Declaration ¶ 12(a) ▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. Such

details were likewise not provided in the Davis 30(b)(6) deposition, *see generally* Ex. J, Davis Dep. at

74-100. Consequently, Castle Hill and its experts had no notice of this detailed information until

October 12, 2018. Likewise, the Davis Declaration includes more detail regarding the ▆▆▆▆

▆▆▆▆▆▆▆▆▆ than VGT had previously disclosed, even though Interrogatory No. 4

specifically requested information regarding VGT's efforts to maintain the secrecy of its alleged

trade secrets. *Compare* Ex. G, Davis Declaration ¶¶ 4-5, 8-9, 14 *with* Ex. L, VGT's Sixth

Supplemental Interrogatory Responses, at 152-53, 159-60.  Only after Mr. Davis was deposed

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. *See* Ex. J, Davis Dep. at

88-90. Mr. Friedman included a bit more detail in his expert Report. *See* Ex. A, Report ¶ 86.

However, until the Davis Declaration, VGT did not explain the its source code security features in

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER**

full, even though that information was requested a year ago, and this is an issue on which VGT has the burden of proof at trial.

VGT's failure to provide complete responses to Castle Hill's interrogatories during the discovery period should bar VGT from using the Davis Declaration to explain its trade secrets and support its claim. Castle Hill demanded repeatedly throughout discovery that VGT explain its trade secrets in detail, ███████████████████████████████████████ ███████████████████████████. *See e.g.*, Correspondence from R. Gill to M. Sawyer dated April 9, 2018 ("███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████). A true and correct copy of the Correspondence from R. Gill to M. Sawyer dated April 9, 2018 is attached hereto as **Exhibit M.**

While VGT did provide an increasing level of detail about its alleged trade secrets, VGT never fully cooperated and provided the level of detail that it was obligated to provide. VGT's interrogatory responses, for all of their length, are vague, conclusory and full of self-aggrandizing puffery. But they failed to provide the level of detail provided for the first time in the Davis Declaration about the ███████████ at issue. Nor do these discovery responses provide specific citations to the source code VGT relies on, even though that information was specifically requested. VGT should have provided all information regarding its alleged trade secrets in its discovery responses. It should not be permitted to provide this information now through a declaration, which contains factual information improperly withheld, and expert opinion not disclosed in accordance with the scheduling order and the Rules. The Court should strike the Davis Declaration.

18

CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

### C.     The Davis Declaration is Neither Justified nor Harmless

VGT's failure to provide the information set forth in Mr. Davis' Declaration during the course of discovery is neither justified nor harmless. Rule 26(e)(1) requires a party to supplement disclosures made in discovery, as well as responses to interrogatories and requests for production. *See* Fed. R. Civ. P. 26(e)(1). VGT's failure to supplement its discovery as required prohibits VGT from using this information to support its motion for summary judgment unless the failure was substantially justified or is harmless. *See* Fed. R. Civ. P. 37(c)(1). In determining whether the nondisclosures are justified or harmless, the Court should consider the factors set forth in *Woodworker's Supply, Inc.*, 17 F.3d at 993.

First, if VGT is able to rely upon the Declaration, Castle Hill will be prejudiced. It is prejudicial to Castle Hill that VGT failed to provide complete responses identifying its alleged trade secrets with specificity, including the source code implementing the same, until VGT filed a declaration in support of its motion for summary judgment. Castle Hill requested this information over a year ago. VGT began asserting the misappropriation ███████████████ █████ March 22, 2018. *See* Correspondence from M. Sawyer to R. Gill dated March 22, 2018, attached as **Exhibit N.** As such, VGT had been studying the source code and investigating the remaining issues discussed in the Davis Declaration since at least as early as March 22, 2018.

In part due to the Davis Declaration, VGT's expert, Stacy Friedman, has submitted additional expert opinions which mirror Mr. Davis' additional source code testimony, as discussed *supra*. The uncertainty in the substance of VGT's expert testimony at trial is prejudicial to Castle Hill. *See Jacobsen*, 287 F.3d at 953. And it is prejudicial that Castle Hill's experts have already issued rebuttal reports, and that Castle Hill has prepared *Daubert* motions and its motion for summary judgment in reliance on the state of VGT's evidence at the close of fact and expert discovery.

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER**

There is no reasonable cure, and even if there were, any cure would delay trial. VGT unnecessarily filed multiple untimely declarations without leave of Court rather than relying on the facts and evidence of record. VGT had 32 pages of supplemental interrogatory responses supporting its trade secret claims, plus a technical expert, and there have been over 40 depositions taken in this case. It is telling that VGT still needed two lengthy declarations to explain ███████. Castle Hill has served expert reports, *Daubert* motions, and a motion for summary judgment relying on the discovery served by VGT and its expert reports. It would be unreasonable to allow VGT to subvert the Rules, and back-door untimely supplemental expert reports after Castle Hill has already spent significant resources working with the existing record before the Declarations, only to delay the pending motions and trial schedule.

Finally, Mr. Davis' Declaration suggests bad faith or willfulness by VGT. Castle Hill repeatedly demanded that VGT explain its trade secrets claim throughout the discovery period. VGT provided vague, rambling responses, and it took months before Castle Hill had any real concept of the substance behind the trade secret claims at issue. This eleventh-hour maneuver to submit additional testimony, opinions, and source code citations for its summary judgment motion, when all information should have been previously provided to Castle Hill to facilitate meaningful litigation of this case, suggests bad faith.

The Davis Declaration is an improper back-door expert report, is not based on personal knowledge, and evades the rules governing supplemental discovery. The Declaration is not justified and is harmful to Castle Hill. The Court should strike the Davis Declaration.

## V.  **CONCLUSION**

Defendants, Castle Hill Studios LLC, Castle Hill Holdings LLC, and Ironworks Development LLC respectfully request that their motion be granted.

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER**

Dated:  November 16, 2018

Respectfully submitted,

*/s/ Robert C. Gill*

Robert C. Gill (admitted *pro hac vice*)
Henry A. Platt (admitted *pro hac vice*)
Thomas S. Schaufelberger (admitted *pro hac vice*)
Matthew J. Antonelli (admitted *pro hac vice*)
Jeremy B. Darling (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
henry.platt@saul.com
tschauf@saul.com
matt.antonelli@saul.com
jeremy.darling@saul.com

Sherry H. Flax (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
500 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 332-8764
(410) 332-8785 (facsimile)
sherry.flax@saul.com

James C. Hodges, OBA #4254
JAMES C. HODGES, P.C.
2622 East 21st Street, Suite 4
Tulsa, Oklahoma 74114
(918) 779-7078
(918) 770-9779 (facsimile)
JHodges@HodgesLC.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of November, 2018, I caused a copy of the foregoing **DEFENDANTS' MOTION TO STRIKE DECLARATIONS OF STACY FRIEDMAN AND JOSH DAVIS SUBMITTED IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT – PUBLIC REDACTED VERSION** to be filed via the Court's ECF system, which will provide electronic notification of filing to the following counsel for Plaintiff:

Graydon Dean Luthey, Jr.
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
(918) 595-4821
(918) 595-4990 (facsimile)
dluthey@gablelaw.com
*Counsel for Plaintiff*

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1221
(212) 841-1010 (facsimile)
nroman@cov.com
*Counsel for Plaintiff*

Gary M. Rubman
Peter Swanson
Michael Sawyer
Rebecca B. Dalton
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
(202) 778-5465 (facsimile)
grubman@cov.com
pswanson@cov.com
msawyer@cov.com
rdalton@cov.com
*Counsel for Plaintiff*

*/s/ Robert C. Gill*
Robert C. Gill