# EXHIBIT 28

November 3, 2008

**Bulletin No. 2008-3**

**Subject: Compliance guidance for new technical standards, 25 C.F.R. part 547**

On October 10, 2008, the National Indian Gaming Commission published final "Technical Standards for Electronic, Computer, or Other Technologic Aids Used in the Play of Class II Games." (Technical Standards). These Technical Standards become effective on Monday, November 10, 2008. Since publication, the NIGC has received a number of questions about compliance with the Technical Standards. Those and other questions, and their answers, are set out here as guidance.

**Questions about the effective date of the Technical Standards**

Q: What is the effective date of the Technical Standards?

A: Monday, November 10, 2008.

Q: Do all Class II gaming systems have to be compliant on that date?

A: No. Class II gaming systems may be grandfathered for five years if they meet the requirements of 547.4(a).

**Questions about grandfathering – submissions under 547.4(a) and use of Class II gaming systems while grandfather status is pending.**

Q: In order to be grandfathered, existing Class II gaming systems must be submitted to an independent testing laboratory to be tested for compliance with minimum standards set out in 547.4(a)(2). Who has to submit the systems?

A: NIGC did not intend to change the usual practice that the system manufacturer or distributor submit the systems, and it anticipates that the manufacturer or distributor will do so. However, a tribal gaming regulatory authority may require that a different entity, such as the gaming operation, make the submission.

Q: In order to be grandfathered, must a Class II gaming system be submitted to a testing laboratory multiple times, once for each tribal jurisdiction in which the system is in use?

A: No. A gaming system only need be submitted to a testing laboratory once. Every tribal gaming regulatory authority that has been asked to grandfather the system

Pg. 1 of 8



                   may make use of the resulting report. A tribal gaming regulatory authority is, however, free to require additional tests for grandfathering beyond the minimum standards set out in 547.4(a)(2). In that case, the Class II gaming system would have to be submitted separately and be tested against the standards in 547.4(a)(2) and the additional standards required.

Q:      In order to be grandfathered, a Class II gaming system must be submitted to the testing laboratory within 120 days after November 10, 2008 (by March 10, 2009). Does the testing laboratory have to finish its review by that date, and does the tribal gaming regulatory authority have to certify the system by that date before it can be grandfathered?

A:      No. As long as a Class II gaming system is submitted to a testing laboratory before March 10, 2009, it may be grandfathered, even if the testing laboratory finishes its examination and the tribal gaming regulatory authority issues its approval after the 120-day period expires. Delays can occur through no one's particular fault – the queue at the testing laboratory may be sufficiently long that a timely review of a particular system is not possible, for example.

Q:      Can a gaming system manufactured and in use on or before November 10, 2008, be used after March 10, 2009, if the system was submitted to a testing laboratory for review before that date but the laboratory has not yet tested the system or the tribal gaming regulatory authority has not certified the game as grandfathered by that date?

A:      Yes. The Technical Standards allow Class II gaming systems to be grandfathered and used so long as they are submitted to a testing laboratory within 120 days after November 10, 2008, even if the testing laboratory has not yet completed its testing of the system or the tribal gaming regulatory authority has not certified the game by March 10, 2009.

           That said, the Technical Standards intend the review and certification of most grandfathered games be completed within the 120-day window beginning on November 10, 2008. In the event that review and certification for a particular system will run longer, the tribal gaming regulatory authority should notify, or have the manufacturer notify, NIGC in writing of that fact and of the date the testing laboratory expects to complete its review.

           Allowing systems to continue operation until the review and certification process is complete will avoid the unnecessary economic consequences of having to shut the systems down until certification is complete.

Q:      The Technical Standards can be read to suggest that a system may not be used at any time after November 10, 2008, until it is submitted to a testing laboratory, tested for compliance with the requirements set out in § 547.4(a)(2), and certified by tribal gaming regulatory authority as a grandfathered system. In particular,

       547.4(b)(1) states that if a gaming system does not comply with the requirements of the Technical Standards on November 10, 2008, it can only be offered for play after that date if it is grandfathered. Section 547.4(b) states that a system is only grandfathered after its submission to an independent testing laboratory and its certification by the tribal gaming regulatory authority. Is this a correct interpretation?

A: No. The NIGC is aware of this potential ambiguity in the Technical Standards and of this possible interpretation of them. It was never the NIGC's intent to prohibit the use of Class II systems awaiting certification as grandfathered systems. A gaming operation is, therefore, compliant with the Technical Standards if a gaming system was manufactured or in use as of November 10, 2008, if the system is or will be submitted to an independent gaming laboratory for review pursuant to 547.4(a) by March 10, 2009, and the system is used or offered for play after November 10, 2008.

Q: If a Class II gaming system is submitted to a testing laboratory for grandfather review under 547.4(a) within 120 days of November 10, 2008, and the laboratory finds that the system software does not satisfy the minimum requirements of 547.4(a)(2) (and any additional requirements imposed by the tribal gaming regulatory authority), may a manufacturer modify the software to bring it into compliance?

A: Yes. However, when the testing laboratory determines that systems software does not satisfy the minimum requirements of 547.4(a)(2) (and any additional requirements imposed by the tribal gaming regulatory authority), it should notify the tribal gaming regulatory authority, and 547.(a)(4) requires that the system immediately be removed from play. The system may be offered for play once again only if the manufacturer has revised the software, the testing laboratory has completed its review and found the system to comply with 547.4(a)(2) (and any additional requirements imposed by the tribal gaming regulatory authority), and the tribal gaming regulatory authority has certified the modified system as grandfathered.

**Questions about grandfathering – testing**

Q: The minimum standards for grandfather testing set out in 547.4(a)(2) include standards set out in 547.8(b), which in turn make reference to 547.16. Section 547.16(b) requires the system to display disclaimers to the effect that "malfunctions void all prizes and plays." Does the grandfather testing include checking for the presence or absence of these disclaimers?

A: No. The reference in 547.8(f) to 547.16 means only that the testing laboratory must check that each game is played with a constant set of rules.

Q: How should hardware components be tested for grandfathering?

A:  Unless a tribal gaming regulatory authority adds specific hardware testing requirements, there are no hardware tests that must be performed for a Class II gaming system to be grandfathered. The minimum requirements of 547.4(a)(2) are only software requirements. In order to test for compliance with those minimum requirements, however, a testing laboratory must have the entire Class II gaming system, both hardware and software.

Q:  In general terms, what are the grandfather requirements of 547.4(a)(2)?

A:  They are minimum fairness and integrity requirements. For example, a system must not change the rules on a player in the middle of a game, and a game cannot start automatically without the player choosing to participate. There must be some industry-standard methodology of verifying the game software. The random number generator must meet the requirements of the Technical Standards. Progressive prizes cannot have a probability of winning less than 1 in 100,000,000. No other prize can have a probability of winning less than 1 in 50,000,000.

Q:  Are testing laboratories expected to test Class II gaming systems against applicable regulations of the Federal Communications Commission?

A:  No. That is not the standard practice in gaming jurisdictions now, nor do the Technical Standards require it.

Q:  Section 547.7(k) states that "components of the Class II gaming system that are locked in order to meet the requirements of this part shall include a sensor or other methods to monitor an open door." Are components of Class II gaming systems kept in secure, back-of-house locations required to have door access sensors?

A:  No. Section 547.7(k) is intended to address those components on the gaming floor.

Q:  Section 547.8(d)(4)(ii) requires in a last game recall the "total number of credits at the start of play, less the purchase or wager amount." Is it sufficient for a last game recall to display the total number of credits at the start of play and the number of credits wagered, leaving it to casino or regulatory staff to calculate the credits remaining after the play by subtracting these two numbers?

A:  Yes.

Q:  How should rules that are intended for "stand alone" player interfaces be applied to hand-held "bingo minders" or other technologic aids?

A:   Sensibly. The Technical Standards are intended to encompass Class II gaming in all of their many possible implementations. Bingo, for example, may be played in a fully electronic format on client player stations connected to a server, or it may be played using hand-held card minders and a live number draw. Paper pull tabs may be played using electronic readers and dispensers. Inevitably, there will be standards necessary for one implementation that are irrelevant to another. For example, standards concerning storage of cash or other financial instruments will have direct application to a player interface with a cash box and no application to a hand-held minder that does not accept bills (though they will be applicable to point-of-sale cash drawers). In such cases, 547.5(b) requires that inapplicable standards are to be ignored.

**Questions about grandfathering – November 10, 2008, date of use or manufacture**

Q:   Do all of the components of a gaming system have to be in use on the gaming operation floor in order for the Class II gaming system to be eligible for grandfather status?

A:   No. A Class II gaming system is eligible for grandfathering if it was in use on or before November 10, 2008, or if it was manufactured on or before that date. *Manufactured*, in this context, means *off the assembly line and ready to use*. Thus, a system that on November 10, 2008, is awaiting delivery of additional player interfaces that came off the assembly line the week before is eligible for grandfather status. By contrast, a system that on November 10, 2008, is awaiting chips to be soldered into boards and boards to be installed into the system server or the interfaces is not manufactured by that date. The intention is to bring within the scope of the grandfather clause systems and components that had been manufactured but not delivered, those in storage but not in use, those in transit, etc. Unfilled orders or orders not off the assembly line by November 10, 2008, are not eligible for grandfathering.

Q:   It is a common practice for manufacturers to identify the date of manufacture of player interfaces with a plate listing month and year. For interfaces manufactured in November 2008, must a manufacturer list month, day, and year in order to demonstrate that the interface was manufactured on or before November 10, 2008?

A:   No, the Technical Standards do not require this. The manufacturer must in any event attest to the date of manufacture of interfaces manufactured in November 2008 under 547.4(a)(7).

Q:   System components can be remanufactured, reconditioned, or refurbished. If a Class II gaming system is manufactured before November 10, 2008, if some of its player interfaces have been sent out for reconditioning before that date, and if the reconditioning is completed on November 20, 2008, what is the date of manufacture of those interfaces?

A: The date of manufacture of the reconditioned interfaces relates back to, and is considered to be, the interfaces' original date of manufacture. Under 547.4(a)(7), the manufacturer would still have to provide a statement to the tribal gaming regulatory authority attesting to the date of manufacture and date of reconditioning.

Q: In a case where the manufacturer has to modify Class II gaming system software already submitted to the testing laboratory to bring the software into grandfather compliance (the minimum requirements of 547.4(a)(2) and any additional requirements of the tribal gaming regulatory authority), what is the date of manufacture and what is the date of submission of the modified software?

A: So long as the original Class II gaming system was manufactured on or before November 10, 2008, and submitted within 120 days thereafter, the date of manufacture of the modified software is the system software's original date of manufacture, and the date of submission is the original date of submission.

**Questions about grandfathering – modifications of grandfathered Class II gaming systems**

Q: Can Class II gaming systems be modified after they have been certified as grandfathered by the tribal gaming regulatory authority?

A: Yes. The tribal gaming regulatory authority may authorize repairs or replacements of individual hardware or software components to ensure the proper functioning, security, or integrity of the grandfathered Class II gaming system. Repairs of broken components and bug fixes fall into this category.

The tribal gaming regulatory authority may authorize software modifications that maintain or advance the system's overall compliance with the Technical Standards or Class II MICS (25 CFR part 543), but only after receiving a laboratory report that the modified software meets the minimum grandfather requirements of 547.4(a)(2). Any software modification that makes the Class II gaming system meet a requirement of the technical standards that the original grandfathered system did not meet will fall into this category.

The tribal gaming regulatory authority may authorize hardware modifications that will maintain or advance the system's overall compliance with the Technical Standards or Class II MICS. Submission to a testing laboratory for such modifications is not required by the Technical Standards but may be required by the tribal gaming regulatory authority. Any hardware modification that makes the Class II gaming system meet a requirement of the technical standards that the original grandfathered system did not meet will fall into this category.

Finally, the tribal gaming regulatory authority may approve any other

modification to Class II system software that does not detract from compliance with the Technical Standards or MICS and does not detract from, compromise, or prejudice the proper functioning, security, or integrity of the Class II gaming system. Examples of this last category are many and might include things such as a new theme that does not change the math of an approved game, a new attract mode, enhanced graphics, or additional metering or accounting functions over and above the minimum functions required by the Technical Standards. Again, submission to a testing laboratory for such modifications is not required by the Technical Standards but may be required by the tribal gaming regulatory authority.

Q: Can new player interfaces, manufactured after November 10, 2008, be added to a grandfathered Class II gaming system and used with grandfathered game software?

A: Yes, provided that the new player interfaces meet all of the applicable hardware requirements of the Technical Standards, 547.7. This will require a determination by the testing laboratory that the new interfaces are so compliant. For example, a gaming operation can add 50 new, fully hardware-compliant player interfaces to a grandfathered gaming system that already had 50 player interfaces on it as of November 10, 2008.

Q: Can a new game "theme," "skin," or "clone" coded after November 10, 2008, be added to a grandfathered Class II gaming system? The new "theme, skin, or clone" does not change the underlying mathematics or function of the game or game system in any way save the appearance to the player.

A: Yes, provided that the software modification is tested for, and complies with, the minimum grandfather requirements of 547.4(a)(2), and is approved by the tribal gaming regulatory authority. This kind of modification is contemplated by 547.4(b)(4)(i), which permits software modifications that "maintain or advance the system's overall compliance with" the Technical Standards or Class II MICS, after review by the testing laboratory and approval by the tribal gaming regulatory authority.

That said, new software coded after November 10, 2008, that is not a modification of grandfathered software may only be offered for play if it is fully compliant with the Technical Standards – reviewed by a testing laboratory and approved by the tribal gaming regulatory authority. 547.4(c). The NIGC recognizes that the distinction between a modification of existing grandfathered software and new software is not always going to be clear and may have to be resolved case by case. The question here describes a straightforward example of a modification. Similarly, an entirely new bingo game, with graphics unlike any grandfathered game, running on a newly developed operating system is "new" software and not a modification. If a question arises whether software is a modification or new

submission under the Technical Standards, NIGC is willing to provide guidance to tribal gaming regulatory authorities and testing laboratories.

Q: Can player interfaces be added to a Class II gaming system that has been submitted to a testing laboratory but is awaiting completion of review and grandfather certification by the tribal gaming regulatory authority?

A: Yes. Player interfaces may be freely added if manufactured on or before November 10, 2008. Player interfaces manufactured after that date may be added only if fully compliant with the applicable hardware requirements of the Technical Standards, 547.7.

Q: Can grandfathered Class II gaming systems be sold to another gaming operation?

A: Yes. Grandfathered Class II gaming systems, hardware, and software is freely transferable. Thus, grandfathered player interfaces, for example, may be purchased on the open market and added to existing grandfathered systems. Similarly, a grandfathered system may be purchased in its entirety and added to the purchaser's gaming operation, whether or not that operation previously operated that, or any, Class II gaming system.

**Questions about testing requirements for new, non-grandfathered Class II gaming systems.**

Q: May new, non-grandfathered Class II gaming systems be made available to the public for play pending completion of examination by the testing laboratory and approval by the tribal gaming regulatory authority?

A: No. Except in cases of Class II gaming systems awaiting certification of grandfather status, 547.4(b), and emergency hardware and software modifications, 547.4(d), all Class II gaming systems must be submitted to a testing laboratory for a review of compliance with all requirements of the Technical Standards and must be approved by the tribal gaming regulatory authority prior to being offered to the public for play. 547.4(c).