IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF OKLAHOMA

VIDEO GAMING TECHNOLOGIES, INC.,   )
                                      )
              Plaintiff,      )
                                        )
-vs-                                 ) No. 17-CV-454-GKF-JFJ
                                        )
CASTLE HILL STUDIOS, LLC, et al.,   )
                                      )
             Defendant(s).   )

**TRANSCRIPT OF STATUS/SCHEDULING HEARING**

BEFORE THE HONORABLE GREGORY K. FRIZZELL

UNITED STATES DISTRICT JUDGE

NOVEMBER 13, 2018

*REPORTED BY:*      *BRIAN P. NEIL, RMR-CRR*
                         *United States Court Reporter*

1                          A P P E A R A N C E S

2

3          **Gary M. Rubman and Peter A. Swanson,** Attorneys at Law,
   Covington & Burling, 850 Tenth Street N.W., Washington, DC,
4  20001, attorneys on behalf of the Plaintiff;

5          **G. Dean Luthey, Jr.**, Attorney at Law, Gable &
   Gotwals, 100 West 5th Street, Suite 1100, Tulsa, Oklahoma,
6  74103, attorney on behalf of the Plaintiff;

7

8

9          **Henry A. Platt and Matthew J. Antonelli,** Attorneys at
   Law, Saul, Ewing, Arnstein & Lehr, 1919 Pennsylvania Avenue
   N.W., Suite 550, Washington, DC 20006, attorneys on behalf of
10  the Defendants;

11         **Jonathan S. Jacobs,** Attorney at Law, Zobrist Law
   Group, 1900 Arlington Boulevard, Suite B, Charlottesville,
12  Virginia, 22905, attorney on behalf of the Defendants;

13         **James C. Hodges,** Attorney at Law, 2622 East 21st
   Street, Suite 4, Tulsa, Oklahoma, 74114, attorney on behalf of
14  the Defendants.

15

16

17

18

19

20

21

22

23

24

25

1      Tuesday, November 13, 2018

2                       * * * * *

3      **DEPUTY COURT CLERK:**   This is Case No.

4   17-CV-454-GKF-JFJ, Video Gaming Technologies, Inc. v. Castle

5   Hill Studios, LLC, et al.   Counsel, please state your

6   appearances for the record.

7      **MR. LUTHEY:**   Dean Luthey for the plaintiff.

8      **MR. RUBMAN:**   Good afternoon, Your Honor.   Gary

9   Rubman from Covington & Burling on behalf of the plaintiff.

10     **MR. SWANSON:**   Peter Swanson, also from Covington &

11  Burling on behalf of the plaintiff.

12     **THE COURT:**   Good afternoon, gentlemen.

13     **MR. HODGES:**   James Hodges on behalf of the

14  defendants.

15     **MR. GILL:**   Afternoon, Your Honor.   Robert Gill on

16  behalf of the defendants from Saul, Ewing, Arnstein & Lehr.

17     **MR. PLATT:**   Afternoon, Your Honor.   Henry Platt on

18  behalf of defendants from Saul, Ewing, Arnstein & Lehr.

19     **MR. JACOBS:**   Good afternoon, Your Honor.   Jonathan

20  Jacobs on behalf of defendants with the Zobrist Law Group.

21     **THE COURT:**   All right.   From the Hook, I see.

22  Having spent my first year of college in the Hook, I'm familiar

23  with Charlottesville.

24         I have looked over the status of the case here, and we

25  have some 14 motions, I think, pending, two dispositive

1    motions, seven motions in limine, five *Daubert* motions.  As we

2    look at it, it appears that five of the evidentiary motions

3    will need to be ruled on prior to the dispositive motion

4    hearing, unless you all tell me differently.  You know, with

5    current summary judge practice, I'm often finding now that it's

6    necessary to have some of these *Daubert* motions and motions in

7    limine ruled on beforehand.

8          So have you all looked at that question to identify

9    those preliminary motions that the court needs to -- or must

10    rule on before I rule on the summary judgment motions?  Anybody

11    consider that?

12          **MR. RUBMAN:**  Your Honor, would you like us to

13    approach the podium or how --

14          **THE COURT:**  Yeah.  This is a barn, as I'm sure

15    you've noticed.  Unfortunately, the acoustics in this courtroom

16    are not nearly as good as those in the other two courtrooms so

17    I'm afraid your voice will be lost unless you do approach the

18    podium.  And if you approach the podium, the taxpayers have

19    paid for a wonderful system that will preserve your melodious

20    voice for centuries to come.  So --

21          **MR. RUBMAN:**  Thank you, Your Honor.  I would hate

22    for my voice to not be preserved forever but that might be in

23    our best interest.  That specific -- Gary Rubman, again, on

24    behalf of the plaintiff.

25          **THE COURT:**  Yes, sir.

1    MR. RUBMAN:  That specific issue is not one way that

2    we have thought about it, but there have been some developments

3    over the last few days that might assist the court in thinking

4    about these issues, one of which -- and perhaps the most

5    important of which -- is on Friday the defendants filed a

6    motion to strike the jury demands.

7         THE COURT:  I saw that.

8         MR. RUBMAN:  And we have been thinking about it and

9    we're not going to oppose that motion so we're happy to have

10   this tried to, Your Honor, as a bench trial.  I think with that

11   in mind, that might streamline the process on some of the

12   motions --

13        THE COURT:  For you, not for me.

14        MR. RUBMAN:  But potentially.  Although, I am

15   cognizant of some of your opinions on viewing *Daubert* motions

16   when there's a bench trial, at least some historical opinions.

17        THE COURT:  Right.

18        MR. RUBMAN:  So in the end, whether it will make a

19   big difference, I don't know.  But I did want to make sure that

20   was brought to your attention and that you know our position on

21   that because we haven't yet filed a response to that motion.

22        THE COURT:  Do you wish to?  You made the statement

23   here on the record.  We can simply grant the motion this

24   afternoon.

25        MR. RUBMAN:  I'm happy for you to grant it as

1    unopposed.

2              THE COURT:  We'll save your client some money.

3              MR. RUBMAN:  That works for us.

4              THE COURT:  I don't have the docket number in front

5    of me, but Karen.

6              DEPUTY COURT CLERK:  No. 201.

7              THE COURT:  Without objection, No. 201 is granted.

8              MR. RUBMAN:  Thank you, Your Honor.  If you'd like,

9    we're happy to talk more about the particular motions and which

10   ones in sequencing, but I don't have anymore specific answer to

11   your question at this time.

12             THE COURT:  All right.  But you understand what I'm

13   talking about?  Sometimes I'll rule on a motion for summary --

14   and I've become far more sensitive to this -- but after a

15   ruling, the losing party will say, well, you considered this

16   and that was the subject of a motion in limine and you ought

17   not have considered that, you had to have ruled on the motion

18   in limine, etcetera.  So give some thought to that.

19             I'd ask that both sides advise me in writing -- not

20   that it's going to bind me -- but advise me in writing within

21   ten days as to which of the motions will need to be ruled on

22   prior to ruling on the motions for summary judgment, all right?

23             MR. RUBMAN:  Yes, Your Honor.  Thank you.

24             THE COURT:  Very good.

25             Now, the other thing that you all need to be aware of

1    is, my most valuable staff member just returned today from

2    maternity leave and she's been out for ten weeks and she's

3    seated there to your right.  He's a wonderful child, by the

4    way.  And I'm all for, you know, intelligent young women having

5    intelligent wonderful children so we're going to encourage

6    that.  And men as well.  Sorry.  I didn't want to -- I didn't

7    want to discriminate there.

8            But the bottom line is, she's just now hitting the

9    ground and there's a lot on her plate, and frankly we're not

10   going to be able to be ready with 14 motions in this case on

11   the day that it's currently set for a motions hearing.

12           So in sitting down in trying to assess what is possible

13   here, it would appear to us that the best approach,

14   particularly given that I have four civil trials set on the

15   January trial docket, two civil trials on the February trial

16   docket -- and that doesn't even mention the criminal trials --

17   and then I have a dispositive motion in a big case on

18   March 7th, three other dispositive motions in March, and one

19   civil jury trial, in addition to criminal jury trials, it would

20   appear to us that the best time to have a dispositive motion

21   hearing in this case would be April with a May jury trial

22   docket.  So that's my main purpose in getting you here to

23   discuss trying to accommodate the realities of this situation.

24           And then the other thing I wanted to discuss with you

25   is how you convey to me, both sides, on paper without actually

1    a human view of the sights, sounds, human reactions to these

2    various machines.  I am told that in addition to -- and this is

3    partly from reading what you've submitted to me -- that in

4    addition to the visuals, which can be conveyed to some degree

5    on paper, the sounds and then the human reaction to the rewards

6    that are given from these machines may be the sorts of things

7    that a finder-of-fact needs to have presented to him or her.

8    Because not being a gambler myself, but at least what very,

9    very little I know, I'm told that what attracts people who

10   really plug money into these things, or whatever value they

11   plug into it, is the machine's response and the rewards that

12   are given by the machine and apparently that will hook a

13   gambler.

14          And so one of the questions, it would seem to me, that

15   I need to -- or one of the matters I need to look into is

16   whether or not there's substantial similarity in those

17   reward/response features of the machines.

18          Does that make any sense at all; and if it doesn't,

19   feel free.  I may be completely off the mark and you just need

20   to tell me that.

21              MR. RUBMAN:  May I approach?

22              THE COURT:  Please.

23              MR. RUBMAN:  Thank you again.  And I don't want to

24   hog.  I'm sure Mr. Gill has comments on this.

25          This has been an issue that we have been losing sleep

1    on as well and thinking a lot about, on how do we bring to life

2    this case?  In our view, this is a case that comes down to

3    pictures and comes down to seeing the games and just looking at

4    these things and deciding one way or the other, how similar are

5    these games?  Are they likely to confuse consumers?

6         We have pictures we will be using which we believe are

7    representative.  We, I believe, have some videos.  The

8    challenge that we have run into is casinos don't want to give

9    us permission to come in and take professional videos or

10   professional photographs.  We've asked -- we asked over an

11   eight-week time period but they don't want to get involved in

12   this case.  And they also have separate issues, sovereign

13   immunity and all sorts of reasons, why they don't want to get

14   dragged in, and so that has complicated it from our

15   perspective.  So our current plan was to rely largely on

16   pictures and videos, to the extent we have them.  We also have

17   recordings of the sounds and that would help and we think that

18   alone probably is enough.

19        We have been thinking about whether to request a casino

20   visit as part of trial.

21        THE COURT:  That's not necessary.  If you all agree

22   that the videos are enough, then that's fine with me.

23        MR. RUBMAN:  I mean, from our perspective, we think

24   we are better off -- if the fact-finder and your staff does see

25   them in person, we would prefer that.  We would love to bring

1   them into the courtroom.  I don't think we can do that.  But as

2   the next best alternative, we were comfortable and we were

3   planning to rely on the pictures and the videos to the extent

4   we have them.

5           THE COURT:  All right.  Well, you've emphasized the

6   concerns of the third parties, and certainly Mr. Luthey having

7   a hand in Indian gaming is certainly sensitive to that and I

8   can appreciate that.  I think if I were an Indian gaming

9   enterprise, I would be very reluctant to have a judge come in

10  and -- if I don't have a dog in the hunt, why should I involve

11  myself in this?  As we know, it's a complex matter.

12          We're all eagerly awaiting *Murphy,* in which case you

13  may be sitting in the largest -- soon to be the largest federal

14  district court in the nation.  That's assuming that we would

15  get the number of district judges necessary to handle all the

16  cases we might get if the Supreme Court affirms the Tenth

17  Circuit.  So --

18          MR. RUBMAN:  If I can have one more --

19          THE COURT:  I think the video approach makes some

20  sense, and I'll hear from the other side as well.  Go ahead.

21          MR. RUBMAN:  Sure.  If I could add one more comment.

22  And I apologize for interrupting.

23          THE COURT:  Sure.

24          MR. RUBMAN:  I mean, there still is time, especially

25  if we do delay the trial.  Obviously, we'd like the trial to

1   happen as soon as possible but we understand your calendar and

2   that is what it is.

3         If there is time, perhaps the parties can work

4   together.   One of the investors in Castle Hill is one of the

5   tribes that owns -- or operates a number of the casinos.

6   Perhaps after -- and we haven't discussed this in the past --

7   we can work with counsel on the other side and see if there is

8   another way to get videos or better pictures.   We would have

9   loved to have had better pictures this whole time.   It's just

10  right now we're using the best we can, and we're happy to

11  continue to confer with them if there's a way to do it

12  together.

13        **THE COURT:**   All right.   I take it the other side has

14  thought about this matter of presentation as well?

15        **MR. GILL:**   Well, we have.   As luck would have it,

16  with this Friday's deadline for filing oppositions to motions,

17  we had actually scheduled a call this coming Monday to discuss

18  that very issue amongst our group to try to figure out how to

19  address that going forward.   We are as of yet undecided how to

20  do that.   Obviously, there's some recent developments, one is

21  the issue of the jury trial.   And now that that's resolved,

22  that takes one variable off the table.

23        So I think what we would like to do is we would, I

24  think, like to decamp and have an opportunity to think about

25  that issue.   And perhaps just like on the other issue of

1    advising you in writing about what our view is on what motions

2    need to be decided before you can get to a summary judgment

3    motion, perhaps the parties can have an opportunity to confer

4    and advise you on other issues regarding trial presentation as

5    well.   As Mr. Rubman pointed out, we do obviously have time and

6    we have more time now as we're going to push to schedule out a

7    bit.   So it gives us a chance to think on this issue and see if

8    we can narrow the scope of what otherwise could be some

9    disagreement.   So that is what we would request the opportunity

10   for.

11            THE COURT:   And obviously now that we're going to

12   try this to the court, that will change the perspective with

13   regard to motions in limine as well --

14            MR. GILL:   Yes, sir.

15            THE COURT:   -- to the extent that we're talking

16   about prejudice because presumably the court can shield itself

17   from potential prejudice that might otherwise affect the jury.

18   So --

19            MR. GILL:   Well, I think that's true.   I think there

20   is no question that the court sitting without a jury, the

21   concerns that otherwise parties might have about a jury being

22   confused about certain issues or being unfairly impacted and

23   prejudiced in some way is no longer a concern.   But a lot of

24   the other --

25            THE COURT:   The only thing you have to be concerned

1  about is confusion of the judge and impacting or biasing his

2  views, I guess.

3          **MR. GILL:**  Well, that's a concern that never goes

4  away.  So that's our job to try to communicate this to you in a

5  clear way that makes it understandable, but I'd like for us to

6  have an opportunity to think about what sort of presentations

7  we would like for the court to have in order to address that.

8          I also would like to step back a minute -- and Your

9  Honor had raised some scheduling issues -- and we certainly

10  understand that we have put a lot on your plate and we're

11  continuing to put more on your plate.  We have a deadline of

12  this Friday and then, of course, we have reply briefs that are

13  due in mid December.  So there's a lot more data to still come

14  and we know that creates a lot of effort on the part of Your

15  Honor and your chamber staff.

16          But in terms of a deadline, if I could make a request

17  on that.  I mean, obviously Your Honor needs to set this

18  hearing date on dispositive motions at a date and time that

19  works for you and your law clerk based on your available

20  schedule.  My concern is, I would like for us to have enough of

21  a gap between the time that Your Honor rules on those motions

22  and the time we go to trial to be able to meaningfully affect

23  our preparation.

24          So, for example, things like your pretrial order, where

25  we list our witnesses and decide what our presentation evidence

1   is going to be and decisions that the parties make about what

2   exhibits we're going to use, are all things that are going to

3   be affected probably by your ruling on the dispositive motions.

4   And similarly, I see we have a deadline for deposition

5   designations and interrogatory designations that come due in

6   mid-December, and that's another thing that will be affected by

7   Your Honor's ruling as well.

8           THE COURT:  Right.

9           MR. GILL:  And so in order to help us help you

10  manage this case --

11          THE COURT:  Right.

12          MR. GILL:  -- in a better way, having that ruling

13  might assist us in getting this case ready for trial if we know

14  what those decisions are going to be.  That gives us an

15  opportunity and a duty, I think, to tailor our case in a way

16  that addresses Your Honor's ruling and should make things more

17  streamlined and relevant for all concerned.

18          THE COURT:  All right.

19          MR. GILL:  All right.

20          THE COURT:  Well, let me ask then before you sit

21  down.

22          MR. GILL:  Yes, sir.

23          THE COURT:  If we were to schedule a hearing on any

24  motions that I haven't decided in writing before, if we were to

25  have a hearing in April, that you're suggesting then that we

1    have a deadline for deposition designations, etcetera, all of

2    those pretrial matters after the court's ruling on those

3    motions for summary judgment?

4              **MR. GILL:**  Right.

5              **THE COURT:**  Which would probably kick the trial

6    further than May.

7              **MR. GILL:**  I understand that.  But it seems to me

8    that -- and I'm used to doing these things as we prepare for a

9    trial.  But in order to make it meaningful, it's always a

10   concern if you do this work in advance, you almost need to redo

11   it.

12             **THE COURT:**  Right.

13             **MR. GILL:**  And, you know, I think both sides, we

14   have a lot of depositions that took place in this case.  We had

15   42 depositions, I believe.

16             **THE COURT:**  Right.

17             **MR. GILL:**  The parties have produced hundreds of

18   thousands of pages of documents.  The parties have produced

19   source code.  We have seven experts.  So we have a lot to

20   manage.  And having a decision on those motions, I think, will

21   help us a lot and make hard decisions about not only what we're

22   going to use and what we plan to use, but even more importantly

23   for you what we're not going to use.

24             **THE COURT:**  All right.  That makes some sense.

25             **MR. RUBMAN:**  All right.

1    THE COURT:    Karen, do you have a copy of the current

2    scheduling order?  I don't have that.

3                        (Discussion held off the record)

4               MR. RUBMAN:    Your Honor, may I briefly address that?

5               THE COURT:    Yes, sir.

6               MR. RUBMAN:    Thank you, Your Honor.   And we

7    certainly are sympathetic to the issues that Mr. Gill raised.

8               You know, having said that, we also do have concerns

9    about how long it does take to get to trial.   Their games are

10   still on the floor.   From the perspective of our client, that

11   is harming our client's goodwill, reputation, more players are

12   continuing to get confused in our opinion.

13              With respect to delaying all of the designations and

14   the other pretrial steps, we have no objection to delaying it

15   some; for example, not doing it over the holidays, which we

16   were all planning to do it anyways, or at least under the

17   current schedule, but maybe delaying depo designations until

18   January or something to give everyone a little more breathing

19   room.   We'd be perfectly fine with that.

20              At the end of the day, depending on your court's

21   rulings, you know, yes, there might be some streamlining but it

22   likely would not require redoing most of these things.   From

23   our perspective, we would like to keep the flow of work going

24   rather than bunching everything up into a one-month or

25   two-month time period in late spring.

1    So we would just request that if you do push the

2    deadlines back -- and we fully support pushing, just to be

3    clear, that deadline back but we just don't want to move it as

4    far back as they're requesting.

5    **THE COURT:**  Yeah.  Typically, we don't delay

6    designations until after dispositive motions.  I do have some

7    sympathy.  However, when you're dealing with fairly complicated

8    matters such as this, it would require perhaps rethinking those

9    designations after a ruling on dispositive motions.  Hopefully

10   that would simply mean deleting some of those designations and

11   counter-designations.  But were we to move everything after a

12   ruling on the dispositive motions, it really would compress the

13   schedule greatly.  So there are problems with taking that

14   approach as well.

15   Let me speak with my law clerk here.

16   *(Discussion held off the record)*

17   **THE COURT:**  All right.  I need to try this in May

18   because I've got a big civil trial set in June.  So I think

19   what we'll do is kick out the deadlines for deposition

20   videotape interrogatory designations to March 14th,

21   counter-designations will be due March 25th of 2019, and then

22   transcripts annotated with objections and briefs on unusual

23   objections on April 1st.

24   Now, it may well be that the court's rulings on some of

25   these motions will be -- some of them will have been entered

1    already prior to a hearing.  We'll conduct a hearing -- to the

2    extent that we feel like it's necessary to do that, we'll set a

3    hearing on dispositive motions in April.

4            Karen, do you have a date for us there?

5            **DEPUTY COURT CLERK:**  We can do it April the 11th at

6    9:30.

7            **THE COURT:**  April 11th at 9:30 a.m.  We'll have

8    pretrial disclosures under federal Rule 26(a)(3) due on

9    April 22nd, the proposed pretrial order will be on April 29th,

10   the pretrial conference will be conducted on May 6th at

11   1:30 p.m., proposed -- well, let me ask you about proposed

12   findings and conclusions.

13           Two schools of thought.  One is, you wait until after

14   the trial because they're typically more useful to the court

15   after the trial once the attorneys have seen how the facts have

16   laid out.  Some judges -- and I've done this as well in the

17   past -- have had proposed findings and conclusions submitted

18   before.

19           Mr. Luthey, what say you?

20           **MR. LUTHEY:**  Both work, Your Honor.  It's been my

21   experience, both in this courthouse and across the street, that

22   a hybrid approach sometimes works in a pure bench matter with a

23   fulsome trial brief to give the court a roadmap as to where the

24   proof's going to go.  Then if transcripts are provided in an

25   expedited manner shortly after the end of the trial, proposed

1   findings of fact with citations to the record help everybody

2   focus on what has happened.

3          THE COURT:   What's actually been presented.

4          Mr. Hodges, what's your side's view on proposed

5   findings and conclusions?

6          MR. HODGES:   Thank you, Your Honor.  It's been our

7   practice to do proposed findings after the case has been tried

8   and after transcripts have been provided.

9          THE COURT:   It's usually more helpful.

10         MR. HODGES:   Yes.

11         THE COURT:   All right.  We'll do that.  We'll

12   conduct the trial on May 20th, a nonjury trial, at 9:30 a.m.

13   We'll discuss at that time after the nonjury trial is completed

14   what a reasonable deadline for proposed findings of fact and

15   conclusions of law should be.

16         So what other dates and what other matters have we

17   missed here?

18         MR. RUBMAN:   The only question I had was, will there

19   be a trial brief before, as Mr. Luthey said, to lay out a

20   roadmap for Your Honor?

21         THE COURT:   Yes.  Why don't you do that -- thank you

22   very much -- on the 13th of May, trial briefs submitted to the

23   court.  That would be one week before trial.

24         MR. RUBMAN:   Thank you.

25         THE COURT:   Yes, sir.

1          **MR. GILL:**  Actually --

2          **THE COURT:**  Yes, sir.

3          **MR. GILL:**  -- Your Honor, while we're at it, in

4    terms of the duration of the trial, I didn't know what Your

5    Honor planned to do in terms of how long we were going to take.

6    But obviously from the discussion of the evidence in this case,

7    we're going to have a lot so that's something we probably ought

8    to address too.  We're grappling with that on your side as

9    well, but a reasonable guesstimate on our side is it will

10    probably take us three weeks.

11          **THE COURT:**  All right.  What says the plaintiff?

12          **MR. RUBMAN:**  Thank you, Your Honor.  We don't

13    believe it will take that long.  We intend to be laser-focused

14    making sure the presentation comes in quickly.  We have been

15    starting to map out which witnesses we intend to call.  Many of

16    them will be quick.  There are some obviously that will take

17    more time.  In our view, I think our case in chief could go in

18    in four days, obviously subject to reasonable

19    cross-examination.

20          My personal preference tends to be to have these trials

21    on a clock to move things quickly and to force the parties to

22    make tough decisions and those tough decisions usually lead to

23    a better trial, at least in my limited experience.  So we would

24    request shorter.

25          If perhaps it will help to delay that decision a little

1    down the road until we see how these motions come out, we're

2    happy to submit something in writing at an appropriate time.

3    But our inclination would be this should be at most a two-week

4    trial, perhaps even a little bit less.

5          THE COURT:  We'll all have a better idea when we get

6    to pretrial conference.  I don't pretend to contend that all my

7    trials have been on matters as factually involved as this case,

8    but I doubt very much that it will take three weeks.  I think

9    I've tried about 325, 350 jury and nonjury trials and this just

10   does not feel like a three-week case with all due respect.  I

11   may be proven wrong.  I'm thinking we'll probably take up the

12   better part of two weeks is my guess.

13         So the defendant should be aware that it's generally my

14   view that if the plaintiff takes four days, as he's

15   proposing -- and he may be a little off -- but if he takes four

16   days, you need to plan on getting yours done in four or five

17   days, just as words of experience.

18         Is there anything else that we should address here

19   today?

20         MR. RUBMAN:  One question I had, which also does

21   impact trial length -- and this is a bit in the weeds and I

22   apologize if this is premature -- but what is your preference

23   on depo designations?  Do you typically like to see them

24   played?  Almost every deposition was videotaped here.  Or do

25   you just like in a bench trial for them to be submitted in

1   writing?  Any guidance on that would be helpful as we think

2   about timing.

3           THE COURT:  Well, it depends.  Sometimes it's more

4   efficient to submit them in writing, but, as you know, there

5   are times when the delivery or the credibility of a witness is

6   important and it's important for me to see how that individual

7   responds in cross-examination.  So you just need to exercise

8   your judgment as to each individual witness.  I mean, sometimes

9   all it is is just a delivery of facts and I don't need to see

10  it.  I've had trials where folks will submit these depositions

11  to me in writing and I've taken recesses and I've gone back and

12  people have not exercised any editorial judgment and I'm seated

13  back there reading, you know, hundreds of pages of deposition

14  that I really didn't need to see.

15          MR. RUBMAN:  Right.

16          THE COURT:  And had they tried to do it here in

17  the courtroom, they would have embarrassed themselves and

18  everyone else.  So I can't give you a hard-and-fast rule

19  there.

20          MR. RUBMAN:  Okay.

21          THE COURT:  I think it really depends on what you're

22  trying to show the court.  Sometimes it's better to provide me

23  with the deposition and it's more efficiently consumed here.

24  If you hand me something at trial and it's, you know, a

25  250-page document with deposition annotations, it's going to

1   take me awhile and you're going to be sitting in here charging

2   your client.  By the same token, you can't both present the

3   court with deposition excerpts -- you say you have 42

4   depositions that have been taken here.  You can't present me

5   with a couple thousand pages after 5:00 one night and expect me

6   to read them all by the next morning.

7           MR. RUBMAN:  Right.

8           THE COURT:  So, you know, just exercise your best

9   judgment.

10          MR. RUBMAN:  Okay.

11          THE COURT:  So --

12          MR. RUBMAN:  Great.  Thank you, Your Honor.

13          THE COURT:  Sorry, but there's no black or white

14   answer there.

15          MR. RUBMAN:  That's all right.  We appreciate it.

16   Thank you.  We don't have anything else on our side.  Thank

17   you, Your Honor.

18          MR. GILL:  Thank you, Your Honor.  I don't think

19   there's anything else we need to raise with the court at this

20   time, if you don't have any further questions of us.

21          THE COURT:  I don't.  I don't believe so.  Let me

22   see if my brain has a question for you.

23               (Discussion held off the record)

24          THE COURT:  When you submit within ten days your

25   filing as to which of these motions need to be ruled on, please

1    also indicate which, if any, parts of those motions or all of

2    those motions have now become moot because the matter's going

3    to be tried to the court rather than to a jury.

4         And if you would, when you state -- or if you do state

5    that a motion needs to be ruled on prior to the rulings on the

6    motion for summary judgment, give me a statement as to why

7    because typically I won't on rule on motions in limine until

8    pretrial conference, all right?  So especially given that it's

9    going to be tried to the court, explain to me why I need to

10   rule on the motion in limine beforehand.  Because there's

11   sometimes a bit of strategy there too.  You know, I understand

12   the lawyers wanting to convey to me some argument that really

13   goes to weight rather than admissibility of a certain bit of

14   evidence in a motion in limine.  So explain to me why you think

15   the thing needs to be ruled on beforehand.  Because I suspect

16   there's a lot of duplication in many cases in a motion in

17   limine and a motion for summary judgment, and in so many cases

18   you're really arguing about the weight rather than

19   admissibility.

20        So what else can we talk about here?

21        MR. RUBMAN:  We're all set, Your Honor.  Thank

22   you.

23        MR. GILL:  I think we're done, Judge.

24        THE COURT:  All right.  And in the future, unless

25   it's -- it's nice that you all are here today because it gives

1   me a feel for the dynamics of the case and it does appear that

2   you all are interacting well.  Am I wrong?  There are cases

3   that I have where the lawyers aren't fulfilling their roles,

4   but it does appear to me that we've got a professional group on

5   each side here.

6          But my point is, in the future, to save your clients

7   money, if you want to appear by telephone, that's fine with me.

8              **MR. GILL:**  We appreciate that, Judge.

9              **MR. RUBMAN:**  Thank you, Your Honor.

10             **THE COURT:**  All right.  Not that we don't like your

11  sales tax money here in Tulsa, Oklahoma, but --

12             **MR. GILL:**  No.  We appreciate that very much.

13  And your magistrate judge, Judge Jayne, made us the same

14  offer.

15             **THE COURT:**  Good.

16             **MR. GILL:**  Which was actually very helpful in that

17  instance because we did have a motion before discovery was done

18  and she addressed that.  But, you know, you're right, too, big

19  picture, counsel have tried to work hard to maintain a

20  professional relationship.

21             **THE COURT:**  Well, thank you for that.  I wish that

22  was always the case.  So you both retained good representatives

23  here as local counsel.

24         If there's nothing further, thank you all for being

25  here and we're adjourned.

1          **MR. GILL:**  Thank you for having us, Your Honor.

2          **THE COURT:**  Thank you.

3                    *(The proceedings were concluded)*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        C E R T I F I C A T E

2

3

4            I, Brian P. Neil, a Certified Court Reporter for the

5    Northern District of Oklahoma, do hereby certify that the

6    foregoing is a true and accurate transcription of my

7    stenographic notes and is a true record of the proceedings held

8    in above-captioned case.

9

10           I further certify that I am not employed by or related

11   to any party to this action by blood or marriage and that I am

12   in no way interested in the outcome of this matter.

13

14           In witness whereof, I have hereunto set my hand this

15   27th day of November 2018.

16

17

                                s/ Brian P. Neil

18                     _____

                                Brian P. Neil, RMR-CRR

19                              United States Court Reporter

20

21

22

23

24

25