**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| VIDEO GAMING TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> CASTLE HILL STUDIOS LLC, *et al.* <br><br> Defendants. | CASE NO. 17-CV-00454-GKF-JFJ <br><br> **PUBLIC – REDACTED VERSION** |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE
TO EXCLUDE EVIDENCE OF PLAINTIFF'S LOST REVENUE,
LOST PROFITS, AND LOST PROFIT DAMAGES**

Defendants file this Reply in further support of their Motion In Limine to preclude Plaintiff from introducing any evidence, presenting any argument, or referring to any alleged lost revenue, lost profits, or lost profit damages at trial ("Motion") (Doc. 151 (under seal)).

**I.   VGT HAS WAIVED ITS RIGHT TO DISCUSS LOST PROFITS**

VGT's opposition affirms that lost profit damages are not being sought in this matter and that it is only seeking equitable relief. Doc. 228 at 1-2. But despite its prior judicial admissions to the contrary, VGT attempts to reverse course by arguing that a discussion of lost profits is still necessary to obtain its relief. This argument has been waived.

As discussed in Defendants' Motion, VGT waived any discussion of lost profits or lost revenue. *See* Doc. 151. Such information (to the extent it even exists) has *no* bearing on VGT's damage theories. As VGT has explained: "VGT's damages theories are directed to the financial benefits *Defendants* improperly obtained through their misconduct, including the amounts by which Defendants were unjustly enriched." Doc. 122 at 13 (emphasis in original); *accord Marten Transport, Ltd. v. Plattform Advert., Inc.*, 14-2464-JWL, 2016 WL 715765, at *8 (D. Kan. Feb. 22, 2016) (quoting 15 U.S.C. § 1117(a)) ("In assessing profits the plaintiff shall be required to prove defendant's sale

only; defendant must prove all elements of cost or deduction claimed.").[1] VGT identified its "theory of recovery, i.e., disgorgement." *Gen. Steel Dom. Sales, LLC v. Chumley*, 10-CV-01398-PAB-KLM, 2012 WL 1439228, at *1 (D. Colo. Apr. 26, 2012) (emphasis omitted), *aff'd,* 627 Fed. Appx. 682 (10th Cir. 2015). Therefore, by VGT's admission, any monetary award is determined by Defendants' revenues rather than by losses measured by its own economic data points. *See id.*

VGT's statements, asserted in its filings and articulated during judicial proceedings, constitute a "deliberate, clear, and unequivocal" waiver and abandonment of its damages claim based on lost profits or lost revenues. *See Skyline Potato Co. v. Rogers Bros. Farms, Inc.*, 10-CV-02353-WJM-KLM, 2011 WL 2791531, at *5 (D. Colo. July 15, 2011) (citing *Matter of Corland Corp.,* 967 F.2d 1069, 1074 (5th Cir. 1992)). To the extent VGT is required to demonstrate it has suffered "actual damages," *see* Doc. 228 at 2, it cannot do so through arguments relating to lost profits or lost revenue. VGT is bound by its statements and filings. *See Asarco, LLC v. Noranda Mining, Inc.*, 844 F.3d 1201, 1212 n. 3 (10th Cir. 2017) ("[J]udicial admissions are binding in the entirety of the case in which they were made."). Therefore, all evidence regarding VGT's claim of lost revenues, lost profits or lost profits damages should be excluded.

## II. PLAINTIFF HAS OFFERED NO EVIDENCE TO SUPPORT THAT IT HAS SUFFERED A LOSS OF PROFITS OR A LOSS OF REVENUE DUE TO CHG'S ACTIONS

Even if VGT could retract its judicial admission, VGT has failed to produce any non-speculative evidence demonstrating that it has suffered lost profits or lost revenue as a result of

---

[1] VGT argues that "CHG seeks to turn around the argument" it made regarding the relevance of VGT's lost profit damages. Doc. 228 at 3. But CHG has never argued that information regarding lost profits or other connected issues are related to VGT's damages. *See* Doc. 122 at 13. During the September 6, 2018 hearing on Defendants' Motion to Compel Discovery against Plaintiff, CHG articulated a number of reasons as to why CHG is entitled to the copies of the unredacted agreements between Plaintiff and their customers. At no point did CHG argue that information relating to lost profits was relevant to the remedies VGT demands. *See* Sept. 6, 2018 Hearing Transcript at 40:15-43:14 (Exhibit A).

CHG's conduct. As such, VGT fails to demonstrate a causal link between any alleged replacement of its games and any lost profits – further rendering such evidence irrelevant. *See Gen. Steel Dom. Sales, LLC* at *2 (D. Colo. Apr. 26, 2012) (plaintiff identified a "theory of recovery, i.e., disgorgement of profits, but not a basis for its award").

VGT incorrectly claims that its expert, Melissa Bennis, addresses the issue of actual damages in her expert report. Doc. 228 at 2. However, Ms. Bennis fails to offer a proper opinion with regard to lost profits or lost revenue. Instead, Ms. Bennis's "opinion" is simply the echoing of the speculative observations of VGT and CHG employees. Further, Ms. Bennis fails to make a causal link between her restatement of the evidence and lost profits (*i.e.*, "actual harm").

VGT wrongly asserts that CHG's objections to Ms. Bennis's expert report fail to challenge "opinions on actual harm." Doc. 228 at 2. This is just not true. Indeed, CHG's motion states that Ms. Bennis "improperly summarizes 'facts' and offers legal opinions and conclusions." Doc. 175 at 2. A "party may not 'elevate and advocate the value of individual evidence by having it recounted by an expert.'" *Id.* at 14 (quoting *Freedom Direct Corp. v. First Tennessee Bank Nat. Ass'n*, 2012 WL 3067597 at *3 (D. Utah July 27, 2012)). As with Ms. Bennis's conclusions regarding, *inter alia*, ████████████████████████████████████████████████ Ms. Bennis similarly restates speculative testimony as "expert opinion" on VGT's actual damages. *Id.* at 6. Ms. Bennis fails to provide substantive opinions throughout her expert report – her conclusions regarding VGT's actual damages are no exception.

Additionally, Ms. Bennis's citations to the "evidence" of VGT's lost profit damages demonstrates that no such evidence exists beyond mere speculation:

- A November 11, 2016 email authored by VGT's Executive Vice President of Sales, James Starr, that states ███████████████████████████████████████. *See* Nov. 11, 2016 Email from James Starr to Jay Sevigny (Exhibit B).

3

- A December 23, 2014 email where Mr. Starr opines that ███████████████████████████████████████████.[2] *See* Dec. 23, 2014 Email from James Starr to Scott Reagan (Exhibit C).

- A January 9, 2018 email sent by CHG Sales Manager, Paul Pope, ███████████████████████████████████████████ *See* Jan. 9, 2018 Email from Paul Pope to Arthur Watson (Exhibit D).

- A document discussed during Mr. Starr's deposition that states, without providing the source of the information, that four CHG games have replaced four VGT games. When asked about the document, Mr. Starr testified that he was not aware of any other documents demonstrating such information nor aware of any document indicating that Castle Hill was responsible for any decrease in VGT revenue. *See* Starr Dep. at 154:19-155:8 (Exhibit E). When asked whether he could ███████████████████████████████████ *See id.* at 159:14-19.[3]

Finally, Ms. Bennis asserts that "VGT loses out on revenue" each time a "a player mistakenly plays a CHG game believing it to be a VGT game." Doc. 175, Ex. A at 33. Again, this opinion is simply a restatement of her "[d]iscussion with Jay Sevigny," President of VGT. Doc. 175, Ex. A. at 33 n. 178. Ms. Bennis offers no evidence nor reason as to why this assertion is anything more than a summary of the speculation of another individual – a lay opinion again paraded as expert analysis. Ms. Bennis fails to bring forth any actual evidence indicating that VGT has lost revenue as a result of player confusion, and fails to explain any basis for her conclusion.

VGT also relies on Ms. Bennis's opinion to assert it suffers "harm to its brand and good will" when a player "mistakenly plays a CHG game believing it to be VGT." Doc. 228 at 3. Yet, a

---

[2] In fact, while Mr. Starr was unable to quantify or otherwise explain his speculation regarding CHG games, he did quantify that ███████████████████████████████████ *See* Starr Dep. Ex. 72, VGT0018974-75 (Exhibit C); Ex. E, Starr Dep. at 146:15-17 ███████████████████████████████████).

[3] Mr. Starr also admitted that from 2014 to 2016 VGT ███████████████████████████████████. *See* Ex. E, Starr Dep. at 134:1-12. Further, Mr. Starr was unable to identify any contracts or agreements with customers which VGT lost due to Castle Hill, and despite being provided monthly reports about VGT game placement and replacement, other than a single comment in a single report, he could not recall any machines in any casinos where Castle Hill games replaced VGT games. *See* Ex. E, Starr Dep. at 154:19-155:8.

review of evidence reveals another instance where Ms. Bennis merely parrots her conversation with Mr. Sevigny. Doc. 175, Ex. A. at 33 nn. 176-77. Ms. Bennis even admits that she is only "aware" of this harm "from [her] discussion with Mr. Sevigny." *Id.* VGT's allegations of harm to its brand or good will are unsupported by any expert analysis nor any evidence within the factual record. Moreover, VGT asserts that it will be harmed if a player plays a CHG game thinking it is a VGT game because "to the extent that the player does not have a good experience, that player is less likely to play a VGT game in the future." Doc. 228 at 3. Built into this argument are two fundamental assumptions: first, that there are players playing CHG games thinking they are VGT games; and second, that a player playing a CHG game will have an objectively "worse" experience than one playing a VGT game. But VGT has *absolutely no evidence* – and notably offers none in its opposition – to support either of these assumptions. The only thing it has is its own rank speculation, which is inadmissible in any event and certainly cannot form the basis of any of Ms. Bennis's opinions.

VGT's Opposition to this Motion was an opportunity to specify the testimony and documents that demonstrate its alleged "actual harm" or "irreparable injury." *See* Doc. 228 at 2-3. VGT utterly fails to do so. Instead, the only evidence it points to relate to a cherry-picked and out-of-context statement made by CHG employee, Jason Sprinkle. *See* Doc. 228 at 2-3. When asked, Mr. Sprinkle could not identify a *single specific example* of a CHG Class II game replacing a VGT Class II game. Rather, Mr. Sprinkle mentioned one instance involving Class III electric gaming machines – games not at issue in this litigation. When asked: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬" *See* Doc. 228, Ex. A at 452:11-23. When pressed to ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Mr. Sprinkle responded: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.* at 452:24-453:2 (emphasis added).

5

Again, such speculation fails to demonstrate any actual harm or injury that has befallen VGT.[4]

Not a single VGT employee, nor VGT's 30(b)(6) designee, testified that VGT lost profits, lost revenue, or had its games replaced by CHG. *See* Ex. E, Starr Dep. at 154:19-155:8; VGT's 30(b)(6) Deposition of Don Kovach at 27:12-29:20 ("Kovach Dep.") (Exhibit F). VGT's damages designee Mr. Kovach was unable to identify a single instance of a CHG game replacing a VGT game on a casino floor, and, when pressed, stated that while VGT "believed" its revenues had suffered, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." Ex. F, Kovach Dep. at 27:24-29:20. Of course, there isn't any such expert opinion, and contrary to VGT's unsubstantiated claims, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. F, Kovach Dep. at 29:21-30:5; *see also* Ex. E, Starr Dep. at 134:1-12. In June 2017, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Ex. F, Kovach Dep. at 30:20-32:19; *see also* Kovach Dep. Ex. 3, VGT0062336-60 (Exhibit G). Further, VGT's revenue associated with its three-reel mechanical games, has ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Ex. F, Kovach Dep. at 43:25-44:4; *see also* Kovach Dep. Ex. 7, VGT0018916 (Exhibit H).

To the extent that VGT is allowed to discuss lost revenue, lost profits, or lost profit damages, VGT has yet to produce non-speculative evidence or an expert opinion that can be properly admitted. As such, to the extent that such evidence is deemed relevant, the speculative nature of the evidence also precludes it.

To the extent VGT seeks to show actual harm or irreparable injury by offering evidence, presenting any argument, or making reference to lost revenue, lost profits, or lost profit damages,

---

[4] Mr. Sprinkle's rank speculation was also referenced by Ms. Bennis to support her belief that VGT has suffered harm. *See* Doc. 175, Ex. A at 32 n. 173.

6

VGT should be precluded from doing so because of its judicial admission and lack of admissible evidence.

## III. CONCLUSION

For the reasons set forth here and in CHG's Motion, CHG respectfully requests that VGT be prohibited from introducing any evidence, presenting any argument, or referring to any claim of lost revenue, lost profits, or lost profit damages at trial.

Dated: December 14, 2018              Respectfully submitted,

/s/ *Robert C. Gill*
Robert C. Gill (admitted *pro hac vice*)
Henry A. Platt (admitted *pro hac vice*)
Thomas S. Schaufelberger (admitted *pro hac vice*)
Sherry H. Flax (admitted *pro hac vice*)
Matthew J. Antonelli (admitted *pro hac vice*)
Jeremy B. Darling (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
henry.platt@saul.com
tschauf@saul.com
sherry.flax@saul.com
matt.antonelli@saul.com
jeremy.darling@saul.com

James C. Hodges, OBA #4254
JAMES C. HODGES, P.C.
2622 East 21st Street, Suite 4
Tulsa, Oklahoma 74114
(918) 779-7078
(918) 770-9779 (facsimile)
JHodges@HodgesLC.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this of December 14, 2018, I caused a copy of the foregoing **REPLY IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PLAINTIFF'S LOST PROFIT DAMAGES** to be filed via the Court's ECF system, which will provide electronic notification of filing to the following counsel for Plaintiff:

Graydon Dean Luthey, Jr.
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
(918) 595-4821
(918) 595-4990 (facsimile)
dluthey@gablelaw.com
*Counsel for Plaintiff*

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1221
(212) 841-1010 (facsimile)
nroman@cov.com
*Counsel for Plaintiff*

Gary M. Rubman
Peter Swanson
Michael Sawyer
Rebecca B. Dalton
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
(202) 778-5465 (facsimile)
grubman@cov.com
pswanson@cov.com
msawyer@cov.com
rdalton@cov.com
*Counsel for Plaintiff*

*/s/ Robert C. Gill*
Robert C. Gill