**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| VIDEO GAMING TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> CASTLE HILL STUDIOS LLC, *et al.* <br><br> Defendants. | CASE NO. 17-CV-00454-GKF-JFJ <br><br> **PUBLIC – REDACTED VERSION** |

**REPLY BRIEF IN FURTHER SUPPORT OF**
**DEFENDANTS' MOTION TO LIMIT THE TESTIMONY**
**OF PLAINTIFF'S DAMAGES EXPERT MELISSA A. BENNIS**

Defendants, Castle Hill Studios LLC, Castle Hill Holdings LLC, and Ironworks Development LLC (collectively, "CHG" or "Defendants"), submit this reply brief in further support of their motion for an order limiting the testimony of Plaintiff's damages expert, Melissa A. Bennis (the "Motion"), and in response to the opposition ("Opposition" or "Opp.") to that Motion filed by Plaintiff, Video Gaming Technologies, Inc. ("Plaintiff" or "VGT").

## INTRODUCTION

Plaintiff's Opposition contains a number of misstatements and partial truths. For example, VGT complains that Defendants seek to preclude Ms. Bennis from summarizing or characterizing documents or facts in this case. *See* Motion at 14-15; Opp. at 1. However, Ms. Bennis has no personal knowledge of the underlying facts of this case. The "fact" statements contained in her reports that are addressed in Defendants' Motion are nothing more than self-serving prose written by Plaintiff's counsel. To have Ms. Bennis recite such propaganda as alleged "facts" would be improper, and would contribute nothing of probative value. While Plaintiff suggests that "vigorous cross examination" is an appropriate response to such testimony, the better approach would be to exclude the recitation of such fiction in the first instance. Ms. Bennis should give opinion testimony based only on actual evidence as admitted in this case.

## II.     ARGUMENT

### A.     The Bennis Depreciation Opinion is Flawed and Unreliable.

Plaintiff claims that "based on her understanding that the cabinets may be used for more than ten years," Ms. Bennis allocated manufacturing costs over a ten year period. Opp. at 3. To be clear, Ms. Bennis personally had no such understanding. Ms. Bennis relied entirely on ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

1

██████████████████████████████

██ *Id.* at 29-30.

Inasmuch as Plaintiff seeks to prevent Defendants' expert, Mr. Schoettelkotte, from relying on information provided to him by Defendants outside of the discovery process, Plaintiff's experts should be held to the same standard. *See* Plaintiff's Motion to Exclude the Testimony of W. Todd Schoettelkotte in Part, ECF No. 163, at 5-10. Ms. Bennis should not be permitted to rely on information from a private conversation with ████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████. For this additional reason it is improper and should be excluded.

████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████. To constitute a proper factual foundation for expert opinion, such information must be reliable. Neither Ms. Bennis nor Plaintiff has shown that to be so.

Additionally, ████████████████████████████████████████████ makes his opinion unclear. Plaintiff's EGMs, and those of Defendants, consist of much more than just a cabinet. The question is not whether the cabinet could last ten years. The question is whether the entire functioning EGM, including its software, has a reliable expected life span of ten years of more.

2

Ms. Bennis can have no "understanding" about whether Castle Hill's EGMs will continue to operate for ten years, because Castle Hill has only been in business for four years. There is no available data to show how long Defendants' machines will continue operating. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

While Plaintiff offers citations to legal authority about a plaintiff's burden to prove revenue, and a defendant's burden to show its costs, those cases stand for a basic, unremarkable legal position which Defendants do not dispute. However, those authorities cited by Plaintiff do not support what Ms. Bennis wishes to do with her depreciation opinion. Ms. Bennis apparently agrees with the concept of Castle Hill's depreciation deduction, since she has attempted to "re-calculate" that deduction, but she has not challenged its very existence as improper.

What Ms. Bennis does not have the ability to do is to recast Castle Hill's own, legitimate depreciation expense in a manner that suits her purpose of simply increasing the determination of profit available for disgorgement. Ms. Bennis admitted in her Opening Report that even with the improvement in CHG's financial performance ███████████████████████████████." Opening Report at 17. In other words, even Ms. Bennis admits that Castle Hill is losing money.

Ms. Bennis has not shown that Castle Hill's depreciation expense is not properly deductible, or that it is incorrect. Castle Hill, on the other hand, has shown that its deduction is consistent with the standard depreciation methodology employed by other leading companies in the gaming industry, such as Bally, Everi, IGT and SGC. Ms. Bennis should not be permitted to "recast" the depreciation as reflected in Castle's Hills financial records and tax returns solely to suit her purpose.

### B.  Ms. Bennis is Not Qualified to Testify About CHG's Alleged Avoided Research and Development Costs, and Her Opinion is Unreliable.

In its Opposition, Plaintiff makes a number of telling admissions. For example, in the opening paragraph of Section II(B), which addresses the avoided research and development cost opinion, Plaintiff confirms that "Ms. Bennis's opinions … are based on ███████████ ███████████████████████████████████████ █████████" Opp. at 6.

What Plaintiff does not argue is that Ms. Bennis's opinion was based on her *own* review and analysis of VGT and CHG financial data about development costs. Plaintiff does not make that allegation because it is not true. *See* Motion at 5. Ms. Bennis's opinion is not based on such work or analysis by her, and that is exactly the problem with her opinion. Ms. Bennis should not be permitted to testify as a conduit for the opinions of others. Her "opinion" on avoided research and development costs is not her opinion at all. Ms. Bennis relies on Mr. Roireau's five-minute estimate, and VGT's technical expert Stacy Friedman. But Mr. Friedman does not have any accounting experience, and he did not review VGT financial data either. Moreover, he in turn relied on the opinions of VGT employees for his opinions. Ms. Bennis's opinion does not qualify as the analysis or expertise of an expert, and it should be excluded in its entirety as unreliable.

Plaintiff acknowledges deficiencies in Ms. Bennis's opinion on avoided research and development costs, but argues that such deficiencies go to the weight, but not the admissibility, of her opinion. However, it is well-established that Ms. Bennis cannot abdicate her responsibility as an expert and simply adopt Mr. Roireau's back-of-the-envelope calculation without doing any actual analysis. *iFreedom Direct Corp. v. First Tennessee Bank Nat. Ass'n*, 2012 WL 3067597 at *3 (D. Utah July 27, 2012) (a "party may not 'elevate and advocate the value of individual evidence by having it recounted by an expert.'"). Mr. Roireau is not an expert in financial valuation, and he performed his

"five minute estimate" without the benefit of any underlying VGT data. Roireau Dep. at 206:7-18, attached to the Motion as Exhibit F.

Ms. Bennis also bases her opinion on information provided by VGT's technical expert, Stacy Friedman. Opp. at 10. Mr. Friedman freely admitted that he has no education in or experience with accounting. Friedman Dep., attached to the Motion as Exhibit E, at 41. Mr. Friedman also admitted that he did not even *attempt* to perform mathematical analysis on the costs avoided. Friedman Dep. at 227-28. Moreover, Mr. Friedman did not look at any VGT accounting records as part of his damages "analysis." Friedman Dep. at 224. Instead, he spoke with VGT employees Josh Davis and Chris Shults. *Id.* When asked whether Messrs. Davis or Shults reviewed any VGT accounting records or data in connection with or preparation for their communications with Mr. Friedman about their ▮▮▮▮ number, Mr. Friedman responded only that they were asked to confirm the number of engineers who worked on various aspects of the VGT development. *Id.* at 224-226. Apparently, *nobody* reviewed VGT accounting records in connection with Ms. Bennis' opinion on avoided research and development costs.

Even though Mr. Friedman testified that he made no effort to perform a mathematical analysis on the development costs allegedly avoided, Ms. Bennis opined that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Motion at 11. Ms. Bennis states that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[1] *Id.* While Ms. Bennis recognizes that some of these cost savings may be due to other factors, she again relies on Mr. Friedman's opinion to conclude that "a substantial majority" of the differential relates to trade secrets that were

---

[1]   Defendants have separately moved to exclude the testimony and reports of Stacy Friedman.

5

misappropriated. *Id.* Ms. Bennis then opines based on the above that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.*

As reflected in her reports and deposition testimony, Ms. Bennis' avoided research and development cost opinion did not involve any actual analysis, nor is her conclusion the product of any accepted methodology. Ms. Bennis admits that she did not even consider in her avoided research and development "analysis" the fact that CHG purchased ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Motion at 12. For her opinion Ms. Bennis merely relied on the email drafted by Mr. Roireau for marketing purposes, on her conversations with VGT expert Stacy Friedman, and Mr. Friedman relied on his conversations with VGT employees Josh Davis and Chris Shults.

Based on this record it would not be reasonable to rely on any financial opinion from Ms. Bennis. *See TK-7 Corp. v. Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993) ("expert failed to demonstrate any basis for concluding that another individual's opinion on a subjective financial prediction was reliable."). Contrary to Plaintiff's argument that the deficiencies with Mr. Bennis's report go to its weight and not its admissibility, her opinion is utterly unreliable and fails to pass muster as an expert opinion.

### E.  The Improper Recitation of "Facts" by Ms. Bennis

Plaintiff misapprehends the nature of Defendants' objections to the references in Ms. Bennis' reports to summarized "evidence." Defendants understand that there must be an adequate factual basis for any expert opinion that Ms. Bennis may properly testify to at trial. However, at trial these facts will be presented through the testimony of witnesses who have personal knowledge of those facts. *See* Fed. R. Evid. 602 (witness may only testify based on sufficient evidence of their personal knowledge). Ms. Bennis may then testify based on the facts properly of record. Ms. Bennis

6

will not provide the factual basis for her own opinions because she has no such personal knowledge. The absence of personal knowledge is partially the basis for Defendants' Motion.

In addition, the portions of Ms. Bennis's reports which contain purported "facts", including, *e.g.*, the ▮▮▮▮▮▮▮▮" for her opinions (Opening Report at 16-17); the statement about the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (*id.* at 18-19); information about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (*id.* at 19) and ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ts" (*id.* at 24-25), are hardly written in a factual manner. To the contrary, they are written in a one-sided, inflammatory and self-aggrandizing way. There is no valid reason to permit Ms. Bennis to testify about such alleged "facts" as characterized by Plaintiff's counsel at the trial of this cause. Any such "factual" testimony by Ms. Bennis should be excluded on this additional basis.

  F.  **Improper Legal Conclusions**

As with Defendants' objection to Ms. Bennis testifying about facts, Plaintiff misunderstands the basis for Defendants' objection to Ms. Bennis testifying about legal conclusions. The question of whether it was improper, as Ms. Bennis alleges, for CHG's damages expert to rely on marketing surveys which VGT had obtained and relied on in the regular course of business is a question which goes beyond the boundaries of Ms. Bennis's role as a damages expert. Although Plaintiff seemingly now claims that Ms. Bennis has expertise with confusion surveys because she has a degrees in accounting and marketing (Opp. at 18), Ms. Bennis was not disclosed or proffered as a marketing expert. As such, she may not properly offer such opinions.

The basis for Defendants' objection was clearly set forth in its Motion. Ms. Bennis offered opinions about marketing and consumer surveys which she obtained from VGT expert Yoram (Jerry) Wind. Motion at 13-14. Her opinions in this regard are not really her opinions, but are regurgitated opinions originating from Dr. Wind. *See TK-7 Corp. v. Barbouti*, 993 F.2d 722, 732 (10th

7

Cir. 1993) ("expert failed to demonstrate any basis for concluding that another individual's opinion on a subjective financial prediction was reliable, other than the fact that it was the opinion of someone he believed to be an expert who had a financial interest in making an accurate prediction."). Additionally, Dr. Wind's survey and opinions are the subject of a separate *Daubert* motion. Ms. Bennis should not be permitted to testify about the opinions given by other experts, including Dr. Wind, since they are not her opinions, and for the reasons set forth in the *Daubert* motion as to Dr. Wind.

### V. CONCLUSION

Defendants, Castle Hill Studios LLC, Castle Hill Holdings LLC, and Ironworks Development LLC respectfully request that their Motion be granted.

Dated: December 14, 2018

Respectfully submitted,

*/s/ Robert C. Gill*
Robert C. Gill (admitted *pro hac vice*)
Henry A. Platt (admitted *pro hac vice*)
Thomas S. Schaufelberger (admitted *pro hac vice*)
Matthew J. Antonelli (admitted *pro hac vice*)
Jeremy B. Darling (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
henry.platt@saul.com
tschauf@saul.com
matt.antonelli@saul.com
jeremy.darling@saul.com

Sherry H. Flax (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
500 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 332-8764
(410) 332-8785 (facsimile)
sherry.flax@saul.com

James C. Hodges, OBA #4254
JAMES C. HODGES, P.C.
2622 East 21st Street, Suite 4
Tulsa, Oklahoma 74114
(918) 779-7078
(918) 770-9779 (facsimile)
JHodges@HodgesLC.com

*Counsel for Defendants*

9

# CERTIFICATE OF SERVICE

      I hereby certify that on this 14th day of December, 2018, I caused a copy of the foregoing **REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO LIMIT THE TESTIMONY OF PLAINTIFF'S DAMAGES EXPERT MELISSA A. BENNIS** to be filed using the Court's ECF system, which will provide electronic notification of filing to the following counsel for Plaintiff:

Graydon Dean Luthey, Jr.
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
(918) 595-4821
(918) 595-4990 (facsimile)
dluthey@gablelaw.com
*Counsel for Plaintiff*

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1221
(212) 841-1010 (facsimile)
nroman@cov.com
*Counsel for Plaintiff*

Gary M. Rubman
Peter Swanson
Michael Sawyer
Rebecca B. Dalton
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
(202) 778-5465 (facsimile)
grubman@cov.com
pswanson@cov.com
msawyer@cov.com
rdalton@cov.com
*Counsel for Plaintiff*

          */s/ Robert C. Gill*
          Robert C. Gill