UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

VIDEO GAMING TECHNOLOGIES, INC.,

    Plaintiff,

v.

CASTLE HILL STUDIOS LLC, *et al.*

    Defendants.

CASE NO. 17-CV-00454-GKF-JFJ

**REPLY IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE
TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING
COMMUNICATIONS BETWEEN COUNSEL AND CHG EMPLOYEES**

Defendants, Castle Hill Studios LLC, Castle Hill Holdings LLC, and Ironworks Development LLC (collectively, "CHG" or "Defendants"), file this Reply in further support of their Motion In Limine to preclude Plaintiff Video Gaming Technologies, Inc. ("VGT") from introducing any evidence, or making any argument or reference to communications between CHG employees and defense counsel in this case, including the fact that defense counsel asserted the attorney-client privilege in response to questions about the content of such attorney-client communications ("Motion") (Dkt. 148 – under seal).

As set forth in CHG's Motion, during depositions of CHG employees,[1] VGT's counsel inquired about confidential communications between those employees and defense counsel for CHG. Counsel for CHG properly objected on the basis of privilege, and later filed this Motion to

---

[1] Indeed, in one such instance, the deposition of Brandon Booker, two partners with many years of experience were present in the room for VGT while only one associate was there on behalf of CHG defending the deposition. The lead partner taking the deposition repeatedly pressed the far more junior associate on the issue of privilege and attorney-client communications in a blatant attempt to bully the more junior lawyer (going so far as to question the lawyer's ethics on the record) into waiving privilege and permitting the witness to answer VGT's facially improper line of questioning. These transparent intimidation tactics were the precursor to the unprofessional, sharp practices exemplified by VGT's claim that defense counsel committed "misconduct" by engaging in improper "ex parte communications" with former VGT employees in the defense of this action.

preclude VGT from offering evidence relating to privileged communications between CHG and counsel at trial, or arguing that communications with defense counsel are somehow "evidence" supporting VGT's claims. Importantly, at no time since any assertion of privilege by defense counsel did Plaintiff file a motion to challenge such an assertion of privilege. Nor did Plaintiff's counsel provide any authority to support its position that the assertion of privilege was improper.

VGT takes the remarkable and absurd position that communications between defense counsel and CHG employees *which occurred in the context of defending the claims VGT has brought, and in preparation for those employees' depositions,* are "improper *ex parte* communications." VGT's opposition actually accuses CHG's counsel of unethical behavior, and goes so far as to suggest that VGT has a cause of action against defense counsel for tortious interference with contract under Oklahoma law based on the defense of this action. This argument – which VGT offers without *any supporting authority* – is complete fantasy. Moreover, this position by Plaintiff's counsel exemplifies its bad faith, abusive litigation tactics in this case.

VGT filed this lawsuit alleging that CHG employees misappropriated its trade secrets and "confidential business information." According to VGT, counsel for CHG is not permitted to discuss VGT's claims with the very employees VGT accuses of wrongdoing. VGT asserts that those conversations – with counsel in the context of the defense of this matter – independently violate the post-employment duties those employees owe to VGT. But wait, VGT says, it would have been "ok" for counsel to question *their own client* regarding VGT's allegations if – and only if – counsel had done so on the record in front of VGT's counsel. VGT is dead wrong. Of course counsel, in the defense of this lawsuit, is permitted to have privileged conversations with CHG employees in connection with the defense of VGT's claims. To suggest otherwise would be to divest CHG of the right to defend itself against this action, and the right to engage in the same protected attorney-client communications that other litigants enjoy. CHG continues to be perplexed by VGT's specious

2

position, and fails to understand why VGT is wasting the parties' and the Court's time with argument which it has utterly failed to support with any legal authority. Perhaps wasting CHG's time, and money, was the purpose of this exercise.

I. THERE IS NO CAUSAL CONNECTION BETWEEN CHG EMPLOYEES COMMUNICATING WITH DEFENSE COUNSEL AND VGT'S CLAIMS

VGT makes the erroneous argument that the privileged communications between CHG employees and defense counsel are "relevant to VGT's request for enhanced damages and attorney's fees." Doc. 220 at 9. VGT fails to comprehend that the reason for these communications is the need to defend against this litigation, which *VGT initiated*. VGT deploys circular logic. VGT filed a lawsuit asserting, *inter alia*, the misappropriation of its trade secrets. VGT now claims that its lawsuit created a new right to damages based on CHG's efforts to defend itself from *claims that would not exist but for VGT's litigious conduct*.

The claims asserted herein by VGT are unrelated to any instance of communication between CHG employees and defense counsel. VGT has not pled a single claim asserting that CHG employees have misappropriated trade secrets through their communications with defense counsel. Indeed, Plaintiff has asserted *no claims against individual CHG employees at all.* VGT's pleading states that CHG has used "one or more of VGT's Trade Secrets in connection with the development of its games." Am. Compl. (Dkt. 103) at ¶ 98. This has been VGT's theory throughout this litigation. It is telling that VGT offers no support for its naked assertion that a party's communications with its counsel in connection with the defense of an action can provide a basis for "enhanced damages."

VGT self-righteously proclaims that it has "avoided causing an employee to breach confidentially obligations owed to CHG." Doc. 220 at 3. This statement ignores the fact that *CHG's* trade secrets are not at issue in this litigation. VGT's example does not include a discussion of *privileged attorney-client communications* by Plaintiff's counsel. Despite VGT's best effort to draw parallels

3

between the parties, VGT ignores a critical point: that VGT initiated the lawsuit which CHG is now rightly defending itself against; CHG has *not* sued VGT for misuse of its confidential information.

The communications between Castle Hill employees and defense counsel did not occur in connection with efforts to compete against VGT or to "misappropriate" any VGT intellectual property. Rather, such communications have taken place strictly in connection with the defense of VGT's lawsuit. These communications are absolutely privileged, and VGT has failed to establish, or even to provide any authority to support, its position to the contrary.

Although the authority is limited on this issue, courts have found that confidentiality agreements which prevent the disclosure of relevant information for litigation purposes to be void as against public policy. In *Otter Products, LLC v. Seal Shield, LLC*, No. 13-CV-01734-MSK-MJW, 2014 WL 1213475, at *1 (D. Colo. Mar. 24, 2014), plaintiff and defendant had previously entered into a confidentiality agreement stating that the parties could use certain disclosed information only for purposes of evaluating a potential business relationship. The same parties were later involved in lawsuits against one another. *Id.* The plaintiff sought a preliminary injunction prohibiting the defendant from disclosing in those lawsuits any information covered by the confidentiality agreement. *Id.* at *5. The court refused to issue the injunction, stating the private agreement could not be used to prevent the presentation of evidence to the factfinder, that enforcement would not serve the public interest, and was likely against public policy.

Other courts have reached similar conclusions. The District of Nevada stated that confidentiality agreements "might not be enforceable . . . if the agreement is being used by one party within the context of litigation to suppress an adverse party's access to evidence." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 923 (D. Nev. 2006) (dicta). In *Chambers v. Capital Cities/ABC*, 159 F.R.D. 441, 444 (S.D.N.Y. 1995), the Southern District of New York found that it was against public policy

4

for parties to agree to limit access to evidence in connection with litigation, and that a party (the plaintiff there) would be adversely affected if the confidentiality agreements were to be enforced.

## II. THE PROTECTIVE ORDER DOES NOT PREVENT NOR CONDITION COMMUNICATION BETWEEN CHG EMPLOYEES AND DEFENSE COUNSEL

As is set forth in more detail in Castle Hill's opposition to Plaintiff's Motion to Exclude the Testimony of W. Todd Schoettelkotte in Part (Dkt. 234) at pages 4-11, this Court entered a protective order (Dkt. 55) in this case. As the text of the Order makes clear, CHG's defense counsel is permitted to review all information in this litigation, whether designated as confidential or highly confidential.

The purpose of the protective order was to provide for the confidentiality of information obtained in the course of this litigation and to facilitate its production. Plaintiff never disclosed to Defendants' counsel, or to the Court, that in Plaintiff's view defense counsel would be prohibited from privately communicating with employees of Defendants about the confidential information on which Plaintiff's trade secret claims are based. At no time was it suggested that such communications would need to take place only in the presence of Plaintiff's counsel, or that the attorney-client privilege would not apply to such communications. The very existence of the protective order communicated the opposite point – that such communications were necessary to the defense and would take place in the ordinary course of the litigation, but that they would be covered under the auspices of the protective order.

Rather than be up front and above board about this issue, Plaintiff instead chose to lay in wait and then sandbag Defendants in an effort to obtain a litigation advantage, and to cast defense counsel in a poor light. By failing to address the issue in the context of the protective order, Plaintiff has waived any objection that it might have had to the communications by defense counsel with Castle Hill employees who were previously employed by Plaintiff.

5

### III. VGT'S REQUEST FOR A PRIVILEGE LOG IS UNTIMELY, AND PROCEDURALLY IMPROPER

VGT questioned CHG employees about privileged communications with counsel at least as early as May of 2018. VGT first formally raised the matter of its objection to the communications between CHG's employees and defense counsel approximately three months after the close of discovery in its opposition to this motion. As VGT's argument indicates, it has been well aware of what it now characterizes as "prejudicial" conduct for quite some time. Rather than properly and fairly raising its concerns with opposing counsel, or with the Court through an appropriate motion, VGT chose to do nothing, and then to sandbag defense counsel with the issue in pretrial motions.

Despite having done nothing to challenge any assertion of privilege by defense counsel, VGT *now* requests that CHG produce a privilege log covering oral communications that occurred in the context of CHG's defense of VGT's claims and in preparation for depositions that took place six or seven months ago. These communications have never been the subject of a motion to compel. And VGT never raised any objection to the completeness of CHG's previous privilege log. As articulated in Part I, *supra*, such information is irrelevant to VGT's claims. Moreover, if VGT wanted a privilege log it should have filed a motion for one during the discovery period. Raising the issue in an opposition brief months after the close of discovery is not timely, sufficient, or procedurally proper. This is particularly true where the communications at issue were not reduced to writing.

VGT's untimely request for a privilege log highlights another issue as well. A central issue in this case is what information – if any – falls within the scope of VGT's allegations about misappropriation of "confidential information." VGT has not clearly defined that term, leaving it purposely overbroad. As set forth in CHG's opposition to VGT's motion for summary judgment, VGT's claims will require the Court to interpret the employee agreements of multiple former VGT

6

employees – which themselves may well prove to be unenforceable due to their overbreadth.[2] There is sure to be information which VGT claims is confidential, and information which CHG claims is not. It would be impossible, therefore, for CHG to produce a "privilege log" based on VGT's vague description of confidential information. Even if it could, doing so would require CHG to reveal the *substance* of each and every communication with counsel in the context of this litigation.

### IV. VGT'S PERSONAL ATTACKS ON COUNSEL, AND EXTREME POSITIONS, ARE ILLOGICAL AND LACK MERIT

Finally, apart from being logically flawed, legally unsupported, untimely, and procedurally improper, VGT's position is extreme. VGT makes the serious allegation, without the benefit of legal authority, that CHG's counsel has engaged in misconduct and has not acted ethically. VGT also asserts that "to the extent CHG employees testify at trial that they have complied with confidentiality obligations owed to VGT," they should be permitted to inquire about communications with counsel for the purposes of impeachment. VGT Opp'n (Dkt. 220) at 10. These statements are an extension of Plaintiff's extreme position that communications between CHG employees and defense counsel are not privileged. VGT's claims it will prove the allegations of its Amended Complaint that CHG misappropriated confidential information in the development of bingo slot machines *by focusing on communications with counsel that took place after the lawsuit was filed.* This entire line of inquiry is indicative of VGT's overall approach to this litigation. VGT's *ad hominem* attacks on defense counsel, and its extreme and unsupported positions, do nothing to advance the merits of this case for the parties or the Court.

### V. CONCLUSION

For the foregoing reasons and as articulated in CHG's Motion, Castle Hill respectfully requests that VGT be prohibited from introducing any evidence, or making any argument or

---

[2] If VGT's position were adopted, no defendant in a trade secret or confidential business information case could ever obtain legal advice, because the communications would be open to discovery and/or independently subject the defendant to liability.

7

reference to communications between CHG employees and defense counsel in this case, including the fact that defense counsel asserted the attorney-client privilege in response to questions about the content of such attorney-client communications. Additionally, Castle Hill specifically requests that this Court make an affirmative finding that defense counsel has not engaged in "misconduct" or acted "unethically" in connection with its defense of this action as alleged by Plaintiff based on its defense of this action.

Dated:  December 14, 2018                    Respectfully submitted,

/s/ Robert C. Gill
Robert C. Gill (admitted *pro hac vice*)
Henry A. Platt (admitted *pro hac vice*)
Thomas S. Schaufelberger (admitted *pro hac vice*)
Sherry H. Flax (admitted *pro hac vice*)
Matthew J. Antonelli  (admitted *pro hac vice*)
Jeremy B. Darling (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
henry.platt@saul.com
tschauf@saul.com
sherry.flax@saul.com
matt.antonelli@saul.com
jeremy.darling@saul.com

James C. Hodges, OBA #4254
JAMES C. HODGES, P.C.
2622 East 21st Street, Suite 4
Tulsa, Oklahoma 74114
(918) 779-7078
(918) 770-9779 (facsimile)
JHodges@HodgesLC.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that on this of December 14, 2018, I caused a copy of the foregoing **REPLY IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING COMMUNICATIONS BETWEEN COUNSEL AND CHG EMPLOYEES** to be filed via the Court's ECF system, which will provide electronic notification of filing to the following counsel for Plaintiff:

Graydon Dean Luthey, Jr.
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
(918) 595-4821
(918) 595-4990 (facsimile)
dluthey@gablelaw.com
*Counsel for Plaintiff*

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1221
(212) 841-1010 (facsimile)
nroman@cov.com
*Counsel for Plaintiff*

Gary M. Rubman
Peter Swanson
Michael Sawyer
Rebecca B. Dalton
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
(202) 778-5465 (facsimile)
grubman@cov.com
pswanson@cov.com
msawyer@cov.com
rdalton@cov.com
*Counsel for Plaintiff*

                                        */s/ Robert C. Gill*
                                        Robert C. Gill