UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

VIDEO GAMING TECHNOLOGIES, INC.,

        Plaintiff,

v.

CASTLE HILL STUDIOS LLC, *et al.*

        Defendants.

CASE NO. 17-CV-00454-GKF-JFJ

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF ALLEGED "ACTUAL CONFUSION"**

Defendants, Castle Hill Studios LLC, Castle Hill Holdings LLC, and Ironworks Development LLC (collectively, "CHG" or "Defendants"), submit this reply to Plaintiff Video Gaming Technologies, Inc.'s ("VGT") opposition ("Opposition") (Doc. 206) to Defendants' motion *in limine* to exclude certain evidence of alleged "actual confusion" ("Motion") (Doc. 147). The Motion sought to preclude VGT from arguing or introducing certain evidence of alleged "actual confusion" on grounds that (1) certain of the alleged instances involve printouts of internet comments that cannot be authenticated, (2) certain of the alleged instances are irrelevant in that they involve confusion among non-consumers, and (3) the alleged instances are *de minimis* and therefore unduly prejudicial and a waste of time.

VGT's Opposition not only fails to proffer an individual to authenticate the printouts of internet comments, it also ignores that authentication of such printouts requires the proponent to establish a link between the purported author and the comments. VGT also disregards controlling case law providing that evidence of confusion among non-consumers is irrelevant. Finally, VGT improperly argues that its fourteen alleged instances of actual confusion are too numerous to qualify as *de minimis*, ignoring that many of the alleged instances lack substance, are not tied to a game at issue in this litigation, and are not tied to any specific aspect of its alleged trade dress.

I.  **AUTHENTICATION REQUIRES VGT TO LINK THE INTERNET COMMENTS TO SPECIFIC AUTHORS**

In its Motion, CHG called into question VGT's ability to authenticate printouts of comments on an online messaging board called Jokers Wild Forum and on Naskila Gaming's Facebook page. In its Opposition, VGT shamelessly fails to proffer any specific individual to authenticate these printouts, despite asserting that it "can and will" do so. Opp. at 2. Instead, VGT asks the court to put off the issue and "await a proffer of such evidence before making determinations of authenticity and admissibility." *Id.* at 5. CHG properly raised the problem of authentication now, in its Motion and in its summary judgment motion. VGT was obligated to address the merits of that problem now, if it had a meritorious response. It apparently has none. VGT cannot be permitted to fail to address the issue with a bare promise that it "can and will" authenticate its evidence later. That is too little, and too late.

Regardless, VGT is incorrect in its assertion that it may authenticate the printouts of the Jokers Wild Forum and Naskila Gaming Facebook posts solely through testimony that the printouts accurately reflect the contents of those websites. *See id.* at 4. In addition to such testimony, VGT also has the burden to demonstrate that the relevant internet comments arose from the particular source (*i.e.*, the particular person) that VGT claims (*i.e.*, a consumer).

In support of its incorrect claim that testimony that a printout accurately reflects a website is sufficient, VGT misleadingly cites to cases involving the authentication of printouts of typical webpages, rather than the authentication of printouts of internet comments or message boards, such as printouts of online forum or social media posts. *See id.* at 6; *United States v. Meienberg*, 263 F.3d 1177, 1181 (10th Cir. 2001) (authentication of printouts of computerized records showing number of approvals issued by state agency to the defendant's firearm business); *Foreword Magazine, Inc. v. OverDrive, Inc.*, No. 1:10-CV-1144, 2011 WL 5169384, at *3 (W.D. Mich. Oct. 31, 2011) (authentication of printouts reflecting the "content of websites," with no mention of internet

1

comments); *Toytrackerz LLC v. Koehler*, No. CIV.A. 08-2297-GLR, 2009 WL 2591329, at *6 (D. Kan. Aug. 21, 2009) (authentication of printouts of defendant's website).

Due to the "heightened possibility for manipulation" associated with online chatroom or social media postings, the requirements for authenticating printouts of internet comments are greater than for authenticating typical websites. *See Griffin v. State*, 19 A.3d 415, 424-427 (Md. 2011) (analyzing state analogue to Rule 901). To authenticate printouts of internet comments, a party must additionally put forward evidence linking the posting to the specific individual who made the posting. *See*, *e.g.*, *id.* at 424-427 (citing and summarizing cases from various jurisdictions holding same); *United States v. Jackson*, 208 F.3d 633, 638 (7th Cir. 2000) (excluding evidence because the proffered web postings were not sufficiently linked to the purported poster); *Tienda v. State*, 358 S.W.3d 633, 639 (Tex. Crim. App. 2012) ("Printouts of emails, internet chat room dialogues, and cellular phone text messages have all been admitted into evidence when found to be sufficiently linked to the purported author so as to justify submission to the jury for its ultimate determination of authenticity."); Hon. Paul W. Grimm, *et al.*, *Authenticating Digital Evidence*, 69 Baylor L. Rev. 1, 22 (2017) ("Simply to show that a posting appears on a particular user's webpage is insufficient to authenticate the post as one written by the account holder. Third party posts, too, must be authenticated by more than the names of the purported authors reflected on the posts.") (citing *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 555-56 (D. Md. 2007)).

By way of example, in one of the few cases VGT cites involving authentication of printouts of internet comments (as opposed to typical webpages), *United States v. Needham*, 852 F.3d 830 (8th Cir. 2017), the prosecution introduced the following evidence linking the defendant as the author of the internet chatroom messages: defendant's Internet Protocol "IP" address, defendant's computer showing that the chatroom had been accessed over 7,000 times, and defendant's admission that he used the chatroom member username and an email address associated with the username (among

2

other evidence). *Id.* at 834-36, 834 n. 3. Similarly, in *United States v. Barnes*, 803 F.3d 209 (5th Cir. 2015), the prosecution successfully linked a Facebook account and Facebook messages to one of the defendants through testimony from a witness that she had previously seen the defendant use Facebook, that she recognized the defendant's Facebook account, and that the Facebook messages at issue were consistent with the defendant's "manner of communicating." *Id.* at 217. Unlike *Needham* and *Barnes*, where significant evidence was offered to authenticate the internet comments, VGT has proffered no such authentication here.

Courts have consistently held that the rule is the same in the context of actual confusion evidence: authenticating printouts of internet comments requires that the comments be linked to specific authors. *See, e.g.*, *Shell Trademark Mgmt. B.V. v. Warren Unilube, Inc.*, 765 F. Supp. 2d 884, 901 (S.D. Tex. 2011) (stating that "[w]ith respect to the Internet message board comments cited by Shell as evidence of actual confusion" in support of trade dress infringement claim, "the Court agrees with Warren that there are serious issues with authentication, among other things."); *Picture Me Press, LLC v. CPI Images, LLC*, No. 5:08CV32, 2009 WL 2252879, at *2 (N.D. Ohio July 28, 2009) (stating in a trademark infringement action that anonymous web postings offered by the plaintiff as evidence of actual confusion "cannot be authenticated, i.e., the authors of the posts cannot be verified"); *Icon Health & Fitness, Inc. v. Nautilus Grp., Inc.*, No. 1:02CV00109TC, 2004 WL 6031124, at *16 n. 21 (D. Utah Dec. 21, 2004) (holding in a trademark infringement action that statements made on third-party websites "cannot be used to show actual confusion due to their hearsay and authentication problems if used for that purpose").[1] Authentication of the Jokers Wild Forum and Naskila Gaming

---

[1] VGT cites three cases regarding the admissibility of online comments to show actual confusion. *See* Opp. at 3. However, two of those cases, *You Fit, Inc. v. Pleasanton Fitness, LLC*, No. 8:12-CV-1917-T-27EAJ, 2013 WL 521784, at *5 (M.D. Fla. Feb. 11, 2013) and *Univ. of Kansas v. Sinks*, 565 F. Supp. 2d 1216, 1231 (D. Kan. 2008), involve the admissibility of internet comments over hearsay objections, not authentication objections. In the third case, *Rib City Franchising, LLC v. Bowen* No. 2:15-CV-00636, 2015 WL 6695723, at *5 & n. 6 (D. Utah Nov. 3, 2015), the court considered evidence of actual confusion reflected by printouts of internet comments but clarified

Facebook page printouts therefore requires VGT to link the relevant comments to specific authors. VGT has failed to do so. Even worse, VGT has failed to candidly acknowledge the requirement that it do so.

Finally, VGT asserts that testimony and prior comments by CHG employees that they recall seeing a Facebook comment mistaking a CHG game for a VGT game authenticates the printouts. *See* Opp. at 4-5. This is plainly off base. First, VGT has offered no evidence establishing that the Facebook comment that the CHG employees saw was the same comment it seeks to introduce into evidence. Second, even assuming that VGT's asserted standard for authentication applies, the CHG employees have not testified that the printouts are accurate reflections of the comment. Third, the CHG employees' testimony and prior comments do not link the comments to specific authors, as is required to authenticate printouts of internet comments.

VGT has failed to produce testimony from any of the users who purportedly posted on the Jokers Wild Forum or Naskila Gaming Facebook page or any other evidence linking those internet comments to a specific author. Consequently, VGT should be precluded from introducing printouts of those inadmissible internet comments into evidence.

## II.  CONFUSION AMONG NON-CONSUMERS IS IRRELEVANT

VGT is similarly incorrect in asserting that instances of actual confusion among non-consumers is relevant. Specifically, VGT asserts that eight instances of alleged actual confusion demonstrating confusion among VGT employees, CHG employees, or casino employees who lack purchasing power are relevant to the Court's actual confusion analysis. Opp. at 5-7.

VGT's assertion, however, is in direct contrast to Tenth Circuit precedent, which provides that "[t]o be relevant . . . such evidence should demonstrate actual confusion among *consumers in the*

---

that it was merely "assum[ing], for purposes of this motion only" (a preliminary injunction) that such evidence was admissible. *Id.* at n. 6.

*marketplace.*" *Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 557 (10th Cir. 1998) (emphasis added).[2]

Indeed, courts in the Tenth Circuit have consistently found that instances of actual confusion are relevant only to the extent they involve confusion among consumers. *See, e.g.*, *Olin Mathieson Chem. Corp. v. W. States Cutlery & Mfg. Co.*, 227 F.2d 728, 731 (10th Cir. 1955) (finding instances of actual confusion among store clerks insufficient to establish actual confusion because these instances did not establish "confusion in the minds of the buying public"); *Online Tools for Parents, LLC v. Vilsack*, 65 F. Supp. 3d 1130, 1135 n. 4 (D. Colo. 2014) (finding that evidence of confusion among individuals associated with the plaintiff was *de minimis* "as there is no evidence that either individual was a 'consumer' of OTFP's products or encountered the marks in their ordinary commercial context"); *Medi-Flex, Inc. v. Nice-Pak Prod., Inc.*, 422 F. Supp. 2d 1242, 1252 (D. Kan. 2006) (finding that a survey demonstrating confusion among nurses who were uninvolved in the hospital's purchasing of the products at issue "sheds no light on whether the actual purchasers are confused regarding the source of the goods").

In an attempt to obscure the clear case law on the issue, VGT cites a number of non-precedential cases. *See* Opp. at 6-7. Most of these cases, however, merely stand for the proposition that evidence of actual confusion among distributors and wholesale buyers is relevant to the issue of actual confusion – a proposition not in dispute here or relevant to VGT's allegation that CHG games will cause confusion among casino patrons. *See Sara Lee Corp. v. Sycamore Family Bakery Inc.*, No. 2:09CV523DAK, 2009 WL 3617564, at *4 (D. Utah Oct. 27, 2009) ("These incidents include both confusion by those involved regularly in the sale and distribution of food products like bread,

---

[2] VGT attempts to distinguish *Heartsprings* on factual grounds, arguing that the case is inapposite because it did not involve actual confusion among industry professionals. This ignores the fact that the court's holding plainly states that the relevant inquiry is confusion among consumers. *See* 143 F.3d 550, 557 (10th Cir. 1998) ("[T]he plaintiff's proffered evidence does not indicate confusion among *consumers,* only random acquaintances, and therefore is de minimis.") (emphasis in original).

as well as confusion among ordinary consumers."); *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 297 (S.D.N.Y. 2002) (considering evidence of a wholesale buyer's actual confusion because "[h]e is the quintessential sophisticated buyer"); *CSC Brands LP v. Herdez Corp.*, 191 F. Supp. 2d 1145, 1152 (E.D. Cal. 2001) (considering evidence of a distributor's actual confusion because it "is a professional food distributor and a member of the trade…"). These are logical holdings – although distributors and wholesale buyers are not "consumers" in the traditional sense, they are purchasers in the marketplace. The eight instances of alleged actual confusion at issue here, however, do not involve distributors or wholesale buyers, but rather VGT employees, CHG employees, and casino employees whose duties do not involve purchasing casino games. Because these individuals are not buyers in the marketplace (casino patrons and Class II EGM players), evidence of these individuals' alleged confusion should be excluded as irrelevant.

## III.   VGT'S EVIDENCE OF ACTUAL CONFUSION IS *DE MINIMIS*

VGT asserts that it need not offer more than isolated instances of actual confusion and that, as a result, its alleged instances should not be excluded as *de minimis*. According to VGT, this is because isolated instances are sufficient to establish actual confusion where (1) the products at issue are physically similar or are used for similar purposes, or (2) where the defendant has not put forth evidence establishing that there is no significant actual confusion. *See* Opp. at 8 (citing *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1076 (10th Cir. 2009)).

*Beltronics*, however, involved the grant of a preliminary injunction, where the Plaintiff need only establish a *likelihood* of success on the merits, 562 F.3d at 1070, not summary judgment. CHG is unaware of any other Tenth Circuit case adopting or applying this standard. In fact, just four years later, in *Water Pik, Inc. v. Med-Sys., Inc.*, the Tenth Circuit found evidence of actual confusion to be *de minimis* even though both sets of products were used for the same purpose of sinus irrigation. 726 F.3d 1136, 1159 (10th Cir. 2013) (stating that the defendant "manufactured the same types of sinus-

irrigation items" as the plaintiff).³ Similarly, in *1-800 Contacts, Inc. v. Lens.com, Inc.*, the Tenth Circuit found evidence of actual confusion to be *de minimis* even though both sets of products were contact lenses. 722 F.3d 1229, 1245 (10th Cir. 2013). District courts have similarly held evidence to be *de minimis* even though the products at issue were physically similar or were used for similar purposes. *See, e.g., Online Tools for Parents, LLC*, 65 F. Supp. 3d at 1135-36 (D. Colo. 2014) (finding evidence of actual confusion to be *de minimis* even though the court "assume[d] that both sides use their respective marks for similar purposes"); *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 872 F. Supp. 2d 1154, 1182, 1185-86 (D. Colo. 2012) (finding six instances of actual confusion to be *de minimis* despite finding that the parties' products were "sufficiently related"); *Gennie Shifter, LLC. v. Lokar, Inc.*, No. 07-CV-01121, 2010 WL 126181, at *13 (D. Colo. Jan. 12, 2010) (finding two instances of actual confusion to be *de minimis* despite finding that the degree in similarity between the marks was "high" and that the products were "very similar"). In light of the considerable case law dismissing isolated instances of confusion as *de minimis* even where the two products are physically similar or are used for a similar purpose, the Court should find that VGT's instances of actual confusion are *de minimis*.

Additionally, VGT asserts that its fourteen alleged instances of actual confusion are too numerous to qualify as *de minimis*. However, the relevant focus is on the substance of the instances of actual confusion, not the mere quantity. *See, e.g., Riverbank, Inc. v. River Bank*, 625 F. Supp. 2d 65, 74 (D. Mass. 2009) (finding eighteen instances of actual confusion to be *de minimis* because they lacked substance in that they merely reflected "temporary confusion" with no evidence of any effect on the consumers' actual purchasing decision); *Spectrum Vision Sys., Inc. v. Spectera, Inc.*, 35 F. Supp. 2d 797, 806 (D. Kan. 1998) (finding "numerous instances of misdirected telephone calls" to be *de*

---

³ The trial court in *Water Pik* similarly stated that "it is undisputed that both sets of products perform functions related to the treatment of sinuses." 848 F. Supp. 2d 1262, 1274, 1276 (D. Colo. 2012), *aff'd*, 726 F.3d 1136 (10th Cir. 2013).

7

*minimis* because they lacked substance in that there was no evidence that those phone calls came from prospective purchasers).

As explained *supra*, eight of VGT's fourteen alleged instances of actual confusion are irrelevant in that they involve confusion among non-consumers (VGT employees, CHG employees, and casino individuals uninvolved in the purchase of casino games). Further, of these eight alleged instances, seven self-servingly involve confusion among VGT employees. *See* Mot. at 2-4, Alleged Instances Nos. 1-3, 5-6, 8, 13. Six fail to make any reference to the actual CHG game or trade dress feature causing the alleged confusion. *See id.* at Nos. 1-2, 5-6, 8, 13. One involves confusion of a VGT employee who immediately states that he confused pictures of VGT games with CHG games because he "[l]ooked at them on my phone." *See id.* at No. 3. This is hardly the sort of real-world confusion of items in their "ordinary commercial context" required to establish actual confusion. *See Online Tools for Parents, LLC*, 65 F. Supp. 3d at 1135 n. 4. Another instance involves an email message in which a CHG employee mistakenly refers to a CHG game as "Crazy Cherry" rather than "Amazing Cherry." *See* Mot. at 2-4, Alleged Instance No. 12. Crazy Cherry is a VGT game title which VGT has expressly withdrawn from this lawsuit. Further, there is no evidence that the CHG employee was viewing the games or was confused about their appearance in any way. Rather, the employee made a mere momentary mistake, which is not probative of actual confusion. *See Altira Grp. LLC v. Philip Morris Companies Inc.*, 207 F. Supp. 2d 1193, 1201 (D. Colo. 2002) (finding that a mistyping in an internet search did not constitute actual confusion).

Of the six alleged instances of actual confusion involving purported "consumers," two involve confusion among unidentified internet commenters, as discussed *supra*. *See* Mot. at 2-4, Alleged Instances Nos. 4, 11. Further, one of those two instances involves confusion about the origin of the Dublin Your Luck and Amazing Hot games, neither of which are at issue in this litigation. *See id.* at No. 11. Another alleged instance self-servingly involves confusion of a person

8

who is a former VGT employee and spouse of a current VGT employee, not consumers. *See* Mot. at 2-4, Alleged Instance No. 7. Yet another involves confusion by a man who VGT has been unable to identify. *See id.* at No. 14.

Besides a mere three references to confusion regarding "red screens", none of VGT's alleged instances of actual confusion mention or in any way tie any alleged confusion to any of the features of VGT's trade dress, including the game cabinet, red strobe light, reel resolution sound, award sound, and bingo patterns and associated payouts. *See* Pl.'s Opp. To Defs.' Mot. for Summ. J. at 11 (listing VGT's asserted elements of trade dress).

Only four of the alleged instances mention the name of a game actually at issue in this litigation, yet VGT appears to attempt to extrapolate these isolated instances across all of the other trademarks and trade dress at issue. For example, one of the alleged instances refers to potential confusion of a VGT employee about the origin of CHG's Arctic Cash after the employee viewed pictures of Arctic Cash artwork on his phone. *See* Mot. at 2-4, Alleged Instance No. 3. VGT cannot extrapolate evidence of confusion regarding the origin of Arctic Cash to show confusion between any of the other trademarks at issue. For instance, such evidence does not establish confusion between VGT's Greenback Jack and CHG's Coin Slinger – two games which are not mentioned in any of the alleged instances. Further, VGT cannot extrapolate the alleged instance to show trade dress confusion because the allegedly confused employee viewed only CHG's artwork, not the entire cabinet and all of its alleged trade dress components.

Although VGT has alleged fourteen instances of actual confusion, a closer examination of those instances reveals that they are inadmissible, do not involve consumers, lack detail in that they fail to identify a specific game or trade dress feature, and lack substance. They are therefore *de minimis*.

9

## IV. CONCLUSION

For the foregoing reasons, CHG respectfully requests that the Court enter an Order precluding VGT from introducing or referencing its alleged instances of "actual confusion" between VGT and CHG games.

Dated:  December 14, 2018                    Respectfully submitted,

/s/ Robert C. Gill
Robert C. Gill (admitted *pro hac vice*)
Henry A. Platt (admitted *pro hac vice*)
Thomas S. Schaufelberger (admitted *pro hac vice*)
Matthew J. Antonelli (admitted *pro hac vice*)
Jeremy B. Darling (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
henry.platt@saul.com
tschauf@saul.com
matt.antonelli@saul.com
jeremy.darling@saul.com

Sherry H. Flax (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
500 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 332-8764
(410) 332-8785 (facsimile)
sherry.flax@saul.com

James C. Hodges, OBA #4254
JAMES C. HODGES, P.C.
2622 East 21st Street, Suite 4
Tulsa, Oklahoma 74114
(918) 779-7078
(918) 770-9779 (facsimile)
JHodges@HodgesLC.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of December, 2018, I caused a copy of the foregoing **DEFENDANTS' REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF ALLEGED "ACTUAL CONFUSION"** to be filed via the Court's ECF system, which will provide electronic notification of filing to the following counsel for Plaintiff:

Graydon Dean Luthey, Jr.
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
(918) 595-4821
(918) 595-4990 (facsimile)
dluthey@gablelaw.com
*Counsel for Plaintiff*

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1221
(212) 841-1010 (facsimile)
nroman@cov.com
*Counsel for Plaintiff*

Gary M. Rubman
Peter Swanson
Michael Sawyer
Rebecca B. Dalton
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
(202) 778-5465 (facsimile)
grubman@cov.com
pswanson@cov.com
msawyer@cov.com
rdalton@cov.com
*Counsel for Plaintiff*

　　　　　　　　　　　　　　　*/s/ Robert C. Gill*
　　　　　　　　　　　　　　　Robert C. Gill