UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VIDEO GAMING TECHNOLOGIES, INC.,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>CASTLE HILL STUDIOS LLC, *et al.*<br><br>　　　　　Defendants. | CASE NO. 17-CV-00454-GKF-JFJ<br><br>**PUBLIC – REDACTED VERSION** |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT STACY FRIEDMAN**

I.  **INTRODUCTION**

Belatedly addressing the inadequacy and unreliability of the expert opinions proffered by Stacy Friedman in his Report and Reply Report, VGT has submitted two *additional* expert reports (styled as "declarations") in connection with the pending motions for summary judgment.[1] Mr. Friedman's deposition testimony and reliance on these additional "declarations," in which he simply parrots and adopts the testimony of non-expert witnesses to give them a stamp of approval, are a de-facto concession that he lacks the personal knowledge and experience to render opinions on Class II games.

II.  **ARGUMENT**

    A.  **VGT Concedes Mr. Friedman Cannot Testify Regarding Distinctiveness**

Castle Hill moved to exclude Mr. Friedman from offering opinions regarding the distinctiveness of VGT's alleged trade dress. In its response, VGT conceded the issue:

> VGT confirms that Mr. Friedman will not offer an opinion on distinctiveness at trial. More broadly, although VGT disagrees with CHG's arguments on distinctiveness, to eliminate an issue in dispute, VGT withdraws any statement concerning 'distinctiveness' in Mr. Friedman's reports.

*See* Pl.'s Opp. to Motion to Exclude Expert Friedman ("Opp.") (Doc. 232) at 3-4. Thus, VGT agrees that the motion to exclude Mr. Friedman's opinions and testimony concerning the distinctiveness of VGT's alleged trade dress should be granted.

    B.  **Mr. Friedman is Unqualified to Offer Opinions Regarding VGT's Alleged Trade Dress for Any Other Purpose and His Methodology is Unreliable**

Despite its concession that Mr. Friedman is unqualified to testify regarding distinctiveness, VGT nonetheless argues that Mr. Friedman is qualified to offer trade dress opinions on related

---

[1] Both of Mr. Friedman's untimely declarations are subject to motions to strike filed by Castle Hill. *See* Defendants' Motion to Strike Declarations of Stacy Friedman and Josh Davis Submitted in Support of Plaintiff's Motion for Partial Summary Judgment (Doc. 236) and Defendants' Motion to Strike Declarations Submitted in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment.

1

issues.[2] VGT ignores Mr. Friedman's own deposition testimony wherein he admits that his exposure to Class II games is limited to a few patent cases and a regulatory case, primarily for a single manufacturer, and was unable to recall a single aspect of games involved in those cases. *See* Defendants' Motion to Exclude Plaintiff's Expert Stacy Friedman ("Motion") (Doc. 172) Ex. C, Friedman Dep. at 255:15-257:8. Mr. Friedman readily admits that his visits to Class II casinos were few and far between. *See id.* at 279:2-7; Motion Ex. A, Report Ex. A, at 3. VGT also relies on Mr. Friedman's inadmissible bolstered testimony regarding casino site visits set forth in his untimely *fourth* expert report, filed on November 16, 2018. *See* Ex. A, Decl. of S. Friedman dated Nov. 16, 2018, ¶ 9. Mr. Friedman's reports are based on his review of videos and pictures, and his only in-person experience with VGT and Castle Hill games is limited to a single trip to a tribal casino in October 2017 with counsel for VGT. *See* Motion Ex. C, Friedman Dep. at 48:1-49:3.

The very trade dress issues to which VGT would have Mr. Friedman testify relate to the look, sound, and feel of games that consumers experience in tribal casinos in Oklahoma, with which Mr. Friedman admittedly has virtually no experience. A picture or video cannot provide the context of how consumers experience the games in the marketplace, and Mr. Friedman's attempt to draw from Las Vegas-style Class III casino experience misses the mark, as these are not the consumers or types of games at issue in the case according to VGT's own expert, Dr. Wind. *See* Ex. B, Corrected Report of Dr. Yoram (Jerry)Wind, at 7 (surveying only games in Oklahoma casinos and sampling

---

[2] VGT claims these other trade-dress issues include alternative available trade dress features which make up the alleged VGT trade dress -- cabinet, candles or strobes, sounds, and free spin features, and opinions about how the look and feel of Castle Hill's games is more similar to VGT's games than other third party games. VGT also asserts Mr. Friedman is qualified to offer trade-dress related opinions on difficulties creating a successful casino game, how startups face an uphill battle, trend-following in designing casino gaming, the nature of a casino floor, what draws players to games, and challenges faced by Class II game designers. *See* Opp. at 4 (citing Report ¶¶ 16-48). Mr. Friedman is not qualified to offer any of these opinions relating to Class II games.

only consumers who have played slot or bingo-based games in Oklahoma casinos within the past year or intend to do so within the next year).

As the Court recognized during the recent scheduling conference, it is important to find a way to allow the finder of fact to experience these games. *See* Ex. C, Nov. 13, 2018 Hearing Transcript at 7-8. Thus, VGT's "industry expert" must have more than a single casino visit to offer qualified opinions.

Mr. Friedman candidly admitted in his deposition that he does not know whether other Class II manufacturers use a mechanical bell, or any bell, to signal awards. *See* Motion Ex. C, Friedman Dep. at 300:10-16. He likewise does not know whether other manufacturers use a strobe to indicate a win. *See id.* at 303:15-17. His utter lack of knowledge and failure to even research the VGT trade dress features at issue in this case is astounding.

Any "opinions" that Mr. Friedman has regarding VGT's trade dress, including comparisons to Castle Hill's games or alternatives available in the market, are based on nothing but pure *ipse dixit*. The Court is fully capable of reviewing the same pictures and videos itself and drawing its own conclusions as the fact finder without Mr. Friedman's unreliable statements.

    **C.**    **Mr. Friedman is Not Qualified to Offer an Opinion on the Value of VGT's Class II Development System or Castle Hill's Alleged Avoided Research and Development Costs and His Methodology is Unreliable**

VGT fails to explain away Mr. Friedman's lack of qualifications and improper methodology in speculating about the value of VGT's Class II development system and Castle Hill's alleged avoided research and development costs. As to Mr. Friedman's methodology for valuing VGT's Class II system, Mr. Friedman admitted that there are recognized methods for valuing software, *but he is not familiar with any of them. See id.* at 42:5-11. On this basis alone, he should be excluded.

Lacking any experience or training in software valuation generally, or in Class II system development specifically, Mr. Friedman adopted wholesale the back-of-the envelope approach used

3

by Al Roireau, a former VGT and current Castle Hill engineer, and performed additional basic arithmetic to arrive at his calculations. Mr. Friedman cannot render an opinion on valuation without considering accepted industry valuation methods.

Moreover, Mr. Friedman did not personally review *any* Castle Hill *or* VGT financial information. *See id.* at 223:12-224:4.[3] The non-expert opinion of Mr. Roireau on which Mr. Friedman relies almost exclusively was a five minute guesstimate. *See* Motion Ex. E, Roireau Dep. at 206:7-18. While VGT cites an unpublished case for the proposition that an expert can rely on "senior employees," *see* Opp. at 11 (citing *Core Labs LP v. Spectrum Tracer Servs, L.L.C.*, 2016 WL 4467443, at *3 (W.D. Okla. March 7, 2016)), there is no evidence that the VGT engineers upon whom Mr. Friedman relies reviewed any financial records either. *See* Motion Ex. C, Friedman Dep. at 226:12-227:5. There is "simply too great an analytical gap between the data and the opinion[s] proffered" by Mr. Friedman. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Mr. Friedman fails to explain how his experience alone makes up the gap.

Mr. Friedman's technical background and experience with project timelines and budgets in the general casino gaming industry does not qualify him, without more, to offer valuation opinions on VGT's Class II system and Castle Hill's alleged avoided research and development costs. "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Fed. R. Evid. 702 advisory committee's

---

[3] VGT asserts that Castle Hill's underlying financial data was not produced in discovery. *See* Opp. at 12. This is false. VGT misquotes an email from Castle Hill's counsel, which states that Castle Hill's expert's schedule 11A did not exist during discovery and therefore was not produced. In regard to Castle Hill's underlying financial documents, the email states that those documents "were produced in native format in that fashion so that we could produce them as quickly as possible . . . Those four files were later included as part of CHG_PROD016 on July 31, 2018." *See* Opp. Ex. 9, R. Gill email to G. Rubman dated Oct. 2, 2018.

note to 2000 amendments. Mr. Friedman's reports and testimony fail to "explain the connection between the experience he is invoking to the conclusion he is reaching," rendering his opinions speculative. *See PolyOne Corp. v. Lu*, 2018 WL 4679577, at *9 (N.D. Ill. Sept. 28, 2018) (finding expert's opinion that defendants' development time was short may not be admissible at trial). Industry experts offering valuation or damages opinions are routinely excluded when they fail to explain how their experience alone reliably supports their financial opinions. *See, e.g., GWTP Investments, L.P. v. SES Americom, Inc.*, 2007 WL 7630459, at *13-14 (N.D. Tex. Aug. 3, 2007) (excluding industry expert because valuation opinions were unreliable); *Southwestern Bell Telephone Co. v. V247 Telecom LLC*, 2016 WL 6804780, at *2 (N.D. Tex. Nov. 17, 2016) (excluding industry expert from offering damages opinion).

In regard to his methodology as to Castle Hill's avoided research and development costs, Mr. Friedman cannot assume under the guise of "expert testimony," with no evidence or testimony of record despite over 40 depositions in this case, that Castle Hill used VGT confidential information. Any VGT confidential information allegedly in the possession of the former VGT and current Castle Hill's employees cannot be imputed to Castle Hill. *See* Castle Hill's Motion (Doc. 160) and Reply in Further Support of Defendants' Motion in Limine to Exclude Evidence of Documents and Materials Allegedly Taken by Former VGT Employees, both of which are incorporated herein. Mr. Friedman does not offer a source code comparison, discussed *infra*, so his opinions that any VGT "know how" was *used* in Castle Hill's development system are baseless. Unless testimony establishes a basis for such expert opinions, experts cannot make conclusory statements that a defendant's technology could not have been created in a given period of time without knowledge of the plaintiff's system. *See Skycam, Inc. v. Bennett*, 2011 WL 2551188, at *4 (N.D. Okla. June 27, 2011) (Frizzell, J.).

5

Mr. Friedman offers unreliable opinions of Castle Hill's avoided research and development costs. He criticizes Castle Hill's alleged use of VGT's vaguely defined "know how" but admittedly failed to even attempt to quantify the avoided research and development costs he intends to opine on at trial. *See* Motion Ex. C, Friedman Dep. at 227:19-228:2. As a result, his unquantified opinions are unreliable and useless to the Court.

### D. Mr. Friedman's Methodology is Unreliable for His Technical Opinions

#### 1. Mr. Friedman's Source Code Opinions Must be Excluded.

VGT concedes that "Mr. Friedman has not offered and does not intend to offer an opinion that CHG copied source code from VGT." *See* Opp. at 14. While VGT argues it is an "unusual step" for Castle Hill to move to exclude Mr. Friedman's source code opinions, Castle Hill's motion to exclude Mr. Friedman on this issue is necessary for two reasons. First, despite VGT's representations, Castle Hill needs to ensure VGT does not use Mr. Friedman to offer source code opinions, which Mr. Friedman explicitly offers in *both* untimely declarations.

Second, Mr. Friedman also purports to summarize inadmissible and irrelevant testimony regarding former VGT employees who later went to work at Castle Hill and allegedly retained or took source code or other trade secret or confidential information. This fact evidence, which Mr. Friedman improperly summarizes without even having reviewed, has nothing to do with VGT's trade secret claims. To the extent the Court admits this fact evidence through proper witnesses, Mr. Friedman has not and cannot connect any of the allegedly retained or misappropriated source code with Castle Hill or any actual trade secrets at issue in the case. If Mr. Friedman will not opine on source code misappropriation, his "opinions" are irrelevant and should be excluded.

#### 2. Mr. Friedman's Opinions on Whether VGT's ▮▮▮▮▮ Algorithm is Generally Known Should be Excluded.

Mr. Friedman failed to do *any* research to determine whether VGT's ▮▮▮▮▮ algorithm is generally known. While VGT makes much of Mr. Friedman's review of a low-level

6

Castle Hill employee's testimony, that testimony was merely speculative. VGT spends the rest of its argument focusing on both Mr. Friedman's review of VGT's efforts to maintain the secrecy of its trade secrets, which is a separate element of the trade secret claims,[4] and Castle Hill's evidence that the algorithm *is* generally known, even though Castle Hill does not have the burden on this issue. Mr. Friedman fails to come forward with any evidence whatsoever to support his speculative opinions that VGT's ▮▮▮▮▮▮▮▮ algorithm is not generally known. Mr. Friedman admits he performed no research on this issue. *See* Motion Ex. C, Friedman Dep. at 134:20-135:7.

Simply put, Mr. Friedman cannot offer opinions without, at a minimum, doing research as a foundation on which to base those opinions. Contrary to VGT's assertions, courts *do* require experts to do their homework before testifying that an alleged trade secret is not generally known. *See PolyOne Corp.*, 2018 WL 4679577, at *9 (holding expert "will not be able to testify to whether the use of [redacted technology] is common in the industry without having done any type of investigation into what is known in the industry."). VGT attempts to rely on Mr. Friedman's "two decades of experience in the casino gaming industry," but it ignores that Mr. Friedman has never researched the specific issue about which he opines. *See id.*; *see also Bright v. Ohio Nat'l Life Assur. Corp.*, 2013 WL 121479, at *2 (N.D. Okla. Jan. 9, 2013). Mr. Friedman's opinions are entirely speculative, and should be excluded. *See Bright v. Ohio Nat'l Life Assur. Corp.*, 2012 WL 12888316, at *2 (N.D. Okla. Nov. 29, 2012).

### E.   Mr. Friedman's Report Improperly Summarizes Evidence and Testimony

Mr. Friedman cannot simply regurgitate the testimony of numerous fact witnesses and

---

[4]   *See* Okla. Stat. Tit. 78 § 86(4) ("'Trade Secret' means information, including a formula, pattern, compilation, program, device, method, technique or process, that: (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and; (b)   is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.").

documentary evidence cherry-picked for him by VGT's counsel and call it an "opinion." Rule 703 precludes VGT from using Mr. Friedman as a conduit to admit hearsay and other inadmissible information. *See Garay v. Missouri Pacific R. Co.*, 65 F. Supp. 2d 1202, 1207 (D. Kan. 1999) ("Rule 703 merely allows an expert to formulate and explain the basis of his opinion; it does not authorize a party to prove the truth of hearsay declarations by having an expert echo the deposition testimony of individuals who witnessed the underlying events.") (citing *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 729 (6th Cir. 1994)); *Paddack v. Christensen*, 745 F.2d 1254, 1261-62 (9th Cir. 1984) ("Rule 703 merely permits hearsay, or other inadmissible evidence, upon which an expert properly relies, to be admitted to explain the basis of the expert's opinion . . . It does not allow the admission of the reports to establish the truth of what they assert."); *Wantanabe Realty Corp. v. City of New York*, 2004 WL 188088, at *2 (S.D.N.Y. Feb. 2, 2004) ("an expert may not act as a 'mere conduit' for the hearsay of another."). The Court should preclude Mr. Friedman from summarizing or characterizing documents and testimony and admitting such evidence at trial through his report or testimony.

### F. Mr. Friedman's Report Includes Improper Legal Conclusions and Standards

Similarly, Mr. Friedman should be precluded from offering legal conclusions or legal standards. In *Skycam, Inc.*, this Court explained that "in trade secret cases, courts have permitted experts to testify about what processes and materials were 'unique;' what information a party possessed; and the custom and usage of the industry – but *not* that the information was a 'trade secret.'" *Skycam, Inc.*, 2011 WL 2551188 at *5 (emphasis in original) (citation omitted). Other courts have likewise prohibited experts from opining that a trade secret was "misappropriated." *See Joe N. Pratt Ins. v. Doane*, 2009 WL 5220646, at *5 (S.D. Tex. Dec. 30, 2009); *Bausch & Lomb, Inc. v. Alcon Labs, Inc.*, 79 F. Supp. 2d 252, 259 (W.D.N.Y. 2000). Mr. Friedman's reports are riddled with legal conclusions regarding what constitutes "trade secrets" and "confidential information," and opinions that such "trade secrets" and "confidential information" were "misappropriated" by Castle Hill. *See,*

8

*e.g.*, Motion Ex. A, Friedman Report ¶¶ 56-60, 111-126. Mr. Friedman's legal conclusions contained in his reports and testimony should be excluded.[5]

## III. CONCLUSION

Defendants, Castle Hill Studios LLC, Castle Hill Holdings LLC, and Ironworks Development LLC respectfully request that their motion be granted.

Dated: December 14, 2018                    Respectfully submitted,

/s/ Robert C. Gill
Robert C. Gill (admitted *pro hac vice*)
Henry A. Platt (admitted *pro hac vice*)
Thomas S. Schaufelberger (admitted *pro hac vice*)
Sherry H. Flax (admitted *pro hac vice*)
Matthew J. Antonelli (admitted *pro hac vice*)
Jeremy B. Darling (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
henry.platt@saul.com
tschauf@saul.com
sherry.flax@saul.com
matt.antonelli@saul.com
jeremy.darling@saul.com

James C. Hodges, OBA #4254
JAMES C. HODGES, P.C.
2622 East 21st Street, Suite 4
Tulsa, Oklahoma 74114
(918) 779-7078
(918) 770-9779 (facsimile)
JHodges@HodgesLC.com

*Counsel for Defendants*

---

[5] VGT argues that any ruling as to Mr. Friedman should "apply equally to Mr. [Robert] Zeidman," Castle Hill's expert. *See* Opp. at 19. VGT has not filed a motion seeking this relief and is thus precluded from now doing so.

9

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of December, 2018, I caused a copy of the foregoing **DEFENDANTS' REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT STACY FRIEDMAN – PUBLIC REDACTED VERSION** to be filed using the Court's ECF system, which will provide notice to the following counsel for Plaintiff:

Graydon Dean Luthey, Jr.
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
(918) 595-4821
(918) 595-4990 (facsimile)
dluthey@gablelaw.com
*Counsel for Plaintiff*

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1221
(212) 841-1010 (facsimile)
nroman@cov.com
*Counsel for Plaintiff*

Gary M. Rubman
Peter Swanson
Michael Sawyer
Rebecca B. Dalton
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
(202) 778-5465 (facsimile)
grubman@cov.com
pswanson@cov.com
msawyer@cov.com
rdalton@cov.com
*Counsel for Plaintiff*

        */s/ Robert C. Gill*
        Robert C. Gill