**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1) VIDEO GAMING TECHNOLOGIES, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-cv-00454-GKF-jfj |
| | ) | |
| 1) CASTLE HILL STUDIOS LLC | ) | **REDACTED** |
| (d/b/a CASTLE HILL GAMING); | ) | |
| 2) CASTLE HILL HOLDING LLC | ) | |
| (d/b/a CASTLE HILL GAMING); and | ) | |
| 3) IRONWORKS DEVELOPMENT, LLC | ) | |
| (d/b/a CASTLE HILL GAMING) | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF VIDEO GAMING TECHNOLOGY, INC.'S OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE DECLARATIONS OF STACY FRIEDMAN
AND JOSH DAVIS SUBMITTED IN SUPPORT OF PLAINTIFF'S MOTION FOR
<ins>PARTIAL SUMMARY JUDGMENT</ins>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD ......................................................................................................... 5

ARGUMENT ...................................................................................................................... 6

I.      THE FRIEDMAN DECLARATION SHOULD NOT BE STRICKEN. ........................... 6

      A.    The Friedman Declaration Contains No New Opinions. ......................................... 6

      B.    The Friedman Declaration Is Not A Supplemental Expert Report. ....................... 11

      C.    CHG Has Not Been Prejudiced By The Friedman Declaration........................... 13

II.     THERE IS NO BASIS TO STRIKE THE DAVIS DECLARATION. ........................... 14

      A.    The Davis Declaration Contains No Improper Expert Testimony........................ 14

      B.    The Davis Declaration Is Made Based on Personal Knowledge .......................... 16

      C.    All Information in the Davis Declaration Was Timely Disclosed During Discovery. ......................................................................................................... 18

      D.    CHG's Prejudice and Bad Faith Arguments Are Meritless. ................................ 21

CONCLUSION.................................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Argo v. Blue Cross & Blue Shield of Kansas, Inc.*,
    452 F.3d 1193 (10th Cir. 2006) ....................................................................17

*Bryant v. Farmers Ins. Exchange*,
    432 F.3d 1114 (10th Cir. 2005) ....................................................................15

*Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace*,
    LLC, 80 F. Supp. 3d 1180, 1217 (E.D. Wash. 2015) ...................................9, 11, 12

*Cook v. Rockwell Int'l Corp.*,
    580 F. Supp. 2d 1071 (D. Colo. 2006)..........................................................5

*Donlin v. Philips Lighting N. Am. Corp.*,
    581 F.3d 73 (3d Cir. 2009)...........................................................................5

*Emcore Corp. v. Optium Corp.*,
    No. CIV.A. 6-1202, 2008 WL 3271553 (W.D. Pa. Aug. 5, 2008) .........................11

*Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*,
    493 F.3d 160 (D.C. Cir. 2007) .....................................................................5

*Freeman v. Glanz*,
    No. 16-CV-534-JHP-PJC, 2018 WL 4134669 (N.D. Okla. Aug. 29, 2018) ....................16, 17

*Gustafson v. Am. Family Mut. Ins. Co.*,
    No. 11-CV-01303-PAB-MEH, 2012 WL 5904048 (D. Colo. Nov. 26, 2012)...............5, 9, 13

*Hanuman, LLC v. Summit Hotel Op, LP*,
    No. 2:13-CV-02234-HGD, 2017 WL 9538895 (N.D. Ala. Mar. 31, 2017) ..........................19

*Lexington Ins. Co. v. Newbern Fabricating, Inc.*,
    No. 14-CV-0610-CVE-TLW, 2017 WL 999461 (N.D. Okla. Mar. 14, 2017) ........................5

*MGPC, Inc. v. Duncan*,
    581 F. Supp. 1047 (D. Wyo. 1984), *rev'd on other grounds sub nom. MGPC,
    Inc. v. Dep't of Energy*, 763 F.2d 422 (Temp. Emer. Ct. App. 1985) ...................6, 7

*Oklahoma v. Tyson Foods, Inc.*,
    No. 05-CV-329-GKF-PJC, 2009 WL 2252129 (N.D. Okla. July 24, 2009) ..........................12

*Peak ex rel. Peak v. Cent. Tank Coatings, Inc.*,
    606 F. App'x 891 (10th Cir. 2015) .................................................................7, 12

ii

*Perma Research & Development Co. v. Singer Co.*,
    410 F.2d 572 (2d Cir. 1969)................................................................................6

*President v. Illinois Bell Tel. Co.*,
    865 F. Supp. 1279 (N.D. Ill. 1994) ...............................................................19

*Rodgers v. Beechcraft Corp.*,
    No. 15-CV-0129-CVE-PJC, 2017 WL 465474 (N.D. Okla. Feb. 3, 2017)............................7

*S.E.C. v. Nacchio*,
    No. 05–cv–00480–MSK–CBS, 2008 WL4587240 (D. Colo. Oct. 15, 2008) ........................11

*Sitrick v. Dreamworks, LLC*,
    No. CV 03-4265-SVW, 2006 WL 6116641 (C.D. Cal. July 20, 2006), *aff'd*,
    516 F.3d 993 (Fed. Cir. 2008)...........................................................................5, 16

*Supernus Pharm., Inc. v. TWi Pharm., Inc.*,
    265 F. Supp. 3d 490, 517 (D.N.J. 2017), *aff'd*, No. 2017-2513, 2018 WL
    4232089 (Fed. Cir. Sept. 6, 2018)....................................................................5, 15

*Thompson v. Doane Pet Care Co.*,
    470 F.3d 1201 (6th Cir. 2006) .........................................................................9, 13

*United States v. Cestnik*,
    36 F.3d 904 (10th Cir. 1994) ...........................................................................17

*United States v. Nugent*,
    No. 5:16-CV-380-JMH, 2017 WL 4249775 (E.D. Ky. Sept. 25, 2017)................................15

*Wells Fargo Bank, N.A. v. LaSalle Bank Nat. Ass'n*,
    No. CIV-08-1125-C, 2011 WL 1303949 (W.D. Okla. Apr. 1, 2011)...............................5, 13

**Rules**

Federal Rule of Civil Procedure 26 ......................................................................5

Federal Rule of Evidence 602..............................................................................5

Federal Rule of Evidence 703..............................................................................13

Federal Rule of Evidence 803(6). ........................................................................15

**Other Authorities**

27 Wright & Miller, Fed. Prac. & Proc. Evid. § 6025 (2d ed. Sept. 2018) .....................13

10B Wright & Miller, Fed. Prac. & Proc. Civ. § 2738 (4th ed.).................................6

# INTRODUCTION

Defendants ("CHG") ask the Court to exclude two declarations supporting Plaintiff Video Gaming Technologies, Inc.'s ("VGT's") motion for summary judgment that CHG misappropriated a VGT trade secret (the ▮▮▮▮▮ algorithm). Defs.' Mot. to Strike Declarations of Stacy Friedman and Josh Davis (Dkt. 236) (hereinafter, "Motion" or "Mot."). One declaration is from VGT's game design expert, Stacy Friedman, who offers opinions that VGT's algorithm is not generally known, is valuable, and is used by CHG. The other declaration is from a long-time VGT engineer, Josh Davis, who describes how the algorithm works and VGT's efforts to keep it secret.[1]  CHG has no evidence to counter these declarations: CHG did not offer a declaration from any of its experts or fact witnesses, and CHG elected not to depose Mr. Davis in his personal capacity. CHG thus resorts to seeking the exclusion of their testimony, but offers no basis on which to grant this request.

As to Mr. Friedman, CHG makes conclusory assertions that his declaration offers new opinions—which CHG never identifies. This is not surprising because Mr. Friedman's two expert reports discuss the opinions set forth in his declaration (*i.e.*, his credentials and opinions on the ▮▮▮▮▮ algorithm) in ***more than 30 pages***, and CHG had the opportunity to depose Mr. Friedman on these opinions. CHG even concedes that the declaration "regurgitates" Mr. Friedman's reports, Mot. at 4, yet CHG inexplicably asks the Court to strike portions that "are entirely duplicative and appear to be taken directly from his prior reports," *id.* at 7. Although

---

[1] The Declaration of Stacy Friedman in Support of Plaintiff's Motion for Partial Summary Judgment ("Friedman Declaration") and the Declaration of Josh Davis in Support of Plaintiff's Motion for Partial Summary Judgment ("Davis Declaration") are filed under seal at docket entry 179 and in redacted versions at docket entries 178-7 and 178-1, respectively.

CHG contends that his declaration also "amplifies" and "bolsters" his reports in certain ways, Mot. at 4–5, CHG's concerns ring hollow.

CHG takes a blunderbuss approach to Mr. Davis's declaration, offering various arguments that misapprehend the rules.  For example, CHG challenges Mr. Davis's statement that an engineering document was not disclosed outside of VGT "[t]o [Mr. Davis's] knowledge," Davis Declaration ¶ 15, which CHG says is expert opinion and is *not* based on personal knowledge (despite the explicit reference to his "knowledge"), Mot. at 14, 16.  CHG also appears to believe that, notwithstanding (a) VGT's identification of Mr. Davis in its initial disclosures and multiple interrogatory responses and (b) CHG's decision not to depose him, VGT was under an obligation to affirmatively produce Mr. Davis's declaration during discovery.  All of these arguments are meritless.  CHG had ample notice of Mr. Davis's testimony, all of which is appropriately based on his personal knowledge from over 14 years as a VGT engineer.

More than eight months have passed since VGT first asked CHG to cease using the ██ ██ algorithm.  Although CHG immediately said it would no longer use the algorithm, it has refused to enter into a resolution that would avoid the need for litigation, instead forcing the parties to engage in costly discovery and motions practice all the while lacking any credible defense.  CHG's motion to strike is the latest step in this strategy.  It should be denied.

## BACKGROUND

During expert discovery, Mr. Friedman offered two expert reports detailing the opinions set out in the Friedman Declaration (as well as others) and the bases for those opinions.  *See* Ex. A; Ex. B.[2]  Although CHG repeatedly (and incorrectly) refers to the declaration's length, *see,*

---

[2] Exhibits A to N are attached to the Motion.  Exhibits O to X are attached submitted herewith.

*e.g.*, Mot. at 1,[3] it actually contains an abbreviated version of the corresponding analysis in his reports, which span almost 120 pages.  Like the declaration, Mr. Friedman's opening report has approximately 38 paragraphs and 21 pages discussing his expert qualifications, Class II game development, VGT's ███████ algorithm, the reasonableness of VGT's security measures, and CHG's use of that algorithm.[4]  Mr. Friedman's reply report contains another 21 paragraphs and 10 pages of analysis responding to the opinions of CHG's expert about the ███████ algorithm. *See* Ex. C ¶¶ 82–102, pp. 31–40.

In those reports, Mr. Friedman thoroughly explained the basis for the opinions set out in his declaration.  He explained that his opinion was "based on reviewing VGT's source code and documents," and "on [his] review of CHG's source code and documents," *inter alia*, and provided specific source code citations for key functionality.  *See, e.g.*, Ex. A ¶¶ 63, 111; Ex. C ¶¶ 98–101.  And he explained that his opinions regarding the development of VGT's ███████ algorithm were based on conversations with Josh Davis.  *See* Ex. A ¶¶ 63–64, 71.

After Mr. Friedman provided both reports, he was deposed by counsel for CHG on September 24, 2018.  During that deposition, counsel asked Mr. Friedman questions about his analysis of VGT's ███████ algorithm, his opinions regarding misappropriation, and his source code analysis.  Ex. O, Friedman Dep. Tr. 79:11–81:15, 96:8–134:19, 160:4–161:8.

Whereas Mr. Friedman's reports address a number of trade secrets and other issues, the Friedman Declaration is limited to the testimony relevant to VGT's motion for partial summary

---

[3] Although CHG repeatedly refers to it as "a 23-page declaration," *e.g.*, Mot. at 1, that includes the cover page and the certificate of service, neither of which contain any substance.

[4] *Compare* Ex. C ¶¶ 3–40, *with* Ex. A, ¶¶ 1–8, pp. 1–3 (expert qualifications); *id.* ¶¶ 11–12, 28–31, pp. 4, 11–13 (Class II game development); *id.* ¶¶ 61–73, pp. 24–29 (development of VGT's ███████ algorithm); *id.* ¶¶ 85–87, pp. 34–35 (VGT's security measures); *id.* ¶¶ 111–121, pp. 45–53 (CHG's use of VGT's ███████ algorithm).

3

judgment, which addresses only the ██████ algorithm and only one of the two ways in which CHG has misappropriated that algorithm.  Like the reports, Mr. Friedman's declaration sets forth his expert qualifications (Ex. C ¶¶ 3–9), explains some of the challenges posed by Class II game development (*id.* ¶¶ 11–18), and offers opinions on VGT's ██████ algorithm (*id.* ¶¶ 19–21, 24–35), the reasonableness of VGT's security measures (*id.* ¶¶ 22–23), and CHG's use of that algorithm (*id.* ¶¶ 36–40).  Although most portions are verbatim the same as the reports, some portions repackage the testimony to sharpen and focus the issues for the Court, which is entirely proper.  Mr. Friedman also refers to some of Mr. Zeidman's deposition testimony, which was not available at the time of Mr. Friedman's reports.  As explained below, however, there are no new opinions or bases in the Friedman Declaration.

As to Mr. Davis, VGT repeatedly disclosed that he had knowledge relevant to the litigation, but CHG declined to depose him.  On October 6, 2017, VGT served its initial disclosures, which identified Mr. Davis as having discoverable information related to the "[d]esign and development of VGT products, including software and game play."  Ex. P, VGT's Rule 26(a)(1) Initial Disclosures, at 2.  On November 22, 2017, VGT also identified Mr. Davis's role in developing its Class II system in its initial response to CHG's Interrogatory No. 6, which sought the "background and history of each trade secret," Ex. Q, VGT's Resp. to First Set of Interrogs. at 34–35, and in response to CHG's Interrogatory No. 8, which sought the identity of each person who provided information in responding to CHG's first set of interrogatories, *see id.* at 40–41.  But CHG chose not to notice Mr. Davis for deposition.

Nonetheless, CHG still had the opportunity to depose Mr. Davis as a corporate representative on certain technical issues.  During that deposition, CHG questioned him at length about VGT's ██████ algorithm.  *See, e.g.*, Ex. J at 74:10–86:14.  The ██████ algorithm

4

was also addressed at length in VGT's interrogatory responses and numerous correspondence between counsel. *See, e.g.*, Dkt. No. 74, Exs. A, C, G, K, L, M, N, O, Q.

## LEGAL STANDARD

A party using an expert witness must disclose a report containing, *inter alia*, "a complete statement of all opinions the witness will express and the basis for reasons for them." Fed. R. Civ. P. 26(a)(2)(B). "The purpose of Rule 26(a)(2)'s expert disclosure requirements is to eliminate surprise and provide the opposing party with enough information regarding the expert's opinions and methodology to prepare efficiently for deposition, any pretrial motions and trial." *Lexington Ins. Co. v. Newbern Fabricating, Inc.*, No. 14-CV-0610-CVE-TLW, 2017 WL 999461, at *3 (N.D. Okla. Mar. 14, 2017) (quoting *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1122 (D. Colo. 2006)). But experts are not confined to reading their reports verbatim when testifying at trial. *See Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167 (D.C. Cir. 2007); *Gustafson v. Am. Family Mut. Ins. Co.*, No. 11-CV-01303-PAB-MEH, 2012 WL 5904048, at *7 (D. Colo. Nov. 26, 2012); *Wells Fargo Bank, N.A. v. LaSalle Bank Nat. Ass'n*, No. CIV-08-1125-C, 2011 WL 1303949, at *9 (W.D. Okla. Apr. 1, 2011).

Federal Rule of Evidence 602 permits witnesses to testify about matters within the scope of their personal knowledge. This remains true even when a witness's personal knowledge involves technical or specialized subject matter. *See, e.g.*, *Supernus Pharm., Inc. v. TWi Pharm., Inc.*, 265 F. Supp. 3d 490, 517 (D.N.J. 2017) (permitting a scientist not disclosed as an expert to testify "to matters which, while technical and specialized, are squarely within his particularized firsthand knowledge and experience as a pharmaceutical scientist employed by" plaintiff) (citing *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3d Cir. 2009)), *aff'd*, No. 2017-2513, 2018 WL 4232089 (Fed. Cir. Sept. 6, 2018); *Sitrick v. Dreamworks, LLC*, No. CV 03-4265-SVW (AJWx), 2006 WL 6116641, at *22 (C.D. Cal. July 20, 2006) ("[The inventor's] testimony

regarding [technology], which he invented, can properly be considered factual testimony and is admissible on that basis without [his] being a designated expert: [the inventor] obviously has sufficient first-hand, personal knowledge to state facts regarding [the technology].”), *aff'd*, 516 F.3d 993 (Fed. Cir. 2008).

## ARGUMENT

Although CHG's Motion asks the Court to exclude the Friedman and Davis Declarations in their entirety, the Motion addresses only a small portion of each declaration.  None of these arguments has merit.

## I.    THE FRIEDMAN DECLARATION SHOULD NOT BE STRICKEN.

### A.    The Friedman Declaration Contains No New Opinions.

CHG seeks to "strike the entire [Friedman] Declaration" because "all opinions are either duplicative of the existing report or are new."  Mot. at 8.  But CHG's Motion fails to identify any allegedly new opinion in the Friedman Declaration.  Instead, CHG vaguely asserts that some portions of the declaration are improper and argues that even the "proper" portions should be stricken on the ground that they "are entirely duplicative and appear to be taken directly from his prior reports."  *Id.* at 7.

CHG's unwillingness (or inability) to identify the challenged testimony is fatal to the motion because it is "required to do more than swing its bludgeon wildly."  *Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572, 579 (2d Cir. 1969) (a "motion to strike must be precise").  As the moving party, CHG has the burden to point to the specific evidence it contends is inadmissible—VGT and the Court should not have to guess.  *See MGPC, Inc. v. Duncan*, 581 F. Supp. 1047, 1059 (D. Wyo. 1984), *rev'd on other grounds sub nom. MGPC, Inc. v. Dep't of Energy*, 763 F.2d 422 (Temp. Emer. Ct. App. 1985); 10B Wright & Miller, Fed. Prac. & Proc. Civ. § 2738 (4th ed.) ("a motion to strike should specify the objectionable portions of the

affidavit and the grounds for each objection" because a "motion asserting only a general challenge to an affidavit will be ineffective"). CHG cannot shirk this duty by taking the position that it is moving to strike even "proper" testimony,[5] Mot. at 7, and it would be improper for CHG to point to specific testimony for the first time on reply. *See MGPC*, 581 F. Supp. at 1059 ("a Motion to Strike, in order to be effective, must set forth the objectionable portions of the affidavit and the grounds for the objection").

CHG's failure to identify any allegedly new opinions is not surprising. The Friedman Declaration does not contain any new opinions but rather presents a *subset* of the opinions in his reports—namely, those relating to CHG's misappropriation of the VGT ███████ algorithm. Even CHG admits that the declaration "regurgitates" opinions in his original report, and, in a lengthy string cite, CHG identifies corresponding portions of the report for each issue addressed in his declaration. Mot. at 4.

Like his expert reports, Mr. Friedman's Declaration provides opinions that the development of Class II games is difficult (*compare* Ex. A ¶¶ 28–31, 61–62, 117–118, *with* Ex. C ¶¶ 11–18), that VGT's ██████ algorithm is valuable because it is not generally known (*compare* Ex. A ¶¶ 63–73 and Ex. B ¶¶ 82–96, *with* Ex. C ¶¶ 19–21, 24–35), that the algorithm was subject to reasonable security measures (*compare* Ex. A ¶¶ 85–87, *with* Ex. C ¶¶ 22–23),

---

[5] In the case CHG cites in support of this request, a court in this District found an expert declaration that restated opinions from the expert's report to be irrelevant "in ruling on defendants' <u>Daubert</u> motion" because the court could review the report itself. *Rodgers v. Beechcraft Corp.*, No. 15-CV-0129-CVE-PJC, 2017 WL 465474, at *5 (N.D. Okla. Feb. 3, 2017). That is different from a summary judgment motion, which may not be based on the movant's own expert reports. *Peak ex rel. Peak v. Cent. Tank Coatings, Inc.*, 606 F. App'x 891, 895 (10th Cir. 2015) ("unsworn expert reports are not competent evidence on summary judgment").

and that CHG used the algorithm (*compare* Ex. A ¶¶ 111–121 and Ex. B ¶¶ 97–102, *with* Ex. C ¶¶ 36–40).

Unable to identify any new opinions, CHG claims that the Friedman Declaration "amplifies" and "bolsters" his opinions. Mot. at 4. But CHG's specific criticisms amount to nothing more than objections to the way Mr. Friedman has phrased his declaration or identified support for his opinions. None of these objections has merit.

*First*, CHG claims that Mr. Friedman has *admitted* his declaration contains new opinions because it relies on the Davis Declaration, which was executed after Mr. Friedman's reports. Mot. at 4. Not so. As an initial matter, his citation to the Davis Declaration is not an opinion; it is *support* for his opinions. And his reliance on Mr. Davis was disclosed in Mr. Friedman's opening report, which repeatedly explained that his understanding of VGT's ███ algorithm and VGT's security measures were based on "discussing the issue with Josh Davis." Ex. A ¶ 63; *see also id.* ¶¶ 56, 64, 71, 86. At Mr. Friedman's deposition, CHG's counsel even acknowledged Mr. Friedman's reliance on conversations with Mr. Davis about VGT's ███ ███ algorithm, but then *chose to ask no questions about those conversations*. Ex. O at 187:11–19. Having disclosed that his opinions were based on facts from Mr. Davis, it is entirely permissible for Mr. Friedman to now rely on Mr. Davis's testimony about those facts as opposed to their pre-report conversations.[6]

---

[6] CHG also quibbles with Mr. Friedman's reliance on the Declaration of Richard Williamson in Support of Plaintiff's Motion for Partial Summary Judgment ("Williamson Declaration"). Mot. at 4–5. But the one-page Williamson Declaration is offered merely to authenticate ███████████████████████████████. Because Mr. Friedman's opening report cited those same ███████████, Ex. A ¶ 86, this is not a new opinion or a new basis for Mr. Friedman's opinions.

*Second*, CHG protests the presence in the declaration of a "step-by-step analysis of the functionality of the algorithm." Mot. at 5. But Mr. Friedman's opening report also contained a step-by-step analysis of the functionality of VGT's ▇▇▇▇ algorithm. *E.g.*, Ex. A ¶¶ 70, 116. The fact that Mr. Friedman, in an effort to assist the Court, has slightly reformatted that opinion to contain, for example, bullet points, is not grounds for striking his declaration.[7] CHG fails to identify even a single "step" of the analysis in the Friedman Declaration that was not contained in his expert reports.[8] Tellingly, CHG does not dispute, or seek more time to dispute, any portion of Mr. Friedman's supposedly new step-by-step analysis. *Compare* Dkt. No. 179, Plaintiff VGT's Mot. for & Br. in Support of Partial Summ. J., pp. 2–3, 8–9, ¶¶ 1, 36–43, *with* Dkt. No. 240, Defs.' Br. in Opp. to Pl.'s Mot. for Partial Summ. J., pp. 2, 8–9, ¶¶ 1, 36–43.

*Third*, CHG incorrectly claims that Mr. Friedman's opinions regarding CHG's use of the algorithm "have been substantially updated" to include "a computer source code analysis" absent

---

[7] *See Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace*, LLC, 80 F. Supp. 3d 1180, 1217 (E.D. Wash. 2015) ("even when the declaration varied the wording of the opinion, there can be no doubt that Defendants were on notice of the experts' opinions and the basis for each"); *Gustafson*, 2012 WL 5904048, at *7 ("Generally, expert witnesses are not limited to reading their reports from the stand; rather, the expert is expected to 'supplement, elaborate upon, explain and subject himself to cross-examination upon his report.'" (quoting *Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006)).

[8] Nor could they, as every single step was disclosed in Mr. Friedman's reports. ▇▇▇▇

from his expert reports.[9]  Mot. at 5.  To the contrary, Mr. Friedman's expert reports explained that his "understanding of VGT's development of its ▆▆▆▆ algorithms is based on reviewing VGT's *source code*" (among other things), Ex. A ¶ 63 (emphasis added), and his opinion on CHG's misappropriation of the algorithm was "[b]ased on my review of CHG's *source code* and documents," *id.* ¶ 111 (emphasis added), and the reports cited to VGT's and CHG's source code in describing his analysis, *id.* nn.10–11; Ex. C ¶ 100 n.15–17.

In making this argument, CHG falsely states that "Mr. Friedman specifically admitted that he did *not* perform a source code comparison." Mot at 5.  In addition to the disclosure in his expert reports, Mr. Friedman testified in his deposition—where three CHG lawyers were present—about his analysis of VGT's and CHG's source code:



Ex. O at 160:15–20; *see also id.* at 79:11–81:15 (testifying that ▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆).  CHG

did not ask Mr. Friedman any questions about the source code relating to the ▆▆▆▆

algorithm or any of the other trade secret issues.

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆  Instead,

---

[9] CHG's Motion again conflates two distinct issues relating to source code analysis.  Mot. at 5.  As VGT has repeatedly explained, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆  Instead, Mr. Friedman has opined that CHG misappropriated functionality, such as the ▆▆▆ algorithm, present in VGT's source code.

the declaration, like his reports, opines on CHG's use of the ▮▮▮▮▮ algorithm and, in so doing, relies on source code, among other evidence.

*Fourth*, CHG complains that the Friedman Declaration comments on statements made by Mr. Zeidman at his deposition. Mot. at 5 (citing Ex. C ¶¶ 38, 39). But CHG overlooks that those paragraphs repeat analysis from his reports. *See* Ex. A ¶¶ 122–23 (▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮); Ex. B ¶¶ 98–100 (▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮). To the extent there is any additional analysis in Mr. Friedman's declaration, it is responsive to new opinions or concessions offered by Mr. Zeidman at his deposition.[10] Such responsive testimony is appropriate, as a case cited by CHG recognizes. *See S.E.C. v. Nacchio*, No. 05–cv–00480–MSK–CBS, 2008 WL4587240 at *3 n.3 (D. Colo. Oct. 15, 2008) (supplementation "should be based upon additional or corrective information that was not available at the time of the expert's original report"); *see also Cow Palace*, 80 F. Supp. 3d at 1217 (allowing the "few instances in which the material cited in the declarations could not be found in the original expert report" because it "was discussed in the experts' depositions").

**B.    The Friedman Declaration Is Not A Supplemental Expert Report.**

Because, as explained above, the Friedman Declaration does not contain any new opinions, it is not an improper supplemental expert report. *See Emcore Corp. v. Optium Corp.*, No. CIV.A. 6-1202, 2008 WL 3271553, at *3–6 (W.D. Pa. Aug. 5, 2008) (finding that an expert declaration in support of a partial summary judgment motion was not an improper supplemental

---

[10] *E.g.*, Ex. S, Zeidman Dep. Tr. 214:14–217:15 (▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮); *id.* at 217:24–219:11 (▮▮▮▮▮▮▮▮▮▮); *id.* at 244:21–245:22 (▮▮▮▮▮▮). CHG offers no explanation for how else Mr. Friedman could have responded to such new testimony from Mr. Zeidman, who was deposed on September 28 after Mr. Friedman's deposition. Mr. Friedman responded in his declaration just two weeks later on October 12.

expert report because it did not contain new opinions and instead merely elaborated on opinions in the expert's reports).

CHG's Motion rests on an misunderstanding of summary judgment practice. CHG relies almost exclusively on cases where an expert declaration is offered in response to a *Daubert* motion. *See* Mot. at 6–8. But CHG fails to recognize the crucial distinction between an expert declaration offered in response to a *Daubert* motion and an expert declaration offered in support of a summary judgment motion: an expert report is not competent evidence to support a summary judgment motion. *See Peak ex rel. Peak v. Cent. Tank Coatings, Inc.*, 606 F. App'x 891, 895 (10th Cir. 2015) ("unsworn expert reports are not competent evidence on summary judgment"). CHG's failure to appreciate this distinction is evident in its request that "the Court should strike the entire Declaration" because it contains opinions "duplicative of the existing report." Mot. at 8 (citing case involving *Daubert* motion). That is entirely appropriate for an expert declaration offered in support of summary judgment. *See Cow Palace*, 80 F. Supp. 3d at 1217.

The only case cited by CHG relating to summary judgment declarations is inapposite. *See Oklahoma v. Tyson Foods, Inc.*, No. 05-CV-329-GKF-PJC, 2009 WL 2252129 (N.D. Okla. July 24, 2009). There, faced with declarations from ten different experts, many of which were offered in response to *Daubert* challenges, the Court struck two paragraphs of an expert declaration offered in support of a summary judgment motion because they contained "commentary concerning certain figures of the [expert's] report" that were somehow "impermissible." *Id.* at *8. VGT does not understand *Tyson Foods* to stand for the proposition that expert declarations must be "copied verbatim from" expert reports, as CHG suggests. Mot. at 7–8. Instead, as other district courts in the Tenth Circuit have explained, "expert witnesses are

12

not limited to reading their reports from the stand" because "the expert is expected to 'supplement, elaborate upon, explain and subject himself to cross-examination upon his report.'" *Gustafson*, 2012 WL 5904048, at \*7 (quoting *Thompson*, 470 F.3d at 1203); *see also Wells Fargo*, 2011 WL 1303949, at \*9 ("an expert's testimony that expands upon an opinion that expert expressed in a previous report or deposition is admissible").

In a footnote, CHG also argues that unspecified paragraphs of the Friedman Declaration should be stricken because, to the extent Mr. Friedman relies on the Davis Declaration, "Mr. Friedman lacks personal knowledge." Mot. at 8 n.4. But Federal Rule of Evidence 703 "permits opinions that are not based on personal knowledge." 27 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Evid. § 6025 (2d ed. Sept. 2018). Moreover, as the Friedman Declaration states, in addition to relying on the Davis Declaration, Mr. Friedman also based his opinion on his "review of VGT's documentation and source code." Ex. C ¶ 19.

## C.    CHG Has Not Been Prejudiced By The Friedman Declaration.

CHG's claim that it will be prejudiced by the Friedman Declaration, Mot. at 9, fails for the same reason: The declaration contains no new opinions or bases for those opinions (except for a few instances where Mr. Friedman responds to new opinions or concessions offered by Mr. Zeidman at his deposition), so there can be no prejudice to Defendants.

Not surprisingly, CHG's prejudice argument is entirely conclusory. For example, CHG argues that it would need to depose Mr. Friedman again, *id.*, but CHG does not identify a single issue in the Friedman Declaration that merits a second deposition. To the contrary, CHG had the opportunity to depose Mr. Friedman about all of the contents of his declaration, and in fact they questioned him on many of the issues. *See* Ex. O at 11:2–47:17 (qualifications), 52:2–65:9 (Class II game development); 79:11–81:15 (source code analysis), 96:8–134:19 (development of

VGT's ███████ algorithm and CHG's use of same).  The Friedman Declaration provides no basis for a second deposition.

For the same reasons, CHG's arguments about reasonable cure, delay, and bad faith fail. *See* Mot. at 10–11.  Because CHG has failed to identify a single new opinion in the Friedman declaration, there is nothing to cure and no reason to delay trial.  Similarly, CHG's allegations of bad faith and willfulness are baseless and inappropriate, as the Friedman Declaration contains no new opinions.

## II.    THERE IS NO BASIS TO STRIKE THE DAVIS DECLARATION.

Having elected not to depose Mr. Davis in his individual capacity, CHG now seeks to strike his entire declaration on a variety of grounds in a desperate attempt to avoid summary judgment.  But the Davis Declaration is a proper summary judgment declaration from a longtime VGT software engineer explaining the development, operation, and protection of VGT's ███████ algorithm.  There is no basis on which to strike anything in his declaration.

### A.    The Davis Declaration Contains No Improper Expert Testimony.

CHG contends that various portions of the Davis Declaration contain undisclosed expert opinions.  Mot. at 13–15.  That is not so.

*First*, none of the statements CHG cites constitutes expert opinion.  For example, CHG complains about testimony that Mr. Davis is "not aware of any other companies who use the same ███████ algorithm" and that "[t]o [his] knowledge, VGT has not given [certain documents] to casino operators, and VGT would have no reason to do so."[11]  Mot. at 14.  These

---

[11] Nor is Mr. Davis offering an expert opinion in stating that certain VGT documents are kept confidential, identifying design constraints relating to the ███████ algorithm, and citing a gaming regulation.

are facts—not opinions.  Indeed, these particular statements are expressly qualified by reference to Mr. Davis's "knowledge" and "aware[ness]."  CHG offers no explanation why this factual testimony is expert opinion beyond its inapt reference to Mr. Friedman's testimony.[12]  *Id.*  That Mr. Friedman cites the same facts, or offers opinions based on those facts, does not mean Mr. Davis's testimony is somehow expert opinion.

*Second*, Mr. Davis's testimony regarding certain VGT business records (change lists from a source code repository), Mot. at 14–15, is proper.  Mr. Davis relies on his personal knowledge to establish that these documents are business records under Federal Rule of Evidence 803(6), Ex. G ¶ 4, and then he provides a short explanation of what those records reveal, *id.* ¶¶ 8–9.  Because it is well established that "[p]ersonal knowledge can derive from a review of business records," *United States v. Nugent*, No. 5:16-CV-380-JMH, 2017 WL 4249775, at *4 (E.D. Ky. Sept. 25, 2017) (collecting numerous cases), there is nothing improper or even unusual about a business record sponsor identifying the pertinent information in the record.  *See Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114, 1123–24 (10th Cir. 2005) ("insofar as her declaration repeats the reported results of those [business records] as she reviewed them, it cannot be said that she lacked personal knowledge").  Having laid a proper foundation for the admission of these records, Mr. Davis is allowed to explain what those records show.

The fact that his declaration addresses technical issues, such as the ▬▬▬▬ algorithm, does not mean that his testimony is expert opinion.  *Supernus*, 265 F. Supp. 3d at 517 (permitting

---

[12] While CHG also criticizes statements in the Davis Declaration regarding Class II regulatory requirements and whether Class II companies usually keep their ▬▬▬ algorithms confidential as matters of opinion, Opp. at 13–14 (citing Davis Declaration ¶¶ 6, 18), CHG does not dispute those issues.  *Compare* Mot. at 5–6 (¶¶ 15, 23), *with* Opp. at 4, 7 (¶¶ 15, 23).

a scientist not disclosed as an expert to testify "to matters which, while technical and specialized, are squarely within his particularized firsthand knowledge and experience as a pharmaceutical scientist employed by" plaintiff); *Sitrick*, 2006 WL 6116641, at *22 (admitting an inventor's testimony about technical issues as "factual testimony . . . admissible on that basis without [his] being a designated expert" because the inventor "has sufficient first-hand, personal knowledge" regarding the technology). Here, Mr. Davis is a Principal Software Engineer with nearly fifteen years of experience working on VGT's Class II system and is specifically knowledgeable about the ███████ algorithm that is the subject of VGT's summary judgment motion. Ex. G ¶ 2. This enables him to provide testimony about the system, the algorithm, and VGT's practices, to the extent it is deemed opinion rather than fact testimony. Mr. Davis's long career as a VGT engineer also distinguishes the present case from the case CHG cites, *Freeman v. Glanz*, No. 16-CV-534-JHP-PJC, 2018 WL 4134669, at *7 (N.D. Okla. Aug. 29, 2018)), in which Judge Payne excluded a witness from offering a "medical opinion" because the witness did not even claim "to be a medical professional." *Id.* at *7.

### B.     The Davis Declaration Is Made Based on Personal Knowledge

CHG claims, without evidence, that Mr. Davis lacks personal knowledge for statements made in his declaration. Mot. at 15–16. CHG's arguments are unavailing for several reasons.

*First*, CHG claims that Mr. Davis lacks personal knowledge as to the "regular practice" of "VGT engineers" regarding VGT's source code repository. Mot. at 15. But CHG ignores that Mr. Davis was just the tenth employee at VGT's Charlottesville office (the locus of VGT's engineering operations at the time) and has nearly fifteen years of experience developing those systems, Ex. G ¶ 2, thereby enabling him to understand the usual practices of VGT engineers. *See* 5 Weinstein's Federal Evidence § 803.08 (2018) ("The witness need only have enough familiarity with the record-keeping system of the entity in question to explain how the record

16

came into existence in the course of a regularly conducted activity of the entity. The witness need not have personal knowledge of the actual creation of the documents or have personally assembled the records."); *United States v. Cestnik*, 36 F.3d 904, 910 (10th Cir. 1994) (permitting senior employee to testify as to "customary procedure" of a business in entering information into a data repository).

CHG's reliance on *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006), and *Freeman* is misplaced because the declarants in those cases lacked familiarity with the business practices at issue. In *Argo*, an employee who was "not a human resources official . . . was not in a position to acquire" comprehensive knowledge regarding the basis for employee termination decisions. 452 F.3d at 1200. Similarly, in *Freeman*, the plaintiff offered "no evidence to establish that [a jail employee's position] would qualify him to render opinions about [a health service's] medical practices, including its staffing levels and prescription practices." 2018 WL 4134669, at *7. Here, by contrast, Mr. Davis is a software engineer who has worked directly on the development of the software stored in VGT's source code repository, Ex. G ¶¶ 2, 4, putting him in a position to understand how VGT engineers use the repository.

*Second*, CHG contends that certain statements are speculation, such as "To my knowledge, VGT has not given [reference manuals describing the algorithm] to casino operators," and "I am not aware of another Class II company that generates ███████ in the same way as VGT." *Compare* Ex. G ¶¶ 15, 18, *with* Mot. at 15–16. This is meritless. Mr. Davis's knowledge is based on his over 14-years of experience as a VGT software engineer who is familiar with VGT's ██████ algorithm, including the source code and documentation describing the algorithm. Ex. G ¶ 2. This provides more than enough support for the testimony

17

in the declaration.

CHG misapprehends black-letter law in arguing that "statements about things he is 'not aware' of" are inadmissible because they "are necessarily things he 'could not have actually perceived or observed.'" Mot. at 16. CHG conflates testimony *about* an event that the witness did not perceive with testimony *that* a witness did not perceive that event. It is beyond question that the latter testimony—an example of which is Paragraph 18 of the Davis Declaration—is proper.

Finally, it bears mention that CHG's argument is at odds with the conclusory declaration that CHG submitted in opposition to VGT's summary judgment motion. *See* Dkt. 240, Ex. 51, Decl. of Daniel Fulton in Supp. of Def.'s Br. In Opp. to Pl.'s Mot. for Partial Summ. J. There, Mr. Fulton offered previously undisclosed information about the appearance of VGT's games, *id.* ¶¶ 3–4, and opinions about how VGT's games were somehow changed to be ███████████ ███████████████████████████████████████████ *id.* ¶¶ 5–7, without ever explaining the basis for his personal knowledge of how VGT's games changed or ███████ ████████████████████.

**C.    All Information in the Davis Declaration Was Timely Disclosed During Discovery.**

CHG makes the remarkable claim that the Davis Declaration contains information that VGT failed to provide in discovery. Mot. at 16–18. This is simply not true. At the first possible opportunity, VGT identified Mr. Davis as a witness knowledgeable about its software and game development, Ex. P, VGT's Rule 26(a)(1) Initial Disclosures, at 2; the history of VGT's trade secrets, Ex. U, VGT's Response to Interrogatory No. 6, at 157; and the information in VGT's interrogatory responses, Ex. U, VGT's Response to Interrogatory No. 8, at 181.

In addition, before VGT even had discovery from CHG, VGT identified the VGT ███████

██ algorithm as a key trade secret. *See*, *e.g.*, Ex. T, VGT's First Suppl. Resp. to Interrog. No. 4, at 37, 44. And once VGT learned of CHG's misappropriation, VGT supplemented its interrogatory responses with additional information regarding the algorithm. Ex. U, VGT's Third, Fourth, and Fifth Suppl. Resp. to Interrog. No. 4, at 147–154.

Despite these timely disclosures, CHG chose not to depose Mr. Davis in his individual capacity. CHG's suggestion that VGT's counsel was somehow obligated to "solicit[] testimony eliminating the need for a declaration," Mot. at 12, when CHG deposed Mr. Davis as a corporate representative is "completely without merit" because there "is no requirement that a party depose its own witnesses" in order to be able to later offer declarations from those individuals in support of a summary judgment motion. *President v. Illinois Bell Tel. Co.*, 865 F. Supp. 1279, 1283 (N.D. Ill. 1994); *see also Hanuman, LLC v. Summit Hotel Op, LP*, No. 2:13-CV-02234-HGD, 2017 WL 9538895, at *1 (N.D. Ala. Mar. 31, 2017) ("plaintiff was not obligated to depose its own witnesses."). CHG's failure to depose Mr. Davis in his individual capacity is a problem entirely of its own making.[13]

Nor did CHG ever seek to compel an increased "level of detail" in VGT's admittedly lengthy interrogatory responses. *See* Mot. at 18. In light of VGT's extensive disclosures—and CHG's decision not to seek further information in discovery—CHG's contention that VGT somehow withheld information about the ████ algorithm rings hollow.

In contrast, CHG seeks to rely on entirely new evidence—four patent publications—that

---

[13] CHG improperly suggests inconsistencies in VGT's position about when a party must question "its own witnesses." Mot. at 13 & n.6. But there is no inconsistency. Although there is no general obligation to depose one's own witnesses, there are ***entirely different*** obligations—*i.e.*, not to intentionally interfere with contractual relationships and not to obtain evidence in violation of legal rights—that prevent CHG from obtaining confidential VGT information from VGT's former employees outside of formal discovery procedures, like a deposition. *See* Dkt. 163, Pl.'s Mot. & Br. in Supp. to Exclude the Test. of W. Todd Schoettelkotte in Part, at 12.

were never disclosed during discovery even though VGT moved to compel on the precise issue for which CHG now seeks to use those newly produced patent publications.  *See* Dkts. 105, 113, 114.  VGT withdrew its motion to compel as moot after CHG confirmed that it "did not withhold information" regarding its trade secret defenses and that its responses were "complete based on what we have and know at this time."  Dkts. 114.  CHG's tactic of disclosing patents for the first time in November—months after the close of discovery and after its witnesses were unable or unwilling to identify any such patents during depositions in June and August, *see* Ex. V, Suggs Dep. Tr. 237:24–239:22, Ex. W, Roireau 30(b)(6) Dep. Tr. 154:4–18, 157:19–158:6, stands in stark contrast to VGT's prompt disclosures of its misappropriation claim regarding its ███████ algorithm.

The remainder of CHG's criticisms of the Davis Declaration misrepresent the record. *First*, CHG inaccurately claims that specific details in the Davis Declaration—namely, the total number of ████████████████ and the use of a source code repository—were not provided in discovery.  *See* Mot. at 17–18.  But VGT's interrogatory responses plainly disclosed both of these pieces of information.  *See* Ex. T at 37 (████████████████████████ ████████████████████████); Ex. U, VGT's Third Suppl. Resp. to Interrog. No. 4 ("VGT has taken reasonable efforts to keep the algorithm secret, including storing its source code securely, marking any written descriptions of the algorithm as 'confidential and proprietary' (or similar language), *see, e.g.*, VGT1788–1845, and not disclosing the algorithm to anyone who is not obligated to keep it confidential"); Ex. U, VGT's Fourth Suppl. Resp. to Interrog. No. 4 (disclosing that VGT's algorithms were "secured in a 'private source code repository' with steps that 'were reasonable under the circumstances'"). Further, VGT's counsel identified the ████████████████ in a letter to CHG's counsel

following VGT's discovery that CHG was using the ███████ algorithm, and VGT's source code repository was even discussed during depositions of CHG employees (formerly employed by VGT). *See, e.g.*, Ex. V at 84:22–85:5, 87:12–25.

*Second*, CHG also claims (erroneously) that the Davis Declaration "was the first time that VGT *ever* provided specific citations to source code for its algorithm misappropriation claims." Mot. at 17. CHG fails to mention that VGT's interrogatory responses cited specific VGT source code: "These [earlier identified CHG] files use highly similar algorithms to VGT's ███████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████" Ex. U at 148 n.7. Moreover, as discussed above, Mr. Friedman's reports contained specific citations to VGT's source code to explain the operation of its ██████ algorithm. *See, e.g.*, Ex. A ¶ 111; Ex. B ¶ 99.

CHG *never* asked for more specificity regarding these source code citations. The April 9 letter CHG cites in which it requested more detail about VGT's ███████ algorithm, including source code citations, *see* Mot. at 18 (citing Ex. M), predates the source code identifications above. Further, CHG ignores VGT's response on April 11 that provided a chart identifying specific steps of VGT's algorithm that CHG misappropriated. *See* Ex. X, Letter from M. Sawyer to R. Gill (Apr. 11, 2018). As CHG admitted at the time, VGT's "effort" to "specifically identify" the misappropriated aspects of its algorithm was "very helpful." Ex. M. After VGT provided that "very helpful" chart, CHG did not request specific source code citations for that algorithm throughout the remaining three months of fact discovery.

**D.    CHG's Prejudice and Bad Faith Arguments Are Meritless.**

As with the Friedman Declaration, CHG makes a bare assertion of prejudice concerning the Davis Declaration. This is not surprising because the Davis Declaration contains no new information regarding the ██████ algorithm.

CHG's prejudice claim is particularly specious given the extensive time and paper that has been devoted to this issue.  As the Court is aware, the ████████ algorithm was the subject of numerous correspondence and discussions between counsel following VGT's discovery of the misappropriation, Dkt. 102 at 5, and the parties briefed a motion for leave to amend based on this issue.  In addition to documents and interrogatory responses on this topic from both parties, the algorithm also was the subject of fact witness depositions and expert discovery.  In light of this record, it defies credulity for CHG to suggest that it does not understand the issue.  Mot. at 19–20.

CHG's accusation of bad faith is baseless and inappropriate.  VGT acted diligently upon discovering the misappropriation of the ████████ algorithm, provided timely and extensive disclosures on this issue, and, as the Court recognized, even sought to negotiate a resolution in order to avoid litigation.  Dkt. 102 at 13.  This stands in contrast to CHG, which—despite claiming that it no longer wants to use the algorithm—declined VGT's offer to resolve the issue and has vigorously fought (and thereby increased the cost of) VGT's effort to hold CHG to this claim.

## CONCLUSION

For the foregoing reasons, VGT respectfully requests that the Court deny CHG's motion to strike the Friedman and Davis Declarations.

Dated:  December 14, 2018

/s/ Gary M. Rubman
Graydon Dean Luthey, Jr., OBA No. 5568
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
Telephone: (918) 595-4821
Facsimile: (918) 595-4990
dluthey@gablelaw.com

Gary M. Rubman
Peter A. Swanson
Michael S. Sawyer
Rebecca B. Dalton
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C.  20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 778-5465
grubman@cov.com
pswanson@cov.com
msawyer@cov.com
rdalton@cov.com
   (admitted pro hac vice)

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1221
Facsimile: (212) 841-1010
nroman@cov.com
   (admitted pro hac vice)

**Counsel for Video Gaming Technologies, Inc.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 14, 2018, I filed a redacted version of the foregoing via

ECF, which caused service to be effected on the following counsel for Defendants:

Robert C. Gill
Thomas S. Schaufelberger
Matthew J. Antonelli
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
tschauf@saul.com
matt.antonelli@saul.com

Sherry H. Flax
SAUL EWING ARNSTEIN & LEHR, LLP
500 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 332-8764
(410) 332-8785 (facsimile)
sherry.flax@saul.com

James C. Hodges, OBA 4254
JAMES C. HODGES, PC
2622 East 21st Street, Suite 4
Tulsa, OK 74114
Telephone: (918) 779-7078
JHodges@HodgesLC.Com

Duane H. Zobrist
Jonathan S. Jacobs
ZOBRIST LAW GROUP PLLC
1900 Arlington Blvd. Suite B
Charlottesville, VA 22903
Telephone: (434) 658-6400
dzobrist@zoblaw.com
jjacobs@zoblaw.com

*Attorneys for Defendants*

*/s/ Gary Rubman*