UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VIDEO GAMING TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> CASTLE HILL STUDIOS LLC, *et al.* <br><br> Defendants. | CASE NO. 17-CV-00454-GKF-JFJ <br><br> **PUBLIC – REDACTED VERSION** |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF DEFENDANTS'
MOTION IN LIMINE TO EXCLUDE EVIDENCE OF DOCUMENTS
AND MATERIALS ALLEGEDLY TAKEN BY FORMER VGT EMPLOYEES**

Defendants, Castle Hill Studios LLC, Castle Hill Holdings LLC, and Ironworks Development LLC (collectively, "CHG" or "Defendants"), submit this reply to Plaintiff Video Gaming Technologies, Inc.'s ("VGT") opposition ("Opposition") to Defendant's motion *in limine* to exclude certain evidence of documents and materials that were allegedly taken or retained by former VGT employees after the termination of their employment with VGT (the "Alleged Takings"). The Motion sought to preclude VGT from arguing or introducing such evidence on grounds that the Alleged Takings are irrelevant or of minimal probative value because (1) CHG never acquired or had knowledge of the allegedly retained materials, and (2) the allegedly retained materials do not contain trade secrets at issue in this action.

VGT's Opposition fails to offer any evidence indicating that CHG ever possessed any VGT trade secrets or confidential information, as the materials involved in the Alleged Takings were either never acquired by CHG or do not constitute trade secrets. Further, VGT's assertion that one of the materials involved in the Alleged Takings – ▮▮▮▮, *see* Alleged Taking No. 3 – is relevant to its trade dress misappropriation claim ignores the fact that ▮▮▮▮ do not fall within VGT's

self-defined trade dress. Finally, for largely these same reasons, evidence of the Alleged Takings is not relevant to establishing CHG's intent to misappropriate VGT's trade secrets or trade dress.

I. **CHG NEVER ACQUIRED ANY VGT TRADE SECRET OR CONFIDENTIAL INFORMATION**

VGT fails to put forth evidence establishing that CHG ever acquired any VGT trade secrets or confidential materials. As CHG explained in its Motion, an employer does not acquire a trade secret simply because its employee acquires a trade secret. Indeed, "[a]n employer who is unaware of an employees' misappropriation of anothers' trade secret would not be liable" for trade secret misappropriation. *Ciena Commc'ns, Inc. v. Nachazel*, No. 09-CV-02845-MSK-MJW, 2010 WL 3489915, at *4 (D. Colo. Aug. 31, 2010); *see also Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 792-93 (9th Cir. 1976) ("[I]t is generally not appropriate to direct a jury to impute an agent's knowledge of a secret to the principal."). Thus, for evidence of the Alleged Takings to be probative of whether CHG misappropriated VGT trade secrets, there must be evidence establishing that CHG actually acquired the trade secrets allegedly contained therein. *See RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1175 (D. Colo. 2018) (dismissing trade secret misappropriation claim because the claim "lack[ed] any specific factual allegations of disclosure of trade secrets…" to the defendant by former employees and "lack[ed] any specific factual allegations of how such employees used…" the trade secrets). VGT, however, fails to cite any evidence suggesting that CHG acquired the trade secrets that the retained materials allegedly contained.

For example, regarding Aaron Milligan's alleged retaining of artwork he created while working for VGT, *see* Alleged Taking No. 1, VGT offers no evidence disputing Mr. Milligan's testimony that he never shared the artwork with anyone at CHG. Instead, VGT asserts merely that the "the factfinder is free to evaluate" the testimony. *See* Opp. at 10-11.

As to Paul Suggs, Brandon Booker, and Seth Morgan's alleged ███████ ███ *see* Alleged Takings Nos. 2, 4, and 5, respectively, VGT disputes testimony from those

2

employees stating that they ███████████████████████ ███████████████. However, the issue of whether Messrs. Suggs, Booker, and Morgan ███████████████ ███████████████████████████ ███. *See RE/MAX,* 295 F. Supp. 3d at 1175 (dismissing trade secret claim on grounds that it "lack[ed] any specific factual allegations of disclosure of trade secrets" to the defendant employer).

In what appears to be an attempt to link ███████████████████ to CHG, VGT cites two online chat conversations in which ███████████████████████ ███████████████████████████████ ███. Mot. at Ex. I; H. For two reasons, these chats are insufficient to ███████████ ███████████████████ First, neither of these chats – nor any of the substantial number of other online chats among various CHG engineers that have been produced – ███████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███. *See Droeger,* 541 F.2d 790, 793 (9th Cir. 1976) ("[I]t is generally not appropriate to direct a jury to impute an agent's knowledge of a secret to the principal."). VGT has no evidence and does not contend ███████████████████████████████████ was used by CHG.

Regarding Jason Sprinkle's alleged retaining of ███████████████████ *see* Alleged Taking No. 6, VGT argues that because Jason Sprinkle is a CHG officer, his possession of ██ ███████████████████████████. Even if the Court accepts this premise, the evidence indicates that ███████████████████████████. In the same online chat in which Mr. Sprinkle mentions ███████████████████████████████ ███████████████████████." *See* Mot. Ex. K. CHG's ███████████████████

3

███████████████ does not constitute acquisition of a trade secret and is therefore irrelevant.

VGT has failed to offer any evidence suggesting that CHG ever acquired the trade secrets allegedly contained in the materials involved in the above Alleged Takings. Instead, VGT continues to treat this case like a breach of confidentiality agreement action *against its former employees*, none of whom VGT has sued, hoping the Court will nonetheless allow VGT to prove its claims through evidence which VGT cannot connect to CHG. The Court should decline to do so. Evidence of these Alleged Takings is irrelevant to VGT's claim of trade secret misappropriation.

## II. THE ███████████████ DOES NOT INVOLVE A TRADE SECRET

The ███████████ allegedly retained by Jason Sprinkle is not a trade secret. *See* Alleged Taking No. 7. Form contracts constitute trade secrets only if they "contain the requisite novelty and economic value" typically associated with trade secrets. *Reality Homes, Inc. v. Beach Wood Homes, LLC*, No. C07-5261BHS, 2008 WL 442308, at *1 (W.D. Wash. Feb. 13, 2008) (finding the evidence insufficient to establish that the form contracts at issue were "sufficiently novel"). The ████████████████████████████████████████████████████████████████████████████████. *See* Mot. Ex. M. Although the ████████████████████████████████████████████. *See id.* at ¶ 2 ███████████████████████████████████████). This ambiguity negates any economic value associated with knowledge of the payment terms and, regardless, there is no indication these figures are sufficiently novel as to warrant trade secret protection. Further, as VGT's own Executive Vice President of Sales admitted, ████████████████████████████████. *See* Ex. A, Starr Dep. at 72:20-73:20. The ████████████████████████████████████████████████████████████████████████. *See id.* In other words, the

4

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████ *See* Ex. B, Sisson 30(b)(6) Dep. at 51:16-20. VGT therefore has no trade secret or confidential business rights in this ████████████████

### III. THE ███████████████ AND MR. MILLIGAN'S ARTWORK FALL OUTSIDE THE SCOPE OF VGT'S TRADE SECRET ALLEGATIONS

VGT's assertion that artwork retained by Mr. Milligan, *see* Alleged Taking No. 1, and ████ ██████████ by Mr. Sprinkle, *see* Alleged Taking No. 7, are relevant to its claims of trade secret misappropriation is inconsistent with the allegations of its First Amended Complaint. VGT filed its First Amended Complaint just two weeks before the close of discovery and after Mr. Milligan's deposition testimony regarding the retained artwork, CHG's production of ███████ ██████████████████████████████████████████████████████ t. The First Amended Complaint, however, defines VGT's trade secrets in the following manner:

> …VGT owns trade secrets *relating to the development and operation of the VGT 3-Reel Mechanical Games*, including trade secrets relating to the math underlying the games, the specifics of the manner in which the bingo game is played in the games (including the process and timing for the ball drops), and the source code used to operate the games (individually and collectively, the "VGT Trade Secrets").

First Am. Compl. ¶ 41 (Dkt. 103) (emphasis added).

Mr. Milligan allegedly retained certain animations for his portfolio. The ███████████ ████████████████████████████████. Neither of these materials can be said to "relat[e] to the development and operation of" the games at issue in this litigation. As a result, evidence of these Alleged Takings is irrelevant on the additional ground that they fall outside of VGT's trade secret allegations.

5

### IV. THE ███████ ARE NOT RELEVANT TO VGT'S TRADE SECRET, CONFIDENTIAL BUSINESS INFORMATION, OR TRADE DRESS CLAIMS

VGT has admitted that ███████████████████████████████████ *see* Alleged Taking No. 3, are *not* confidential. *See* Opp. at 12. Accordingly, VGT has conceded that ████████ are not relevant to VGT's trade secret or confidential business information claims.

Additionally, the ████████ █████████████████████████████████████████████ ███████████████████████████████████. Though the Opposition appears to imply that ████████████ part of the game cabinet element of VGT's trade dress, VGT has expressly defined that element as follows:

> (1) the GAME CABINET (*i.e.*, the size, shape, color, material, and placement of components in VGT's standard-sized legacy or "LS" cabinets without optional lighting around the sides of the machine, *i.e.*, "jukebox" lighting, and with either 6-inch or 19/20-inch video screens—the latter of which distinguish the two relevant product lines).

*See* Pl.'s Opp. to Defs.' M. for Summ. J. (Dkt. 239) at 11. This definition plainly does not reference ███████████████████████████████████████████████████████████████████ ███.

VGT argues ████████████████████████████████████████ ███ *See* Opp. at 12. This, however, is at odds VGT's allegations that the red strobe light and mechanical bell on top of the cabinet are trade dress elements <u>separate</u> from its game cabinet. *See id.* (listing VGT's asserted elements of trade dress). Further, this appears to be yet another attempt by VGT to shift the definition of its trade dress. VGT's ever-evolving and inconsistent articulation of its trade dress elements has been an ongoing issue in this case. *See* Defs.' M. for Summ. J. (Dkt. 184) at 34-36 (summarizing the evolution of VGT's definition of the game cabinet element of its alleged trade dress). VGT should not be permitted to alter its trade dress definition yet again ████████ ████████

6

Moreover, as the ▉▉▉ are not confidential, Mr. Sisson's alleged retaining of ▉▉▉ ▉▉▉▉▉▉▉▉▉▉ is also not relevant to VGT's trade dress infringement claims. To the extent VGT accuses CHG of copying the ▉▉▉▉▉▉▉▉▉, VGT's own witnesses have conceded ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. *See* Ex. A, Starr Dep. at 169:14-19; Ex. C, North Dep. at 63:2-64:6; Ex. D, Sisson Dep. at 245:11-246:2. The size and proportioning ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, *see* Opp. at 11 – is freely available on any public VGT game. The origin of CHG's knowledge ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ therefore irrelevant on this additional ground.

## V.  THE ALLEGED TAKINGS ARE NOT RELEVANT TO INTENT

For many of the same reasons articulated above, evidence of the Alleged Takings is not relevant to intent, as VGT asserts. *See* Opp. at 12-13. There is no evidence that CHG ever acquired VGT trade secrets, as the materials involved in the Alleged Takings were either never acquired by CHG, do not contain trade secrets, or, in any event, do not involve trade secrets falling within the scope of VGT's trade secret allegations. As to ▉▉▉▉▉▉, *see* Alleged Taking No. 3, because they are admittedly not confidential, they are not relevant to an intent to misappropriate trade secrets and, because they are not an element of VGT's alleged trade dress and are publicly available, they are not relevant to an intent to infringe on VGT's trade dress.

## VI.  CONCLUSION

For the foregoing reasons, CHG respectfully requests that the Court enter an Order precluding VGT from introducing or referencing the foregoing evidence of documents and materials allegedly taken or retained by former VGT employees after the termination of their employment with VGT.

7

Dated: December 14, 2018

Respectfully submitted,

/s/ *Robert C. Gill*
Robert C. Gill (admitted *pro hac vice*)
Henry A. Platt (admitted *pro hac vice*)
Thomas S. Schaufelberger (admitted *pro hac vice*)
Matthew J. Antonelli (admitted *pro hac vice*)
Jeremy B. Darling (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
henry.platt@saul.com
tschauf@saul.com
matt.antonelli@saul.com
jeremy.darling@saul.com

Sherry H. Flax (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
500 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 332-8764
(410) 332-8785 (facsimile)
sherry.flax@saul.com

James C. Hodges, OBA #4254
JAMES C. HODGES, P.C.
2622 East 21st Street, Suite 4
Tulsa, Oklahoma 74114
(918) 779-7078
(918) 770-9779 (facsimile)
JHodges@HodgesLC.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of December, 2018, a copy of the foregoing **DEFENDANTS' REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF DOCUMENTS AND MATERIALS ALLEGEDLY TAKEN BY FORMER VGT EMPLOYEES – PUBLIC REDACTED VERSION** was filed using the Court's ECF system, which will provide electronic notification of filing to the following counsel for Plaintiff:

Graydon Dean Luthey, Jr.
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
(918) 595-4821
(918) 595-4990 (facsimile)
dluthey@gablelaw.com
*Counsel for Plaintiff*

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1221
(212) 841-1010 (facsimile)
nroman@cov.com
*Counsel for Plaintiff*

Gary M. Rubman
Peter Swanson
Michael Sawyer
Rebecca B. Dalton
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
(202) 778-5465 (facsimile)
grubman@cov.com
pswanson@cov.com
msawyer@cov.com
rdalton@cov.com
*Counsel for Plaintiff*

                                              */s/ Robert C. Gill*
                                              Robert C. Gill