# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) VIDEO GAMING TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> 1) CASTLE HILL STUDIOS LLC <br> (d/b/a CASTLE HILL GAMING); <br> 2) CASTLE HILL HOLDING LLC <br> (d/b/a CASTLE HILL GAMING); and <br> 3) IRONWORKS DEVELOPMENT, LLC <br> (d/b/a CASTLE HILL GAMING) <br><br> Defendants. | Case No. 4:17-cv-00454-GKF-jfj <br><br> **REDACTED** |

**PLAINTIFF VIDEO GAMING TECHNOLOGY INC.'S OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE DECLARATIONS SUBMITTED
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

**I.      INTRODUCTION**

Defendants' ("CHG") motion to exclude all four declarations submitted in support of Plaintiff Video Gaming Technologies, Inc.'s ("VGT's") opposition to CHG's motion for summary judgment, Defs.' Mot. to Strike Decls. Submitted in Supp. of Pl.'s Opp. to Defs.' Mot. for Summ. J. (Dkt. 272) ("Motion" or "Mot."), is CHG's latest attempt to artificially limit the record on which the Court considers the parties' dispositive motions.  Like CHG's earlier motion to strike two declarations supporting VGT's motion for summary judgment, Dkt. 236, CHG's latest motion to strike asks the Court to exclude the declarations in their entirety.  The Motion, however, provides no basis for such relief and instead focuses on only a few specific pieces of testimony, none of which is improper.

First, CHG seeks to strike a declaration from a VGT expert witness, Stacy Friedman, discussing certain opinions related to VGT's trade secret and trade dress claims, on the basis that it contains new opinions.[1]  But the only allegedly new opinion that CHG identifies was discussed in both of Mr. Friedman's reports, disclosed in VGT's interrogatory responses, and even acknowledged *by CHG* in a brief it filed before the close of fact discovery.

Second, CHG fails to point to any improper opinion testimony or testimony not based on personal knowledge in the declarations of two longtime VGT engineers, Josh Davis and Chris Shults, discussing their knowledge of VGT trade secrets and know-how.  Both engineers state that they are familiar with the trade secrets discussed in their declarations from their ten-plus years working at VGT, and CHG—having failed to depose either engineer in his individual capacity—offers no evidence to the contrary.

---

[1] The challenged declarations are filed under seal at docket entry 239 and in redacted versions at docket entries 238-152, 238-153, 238-154, and 238-155 (the "Second Davis Declaration," "Shults Declaration," "Second Friedman Declaration," and "North Declaration," respectively).

1

Third, although CHG objects to testimony from a product marketing manager, Ryan North, that less than half of VGT's mechanical reel games have an optional "edge lighting" feature, Mr. North properly offers this testimony based on his personal knowledge, observations, and experience as the person responsible for strategy for all mechanical reel games offered by VGT.[2]

## II.  ARGUMENT

### A.  There Is No Basis To Strike The Second Friedman Declaration.

VGT properly submitted the Second Friedman Declaration in response to CHG's motion for summary judgment. Whereas Mr. Friedman's previous declaration addresses a discrete trade secret issue on which VGT moved for summary judgment, *see* Dkt. 179 and Dkt. 178-7, the Second Friedman Declaration addresses several trade secret issues (and one trade dress issue) in response to CHG's broad request for summary judgment on the entirety of VGT's trade secret and trade dress claims. Nevertheless, the Second Friedman Declaration consists of a *subset* of the issues discussed across Mr. Friedman's two expert reports, and the combined length of his two declarations is one-third the length of those reports (approximately 40 pages compared to approximately 120 pages).[3] *Compare* Ex. A ¶¶ 3–9 (expert qualifications), *with* Ex. J, Friedman

---

[2] Because the arguments in the Motion are similar to the arguments in CHG's First Motion to Strike, Dkt. 236, for the sake of brevity, VGT, like CHG, incorporates its responsive arguments from its opposition to CHG's First Motion to Strike, Dkt. 267, and focuses this response on the points explicitly raised in the second motion.

[3] As explained in VGT's opposition to the First Motion to Strike, VGT was not required to copy the reports verbatim (even though parts of the declaration are the same as the reports). *See Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167–168 (D.C. Cir. 2007) (admitting expert testimony that "was largely an elaboration of [his] written report"); *Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, LLC*, 80 F. Supp. 3d 1180, 1217 (E.D. Wash. 2015) ("even when the declaration varied the wording of the opinion, there can be no doubt that Defendants were on notice of the experts' opinions and the basis for each"); *Gustafson v. Am. Family Mut. Ins. Co.*, No. 11-CV-01303-PAB-MEH, 2012 WL 5904048, at *7 (D. Colo. Nov. 26, 2012) ("Generally, expert witnesses are not limited to reading their reports from the

Opening Rpt. ¶¶ 1–8 (same); *compare* Ex. A ¶¶ 11–20 (███████████████), *with* Ex. J ¶¶ 67–69, 111–112 (same) and Ex. K, Friedman Reply Rpt. ¶ 87 (same); *compare* Ex. A ¶¶ 21–34 (███████████████), *with* Ex. J ¶¶ 74–78, 122–126 (same) and Ex. K ¶¶ 103–119 (same); *compare* Ex. A ¶¶ 35–55 (discussing other Class II know-how), *with* Ex. J ¶¶ 80–84, 89–92, 94, 99–110 (same); *compare* Ex. A ¶ 56 (discussing VGT's and CHG's reel stop sounds), *with* Ex. K ¶ 37 (same).[4]

CHG fails to identify any improper testimony in the Second Friedman Declaration. CHG's Motion focuses on only two aspects of the declaration: (1) Mr. Friedman's citations to the declarations of Mr. Davis and Mr. Shults and (2) Mr. Friedman's assertion that CHG's ███████████████████████████████████████████████. Mot. at 2–3. Both arguments miss the mark.[5]

As for CHG's argument regarding the Second Davis Declaration and the Shults Declaration, Mr. Friedman's citations to these declarations are proper because his expert reports disclose that his opinions *are based on conversations with Mr. Davis and Mr. Shults*, and they describe the information on which he relied. *E.g.*, Ex. J ¶¶ 56, 58–59, 63–64, 71, 77, 80–82, & 86. CHG fails to point to any new information that appears in the Second Friedman

---

stand; rather, the expert is expected to 'supplement, elaborate upon, explain and subject himself to cross-examination upon his report.'" (quoting *Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006)); *Wells Fargo Bank, N.A. v. LaSalle Bank Nat. Ass'n*, No. CIV-08-1125-C, 2011 WL 1303949, at *9 (W.D. Okla. Apr. 1, 2011) ("an expert's testimony that expands upon an opinion that expert expressed in a previous report or deposition is admissible").

[4] Citations to Exhibits A-E are to the exhibits attached to the Motion, whereas citations to Exhibits F–L are to the accompanying Declaration of Peter Swanson.

[5] Although CHG also argues that the Second Friedman Declaration should be stricken "[f]or all of the reasons his prior declaration should be stricken," Mot. at 2, other than his qualifications, the second declaration consists of testimony not present in the first. CHG's challenge to the first declaration has no bearing on testimony that does not appear in that declaration.

Declaration—rather, CHG appears to contend that these citations are *per se* improper. But as explained in VGT's opposition to CHG's First Motion to Strike, it is appropriate at the summary judgment stage for Mr. Friedman to cite to their declarations rather than the prior conversations, just as it would be appropriate for him at trial to refer to their trial testimony. Dkt. 267 at 8.[6]

For the same reason, there is no merit to CHG's assertion that its expert did not have an opportunity to respond to these issues or that it could not "depose Mr. Friedman regarding how those declarations 'provide the factual basis' for his opinions." Mot. at 3. In fact, during Mr. Friedman's deposition, CHG's counsel acknowledged Mr. Friedman's reliance on conversations with Mr. Davis and Mr. Shults, but then *failed to ask any questions about those conversations*. Ex. L at 187:11–19, 225:6–226:8.[7]

With regard to Mr. Friedman's opinion on the ▉▉▉▉▉▉▉▉▉▉▉▉,[8] CHG is flatly incorrect that neither VGT nor Mr. Friedman has previously "alleged that Castle Hill's use of that algorithm is a misappropriation of a VGT trade secret." Mot. at 3. First, VGT disclosed, and provided evidence for, this contention in its interrogatory responses: "▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

---

[6] CHG's reliance on an unpublished Tenth Circuit decision in its reply to the First Motion to Strike, Dkt. 280 at 3 (citing *Rodgers v. Beechcraft Corp.*, --- F. App'x ----, 2018 WL 6615315 (10th Cir. Dec. 14, 2018)), is misplaced. Unlike the present case, *Rodgers* involved the submission of supplemental affidavits in response to a *Daubert* motion, and those affidavits included new arguments that apparently could have been included in the experts' reports. *Rodgers*, 2018 WL 6615315, at *12–13, *18.

[7] As explained below, VGT disclosed both Mr. Davis and Mr. Shults early in discovery as knowledgeable about VGT's trade secrets, but CHG did not depose either in his individual capacity.

[8] ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

4

███████████████████████████████████████" *E.g.*, Ex. F, VGT's Third Supplemental Resp. to Interrogatory No. 4, at 30. Second, both of Mr. Friedman's expert reports opined that CHG's ███████████████ used VGT's trade secrets.[9] *See* Ex. J ¶¶ 111-12 ████████████████████████████████████████████████████████

████████████████████████████████████████████████████); Ex. K ¶ 97 ██

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████); *id.*

¶ 101 ████████████████████████████████████████████████████

████████████████████████████████████.

In advancing this false narrative, CHG also overlooks its ***own statement to the Court*** more than six months ago that VGT alleges that ██████████████████████

████████████████████████████████████████████ Dkt. 79,

Defs.' Opp. to Pl.'s Mot. for Leave to File Amended Compl., at 7 n.2.[10] Thus, contrary to what CHG now tells the Court, CHG has long been on notice of VGT's claim regarding the ████

██████████████.

---

[9] In its summary judgment reply, CHG states (erroneously) that the Second Friedman Declaration "coins the new term ████████████████████████" Dkt. 274 at 24. A simple text search of Mr. Friedman's opening expert report reveals that it uses the same term. Ex. J ¶ 120; *see also id.* ¶ 111 ████████████████████████████; *id.* ¶ 113 (same).

[10] Although VGT moved for leave to add a new theory of trade secret misappropriation based on a ████████████ algorithm that CHG has used outside Oklahoma, it never abandoned its existing claim that CHG's use of the ████████████████████████████████████████, constitutes trade secret misappropriation under Oklahoma law.

### B. There Is No Basis To Strike The Second Davis Declaration And Shults Declaration.

There is no merit to CHG's assertion that the Second Davis Declaration and Shults Declaration should be excluded because they contain improper expert opinions and testimony not based on personal knowledge. Mot. at 3–4. Both Mr. Davis and Mr. Shults are longtime VGT engineers, each having worked for the company for more than a decade. Second Davis Decl. ¶ 2; Shults Decl. ¶ 2. The Second Davis Declaration discusses Mr. Davis's knowledge of VGT's ███████████████████ algorithms as well as VGT's efforts to keep them secret. The Shults Declaration discusses Mr. Shults's knowledge of other trade secrets and know-how that VGT has developed regarding its Class II system.

VGT timely disclosed both engineers as knowledgeable about VGT's trade secrets at the first opportunity. *E.g.*, Ex. G, VGT's Responses to Interrogatory Nos. 6 & 8. VGT also timely disclosed the trade secrets discussed in those declarations.[11] *E.g.*, Ex. H, VGT's First Supplemental Response to Interrogatory No. 4, at 37, 44, 46. Nevertheless, CHG did not depose either witness in his personal capacity.

Despite broadly arguing that the declarations "represent impermissible lay opinion," Mot. at 4, CHG cites only two purported opinions in their declarations: (i) a statement by Mr. Davis that ███████████████████████████████████████████ and (ii) statements by Mr. Shults that ██████████████████████████████████████ ███████████████████████████████, Mot. at 3. CHG's argument fails for two reasons.

---

[11] For these reasons, there is no validity to CHG's contention (for which it provides *no* supporting argument) that the declarations contain "information that VGT failed to provide in discovery." Mot. at 3.

6

First, these are factual statements based on Mr. Davis's and Mr. Shults's personal knowledge about the trade secrets, VGT, and the industry. That the testimony may relate to technical issues does not make it expert testimony. *See, e.g.*, *Supernus Pharm., Inc. v. TWi Pharm., Inc.*, 265 F. Supp. 3d 490, 517 (D.N.J. 2017) (permitting scientist not disclosed as expert to testify "to matters which, while technical and specialized, are squarely within his particularized firsthand knowledge and experience as a pharmaceutical scientist employed by" plaintiff) (citing *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3d Cir. 2009)), *aff'd*, No. 2017-2513, 2018 WL 4232089 (Fed. Cir. Sept. 6, 2018); *Sitrick v. Dreamworks, LLC*, No. CV 03-4265-SVW (AJWx), 2006 WL 6116641, at *22 (C.D. Cal. July 20, 2006) ("[The inventor's] testimony regarding [technology], which he invented, can properly be considered factual testimony and is admissible on that basis without [his] being a designated expert: [the inventor] obviously has sufficient first-hand, personal knowledge to state facts regarding [the technology]."), *aff'd*, 516 F.3d 993 (Fed. Cir. 2008).[12]

Second, even if the statements are considered opinions rather than factual testimony, they are admissible as lay opinion under Rule 701. As the Tenth Circuit has explained, "lay witnesses may, consistent with Rule 701(a), testify broadly regarding an employer's practices, policies, and procedures, so long as their testimony is derived from personal knowledge and experience at the business." *United States v. Powers*, 578 F. App'x 763, 771 (10th Cir. 2014). Such witnesses also may testify about industry practices. *See United States v. Nacchio*, No. 05-CR-00545-EWN, 2006 WL 8439750, at *15 (D. Colo. Aug. 28, 2006) ("'[A]n officer or employee of a corporation may testify to industry practices and pricing without qualifying as an expert.'" (quoting *Tex.*

---

[12] Contrary to the argument in CHG's reply in support of its First Motion to Strike, Dkt. 280 at 7–8, VGT cites these cases to show that technical or specialized testimony is admissible as *fact testimony*, rather than opinion testimony.

7

*ASM Research Found. v. Magna Transp., Inc.*, 338 F.3d 394 (5th Cir. 2003))). As explained below, Mr. Davis's and Mr. Shults's testimony about the VGT trade secrets is based on their personal knowledge from their experience in the industry and at VGT, and such testimony therefore constitutes permissible lay opinion to the extent that it is not factual testimony. *See Medforms, Inc. v. Healthcare Mgmt. Sols., Inc.*, 290 F.3d 98, 110–11 (2d Cir. 2002) (permitting lay witness to testify about development and operation of software program on which he worked).

CHG also incorrectly criticizes the declarations for containing "generalized statements about what VGT has allegedly done, and how VGT has approached various issues." Mot. at 4. Contrary to CHG's assertions, all of these statements are based on personal knowledge. As noted in the declarations themselves, Mr. Davis is a Principal Software Engineer with nearly fifteen years of experience working on VGT's Class II system, and Mr. Shults is a Senior Software Engineer with more than ten years of experience on VGT's Class II system. Ex. B ¶¶ 1-2; Ex. C ¶¶ 1-2. The declarations further identify their familiarity with the asserted trade secrets that each discusses. Ex. B ¶ 2; Ex. C ¶¶ 1–2.

CHG's only specific criticism is misplaced. Although CHG asserts that Mr. Shults has not laid a foundation for his personal knowledge of ▮▮▮▮▮ ▮▮▮▮▮," Mot. at 4, CHG overlooks that these ▮▮▮▮▮ ▮▮▮▮▮ Ex. C, Shults Decl. ¶¶ 7-8 (emphases added). Mr. Shults, as a Senior Software Engineer, is familiar with ▮▮▮▮▮ ▮▮▮▮▮. *See id.* ¶¶ 1-2. Thus, Mr. Shults has laid a sufficient foundation to support his claim to "personal knowledge of the facts set forth in [his] declaration." *Id.* ¶ 1.

8

Importantly, CHG declined the opportunity to test these witnesses' personal knowledge. Although CHG claims that it never had such an opportunity, Mot. at 7, as discussed above, VGT disclosed both as knowledgeable about the VGT trade secrets, and also disclosed the specific trade secrets discussed in their declarations. *See supra* p. 6. Having chosen not to depose either Mr. Davis or Mr. Shults in their personal capacities, CHG's unsupported assertions that they lack personal knowledge are meritless.[13]

### C. There Is No Basis To Strike The North Declaration.

Finally, CHG's efforts to strike Mr. North's one-page declaration regarding the proportion of VGT's mechanical reel games with edge lighting are no more availing. Mot. at 4–6. Indeed, CHG ignores that Mr. North's estimation that most of the mechanical reel games at issue in this litigation do not have such lighting is based on years of experience overseeing product strategy for VGT's mechanical reel games as well as personal observations in casinos. Ex. D, North Decl. ¶ 1. VGT properly submitted this declaration to support its argument that the VGT trade dress at issue—which does *not* include edge lighting—is used on most of VGT's mechanical reel games. Dkt. 184 at 37.

Mr. North's testimony is proper lay opinion under Rule 701. Lay opinions involving estimates may be acceptable so long as they are "'based upon more than mere guesswork,'" *Champagne Metals v. Ken-Mac Metals, Inc.*, No. CIV-02-0528-HE, 2009 WL 10672256, at *6 (W.D. Okla. Feb. 25, 2009) (quoting *Malloy v. Monahan*, 73 F.3d 1012 (10th Cir. 1996)), and are based on the witness's personal knowledge, including "particularized knowledge that the

---

[13] VGT can proffer additional details as to the witnesses' personal knowledge, should the Court find it necessary or helpful.

9

witness has by virtue of his or her position in [a] business," Advisory Committee's Notes on the 2000 Amendment to Fed. R. Evid. 701.

Here, Mr. North's opinion is expressly "[b]ased on this experience [spending a significant amount of time in casinos] and [his] general knowledge of VGT's product strategy," which he has acquired from his responsibilities for product strategy for all mechanical reel games offered by VGT. Ex. D ¶¶ 1-2; *see also* Dkt. 239.

This experience and knowledge qualify Mr. North to offer the straightforward opinion that most VGT mechanical reel games do not have edge lighting. *See United States v. Munoz-Franco*, 487 F.3d 25, 35 (1st Cir. 2007) ("[C]ourts have allowed lay witnesses to express opinions about a business 'based on the witness's own perceptions and knowledge and participation in the day-to-day affairs of [the] business.'") (quoting *United States v. Polishan*, 336 F.3d 234, 242 (3d Cir. 2003))); Advisory Committee's Notes on the 2000 Amendment to Fed. R. Evid. 701 ("lay testimony 'results from a process of reasoning familiar in everyday life'") (internal quotations omitted).

CHG offers no support for its conclusory assertion that this estimate is "speculative guesswork." Mot. at 5. Although CHG deposed Mr. North and asked him about VGT's edge lighting, CHG did not ask any questions about the prevalence of the edge lighting. Ex. I, North Dep. Tr. 83:1–85:5. Nevertheless, his ability to provide substantive responses to CHG's questions on this issue confirms that he has a sufficient basis for his lay opinions.[14]

---

[14] The only case that CHG cites stands for the unremarkable and inapposite conclusion that an undated declaration that rests solely on a person's unsupported allegations (in that case, that an inmate attached a document to a grievance claim) is insufficient to create a material factual dispute where the evidence in the record clearly refutes the allegations (*i.e.*, the grievance did not in fact have a document attached to it and was rejected for that very reason). *See McMiller v. Corr. Corp. of Am.*, 695 F. App'x 344, 348 (10th Cir. 2017).

Nor is there anything to CHG's suggestion that VGT "avoid[ed] answering questions" regarding the edge lighting during discovery. Mot. at 5–6. As seen in the testimony CHG cites, CHG asked VGT's 30(b)(6) representative whether ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ CHG never asked—and the witness never testified about—the extent of the knowledge VGT has regarding the number of games with edge lighting.

### III.  CONCLUSION

CHG's boilerplate allegation of harm in its conclusion, Mot. at 6–7, is meritless. CHG was on notice of the declarants and their testimony and had the opportunity to depose the declarants on the issues about which CHG now complains. CHG's failure to do so is a problem of its own making.

For the foregoing reasons, VGT respectfully requests that the Court deny CHG's motion to strike the Second Friedman Declaration, Second Davis Declaration, Shults Declaration, and North Declaration.

January 4, 2019    */s/ Gary M. Rubman*
Graydon Dean Luthey, Jr., OBA No. 5568
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
Telephone: (918) 595-4821
Facsimile: (918) 595-4990
dluthey@gablelaw.com

Gary M. Rubman
Peter A. Swanson
Michael S. Sawyer
Rebecca B. Dalton
COVINGTON & BURLING LLP

11

One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 778-5465
grubman@cov.com
pswanson@cov.com
msawyer@cov.com
rdalton@cov.com
  (admitted pro hac vice)

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1221
Facsimile: (212) 841-1010
nroman@cov.com
  (admitted pro hac vice)

***Counsel for Video Gaming Technologies, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2019, I caused a redacted copy of the foregoing to be filed via ECF, which effected service on the following counsel for Defendants:

Robert C. Gill
Thomas S. Schaufelberger
Matthew J. Antonelli
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
tschauf@saul.com
matt.antonelli@saul.com

Sherry H. Flax
SAUL EWING ARNSTEIN & LEHR, LLP
500 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 332-8764
(410) 332-8785 (facsimile)
sherry.flax@saul.com

James C. Hodges, OBA 4254
JAMES C. HODGES, PC
2622 East 21st Street, Suite 4
Tulsa, OK 74114
Telephone: (918) 779-7078
JHodges@HodgesLC.Com

Duane H. Zobrist
Jonathan S. Jacobs
ZOBRIST LAW GROUP PLLC
1900 Arlington Blvd. Suite B
Charlottesville, VA 22903
Telephone: (434) 658-6400
dzobrist@zoblaw.com
jjacobs@zoblaw.com

*Attorneys for Defendants*

/s/ Peter A. Swanson