**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| VIDEO GAMING TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> CASTLE HILL STUDIOS LLC, *et al.* <br><br> Defendants. | CASE NO. 17-CV-00454-GKF-JFJ <br><br> **PUBLIC – REDACTED VERSION** |

**DEFENDANTS' MOTION CHALLENGING PLAINTIFF'S**
**DESIGNATIONS UNDER THE PROTECTIVE ORDER**

Defendants Castle Hill Studios LLC, Castle Hill Holdings LLC, and Ironworks Development LLC (collectively, "Castle Hill") move under Section 9 of the Protective Order in this case (Dkt. #55) for an order removing Plaintiff's "Highly Confidential" and "Confidential" designations from certain documents and deposition testimony, set forth below.

**I.  Introduction: VGT is abusing the Protective Order to keep its illegal misconduct a secret.**

Plaintiff VGT has a problem. In 2017—the same year VGT brought this lawsuit alleging Castle Hill's products infringe intellectual property on VGT's electronic gaming machines ("EGMs")—the vast majority of VGT's EGMs did not comply with minimum safety and security standards required by federal regulations. *See* 25 C.F.R. § 547. Specifically, as of April 2017 (just a few months before it filed this lawsuit), VGT's own documents show it had ▌

▌ *See* Ex. C. Even worse, ▌

▌ ("Illegal EGMs"). VGT has not only broken the law by placing

thousands of Illegal EGMs in casinos, VGT has also deceived the tribes, the public, and the government by orchestrating a decade-long campaign to pass off these Illegal EGMs as "grandfathered" when the federal regulations make clear they could never possibly be so.

In a particularly ironic twist, VGT is now using this Court to facilitate its campaign of deception and cover-up. To try to keep the lid on its widespread, decade-long fraud, VGT has designated every single document demonstrating its Illegal EGMs cover-up as "Highly Confidential" under the Protective Order.

Castle Hill has met and conferred repeatedly with VGT over the last two months in an attempt to convince it to remove these designations. To no avail. Rather than admit the obvious—that VGT wants these documents Highly Confidential to keep its illegal activity under wraps (plainly not a proper purpose under the Protective Order)—VGT's clever lawyers have manufactured other reasons for why these documents meet the standards in the Protective Order.

But none of VGT's manufactured reasons survive scrutiny because (a) the designated materials do not meet the standards set forth in the Protective Order; and (b) VGT's arguments defending its designations do not meet the standard for challenged designations applied by this Court.

The designated materials relate to deposition testimony from Richard Williamson, VGT's Vice President of gaming compliance. Mr. Williamson testified that ███████████████████████████████████████████████████████████████████████████████████████████████ Ex. G at 51:18-53:6; Ex. H at 64:10-16. Thus, it is clear that Mr. Williamson's and VGT's interpretation and understanding of the regulations reflect a simple reading of the regulations rather than a trade secret or developed confidential commercial information that gives VGT a competitive advantage. Furthermore, Mr. Williamson's testimony

2

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████ The only reason VGT is attempting to designate these basic items as confidential is that they reveal VGT's illegal activity—clearly an abuse of the Protective Order.

A party moving to designate materials under a protective order must demonstrate good cause, including a "particular and specific demonstration of fact as distinguished from conclusory or stereotyped statement" to prevail against challenges to its designations. *See EQ Okla., Inc. v. A Clean Env't Co.*, No. 11-CV-510-GKF-PJC, 2012 U.S. Dist. LEXIS 159571, at *2 (N.D. Okla. Nov. 7, 2012). During a meet-and-confer conversation and in subsequent emails with counsel for Castle Hill, VGT has failed to meet this standard. The Court should reject VGT's attempt to use the Protective Order to hide its illegal activity.

**II.    Background:** ████████████████████████████████████████
████████████████████████████████████████████████.

Bingo-based "slot machines," more commonly known as Class II EGMs, are regulated by the National Indian Gaming Commission ("NIGC"), a federal regulatory agency within the Department of the Interior. In 2008, the NIGC passed regulations intended to protect the safety and integrity of Class II gaming, entitled Minimum Technical Standards for Class II Gaming Systems and Equipment. *See* 25 C.F.R. 547.

To limit the burden of these new regulations, the NIGC included a "grandfather" provision, exempting from the standards existing EGMs "manufactured" before November 10, 2008. The regulations, and particularly guidance from the NIGC about the regulations, make plain that in order to be grandfathered and exempt from the minimum technical standards, an EGM must have been "off the assembly line and ready to use" before November 10, 2008. *See* Ex. A (NIGC Bulletin No.

3

2008-3, "Compliance Guidance for New Technical Standards, 25 C.F.R. part 547" at 5).[1] Any EGM that was not "off the assembly line and ready to use" before November 10, 2008 could not be grandfathered and thus must comply with the minimum technical standards. *Id.*

VGT did not comply with these federal regulations. After 2008, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Worse still, VGT devised a way to keep all of this a secret. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

VGT tried to keep its illegal EGMs secret in this case too. The parties litigated for a full year with VGT refusing to provide information about its non-compliant games. Only after this Court granted Castle Hill's motion to compel and ordered VGT to provide the information, in September just a few months ago, did the full picture of VGT's illegal misconduct come to light. *See* Dkt. #131.

---

[1] This formal NIGC Guidance is available at https://www.nigc.gov/compliance/bulletins (last viewed January 16, 2019).

4

███████████████████████████████████
████

But it did not stop there. VGT is using the Court to continue to keep its illegal misconduct a secret. VGT has designated every document and portion of a deposition transcript that demonstrates VGT's illegal conduct as "highly confidential" under the Protective Order. This ensures that only lawyers, experts, and the Court, each of whom is sworn to secrecy, will learn the details of VGT's misconduct. In this regard, VGT has misused the Protective Order for the following designations from the June 14, 2018 deposition ("Depo 1" in the table below and included as Exhibit G to this motion) and the October 2, 2018 deposition ("Depo 2" in the table below and included as Exhibit I to this motion), which are numbered chronologically for the Court's reference and grouped for purposes of challenging the designations (each a "VGT Designation").

| Ref. | Document | Designation | Description |
|---|---|---|---|
| 1 | Depo 1: 63:4 - 65:16 | Highly Confidential | ████ |
| 11 | Depo 2: 28:16-22 | Highly Confidential | ████ |
| 14 | Depo 2: 37:25 - 38:13 | Highly Confidential | ████ |

| Ref. | Document | Designation | Description |
|---|---|---|---|
| 2 | Depo 1: 76:24 - 77:16 | Highly Confidential | ████ |
| 13 | Depo 2: 36:10-16 | Highly Confidential | ████ |

| Ref. | Document | Designation | Description |
|---|---|---|---|
| 3 | Depo 1: 81:1-25 | Highly Confidential | |
| 4 | Depo 1: 82:1-17, 20-23 | Highly Confidential | |
| 5 | Depo 1: 84:15 - 87:13 | Highly Confidential | |
| 6 | Depo 1: Exhibit No. 102 (Castle Hill is challenging only the designation of Bates number VGT0022130) (Included as Exhibit B to this motion.) | Highly Confidential | ████ |

5

| | | | |
|---|---|---|---|
| 7 | Depo 1: Exhibit No. 103 (Included as Exhibit C to this motion.) | Highly Confidential | |
| 8 | Depo 2: 23:13 - 24:16 | Confidential | ▮ |
| 9 | Depo 2: 25:3-11 | Confidential | ▮ |
| 10 | Depo 2: 25:16 - 27:19 | Confidential | ▮ |
| 12 | Depo 2: 31:5 - 33:15 | Highly Confidential | ▮ |
| 15 | Depo 2: 40:3-13 | Highly Confidential | ▮ |
| 16 | Depo 2: 41:13 - 42:25 | Highly Confidential | ▮ |
| 17 | Depo 2: 43:14 - 45:3 | Highly Confidential | |
| 18 | Depo 2: 45:10 - 48:5 | Highly Confidential | |
| 19 | Depo 2: 48:14-25 | Highly Confidential | |
| 27 | Depo 2: Exhibit No. 4 (Included as Exhibit D to this motion.) | Highly Confidential | ▮ |
| 28 | Depo 2: Exhibit No. 5 (Castle Hill is challenging only the designation of Bates number VGT0022130) (Included as Exhibit E to this motion.) | Highly Confidential | ▮ |
| 29 | Depo 2: Exhibit No. 6 (Included as Exhibit F to this motion.) | Highly Confidential | |
| 20 | Depo 2: 51:19 - 54:5 | Highly Confidential | ▮ |
| 21 | Depo 2: 55:6-13 | Highly Confidential | |
| 22 | Depo 2: 56:9 - 61:19 | Highly Confidential | |
| 23 | Depo 2: 62:20 - 64:9 | Highly Confidential | ▮ |
| 24 | Depo 2: 69:25 - 73:16 | Highly Confidential | ▮ |

| 25 | Depo 2: 78:3 - 82:24 | Highly Confidential | |
|----|----------------------|---------------------|---|
| 26 | Depo 2: 84:8 - 85:19 | Highly Confidential | |

### III. Argument: The Court should reject VGT's manufactured reasons for why documents showing its illegal conduct qualify under the Protective Order standards.

The Protective Order allows any party supplying information to designate such information as Confidential or Highly Confidential if it meets the following standards:

- **Confidential**. Information "to constitute, reflect or disclose trade secret or other confidential research, development, or commercial information"

- **Highly Confidential**. Confidential Information that is "extremely sensitive confidential and/or proprietary information, the disclosure of which, even limited to the restrictions placed on Confidential Information in this Order, would compromise and/or jeopardize the Supplying Party's competitive business interests"

*See* Dkt. 55, ¶ 1(b) and 1(c).

Pursuant to the Protective Order, a party may make a good faith challenge to the propriety of a Confidential or Highly Confidential designation at any time. *See id.* ¶ 9. The objecting party must first consult with the designating party to attempt to resolve their differences. *See id.* If the parties are unable to come to an agreement regarding the designations, after giving notice to the designating party, the objecting party may apply to the Court for a ruling that the material in question not be designated as Confidential or Highly Confidential. *See id.* If such a motion is made, the party who made the designation has the burden to prove the designation is proper. *See id.*

When challenged, confidentiality designations made under a protective order "will be strictly scrutinized according to Rule 26(c) and the protective order entered in th[e] case." *Siegel v. Blue Giant Equip., LLC*, No. 15-CV-143-TCK-PJC, 2015 WL 7272216, at *2 (N.D. Okla. Nov. 17, 2015). Under the Protective Order, "the designating party has the burden of establishing that the designation is proper." Doc. 55 at ¶ 9. In determining the propriety of a challenged designation, "the 'good cause' standard of Rule 26(c) governs, and the party asserting confidentiality must make a

particular showing for each document at issue of specific prejudice or hardship that will arise from its disclosure." *Rowan v. Sunflower Elec. Power Corp.*, No. 15-CV-9227-JWL-TJJ, 2017 WL 680070, at *2 (D. Kan. Feb. 21, 2017); *see also Grundberg v. Upjohn Co.*, 137 F.R.D. 372, 390 (D. Utah 1991) (*quoting Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) (stating that in response to a challenge to a confidentiality designation, a party "must show good cause by demonstrating a particular need for protection," such as by "specific examples or articulated reasoning"). The showing of good cause under Rule 26(c) is a heavy burden. *See Upjohn Co.*, 137 F.R.D. at 389.

### A. The VGT Designations do not meet the standard for Confidential or Highly Confidential information set forth in the Protective Order.

Castle Hill is challenging designations related to the testimony of Richard Williamson, VGT's Vice President of gaming compliance. Mr. Williamson's testimony and related documents do not address VGT "trade secrets," "research" or "development." Thus, VGT can only meet the lower "confidential" standard in the Protective Order (let alone "highly confidential") by showing the testimony and related exhibits contain confidential "commercial information." However, a review of the testimony shows that the information disclosed by Mr. Williamson is plainly not confidential commercial information contemplated under the rules. Rather, the true purpose of VGT's designations is to prevent disclosure of its flouting federal regulations.

In his testimony, Mr. Williamson stated that ███████████████████████████████████████████████████████████. *See* Ex. G at 51:18-53:6. Despite this fact, ███ ████████████████████████████████████████████████████████████████████████████████ *Id.* at 52:10-12. ████████████████████████████████████████████████████████████████████████████

8

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

VGT Designation numbers 1, 11, and 14 relate to Mr. Williamson's understanding and interpretation of the regulations. In VGT Designation number 2 and 13, Mr. Williamson testifies that ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████. VGT Designation numbers 3-7 (with regards to number 6, which is deposition exhibit number 102, Castle Hill is only challenging Bates number VGT0022130) are Mr. Williamson's review and interpretation of documents (and the documents themselves) that say ████████████████████████████ ████████████████████████████. None of these materials involve VGT's trade secrets or confidential research, development, or commercial information. That VGT knows about regulations and ostensibly attempts to follow regulations is not related to VGT's competitive standing in the marketplace. Such information does not compromise or jeopardize VGT's competitive business interests. ████████████████████████████████████████████████████████ ██████████████

VGT Designation numbers 8-10 and 12 include Mr. Williamson's testimony divulging that VGT sought and obtained ████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████. Relatedly, in VGT Designation 15 Mr. Williamson admits ████████████ ████████████████████████████████████████████████████████████ ████████████████. Again, Mr. Williamson's interpretation of regulations comes from his reading of the regulations. His view is not a VGT trade secret or a result of confidential research, development or commercial information. ████████████████████████████████████ ████████████████████████████████████████████████. Every business must

9

read and follow regulations. Likewise, his admission that █████████████████████

█████████████████████████████████████████████████████████████████████████████████████.

It simply reveals VGT broke the law. The Protective Order is not designed to hide a party's illegal activity.

Number 13 is Mr. Williamson's testimony that VGT has █████████████████

█████████████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████. Nor would such a revelation compromise or jeopardize VGT's competitive business interests.

VGT Designations numbers 16-19 include a discussion of VGT's efforts to fully comply with the NIGC's minimum technical standards, including a review of numbers 27-29 (i.e., Exhibits E, F, and G in this motion) which contain data related to █████████████████████ ████. In his testimony, Mr. Williamson says █████████████████████████████████

█████████████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████████████

████████. █████████████████████████████████████████████████████████████████

█████████████████████████. In fact, the number of EGMs VGT has on casino floors could be counted by anyone who goes into the casinos VGT lists on its website. *See* VGT Casino List, available at http://www.vgt.net/players/casino-list/?pagenum=1 (last visited Jan 9, 2019). ██ ███████████████████████████████████████████████████████ The information in these designated materials does not relate to trade secrets or confidential business information and it does not compromise or jeopardize VGT's competitive business interests. VGT wants to keep this information confidential because it reveals VGT's illegal activity. The court should reject VGT's efforts to abuse the protective order in this way.

VGT Designations numbers 20-23 contain testimony and information regarding ▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Similarly, VGT Designation number 24 includes questioning and testimony concerning ▇▇▇▇▇▇ ▇▇▇▇. Finally, VGT Designations numbered 25 and 26 include Mr. Williamson's testimony regarding its ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. It does not touch on VGT's trade secrets or confidential research, development, and commercial information, nor does it compromise or jeopardize VGT's competitive business interests. It plainly does not qualify for the Confidential or Highly Confidential designation applied by VGT.

> **B. VGT's arguments defending its designations do not include particular and specific demonstrations of fact, but rather consist of conclusory or stereotyped statements or assertions that are unrelated to the protective order.**

A party moving to have certain information or materials covered by a protective order "bears the burden of demonstrating 'good cause' and requires a particular and specific demonstration of fact as distinguished from conclusory or stereotyped statements." *EQ Okla., Inc. v. A Clean Env't Co.*, No. 11-CV-510-GKF-PJC, 2012 U.S. Dist. LEXIS 159571, at *2 (N.D. Okla. Nov. 7, 2012). During a meet-and-confer phone conversation and in follow-up emails, Castle Hill questioned VGT's reasoning for designating the above-referenced materials as Confidential and Highly Confidential. In response, VGT did not provide particular and specific demonstrations of fact, but rather offered broad statements, namely that the designated information:

(i) reflected internal deliberations and the view of the company;

(ii) goes to the competitive business interests of the company; and

11

    (iii)    includes commercial information.

VGT's first point is completely unrelated to the standards set forth in the Protective Order; "reflect internal deliberations and the view of the company" is a vague standard that could cover almost any information about a business. More importantly, it has nothing to do with the standards in the Protective Order. The second and third points are merely conclusory and stereotyped statements, offered without particular and specific demonstrations of fact.

Counsel for Castle Hill expressed difficulty understanding VGT's generalized reasoning and asked for explanations for how, for example, VGT Designation numbers 1 and 3 met the Protective Order's standards regarding confidential commercial information and competitive business interests. In reply, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ The regulations are plain and, combined with the clear directions Bulletin 2008-3, hardly require interpretation. For example, in Bulletin 2008-3, the NIGC clarified that "A Class II gaming system is eligible for grandfathering if it was in use on or before November 10, 2008, or if it was manufactured on or before that date. *Manufactured*, in this context, means *off the assembly line and ready to use*." *See* Ex. A (emphasis in original). ████████████████████████████████████████████████████████████████████████████████████████████████

After the meet-and-confer phone call, when Castle Hill made clear it was going to file this motion, VGT's counsel wrote to add more reasons why it believed the information qualified as confidential, namely that the designated documents contained:

    (iv)    internal VGT data regarding placements and revenues of games;

    (v)    information regarding VGT business plans and operations;

12

    (vi)  proprietary product design and manufacturing information; and

    (vii)  internal data and other information concerning regulatory compliance issues.

*See* Ex. I. These post-hoc rationalizations do not improve on VGT's initial arguments. VGT's **fourth** justification is not relevant; Castle Hill has decided not to challenge the document to which this arguably applies (Depo 2, Exhibit 7). Reason **five** is yet another conclusory or stereotyped statement lacking demonstrations of fact. Castle Hill is left to guess what "business plans and operations" VGT is referring to, because none are clear in the materials Castle Hill is challenging. Similarly, VGT does not offer specifics related to its **sixth** argument regarding disclosure of proprietary product design and manufacturing information. The only portions of the designated materials that could relate to "product design" involve counsel showing Mr. Williamson pages of VGT's website and asking questions about a cabinet on the website. Ex. H at 53:15-55:13. VGT's website is, of course, open to the public and not confidential.

  In like manner, the only portion of the designated materials that ask ███████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████. Ex. H at 71:14-72:14, Oct. 2, 2018. These disclosures do not involve material that meets the standards under the Protective Order; they do not disclose trade secrets or confidential research, development, or commercial information and they do not compromise or jeopardize VGT's competitive business interests. Finally, VGT's **seventh** justification for designating the material as Highly Confidential—that the materials disclose internal data and other information regarding regulatory compliance issues—leans on a broken crutch: it is a non-specific claim that ignores that none of the disclosures regarding regulatory compliance issues relate to trade secrets or confidential commercial information, nor do they compromise or jeopardize VGT's competitive business interests. They simply reveal that VGT has broken the law.

13

For the last decade, VGT has broken the law and endangered the public by placing Illegal EGMs in casinos in Oklahoma and around the country. VGT has also attempted to deceive the tribes, the public, and the government by manipulating NIGC regulations. Now, VGT is using this Court's Protective Order to hide its tracks and preserve its scheme. The Court should reject VGT's abuse of the Protective Order.

**IV.     Conclusion**.

For the foregoing reason, Castle Hill requests this Court issue an order removing Plaintiff's "Highly Confidential" or "Confidential" designations from the documents and deposition testimony set forth in this motion.

Dated:  January 17, 2019                                            Respectfully submitted,

*/s/ Jonathan S. Jacobs*
Duane H. Zobrist (admitted *pro hac vice*)
Jonathan S. Jacobs (admitted *pro hac vice*)
ZŌBLAW
1900 Arlington Blvd., Suite B
Charlottesville, VA 22903
dzobrist@zoblaw.com
jjacobs@zoblaw.com

Robert C. Gill (admitted *pro hac vice*)
Henry A. Platt (admitted *pro hac vice*)
Thomas S. Schaufelberger (admitted *pro hac vice*)
Sherry H. Flax (admitted *pro hac vice*)
Matthew J. Antonelli (admitted *pro hac vice*)
Jeremy B. Darling (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
robert.gill@saul.com
henry.platt@saul.com
tschauf@saul.com
sherry.flax@saul.com
matt.antonelli@saul.com
jeremy.darling@saul.com

                        James C. Hodges, OBA #4254
                        JAMES C. HODGES, P.C.
                        2622 East 21st Street, Suite 4
                        Tulsa, Oklahoma 74114
                        (918) 779-7078
                        (918) 770-9779 (facsimile)
                        JHodges@HodgesLC.com

*Counsel for Defendants*

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER**

# CERTIFICATE OF SERVICE

    I hereby certify that on this 17th day of January, 2019, I caused a copy of the foregoing **DEFENDANTS' MOTION CHALLENGING PLAINTIFF'S DESIGNATIONS UNDER THE PROTECTIVE ORDER – PUBLIC REDACTED VERSION** to be filed using the Court's ECF system, which will provide electronic notice of filing to the following counsel for Plaintiff:

| | |
|---|---|
| Graydon Dean Luthey, Jr.<br>GABLE GOTWALS<br>1100 ONEOK Plaza<br>100 West Fifth Street<br>Tulsa, OK 74103-4217<br>(918) 595-4821<br>(918) 595-4990 (facsimile)<br>dluthey@gablelaw.com<br>*Counsel for Plaintiff*<br><br>Neil K. Roman<br>COVINGTON & BURLING LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>(212) 841-1221<br>(212) 841-1010 (facsimile)<br>nroman@cov.com<br>*Counsel for Plaintiff* | Gary M. Rubman<br>Peter Swanson<br>Michael Sawyer<br>Rebecca B. Dalton<br>COVINGTON & BURLING LLP<br>One City Center<br>850 Tenth Street, NW<br>Washington, DC 20001-4956<br>(202) 662-6000<br>(202) 778-5465 (facsimile)<br>grubman@cov.com<br>pswanson@cov.com<br>msawyer@cov.com<br>rdalton@cov.com<br>*Counsel for Plaintiff* |

                                            */s/ Jonathan S. Jacobs*
                                              Jonathan S. Jacobs