## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

VIDEO GAMING TECHNOLOGIES, INC.,

    Plaintiff,

v.

CASTLE HILL STUDIOS LLC, *et al.*

    Defendants.

CASE NO. 17-CV-00454-GKF-JFJ

**PUBLIC – REDACTED VERSION**

### DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO STRIKE DECLARATIONS SUBMITTED IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants file this reply in further support of their Motion to Strike Declarations Submitted in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Doc. 272). Castle Hill moved to strike the declaration of VGT technical expert Stacy Friedman as undisclosed expert opinion and/or improper "supplementation", the declarations of VGT employees Josh Davis and Chris Shults as expert opinion couched as "fact testimony," and the declaration of Ryan North because it consists of pure speculation and contains factual information requested but not produced in discovery.[1]

VGT's opposition fails to rebut Castle Hill's arguments. Instead, VGT effectively admits that Mr. Friedman's declaration is improperly submitted expert opinion. With respect to the Davis, Shults, and North declarations, VGT attempts to shift the blame to Castle Hill for VGT's decision to offer inadmissible opinion and speculation under the guise of "fact declarations" many months after the close of discovery. The declarations are plainly improper and should be stricken.

---

[1] For the sake of brevity, Castle Hill incorporates by reference the arguments set forth in its Motion to Strike Declarations of Stacy Friedman and Josh Davis Submitted in Support of Plaintiff's Motion for Partial Summary Judgment (Doc. 236) and its Reply in Further Support of that motion (Doc. 280). The authority and arguments set forth in those filings apply with equal force to the instant Motion.

## I.  THE COURT SHOULD STRIKE THE SECOND FRIEDMAN DECLARATION

In addition to noting that the Second Friedman Declaration is in fact Mr. Friedman's *fifth* instance of offering expert opinion in this matter (in addition to his initial report, reply report, deposition testimony, and first declaration), the Motion set forth two distinct reasons for striking the Second Friedman Declaration.

First, the Second Friedman Declaration offers new and expanded opinions beyond those previously disclosed. In response to this argument, VGT claims that the opinions set forth in the Second Friedman Declaration are not new, but instead are a "subset of the issues discussed across Mr. Friedman's two expert reports." Opp'n at 2. Even if this were true – which it is not – it would remain improper. Even if Mr. Friedman's prior opinions addressed these matters, there would be no reason for VGT to explain them in a different way in the form of a declaration. *See Rodgers v. Beechcraft Corp.*, --- F. App'x ---, 2018 WL 6615315, at *12 (10th Cir. Dec. 14, 2018) ("Previously proposed opinions should stand on their own and do not need further emphasis."). VGT's opportunities to set forth Mr. Friedman's opinions were dictated by the Court's scheduling order, which set distinct dates for initial reports, replies, and expert depositions. VGT cannot be allowed to continually supplement and modify Mr. Friedman's opinions through lengthy declarations.

The Second Friedman Declaration offers opinions beyond those contained in Mr. Friedman's timely initial or reply reports. For example, in an attempt to significantly broaden and expand his opinion regarding Castle Hill's ████████████████ Mr. Friedman now opines that that ████████████████████████████████████████████████████████████████████ and goes on to opine that ████████████████████████████████████████████████████████████████████ Second Friedman Decl. at ¶ 19. These opinions were *not* contained in Mr. Friedman's previously-disclosed opinions. In other

words, VGT is attempting to add new opinion – that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓ – through an expert declaration submitted months after expert discovery closed, and only in opposition to Castle Hill's motion for summary judgment. Such eleventh-hour supplementation is impermissible. *See id.* at *17 ("If the supplemental affidavit simply restated previous information from the original report, it was not needed. If it went into further depth than the original report or discussed new testing, the Plaintiffs showed no reason why that information could not have been included in the original report.").

Second, the Second Friedman Declaration purports to rely on the Second Davis Declaration and Shults Declaration as the basis for the opinions he now offers. As Castle Hill noted in its original motion, those declarations were not even executed until November 14, 2018. How, then, could they form the basis for opinions Mr. Friedman set forth in his August 10, 2018 expert report or his September 14, 2018 reply? If those declarations were to form the basis of Mr. Friedman's opinions, then they should have been executed and produced at the time his expert report was served. Instead, VGT argues, the citation to these recent declarations is proper because the initial report referred to undisclosed oral communications between Mr. Friedman, Mr. Davis, and Mr. Shults. But Castle Hill had the opportunity to question Mr. Friedman about theses communications at his deposition. The affidavits, meanwhile, are new, and the opinions they purport to support are supplemented and expanded over Mr. Friedman's prior ones. Castle Hill had no opportunity to examine Mr. Friedman about any declarations (either his two new declarations or the new declarations of Mssrs. Davis and Shults upon which he bases his new declarations). Of particular note is that *none* of the declarations attempt to tie back to the alleged oral communications that occurred prior to Mr. Friedman's initial report. They cannot, therefore, properly form the basis of Mr. Friedman's opinions.

3

## II.     THE COURT SHOULD STRIKE THE SECOND DAVIS, SHULTS, AND NORTH DECLARATIONS

Despite what VGT says in its opposition, both the Second Davis and Shults Declarations attempt to offer expert opinions and statements that are not made on personal knowledge. In an attempt to muddy the waters regarding the lack of personal knowledge of these individuals, VGT points to their long experience working at the company. For example, VGT argues that Mr. Shults ███. Therefore, VGT argues, it is appropriate for him to talk in broad terms about customer opinions regarding ███ What VGT chooses to ignore is that the Shults Declaration does not say that any of these ███ Shults Decl. ¶ 8. Those are statements regarding the alleged preferences and opinions of casino operators and patrons. They are not *factual* statements within Mr. Shults' personal knowledge. To the contrary, ███ Shults Decl. ¶ 7.

VGT offers little more than its own conclusory statements to demonstrate that anything stated in the Second Davis or Shults Declarations is based on those individuals' personal knowledge. VGT characterizes the opinions the declarants offer generally as "knowledge about . . . the industry." Opp'n at 7. But the opinions VGT attempts to offer here are not like the situation in *United States v. Naachio*, No. 05-00545-EWN, 2006 WL 8439750 (D. Colo. Aug. 28, 2006), which VGT relies on to support its position. There, certain executives of a company were to be permitted to offer lay opinion about their employer's business practices. The court noted that lay witnesses may sometimes opine about the industry if such opinion arises out of the "particularized knowledge

4

that the witness has by virtue of his or her position in the business." *Id.* at *15 (quotations omitted). Unlike the witnesses in *Naachio*, who had "first hand specialized knowledge of the operations" upon which they would offer lay opinions, VGT has not demonstrated that Mr. Shults or Mr. Davis has any specialized or particularized knowledge sufficient to offer lay opinions regarding, for example, ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ *See* Mot. at 3. Rather, these "industry opinions" are based on the witnesses own subjective beliefs and speculation, and are thus improper.

Moreover, VGT's argument that Castle Hill is to blame for Mr. Shults' and Mr. Davis' untimely opinions because Castle Hill did not take their fact depositions is a complete red herring. VGT claims to have "timely disclosed both engineers as having knowledge about VGT's trade secrets." Opp'n at 6. VGT's actual "disclosure" of those witnesses, however, says absolutely nothing about their specific areas of knowledge. In fact, in its nearly 200-page response (which itself included over 30 pages describing 37 alleged "trade secrets") to Castle Hill's first interrogatories, which it supplemented six times, VGT mentions Mr. Shults' and Mr. Davis' personal knowledge only twice. VGT identified Mr. Shults as having knowledge regarding ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ and Mr. Davis as having knowledge regarding ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ *See* **Ex. A**, Excerpts from VGT 6th Supp. Res. to Castle Hill 1st Int. at 180-81. Elsewhere, VGT stated that ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ *Id.* at 157.

**Nowhere** in its lengthy interrogatory responses does VGT identify Mr. Davis as having specific knowledge regarding the matters addressed in his declaration ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ The same is true

5

for Mr. Shults ███████████████████████████████████████████
███████████████. Nor is either individual identified as an "industry expert" qualified to offer lay opinion regarding the Class II industry and the development effort of competitors in the marketplace. VGT's claims that it "timely disclosed" these individuals is indicative of its overall approach to pleading its claims and to discovery. It has continually made broad-sweeping arguments and disclosures designed to confuse and obfuscate, and then when pushed, such as with respect to the instant motion, VGT blames Castle Hill, who apparently should have divined that Mr. Shults and Mr. Davis possessed relevant, discoverable information that VGT chose not to provide in discovery.

With respect to the North Declaration, VGT asks the Court to ignore its own discovery shortcomings and blames Castle Hill for not asking VGT more questions about the "jukebox lighting" VGT uses on many of its games. VGT wants the Court to disregard the fact that the witness it designated to offer testimony regarding the "number and location of each VGT game by cabinet configuration and options (including but not limited to screen size, *lighting*, art work, and toppers)", made a party admission that ███████████████████████████████ According to VGT, ███████████████████████████████████████
███████████████████████████. This is clearly not the standard. And importantly, VGT's 30(b)(6) designee testified regarding lighting options only after many weeks of meet and confer conversations about VGT's inability to fully answer an interrogatory on this same topic. *See, e.g.*, **Ex. B**, June 13th Deficiency Letter at 1-2 (noting deficiencies in VGT's response regarding cabinet configurations and requesting further information regarding monitor sizes, artwork, lighting, and toppers).

VGT never amended its interrogatory responses to set forth Mr. North's alleged opinions regarding its lighting packages, nor did it identify him as an individual with knowledge regarding

6

VGT cabinet configurations, despite many, many, conversations with Castle Hill's counsel on this same topic. It is very telling that Mr. North's "knowledge" was only revealed *after* Castle Hill filed its motion for summary judgment setting forth VGT's lack of a consistent trade dress. VGT failed to provide this information in discovery and cannot now be permitted to offer it in the form of Mr. North's rank speculation.

### III.  CONCLUSION

Defendants respectfully request that their motion be granted and that the Second Friedman, Second Davis, Shults, and North Declarations be stricken.

Dated: January 18, 2019                      Respectfully submitted,

*/s/ Robert C. Gill*
Robert C. Gill (admitted *pro hac vice*)
Henry A. Platt (admitted *pro hac vice*)
Thomas S. Schaufelberger (admitted *pro hac vice*)
Sherry H. Flax (admitted *pro hac vice*)
Matthew J. Antonelli (admitted *pro hac vice*)
Jeremy B. Darling (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
henry.platt@saul.com
tschauf@saul.com
sherry.flax@saul.com
matt.antonelli@saul.com
jeremy.darling@saul.com

James C. Hodges, OBA #4254
JAMES C. HODGES, P.C.
2622 East 21st Street, Suite 4
Tulsa, Oklahoma 74114
(918) 779-7078
(918) 770-9779 (facsimile)
JHodges@HodgesLC.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 18th day of January, 2019, I caused a copy of the foregoing **DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO STRIKE DECLARATIONS SUBMITTED IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT – PUBLIC REDACTED VERSION** to be filed using the Court's ECF system, which will provide electronic notification of filing to the following counsel for Plaintiff:

Graydon Dean Luthey, Jr.
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
(918) 595-4821
(918) 595-4990 (facsimile)
dluthey@gablelaw.com
*Counsel for Plaintiff*

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1221
(212) 841-1010 (facsimile)
nroman@cov.com
*Counsel for Plaintiff*

Gary M. Rubman
Peter Swanson
Michael Sawyer
Rebecca B. Dalton
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
(202) 778-5465 (facsimile)
grubman@cov.com
pswanson@cov.com
msawyer@cov.com
rdalton@cov.com
*Counsel for Plaintiff*

                                            *Robert C. Gill*
                                            Robert C. Gill