# EXHIBIT 11

```
 1                UNITED STATES DISTRICT COURT FOR THE

 2                   NORTHERN DISTRICT OF OKLAHOMA

 3

 4   VIDEO GAMING TECHNOLOGIES, INC.,   )
                                        )
 5                Plaintiff,            )
                                        )
 6   vs.                                ) CASE NO. 17-CV-454-GKF-JFJ
                                        )
 7   CASTLE HILL STUDIOS, LLC., et al., )
                                        )
 8                Defendants.           )
```

15                TRANSCRIPT OF RECORDED PROCEEDINGS
                        DECEMBER 6, 2017
16   BEFORE THE HONORABLE JODI F. JAYNE, MAGISTRATE JUDGE PRESIDING

17                          **MOTION HEARING**

communication with the client, that significantly hampers my ability to be able to defend the case, and that's my concern. I'm looking at this for a logistical, you know, not trying to be hypertechnical about it.  This is a very basic thing for me. I'm concerned about being able to meaningfully communicate with my client and have the client be able to meaningful assist me in the defense of the case.

**THE COURT:**  Why haven't you met and conferred with them about this protective order?  It sounds like there's a whole lot you agree on.

**MR. GILL:**  Well, there is, but, you know, to be candid, what happened was, you know, I felt like no good deed was going unpunished with respect to my communications with counsel.  I told them candidly that what my view was on trade secret discovery about how I needed to know more of the substance of their claims to be able to respond, and it was obvious from the request for the meet-and-confer they were trying to game the system and file the motion to compel discovery against me before our responses are even due.  And once it was obvious to me that was what was happening, frankly, I didn't feel there was enough good faith involved to make it worthwhile, and I thought, "You want to run to court and file a motion before my discovery is due?  I'm perfectly happy to discuss this with the judge and have the judge resolve the issue in a way that, like it or not, it'll be done, that's what

1  I do."  So, that's how that happened.  I felt like I was candid
2  and honest with counsel in my e-mail that's part of the record
3  where I said, "Look, I need to know this stuff," and I felt
4  like I was punished for it.  So, that's why.  Okay?
5      With respect to highly confidential information, that
6  obviously presents a thornier issue, and I will be candid with
7  the court on that, that because it's thornier, I think there
8  are balancing interests involved and the answer to that issue
9  is a little bit less clear to me about how to do it.
10     I do obviously -- you know, I have the same concern that I
11 expressed to Your Honor with respect to confidential
12 information.  I need -- I desperately need to be able to
13 discuss this meaningfully with my client and have my client
14 assist me in the defense of this action, and I'm concerned
15 about any procedure that interferes with my ability to do that.
16     And while we're at it, let's just go ahead, if you're okay
17 with this, let's just go ahead and put all our cards on the
18 table on this too, just so you know where I'm coming from.
19     We took over the case from Mr. Jacob's firm, Mr. Jacobs is
20 in the courtroom this morning, and Mr. Jacobs and his firm
21 basically serve as outside in-house counsel for this client.
22 This is a small start-up company.  So, at a minimum, I would
23 like to be able to include Mr. Jacobs and Mr. Zobrist in the
24 scope of any order that's entered.  They -- you know, that
25 gives me a level -- because they understand the client and the

1  industry -- that gives me a certain level of protection.
2     I clearly still would like to be able to discuss this with
3  the client, and I'm obviously willing to abide by whatever
4  reasonable restrictions the court feels are necessary in order
5  to protect confidential information.  But frankly, one of the
6  ways to protect that confidential information is to just not
7  have door-open discovery on any trade secrets at issue in the
8  case.  That, to me, is a good reason why the analysis that the
9  district court used in that *DeRubeis* case from the Northern
10 District of Georgia is helpful.  It's helpful to not only allow
11 the defendant to be able to formulate a defense to whatever the
12 claims are, and it keeps the plaintiff from formulating its
13 claims based on what it learns in discovery, but it also limits
14 the risk of overexposure of highly confidential information in
15 the context of trade secret cases.
16    Now, as I suggested to Your Honor, this is not my first
17 trade secrets rodeo, and I have seen in these cases parties who
18 request incredibly confidential information, whether it's
19 warranted or not.  Things like client lists, you know,
20 information about processes that are not protected by patents
21 that are therefore not public.  Things that you -- that are
22 really, you know, the goods in the company store, that if you
23 lose this stuff, it could really impair your business going
24 forward.  I am very worried about that.  And I think, as a
25 defendant against whom I don't feel appropriate claims have

```
 1  been asserted, I have an obligation to protect my client from
 2  that and that's what I'm trying to do with this.  So, just so
 3  you know.  You know, that's my rationale behind what it is I'm
 4  trying to do.
 5      So, we're trying to get our hands around this.  We're
 6  trying to get our hands around the documents.  We're trying to
 7  get our hands around the other issues.  We're trying to figure
 8  out, in addition to what we already have with regard to
 9  documents, what we need to obtain.  So, we are trying to do
10  what we need to do, but we feel like the plaintiff needs to do
11  that too and they need to do this in the ordinary course and
12  they need to not jump the gun and come in and try to, you know,
13  cut us off at the knees on something which would limit our
14  ability to deal with these claims on the merits which I think
15  is particularly unfair when the claim hasn't been asserted, you
16  know, in detail in the first instance.  So, that's where I am.
17      I'm certainly happy to answer any questions Your Honor has
18  for me.
19          THE COURT:  Okay.  I don't have any further questions.
20  Thank you.
21          MR. GILL:  All right.  Thank you, Judge.
22          THE COURT:  Would you like to respond to that,
23  Mr. Rubman, in any way?
24          MR. RUBMAN:  Thank you, Your Honor.  Again, Gary
25  Rubman from Covington on behalf of VGT.
```