**CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

VIDEO GAMING TECHNOLOGIES, INC.,

        Plaintiff,

v.

CASTLE HILL STUDIOS LLC, *et al.*

        Defendants.

CASE NO. 17-CV-00454-GKF-JFJ

**REDACTED – PUBLIC VERSION**

**REPLY IN SUPPORT OF DEFENDANTS' MOTION CHALLENGING**
**PLAINTIFF'S DESIGNATIONS UNDER THE PROTECTIVE ORDER**

I.   INTRODUCTION

VGT squanders the first half of its lengthy opposition by advancing irrelevant conspiracy theories about a Coalition for Fair Gaming ("Coalition") and how granting Castle Hill's motion might inexplicably cause Castle Hill to violate an unrelated provision in the protective order stating materials exchanged in discovery may be "used only for purposes of this litigation." *See* Dkt. 55, § 1(g). None of this relates whatsoever to the only issue in this motion: whether VGT's confidentiality designations are proper under the protective order. Indeed, the irrelevance of the opposition's first ten pages is remarkable, running at least three layers deep:

> Layer 1.  The Coalition letters VGT attaches are not even on topic. They relate to a *suggested change* to the grandfathering law. The documents at issue here show that ███████████████████████████████████████████████

> Layer 2.  The Coalition letters do not show Castle Hill will later violate section 1(g) of the protective order if this motion is granted. This is pure speculation.

> Layer 3.  VGT's soliloquy about the Coalition fails to explain how its "confidential" and "highly confidential" designations meet the protective order standards.

When VGT finally gets around to the merits of the dispute—whether its classifications are proper under the protective order (starting at page 10)—it misstates the applicable law, advocating a "balancing analysis," where the Court must balance the "need for discovery of the trade secrets against the claim of injury resulting from disclosure." *See* Opp. at 10. This test is completely inapplicable here; it is designed to evaluate whether *discovery* of trade secrets should be permitted, not whether confidentiality designations are proper. There is no need for the Court to balance the "need for discovery" because *VGT already produced the discovery at issue* (after the Court granted Castle Hill's motion to compel and ordered VGT to do so).

The actual legal standard applicable to this motion is not in cases about discovery disputes, but in cases about confidentiality designations under protective orders. These cases clarify that such

designations are "strictly scrutinized," and that it is VGT's "heavy burden" to show, for each document it has designated, "specific prejudice or hardship that will arise from its disclosure." *See infra*, § II (full standard with citations). This particularized showing and heavy burden required likely is borne out of the "compelling public interest in disclosure of records" that make protective orders and sealed documents (including VGT's documents at issue here filed repeatedly under seal, in this motion and others) "disfavored" as a general policy of this Court. *See* LCvR79.1(a).

VGT has wholly failed to meet this heavy burden. VGT initially tries to skirt the issue, first arguing its designations are proper because Castle Hill has not specified why it wants them removed. *See* Opp. at 7-10, 17-18. But this made-up test appears nowhere, except in VGT's brief. No provision in the protective order and nothing in the case law imposes the burden on the party challenging the designations. To the contrary, the "heavy burden" to show "specific prejudice or hardship" that will arise from public disclosure is entirely VGT's, as the designating party. Next, VGT argues that Castle Hill has apparently designated similar, unspecified information as confidential, and consequently VGT's designations are acceptable. *See* Opp. at 12. This, too, means nothing. This motion is only about VGT's improper designations, not Castle Hill's. Before challenging Castle Hill designations, VGT must first meet and confer with Castle Hill, then file a motion only if the parties are unable to resolve their differences. VGT has not been through that process for any Castle Hill designation.

After sifting through all these red herrings, VGT is left with four pages of its brief, pp. 12-15, which rely on one self-serving declaration[1] from its compliance employee to argue that the challenged designations meet the applicable standards. In its argument, VGT repeatedly relies upon

---

[1] VGT's brief attaches declarations from two employees, but the one from Robert Schramer inexplicably addresses only a document whose confidentiality designation Castle Hill is not challenging in this motion. Schramer's declaration is thus not relevant.

conclusory or stereotyped rationale (*e.g.*, referring to the challenged designations with various synonyms for "confidential") but fails to meet its burden to show good cause for its designations.

The only reason these documents are interesting is not because of any trade secret or confidential information they contain, but because they relate to VGT's illegal activity.

## II.    THE VAST MAJORITY OF VGT'S OPPOSITION BRIEF IS IRRELEVANT TO THIS MOTION.

In the first ten pages of its opposition, VGT meanders off topic about how an organization called the Coalition for Fair Gaming ("Coalition") apparently lobbied the National Indian Gaming Commission ("NIGC") against adopting a change to make the NIGC grandfathering regulations permanent, and VGT's speculation that Castle Hill is behind this effort.

If the Court is wondering why it had to read these ten pages, it is not alone. The Coalition letters have nothing to do with this motion. VGT's only stated reason for spending half of its brief on this is VGT's concern that Castle Hill has not adequately explained why it is challenging these particular designations, which apparently "troubl[es]" VGT and "raises [] concerns" that if the documents are made public, Castle Hill will, in the future, violate an unrelated provision of the protective order stating materials exchanged in discovery may be "used only for purposes of this litigation." *See* Opp. 7-10, *see* Dkt. 55, § 1(g).

With respect, none of this rank speculation makes any sense. The documents at issue in this motion are entirely unrelated to the Coalition letters. The Coalition letters are about a change to make the grandfathering exemption permanent. ██████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████.

3

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER**

But even if the Coalition letters and improperly-designated VGT documents were somehow about the same thing, the letters still would have nothing to do with this motion. VGT's speculation that the Coalition letters show Castle Hill may in the future violate Section 1(g) of the protective order is baseless and does not even merit a response. VGT has no evidence that Castle Hill has ever violated this provision, and Castle Hill has not done so.

VGT also inexplicably claims that Section 1(g) somehow requires Castle Hill to explain why it has challenged the designations on these documents, and also what it plans to do if the designations are removed. *See* Opp. at 8, 17. But this, too, is not supported by anything. Neither the protective order nor any case law imposes these requirements on Castle Hill. Indeed, just the opposite, both the protective order and cases make clear that the only relevant showing when a VGT confidentiality designation is challenged must be made by VGT. *See infra*, § II.

In sum, the only thing relevant to this motion is whether VGT has met its burden to show that its documents were properly designated under the protective order. As set forth below, VGT has failed to make this showing.

### III. VGT MISSTATES THE APPLICABLE LEGAL STANDARD.

VGT claims that the applicable legal standard for this motion requires "balanc[ing] the need for discovery of the trade secrets against the claim of injury resulting from disclosure." *See* Opp. at 10 (citing *Sears v. Nissan Motor Co.*, 932 F.2d 975, at *2 (10th Cir. 1991)). According to VGT, this includes requiring Castle Hill to "establish that disclosure of a trade secret or other confidential information is relevant and necessary to the action." *See id.*

VGT is flatly wrong. There is no need to "balance the need" for discovery of trade secrets in this case because discovery has already been had—after the Court granted Castle Hill's motion to compel and ordered VGT to produce it. The cases VGT cites for this incorrect standard prove the point. Every one of its cases is about seeking a protective order to prevent production of documents

4

pursuant to discovery requests—not about whether information already produced is properly designated as confidential. *See Sears v. Nissan Motor Co.*, 932 F.2d 975, at *2 (10th Cir. 1991) ("In response to plaintiff's discovery request, defendants sought and obtained a protective order from a magistrate judge . . . . On appeal, the district court directed defendants in the underlying action to immediately produce any and all discoverable materials and documents."); *Centurion Indus., Inc. v. Warren Steurer &Assocs.*, 665 F.2d 323, 324 (10th Cir. 1981) (regarding non-party appeal from order "requiring [non-party] to disclose certain computer software trade secrets"); *Oklahoma v. Tyson Foods, Inc.*, No. 05-CV-329, 2009 WL 10271835, at *3 (N.D. Okla. Mar. 11, 2009) ("Defendants move to compel this identifying information which the state seeks to protect.").

Castle Hill addressed the correct standard in its motion—all based on cases where confidentiality designations are at issue. When challenged, confidentiality designations made under a protective order "will be strictly scrutinized according to Rule 26(c) and the protective order entered in th[e] case." *Siegel v. Blue Giant Equip., LLC*, No. 15cv143, 2015 WL 7272216, at *2 (N.D. Okla. Nov. 17, 2015). Under the protective order, "the designating party has the burden of establishing that the designation is proper." Doc. 55 at ¶ 9. In determining the propriety of a challenged designation, "the 'good cause' standard of Rule 26(c) governs, and the party asserting confidentiality must make a particular showing for each document at issue of specific prejudice or hardship that will arise from its disclosure." *Rowan v. Sunflower Elec. Power Corp.*, No. 15cv9227, 2017 WL 680070, at *2 (D. Kan. Feb. 21, 2017); *see also EQ Okla., Inc. v. A Clean Env't Co.*, No. 11cv510, 2012 U.S. Dist. LEXIS 159571, at *2 (N.D. Okla. Nov. 7, 2012) (designating party "bears the burden of demonstrating 'good cause' and requires a particular and specific demonstration of fact as distinguished from conclusory or stereotyped statements"). This showing of good cause is a heavy burden. *Grundberg v. Upjohn Co.*, 137 F.R.D. 372, 389-390 (D. Utah 1991) (quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) (stating that in response to a challenge to a

5

confidentiality designation, a party "must show good cause by demonstrating a particular need for protection," such as by "specific examples or articulated reasoning").

VGT failed to explain why these cases do not control. Instead, it wholly ignored these cases and relied on an alternative legal standard—a standard that plainly does not apply to this motion.

IV. **VGT FAILED TO "MAKE A PARTICULAR SHOWING FOR EACH DOCUMENT" OF A "SPECIFIC PREJUDICE OR HARDSHIP THAT WILL ARISE FROM ITS DISCLOSURE."**

VGT's brief is conspicuously missing the main showing required to prove its designations are proper: "a particular showing for each document" of a "specific prejudice or hardship that will arise from its disclosure." Indeed, VGT never once mentioned documents 2, 11, and 13, conceding that the "Highly Confidential" designations for these should be removed. For the remaining challenged designations, VGT groups them into three categories and used "conclusory or stereotyped statements" in an insufficient effort to justify its designations.

For its **first** category, "operational data," VGT argues that designations for 15 different documents (Nos. 3-7, 16-20, 22-23, 27-29) are proper, based only on the following:

- **Confidential:** "[b]ecause VGT keeps this information confidential . . . it qualifies as Confidential under the Protective Order."

- **Highly Confidential:** "VGT uses this operational data to make business decisions, and if it were disclosed to its competitors, including CHG, those competitors could similarly use it to gain advantages in the marketplace."

Opp. at 12. The first statement is plainly insufficient; indeed, it is utterly irrelevant. While confidentiality is obviously a prerequisite, a document needs more to qualify as Confidential—else newspaper articles kept in a safe could properly be designated Confidential.

The second statement—about "operational data" used for "business decisions" from which a competitor "could gain advantages"—is comprised of generic platitudes that VGT could say about anything. VGT never explains how these platitudes are actually true for each challenged designation.

6

Like the first statement, this fails to make "a particular showing for each document" of a "specific prejudice or hardship that will arise from its disclosure."

A simple glance at a few of these fifteen different documents shows the inadequacy of VGT's justifications, and why the documents obviously do not qualify. In challenged designation number 3, Mr. Williamson acknowledges ▮▮▮▮ *See* Mot., Ex. H at 81. He further acknowledges that ▮▮▮▮ *Id.* In number 4, Mr. Williamson is asked ▮▮▮▮ (shown in designation number 6) ▮▮▮▮ *See id.* at 82. Number 5 consists of ▮▮▮▮ *See id.* at 84-87.

VGT argues that information related to how many games it has on casino floors qualifies as Confidential because ▮▮▮▮ Opp. at 12. But this makes the very point Castle Hill is arguing: the designated materials ▮▮▮▮ —not because they reveal secret business information. VGT's assertion that the number of games on casino floors is worthy of protection because of the time and resources required to count machines (a dubious assertion that ignores how easy and cheap it would be do hire workers for such work) is irrelevant. Market research firms such as Eilers & Krejcik Gaming regularly publish detailed information about the number of VGT games in industry reports

7

and surveys. *See* Ex. 1. The only reason VGT wants to keep the information in the challenged designations private is because it pulls back the curtain on ▮▮▮▮▮.

For its **second category**, VGT argues that documents ▮▮▮▮▮ qualify as Confidential under the protective order because VGT "keeps these efforts confidential, as indicated in the 'Proprietary & Confidential Information' label" on two of the documents, and Highly Confidential because they ▮▮▮▮▮ and a competitor might use them to "alter its plans" related to upgrading games. Opp. at 13-14.

VGT's argument for confidentiality is the same circular argument as before (the documents qualifiy as Confidential under the protective order because VGT keeps them confidential), except that it relies on an even more tenuous argument—that labeling a document confidential makes it so. VGT does not cite anything in the protective order, case law, or even legal commentary that suggests labeling a document as confidential can or should qualify it for protection. Such a justification is not a viable reason for hiding the challenged material.

VGT is also unable to explain how ▮▮▮▮▮ or why a competitor would "alter its plans" based on whether or not ▮▮▮▮▮. Opp. at 13-14. In its opposition, VGT takes inconsistent positions about whether ▮▮▮▮▮. *Compare* Williamson Decl. ¶ 4 (▮▮▮▮▮ (Emphasis added)) *with* Opp. at 14 ▮▮▮▮▮ (emphasis in original.). ▮▮▮▮▮ VGT does not say. At the heart of VGT's contradictory statements is the crux of the matter: for ▮▮▮▮▮

8

███████████████████████████. *See* Mot., Ex. H at 47 ████████████████████

████████████████████████████████████████████████████████████████████).

Under its **third** category, VGT claims that documents related to "steps VGT has taken to obtain certification for its games" and "VGT's understanding of regulatory requirements" qualify as Confidential and Highly Confidential because "VGT treats these regulatory efforts as confidential business information" and competitors could use these materials to gain an advantage "in seeking certification for their games" or promoting their products to VGT's detriment. Opp. at 14.[2]

This may be the least compelling justification of them all. Initially included amongst this batch of documents VGT designated as "highly confidential" was a document explaining in great detail "VGT's understanding of regulatory requirements" and "steps VGT has taken to obtain certification for its games." *See* Ex. 2. When Castle Hill showed VGT that this document was publicly available on the internet, VGT was forced to remove the designation. *See* Ex. 3. Despite this, VGT unabashedly continues to claim that documents are confidential and that competitors could use them to gain an advantage, without ever explaining how that makes any sense when VGT publishes this type of information for the world to see.

While it may be interesting to hear how a competitor would use its competition's regulatory processes to promote its own products, VGT does not give specific examples (real or imagined) to help the Court understand the "hardship that will arise" from disclosure of this material. The truth is VGT's "understanding of regulatory requirements" it seeks to protect here is only interesting because it is dead wrong. ████████████████████████████████████████.

---

[2] The Court should ignore VGT's red-herring-arguments related to VGT testing lab submissions that Castle Hill is not challenging and Castle Hill's designations under the protective order. These irrelevant arguments only distract from the issue at hand: whether VGT's challenged designations are proper.

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER**

In a last-ditch effort to make it seem like information regarding its regulatory processes qualify as Highly Confidential, VGT says that "[r]egulated entities, including VGT, often invest in understanding regulations and developing compliance programs based on that understanding, and VGT typically keeps such compliance information confidential." Opp. at 15. In fact, ▮▮▮▮▮ *Id.* This is another inconsistent position by VGT designed to muddle the clear truth. This is apparent from the deposition of VGT's vice president in charge of compliance, who said that ▮▮▮▮▮ *See* Mot., Ex. G at 51:18-53:6; Ex. H at 64:10-16. If VGT ▮▮▮▮▮, it could have said so. But its silence is telling. Absent a showing that it ▮▮▮▮▮ VGT cannot claim this information is the type of confidential information Rule 26(c) was designed to protect.

## V. CONCLUSION.

For the foregoing reasons, Castle Hill requests this Court issue an order removing Plaintiff's "Highly Confidential" or "Confidential" designations from the documents and deposition testimony set forth in this motion. Castle Hill further requests an order unsealing all documents filed in support of this motion.

Dated: February 21, 2019

Respectfully submitted,

/s/ Jonathan S. Jacobs
Duane H. Zobrist (admitted *pro hac vice*)
Jonathan S. Jacobs (admitted *pro hac vice*)
ZŌBLAW
1900 Arlington Blvd., Suite B
Charlottesville, VA 22903

10

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER**

dzobrist@zoblaw.com
jjacobs@zoblaw.com

Robert C. Gill (admitted *pro hac vice*)
Henry A. Platt (admitted *pro hac vice*)
Thomas S. Schaufelberger (admitted *pro hac vice*)
Sherry H. Flax (admitted *pro hac vice*)
Matthew J. Antonelli (admitted *pro hac vice*)
Jeremy B. Darling (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
robert.gill@saul.com
henry.platt@saul.com
tschauf@saul.com
sherry.flax@saul.com
matt.antonelli@saul.com
jeremy.darling@saul.com

James C. Hodges, OBA #4254
JAMES C. HODGES, P.C.
2622 East 21st Street, Suite 4
Tulsa, Oklahoma 74114
(918) 779-7078
(918) 770-9779 (facsimile)
JHodges@HodgesLC.com

*Counsel for Defendants*

11

**CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER**

# CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of February, 2019, I caused a copy of the foregoing **REPLY IN SUPPORT OF DEFENDANTS' MOTION CHALLENGING PLAINTIFF'S DESIGNATIONS UNDER THE PROTECTIVE ORDER** to be served via ECF to the following counsel for Plaintiff:

Graydon Dean Luthey, Jr.
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
(918) 595-4821
(918) 595-4990 (facsimile)
dluthey@gablelaw.com
*Counsel for Plaintiff*

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1221
(212) 841-1010 (facsimile)
nroman@cov.com
*Counsel for Plaintiff*

Gary M. Rubman
Peter Swanson
Michael Sawyer
Rebecca B. Dalton
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
(202) 778-5465 (facsimile)
grubman@cov.com
pswanson@cov.com
msawyer@cov.com
rdalton@cov.com
*Counsel for Plaintiff*

                                        */s/ Jonathan S. Jacobs*
                                         Jonathan S. Jocobs