IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VIDEO GAMING TECHNOLOGIES, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CASTLE HILL STUDIOS LLC ) <br> (d/b/a CASTLE HILL GAMING); ) <br> CASTLE HILL HOLDING LLC ) <br> (d/b/a CASTLE HILL GAMING); and ) <br> IRONWORKS DEVELOPMENT, LLC ) <br> (d/b/a CASTLE HILL GAMING), ) <br> ) <br> Defendants. ) | Case No. 17-CV-00454-GKF-JFJ <br> **FILED UNDER SEAL** |

**ORDER**

This matter comes before the court on the Motion to Exclude Plaintiff's Expert Stacy Friedman [Doc. 173] of defendants Castle Hill Studios, LLC; Castle Hill Holding, LLC; and Ironworks Development, LLC (collectively, "Castle Hill").[1]  For the reasons discussed below, the motion is granted in part and denied in part.

**I.     Background**

Plaintiff Video Gaming Technologies, Inc. ("VGT") develops, manufactures, and distributes class II bingo-based player terminals.  Castle Hill competes with VGT in the class II terminal market and is operated by former VGT employees.  Although Castle Hill originally manufactured class III games, VGT alleges that, sometime between March 2015 and June 2016, Castle Hill began developing and offering class II games that closely resemble VGT's class II

---

[1] Defendants also filed a sealed, unredacted version of the motion as [Doc. 172].  The references contained in this order are to the unredacted version.  Accordingly, the court files this order under seal, attorneys' eyes only.  At set forth below, the court will enter an unsealed order after consideration of the parties' proposed redactions, if any.

c/All Counsel

games, incorporate marks and themes confusingly similar to the VGT marks and themes, and utilize VGT trade secrets.

Based on these allegations, the First Amended Complaint (the operative pleading) includes eight counts: (1) federal trademark infringement in violation of the Lanham Act (15 U.S.C. § 1114); (2) unfair competition and trade dress infringement for product packaging in violation of the Lanham Act (15 U.S.C. § 1125(a)); (3) unfair competition, trade dress infringement, and trademark infringement in violation of the Oklahoma Deceptive Practices Act (78 O.S. §§ 51-56); (4) unfair competition, trade dress infringement, and trademark infringement under common law; (5) misappropriation of trade secrets in violation of the Oklahoma Uniform Trade Secrets Act (78 O.S. §§ 85-94); (6) misappropriation of confidential business information in violation of common law; (7) misappropriation of trade secrets in violation of the Defend Trade Secrets Act of 2016 (18 U.S.C. §§ 1836 *et seq.*); and (8) misappropriation of trade secrets in violation of the Virginia Uniform Trade Secrets Act (VA. CODE ANN. §§ 59.1-336 to 59.1-343). [Doc. 103].

VGT retained professional casino game designer and mathematician Stacy Friedman to offer expert opinions regarding: (a) the casino game development process, (b) the nature of a casino floor, (c) how the look and feel of a game affect a player's willingness to play, (d) certain issues relating to the look and feel of VGT's games, and (e) Castle Hill's use, acquisition, and disclosure of VGT's trade secrets and confidential business information. On August 10, 2018, Friedman provided an "Opening Expert Report," [Doc. 172-2], and, on September 14, 2018, Friedman submitted a "Reply Expert Report" in response to the rebuttal reports of Castle Hill experts Joseph Valandra, Robert Zeidman, and W. Todd Schoettelkotte.[2] Castle Hill deposed Friedman on

---

[2] For purposes of deciding this motion, the court does not consider the Declaration of Stacy Friedman in Support of Plaintiff's Motion for Partial Summary Judgment or the Declaration of

Monday, September 24, 2019, during which he offered additional opinions. Castle Hill now seeks to disqualify Friedman under FED. R. EVID. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

**II.     Standard**

Pursuant to Federal Rule of Evidence 702,

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)     the testimony is based on sufficient facts or data;
>
> (c)     the testimony is the product of reliable principles and methods; and
>
> (d)     the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 imposes on the trial court an important gate-keeping obligation, "to 'ensure that any and all [expert] testimony . . . is not only relevant, but reliable.'" *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert*, 509 U.S. at 589). Thus, "the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co., Ltd.*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592). To determine whether an expert's opinion is admissible, the district court must generally undertake a two-step analysis: (1) first, to determine "whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion," and (2) second, to determine "whether the

---

Stacy Friedman in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment, both of which are the subject of motions to strike filed by Castle Hill. *See* [Doc. 237 and Doc. 273].

expert's opinion is reliable by assessing the underlying reasoning and methodology[.]" *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1307 (10th Cir. 2015) (internal quotations omitted).

The court notes, however, this case is scheduled for a bench trial. [Doc. 202 and Doc. 312]. "[W]hile *Daubert*'s standards must still be met, the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise when a district court is conducting a bench trial." *Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009). Thus, "the 'gate-keeping' function is less important" and "a judge conducting a bench trial maintains greater leeway in admitting questionable evidence, weighing its persuasive value upon presentation." *Valley View Dev., Inc. v. U.S. ex rel. U.S. Army Corps of Eng'rs*, 721 F. Supp. 2d 1024, 1047 (N.D. Okla. 2010) (quoting *Tyson Foods, Inc.*, 565 F.3d at 779-80).

**III.   Analysis**

Castle Hill challenges Friedman's opinions and testimony on five grounds. The court separately considers each ground.

　　　　*A.   Qualifications and Methodology Related to Opinions on VGT Trade Dress*

In the motion to exclude, Castle Hill specifically cites only paragraph 13 of Friedman's report with respect to his opinions on the distinctiveness of VGT's trade dress. In paragraph 13, Friedman opines: "In my opinion as a game designer, the look and feel of these VGT games is distinctive in the gaming industry." [Doc. 172, p. 6 (citing [Doc. 172-2, p. 8, ¶ 13])]. In response, VGT withdrew "any statement concerning 'distinctiveness' in Mr. Friedman's reports" and agreed that Friedman would not offer an opinion on distinctiveness at trial. [Doc. 232, pp. 7-8]. Thus, Castle Hill's motion is granted with respect to Friedman's opinion that "the look and feel of the[] VGT games is distinctive in the gaming industry."

However, in its response, VGT also pointed to other "trade dress-related opinions" of Friedman, which it contends constitute proper expert testimony. Friedman's other "trade dress-related opinions" include his opinions related to casino gaming start-ups, trend-following in designing casino games, the nature of a gaming floor, and challenges faced by class II game designers; his opinion that alternatives to VGT's trade dress existed; and his opinion that the look and feel of Castle Hill's games is more similar to VGT games than any other third-party game of which he is aware, including the third-party games identified by Castle Hill as most similar. Castle Hill asserts these "trade dress-related opinions" are also inadmissible under *Daubert*.

Castle Hill first challenges Friedman's qualifications to offer the "trade-dress related opinions," citing his alleged limited exposure to class II games and casinos. Based on its review of the materials before it, the court concludes Friedman is qualified by knowledge, skill, and experience to offer opinions related to class II games. Friedman began working in the gaming industry in 1998 as a game model engineer. [Doc. 172-2, p. 5, ¶ 4]. In 2001, he started an independent casino game design and analysis consultancy. [Id. p. 6, ¶ 5]. In his work as a game designer, Friedman also designed or mathematically analyzed different types of bingo games, including American-style bingo, as well as games with different card shapes, quantities of available numbers, or rules for winning. [*Id.* pp. 6-7, ¶ 7]. Further, as a litigation expert or consultant, Friedman previously offered expert opinions with respect to bingo-related matters, including analysis of class II games in a non-tribal Alabama casino and the behavior of certain electronic bingo games in Costa Rica. [*Id.* p. 7, ¶ 8; Doc. 232-2]. Friedman has testified in this case with regard to his familiarity and general experience with class II casino games and floors during his twenty-years in the gaming industry. [Doc. 172-4, pp. 253:22 to 256:5 and 277:22 to 278:10].

The court notes Castle Hill's criticism of Friedman's class II experience as being limited to patent and regulatory cases. However, Castle Hill's argument focuses on Friedman's experience as an expert and overlooks his prior work as a game designer, which included work with bingo-style games. Further, Castle Hill may explore the depth of Friedman's experience with class II games—including VGT and Castle Hill class II games—through cross-examination. *See Daubert*, 509 U.S. at 596 (citing "[v]igorous cross-examination [and] presentation of contrary evidence" as among "the traditional and appropriate means of attacking shaky but admissible evidence"). The court will not exclude Friedman as unqualified on the issue.

Castle Hill also objects to Friedman's "trade-dress related opinions" as premised on an unreliable methodology. To formulate his opinions, Friedman reviewed documents provided to him by VGT, including photographs and videos of VGT and Castle Hill Class II games and game play. [Doc. 172-4, pp. 253:9-21 and 277:10-21]. Additionally, in October 2017, Friedman visited Indigo Sky Casino in Wyandotte, Oklahoma, where he played VGT and Castle Hill's class II games. [Doc. 172-4, pp. 48:1 to 50:22]. Finally, Friedman relied on his own 20 years of experience in the gaming industry working with various vendors. [Doc. 172-4, pp. 253:9-21 and 277:10-21]. Application of experience to the particular facts of a case may constitute a reliable methodology, provided the expert explains "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." FED. R. EVID. 702 advisory committee's notes to 2000 amendments.

Friedman's report and deposition testimony adequately explain Friedman's experience and how Friedman applied that experience to the facts of this case to reach his opinions. This is particularly true with respect to his opinions related to casino gaming start-ups, trend-following in designing casino games, the nature of a gaming floor, and the challenges faced by class II game

designers. *See Shuffle Tech Int'l, LLC v. Sci. Games Corp.*, No. 15-C-3702, 2018 WL 2009504, at **3-4 (N.D. Ill. Apr. 29, 2018). Further, with respect to his opinions that alternative designs exist to VGT's trade dress, Friedman cites to other evidence of alternatives. [Doc. 172-2, pp. 18-19, ¶¶ 35-38]. Castle Hill's objections go to the weight, not the admissibility, of Friedman's opinions.[3] Likewise, the fact that Friedman's experience with playing the VGT and Castle Hill class II games is limited to his single trip to Indigo Sky Casino does not render his opinion so unreliable to warrant exclusion. Castle Hill's objections may be the subject of cross-examination, but do not warrant exclusion, particularly as this case will be tried to the court.

Further with respect to Friedman's opinions that VGT and Castle Hill's trade dress are similar and that VGT's trade dress is more similar to Castle Hill's trade dress than that of third-party game manufacturer International Gaming Technology, Friedman may opine as to the uniqueness of the elements of VGT's trade dress when compared to that of Castle Hill and IGT. *See Skycam, Inc. v. Bennett*, No. 09-CV-294-GKF-FHM, 2011 WL 2551188, at *5 (N.D. Okla. June 27, 2011). Castle Hill may ultimately convince the court that the testimony is not helpful, but the court will make that determination after hearing Friedman's testimony.

---

[3] However, Friedman opines that "most competitors nowadays use an electronic sound of a bell, as opposed to a physical mechanical bell [which VGT uses]." [Doc. 172-2, p. 19, ¶ 37]. In his deposition, Friedman admitted that he had not spent enough time to say whether other class II manufacturers use a mechanical bell. [Doc. 172-4, p. 300:10-16]. Friedman's opinion that "most competitors" [to the extent he is referencing class II manufacturers] use an electronic bell sound is therefore *ipse dixit* and excluded.

B.  *Qualifications and Methodology on the Value of Class II Development System and Castle Hill's Alleged Avoided Research and Development Costs*

Castle Hill next argues that Friedman is unqualified to opine regarding the approximate cost of VGT and Castle Hill's respective class II system development and, further, that Friedman applied an unreliable methodology in reaching his conclusions.

With respect to qualifications, the court first notes that Friedman does not offer an opinion as to a specific dollar amount of cost savings. *See* [Doc. 172-4, pp. 227:10 to 228:2]. Thus, the court is not persuaded that Friedman's lack of an accounting background disqualifies him from offering cost savings opinions. Rather, Friedman's 20 years of experience working with casino gaming companies in project development, during which he has been involved with project timelines, budgets, staffing, and resource allocation, and in designing and mathematically analyzing bingo games, renders him qualified to opine with respect to Castle Hill's ability to bring its games to market more quickly and at less expense. *See Core Labs. LP v. Spectrum Tracer Servs., L.L.C.*, No. CIV-11-1157-M, 2016 WL 4467443, at **2-3 (W.D. Okla. Mar. 7, 2016); [Doc. 172-2, pp. 6-7, ¶ 7; Doc. 172-3, p. 56, ¶ 141].

Castle Hill objects to Friedman's cost savings opinions as being premised on an unreliable methodology. Castle Hill first objects to Friedman's failure to employ a recognized method to value Castle Hill's software. However, as stated above, Friedman does not attempt to quantify the actual amount of costs savings accrued to Castle Hill and therefore his unfamiliarity with recognized valuation methodology is not disqualifying. Further, *Daubert* does not dictate the method to be used, only that the method be reliable.

The court is persuaded that Friedman applied a reliable methodology in formulating his opinions with respect to cost savings. Friedman based his cost savings and development opinions on information received from both VGT and Castle Hill, as well as his own experience. He

evaluated the time for Castle Hill to bring its class II systems to market, explained the ways in which Castle Hill utilized VGT information, and considered, but ultimately discarded, alternate explanations for Castle Hill's decreased development costs. [Doc. 232, pp. 12-13]. Although Friedman did not personally review VGT or Castle Hill financial information, his reliance on information received from knowledgeable VGT and Castle Hill agents is reasonable and proper. *Core Labs. LP*, 2016 WL 4467443, at **2-3.

Castle Hill criticizes Friedman for relying on a single email from former VGT employee and current Castle Hill employee, Alan Roireau, which it characterizes as a "five minute guesstimate,"[4] and failing to personally review Castle Hill or VGT financial information. Additionally, Castle Hill points out that Friedman relies on conversations with VGT software engineers, rather than accountants, and there is no evidence that those engineers reviewed financial information. However, objections to the factual underpinnings of an expert's opinions go to the weight, not the admissibility, of the testimony. *Ortega v. City & Cnty. of Denver*, No. 11-CV-02394-WJM-CBS, 2013 WL 438579, at **4-5 (D. Colo. Feb. 5, 2013); *In re Commercial Fin. Servs., Inc.,* 350 B.R. 559, 568 (N.D. Okla. Bankr. 2005) ("An expert's assumption of certain facts to the exclusion of others does not necessarily render the expert's opinion unreliable."). The information considered (or not considered) by Friedman in formulating his opinions are properly the basis for cross-examination, not exclusion.

---

[4] The court notes VGT's evidence that Castle Hill used Alan Roireau's calculations to place a value on Castle Hill's bingo engine for lenders to consider as collateral for a loan.

### C. Technical Opinions

Castle Hill next contends that Friedman's methodology is unreliable with respect to his technical opinions on two separate topics: (1) source code, and (2) the bingo card generation algorithm.

#### 1. Source Code

Friedman testified and states in his reply expert report that he does not intend to offer any opinions as to whether Castle Hill copied VGT's source code. [Doc. 172-4, pp. 159:5-8; 168:13-19; Doc. 172-3, p. 28, ¶ 73]. Thus, Castle Hill's motion is granted with respect to testimony or opinions by Friedman that Castle Hill copied VGT's source code.

However, Castle Hill also objects to portions of Friedman's Opening Report that note evidence indicating that former VGT employees took proprietary information, including source code, when they left VGT's employment. *See* [Doc. 172-2, pp. 48-49, ¶¶ 105-109]. Castle Hill contends these paragraphs improperly summarize evidence. However, concerns regarding "closing arguments" via experts or that a juror may give improper weight to fact testimony recounted by an expert are not implicated as the court will act as the finder of fact in this matter. *Cf. iFreedom Direct Corp. v. First Tenn. Bank Nat'l Ass'n*, No. 09-CV-205-DN, 2012 WL 3067597, at *3 (D. Utah July 27, 2012). Thus, the court does not exclude the evidence on this basis.

Nor is the court persuaded that the inference drawn by Friedman from the testimony—that Castle Hill utilized VGT's confidential or proprietary information, to its advantage—is unreliable. Friedman's Opening Report recounts evidence that Castle Hill had access to various forms of VGT's confidential or proprietary information, including its source code; cites specific evidence that Castle Hill utilized some of this information to its benefit; and then, based on his own

experience, infers that Castle Hill's use of VGT confidential information permitted Castle Hill to get its class II games to market more quickly and at a lower cost than it would have without the VGT information. The court concludes this methodology is reliable.

### 2. Bingo Card Generation Algorithm

Castle Hill next asks the court to exclude Friedman's opinion, contained in paragraph 70 of his Opening Report, that VGT's bingo card generation algorithm is not generally known. Castle Hill criticizes Friedman's failure to conduct independent research to determine whether the algorithm had been published. However, to formulate his opinions, Friedman relied on his own experience in the gaming industry as well as the efforts undertaken by VGT to maintain the algorithm's secrecy. Friedman's lack of independent research may be the subject of cross-examination, but is not the proper basis for exclusion, particularly in a bench trial. Thus, the court denies Castle Hill's motion to strike Friedman's opinion contained in paragraph 70 of the Opening Report that "VGT's approach to generating bingo cards is not generally known."

### D. Summaries of Evidence and Testimony of Fact Witnesses

Castle Hill next urges the court to exclude Friedman's opinions because Friedman "spends a significant portion of his expert report and reply report characterizing documents and testimony in this case." [Doc. 172, p. 23]. However, as previously stated, concerns regarding juror confusion are not implicated in a bench trial. *See Valley View Dev., Inc.*, 721 F. Supp. 2d at 1047. Accordingly, Castle Hill's motion to exclude on this basis is denied.

### E. Improper Legal Conclusions and Standards

Finally, Castle Hill seeks exclusion of Friedman's opinions that VGT's algorithms and information constitute "trade secrets" and "confidential or proprietary information" or that Castle Hill "misappropriated" that information. Castle Hill specifically objects to the following

paragraphs included in Friedman's Opening Report: paragraphs 56-60, opining that VGT developed valuable trade secrets and confidential information related to class II games and paragraphs 111-126, opining that Castle Hill misappropriated VGT's bingo card generation and uniqueness testing algorithms.[5]

Castle Hill is correct that courts have prohibited experts from testing that information constitutes a "trade secret" or "confidential information" or misappropriation of same. *See Skycam, Inc.,* 2011 WL 2551188, at \*5; *AMTEC Corp. v. Non-Lethal Defense, Inc.*, No. 15-CV-450-WS-CAS, 2018 WL 5602906, at \*1 (N.D. Fla. May 24, 2018); *Joe N. Pratt Ins. v. Doane,* No. V-07-07, 2009 WL 5220646, at \*5 (S.D. Tex. Dec. 30, 2009). Thus, the court excludes Friedman's opinions that "VGT has developed trade secrets and confidential information related to addressing the regulatory requirements of Class II gaming, overcoming technological issues, and creating fun, profitable games" [Doc. 172-2, p. 26, ¶ 56], "[Castle Hill] misappropriated its bingo card generation algorithms from VGT" [*Id.* p. 49, ¶ 111]; "[Castle Hill] misappropriated VGT's bingo card algorithms" [*Id.* p. 55, ¶ 119]; and "[Castle Hill] misappropriated VGT's uniqueness testing algorithm" [*Id.* p. 57, ¶ 122].[6]

However, Friedman may testify regarding "unique" aspects of VGT's algorithms and games, what information each party possessed, industry customs, the circumstances surrounding VGT's development of the information and the efforts undertaken to maintain confidentiality, the

---

[5] Castle Hill also objects to paragraphs 95-98 and 110, wherein Friedman opines that Castle Hill's class II gaming system could not have been developed so quickly without VGT's confidential "know-how." However, the opinions in those paragraphs are not legal conclusions and they will not be excluded on this basis.

[6] For the purposes of ruling on VGT's motion for partial summary judgment [Doc. 178] and Castle Hill's motion for summary judgment [Doc. 188], the court will disregard any references to "trade secret," "confidential information," and "misappropriation" and make its own determination.

significance and value of secrecy, and the circumstances surrounding Castle Hill's development of its class II games. To the extent Castle Hill is concerned that Friedman's opinions invade the province of this court as the ultimate arbiter of the law, Castle Hill can be assured that the court will not permit Friedman's testimony and opinions to invade its role, both at the summary judgment stage or during the bench trial of this matter.[7] *See Valley View Dev., Inc.*, 721 F. Supp. 2d at 1048-49.

## IV. Conclusion

WHEREFORE, Defendants' Motion to Exclude Plaintiff's Expert Stacy Friedman [Doc. 173] is granted in part and denied in part. Mr. Friedman may offer his opinions consistent with this order. The parties may file proposed redactions, or state their non-objection to public filing of this order, no later than June 12, 2019.

DATED this 29th day of May, 2019.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE

---

[7] Moreover, Friedman's references to existing law do not render his opinions inadmissible. *See McNeese v. Access Midstream Partners, L.P.,* No. CIV-14-503-D, 2016 WL 9211747, at *3 (W.D Okla. May 18, 2016) (concluding an expert's opinions were not deemed inadmissible based solely on citation to relevant case law because "[a]n expert may refer to the existing law in expressing an opinion without such reference rendering his opinion inadmissible").