IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VIDEO GAMING TECHNOLOGIES, INC., | ) ) ) |
| Plaintiff, | ) ) Case No. 17-CV-454-GKF-JFJ ) |
| v. | ) ) |
| CASTLE HILL STUDIOS LLC; CASTLE HILL HOLDING LLC; and IRONWORKS DEVELOPMENT, LLC, | ) ) ) ) |
| Defendants. | ) ) |

## OPINION AND ORDER[1]

Before the Court is Defendants' Motion Challenging Plaintiff's Designations Under the Protective Order ("Motion"), which requests that the Court "issue an Order removing Plaintiff's 'Highly Confidential' or 'Confidential' designations" from the challenged pretrial discovery materials. ECF No. 285 at 14.[2] For reasons explained below, the Motion is denied.

---

[1] This is a redacted version of the Sealed Order entered May 24, 2019 (ECF No. 314). This Order includes all of VGT's requested redactions and corrects typographical errors. The Court finds these redactions appropriate, because this Order discusses VGT's confidential materials solely for the purpose of resolving a discovery designation dispute. *See Parson v. Farley*, 352 F. Supp. 3d 1141, 1153-55 (N.D. Okla. 2018) (court has discretion to seal court records, considering the role of the material at issue in the exercise of Article III judicial power, the value of such information to those monitoring federal courts, and interests of party seeking to maintain seal). The redactions provide an appropriate balance between permitting public access to this Order and protecting VGT's confidential discovery materials that may play no role in adjudication of the parties' substantive rights.

[2] Castle Hill seeks de-designation of all materials in their pretrial discovery form and has not moved the Court to unseal any specific "judicial record." *See generally JetAway Aviation, LLC v. Bd. of Cnty. Comm'rs of Cnty. of Montrose, Colo.*, 754 F.3d 824, 826 (10th Cir. 2014) (explaining common-law right of public access to "judicial records" and applicable test where records have informed a court's decision-making process). *See also Littlebear v. Advanced Bionics, LLC*, No. 11-CV-418-GKF-PJC, 2012 WL 2979023, at *2 (N.D. Okla. July 20, 2012) (noting that "public dissemination of discovery material is distinguishable from the general presumption of public access to trial and court records").

I. **Relevant Background**

A. **Claims and Defenses**

Plaintiff Video Gaming Technology, Inc. ("VGT") alleges that VGT and Defendants Castle Hill Studios, LLC, d/b/a Castle Hill Gaming, Castle Holdings, LLC, and Ironworks Development, LLC ("Castle Hill") are competitors who distribute Class II bingo-based player terminals. VGT alleges Castle Hill, which was founded by former VGT employees, copied VGT's games and improperly used its trade secrets. VGT sued Castle Hill for (1) trademark infringement, trade dress infringement, and unfair competition; (2) misappropriation of trade secrets; and (3) misappropriation of confidential business information. Relevant to this Motion, Castle Hill asserts the affirmative defenses of unclean hands and illegality. Castle Hill argues VGT should not be permitted to recover its requested equitable remedy of disgorgement, due in part to VGT's non-compliance with Minimum Technical Standards ("Standards") set by the National Indian Gaming Commission ("NIGC"). *See* 25 C.F.R. § 547.1, *et seq.* Castle Hill contends many of VGT's games are not eligible for "grandfathered" status under these regulations.[3] VGT has moved for summary judgment on both affirmative defenses.

B. **Stipulated Protective Order**

Upon joint motion of the parties (ECF No. 53), the Court entered a Stipulated Protective Order ("SPO") (ECF No. 55), which is a blanket protective order in the standard form utilized by

---

[3] The Standards, which were promulgated in 2008, permitted certain gaming systems to remain on the gaming floor, even if non-compliant with the Standards, for a five-year period. *See* Minimum Technical Standards for Class II Gaming Systems and Equipment, 82 Fed. Reg. 61172 (Dec. 27, 2017) (explaining history of "sunset provision"). This compliance deadline was delayed another five years until November 10, 2018, and then was removed altogether prior to that deadline's arrival. *Id.* The parties refer to gaming systems permitted to remain on the floor as "grandfathered," although they dispute what systems qualify for "grandfathered" status. The Court's use of the term "grandfathered" in this Order is not intended to adopt either party's proposed meaning.

this Court.[4] The SPO permits each party to designate pretrial discovery as "confidential," "highly confidential," or "highly confidential source code,"[5] ECF No. 55 at ¶¶ 1, 2, and creates a process whereby a party challenging a designation can file a motion with the Court, *id.* at ¶ 9. The SPO restricts disclosure of designated materials to specific individuals, depending on the designation. *See, e.g, id*. at ¶ 4(b), 5(b). The SPO further provides that discovery produced in the litigation, whether designated as confidential or not, may not be used for purposes other than the litigation. *Id.* ¶ 1(g). All designated materials under the SPO may be filed with the Court under seal, in accordance with the Court's General Order 08-11 and with Court permission. *Id.* at ¶ 2(f). Any use of designated materials at trial is determined by the Court at the pretrial conference. *Id.* at ¶ 8.

### C. Challenged Designations and Parties' Arguments

In the pending Motion, Castle Hill seeks de-designation of pretrial discovery materials designated by VGT as "confidential" and "highly confidential" under the SPO. Specifically, the Motion challenges: (1) designations of deposition testimony provided by Richard Williamson ("Williamson"), both in his capacity as VGT's Vice President of Gaming Compliance and as VGT's Rule 30(b)(6) corporate designee as to compliance issues, *see* ECF No. 284 at Ex. G (6/4/18 Depo.), Ex. H (10/2/18 Depo.); and (2) documents related to or referenced during Williamson's testimony, *see id.* at Exs. B-F (collectively, "Compliance Discovery"). All challenged materials relate to VGT's regulatory compliance and grandfathered systems. Regulatory compliance is not the general subject of this litigation and is relevant only to two equitable defenses raised by Castle Hill.

---

[4] Blanket protective orders "have become standard practice and are routinely approved by courts, frequently at the stipulated request of the parties." *Burke v. Glanz*, No. 11-CV-720-JED-PJC, 2013 WL 211096, at *2 (N.D. Okla. Jan. 18, 2013).

[5] In this Motion, Castle Hill does not seek de-designation of any "highly confidential source code."

3

The challenged documents consist of: (1) REDACTED which were labeled at the time of their creation as "highly proprietary and confidential," ECF No. 284 at Exs. B, E; (2) REDACTED *id.* at Exs. C, F;[6] and (3) REDACTED during Williamson's deposition, *id.* at Ex. D. All documents were labeled by VGT as "Highly Confidential" under the SPO. All challenged testimony can be categorized as: (1) testimony inquiring about data contained on the above-listed exhibits, Nos. 3-5, 16-19, 20;[7] (2) testimony regarding VGT's submissions to regulatory testing labs or other regulatory certification efforts for grandfathered games; *see* Nos. 8, 9, 10, 12, 15, 22, 23, 24, 25, 26; (3) numbers of three-reel mechanical games on casino floors from year to year and whether they qualify as grandfathered, Nos. 22, 23, 24; and (4) VGT's interpretation and application of "grandfathered" status to its gaming systems; *see* Nos. 1, 12, 14.[8] VGT designated most testimony as "Highly Confidential," Nos. 1, 3, 4, 5, 7, 14, 15, 16-19, 20, 22, 23-26, and labeled some as "Confidential," No. 8, 9, 10, 12.

Castle Hill argues that *none* of the Compliance Discovery satisfies even the "Confidential" definition under the SPO, and that VGT is abusing the SPO to hide "illegal activity." ECF No. 285 at 3. Castle Hill argues that the "true purpose of VGT's designations is to prevent disclosure of its

---

[6] VGT disputes that REDACTED *See* ECF No. 290 at 5 n.6.

[7] These numbers coincide with Castle Hill's chart at pages 5-7 of the Motion.

[8] In its response, VGT withdrew any designation for Testimony Nos. 2, 11, 13, and 21, and VGT changed No. 12 from "highly confidential" to "confidential." The Court therefore does not address Nos. 2, 11, 13, and 21.

4

flouting federal regulations." *Id.* at 8. This theme is continued throughout the Motion. *See, e.g., id.* at 10 (arguing that upgrade information "does not compromise or jeopardize VGT's competitive business interests" and that "VGT wants to keep this information confidential because it reveals VGT's illegal activity"). Castle Hill has not articulated any need for greater access to the Compliance Discovery and argues that its motives are irrelevant.

VGT argues that the designations satisfy the definitions in the SPO and has submitted a declaration by Williamson in support of the designation. VGT also argues Castle Hill has no need for greater access to the information to defend this case, and that the Motion is merely an "attempt to smear VGT in the public eye" and "support its separate efforts to lobby NIGC on the same issues [related to regulatory compliance and grandfathered games]." ECF No. 289 at 10. VGT attaches letters to NGIC from an entity known as The Coalition for Fair Gaming ("CFG"), which VGT contends has ties to Castle Hill's lawyers and officials. These letters discuss the grandfathering issues under the regulations and urge NIGC to take certain actions in relation to grandfathered games. *See* ECF No. 290 at Exs. 1, 6.

## II. Analysis

### A. Legal Standards

Under the terms of the SPO and Rule 26(c), VGT bears the burden of establishing its designations are proper under the SPO. *See* ECF No. 55 at ¶ 9; Fed. R. Civ. P. 26(c)(1) (permitting court to enter protective order on showing of good cause by party seeking protection). When a designation is challenged, a court must "strictly scrutinize[]" the designation "according to Rule 26(c) and the protective order entered" in the case. *Siegel v. Blue Giant Equip.*, LLC, No. 15-CV-143-TCK-PJC, 2015 WL 7272216, at *2 (N.D. Okla. Nov. 17, 2015); *Coll v. Stryker Corp.*, No. 14-CV-1089 KG/SMV, 2017 WL 3190658, at *8 (D.N.M. May 24, 2017) (once challenged,

5

designating party must show designations actually qualify for protection, not merely that party had good-faith basis for designating).

Rule 26(c)(1) provides that a "court may, for good cause shown, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret, or other confidential research, development, or commercial information not be revealed or be *revealed only in a specified way*." Fed. R. Civ. P. 26(c)(1)(G) (emphasis added). Under Tenth Circuit law, a party seeking protection under Rule 26(c)(1), either to avoid disclosure or to restrict disclosure in a specified manner, must "first establish that the information sought is a trade secret [or other confidential research, development, or commercial information]" and then "demonstrate that its disclosure might be harmful." *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981); *Siegel*, 2015 WL 7272216, at *2 (party seeking protection must show "the information sought constitutes a trade secret, or other confidential research, development, or commercial information and then demonstrate that its disclosure might be harmful"). In establishing the requisite harm, the party seeking protection must make a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 245 (D. Kan. 2010); *see also Seigel*, 2015 WL 7272216, at * 1 (same).

Generally, "[i]f these requirements are met, the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets [or confidential commercial information] is relevant and necessary to the action." *Centurion Indus., Inc.,* 665 F.2d at 325. The court then balances the need for the confidential information against the claim of injury resulting from disclosure, and courts have discretion in deciding whether the need outweighs the harm of disclosure. *Id.* at 325-326. If the Court decides that, on balance, the information must be disclosed, "the appropriate safeguards that should attend their disclosure by means of a protective order are also a matter

within the trial court's discretion." *Id.* In deciding these issues, courts may consider "the background of the total situation, including consideration of such factors as the dangers of abuse, good faith, adequacy of protective measures, and the availability of other means of proof." *Sears v. Nissan Motor Co., Ltd.*, 1991 WL 80741, at *2 (10th Cir. 1991) (unpublished); *Sky Harbor Air Serv., Inc. v. Reams*, No. CV 08-CV-150-D, 2009 WL 10688445, at *2 (D. Wyo. Feb. 27, 2009) (balancing respective harms to determine form and scope of protective order).

Contrary to Castle Hill's argument, the Court finds these principles provide a helpful legal framework in analyzing whether designations are proper under an agreed protective order. *See Coll*, 2017 WL 3190658, at *8 (applying *Centurion* and other established Tenth Circuit principles in addressing motion to de-designate). The Court's ultimate duty is the same – to determine whether good cause exists to protect the information in the specific manner requested, and the Court retains discretion to balance interests in making these case-by-case, fact-specific determinations. *See Siegel*, 2015 WL 7272216, at * 1 (noting that good cause standard is highly flexible, having been designed to accommodate all relevant interests as they arise).[9]

### B.  Confidential Commercial Information/Harm

The Court begins with definitions in the SPO. The SPO defines "confidential information" as "testimony or discovery material [that] is believed in good faith by that Supplying Party, and by the Supplying Party's counsel, to constitute, reflect or disclose trade secret or other confidential research, development, or commercial information contemplated under Rule 26(c) of the Federal Rules of Civil Procedure." ECF No. 55 at ¶ 1(b). The SPO defines "highly confidential information" as "confidential information" that "a party, and the party's counsel, believes to be

---

[9] Of course, if the party seeking protection cannot satisfy its initial burden, a court has no need to reach the remaining steps. *See Coll*, 2017 WL 3190658, at *8 (rejecting argument that balancing must be performed regardless of whether movant could satisfy its initial burden).

7

extremely sensitive confidential and/or proprietary information, the disclosure of which, even limited to the restrictions placed on Confidential Information in this Order, would compromise and/or jeopardize the Supplying Party's competitive business interests." *Id.* at ¶ 1(d). These definitions are generally consistent with Tenth Circuit law and Rule 26(c), which requires VGT to prove the information sought is a trade secret or other confidential research, development, or commercial information and then demonstrate that its disclosure might be harmful.

In support of its designations, Williamson submitted a declaration that REDACTED ECF No. 290 at Ex. 16 at ¶ 2. Williamson further declares that REDACTED *Id.* at ¶¶ 3, 4. REDACTED *Id.* at ¶ 9. As to competitive and reputational harm, Williamson declares REDACTED ECF No. 290 at Ex. 16 at ¶ 3. Further, REDACTED *Id.* at ¶ 2. REDACTED

8

REDACTED

*Id.* at ¶ 8.

Upon review of each exhibit and each specific portion of designated testimony, and Williamson's declaration, the Court finds that all categories of Compliance Discovery qualify as "confidential commercial information" that would likely jeopardize VGT's competitive business interests, thereby justifying the current designations in the SPO. First, the internal presentations

REDACTED

Second, the regulatory testing and submissions, all of which are kept confidential REDACTED

Third, the numbers of three-reel mechanical games on casino floors from year to year, and whether they qualify as grandfathered, will reveal proprietary information regarding VGT's inventory of grandfathered versus non-grandfathered games. Castle Hill argues that the number of certain VGT games on casino floors is not confidential, because it can be determined by hand counting and is contained in public surveys. *See* ECF No. 297 at Ex. 1 (71-page "Quarterly Slot Survey"). However, the challenged materials provide more specific information regarding VGT's games and their composition, and VGT has shown such information is not easily or readily ascertainable in the public domain. Finally, VGT's understanding and application of the regulations to its grandfathered systems reveals VGT's strategic decision-making regarding grandfathered games. Although Castle Hill argues that it cannot be "confidential" that a regulated entity makes attempts to comply with federal regulations, the challenged testimony is not so

9

general.  Particularly when viewed in conjunction with other testimony regarding data, specific numbers, and dates, the testimony provides insight as to what VGT deems grandfathered games, ▮REDACTED▮ all of which is currently not known to VGT's competitors.  The Court finds that all categories of the Compliance Discovery qualify as "confidential commercial information" under Rule 26(c) that can be deserving of at least some specified disclosure protections if coupled with competitive harm.  *See generally* 8A Charles Alan Wright & Arthur R. Miller, *et al.*, *Federal Practice and Procedure* § 2043 (3d ed.) (explaining that "[w]hile not unlimited, this is surely an open-ended series of terms that need not be limited to 'true' trade secrets" and that courts have broad discretion to grant protection for many types of information).

In some cases, this type of regulatory compliance information may simply be business data that is not likely to be competitively harmful.  The Court is mindful that "[i]nternal corporate documents do not automatically merit protective orders" and that Rule 26(c) does not prevent "negative publicity."  *Gelb v. Am. Tel. & Tel. Co.*, 813 F. Supp. 1022, 1035 (S.D.N.Y. 1993).  However, in this case VGT has made a particularized showing of prejudice and harm, based on Williamson's declaration and other evidence presented to the Court.  There is no dispute VGT and Castle Hill are direct competitors.  VGT has shown that there have been disputes among various entities in the industry regarding the meaning and continued application of the grandfathering regulations, which is wholly collateral to this litigation and existed before this litigation.  *See generally* ECF No. 290 at Exs. 1, 6.  These issues have competitive significance in the marketplace.  Newer market entrants, such as Castle Hill, do not have grandfathered games.  Lobbying entities such as CFG have already informed NIGC that the "grandfather period has created, and continues to create, an unequal playing field, granting the manufacturers of older Class II machines a competitive advantage against newer entrants to the market."  ECF No. 289 at Ex. 5 at 2

(November 23, 2017 letter). In another letter, CFG mentioned VGT by name and raised issues regarding its grandfathered games. ECF No. 290 at Ex. 1 at 6 (December 11, 2017 letter). The Court need not delve into Castle Hill's alleged involvement with CFG, Castle Hill's true motives for seeking de-designation of the Compliance Discovery, or the meaning of the regulations. The evidence submitted by VGT adequately demonstrates that the "grandfathering" issues are a timely, competitive concern in this industry, that older and newer market entrants have varying competitive interests related to grandfathered games, and that the Compliance Discovery would provide Castle Hill and other competitors insight into VGT's regulatory compliance strategies and data regarding its grandfathered games.

Under the facts of this case, it is not overly speculative to conclude that this confidential commercial information will be used by competitors such as Castle Hill to disparage VGT in the industry; to accuse VGT of ongoing regulatory violations with customers or NIGC; or to engage in or assist with further lobbying efforts to NIGC regarding grandfathering issues (armed with specific and detailed information it did not have before this lawsuit). *See Gelb*, 813 F. Supp. at 1035 (sealing exhibit during pretrial phase based on "assertion that its competitors who do not now have this information could use it to do competitive injury"). Additionally, based on Williamson's declaration, REDACTED

Castle Hill argues the Compliance Discovery is not useful to competitors in any manner and is "only interesting" because VGT is "dead wrong" regarding its grandfathered games. ECF No. 197 at 9. But this argument assumes VGT engaged in illegal conduct and could have no legitimate purpose for seeking protection of what it deems legitimate regulatory compliance efforts and information. The Court will not make such assumptions for purposes of this Motion, and, as explained in more detail below, the Court finds that VGT designated the materials in good faith.

11

### C. Need/Balancing

Castle Hill already has the discovery and may use it in defense of the case. Although Castle Hill made the requisite showing of relevance for discovery purposes, the Court is mindful that the defenses leading to this discovery are a small piece of the overall litigation. Further, Castle Hill has not attempted to show its need for greater access to defend the lawsuit and is silent as to its motivations for seeking de-designation. Therefore, the competitive injury prevails, and the Court finds good cause for maintaining the current protection in the SPO for these pretrial discovery materials.

### D. Abuse of SPO

By repeatedly arguing VGT "abused" the SPO and designated these materials for the sole purpose of hiding illegal conduct, Castle Hill appears to argue that VGT failed to comply with the SPO's "good faith" requirement. This warrants discussion by the Court. A finding of "bad faith" assumes some type of regulatory violation occurred, which VGT disputes in this litigation. VGT argues in support of its motion for summary judgment that no court or regulatory body has found it in violation of the relevant regulations. *See* ECF No. 179 at 28. VGT also argues that, even assuming any violation occurred, it is not the type of violation that can support an unclean hands or illegality affirmative defense in this case. *See id.* at 12-26. These issues have not been resolved by the district court, and it would be imprudent for this Court to find any "bad faith" or "illegality" in resolving this pretrial discovery dispute. As argued by VGT, it remains to be seen whether the defenses will survive summary judgment or play any role at trial. VGT has submitted a sworn declaration adequately supporting its designations, and the Court finds VGT designated the materials in good faith.

## III. Conclusion

Defendants' Motion Challenging Plaintiff's Designations Under the Protective Order (ECF No. 285) is DENIED, and all designations will retain their current designations under the SPO.

**SO ORDERED** this 18th day of June, 2019.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT**