UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| VIDEO GAMING TECHNOLOGIES, INC., | | |
| Plaintiff, | | CASE NO. 17-CV-00454-GKF-JFJ |
| v. | | **PUBLIC – REDACTED VERSION** |
| CASTLE HILL STUDIOS LLC, *et al.* | | |
| Defendants. | | |

**DEFENDANTS' MOTION FOR RELIEF UNDER PROTECTIVE ORDER AND OTHER RELIEF**

Defendants, Castle Hill Studios LLC, Castle Hill Holdings LLC, and Ironworks Development LLC (collectively, "Castle Hill"), move for relief under Paragraph 13(f) of the Stipulated Protective Order (Doc. 55) ("Protective Order"), and request that the Court permit Castle Hill's counsel to share specific information which VGT has designated as confidential, highly confidential, and/or highly confidential source code information under the Protective Order with specific Castle Hill personnel so as to allow Castle Hill to adequately prepare for trial. Castle Hill also requests that the Court deny a previously asserted claim by counsel for Plaintiff, that defense counsel may not even discuss with former VGT employees information that such persons remember from their employment which is relevant to VGT's trade secret or confidential business information claims. Castle Hill understands that the Court will address other issues related to the presentation of evidence at trial which has been designated by the parties under the protective order at the pretrial conference. However, the relief sought herein is time sensitive and requires a ruling before the parties' pretrial conference.

I.  **INTRODUCTION**

Through this motion, Castle Hill seeks only the most basic and fundamental relief: the ability to confer with its attorneys and to meaningfully participate in the preparation of its defense for trial.

1

The Protective Order, however, precludes *anyone* at Castle Hill from reviewing *any* information which VGT has unilaterally designated as highly confidential or highly confidential source code. *See* Doc. 55 at ¶¶ 5, 6. This has effectively prevented Castle Hill from participating in its own defense relative to VGT's trade secret and misappropriation of confidential business information claims, among others.

Castle Hill's counsel requires the ability to share a limited amount of information designated by VGT as highly confidential with certain specific Castle Hill employees. Castle Hill cannot otherwise adequately prepare its witnesses and defense for trial, thereby prejudicing the defense. Castle Hill requests that the Court provide relief from the Protective Order so Castle Hill can meaningfully prepare for trial. Castle Hill also requests that this Court resolve an allegation made by counsel for Plaintiff that defense counsel engaged in "improper ex parte communications with former VGT employees" by discussing information such persons remembered that may be relevant to Plaintiff's misappropriation of trade secrets or confidential business information claims. Castle Hill requests that the Court address this assertion by Plaintiff and rule that it is without merit.

## II.    THE STIPULATED PROTECTIVE ORDER

The Protective Order governs the use of "confidential," "highly confidential," and "highly confidential source code information." *See Generally* Doc. 55. Information which is designated by a party as "confidential" can be shared with the receiving party's outside counsel, experts, consultants, and up to three of the receiving party's client representatives. *See* Doc. 55, ¶ 4. Information which is designated by a party as "highly confidential" or "highly confidential source code" can only be shared with the receiving party's outside counsel, experts, and consultants, and cannot be shared with the receiving party. *See* Doc. 55, ¶¶ 5-6. In other words, any document which VGT has unilaterally designated as "highly confidential" or "highly confidential source code" cannot be shared or discussed with Castle Hill.

The Court retains full control over "[t]he rules and procedures governing the use of Confidential, Highly Confidential Information, and Highly Confidential Source Code Information at trial" which "shall be determined by the Court at the final pretrial conference." *See* Doc. 55, ¶ 8. Further, in addition to allowing a party to challenge the propriety of any designation, (*see* Doc. 55, ¶ 9), a party is permitted to apply to the Court for relief from the Protective Order, (*see* Doc. 55, ¶ 13(f)) and the Court may amend or modify the Protective Order at any time. *See* Doc. 55, ¶ 13(g).

## III.   THE REQUESTED MODIFICATIONS OF THE PROTECTIVE ORDER

In order to prepare its defense for trial, Castle Hill requests that the Court provide relief under the Protective Order by permitting Castle Hill's counsel to share specific VGT designated information with specific Castle Hill employees.

The employees Castle Hill requests to share VGT designated information with are as follows:

- Paul Suggs;
- Andrew Scheiner;
- Alan Roireau; and
- Arthur Watson.

The information Castle Hill requests to share with these individuals is as follows:

- The initial Stacy Friedman Report, entitled "Opening Expert Report of Stacy Friedman," including all exhibits and items referenced therein, and Stacy Friedman Reply Report, entitled "Reply Expert Report of Stacy Friedman," including all exhibits and items referenced therein (*see* Docs. 172-2; 172-3[1]);
- The Robert Zeidman Report, entitled "Rebuttal of Stacy Friedman by Robert Zeidman," including all exhibits and items referenced therein (*see* Doc. 166-6);
- The Stacy Friedman deposition and exhibits;
- The Robert Zeidman deposition and exhibits;
- All summary judgment briefing, including all exhibits, declarations, and other supporting materials (*see* Docs. 179, 184-87, 239, 240, 274, and 277).

---

[1] The exhibits were omitted from the Reply Expert Report of Stacy Friedman as filed at Doc. 172-3. Castle Hill requests that all exhibits and items referenced in the report be shared. These additional documents can be provided to the Court upon request.

Castle Hill is *not* requesting that any Castle Hill personnel review native VGT source code.[2]

Castle Hill made an effort to both limit and be specific in its requests, as it explained to VGT before seeking the Court's assistance through this motion. *See* Correspondence from R. Gill dated July 29, 2019, Exhibit A. Although over forty depositions were taken in this case, and hundreds of thousands of documents were produced, Castle Hill only wishes to share the documents which both parties, and both parties' expert witnesses, have specifically identified as most pertinent to the trade secret and misappropriation of confidential information claims. Likewise, Castle Hill only wishes to share these documents with a limited group of Castle Hill representatives. These specific individuals are primarily comprised of Castle Hill employees who are expected to testify as to the trade secret misappropriation issues alleged by VGT.

Importantly, Castle Hill did not make this request early in the litigation process. Rather, Castle Hill waited for the litigation process to narrow the scope of the relevant claims, and relatedly, the scope of the information to be encompassed by this motion. Castle Hill does not request access to highly confidential native source code. Castle Hill also does not request relief as to discovery materials. Castle Hill's request is limited to the above information, which are already part of this Court's judicial records for this case. The expert reports and depositions are before the Court in connection with the parties' *Daubert* motions. The remaining materials were included as part of the summary judgment process.

Paul Suggs and Andrew Scheiner are Castle Hill programmers. Alan Roireau supervises the programmers. Castle Hill cannot adequately prepare its defense without discussing VGT's

---

[2] The parties have designated certain documents other than native source code as "highly confidential source code". This includes at least both Stacy Freidman Reports, the Robert Zeidman Report, and the Robert Zeidman deposition. *See e.g.*, Docs. 172-2; 172-3; 166-6. Castle Hill has requested relief under the Protective Order for documents designated as "highly confidential source code" because these documents, among others, have been so designated by the parties under the Protective Order, and not for the purpose of requesting access to native VGT source code.

designated confidential and highly confidential information with these individuals. To date, Castle Hill's attorneys have been unable to simply show these programmers the specific basis for VGT's claim, and to ask them to compare and contrast the VGT algorithms with the Castle Hill algorithms. These are the central issues in the trade secret claims.

Mr. Watson, Castle Hill's Chief Executive Officer and the only non-programmer with whom Castle Hill wishes to share the VGT designated information, also needs access to the VGT information so that he can make decisions regarding settlement, and meaningfully understand the details of the litigation, the potential exposure the claims present, and advise the Company's Board accordingly. Castle Hill has the right to understand the specific nature of the claims being asserted against it. Its CEO should be able to make litigation decisions based on a complete understanding of all relevant facts and evidence.

## IV. THE PROCEDURAL HISTORY AND PARTIES' USE OF THE PROTECTIVE ORDER SUPPORTS CASTLE HILL'S REQUESTED MODIFICATIONS

The Protective Order was the subject of dispute at the time of entry. Castle Hill objected to entry of the Protective Order as originally proposed by VGT (with even more significant restrictions) for similar reasons, *i.e.* that prohibiting "Castle Hill, as the defendant, from accessing, discussing or analyzing any of the significant discovery information in this action . . . would significantly impair Castle Hill's ability to assist in the defense of this case." *See* Doc. 50 at 12.

Castle Hill's counsel echoed these sentiments on the record at the hearing before Judge Jayne with respect to disclosure of both confidential and highly confidential information: "I would like to have the opportunity to discuss this with the client, particularly in a trade secret case . . . I would like for the client to be able to see whatever the evidentiary material is that underlies that complaint because the client may be able to say, in response to that, 'No we didn't use this or anything like this. This is how we did it and I need that in order to be able to defend the claim.' And if I can't have that communication with the client, that significantly hampers my ability to be able to

5

defend the case…" *See* December 6, 2017 Motion Hearing Transcript, Exhibit B, pp. 38-39 (discussing confidential information). "I have the same concern that I expressed to Your Honor with respect to confidential information. I need – I desperately need to be able to discuss this meaningfully with my client and have my client assist me in the defense of this action, and I'm concerned about any procedure that interferes with my ability to do that." *Id.* at 40 (discussing highly confidential information).

Ultimately, the parties stipulated to the current Protective Order which permitted disclosure of confidential information to a limited number of client representatives, and no disclosure of highly confidential or highly confidential source code information to client representatives. But as the Court has surely seen through the review of summary judgment motions and expert reports, in practice VGT has designated virtually all material it alleges to be relevant to its trade secret and misappropriation of confidential business information claims as highly confidential or highly confidential source code, preventing Castle Hill's counsel from sharing it with Castle Hill.

In similar fashion, VGT has continuously used the Protective Order as a sword, rather than a shield, attempting to further its trade secret claims. Plaintiff has accused Castle Hill, its employees, and even its attorneys of committing trade secret violations based on discussions between counsel and CHG employees in connection with the defense of the claims, essentially arguing that Castle Hill cannot participate in the defense of the case which VGT filed against it. VGT meanwhile has strategically disclosed and used information designated as highly confidential against Castle Hill and third parties as a means of proving its claims.

By way of example:

- In VGT's Opposition to Defendants' Motion in Limine to Exclude Evidence and Argument Regarding Communications Between Counsel and CHG Employees, VGT accuses Castle Hill's counsel of improper *ex parte* communications with Castle

Hill employees, and alleged that if Castle Hill's attorneys *speak with its own client's employees* about alleged VGT confidential information to prepare Castle Hill's defense, "[s]uch *ex parte* communications [would] unfairly prejudice VGT by providing CHG an unfair advantage in this litigation." *See* Doc. 220 at 7.

- VGT made similar arguments in its Motion and Brief in Support to Exclude W. Todd Schoettelkotte in Part. *See* Doc. 163, pp. 12-13. VGT argued Castle Hill's counsel and damages expert improperly communicated with Castle Hill's own employees "outside of discovery", as did Castle Hill's damages expert (with counsel present), and Castle Hill's expert report should therefore be stricken in part. *See id; see also* Reply in Support of Motion to Exclude the Testimony of W. Todd Schoettelkotte in Part, Doc. 259 at 3 (accusing Castle Hill's counsel and expert of "engag[ing] in *ex parte* communications with former VGT employees during which those employees were induced to breach confidentiality obligations they owe to VGT" and then "hid[ing] behind the attorney-client privilege to avoid providing details about these *ex parte* communications").

- VGT showed Castle Hill employee, Alan Roireau, the deposition transcripts of Castle Hill programmers Paul Suggs, Seth Morgan, and Brandon Booker during Mr. Roireau's 30(b)(6) deposition. *See* Roireau 30(b)(6) Dep. Transcr., pp. 26-27, 30-31, 33-34, Exhibit C. Meanwhile, Castle Hill could not show Mr. Roireau these depositions beforehand to help prepare him for his Rule 30(b)(6) deposition, because each deposition transcript was designated as highly confidential under the Protective Order.

- VGT showed third party, and former VGT employee, Zachary Schmid, highly confidential Castle Hill par sheets during Mr. Schmid's deposition after requesting

permission of counsel at the deposition. *See* Schmid Dep. Transcr., pp. 104-112, Exhibit D. Castle Hill employees have not reviewed VGT's par sheets (or any other highly confidential documents) even though VGT's "math" is central to its trade dress and trade secret claims (*e.g.*, payouts).

In addition to these examples of VGT using the Protective Order to affirmatively prove its claims, it also is relevant that the parties have not treated the Protective Order as an inflexible document which cannot be modified based on the conduct of the parties. To the contrary, the parties expressly recognized through their own conduct and dealings that the Protective Order could be modified by agreement, as evidenced by the fact that Castle Hill granted permission to VGT to share redacted damages expert reports to a VGT in-house attorney and a VGT client representative for the purpose settlement discussions. *See* Correspondence from R. Gill dated May 10, 2019, Exhibit E. As set forth herein, the Court should award Castle Hill relief under the Protective Order.[3]

## V. LEGAL ARGUMENT

### A. The Need for Disclosure Outweighs the Potential for Harm

Rule 26(c)(1) provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, or oppression, or undue burden or expense, including . . . requiring that a trade secret, or other confidential research, development, or commercial information not be revealed or be revealed only in a specific way." Fed. R. Civ. P. 26(c)(1)(G). A party seeking protection under Rule 26(c)(1), either to avoid disclosure or seeking to restrict disclosure in a certain way, must first establish that the information is a trade secret and then demonstrate that its disclosure is harmful. *See Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir.

---

[3] At this time, Castle Hill is moving for limited relief under the protective order. However, Castle Hill reserves the right to specifically challenge VGT's designations.

1981). The party seeking to resist disclosure to the opposing party's in-house personnel has the burden of proving competitive harm. *See MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 501 (D. Kan. 2007). In establishing the harm, the party seeking protection must make a particular and specific demonstration of fact rather than conclusory statements. *See Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 245 (D. Kan. 2010). If these requirements are met, the burden shifts to the party seeking the discovery to establish that the disclosure of the trade secrets or confidential information is relevant and necessary to the action. *See Centurion Indus., Inc.*, 665 F.2d at 325. The Court then balances the need for confidential information against the claim of injury resulting from the disclosure. *See id.* It is within the sound discretion of the trial court as to whether the trade secrets are relevant and whether the need outweighs the harm of disclosure. *See id.* If relevancy and need are shown, the trade secrets should be disclosed. *See id.*

Courts, including those in the Tenth Circuit, have applied a "competitive decisionmaking" test where protection is sought only to prevent certain identified individuals from viewing the materials. *See Suture Exp., Inc. v. Cardinal Health, 200, LLC*, 2013 WL 6909158 at *7 (D. Kan. Dec. 31, 2013). Courts balance the risk of inadvertent disclosure to competitors against the risk of prejudice to the other party's ability to prosecute or defend the action. *See id.* When balancing these risks, courts consider whether the individual "would be virtually unable to compartmentalize the information and not use the information to seek to gain an unfair competitive advantage." *See id.* The court looks to whether the person is a competitive decision maker by his participation in, *inter alia*, product design, marketing, and pricing decisions. *See id.* Although the "competitive decisionmaking" test originated and has historically been applied with in-house counsel, (*see MGP Ingredients, Inc.*, 245 F.R.D. at 501), courts have applied the test with non-attorneys. *See e.g., Suture Exp., Inc.* 2013 WL 6909158 at *5-8 (member of plaintiff's board of directors).

9

In applying the test, the court should also consider whether prohibiting the individual's access "would hamper a party's ability to effectively proceed with and assess the merits of the litigation" *Id.* at *7. "This involves considering the individual's specific role in the litigation, whether his or her expertise is specialized and not widely available through the retention of other experts, and whether this specialized expertise is essential to the proper handling of the litigation." *Id.* "For example, limiting access of in-house personnel who have substantial experience in a narrow field that cannot be replaced in the 'open market' could impair a party's ability to prosecute its claim." *Id.*

Patent cases may be instructive, as courts have faced analogous situations and agreed that the patent inventor must have access to the opposing party's confidential information in order to prosecute or defend the case. *See Medtronic Sofamor Danek, Inc. v. Michelson*, 2002 WL 33003691 at *3-4 (W.D. Tenn. Jan. 30, 2002) ("In the case at bar, all the technology at issue was created by Dr. Michelson. This fact alone makes him 'uniquely qualified' to determine what devices and methods are covered by the license and purchase agreements in dispute . . . This issue is the heart of the lawsuit – a lawsuit instigated by Medtronic. Medtronic cannot prevent Dr. Michelson's access to the information which may prove or disprove his ownership rights in a case where it seeks to have those same ownership rights affirmed."); *THK America, Inc. v. Nippon Seiko K.K.*, 141 F.R.D. 461, 462 (N.D. Ill. 1991) ("We agree with plaintiff that defendants' proposals would unduly 'hamstring' the plaintiff's litigious efforts. The prime example being that defendants' proposals would preclude plaintiff from conferring with Mr. Teramachi – its own president and the purported inventor of the products at issue. Plaintiff correctly reasons that, as the chief executive officer of THK and the inventor of the patented products at issue, Mr. Teramachi is the most knowledgeable person about the issues in the case. Clearly, he should be able to assist in the evaluation and prosecution of his company's suit on patented inventions.").

The defense in this case will be irreparably prejudiced without the ability to show Castle Hill programmers and its CEO the VGT-designated confidential highly confidential, and highly confidential source code information on which Plaintiff bases its claims. Even if the Court accepts that the designated information could potentially relate to VGT trade secrets or confidential information, which Castle Hill denies, on balance, the need for disclosure to limited personnel at Castle Hill outweighs any potential harm.

The Castle Hill programmers are uniquely qualified to understand and help the defense prepare for trial on the trade secret claims. Mr. Suggs and Mr. Scheiner are not executives, and along with Mr. Roireau, all of them already had access to certain of the alleged VGT confidential, highly confidential, and/or highly confidential source code information while working for VGT.[4] Mr. Suggs worked on both VGT algorithms at issue, and the Castle Hill algorithm involved in the case, and VGT specifically points to Mr. Suggs as a central "bad actor" with respect to its trade secrets allegations. *See* Doc. 344 at 14-17. To preclude Castle Hill's counsel from conferring with the designer of the algorithms at the heart of this trade secrets dispute and the other Castle Hill programmers who designed the technologies at issue would "hamstring" the defense. *See THK America, Inc.*, 141 F.R.D. at 462; *see also Michelson*, 2002 WL 33003691 at *3-4.

Further, while Castle Hill disputes the enforceability of their VGT confidentiality agreements, many of the former VGT employees had employment agreements with VGT, and none have been sued in their individual capacities, mitigating any likelihood of harm of disclosure. *See Medtronic Sofamor Danek, Inc.*, 2002 WL 33003691 at *3 (citing prior confidentiality agreement and lack of accusations of misappropriation between parties in balancing test). In short, these Castle Hill employees have *already* seen much of the alleged VGT trade secrets at issue, and are uniquely

---

[4] Indeed, part of VGT's trade secret claims is that Castle Hill's employees used VGT "know how", *i.e.* information that they already know from their time at VGT.

qualified to assist Castle Hill in the preparation of its defense, but need the ability to review the designated materials and discuss them with counsel in advance of trial to prepare their testimony and Castle Hill's defense in general. Moreover, VGT alleges that the witnesses have already misused and misappropriated the alleged VGT confidential information and trade secrets. While Castle Hill disputes these allegations, if VGT's theory is to be accepted, no further harm could come from sharing information with witnesses which the witnesses already have.

As to Mr. Watson, who never worked at VGT, there is no allegation that he misappropriated any VGT materials. There is also no allegation that he has any involvement in product design as it relates to the alleged trade secrets at issue, namely the algorithms, or the use of any VGT "know how" or "negative know how". Mr. Watson's review of the material would be for the purpose of settlement, understanding the claims and defenses, and litigation and trial strategy. This is a similar request that VGT made earlier in the case for its in-house counsel and board member, who requested expert reports. *See* Ex. E. And unlike the disclosures previously made to VGT's decision-makers, which included expert damages report information relating to competitive pricing and game placement, Mr. Watson would only be shown items focusing on the liability portions of VGT's claims. This mitigates one of the primary concerns in the competitive decision making test. *See U.S. Steel Corp. v. U.S.*, 730 F.2d 1465. 1468 n.3 (Fed. Cir. 1984) (defining competitive decision making as one participating in pricing or product design made in light of similar or corresponding information about a competitor). Castle Hill has a right to fully understand the claims asserted against it, the evidence, and the expert reports so as to fully evaluate settlement and trial strategy.

Importantly, Castle Hill is *not* requesting that any Castle Hill personnel review *any* actual native VGT source code. Disclosure of the specified VGT designated information to this limited group of programmers and the company's CEO ensures that information both relevant and necessary for Castle Hill to put on its defense is appropriately made available while still ensuring

12

"appropriate safeguards" are in place. *See Centurion Indust., Inc.*, 665 F.2d at 326. On balance, Castle Hill has the right to assist in its own defense, and requests that the Court provide relief from the Protective Order so that it may do so.

Finally, the information requested is not discovery material of unknown relevance. The requested information was deemed to be important by the parties, and has been used by them as exhibits for their *Daubert* and dispositive motions in this case. As such, these materials are now part of the judicial record for this action. There is a well-recognized common-law right of access to judicial records, and the interests of the public are "presumptively paramount" against even those interests of the parties. *See JetAway Aviation, LLC v. Board of County Com'rs of County of Montrose, Colo.*, 754 F.3d 824, 826 (10th Cir. 2014). For this additional reason, Castle Hill should be entitled to access these records and to use them in connection with its defense in this action.

### B. VGT's Arguments Against Disclosure Do Not Outweigh Castle Hill's Need

Castle Hill requested that it be permitted the limited relief from the Protective Order set forth herein, but VGT declined. *See* Correspondence from P. Swanson dated July 31, 2019, Exhibit F. VGT raises several arguments, none of which hold weight. *See id.* VGT first argues that Castle Hill's requests are "not commensurate" with the access VGT requested for its in-house counsel and board member for settlement discussions. VGT argues that it was only provided redacted expert reports, for the purpose of settlement, and Castle Hill now seeks much more material than VGT was provided. VGT, however, requested unredacted copies of the expert reports. *See* Exhibit F. And VGT sought such information solely for the purpose of settlement, so the issue of whether or not VGT needs further relief from the Protective Order has never been raised with Castle Hill.

VGT next argues that Castle Hill's requests are overbroad, citing the Court's prior ruling on Castle Hill's motion to de-designate. However, unlike here, the Court held in its ruling that Castle Hill did "not attempt[] to show its need for greater access to defend the lawsuit." *See* Doc. 314 at

13

12. Because Castle Hill needs access to these documents to defend the lawsuit, and has made an effort to identify filings, expert reports, and depositions which contain the key evidence relative to the trade secret and misappropriation of confidential business information claims, its requests are reasonably tailored.

While VGT cites various cases with examples of protective orders, VGT's own case law cites with approval the "competitive decision maker" test set forth above. *See e.g.*, *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 299 F.R.D. 498, 500 (W.D. Va. 2014) (citing *US Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984)).

VGT also argues Mr. Zeidman has offered expert testimony on the same topic as the Castle Hill engineers relative to comparing and contrasting the VGT and Castle Hill algorithms. First, the Castle Hill engineers will be needed to defend against all of VGT's trade secret and misappropriation claims. On many issues only these engineers can offer the best evidence, including VGT's algorithm claims, as well as its amorphous "know how" claims. Second, the Castle Hill engineers who worked on both algorithms are unquestionably the most qualified to testify as to these issues, which VGT can hardly dispute. This is particularly true where VGT has challenged Zeidman by *Daubert* motion, and intends to assail Zeidman's qualifications and/or credibility based on a lack of expertise in casino gaming. *See* Doc. 316 at 7 ("VGT may question Zeidman regarding his lack of specialized expertise in the area of casino gaming during cross-examination.").

VGT's argument that it would be unfair to show Castle Hill employees the designated information while VGT employees cannot see the same information is a red herring. VGT filed these claims against Castle Hill, but Castle Hill has not asserted a trade secrets claim against VGT. In the prosecution of its claim VGT was permitted to surprise Castle Hill witnesses with these alleged highly confidential documents in depositions, (*see* Ex. C), and will do so again at trial. VGT has placed its alleged confidential information and trade secrets squarely at issue in this case. There

14

is no reason to prevent Castle Hill from having the ability to prepare its witnesses for trial, rather than giving VGT the unfair litigation advantage of being able to surprise Castle Hill with every document and question about VGT trade secret issues at trial. VGT witnesses, on the other hand, need not be shown highly confidential documents from Castle Hill to prove many elements of their claims, placing the parties on substantially unequal footing. *See* Doc. 344, pp. 12-17 (defining elements of trade secret and misappropriation claims). VGT has used the Protective Order as a weapon throughout this case, and Castle Hill now requests that the Court allow it to defend itself for trial.

**VI.    CONCLUSION**

Castle Hill respectfully requests that the Court grant this motion and provide Castle Hill relief under the Stipulated Protective Order (Doc. 55) as set forth herein. Castle Hill also requests that this Court deny VGT's asserted claim that defense counsel may not discuss with former VGT employees information that such persons remember from their employment which is relevant to VGT's trade secret or confidential business information claims.

Dated:  August 6, 2019                                  Respectfully submitted,

*/s/ Robert C. Gill*
Robert C. Gill (admitted *pro hac vice*)
Henry A. Platt (admitted *pro hac vice*)
Thomas S. Schaufelberger (admitted *pro hac vice*)
Sherry H. Flax (admitted *pro hac vice*)
Matthew J. Antonelli (admitted *pro hac vice*)
Jeremy B. Darling (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
henry.platt@saul.com
tschauf@saul.com
sherry.flax@saul.com
matt.antonelli@saul.com
jeremy.darling@saul.com

                                  James C. Hodges, OBA #4254
                                  JAMES C. HODGES, P.C.
                                  2622 East 21st Street, Suite 4
                                  Tulsa, Oklahoma 74114
                                  (918) 779-7078
                                  (918) 770-9779 (facsimile)
                                  JHodges@HodgesLC.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of August, 2019, I caused a copy of the foregoing **DEFENDANTS' MOTION FOR RELIEF UNDER PROTECTIVE ORDER AND OTHER RELIEF** to be served via the Court's CM/ECF filing system and served to the following counsel for Plaintiff:

| | |
|---|---|
| Graydon Dean Luthey, Jr.<br>GABLE GOTWALS<br>1100 ONEOK Plaza<br>100 West Fifth Street<br>Tulsa, OK 74103-4217<br>(918) 595-4821<br>(918) 595-4990 (facsimile)<br>dluthey@gablelaw.com<br>*Counsel for Plaintiff*<br><br>Neil K. Roman<br>COVINGTON & BURLING LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>(212) 841-1221<br>(212) 841-1010 (facsimile)<br>nroman@cov.com<br>*Counsel for Plaintiff* | Gary M. Rubman<br>Peter Swanson<br>Rebecca B. Dalton<br>COVINGTON & BURLING LLP<br>One City Center<br>850 Tenth Street, NW<br>Washington, DC 20001-4956<br>(202) 662-6000<br>(202) 778-5465 (facsimile)<br>grubman@cov.com<br>pswanson@cov.com<br>rdalton@cov.com<br>*Counsel for Plaintiff* |

                      */s/ Robert C. Gill*
                      Robert C. Gill