# EXHIBIT F

## Darling, Jeremy B.

| | |
|---|---|
| **From:** | Swanson, Peter <pswanson@cov.com> |
| **Sent:** | Wednesday, July 31, 2019 9:29 PM |
| **To:** | Gill, Robert C.; Rubman, Gary; Roman, Neil |
| **Cc:** | Platt, Henry A.; Antonelli, Matthew |
| **Subject:** | RE: VGT v. Castle Hill litigation - trial preparation issues |

**\*\*EXTERNAL EMAIL\*\* - This message originates from outside our Firm. Please consider carefully before responding or clicking links/attachments.**

Bob:

Thanks for the response. As an initial matter, VGT appreciates CHG allowing Messrs. Dunn and Bittman access to certain CHG information for settlement purposes, and VGT would be willing to consider giving Mr. Watson similar access to a limited number of documents (with appropriate redactions) for purposes of settlement.

CHG's current request, however, is not commensurate with the access that Messrs. Dunn and Bittman were permitted. They were allowed to review only three expert reports, which CHG had redacted, and CHG expressly refused to provide them with the exhibits or schedules to the reports or the underlying financial data cited in the reports. Moreover, CHG only allowed them access for settlement purposes.

By contrast, CHG seeks to share a broad and voluminous set of documents with Mr. Watson and three engineers, for purposes that extend beyond settlement discussions. This includes well over one hundred pages of expert reports, every exhibit to the reports and every document cited in the reports (likely hundreds of documents), hundreds of pages of summary judgment briefing, and all summary judgment exhibits (which total in the hundreds). As such, this overbroad request would encompass (a) documents and information unrelated to the trade secret claims, including documents relating to CHG's NIGC defense, which is no longer in the case; (b) trade secrets and confidential information not at issue in this case (e.g., information that happens to be in a VGT document that also contains information about the trade secrets at issue); and (c) documents and information that the Court already found were competitively sensitive in response to CHG's unsuccessful de-designation motion.

As you can likely appreciate, VGT has serious concerns with sharing this trade secret and confidential information with a competitor -- especially considering that we contend this competitor has already misappropriated VGT's trade secret and confidential information. This concern is even greater where the individuals who would have access are engineers who develop, or supervise the development of, CHG's games. This is the reason why we sought a protective order that precludes a party's employees from accessing Highly Confidential information and that limits the number of employees who may access Confidential information -- both of which are common in cases involving production of confidential data to actual or potential competitors. *See e.g.*, *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 299 F.R.D. 498, 501 (W.D. Va. 2014) ("[The party] must assess the merits of the litigation and develop strategy using litigation counsel and outside experts to review information marked confidential or attorney eyes only, and present it in a non-confidential manner to the client for decision-making purposes. This is a necessary consequence of achieving a balance between full disclosure in discovery and protection against economic injury."); *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 246–47 (D. Kan. 2010) (granting protective order with "attorney's eyes only" provision because parties are "business competitors" and "litigation will probably involve disclosure of trade secrets," despite prior "relationship by which [parties] shared proprietary intellectual property"); *Northbrook Digital, LLC v. Vendio Servs., Inc.*, 625 F. Supp. 2d 728, 735 (D. Minn. 2008) ("[T]he key issue in many cases is whether the litigants are direct competitors and whether the people who would be denied access to information under a protective order are involved in a party's competitive decisionmaking."); *id.* at 743 (noting that outside "technical experts" can provide required analysis); *Safe Flight Instrument Corp. v. Sundstrand Data Control*

*Inc.*, 682 F. Supp. 20, 21–23 (D. Del. 1988) (entering protective order barring party's president from reviewing confidential documents because "[t]he potential for abuse [and] competitive loss is real" and president is not "uniquely qualified" to assess confidential documents).

CHG agreed to these restrictions when the parties negotiated and sought entry of the protective order. That is, CHG chose to litigate VGT's trade secret claims knowing -- and agreeing -- that its CEO and other employees would not have access to VGT's Highly Confidential information. It is not clear why CHG would have agreed to this restriction if, as you now claim, it would "completely deprive us of the ability [to] effectively defend against the trade secrets claim." This alone distinguishes the two cases you cite (which are also distinguishable for other reasons), as both involved a disagreement over which restrictions to include in a protective order that had yet to be entered. Unlike CHG, the parties were not seeking to renegotiate protective orders to which they had already agreed and that the court had already approved.

In our view, your email does not identify a compelling reason for deviating from the terms of the protective order at this late stage of the case. With regard to the three engineers, the one example you cite is that you would want them to analyze and compare VGT's and CHG's algorithms. But CHG has offered expert testimony on this precise issue from Mr. Zeidman, who has access to both VGT and CHG confidential information. Further, CHG had ample opportunity during discovery to obtain information about VGT's trade secret algorithms. Thus, it seems neither necessary nor appropriate to share VGT's Highly Confidential documents with these witnesses for the purpose you identify.

We disagree that this somehow precludes CHG from effectively defending itself. It simply puts CHG in the same position as VGT, which is not permitted to show its fact witnesses CHG's Highly Confidential documents or ask them to analyze both parties' algorithms. Like CHG, VGT has relied on an expert for such analysis. CHG's request for enhanced access by its employees would thus give CHG an unfair advantage. With that said, if you provide any other examples or identify specific documents that you believe the engineers should be able to review, VGT would be willing to consider that.

Similarly, as to Mr. Watson, we do not agree that access to the documents you identify, including VGT's ordinary-course and highly sensitive documents, is necessary for him to understand "the nature of the claims" VGT has asserted. Again, the parties already agreed that in-house decision-makers would not have such access. Nor do we think that the broad access you've requested is necessary or appropriate for settlement purposes. As noted above, however, we would consider a request for Mr. Watson to have access to a more limited set of documents (with appropriate redactions) for purposes of settlement.

We are available to discuss further if that would be useful.

Regards,
Peter

---

**From:** Gill, Robert C. <Robert.Gill@saul.com>
**Sent:** Monday, July 29, 2019 3:04 PM
**To:** Swanson, Peter <pswanson@cov.com>; Rubman, Gary <grubman@cov.com>; Roman, Neil <nroman@cov.com>
**Cc:** Platt, Henry A. <Henry.Platt@saul.com>; Antonelli, Matthew <matt.antonelli@saul.com>
**Subject:** RE: VGT v. Castle Hill litigation - trial preparation issues

Peter,

Thank you for your email.

The focus of our inquiry is our defense of the trade secret claims. Although you state in your email that we identified a "voluminous set of documents" in our request, we actually made a conscious decision to not request access to discovery materials generally, or even just the discovery materials that relate to the trade secrets claim. As you know, the discovery materials are significantly more voluminous than what we identified. In selecting the materials that are the subject of our inquiry, we chose those materials that the parties deemed to be important to the resolution of this claim

2

as reflected in their summary judgment filings. We also are mindful that you have taken the position that it is improper for us even to have a conversation with former VGT engineers about what they remember of the technology that is the subject of VGT's trade secrets claim. The effect of not having access to either category of information is to completely deprive us of the ability effectively defend against the trade secrets claim.

On the other hand, VGT had the ability to use discovery material that you classified as Highly Confidential in connection with your examination of witnesses. For example, in the 30(b)(6) deposition of Al Roireau, Mike Sawyer showed Mr. Roireau portions of transcripts from the depositions of Paul Suggs, Seth Morgan and Brandon Booker. However, Castle Hill did not have the ability to and did not show these transcripts to Mr. Roireau in preparation for his deposition because we were prohibited from doing so.

As for your question about an example, we should be able to ask Castle Hill witnesses about the differences between the VGT algorithms and the Castle Hill algorithms. Currently we cannot do that, because we are prohibited from showing the Castle Hill witnesses discovery material or expert reports which explain what the VGT trade secrets claim is based on.

Mr. Watson needs to have an understanding of the claim to be able to make decisions about settlement, and because a defendant has the inherent right to understand the nature of the claims against it. You will recall that even though Mr. Dunn is a decision maker for VGT, we agreed to give him and VGT business consultant Mr. Bittman access to copies of expert reports from the damages experts. While those reports did have some redactions, they were limited redactions, and they still contained Highly Confidential information of Castle Hill. We nonetheless agreed to permit this material to be viewed by two designees of your client. This is what we are asking for now.

As for authority, the most analogous cases seem to be in the context of patent litigation. Courts have determined that a patent inventor must have access to the opposing party's confidential information in order to prosecute or defend the case. *See Medtronic Sofamor Danek, Inc. v. Michelson*, 2002 WL 33003691 at*3-4 (W.D. Tenn. Jan. 30, 2002) ("In the case at bar, all the technology at issue was created by Dr. Michelson. This fact alone makes him 'uniquely qualified' to determine what devices and methods are covered by the license and purchase agreements in dispute . . . This issue is the heart of the lawsuit – a lawsuit instigated by Medtronic. Medtronic cannot prevent Dr. Michelson's access to the information which may prove or disprove his ownership rights in a case where it seeks to have those same ownership rights affirmed."); *THK America, Inc. v. Nippon Seiko K.K.*, 141 F.R.D. 461, 462 (N.D. Ill. 1991) ("We agree with plaintiff that defendants' proposals would unduly 'hamstring' the plaintiff's litigious efforts. The prime example being that defendants' proposals would preclude plaintiff from conferring with Mr. Teramachi – its own president and the purported inventor of the products at issue. Plaintiff correctly reasons that, as the chief executive officer of THK and the inventor of the patented products at issue, Mr. Teramachi is the most knowledgeable person about the issues in the case. Clearly, he should be able to assist in the evaluation and prosecution of his company's suit on patented inventions."). However, we also are mindful of the authority which holds that there is a common law right of access to judicial records, and that the interests of the public are deemed to be paramount, and to take precedence over the rights of the parties. *See JetAway Aviation, LLC v. Montrose Cnty.*, 754 F3d 824 (10th Cir. 2014). However, we are not asking for the material to be de-designated. We only want the ability to use it to prepare for trial.

The individuals would continue to be bound by the terms of the protective order, since we are not asking that the material be de-designated entirely.

Please let us know your position on this by the end of the day Wednesday.

Bob

---

**From:** Swanson, Peter [mailto:pswanson@cov.com]
**Sent:** Saturday, July 27, 2019 10:56 AM
**To:** Gill, Robert C.; Rubman, Gary; Roman, Neil

**Cc:** Platt, Henry A.; Antonelli, Matthew
**Subject:** RE: VGT v. Castle Hill litigation - trial preparation issues

Bob:

Your email identifies a voluminous set of documents -- encompassing not only expert reports, deposition transcripts, and briefs from this case but also internal and highly sensitive VGT documents -- that you wish to share with three CHG engineers and CHG's CEO (Arthur Watson).  As we understand the request, CHG is not claiming that VGT should de-designate these documents, nor is CHG asking VGT to redact its Confidential or Highly Confidential information from the reports, transcripts, and briefs.  Instead, CHG seeks to have its employees access and review VGT's Highly Confidential information, notwithstanding the terms of the Protective Order.

This request to deviate from the terms of the agreed-upon Protective Order raises a number of questions.  So that we may further consider your request, we ask that you provide the following information:
- Why do these witnesses need to see VGT's confidential information to prepare for their testimony?  Please provide some examples of specific VGT information and how it might be used by these individuals in their testimony.
- What are the decisions that Mr. Watson needs to make that would necessitate his access to this information?
- Please provide any case law that supports your request.
- What safeguards would there be to prevent the misuse or disclosure of this information by the employees?

We look forward to your response.

Regards,
Peter

---

**From:** Gill, Robert C. <Robert.Gill@saul.com>
**Sent:** Friday, July 26, 2019 5:01 PM
**To:** Rubman, Gary <grubman@cov.com>; Swanson, Peter <pswanson@cov.com>; Roman, Neil <nroman@cov.com>
**Cc:** Platt, Henry A. <Henry.Platt@saul.com>; Antonelli, Matthew <matt.antonelli@saul.com>
**Subject:** FW: VGT v. Castle Hill litigation - trial preparation issues


Gents:

I would appreciate hearing back from you on this issue.

Thanks you.

Bob

---

**From:** Gill, Robert C.
**Sent:** Wednesday, July 24, 2019 6:21 PM
**To:** Rubman, Gary; Roman, Neil; Swanson, Peter
**Cc:** Platt, Henry A.; Antonelli, Matthew
**Subject:** VGT v. Castle Hill litigation - trial preparation issues

Counsel,

4

As you know, we are in the process of preparing for trial, and we find ourselves in the difficult position of preparing to defend multiple trade secrets claims and a confidential business information claim, where nearly all of the discovery material and potential evidence in the case has been designated as Highly Confidential under the protective order, such that we cannot share it with our clients.  While we are not asking that the material be de-designated for all purposes under the protective order, we are asking for permission to share certain material with a few select Castle Hill employees in order to prepare for trial, notwithstanding the designations for that material under the protective order.

The universe of people who we wish to share the information with is: Paul Suggs, Andrew Scheiner, Al Roireau, and Arthur Watson.  As you know, Messrs. Suggs and Scheiner are programmers, and Mr. Roireau supervises the programmers.  We include Mr. Watson because as the CEO he needs to be in a position of being able to make decisions for the company.

The information we want to be able to share is as follows:
- The initial Friedman Report and Friedman Reply Report, including all exhibits and items referenced therein;
- The Zeidman Report, including all exhibits and items referenced therein;
- The Freidman Deposition and exhibits;
- The Zeidman Deposition and exhibits;
- All summary judgment briefing, including all exhibits, declarations, and other supporting materials.

We are not asking for the ability to show any Castle Hill employee any VGT native source code.

Please let us know your position on this as soon as possible, since we need the ability to place this matter before the court for resolution in the event the parties are not able to resolve the issue by agreement.

Thank you.

Bob



**Robert C. Gill**
1919 Pennsylvania Avenue, N.W. Suite 550 | Washington, DC 20006-3434
Tel: 202.295.6605 | Fax: 202.295.6705
Robert.Gill@saul.com | www.saul.com

"Saul Ewing Arnstein & Lehr LLP (saul.com)" has made the following annotations:
+~~~~~~~~~~~~~~~~~~~~~~~+
This e-mail may contain privileged, confidential, copyrighted, or other legally protected information. If you are not the intended recipient (even if the e-mail address is yours), you may not use, copy, or retransmit it. If you have received this by mistake please notify us by return e-mail, then delete.
+~~~~~~~~~~~~~~~~~~~~~~~+