```
 1                UNITED STATES DISTRICT COURT FOR THE

 2                   NORTHERN DISTRICT OF OKLAHOMA

 3

 4   VIDEO GAMING TECHNOLOGIES, INC.,   )
                                        )
 5                  Plaintiff,          )
                                        )
 6   vs.                                ) CASE NO. 17-CV-454-GKF-JFJ
                                        )
 7   CASTLE HILL STUDIOS, LLC., et al., )
                                        )
 8                  Defendants.         )

 9

10

11

12

13

14

15               TRANSCRIPT OF PROCEEDINGS
                      MARCH 19, 2019
16    BEFORE THE HONORABLE GREGORY K. FRIZZELL, JUDGE PRESIDING

17                      STATUS HEARING
```

```
                      A P P E A R A N C E S
                         (All Telephonic)

FOR THE PLAINTIFF:              MR. PETER SWANSON
                                MR. GARY M. RUBMAN
                                Covington & Burling, LLP
                                One City Center
                                850 Tenth Street, NW
                                Washington, D.C. 20001-4956

FOR THE DEFENDANTS:             MR. ROBERT COURTNEY GILL
                                MR. HENRY A. PLATT
                                MR. MATTHEW J. ANTONELLI
                                MR. JEREMY B. DARLING
                                Saul Ewing Arnstein
                                & Lehr LLP
                                1919 Pennsylvania Avenue NW
                                Suite 550
                                Washington, D.C. 20006

                                MR. JAMES COLLIN HODGES
                                James C. Hodges, PC
                                2622 E. 21st Street
                                Suite 4
                                Tulsa, OK 74114

                                MR. DUANE H. ZOBRIST
                                MR. JONATHAN SPENCER JACOBS
                                Zobrist Law Group PLLC
                                1900 Arlington Blvd.
                                Suite B
                                Charlottesville, VA 22905

                          **********
```

```
 1  PROCEEDINGS:
 2  ---------------------------------------------------------------
 3         THE DEPUTY COURT CLERK:  This is case number 17-CV-
 4  454-GKF-JFJ, Video Gaming Technologies, Inc. vs. Castle Hill
 5  Studios, LLC, et al.
 6     Counsel, please state your appearances.
 7         MR. SWANSON:  This is Peter Swanson from Covington and
 8  Burling on behalf of the plaintiff, Video Gaming Technologies,
 9  Inc.  Also with me is Mr. Rubman from Covington and Burling.
10  Mr. Luthey was unable to join today and sends his apologies for
11  that; he's in a trial this morning.
12         THE COURT:  Thank you.
13     And for defendants?
14         MR. GILL:  This is Robert Gill from Saul Ewing
15  Arnstein and Lehr on behalf of the defendants.  And also
16  present on the call are Henry Platt, Matt Antonelli and Jeremy
17  Darling from my firm, as well as our local counsel Jim Hodges
18  and Jonathan Jacobs and Duane Zobrist from the Zobrist Law
19  Firm.
20         THE COURT:  Very good.  I understand that our dates
21  contained in the fourth amended scheduling order have raised
22  some difficulties with some of your clients.  Is that correct?
23         MR. SWANSON:  This is Mr. Swanson.  That's correct,
24  Your Honor.
25         MR. GILL:  And, Judge, just so you're aware, -- this
```

1  is Robert Gill -- Mr. Swanson and I have engaged in some
2  dialogue about this issue over the last few weeks. He called
3  me to alert me to this issue I think toward the end of the same
4  week that we had our last conference with you where you set
5  these deadlines and explained to me that they had not only some
6  issues with some VGT representatives of the plaintiff but also
7  with one of the lawyers on their team, as well, --
8          **THE COURT:** All right.
9          **MR. GILL:** -- and I told him in that call -- or, first
10 of all, we understood we were all kind of setting these
11 deadlines based on memory and we were, frankly, a little
12 furtunate on our side to have avoided any hard problems on our
13 end but that we were absolutely willing to work with them to
14 try to accommodate those issues, and we had discussion about
15 other times to potentially move our trial in this case, but
16 obviously that discussion couldn't be complete without
17 involving you because we know that you've got a calendar that
18 includes many other cases, as well. So, that was the lead-up
19 to this morning's call.
20         **THE COURT:** All right. Well, thank you. So, the
21 bottom line, have you all agreed on a trial date that would
22 work for both the lawyers and the witnesses and the client
23 representatives?
24         **MR. SWANSON:** This is Mr. Swanson. I'm happy to
25 address that first. So, we spoke to Mr. Gill about whether

1  some time in September would work, mid September, specifically
2  starting on September 9.  I think we said the trial would last
3  approximately two weeks, so the week of the 9th and the week of
4  the 16th.  And it looks like that date would work except for
5  another matter that Mr. Gill has but that he, I think, expects
6  will be rescheduled.  It turns out that I guess Mr. Gill won't
7  know for sure if that matter is rescheduled for another two to
8  three weeks and, for that reason, we didn't want to wait that
9  long to bring this issue to Your Honor's attention and, of
10 course, we don't know if those dates would work with the
11 court.
12          **MR. GILL:**  Your Honor, this is Bob Gill.  Mr. Swanson
13 is correct, we did have that dialogue.  I have a case that
14 involves a lot of parties that is scheduled for both pretrial
15 proceedings and trial, so we have a week of pretrial --
16 pretrial conference and motions in limine and other hearings
17 that are scheduled to consume the week of September 16
18 currently, and the trial in that matter is scheduled to begin
19 on October 7 and to conclude at the end of the week of October
20 28.
21    But Mr. Swanson is also correct that we had a hearing in
22 that case in early February and we had a lot of motions that
23 were addressed by the judge in that case, and a number of us
24 raised with him the scheduling order in that case because the
25 plaintiff -- these were basically motions to dismiss,

1  jurisdictional motions, and we all questioned whether or not
2  the plaintiff would have an opportunity to amend their
3  complaint based on the scheduling, and the judge said on the
4  record that we shouldn't be concerned about the schedule in
5  that case because he fully expected that the existing
6  scheduling order would be vacated and that we would need to
7  provide a new one.
8      And so after the conversations I had with Mr. Swanson, I
9  communicated with my fellow defense counsel in that Virginia
10 case and explained to them that I wanted to file a motion to
11 vacate the existing scheduling order consistent with the
12 judge's comments from our February 7th hearing.  Nobody that --
13 and I wrote to all defense counsel -- nobody objected, those
14 that responded agreed, but I'm limited, I can't file the
15 motion.  I have, I guess, conditional agreement because I have
16 agreement to file but not until April 1 based on a deadline the
17 plaintiff has in my case.  But I do -- I'm very optimistic that
18 the judge is going to address this thing fairly promptly and
19 enter an order vacating that existing scheduling order and
20 those deadlines.
21     **THE COURT:**  Let me see if I can short-circuit this.
22 The Tenth Circuit -- and this is somewhat unfortunate for those
23 judges who have children, it's reflective of the graying of the
24 federal judiciary, but in part because the costs of judicial
25 conferences are lowered if the circuits have conferences after

1  vacation season has ended, the Tenth Circuit, over the last, I
2  don't know, 10 years, has moved its judicial conferences until
3  after September 1st, and September 9th is the first day of the
4  judicial -- Tenth Circuit judicial conference, I am told.
5      And I thought it was the week before, Karen, but you're
6  telling me it's the 9th of September?
7          **THE DEPUTY COURT CLERK:**  Correct.  It's on the
8  calendar.
9          **THE COURT:**  And I missed it last year, and
10 unfortunately to go truly helps a federal judge for a lot of
11 different reasons; it kind of brings you up to speed with some
12 of the trends and it's an opportunity to discuss matters with
13 fellow judges.  And it's my intention, and I've informed my
14 wife, who is the ultimate authority, that we're going, and she
15 expects us to go.  So, September 9th would be a difficult date
16 for me.
17     My typical trial weeks are the third and fourth weeks of
18 the month.  So it would appear that September 9th would be
19 difficult.  Do you all have any alternate dates?  Have I lost
20 you?
21         **MR. SWANSON:**  Your Honor, this is Mr. Swanson.  I
22 don't know that we have any other specific dates.  I think on
23 our end, starting the following week, September 16th, could
24 work, but I'm not sure for Mr. Gill if that date works.  And
25 it might have been a conflict with an expert.  I can't

1  recall.
2      **MR. GILL:**  Judge, this is Bob Gill.  I could -- I
3  think we could make the trial beginning on September 16 work,
4  but I have two caveats with that.  Mr. Swanson is correct, I do
5  have a conflict with my damages expert who is otherwise
6  committed the week of September 23, and assuming the court
7  could accommodate that conflict --
8      **THE COURT:**  I will -- I will definitely do that.
9      **MR. GILL:**  All right.  Then I think we could work
10 around my expert conflict and make trial beginning on September
11 16 work.
12    The only other caveat being that I do need to literally
13 go through the motions of getting my Virginia case moved that
14 is scheduled for those pretrial proceedings that currently
15 begin and consume the entire week of September 16 as well as
16 the month of October.  So, like I said, I've taken steps to try
17 to go ahead and be able to do that but I haven't been able to
18 get those papers filed yet based on the agreement of other
19 defense counsel and will not be able to do that for another 10
20 days or thereabouts.
21     **THE COURT:**  All right.  Well, I can certainly work
22 with you there.  Now, I know we'll -- do I understand
23 correctly, if you get this moved, you will not have a trial in
24 early October then?
25     **MR. GILL:**  That's correct, Judge.

```
 1          THE COURT:  All right.  Because obviously if we went
 2   two weeks beginning on September -- I'm told that trial week
 3   begins on the 16th; is that correct?  Is that the Monday?
 4          THE DEPUTY COURT CLERK:  Yes.
 5          THE COURT:  If we went for two weeks, obviously that
 6   would jam you up for an October trial.
 7          MR. GILL:  Right.
 8          THE COURT:  All right.  Well, let's tentatively do
 9   that.  Before we enter a fifth amended scheduling order, I
10   would like to have some confirmation that those dates will
11   work.
12       But assuming that will work for two weeks beginning
13   September 16th, Karen, can you give us some lead-up dates
14   tentatively?
15          THE DEPUTY COURT CLERK:  Yes.  We could set the
16   pretrial conference on September 3rd at 1:30.  And the -- let
17   me see here -- we need to reset the hearing on the motions in
18   limine?
19          THE COURT:  Yes.
20          THE DEPUTY COURT CLERK:  We have one set for April
21   11th right now.
22          THE COURT:  I think so.
23          THE DEPUTY COURT CLERK:  Okay.  We could set that for
24   May --
25          THE COURT:  No, let's go further.  I mean, our trial
```

1  isn't until September, so perhaps sometime in July.
2          **THE DEPUTY COURT CLERK:**  Okay.  July 9th?
3          **THE COURT:**  July 9 for motions in limine.
4          **THE DEPUTY COURT CLERK:**  Okay.  And that's a hearing
5  on that.
6          **THE COURT:**  Yeah, and I see here we had motions in
7  limine -- hearing on motions in limine before dispositive
8  motions.
9          **THE DEPUTY COURT CLERK:**  Correct.
10         **THE COURT:**  Are we expecting -- we do know that there
11 are some motions in limine that bear upon the motions for
12 summary judgment, correct, so that's why we did that?  All
13 right.
14         **MR. SWANSON:**  That is correct, Judge.
15         **THE COURT:**  All right.  So, can we set dispositive
16 motions -- and I'm just thinking aloud, this is not set in
17 stone -- but would early August be good for hearing on
18 dispositive motions or would you prefer those to be resolved
19 earlier?
20         **MR. GILL:**  Well, -- Judge, this is Bob Gill -- would
21 it be possible -- because currently we have April 11 is the
22 date for the hearing on motions in limine, and May 6th as the
23 deadline for the -- or the hearing date for dispositive
24 motions.
25         **THE COURT:**  Right.

```
 1         MR. GILL:  Would it be possible to keep those
 2   deadlines?
 3         THE COURT:  Hold on just one second.
 4       (PAUSE)
 5         THE COURT:  All right.  It would be the court's
 6   preference to set the hearing on motions in limine on the 6th
 7   of May when we have the hearing on dispositive motions set and
 8   then to find a date in June to set the hearing on dispositive
 9   motions.
10       Karen, do we have a date that looks available?
11         THE DEPUTY COURT CLERK:  We could do June 11th.
12         THE COURT:  How does June 11th look on your schedules,
13   Mr. Gill, Mr. Swanson?
14         MR. SWANSON:  Let me just take a quick look, Your
15   Honor.
16         THE DEPUTY COURT CLERK:  Counsel, remember to identify
17   yourselves when you speak, please.
18         MR. GILL:  This is Bob Gill.  I could do June 11th.
19         THE COURT:  All right.  What day of the week is that,
20   Karen?
21         THE DEPUTY COURT CLERK:  That's a Tuesday.
22         THE COURT:  All right.
23         THE DEPUTY COURT CLERK:  And we could do a 1:30.
24         THE COURT:  All right.  Mr. Swanson?
25         MR. SWANSON:  Yes, Your Honor, I believe that works.
```

1  I was just trying to confirm with my colleagues, but, yes, June
2  11th would work for us.
3              **THE COURT:**  All right.  Let's do that.  All right.  My
4  senior law clerk just breathed a huge sigh of relief,
5  gentlemen, so thank you for that.
6      All right.  What else can we do today?
7              **MR. GILL:**  This is Bob Gill once more.  The only other
8  thing that, if I could, if I could ask the court to tweak a
9  bit, is -- and I understand -- I think the next action item is
10 probably to have me get back in touch with counsel for
11 plaintiff and the court with respect to the status of my
12 Virginia trial, --
13             **THE COURT:**  Yes, sir.
14             **MR. GILL:**  -- which I hope to be able to do in the
15 next two weeks.  But we also, in terms of the existing
16 scheduling order, we had deadlines for deposition and
17 interrogatory designations and then counter-designations were
18 due a week later, and I was wondering if we might be able to
19 persuade Your Honor to tweak that a bit so that the parties
20 have more than just a week in order to be able to provide
21 counter-designations.
22             **THE COURT:**  I have no problem with that.  And we could
23 also move that back, as well, work it back a month.  But you --
24 how much time do you need between designations and counter-
25 designations?

```
 1           MR. GILL:  Given the volume involved in this case, I
 2   think it might be helpful to have that be a three-week period
 3   rather than just one.
 4           THE COURT:  Yeah, that's my thought, as well.  So,
 5   let's do that.  So, is June 18th good with everyone?
 6           MR. SWANSON:  This is Mr. Swanson.  That's fine with
 7   us, Your Honor.
 8           THE COURT:  I'm just wondering --
 9           MR. GILL:  This is Bob Gill, and that would be fine,
10   Judge.
11           THE COURT:  Well, now I'm wondering about the effect
12   of rulings on dispositive motions, and even if I'm able to rule
13   from the bench on June 11th.  I mean, my guess is in this case
14   it's going to require writing, and designations are going to --
15   may well be cut down based upon rulings on dispositive motions,
16   potentially, so I'm wondering whether or not --
17           MR. GILL:  Yes, sir.  This is Bob Gill.  I totally
18   agree with you.
19           THE COURT:  So, give me just one second here.
20      (PAUSE)
21           THE COURT:  All right.  My thought is we would move
22   the designations probably to the week after July 4th and then
23   give three weeks for counter-designations.
24      Karen, do you have a date around July 11th there?
25           THE DEPUTY COURT CLERK:  Yes.  July 11th is a
```

```
 1  Thursday.
 2          THE COURT:  All right.  Let's say July 11th for
 3  designations.  And then three weeks after that?
 4          THE DEPUTY COURT CLERK:  August 1st.
 5          THE COURT:  All right.  I think that works better.
 6  And then in terms of transcripts and briefs on unusual
 7  objections, we gave about a week then.  We probably ought to
 8  give two weeks.
 9      Karen, --
10          THE DEPUTY COURT CLERK:  August 15th.
11          THE COURT:  All right.  So, number 12 would be August
12  15th.  And then we'll change the dates for pretrial and agreed
13  proposed pretrial order, etc.
14      And this is -- let me just confirm -- this is a nonjury
15  trial?
16          MR. GILL:  Yes, sir.
17          MR. SWANSON:  That's correct.
18          THE COURT:  All right.  All right.  Well, what else
19  can we accomplish here?
20          MR. SWANSON:  That's everything that we have, Your
21  Honor.
22          THE COURT:  Mr. Gill, you're going to let us know by
23  what date?
24          MR. GILL:  Yes, sir, I'm going to file my motion in my
25  Virginia case on the first available date, which is I believe
```

```
 1  April 1 or 2, to vacate that existing scheduling order.  And
 2  I'll call chambers of the judge in that case, as well, to let
 3  him know what's going on and explain what's going on in this
 4  case.  And based on my limited experience with him, I expect
 5  that he will address this pretty promptly.  So, I would hope to
 6  then have some sort of ruling from him within the first 10 days
 7  of April.
 8          THE COURT:  All right.  So, if I heard you correctly,
 9  then we'll have a deadline of, what, April 5th?  Would that be
10  good?
11          MR. GILL:  April 5th may not give me quite enough
12  time.
13          THE COURT:  All right.
14          MR. GILL:  Let me look at my calendar here.  Could we
15  do the 10th?
16          THE COURT:  That would be fine.
17          MR. GILL:  All right.
18          THE COURT:  All right.  So we'll --
19          MR. GILL:  And I will let the court and the plaintiff
20  know by the 10th what the status is of that Virginia case.
21          THE COURT:  Very good.  Anything else, Mr. Swanson?
22          MR. SWANSON:  Nothing from me, Your Honor.
23          THE COURT:  Mr. Gill?
24          MR. GILL:  Nothing further, Judge.
25          THE COURT:  All right.  Thank you, gentlemen.
```

1    **MR. GILL:** Thank you very much.

2    (PROCEEDINGS CLOSED)

3    **REPORTER'S CERTIFICATION**

4    I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

5    TRANSCRIPT OF THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

6

7    CERTIFIED:    *s/Greg Bloxom*
                   Greg Bloxom, RMR, CRR
                   United States Court Reporter
8                  333 W. 4th Street, RM 411
                   Tulsa, OK 74103
9                  (918)699-4878
                   greg_bloxom@oknd.uscourts.gov