**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

VIDEO GAMING TECHNOLOGIES, INC.,

    Plaintiff,

v.

CASTLE HILL STUDIOS LLC, *et al.*

    Defendants.

CASE NO. 17-CV-00454-GKF-JFJ

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR RELIEF UNDER PROTECTIVE ORDER AND OTHER RELIEF**

Defendants, Castle Hill Studios LLC, Castle Hill Holdings LLC, and Ironworks Development LLC ("Castle Hill"), submit this Reply to Plaintiff's Opposition ("Opposition") to Defendants' Motion for Relief under Protective Order and Other Relief ("Motion").

As explained in the Motion, the Stipulated Protective Order (Doc. 55) ("Protective Order"), combined with VGT's designations thereunder, operate to prevent Castle Hill from meaningfully participating in its defense. Because VGT designated virtually all evidence related to its trade secret and misappropriation of confidential business information claims (the "Trade Secret Claims") as highly confidential or highly confidential source code, a fact which VGT acknowledges, *see* Opposition at 4, VGT has effectively been able to limit Castle Hill's participation in its defense.

VGT's lead argument that, since the parties "stipulated" to the Protective Order, Castle Hill is therefore stuck with it, is based on a faulty premise. **The Protective Order was entered over 1 1/2 years ago, when VGT's claims were entirely different than those it now intends to try.** As the Court observed in its Opinion and Order granting Plaintiff's motion for leave to file an amended complaint just before the close of discovery, the new trade secrets claims are "based on a different trade secret" than the one alleged in the original Complaint. Doc. 102 at 14.

VGT asks the Court to consider "the foreseeability at the time of the original protective

order of the modification now requested." Opposition at 7 (citation omitted). The original Complaint alleged *source code and "math" copying* as the basis for its Trade Secret Claims. *See generally* Doc. 2 at ¶¶ 41-43. At that time Castle Hill knew it could easily defend the Trade Secret Claims, because it knew that it did not copy VGT's source code or math, and that it could so prove with expert testimony, production of its source code, and evidence that it bought an off-the-shelf source code as the platform for its games. But it was only *after* the Protective Order was entered, when Castle Hill produced its source code and identified its expert, Mr. Zeidman, that VGT abandoned its original trade secret theory completely. *See* Doc. 79, Ex. A.[1]

For its Trade Secret Claims VGT served interrogatory responses taking a "see what sticks" approach, identifying a list of 37 alleged "secrets" (without expressly alleging misappropriation of those "secrets"). *See* Doc. 240 at 17. At the close of discovery VGT sought leave to amend and, over objection, was granted leave to assert an entirely new trade secret claim based on an algorithm that a former VGT employee allegedly remembered and used at Castle Hill. *See* Doc. 102. When the expert reports were filed, and the dust settled, VGT had abandoned its source code copying claim entirely, but identified two algorithm claims, and its still-mysterious, catch-all "know-how" claim. Even at the summary judgment hearing VGT was unable or unwilling to clearly state what its "know-how" claim is based on. *See* Doc. 329 at 141-46. Acknowledging this lack of clarity, VGT's counsel suggested submitting an "enumerated list" *after* the summary judgment hearing. The Court declined, and stated "we're at summary judgment and we really ought to all know what those know-how claims are and they ought to be listed." *Id.* at 143. As it has done with Castle Hill, instead of clearly identifying its claims, VGT directed the Court to ambiguous and voluminous interrogatories, expert reports, and

---

[1] VGT also alleged infringement of numerous registered trademarks, unregistered trademarks, and trade dress. *See generally* Doc. 2. VGT expressly abandoned virtually all of its registered trademark claims, and many of its unregistered trademark claims in the original and Amended Complaints, *see* Docs. 143; 239 at 13; 329 at 62-63. In addition, VGT has tried to "redefine" its trade dress elements more times than Castle Hill can count. *See* Docs. 184 at 34-38; 274 at 7-11.

declarations. *Id.* It was thus not "foreseeable" that Castle Hill would need to discuss claims and evidence with its counsel which VGT had yet to conjure up, and which even now remain unclear.

Because VGT shifted its Trade Secret Claim away from source code copying and toward its algorithm and "know-how" theories based on remembered information, Castle Hill has a specific need to show its "uniquely qualified" engineers information to assist with the defense. These employees are accused of remembering and using confidential VGT information at Castle Hill. It is reasonable to allow them to know of and be prepared to testify about these issues at trial. VGT argues Castle Hill needs "good cause" to deviate from the Protective Order. Opposition at 7. This is because VGT wants to surprise and ambush the Castle Hill witnesses at trial, as it was permitted to do in deposition. Castle Hill can think of no greater cause than the need to fully, fairly and meaningfully prepare its defense for trial – especially where the over-zealous, well-funded Plaintiff is unmistakably trying to put the Defendants out of business.

VGT argues that Castle Hill's expert, Mr. Zeidman can testify about these issues instead of Castle Hill witnesses. While Mr. Zeidman has clearly shown that Castle Hill did not copy VGT's code or algorithms, VGT's morphing of its claims toward a "remembered information" theory necessitates Castle Hill's ability to prepare the witnesses who are accused of remembering and using the information at issue. Mr. Zeidman cannot look into their heads and perform this analysis. To deny Defendants' the ability to communicate with and properly prepare these witnesses will irreparably prejudice the defense at trial.

VGT's reliance on a prior ruling to argue that Castle Hill's requests would serve as expert rebuttal is misplaced. *See* Opposition at 12 (citing Doc. 320). Unlike Mr. Davis, whose opinions the Court struck in part, the Castle Hill engineers would not be giving expert opinions about Class II systems generally. Rather, they would testify about the specific factual information which VGT

3

alleges they remembered from their time at VGT, and then used at Castle Hill.[2] This is proper testimony. *See* Fed. R. Evid. 701.

The oft-repeated (and bizarre) argument that Castle Hill "should have" deposed its own engineers (in the presence of VGT's counsel) on these issues if it wanted to learn what the engineers actually remembered from their time at Castle Hill, is hardly the "cure" that VGT suggests. Contrary to VGT's outrageous position on this, Castle Hill is entitled to have *privileged* conversations with its counsel. Additionally, Mr. Scheiner, Mr. Suggs, and Mr. Roireau were deposed at different times, but while VGT was still modifying and shifting its Trade Secret Claim.[3] Castle Hill was not on notice of VGT's most recent claims (which remain unclear, as explained above) until *after* all of these depositions were concluded, VGT amended its complaint, and produced expert reports. VGT's theory, which would prohibit private attorney-client communications between Castle Hill and counsel, and require such communications to take place on the record in the presence of Plaintiff's counsel, would not have worked because VGT's shifting sands approach would have prevented it.

VGT's argument that Castle Hill should not be shown VGT's designated information because Castle Hill "*already* misappropriated VGT's trade secrets," *see* Opposition at 1, puts the cart before the horse. The Court denied VGT's motion for summary judgment on its Trade Secret Claims. It is presumptive, at best, for VGT to assert and rely on the conclusion that Castle Hill has misappropriated anything. The very purpose of the trial is to make this determination.

VGT further argues that Castle Hill's request is overbroad and raised at the "eleventh-hour."

---

[2] It is noteworthy that, despite VGT's repeated (and objectively untrue) mantra that the Castle Hill employees left VGT to form Castle Hill, *approximately seven years passed between Mr. Scheiner's employment with VGT and his employment with Castle Hill.*

[3] Mr. Scheiner was deposed on April 19, 2018. Mr. Suggs was deposed on June 8, 2018. Mr. Roireau was deposed on May 15, 2018 as a 30(b)(1) witness and on August 1, 2018 as a 30(b)(6) witness. The Court granted VGT leave to file its Amended Complaint with the new Trade Secrets claims on July 17, 2018. *See* Doc. 102.

4

To the contrary, as set forth in the Motion, Castle Hill made an effort to limit the scope of the documents that are the subject of the Motion. Castle Hill has not requested permission to share VGT source code with its personnel.[4] Castle Hill balanced (a) timing its Motion so as to permit the parties to narrow the issues through fact and expert discovery, and dispositive motions; against (b) presenting the Motion with sufficient time for the Court to provide a ruling on the Motion and for Castle Hill to prepare for trial. Quite simply, with approximately one month left until the trial begins, Castle Hill cannot wait any longer.

As set forth in the Motion, Castle Hill's need for disclosure outweighs any potential harm. VGT's Opposition does nothing to dispel Castle Hill's arguments. Disclosure of the specific limited information identified by Castle Hill to the identified individuals will permit preparation of a meaningful defense for trial. These individuals, who are the programmers most knowledgeable about the facts on which VGT's Trade Secrets Claims are based, should be given access to the requested information because only they know what information they remembered from working at VGT, and whether that information was used at Castle Hill. VGT has repeatedly changed its claims to the point where the claims are virtually unrecognizable when compared to the original Complaint. Castle Hill is entitled to relief from the outdated Protective Order so that it can prepare for trial against VGT's newest and latest version of its claims – claims against which only Castle Hill personnel can appropriately address and defend.

Finally, Defendants note that Plaintiff failed to address the *JetAway Aviation, LLC v. Board of County Com'rs of County of Montrose, Colo.* line of authority cited in the Motion, and the point that there is a right of access to judicial records notwithstanding any agreements or rights of the parties.

Castle Hill respectfully requests that the Court grant its Motion.

---

[4] VGT addressed National Indian Gaming Commission ("NIGC") materials which were included in the summary judgment record. *See* Opposition at 5. Counsel will not show Castle Hill employees the designated NIGC materials given the Court's ruling on that defense. *See* Doc. 344 at 1-12.

Dated:  August 15, 2019

Respectfully submitted,

*/s/ Robert C. Gill*
Robert C. Gill (admitted *pro hac vice*)
Henry A. Platt (admitted *pro hac vice*)
Thomas S. Schaufelberger (admitted *pro hac vice*)
Sherry H. Flax (admitted *pro hac vice*)
Matthew J. Antonelli (admitted *pro hac vice*)
Jeremy B. Darling (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
henry.platt@saul.com
tschauf@saul.com
sherry.flax@saul.com
matt.antonelli@saul.com
jeremy.darling@saul.com

Thomas G. Connolly (admitted *pro hac vice*)
HARRIS, WILTSHIRE & GRANNIS LLP
1919 M Street, NW, 8th Floor
Washington, D.C. 20036
(202) 730-1339 – Telephone
(202) 730-1301 – Telefax
tconnolly@hwglaw.com

James C. Hodges, OBA #4254
JAMES C. HODGES, P.C.
2622 East 21st Street, Suite 4
Tulsa, Oklahoma 74114
(918) 779-7078
(918) 770-9779 (facsimile)
JHodges@HodgesLC.com

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on this 15th day of August, 2019, I caused a copy of the foregoing **DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR RELIEF UNDER PROTECTIVE ORDER AND OTHER RELIEF** to be served via the Court's CM/ECF filing system to the following counsel for Plaintiff:

Graydon Dean Luthey, Jr.
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
(918) 595-4821
(918) 595-4990 (facsimile)
dluthey@gablelaw.com
*Counsel for Plaintiff*

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1221
(212) 841-1010 (facsimile)
nroman@cov.com
*Counsel for Plaintiff*

Gary M. Rubman
Peter Swanson
Rebecca B. Dalton
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
(202) 778-5465 (facsimile)
grubman@cov.com
pswanson@cov.com
rdalton@cov.com
*Counsel for Plaintiff*

            */s/ Robert C. Gill*
             Robert C. Gill