**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| VIDEO GAMING TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> CASTLE HILL STUDIOS LLC, *et al.* <br><br> Defendants. | CASE NO. 17-CV-00454-GKF-JFJ <br><br> **PUBLIC – REDACTED VERSION** |

**DEFENDANTS' BRIEFING ON "UNUSUAL OBJECTIONS"**
**TO DEPOSITION DESIGNATIONS**

Defendants, Castle Hill Studios LLC, Castle Hill Holdings LLC, and Ironworks Development LLC (collectively, "Castle Hill"), hereby submit this briefing on two issues that have arisen in the context of the parties' deposition designations and objections: 1) Castle Hill's objection to VGT's attempt to introduce deposition testimony of two of Castle Hill's rebuttal expert witnesses; and 2) VGT's misinterpretation and overly-broad reading of the Court's ruling on VGT's motion for partial summary judgment.[1]

**I.   VGT SHOULD NOT BE PERMITTED TO USE CASTLE HILL'S REBUTTAL EXPERTS' DEPOSITION TESTIMONY IN VGT'S AFFIRMATIVE CASE**

Much to Castle Hill's surprise and confusion, VGT's deposition designations revealed that VGT seeks to offer deposition testimony of two of Castle Hill's retained rebuttal expert witnesses, James Berger and Joseph Valandra, as part of VGT's affirmative case at trial. VGT notably does not seek to offer the actual *opinions* of either of those experts (presumably because their core opinions are not helpful to VGT); rather, it wants to use cherry-picked soundbites from the experts'

---

[1] Pursuant to LCvR 30.1(c), the parties met and conferred regarding their respective objections prior to the submission of objections to the Court. Castle Hill's remaining objections to VGT's designations and counter-designations are set forth in **Exhibit A** hereto. The parties also coordinated filing of hard copies of all deposition transcripts, with designations highlighted and objections annotated, as LCvR 30.1(c) requires.

1

depositions. As set forth below, the testimony VGT seeks to offer will be a waste of time, needlessly cumulative, and not helpful at all to the Court's consideration of any fact in dispute in this case. This is simply another VGT tactic to make this case more complicated than it needs to be.

Federal Rule of Civil Procedure 32(a) "does not alter the judicial preference for direct and cross-examination of a witness at trial." *In re Air Crash Disaster*, 720 F. Supp. 1493, 1501 (D. Colo. 1989) (citing *Salsman v. Witt*, 466 F.2d 76, 79 (10th Cir. 1972); *see also Garcia-Martinez v. City and Cty of Denver*, 392 F.3d 1187, 1191 (10th Cir. 2004) ("The preference for a witness's attendance at trial is axiomatic."). Recognizing this preference for live testimony, courts weigh the drawbacks associated with admitting deposition testimony under Rule 32(a). *Garcia-Martinez*, 392 F.3d at 1191 ("[T]he trial court 'may consider all the circumstances relating to the party's absence to determine whether the deposition may be used.'") (quoting 7 James Wm. Moore et al., Moore's Federal Practice § 32.24[5] (3d ed. 2003); *Bednasek v. Kobach*, No. 15-9300-JAR, 2018 WL 1116264, at *5 (D. Kan. Feb. 27, 2018) ("[S]everal courts in this circuit have recognized important considerations that may counsel in favor of requiring [expert] testimony [to] be presented live.") (citing cases). In the Tenth Circuit, courts have balanced the following factors "towards the ends of fairness" when determining whether to admit the deposition testimony of an expert witness:

> (1) offeror's need for the evidence to be presented through the deposition, (2) opportunity provided the opponent to cross-examine the deposition witness on those issues, (3) nature of the evidence to be presented, (4) jury's need to observe the demeanor and credibility of the witness, and (5) actual unavailability of the witness, as distinguished from mere geographic distance from the courthouse.

*In re Air Crash Disaster*, 720 F. Supp. at 1502; *Bednasek*, 2018 WL 1116264, at *5-6.

Here, based on the first, third, and fifth of these factors, the court should exercise its discretion to exclude Messrs. Berger and Valandra's deposition testimony.

### A.   VGT is Free to Present Evidence Through its Own Experts

Because the designated deposition testimony is largely cumulative or duplicative of testimony that VGT can offer through its own expert witnesses, VGT has no need to present this evidence through Messrs. Berger and Valandra's deposition testimony. *See Polys v. Trans-Colorado Airlines, Inc.*, 941 F.2d 1404, 1411 (10th Cir. 1991) (upholding the trial court's exclusion of expert deposition testimony where such testimony "would have been cumulative" of other expert evidence). For example, VGT designates portions of Mr. Berger's deposition testimony in which Mr. Berger states that despite having never heard of VGT expert Dr. Yoram "Jerry" Wind prior to this case, Dr. Wind appears to be "qualified," *see* 127:25-128:3; 128:5-12, that Dr. Wind's survey used an adequate number of respondents, *see* 145:9-16, and that a correction made to address an error impacting 20% of the original survey takers, "accounted for" one of the many errors with Dr. Wind's survey, *see* 234:20-236:14.

None of the testimony VGT proffers goes to Mr. Berger's core rebuttal opinions or criticisms of Dr. Wind, but instead represent a misguided attempt by VGT to rehabilitate its own expert through irrelevant soundbites from Mr. Berger. Many of the issues VGT appears to offer Mr. Berger's deposition for are matters that will either by addressed by Dr. Wind himself (assuming VGT intends to offer his testimony) or will be addressed by VGT's counsel as part of its argument. Mr. Berger's deposition testimony is therefore needlessly cumulative and a waste of time. *See Thames v. Evanston Ins. Co.*, No. 13-cv-425-PJC, 2015 WL 3398147, at*2 (N.D. Okla. May 26, 2015) (expert testimony in bench trial properly excluded if same legal arguments could be made by counsel).

Similarly, VGT designates portions of Mr. Valandra's deposition testimony in which Mr. Valandra agrees that game manufacturers could theoretically modify slim-line cabinets, *see* 150:7-151:5, that a game manufacturer could theoretically be successful without using a slim-line cabinet, *see* 176:7-11, and his acceptance of VGT's counsel's statement that both VGT's Mr. Money Bags

3

game and Castle Hill's New Money "feature cartoonish artwork," *see* 233:16-19.  This proffered testimony by VGT is little more than argument of counsel with respect to VGT's trade dress claim.  Importantly, Mr. Valandra's rebuttal opinion was not that an EGM manufacturer could never succeed without a slim-line cabinet, but rather that slim-line style cabinets are commonplace throughout the slot industry, in part because the smaller size of the slim-line cabinet allows more games to fit on a casino floor.  Again, VGT does not offer the testimony of Castle Hill's experts to admit their actual opinions, but rather to attempt to interject select "soundbites" from deposition testimony.  Because the proffered testimony is cumulative of the testimony VGT's own experts will offer and/or the arguments VGT's counsel will make, there is no need for the Court to admit Messrs. Berger and Valandra's deposition testimony.

      **B.     VGT Cannot Meet its Burden to Offer Castle Hill's Experts Under Rule 702**

Regarding the third factor courts consider when exercising discretion to allow deposition testimony under Rule 32, the nature of the evidence presented, it is important that VGT does not seek to offer mere unavailable fact witness testimony.  Rather, VGT seeks to introduce the out-of-context testimony of Castle Hill's rebuttal experts.  Accordingly, as the proponent of the expert witnesses' testimony, VGT must meet the requirements of Federal Rule of Evidence 702.  *See In re Air Crash Disaster*, 720 F. Supp. at 1502 (refusing to admit expert deposition testimony in part because "foundation for opinion testimony remained at issue"); *Johnson v. Petroman, Inc.*, No. 97-cv-1063-M, 1998 WL 3527726, at *1 (N.D. Okla. Dec. 3, 1998) ("Rule 702 establishes two requirements a party seeking to offer expert testimony must satisfy before an expert is permitted to testify.").

VGT cannot demonstrate, however, that the proffered deposition snippets are: 1) based on the experts' respective "scientific, technical, or other specialized knowledge"; and, 2) that the experts' proffered testimony will be helpful to the Court as the trier of fact.  *See* Fed. R. Evid 702(a);

4

*Johnson*, 1998 WL 3527726, at *1 ("It is said that the touchstone of admissibility [under Rule 702] is helpfulness to the trier of fact." (citing *Werth v. Makita Elec. Works*, 950 F.2d 643, 648 (10th Cir. 1991)).

For example, VGT designates portions of Mr. Berger's deposition in which he testifies about his source of income, *see* 27:14-18, how he attracts customers to his business, *see* 90:24-91:5, and that a properly executed survey could be beneficial when trying to prove confusion in the marketplace, *see* 104:22-105:9. Similarly, VGT designates portions of Mr. Valandra's deposition in which he is presented images and asked to identify which images are of VGT games and which are of Castle Hill games, *see* 123:11-127:16, in which he is presented images of strobe lights and asked to identify differences, *see* 188:13-89:22, and in which VGT's counsel simply reads into the record portions of Mr. Valandra's rebuttal report, *see* 223:24-224:7. None of this testimony is the product of, or requires, "specialized knowledge." *See* Fed. R. Evid. 702(a).

Likewise, VGT's designations of Messrs. Berger and Valandra's deposition testimony will not be helpful to the Court's consideration of disputed factual issues. For example, VGT designates portions of Mr. Berger's deposition in which he testified as to how long it theoretically would have taken Castle Hill to complete a customer survey, *see* 96:21-97:17, and that there is "no such thing as a perfect survey," *see* 120:12-122:3. There is no dispute that Castle Hill *could* have performed a survey, although it is not relevant since a defendant is plainly not required to do so. It is the plaintiff's burden to prove likelihood of confusion. Similarly, VGT's designates portions of Mr. Valandra's testimony where he testifies that both VGT and Castle Hill games come with and without toppers, *see* 135:4-137:8, and that a slim-line cabinet has a smaller depth than other cabinets, *see* 149:10-150:4. These issues are not in dispute or can be readily addressed through the testimony of the parties' respective fact witnesses. VGT cannot demonstrate that the proffered deposition excerpts will be helpful to the Court as the fact-finder, and thus should be excluded. *See Cyprus Amax Minerals Co. v.*

*TCI Pac. Commc'ns, Inc.*, No. 11-cv-0252-CVE-PJC, 2014 WL 693328, at *2 (N.D. Okla. Feb. 21, 2014) (The Court has "broad discretion to exclude expert testimony from a bench trial if it would not be helpful to the Court in its role as the finder of fact.").

Other VGT designations of Mr. Berger's deposition testimony reflect an apparent attempt to rehabilitate Dr. Wind's survey. In its Order on Castle Hill's motion to exclude Dr. Wind, the Court addressed the substantial problems associated with that survey. *See* Dkt. 322. The Court found, among other issues, that the survey "did not adequately replicate the circumstances in which the ordinary consumer actually confronts the products at issue," improperly used questions that "suggest[ed] the possibility of a connection between the products," and used stimuli that "were unduly suggestive" in that VGT's product and Castle Hill's product appeared next to each other in 75 percent of the surveys, were the only products in the survey to include the word "money," and were the only products in the survey that were presented in a frontal, 2-D manner. *See* Dkt. 322 at 12, 14-15.

Despite what VGT may argue, its designations of Mr. Berger's deposition testimony address none of the issues the Court identified in its criticisms of the Wind Survey. Rather, VGT designates portions of Mr. Berger's testimony regarding other aspects of the survey, as discussed above. Setting aside the irony in VGT attempting to use Castle Hill's rebuttal expert to fix the fundamental flaws in its own expert's survey, none of the designations VGT offers address, much less fix, the Court's concerns with Dr. Wind's survey, or otherwise help the Court "understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702(a).

> **C. VGT Has Not Demonstrated that Messrs. Berger and Valandra are Actually Unavailable Under Fed. R. Civ. P. 32**

Regarding the fifth factor – actual unavailability – VGT's sole basis for designating Messrs. Berger and Valandra's deposition testimony appears to be that Messrs. Berger and Valandra lie beyond the Court's subpoena power. However, a trial court is not required to admit a witness's

deposition testimony under Rule 32(a) merely because that witness is more than 100 miles from the courthouse. *Polys v. Trans-Colorado Airlines, Inc.*, 941 F.2d at 1410 ("[T]he district court was not automatically required to admit the deposition testimonies under Federal Rule of Civil Procedure 32(a)(3)(B) just because the witnesses were more than 100 miles away."); s*ee also In re Air Crash Disaster*, 720 F. Supp. at 1502 ("Under Rule 32 and the Rules of Evidence, the admission of deposition testimony in lieu of oral testimony lies in the sound discretion of the trial court.") (citing *Reeg v. Shaughnessy*, 570 F.2d 309, 317 (10th Cir. 1978)).

Rather, to admit Messrs. Berger and Valandra's deposition testimony, VGT must show that Messrs. Berger and Valandra are actually unavailable. *See In re Air Crash Disaster*, 720 F. Supp. at 1502 (noting that the offering party's sole basis for unavailability was that the expert lived more than 100 miles from the court house); *Bednasek*, 2018 WL 1116264, at *6 (excluding expert deposition testimony in part because "there is no indication that actual unavailability, beyond mere distance from the courthouse, is the reason for Defendant's deposition designation").

VGT has offered no evidence that Messrs. Berger and Valandra are actually unavailable. In fact, VGT has not even inquired of Castle Hill as to whether or not they might be available to testify at trial. Accordingly, VGT should not be permitted to offer the deposition testimony of VGT's rebuttal experts at trial.

## II. VGT'S OBJECTIONS TO CASTLE HILL DESIGNATIONS REFLECT AN OVERBROAD INTERPRETATION OF THIS COURT'S RULING ON VGT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

VGT has objected to more than 50 of Castle Hill's designations and counter-designations on grounds that the topic of the designated testimony was excluded by the Court's Orders on VGT's motion for partial summary judgment and motion in *limine* regarding Castle Hill's affirmative defenses of unclean hands and illegality. *See* Dkt. 344, 345. In e-mails following the parties' August 12, 2019 meet and confer, VGT asserted that those Orders prohibit Castle Hill from offering in

7

response to VGT's trade dress claims any evidence that VGT engaged in any competitive research against third parties and from offering in response to VGT's trademark and trade dress claims any evidence that VGT engaged in any "inequitable conduct."[2]

VGT's interpretation of these Orders, however, is manifestly overbroad, and not supported by the Orders' plain language. At the outset, these Orders do not prohibit Castle Hill from offering unclean hands as an affirmative defense to VGT's trade dress claim. To the contrary, Castle Hill is expressly permitted to offer such evidence as part of an unclean hands affirmative defense to the extent that it is premised on (1) allegations that VGT misappropriated its trade dress from industry competitors, or (2) allegations that VGT altered its trade dress to increase the likelihood of confusion. *See* Dkt. 345 at 9-10 ("Castle Hill's unclean hands defense, to the extent premised on VGT's alleged misappropriation, is limited to VGT's trade dress claims."); *id.* at 10 ("To the extent VGT's conduct may result in increased customer confusion, VGT's conduct is relevant to its right to equitable relief . . . the affirmative defense on this theory is limited to VGT's trade dress claims.").

The Orders also only address Castle Hill's ability to assert ***affirmative defenses***. The Court did not (nor did VGT ask it to) exclude any specific exhibits or topics of testimony. Indeed, VGT made its arguments about Castle Hill's affirmative defenses without submitting ***any*** accompanying statement of facts or supporting documents because, according to VGT, those issues could be decided solely as a matter of law. *Now*, however, VGT points to countless of its own documents and testimony from VGT witnesses that it asserts fit into the "fast follower" theory (note that this is VGT's characterization of the unclean hands defense) and claims that the Court has "excluded" those documents and related testimony. This is an unjustified and inappropriate interpretation of

---

[2] Castle Hill's designations were submitted prior to the Court's ruling. Based on the parties' meet and confer, Castle Hill has withdrawn those designations which relate to issues of regulatory compliance the Court addressed in its Orders.

8

the Court's Orders. Just because certain specific evidence cannot be asserted as supporting an unclean hands affirmative defense with respect to trademarks, does not mean that that same evidence is inadmissible for all purposes. Rather, the evidence may nevertheless still be relevant and probative on other issues in the case, including issues for which VGT has the burden (as opposed to Castle Hill's burden to establish affirmative defenses).

VGT's documents demonstrate countless examples of VGT performing market research on its competitors and analyzing what products exist in the marketplace and what features of those products are successful or unsuccessful. VGT asserts that the Court's Orders mean that Castle Hill cannot offer any evidence that VGT conducted competitive research. This reading of the Court's Orders is unfairly one-sided and fundamentally flawed. Even though the Court ruled that Castle Hill's unclean hands affirmative defense is limited to VGT's trade dress claims, VGT's marketplace research into its competitors' games is still relevant, probative, and admissible.

For example, during the parties' email exchange following their meet and confer, Castle Hill inquired about specific testimony from VGT witness Will Harvie, to which VGT lodged an objection that the testimony was "excluded." *See* Harvie Dep., 34:14-49:15, attached hereto as **Exhibit B**.[3] In the proffered line of questioning, Mr. Harvie answers questions regarding a report, attached hereto as **Exhibit C**, he authored following a visit to the ▮▮▮▮▮▮▮▮ casino. Mr. Harvie testified that while at the casino, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ VGT wishes to preclude Castle Hill's use of this evidence because it casts VGT and its claims in a poor light.

---

[3] This example is offered for illustrative purposes. Castle Hill would be happy to address any specific question or concern the Court may have with respect to any of its proffered deposition testimony or its interpretation of the Court's prior rulings.

VGT's interpretation of the Court's Orders is that Mr. Harvie's testimony (and presumably the accompanying document) are not admissible at trial. This interpretation makes little sense, because the specific issues Mr. Harvie addressed in his report and testified about during his deposition are relevant to several of VGT's claims. ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████

Castle Hill does not intend to argue that the ███████████ trip report is evidence that VGT "misappropriated" its competitors' trade secrets and trade dress such that it has "unclean hands" and cannot, as a matter of law, recover for Castle Hill's alleged wrongdoing. Rather, the testimony and report are admissible and probative on issues for which VGT has the burden of proof. For example, ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████

VGT is interpreting the Court's ruling on its motion for partial summary judgment as having an excessively broad and sweeping exclusionary impact that is not supported by the language of the opinion, or the parties' briefing of the issues VGT raised regarding Castle Hill's unclean hands affirmative defense. The Court's Orders addressed only whether or not Castle Hill could assert illegality and unclean hands as affirmative defenses as a matter of law. The Court did not consider whether any specific evidence or testimony could be offered or should be excluded at trial. Castle Hill does not understand that to have been the Court's intention based on a plain reading of the Orders. To read the Court's Orders as preemptively limiting Castle Hill's evidence in the manner

VGT advocates would be fundamentally unfair to Castle Hill, and would prejudice its ability to defend against VGT's claims at trial.

## III. CONCLUSION

For the foregoing reasons, Castle Hill respectfully requests that the Court sustain Castle Hill's objection to VGT's deposition designations of Castle Hill's rebuttal experts Messrs. Berger and Valandra, and overrule VGT's objection that certain of Castle Hill's designations and counter-designations are excluded by Court Order.

Dated: August 15, 2019

Respectfully submitted,

*/s/ Robert C. Gill*
Robert C. Gill (admitted *pro hac vice*)
Henry A. Platt (admitted *pro hac vice*)
Thomas S. Schaufelberger (admitted *pro hac vice*)
Sherry H. Flax (admitted *pro hac vice*)
Matthew J. Antonelli (admitted *pro hac vice*)
Jeremy B. Darling (admitted *pro hac vice*)
SAUL EWING ARNSTEIN & LEHR, LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006
(202) 295-6605
(202) 295-6705 (facsimile)
robert.gill@saul.com
henry.platt@saul.com
tschauf@saul.com
sherry.flax@saul.com
matt.antonelli@saul.com
jeremy.darling@saul.com

James C. Hodges, OBA #4254
JAMES C. HODGES, P.C.
2622 East 21st Street, Suite 4
Tulsa, Oklahoma 74114
(918) 779-7078
(918) 770-9779 (facsimile)
JHodges@HodgesLC.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of August, 2019, I caused a copy of the foregoing **DEFENDANTS' BRIEFING ON UNUSUAL OBJECTIONS TO DEPOSITION DESIGNATIONS – PUBLIC REDACTED VERSION** was filed using the Court's CM/ECF system, which will cause electronic notification of filing to be provided to the following counsel for Plaintiff:

Graydon Dean Luthey, Jr.
GABLE GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
(918) 595-4821
(918) 595-4990 (facsimile)
dluthey@gablelaw.com
*Counsel for Plaintiff*

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1221
(212) 841-1010 (facsimile)
nroman@cov.com
*Counsel for Plaintiff*

Gary M. Rubman
Peter Swanson
Rebecca B. Dalton
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
(202) 778-5465 (facsimile)
grubman@cov.com
pswanson@cov.com
rdalton@cov.com
*Counsel for Plaintiff*

                                  */s/ Robert C. Gill*
                                  Robert C. Gill