IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VIDEO GAMING TECHNOLOGIES, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 17-CV-00454-GKF-JFJ |
| | ) **FILED UNDER SEAL** |
| CASTLE HILL STUDIOS LLC (d/b/a CASTLE HILL GAMING); CASTLE HILL HOLDING LLC (d/b/a CASTLE HILL GAMING); and IRONWORKS DEVELOPMENT, LLC (d/b/a CASTLE HILL GAMING), | ) ) ) ) ) ) ) |
| Defendants. | ) |

**ORDER**

This matter comes before the court on the Motion to Limit the Testimony of Plaintiff's Damages Expert Melissa A. Bennis [Doc. 176] of defendants Castle Hill Studios, LLC, Castle Hill Holding, LLC, and Ironworks Development, LLC (collectively, "Castle Hill").[1] For the reasons discussed below, the motion is denied.

**I.   Background and Procedural History**

This is a dispute between two class II bingo-based player terminal developers. Plaintiff Video Gaming Technologies, Inc. ("VGT") alleges that Castle Hill, a competitor of VGT operated by former VGT employees and officers, intentionally developed class II games that closely resembled VGT's class II games and incorporated marks and themes confusingly similar to VGT's

---

[1] Defendants also filed a sealed, unredacted version of the motion as [Doc. 175]. The references contained in this order are to the unredacted version. Accordingly, the court files this order under seal, attorneys' eyes only. As set forth below, the court will enter an unsealed order after consideration of the parties' proposed redactions, if any.

marks and themes. VGT further alleges that Castle Hill misappropriated VGT's trade secrets and confidential business information to develop its class II games.

VGT retained financial consultant Melissa A. Bennis to opine as to damages recoverable by VGT in the event Castle Hill is found liable to it on at least one claim. [Doc. 175-2, p. 6]. Bennis offers no opinions with respect to liability. [*Id.*]. Castle Hill seeks to limit the testimony offered by Bennis at the trial of this matter.

**II.     Analysis**

Castle Hill asks the court to exclude three categories of Bennis's opinions: (1) opinions applying a ten-year depreciation expense to Castle Hill's electronic gaming machines; (2) opinions with respect to "avoided research and development costs"; and (3) opinions improperly summarizing facts and offering legal opinions and conclusions.[2] [Doc. 175, pp. 2-3]. The court separately considers each objection.

   *A.     Opinions Applying a Ten-Year Depreciation Expense*

Castle Hill criticizes Bennis's methodology with respect to application of a ten-year depreciation expense—specifically, because Bennis employed a "cost of goods" analysis which was designed to "create the fiction of profitability." [Doc. 175, p. 4]. Castle Hill argues that it was unprofitable each year since its creation and therefore Bennis's damage model is artificially inflated. However, pursuant to the Lanham Act, "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). Courts assessing profits under the Lanham Act have approved of

---

[2] Castle Hill does not challenge Bennis's qualifications. [Doc. 175].

a "cost of goods" analysis. *See Choice Hotels Int'l, Inc. v. Zeal, LLC*, 135 F. Supp. 3d 451, 472 (D.S.C. 2015); *Entrepreneur Media, Inc. v. JMD Entm't Grp.*, *LLC*, 958 F. Supp. 2d 588, 597 (D. Md. 2013); *N.Y. Racing Ass'n, Inc. v. Stroup News Agency Corp.,* 920 F. Supp. 295, 301 (N.D.N.Y. 1996). Thus, Bennis's use of the "cost of goods" analysis does not render Bennis's opinions unreliable under *Daubert.*

Castle Hill further criticizes Bennis's calculation of the depreciation of Castle Hill's products over a ten-year period, rather than the four-year useful life period utilized by Castle Hill for income tax purposes. Castle Hill contends that, in adopting the ten-year depreciation period, Bennis "ignore[s] accepted accounting methods, [and] the depreciation period provided for by law[.]" [Doc. 175, p. 4]. However, in her reply report, Bennis explains that "an asset can be depreciated differently for financial reporting and tax reporting purposes." [Doc. 175-3, p. 8].[3] To explain her decision to utilize a ten-year depreciation period, Bennis stated she intended to spread the production costs over the useful life of the product and pointed to testimony by Castle Hill executive Arthur Watson that he hoped Castle Hill games would be in existence for longer than four years. [Doc. 223-3, pp. 48:11 to 49:6]. Thus, Bennis provides a reasoned basis for her adoption of a ten-year depreciation period. *Cf. Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp. 2d 1022, 1030-31 (D. Kan. 2006). To the extent Castle Hill disagrees with Bennis's reliance on that evidence, including testimony regarding hopes as to the duration of the product, objections to the factual underpinnings of an expert's opinions go to the weight, not the admissibility, of the testimony. *Ortega v. City & Cty. of Denver*, No. 11-CV-02394-WJM-CBS, 2013 WL 438579, at **4-5 (D. Colo. Feb. 5, 2013); *In re Commercial Fin. Servs., Inc.,* 350 B.R.

---

[3] Further, Bennis offers evidence that, if not for IRS guidelines regarding "Indian Reservation Property," the products would be classified as 7-year, not 4-year, property. [*Id.*].

559, 568 (N.D. Okla. Bankr. 2005) ("An expert's assumption of certain facts to the exclusion of others does not necessarily render the expert's opinion unreliable.").

Moreover, the Tenth Circuit has recognized "the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise when a district court is conducting a bench trial." *Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009) (citing *Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1302 (Fed. Cir. 2002)). Rather, "a judge conducting a bench trial maintains greater leeway in admitting questionable evidence, weighing its persuasive value upon presentation." *Id.* at 780. Because this case will be tried before the court, not a jury, Bennis's decision to apply a ten-year depreciation does not render her opinions so unreliable to warrant exclusion. Rather, defense counsel may explore the bases for her opinions through cross-examination.

      B.     *Opinions with Respect to "Avoided Research and Development Costs"*

Castle Hill next criticizes Bennis's methodology in reaching her opinions regarding "avoided research and development costs," specifically her reliance on what it characterizes as a "back of the envelope 'calculation'" made by Alan Roireau" and Stacy Friedman's opinions. [Doc. 175, p. 5]. Castle Hill's objections to the factual underpinnings of Bennis's opinions go to the weight, not the admissibility, of the testimony. *Ortega*, 2013 WL 438579, at **4-5. This is particularly true in a non-jury trial, where it is the court's duty to assess and weigh the credibility of an expert witness. *Oklahoma v. Tyson Foods, Inc.*, No. 05-CV-329-GKF-SAJ, 2008 WL 1994910, at *1 (N.D. Okla. May 5, 2008). Further, to the extent Castle Hill argues Bennis lacks personal knowledge, Federal Rule of Evidence 703 permits an expert to base his or her opinions "on facts or data in the case that the expert *has been made aware of* or personally observed," provided that other experts in the particular field would reasonably rely on the facts or data. FED.

R. EVID. 703 (emphasis added). Accordingly, the Rules do not require an expert to personally observe all data relied upon. Finally, the court previously declined to exclude Stacy Friedman's opinions based on similar objections raised by Castle Hill. [Doc. 315, pp. 8-9].

    C.    *Opinions Improperly Summarizing Facts and Offering Legal Opinions/Conclusions*

Finally, in two related topics, Castle Hill objects to what it characterizes as Bennis's improper summary of documents or facts, as well as opinions that include "legal conclusions, legal standards, or the opinions given by other experts." [Doc. 175, pp. 15-16]. With respect to summaries of facts, Castle Hill points to the "Basis and Reasoning" section of Bennis's opinions, statements regarding "recognition and goodwill associated with VGT's games," and information about "VGT's marketing, advertising, and promotional efforts." [*Id.* at p. 15]. However, the principle underlying the Tenth Circuit's general prohibition against permitting an expert from summarizing facts is inapplicable because the court will act as the finder of fact, rather than a jury. *See iFreedom Direct Corp. v. First Tenn. Bank Nat'l Ass'n*, No. 09-CV-205-DN, 2012 WL 3067597, at *3 (D. Utah July 27, 2012) (with respect to an upcoming jury trial, a federal district judge in Utah ruled that "no expert or any other witness will be permitted to simply summarize the facts and the depositions of others. Such testimony comes dangerously close to usurping the fact-finder's function . . . ."). Additionally, as previously stated, to the extent Castle Hill argues Bennis lacks personal knowledge, Federal Rule of Evidence 703 does not require an expert to personally observe all data relied on. FED. R. EVID. 703.

As for improper legal conclusions, Castle Hill specifically points to Bennis's opinions that it was improper for Castle Hill's damages expert, Todd Schoettelkotte, to rely on marketing surveys obtained by VGT. Castle Hill argues that the opinions go beyond Bennis's expertise as a damages expert. [Doc. 256, p. 8]. However, when viewed in context, it is clear that Bennis

criticizes Schoettelkotte's reliance on surveys to apportion Castle Hill's profits that are attributable to the alleged use of VGT's trademarks, trade dress, and trade secrets, as opposed to other factors that contribute to the value. [Doc. 175-3, pp. 20-24]. Thus, Bennis's opinions fall within the scope of her opinions as to damages—specifically, the profits attributable to Castle Hill's alleged misconduct. Moreover, Bennis's reply brief responds to matters placed at issue in the rebuttal report and therefore falls within the proper scope of reply. *See generally Altamirano v. Chem. Safety & Hazard Investigation Bd.*, 41 F. Supp. 3d 982, 994 (D. Colo. 2014).

Castle Hill further contends Bennis's criticisms of Schoettelkotte's reliance on surveys as "not really her opinions, but . . . regurgitated opinions originating from Dr. [Yoram] Wind." [Doc. 256, pp. 8-9]. However, Bennis offers criticisms beyond those offered by Dr. Wind based on her own review of the survey evidence and the deposition testimony of Jon Yarborogh. [Doc. 175-3, pp. 20-24]. Further, to the extent Bennis relies on Wind's opinions, based on the court's review of Bennis's reply report, it is clear that Bennis does not simply "parrot" Wind's testimony. *Cf. TK-7 Corp. v. Estate of Barbouti,* 993 F.2d 722, 732 (10th Cir. 1993). Rather, Bennis relies on Wind's opinions that the VGT trademarks and trade dress are strong to criticize Schoettelkotte for failing to perform a comparison of the revenue between games appearing in the relevant VGT trade dress (retro) cabinet and games of the same title in different cabinets—an analysis she performed. [Doc. 175-3, p. 23]. Accordingly, Bennis's reliance on Wind's opinions does not render her opinions inadmissible.

### III.   Conclusion

WHEREFORE, Defendants' Motion to Limit the Testimony of Plaintiff's Damages Expert Melissa A. Bennis [Doc. 176] is denied. The parties may file proposed redactions, or state their non-objection to public filing of this order, no later than September 3, 2019.

DATED this 20th day of August, 2019.

*[signature]*
GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE