IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VIDEO GAMING TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> CASTLE HILL STUDIOS LLC <br> (d/b/a CASTLE HILL GAMING); <br> CASTLE HILL HOLDING LLC <br> (d/b/a CASTLE HILL GAMING); and <br> IRONWORKS DEVELOPMENT, LLC <br> (d/b/a CASTLE HILL GAMING), <br><br> Defendants. | Case No. 17-CV-00454-GKF-JFJ <br> **FILED UNDER SEAL** |

## ORDER

This matter comes before the court on the Motion for Relief Under Protective Order and Other Relief [Doc. 357] of defendants Castle Hill Studios LLC, Castle Hill Holding LLC, and Ironworks Development, LLC (collectively, "Castle Hill").[1]  For the reasons set forth below, the motion is granted in part and denied in part.

I.  **Background and Procedural History**

This is an intellectual property dispute between two class II bingo-based player terminal developers.  Plaintiff Video Gaming Technologies, Inc. ("VGT") alleges that Castle Hill, a competitor of VGT operated by former VGT employees and officers, intentionally developed class II games that closely resemble VGT's class II games and incorporate marks and themes

---

[1] Defendants also filed a sealed, unredacted version of the motion as [Doc. 356].  The references contained in this order are to the unredacted version.  Accordingly, the court files this order under seal, attorneys' eyes only.  As set forth below, the court will enter an unsealed order after consideration of the parties' proposed redactions, if any.

c/all counsel

confusingly similar to VGT's marks and themes.  VGT further alleges that Castle Hill misappropriated VGT's trade secrets and confidential business information to develop its class II games.

Approximately three (3) months after filing its original Complaint, VGT moved for entry of a three-tier protective order that permitted designation of information or materials as "confidential," "highly confidential," or "highly confidential source code." [Doc. 47].  Castle Hill responded in opposition, asserting that the proposed "highly confidential" designation would "operate to severely limit the ability of defense counsel to meaningfully communicate with Castle Hill about this action, and would impair Castle Hill's ability to meaningfully participate in, and assist with, the defense of this case." [Doc. 50, p. 12].  Defense counsel again raised concerns regarding an inability to prepare Castle Hill's defense during a motion hearing before Magistrate Judge Jayne on December 6, 2017, stating

> I would like to have the opportunity to discuss this with the client, particularly in a trade secret case because, you know, one of the defenses in these types of cases is this is the particular claim that's been made for which trade secret protection is sought, and I need to be able to discuss with the client what that specific claim is. I would like for the client to be able to see whatever the evidentiary material is that underlies that complaint because the client may be able to say, in response to that, "No, we didn't use this or anything like this.  This is how we did it and I need that in order to be able to defend the claim."  And if I can't have that communication with the client, that significantly hampers my ability to be able to defend the case, and that's my concern.

[Doc. 52, p. 38:15 to 39:2].  At the close of the hearing, Magistrate Judge Jayne denied the motion for protective order and directed the parties to meet and confer and submit either a joint motion for protective order or to file necessary motions to resolve any remaining disputes. [Doc. 51].

On December 20, 2017, the parties filed a Joint Submission Regarding Entry of a Protective Order. [Doc. 53].  The joint submission represented that "[t]o facilitate an agreement, the Defendants dropped their request that the parties themselves—as opposed to just counsel—have

the ability to access Highly Confidential Information." [Doc. 53, p. 5]. The sole remaining dispute related to the number of non-lawyer party representatives who may view "Confidential Information," with VGT requesting that the number be limited to three and Castle Hill requesting five. [*Id.*]. On December 22, 2017, Magistrate Judge Jayne entered the Stipulated Protective Order, adopting the language proposed by VGT and limiting the number of non-lawyer party representatives who could view "Confidential Information" to three. [Doc. 54; Doc. 55].

Castle Hill now seeks relief from the Stipulated Protective Order and requests to share certain information designated by VGT as "highly confidential" with four Castle Hill employees: (1) Paul Suggs, software engineer; (2) Andrew Scheiner, software engineer; (3) Alan Roireau, Chief Technical Officer; and (4) Arthur Watson, Chief Financial Officer. [Doc. 356, p. 3]. Castle Hill asserts disclosure is necessary in order to adequately prepare its witnesses and defense for trial. [*Id.* at p. 2].[2]

**II. Analysis**

The Tenth Circuit has recognized that "[p]rotective orders serve the vital function of 'secur[ing] the just, speedy, and inexpensive determination of civil disputes by encouraging full disclosure of all evidence that might conceivably be relevant.'" *S.E.C. v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1272 (10th Cir. 2010) (quoting *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 295 (2d Cir. 1979)). "[A]s a sheer matter of power the court has authority to alter the terms of a protective order it has entered[.]" *Id.* at 1271 (quoting 8 CHARLES ALAN WRIGHT ET AL.,

---

[2] Additionally, Castle Hill requests that the court "deny a previously asserted claim by counsel for Plaintiff, that defense counsel may not even discuss with former VGT employees information that such persons remember from their employment which is relevant to VGT's trade secret or confidential business information claims." [*Id.* at p. 1]. VGT's position with respect to attorney-client communications was the subject of Castle Hill's Motion *in Limine* to Exclude Evidence and Argument Regarding Communications Between Counsel and Castle Hill Employees, which was resolved under separate order. *See* [Doc. 377].

- 3 -

FEDERAL PRACTICE AND PROCEDURE § 2044.1, at 575-76 (2d ed. 1994)); *see also United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (recognizing district court's power to modify a protective order as long as the protective order remains in effect). However, "courts should be wary of retroactive attempts to modify [protective orders] in ways that undermine the justified reliance" of a party or witness. *Merrill Scott & Assocs., Ltd.*, 600 F.3d at 1272; *see also Brigham Young Univ. v. Pfizer, Inc.,* 281 F.R.D. 507, 510 (D. Utah 2012) (internal footnote omitted) ("Stipulated protective orders have become standard practice in complex cases and are valuable in creating a reliable dependable discovery process. Such orders allow the parties to make full disclosure in discovery without fear of unauthorized access to sensitive information and they reduce the expense and delay of endless discovery disputes."). "The party seeking to modify a protective order bears the burden of showing good cause for the modification." *Brigham Young Univ.,* 281 F.R.D. at 510 (citing *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 229 (2d Cir. 2001)); *see also Jochims v. Isuzu Motors, Ltd*., 145 F.R.D. 499, 501 (S.D. Iowa 1992) ("[T]here is general unanimity among the courts that where a party to stipulated protective order seeks to modify that protective order, that party must demonstrate particular good cause in order to gain relief from the agreed to protective order.").

  A. *Suggs, Scheiner, and Roireau*

With respect to the programmers and their supervisor—Suggs, Scheiner, and Roireau—Castle Hill asserts that good cause exists to modify the Stipulated Protective Order because the employees are "uniquely qualified to understand and help the defense prepare for trial on the trade secret claims," in part because Suggs worked on the bingo card algorithm at issue and Roireau is

his supervisor.³ [Doc. 356, p. 11]. Further, Castle Hill contends that each software employee possesses specific factual information from their former employment with VGT, which VGT now contends Castle Hill misappropriated as part of VGT's "know how" trade secret claim. [Doc. 364, pp. 3-5]. In response, VGT asserts that, if disclosure is permitted, it would suffer tangible prejudice that outweighs any benefit to Castle Hill because VGT and Castle Hill are direct competitors in the class II gaming market and, permitting Castle Hill to review information designated as "highly confidential" would provide Castle Hill an opportunity to misappropriate that information.

"Typically, when considering whether to modify a protective order, courts examine any tangible prejudice to the party opposing modification that outweighs the benefits of modification." *Merrill Scott & Assocs., Ltd.,* 600 F.3d at 1272. In intellectual property cases, to weigh the benefits of modifications versus potential prejudice, federal district courts generally consider whether disclosure of the information "would allow disclosure to a competitive decision maker who would be virtually unable to compartmentalize the information and not use the information to seek to gain an unfair competitive advantage." *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 501 (D. Kan. 2007) (entry of protective order); *see also Cummins-Allison Corp. v. Glory Ltd.*, No. 02-C-7008, 2003 WL 26620151, at **3, 5-6 (N.D. Ill. Dec. 31, 2003) (modification). Competitive decisions are those that involve, among other things, pricing or product design. *See U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984). The court first considers the

---

³ VGT has defined the trade secret and misappropriation of confidential business information clams as being premised on two separate algorithms: (1) the bingo card generation algorithm and (2) the uniqueness testing algorithm. *See* [Doc. 239]. However, in its motion for partial summary judgment, VGT referred to the two algorithms, collectively, as the "bingo card algorithm." *See* [Doc. 188]. For ease of reference, the court also refers to the two algorithms, collectively, as the "bingo card algorithm."

balance of interests with respect to "highly confidential information" pertaining to the bingo card algorithm and then with respect to VGT's "know how" trade secret claims.

Suggs and Scheiner are Castle Hill programmers involved in the design on Castle Hill's products. Roireau is their supervisor. As such, their positions create an opportunity for the inadvertent disclosure or misappropriation of "highly confidential information." *See Suture Express, Inc. v. Cardinal Health*, *200, LLC*, No. 12-2760-RDR, 2013 WL 6909158, at *7 (D. Kan. Dec. 31, 2013); *see also M-Edge Accessories, LLC v. Amazon.com Inc*., No. MJG-11-3332, 2013 WL 12241898, at *3 (D. Md. May 14, 2013) (noting "too great a risk of . . . gaining an unfair business advantage as a result"). As recognized by numerous courts, "[i]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *Suture Exp., Inc.,* 2013 WL 6909158, at *7 (quoting *Layne Christensen Co. v. Purolite Co*., 271 F.R.D. 240, 249 (D. Kan. 2010)).

Further, although Castle Hill argues that Suggs and Roireau are "uniquely qualified" to testify regarding differences and similarities in VGT's bingo card algorithm and Castle Hill's bingo card algorithm based on their work on each, this expertise and role in the litigation is duplicative of the retained experts in this matter—specifically, Stacy Friedman and Robert Zeidman. *See Layne Christensen Co.,* 271 F.R.D. at 249-50 ("The court should also consider whether prohibiting the individual's access to the information would hamper the party's ability to assess the merits of the litigation. This involves considering the individual's specific role in the litigation, whether his or her expertise is specialized and not widely available through the retention of other experts, and whether this specialized expertise is essential to the proper handling of the litigation."). Friedman and Zeidman have submitted lengthy expert reports opining as to the relation between the VGT and Castle Hill algorithms. Both experts were deposed. Additionally,

Friedman submitted declarations in conjunction with the summary judgment briefing. Combined, the reports, deposition testimony, and declarations articulate the salient features of the VGT bingo card algorithm versus that of Castle Hill, analyze the source code underlying the algorithms, and discuss functionality of both algorithms. Presumably, the well-documented opinions of the retained experts in this matter articulate each party's position with respect to the trade secret claims to the extent premised on the bingo card algorithm.

Case law relied on by Castle Hill is distinguishable. In those cases, the parties were either not direct competitors or there were no allegations of misappropriation of confidential information. *See THK Am., Inc. v. Nippon Seiko K.K.*, 141 F.R.D. 461, 462 (N.D. Ill. 1991) (patent case declining to prohibit disclosure to president of company with an engineering staff of one engineer and several assistants, where president invented the product at issue); *Medtronic Sofamor Danek, Inc. v. Michelson*, No. 01-2373-GV, 2002 WL 33003691, at *3 (W.D. Tenn. Jan. 30, 2002) (parties were not direct competitors). Rather, tiered protective orders such as that at issue are commonplace in intellectual property disputes and therefore attorneys must customarily manage litigation strategy without revealing confidential information to their clients. In fact, Castle Hill, to date, has done so, submitting a dispositive motion directed, in part, to the trade secrets claim to the extent premised on the bingo card algorithm. Thus, refusing to permit disclosure of highly confidential information related to the bingo card algorithm does not constitute an undue hardship to Castle Hill. *See McAirlaids, Inc. v. Kimberly-Clark Corp.*, 299 F.R.D. 498, 501 (W.D. Va. 2014).

Finally, the court notes that the need to disclose "highly confidential information" to Castle Hill personnel in preparation of its defense with respect to claims premised on bingo card generation was clearly foreseeable to Castle Hill at the time the parties negotiated the Stipulated

Protective Order. Defense counsel raised the issue in both the briefing and hearing related to VGT's motion for protective order. *See K-TEC, Inc. v. Vita-Mix Corp.*, No. 06-CV-00108-TC-PMW, 2007 WL 9657986, at *2 (D. Utah June 20, 2007) (stating the court should examine factors including "the foreseeability of the requested modification or amendment at the time the protective order was entered" to determine motion to modify protective order). At the time, the Complaint defined VGT's trade secrets to include "the math underlying the games, the specifics of the manner in which the bingo game is played in the games (including the process and timing for the ball drops), and the source code used to operate the games." [Doc. 2, ¶ 41]. That Castle Hill conceded the ability to disclose to its personnel information designated as "highly confidential" related to these "trade secrets" in order to "facilitate an agreement" does not justify a significant modification of the protective order at this stage of the litigation. *See Raytheon Co. v. Indigo Sys. Corp.,* No. 07-CV-109, 2008 WL 4371679, at *2 (E.D. Tex. Sept. 18, 2008).

With respect to the bingo card algorithm, because the testimony and information sought from the Castle Hill programming personnel may be adequately obtained from experts, and the potential need for disclosure to Castle Hill personnel was foreseeable to Castle Hill at the time of entry of the Stipulated Protective Order, the potential prejudice to VGT outweighs the benefit of modification to Castle Hill. The court therefore declines to modify the Stipulated Protective Order to permit disclosure of information related to the bingo card algorithm designated as "highly confidential" to Castle Hill programming personnel.

However, the balance of interests tips in favor of a limited disclosure with respect to "highly confidential" information related to VGT's "know how" trade secret and confidential business information claims. First, the extent to which, if any, Castle Hill utilized VGT's "know how"—that is, knowledge, techniques, and strategies developed by VGT with respect to class II

- 8 -

bingo games—is a matter with respect to which Castle Hill personnel are uniquely qualified to testify. Unlike the bingo card algorithm, which was susceptible to objective analysis of certain salient features by third-party experts, the "know how" claim necessarily requires inquiry into extent to which former VGT employees remembered, and then utilized, VGT confidential information. Thus, wholly precluding access to the information would significantly impair Castle Hill's ability to prepare its defense. Moreover, the risk of prejudice to VGT is lessened because the evidence relates only to VGT information *actually remembered* by Castle Hill employees.

Second, unlike the bingo card algorithm, VGT's "know how" was not clearly defined throughout this litigation. Rather, as late as the dispositive motion hearing in this matter held on June 11, 2019, VGT pointed the court to a thirty-two (32) page discovery response, as well as the Friedman Declarations, to define the scope of its claims. [Doc. 329, p. 143:6-21]. Nor was the "know how" claim clearly articulated in either the original Complaint or the Amended Complaint. *See* [Doc. 2 and Doc. 103]. Thus, the need for disclosure of "highly confidential" information with respect to this claim was not foreseeable to Castle Hill at the time of the entry of the Stipulated Protective Order in the same manner as information related to the bingo card algorithm.

Finally, the court recognizes that "[t]here is no absolute privilege for trade secrets and similar confidential information." *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981) (quoting *Fed. Open Mkt. Comm. v. Merrill,* 443 U.S. 340, 362 (1979)).

For the foregoing reasons, the court concludes that the benefits to Castle Hill of a limited modification of the Stipulated Protective Order outweigh the potential prejudice to VGT. Thus, the court modifies the Stipulated Protective Order to permit Castle Hill to disclose to Suggs and Scheiner certain information designated by VGT as "highly confidential"—specifically, paragraphs 36 through 52 of the Declaration of Stacey Friedman in Support of Plaintiff's Response

to Defendants' Motion for Summary Judgment and the exhibits cited by Mr. Friedman therein. No further disclosure is authorized to those employees, and Suggs and Scheiner must execute an Agreement of Confidentiality pursuant to paragraph 7 of the Stipulated Protective Order.

Disclosure is not authorized to Roireau. As the Chief Technology Officer, Roireau clearly constitutes a competitive decisionmaker with respect to product design. Accordingly, Roireau's position creates an unacceptable risk for competitive harm to VGT. *See McAirlaids, Inc.,* 299 F.R.D. at 501.

### B. Watson

Castle Hill contends that disclosure of information designated at "highly confidential" to Chief Financial Officer Watson is necessary "for purposes of settlement, understanding the claims and defenses, and litigation and trial strategy." [Doc. 356, p. 12].[4] However, as the CFO, Watson certainly constitutes a "competitive decisionmaker," increasing the risk of misuse of the confidential information. Further, assessing settlement does not render Watson "uniquely qualified" to assist in the preparation of the defense such that disclosure would be warranted. *See Suture Express, Inc.*, 2013 WL 6909158, at *7. Rather, presumably, Castle Hill could have foreseen its need to disclose certain information to the Chief Financial Officer for general litigation purposes, including settlement. *See Raytheon Co.,* 2008 WL 4371679, at *2. Thus, the court is not persuaded that Castle Hill has shown a specific need for Watson to review the "highly confidential" information requested. *See Chipman v. Sabol & Rice*, No. 10-CV-01016-DN-DBP, 2012 WL 6020031, at *1 (D. Utah Dec. 3, 2012) ("[T]he court 'should be wary of' modifying an

---

[4] Castle Hill's reply includes no argument directed to disclosure of information to Watson.

order where the opposing party justifiably relied on it.") (quoting *Merrill Scot & Assocs.*, 600 F.3d at 1272).  The motion to modify protective order is therefore denied with respect to Watson.

### III.  Conclusion

WHEREFORE, Defendants' Motion for Relief Under Protective Order and Other Relief [Doc. 357] is granted in part and denied in part.  Castle Hill may disclose to Suggs and Scheiner, paragraphs 36 through 52 of the Declaration of Stacey Friedman in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment and the exhibits cited by Mr. Friedman therein.  Suggs and Scheiner must execute an Agreement of Confidentiality pursuant to paragraph 7 of the Stipulated Protective Order.

The parties may file proposed redactions, or state their non-objection to public filing of this order, no later than September 4, 2019.

DATED this 21st day of August, 2019.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE