**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| VIDEO GAMING TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-CV-00454-GKF-JFJ |
| | ) | **REDACTED** |
| CASTLE HILL STUDIOS LLC | ) | |
| (d/b/a CASTLE HILL GAMING); | ) | |
| CASTLE HILL HOLDING LLC | ) | |
| (d/b/a CASTLE HILL GAMING); and | ) | |
| IRONWORKS DEVELOPMENT, LLC | ) | |
| (d/b/a CASTLE HILL GAMING), | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter comes before the court on the Motion to Exclude the Testimony of Robert
Zeidman in Part [Doc. 165] of plaintiff Video Gaming Technologies, Inc. (VGT).[1]  For the reasons
discussed below, the motion is granted in part and denied in part.

**I.    Background**

VGT develops, manufactures, and distributes class II bingo-based player terminals in North
America.  Defendants Castle Hill Studios LLC, Castle Hill Holding LLC, and Ironworks
Development, LLC (collectively, "Castle Hill") compete with VGT in the class II terminal market
and is operated by former VGT employees.  VGT alleges Castle Hill developed and offered class
II games that closely resembled VGT's class II games, incorporated marks and themes confusingly
similar to the VGT marks and themes, and utilized VGT trade secrets.  Based on these allegations,

---

[1] VGT also filed a sealed, unredacted version of the motion as [Doc. 166].  The references
contained in this order are to the unredacted version.  Accordingly, the court files this order under
seal, attorneys' eyes only.  At set forth below, the court will enter an unsealed order after
consideration of the parties' proposed redactions, if any.

VGT asserts claims against Castle Hill including trademark infringement, trade dress infringement, and misappropriation of trade secrets in violation of state and federal law in this litigation.

VGT retained professional casino game designer and mathematician Stacy Friedman to offer expert opinions regarding: (a) the casino game development process, (b) the nature of a casino floor, (c) how the look and feel of a game affect a player's willingness to play, (d) the look and feel of VGT's games, and (e) Castle Hill's use, acquisition, and disclosure of VGT's trade secrets and confidential business information. To rebut Friedman's opinions, Castle Hill retained computer software and hardware designer Robert Zeidman. On August 31, 2018, Zeidman provided an expert report, entitled "Rebuttal of Stacy Friedman by Robert Zeidman." *See* [Doc. 166-6]. VGT deposed Zeidman on September 28, 2018. *See* [Doc. 166-4]. VGT now seeks to partially exclude Zeidman's opinions and testimony.

## II.    Standard

Pursuant to Federal Rule of Evidence 702,

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;
>
> (c)    the testimony is the product of reliable principles and methods; and
>
> (d)    the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 imposes on the trial court an important gate-keeping obligation, "to 'ensure that any and all [expert] testimony . . . is not only relevant, but reliable.'" *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert*, 509 U.S. at 589). Thus, "the trial judge must

- 2 -

determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co., Ltd.*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592). To determine whether an expert's opinion is admissible, the district court must generally undertake a two-step analysis: (1) first, to determine "whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion," and (2) second, to determine "whether the expert's opinion is reliable by assessing the underlying reasoning and methodology[.]" *Mathis v. Huff & Puff Trucking, Inc.,* 787 F.3d 1297, 1307 (10th Cir. 2015) (internal quotations omitted).

The court notes, however, this case is scheduled for a bench trial. [Doc. 202 and Doc. 312]. "[W]hile *Daubert*'s standards must still be met, the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise when a district court is conducting a bench trial." *Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009). Thus, "the 'gate-keeping' function is less important" and "a judge conducting a bench trial maintains greater leeway in admitting questionable evidence, weighing its persuasive value upon presentation." *Valley View Dev., Inc. v. U.S. ex rel. U.S. Army Corps of Eng'rs,* 721 F. Supp. 2d 1024, 1047 (N.D. Okla. 2010) (quoting *Tyson Foods, Inc.,* 565 F.3d at 779-80).

## III.    Analysis

VGT challenges Zeidman's opinions regarding the following topics: (1) source code copying, including the opinions set forth in paragraphs 14-36 and 120-135 of his Rebuttal Report; (2) gaming-specific opinions, including the opinions set forth in paragraphs 50-64, 66-87, 89-94, 100, 105, 111-114, 117, and 119; and (3) third-party pay tables as set forth in paragraph 92. *See* [Doc. 166, p. 22]. The court separately considers each topic.

A.      *Source Code Copying Opinions*

VGT seeks to exclude Zeidman's opinions regarding source code copying for three separate reasons.

*First,* VGT contends that the opinions are non-responsive and do not constitute proper rebuttal because Friedman did not offer any opinion on source code copying. Federal Rule of Civil Procedure 26 permits a party to offer expert evidence "solely to contradict or rebut evidence on the same subject matter identified by another party." FED. R. CIV. P. 26(a)(2)(D)(ii). "Rebuttal evidence is evidence which attempts to 'disprove or contradict' the evidence to which it is contrasted." *Tanberg v. Sholtis*, 401 F.3d 1151, 1166 (10th Cir. 2005) (quoting BLACK'S LAW DICTIONARY 579 (7th ed. 1999)). The admissibility of rebuttal evidence depends, in part, on "whether the rebuttal evidence fairly meets the initial proof." *Id.* (quotations and citation omitted). However, "[w]hen a party opens the door to a topic, the admission of rebuttal evidence on that topic becomes permissible." *Id.*

Here, Friedman opened the door to Zeidman's opinions regarding source code copying. Friedman's Opening Report discusses "documents and deposition testimony indicating that, following their departures from VGT, several [Castle Hill] employees kept VGT's confidential information, including during their employment at CHG." [Doc. 166-5, p. 47, ¶ 101]. A specific example cited by Friedman is an internal Castle Hill communication admitting that Brandon Booker and Seth Morgan took VGT's source code. [*Id.* pp. 47-48, ¶¶ 104-105]. After discussing these examples, Friedman opines that "former VGT employees used information they kept from VGT for [Castle Hill's] benefit," including to "target VGT in the marketplace." [*Id.* pp. 48-49, ¶¶ 108-109]. Zeidman's opinion that Castle Hill did not copy VGT's source code "fairly meets"

Friedman's opinion that Castle Hill utilized confidential information, including source code, retained from VGT to its benefit.  Thus, Zeidman's opinions constitute proper rebuttal evidence.

*Second*, VGT criticizes Zeidman's opinions as irrelevant to the claims and defenses that will be presented at trial.  However, "this case will be resolved on a motion for summary judgment or at a bench trial, and the Court has the discretion to admit testimony and to disregard any expert opinions that are not relevant or helpful at a later time."  *Cyprus Amax Minerals Co. v. TCI Pac. Commc'ns, Inc.*, No. 11-CV-0252-CVE-PJC, 2014 WL 693328, at *8 n. 3 (N.D. Okla. Feb. 21, 2014); *see also Valley View Dev., Inc.,* 721 F. Supp. 2d at 1047 ("[A] judge conducting a bench trial maintains greater leeway in admitting questionable evidence, weighing its persuasive value upon presentation.") (quoting *Tyson Foods, Inc.*, 565 F.3d at 779); *In re Vickers*, No. CIV-17-302-KEW, 2019 WL 949522, at *1 (E.D. Okla. Feb. 27, 2019) ("Irrelevant and inadmissible testimony will be identified and disregarded in the final decision.").  Thus, the court declines to exclude Zeidman's opinions regarding source code copying as irrelevant at this time.

*Third,* VGT argues Zeidman's opinions on source code copying should be excluded because the prejudice to VGT "will far exceed" the benefit to Castle Hill and has the significant potential to mislead the jury.  However, this concern is alleviated as VGT's jury demand has been stricken.  [Doc. 201 and Doc. 202].  Concerns regarding juror confusion are not implicated in a bench trial.  *iFreedom Direct Corp. v. First Tenn. Bank Nat'l Ass'n*, No. 09-CV-205-DN, 2012 WL 3067597, at *3 (D. Utah July 27, 2012).

Based on the foregoing, the court overrules VGT's objections to Zeidman's opinions regarding source code copying and VGT's motion to exclude is denied without prejudice as to these opinions.

B.      *Casino Game Design and Gaming Industry Opinions*

VGT next seeks to exclude what it refers to as "Zeidman's opinions on the casino game design and the gaming industry"—specifically, those opinions included in the following paragraphs of Zeidman's report:  50-64, 66-87, 89-94, 100, 105, 111-114, 117, and 119.  VGT contends Zeidman is not qualified to offer opinions with respect to the casino gaming industry and, further, that Zeidman's opinions on the topic are the product of unreliable principles and methods.

1.      Qualification

With respect to qualifications, an expert must possess "such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (quoting *Graham v. Wyeth Labs*., 906 F.2d 1399, 1408 (10th Cir. 1990)).  The Tenth Circuit has stated, "[a]s long as an expert stays 'within the reasonable confines of his subject area' our case law establishes 'a lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight.'"  *Compton v. Subaru of America, Inc*., 82 F.3d 1513, 1520 (10th Cir. 1996), *overruled on other grounds, Kumho Tire Ltd*., 526 U.S. 137, (quoting *Wheeler v. John Deere Co*., 935 F.2d 1090, 1100 (10th Cir. 1991)).  Thus, the court will consider which, if any, of the alleged "casino game design and gaming industry" opinions fall "within the reasonable confines" of Zeidman's expertise.  *See Conroy v. Vilsack*, 707 F.3d 1163, 1168-69 (10th Cir. 2013).

Zeidman received a master's degree from Stanford University in electrical engineering and two bachelor's degrees from Cornell University, the first in electrical engineering and the second in physics.  [Doc. 166-6, p. 5, ¶ 4].  Zeidman has over thirty-five (35) years of computer software and hardware design experience.  [*Id*. ¶ 5].  In 1987, Zeidman founded Zeidman Consulting, a

company that provides engineering consulting services to high-tech clients ranging from Fortune 500 companies to start-ups. [*Id.* ¶ 3]. Zeidman has written numerous works on computer hardware and software subjects, including writings with respect to pseudorandom number sequences. [*Id.* ¶¶ 7-9]. Additionally, Zeidman patented a tool called CodeSuite® for assisting in the determination of whether one computer program has been copied from another computer program. [*Id.* ¶ 7].

However, Zeidman admittedly lacks specific expertise in casino gaming and has no experience developing wagering games. *See* [Doc. 166-4, pp. 7:18 to 8:14]. Zeidman's experience with wagering games appears to be limited to the recreational study of online poker. [*Id.* pp. 12:20 to 13:25].

Based on its review of the Rebuttal Report, the court concludes Zeidman's extensive knowledge regarding computer software and hardware design provides the "substantial foundation" for the opinions set forth in the following paragraphs such that the opinions fall "within the reasonable confines" of Zeidman's expertise: ¶¶ 50-79, 86-87, 89-94, and 111-113. *See Wood v. Cendant Corp.*, No. 03-CV-298-TCK-FHM, 2006 WL 6862723, at *2 (N.D Okla. Mar. 28, 2006). These opinions generally relate to algorithms, processes, or software underlying VGT's class II games, topics with respect to which Zeidman is imminently qualified. VGT may question Zeidman regarding his lack of specialized expertise in the area of casino gaming during cross-examination. With respect to these opinions, Zeidman's lack of specialization in electronic casino gaming bears on the weight, not the admissibility, of his opinions.[2]

---

[2] Although the court declines to wholly exclude these opinions, the court notes that, throughout the disputed paragraphs, Zeidman opines that certain algorithms, processes, or designs do not constitute "trade secrets." This court consistently prohibits experts from opining as to the ultimate legal conclusion that certain information constitutes a "trade secret." *See, e.g., Skycam, Inc. v.*

However, based on its review, the opinions contained in paragraphs 80-85, 100, 105, 114, 117, and 119 of the Rebuttal Report fall too far afield of software or hardware design and are grounded in the electronic casino gaming industry. As previously stated, Zeidman lacks specific expertise in the casino gaming field. Thus, Zeidman's opinions with respect to casino operator and consumer dissatisfaction, difficulties in starting a casino gaming company, regulations governing casino gaming, and distinctions between class II and class III games fall outside the reasonable confines of Zeidman's expertise and are therefore excluded.

2.    Reliability of Methodology

As for the reliability of Zeidman's methodology, VGT relies on a Sixth Circuit decision for the proposition that Zeidman's lack of experience with the casino gaming industry resulted in inaccuracies and misunderstandings in the rebuttal report that render his opinions unreliable. *See* [Doc. 166, pp. 19-20 (citing *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 408 (6th Cir. 2006)]. In *Mike's Train*, a misappropriation of trade secrets case, the Sixth Circuit concluded that an expert's "rudimentary understanding" of the relevant industry, "obvious flaw[s] inherent in [the] methodology," and admittedly "arbitrar[y]" determination of the significance to assign evidence rendered the expert's opinions unreliable. *Mike's Train House, Inc.*, 472 F.3d at 408. The Sixth Circuit's decision is not persuasive under the circumstances.

Based on its review of Zeidman's deposition transcript and Rebuttal Report, it is clear to the court that the alleged inaccuracies and misunderstandings cited by VGT did not result from

---

*Bennett*, No. 09-CV-294-GKF-FHM, 2011 WL 2551188, at *5 (N.D. Okla. June 27, 2011). However, the experts may testify with regard to facts relating to the elements of a trade secret. Thus, during the non-jury trial of this matter, Zeidman will not be permitted to opine that information is or is not a "trade secret," and the court will disregard any such ultimate legal conclusions in ruling on the motions for summary judgment. *See Patel v. Patel*, No. CIV-17-881-D, 2019 WL 150547, at *2 (W.D. Okla. Jan. 4, 2019).

"arbitrary" determinations or assignments by Zeidman. Zeidman possesses more than a "rudimentary understanding" of the software, algorithms, and processes that ground his opinions. Thus, any inaccuracies or misrepresentations do not warrant exclusion, but are subject to attack through "[v]igorous cross-examination [and] presentation of contrary evidence." *Daubert*, 509 U.S. at 596. This is particularly true because this case will be tried before the court, rather than a jury.

VGT also objects to Zeidman's reliance on internet searches, and criticize his opinions for failing to account for contradictory deposition testimony. However, VGT's objections to the factual underpinnings of Zeidman's opinions go to weight, not admissibility. *Ortega v. City & Cnty. of Denver*, No. 11-CV-02394-WJM-CBS, 2013 WL 438579, at **4-5 (D. Colo. Feb. 5, 2013).

### C. Third-Party Tables Opinion

Finally, VGT objects to the following statements included in Zeidman's report:

> Furthermore, generating the façade incorporates pay table rules, which are rules for how much different wins are worth. I understand that some popular electronic gaming machines are the Double Wild Cherry and Double Diamond electronic gaming machines from IGT. The VGT source code included pay table files that appear to reference these electronic gaming machines from the other manufacturer, IGT, **[REDACTED].** Therefore, Mr. Friedman has not distinguished what of the façade was developed by VGT from what is derived from third-parties like IGT.

[Doc. 166-6, p. 34, ¶ 92 (internal citations and footnotes omitted)]. VGT contends the opinions are irrelevant and prejudicial. As discussed above, the court concludes relevancy is not a proper basis for exclusion at this time, as the court may disregard irrelevant evidence in deciding the motions for summary judgment and at the bench trial of this matter. *See Tyson Foods, Inc.*, 565 F.3d at 779.

**IV.    Conclusion**

WHEREFORE, Plaintiff's Motion to Exclude the Testimony of Robert Zeidman in Part [Doc. 165] is granted in part and denied in part.  Mr. Zeidman may offer his opinions consistent with this order.  The parties may file proposed redactions, or state their non-objection to public filing of this order, no later than June 19, 2019.

DATED this 5th day of June, 2019.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE