**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| VIDEO GAMING TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-CV-00454-GKF-JFJ |
| | ) | **REDACTED** |
| CASTLE HILL STUDIOS LLC | ) | |
| (d/b/a CASTLE HILL GAMING); | ) | |
| CASTLE HILL HOLDING LLC | ) | |
| (d/b/a CASTLE HILL GAMING); and | ) | |
| IRONWORKS DEVELOPMENT, LLC | ) | |
| (d/b/a CASTLE HILL GAMING), | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This matter comes before the court on the Motion to Strike Declarations of Stacy Friedman and Josh Davis Submitted in Support of Plaintiff's Motion for Partial Summary Judgment (hereinafter, "First Motion to Strike") [Doc. 237] and the Motion to Strike Declarations Submitted in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment (hereinafter, "Second Motion to Strike") [Doc. 273] of defendants Castle Hill Studios, LLC, Castle Hill Holding, LLC, and Ironworks Development, LLC (collectively, "Castle Hill").[1] For the reasons discussed below, the motions are granted in part and denied in part.

[1] Defendants also filed a sealed, unredacted version of First Motion to Strike at [Doc. 236] and the Second Motion to Strike at [Doc. 272]. The references contained in this order are to the unredacted version. Accordingly, the court files this order under seal, attorneys' eyes only. At set forth below, the court will enter an unsealed order after consideration of the parties' proposed redactions, if any.

c/ All Counsel

## I. Background and Procedural History

This is a trademark and trade dress dispute between two class II bingo-based player terminal developers. Plaintiff Video Gaming Technologies, Inc. ("VGT") alleges that Castle Hill, a competitor of VGT operated by former VGT employees, intentionally developed class II games that closely resembled VGT's class II games and incorporated marks and themes confusingly similar to VGT's marks and themes.

VGT has filed a Motion for Partial Summary Judgment. *See* [Doc. 178 and Doc. 179]. The motion attached a twenty-page document entitled, "Declaration of Stacy Friedman in Support of Plaintiff's Motion for Partial Summary Judgment" ("First Friedman Declaration"). *See* [Doc. 179-7]. Friedman, a professional casino game designer and mathematician retained by VGT to provide expert opinions, previously provided a fifty-six (56) page "Opening Expert Report" and a sixty-five (65) page "Reply Expert Report." [Doc. 236-2 and Doc. 236-3]. Additionally, VGT's motion for partial summary judgment attached a declaration of VGT principal software engineer, Josh Davis ("First Davis Declaration"). [Doc. 179-1].

Castle Hill has also filed a motion for summary judgment. [Doc. 188]. VGT's Response in Opposition to Defendants' Motion for Summary Judgment attached four separate declarations: (1) Declaration of Josh Davis in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Second Davis Declaration") [Doc. 239-152]; (2) Declaration of Chris Shults in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Shults Declaration") [Doc. 239-153]; (3) Declaration of Stacy Friedman in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment ("Second Friedman Declaration") [Doc. 239-154]; and (4) Declaration of Ryan North ("North Declaration") [Doc. 239-155].

In the First Motion to Strike, Castle Hill asks the court to strike the First Friedman Declaration and First Davis Declaration. The Second Motion to Strike seeks an order striking the four declarations submitted by VGT in response to Castle Hill's motion for summary judgment—the Second Davis Declaration, Shults Declaration, Second Friedman Declaration, and North Declaration. The court separately considers the statements of each declarant.

## II. Analysis

### *A. Friedman Declarations*

Castle Hill urges the court to strike the First Friedman Declaration and Second Friedman Declaration as "improper supplemental expert report[s]." [Doc. 236, p. 10]; *see also* [Doc. 272, p. 2 (asserting "[f]or all of the reasons [Friedman's] prior declaration should be stricken, so too should this one")]. Federal Rule of Civil Procedure 26 requires a party to disclose the identity of any witness it may use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705. FED. R. CIV. P. 26(a)(2)(A). For witnesses specially retained to provide expert testimony, the disclosure must be accompanied by a written report containing "a complete statement of all opinions the witness will express and the basis and reasons for them[.]" FED. R. CIV. P. 26(a)(2)(B)(i). Rule 26(e) imposes an affirmative duty upon parties to supplement expert opinions "both to information included in the report and to information given during the expert's deposition," prior to the deadline for pretrial disclosures "if the [witness] learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" FED. R. CIV. P. 26(e); *see also Oklahoma v. Tyson Foods, Inc.*, No. 05-CV-329-GKF-PJC, 2009 WL 2252129, at *3 (N.D. Okla. July 24, 2009). Failure to provide the information

required by FED. R. CIV. P. 26 may result in the disallowance of the evidence "unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

As this court has recognized, "Rule 26(e) 'does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report.'" *Tyson Foods, Inc*., 2009 WL 2252129, at *3 (quoting *Palmer v. Asarco, Inc*., No. 03-CV-0498-CVE-PJC, 2007 WL 2254343, at *3 (N.D. Okla. Aug. 3, 2007)). However, experts are not "limited to reading their reports from the stand; rather, the expert is expected to 'supplement, elaborate upon, explain and subject himself to cross-examination upon his report.'" *Gustafson v. Am. Family Mut. Ins. Co*., No. 11-CV-01303-PAB-MEH, 2012 WL 5904048, at *7 (D. Colo. Nov. 26, 2012) (quoting *Thompson v. Doane Pet Care Co*., 470 F.3d 1201, 1203 (6th Cir. 2006)). "Accordingly, an expert's testimony that expands upon an opinion that expert expressed in a previous report or deposition is admissible." *Wells Fargo Bank, N.A. ex rel. Certificateholders of Commercial Mortg. Pass-Through Certificates v. LaSalle Bank Nat'l Ass'n*, No. CIV-08-1125-C, 2011 WL 1303949, at *9 (W.D. Okla. Apr. 1, 2011); *see also Emcore Corp. v. Optium Corp.,* No. CIV-6-1202, 2008 WL 3271553, at *4 (W.D. Pa. Aug. 5, 2008) (permitting opinions that elaborate on, or are consistent with, opinions previously expressed in expert report).

Castle Hill argues that the Friedman Declarations contain new opinions that were not previously disclosed in Friedman's Opening or Reply Report and therefore exceed the bounds of permissible supplementation under Rule 26. In response, VGT contends the Friedman Declarations present a "subset" of Friedman's prior opinions that are tailored to the summary judgment briefing and include no improper new opinions. Thus, the court must compare the opinions contained in the Friedman Declarations with those expressed in Friedman's Opening and Reply Reports. The court initially considers the First Friedman Declaration.

Based on the court's independent review, the majority of the opinions expressed in the First Friedman Declaration constitute permissible reiterations or rephrasings of opinions expressed in Friedman's Opening and Reply Reports, which were previously disclosed to Castle Hill pursuant to Rule 26(a).[2] Castle Hill specifically objects to Friedman's opinions articulating a step-by-step analysis of the functionality of VGT's bingo card generation algorithm. *See* [Doc. 236, p. 9 (citing [Doc. 236-4, pp. 9-13, ¶¶ 19-21]). However, Friedman's opening report also contained a step-by-step analysis of that functionality. *See* [Doc. 236-2, pp. 29-33, 49-51, and 53-54, ¶¶ 63-67, 69-70, 111, 112, and 116]. That Friedman reorganized his opinions to better explain the bingo card generation algorithm does not render the declaration inadmissible. *See Gustafson*, 2012 WL 5904048, at *7. Castle Hill also contends that Friedman impermissibly includes new opinions based on his review of Castle Hill source code, although he previously admitted that he did not perform a source code comparison. Friedman cited his review of VGT and Castle Hill source code as a basis for the opinions expressed in his Opening Report [Doc. 236-2, pp. 29, 49, and 55-56, ¶¶ 63, 111, and 119]. Further, the opinions expressed in the First Friedman Declaration that rely on review of source code constitute permissible expansions of opinions set forth by Friedman in his Opening and Reply Reports. *Compare* [Doc. 236-4, pp. 9-13 and 17-23; ¶¶ 19-21 and 36-40] *with* [Doc. 236-2, pp.30-33, 49-51, and 53-54, ¶¶ 65-67, 69-70, 111, 116, and 122-23; Doc. 236-3, pp. 38-40 and 45-46, ¶¶ 98-100 and 114-15].

Nor does Friedman's reliance on the First Davis Declaration—created after the disclosure of Friedman's Opening and Reply Reports—require exclusion of the First Friedman Declaration.

[2] Friedman's opinions expressed in paragraph 16 of the First Friedman Declaration are new and therefore stricken.

As VGT correctly points out, Friedman consistently disclosed his conversations with, and information obtained from, Josh Davis as a source of his prior opinions.[3] *See* [Doc. 236-2, pp. 26-27, 33, 35-37, and 38-39, ¶¶ 56, 58-59, 63-64, 71, 77, 81, and 86]. Accordingly, Castle Hill was on notice of Davis as the basis for Friedman's opinions.[4] *See Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, LLC*, 80 F. Supp. 3d 1180, 1217 (E.D. Wash. 2015). Thus, the First Friedman Declaration is not an improper supplemental expert report.

In addition to the purported new opinions, Castle Hill asks the court to strike Friedman's previously disclosed opinions or opinions consistent with those expressed in the Opening and Reply Reports. Castle Hill cites a recent unpublished Tenth Circuit decision affirming a district court's refusal to consider an expert's supplemental affidavit that highlighted previously disclosed opinions, reasoning "[p]reviously proposed opinions should stand on their own and do not need further emphasis." *Rodgers v. Beechcraft Corp.*, 759 F. App'x 646, 663 (10th Cir. 2018). However, the supplemental affidavit at issue in that matter contained substantially new opinions

---

[3] As explained below, portions of the First Davis Declaration are inadmissible. However, pursuant to Rule 703, "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." FED. R. EVID. 703. The court is persuaded that other experts would reasonably rely on facts and data received from a principal software engineer. Thus, that portions of the First Davis Declaration are inadmissible does not require the court to exclude the First Friedman Declaration.

[4] Castle Hill also objects to the First Friedman Declaration's reliance on the Declaration of Richard Williamson, dated October 11, 2018. *See* [Doc. 236, pp. 8-9]. Friedman cites the Williamson Declaration for the proposition that VGT requires test labs with access to the algorithm to undertake confidentiality obligations. *See* [Doc. 236-4, p. 13, ¶ 22(c)]. However, the First Friedman Declaration also includes citations to VGT documents, which were cited and relied upon by Friedman in his Opening Report, to substantiate his opinion that VGT took reasonable security measures to protect its trade secrets and confidential information. *See* [Doc. 236-2, pp. 38-39, ¶¶ 85-87]. Further, the opinion is expressed essentially *verbatim* in Friedman's Opening Report. [*Id.*]. Thus, the court declines to strike the First Friedman Declaration for its reliance on the Williamson Declaration. *See LaSalle Bank Nat'l Ass'n*, 2011 WL 1303949, at *9 (permitting expansion on prior opinions).

and, further, attempted to rebut arguments raised to exclude the expert in a *Daubert* motion. *Id.* With respect to the portions of the affidavit that restated the expert's earlier opinions, the district court concluded such portions were "irrelevant," but specifically noted that it would review the witnesses' expert report and deposition testimony to determine the *Daubert* issue. *Rodgers v. Beechcraft Corp.*, No. 15-CV-0129-CVE-PJC, 2017 WL 465474, at *5 (N.D. Okla. Feb. 3, 2017). Here, however, VGT did not submit Friedman's Opening or Reply Reports as evidence to support its motion for partial summary judgment.[5] *See generally* [Doc. 179]. Thus, unlike the reiterated opinions in *Rodgers,* the opinions included in the First Friedman Declaration are not irrelevant to the court's analysis. Further, as discussed above, the First Friedman Declaration does not include any new opinions and Castle Hill was on notice of Friedman's intent to offer the opinions contained therein. Accordingly, *Rodgers* is distinguishable and the court declines to strike the First Friedman Declaration as irrelevant or improper supplementation.

For the same reasons, the court declines to strike the Second Friedman Declaration, submitted in support of VGT's response in opposition to Castle Hill's motion for summary judgment. The opinions expressed in the Second Friedman Declaration constitute permissible reiterations or rephrasings of opinions expressed in Friedman's prior Rule 26(a) reports. In fact, many of the opinions are taken *verbatim* from Friedman's Opening and Reply Reports. Thus, the Second Friedman Declaration does not constitute an impermissible supplemental expert report. Nor does Friedman's reliance on the Davis Declarations or the Shults Declaration require exclusion of the opinions as Friedman previously disclosed his reliance on conversations with, and

[5] The court notes VGT filed its motion for partial summary judgment attaching the First Friedman Declaration prior to the *Rodgers* decision from the Tenth Circuit.

information received from, Davis and Shults. *See* [Doc. 236-2, pp. 26-27, 32-33, 35-37, and 38-39, ¶¶ 56, 58-59, 63-64, 71, 77, 80-82, and 86].

Finally, assuming the impropriety of any other portions of the First and Second Friedman Declarations under Rule 26, the court concludes the failure to disclose was harmless. *See* FED. R. CIV. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). "[T]he determination of whether a Rule 26[] violation is justified or harmless is entrusted to the broad discretion of the district court." *Neiberger v. Fed Ex Ground Package Sys., Inc.*, 566 F.3d 1184, 1191-92 (10th Cir. 2009) (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)). To make the determination, the court should be guided by the following factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc.*, 170 F.3d at 993.

First, no prejudice or surprise to Castle Hill exists. As discussed above, the Friedman Declarations include only one new opinion, which the court has stricken. VGT timely disclosed Friedman's remaining opinions such that Castle Hill was on notice of Friedman's intent to offer the opinions. Castle Hill had the opportunity to question Friedman during his September 24, 2018 deposition and there are no new opinions relative to which additional discovery would be required. Castle Hill then filed a motion to exclude Friedman's testimony, which was fully briefed and ruled on. The court did not consider the averments included in the Friedman Declarations to decide the motion to exclude and therefore the declarations cannot have prejudiced Castle Hill with respect

to the motion to exclude. Moreover, as Friedman expresses no new opinions in his Declarations, it appears that Zeidman's expert report would provide an adequate counter to the Friedman Declarations for purposes of summary judgment. Thus, the first factor weighs against striking the Declarations.

Further, because the court identifies no prejudice or surprise to Castle Hill, there is no need to cure the prejudice, and the second factor weighs against striking the Declarations. Nor would consideration of the Declarations disrupt the trial. Finally, the court is not persuaded that VGT's reliance on the Friedman Declarations indicates bad faith or willfulness. Rather, although not speaking directly to this issue, based on VGT's response to the First Motion to Strike, it appears that VGT submitted the Declarations, rather than his reports, based on an unpublished decision from the Tenth Circuit holding "unsworn expert reports are not competent evidence on summary judgment." *Peak ex rel. Peak v. Cent. Tank Coatings, Inc.*, 606 F. App'x 891, 895 (10th Cir. 2015). Thus, the *Woodworkers* factors weigh against striking the Friedman Declarations, and any failure to disclose under Rule 26 was therefore harmless. The court declines to strike the Declaration of Stacy Friedman in Support of Plaintiff's Motion for Partial Summary Judgment (except with respect to paragraph 16) [Doc. 179-7] or the Declaration of Stacy Friedman in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment [Doc. 239-154].

*B. Davis Declarations*

VGT submitted a seven and a half (7 ½) page, twenty (20) paragraph Declaration of Josh Davis, VGT's principal software engineer, in support of its motion for partial summary judgment, and a three (3) page, seventeen (17) paragraph declaration of Davis in opposition to Castle Hill's motion for summary judgment. Davis served as VGT's Rule 30(b)(6) corporate representative with respect to three topics—the origin, creation, and development of the math underlying VGT's

class II games; identification and creation of proprietary algorithms for playing bingo for VGT's class II games; and functionality of VGT's class II games. VGT has identified Davis as a fact witness only and did not disclose Davis as an expert pursuant to FED. R. CIV. P. 26(a)(2). *See* [Doc. 237-3, p. 3 and Doc. 237-4, p. 3].

Federal Rule of Evidence 701 provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Castle Hill asks the court to strike the First Davis Declaration, arguing the declaration includes (1) improper expert testimony; (2) impermissible lay opinions not based on Davis's personal knowledge; and (3) new opinions regarding information requested by Castle Hill in discovery but not disclosed by VGT. The court considers each paragraph to which Castle Hill objects[6]:

- **Paragraphs 4 and 5** – Castle Hill argues the averments included in paragraphs 4 and 5 are not based on Davis's personal knowledge and constitute expert opinions because Davis reviewed the source code repository, Perforce, prior to his Rule 30(b)(6) deposition. However, Davis averred that he has worked as a software engineer for VGT since 2004 and, during his fourteen years with the company, he has become familiar with the design and functionality of VGT's class II systems, as well as source code and documentation. [Doc. 236-8, p. 3, ¶ 12]. Davis currently serves as VGT's principal software engineer. [*Id.* ¶ 1]. The statements contained in paragraph 4 reflect matters of which Davis would have personal knowledge based on his observations and experiences during employment. Further, "[p]ersonal knowledge can derive from a review of business records." *See United States v. Nugent*, No. 16-CV-380-JMH, 2017 WL 4249775, at *4 (E.D. Ky. Sept. 25, 2017); *see also Univ. of Kan. v. Sinks*, 565 F. Supp. 2d 1216, 1227-28 (D. Kan. 2008) (denying motion to strike

[6] Castle Hill does not object to paragraphs 1-3, 7, 11, 13, and 19-20. *See* [Doc. 236, pp. 15-24].

declaration based on review of corporate documents noting that the documents are cited, authenticated, and attached as exhibits). Castle Hill also contends the declaration includes previously undisclosed details that were responsive to Castle Hill's discovery requests and therefore the declaration violates Rule 26. However, Friedman identified the Perforce source code repository as a method through which VGT maintained the confidentiality of its source code in his August 10, 2018 Opening Report. *See* [Doc. 236-2, pp. 38-39, ¶ 86]. Thus, the court will not strike paragraphs 4 and 5.

- **Paragraph 6** – Castle Hill objects to Davis's statement that generating and distributing bingo cards is a "challenging issue in designing a Class II system" as improper expert opinion. The court agrees. Davis's opinions regarding the "challenges" faced by class II game developers, particularly with respect to regulatory compliance, arise from Davis's professional experience as a software engineer in developing EGM and server software for VGT's class II systems. "Knowledge derived from previous professional experience falls squarely within the scope of Rule 702 and thus by definition outside of Rule 701." *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1215 (10th Cir. 2011) (quoting *United States v. Smith*, 640 F.3d 358, 365 (D.C. Cir. 2011)). Thus, the court strikes the second and third sentences of paragraph 6.

- **Paragraphs 8-9** – Paragraphs 8 and 9 identify and describe "change list" documents from the Perforce repository. Castle Hill contends the statements in paragraphs 8 and 9 are improper expert opinions. However, Davis merely identifies the change list documents as business records of VGT and, as Principal Software Engineer for VGT, he may review and identify the business records for the record. *See Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1123-24 (10th Cir. 2005).

- **Paragraph 10** – Castle Hill contends paragraph 10 includes improper expert opinion that documents containing VGT's bingo card generation algorithm have remained "confidential." The court will disregard Davis's characterization of the reference manuals attached as Exhibits C and D as "confidential." The court declines to strike the remainder of the paragraph.

- **Paragraph 12** – Castle Hill asks the court to strike paragraph 12 because the paragraph includes additional details regarding VGT's algorithm misappropriation claims, specifically citation to the source code for its bingo card generation algorithm. However, although VGT did not cite specific lines of source code, VGT identified its source code files in its supplemental interrogatory answers. *See* [Doc. 236-10, pp. 27-28]. This is sufficient. Thus, paragraph 12 is not a violation of Rule 26. Castle Hill's objection is overruled.

- **Paragraph 14** – Castle Hill contends paragraph 14 includes impermissible expert opinion that VGT's documents containing the bingo card generation algorithm have remained confidential and includes previously undisclosed details with respect to Perforce source code repository that were responsive to Castle Hill's discovery requests in violation of Rule 26. Paragraph 14 describes where VGT's source code is stored and VGT's general business practices with respect to access to the source code. Davis would have personal knowledge of VGT's source code repository and internal procedures based on his observations and experiences during employment. Although Davis describes confidentiality practices, he does not opine that the source code has remained confidential and the statement is not impermissible expert opinion. Finally, with respect to Rule 26, as previously stated, Friedman identified the Perforce source code repository as a method through which VGT maintains the confidentiality of its source in his August 10, 2018 Opening Report. *See* [Doc. 236-2, p. 39, ¶ 86]. Castle Hill's objections are overruled.

- **Paragraph 15** – Castle Hill objects to Davis's statements in paragraph 15 pertaining to the confidentiality of VGT's documents describing the bingo card algorithm. Although Davis avers that he, as a software engineer, is familiar with VGT's method for generating and distributing bingo cards, as well as source code and documentation, the court cannot infer that he has personal knowledge of VGT's confidentiality policies with respect to third parties. Nor does Davis describe how or why he would have such knowledge. Thus, the court strikes paragraph 15, except for Davis's qualified statement that, to his knowledge, VGT has not given the documents describing the bingo card generation algorithm to casino operators.

- **Paragraph 16** – Paragraph 16 also includes statements with respect to VGT's confidentiality policies as to third parties. For the reasons discussed above, paragraph 16 is stricken.

- **Paragraph 17** – Castle Hill criticizes paragraph 17 as including expert opinions, specifically that the bingo card generation algorithm is "confidential." However, Davis states only that "within VGT," the bingo card generation algorithm is regarded as proprietary, confidential, and important to the class II system design. Davis, VGT's principal software engineer, avers to his familiarity with the design and functionality of the algorithm. Thus, whether the bingo card generation algorithm is regarded as confidential "within VGT" is a matter within Davis's personal knowledge and his opinion is not expert testimony. Davis goes on to describe the functionality and benefits of the bingo card generation algorithm, a matter within his personal knowledge. However, Davis's description requires scientific, technical or specialized knowledge in computer sciences and therefore falls within the scope of Rule 702 expert

testimony, rather than Rule 701 lay witness testimony. Thus, with the exception of the first sentence, paragraph 17 is stricken.

- **Paragraph 18** – Paragraph 18 includes statements regarding Davis's lack of awareness as to how other class II companies generate unique bingo cards and whether such means are similar to the method employed by VGT. Paragraph 18 must be stricken for two reasons. First, Davis admits he has no personal knowledge on the subject. Second, to the extent his *lack* of awareness might be relevant, it arises from his professional experience and therefore "falls squarely within the scope of Rule 702." *James River Ins. Co.*, 658 F.3d at 1215.

The Second Davis Declaration is similar to the First Davis Declaration, although the opinions contained in the Second Davis Declaration are tailored to the uniqueness testing algorithm, rather than the bingo card generation algorithm. Castle Hill asks the court to strike the Second Davis Declaration as containing improper expert opinions, opinions not based on his personal knowledge, and information that VGT failed to provide in discovery. *See* [Doc. 272, pp. 3-4]. With respect to the Second Davis Declaration, the court concludes as follows:

- **Paragraphs 1-4** – These paragraphs include background matters to which Davis would have personal knowledge and the court declines to strike them.

- **Paragraphs 5 and 6** – Paragraphs 5 and 6 in the Second Davis Declaration are virtually identical to paragraphs 4 and 5 in the First Davis Declaration, *supra*. For the reasons discussed above, the court will not strike paragraphs 5 and 6 of the Second Davis Declaration.

- **Paragraphs 7 and 8** – Paragraphs 7 and 8 merely identify documents regarding the CardRange Verifier tool, including "change list" documents. Paragraph 7 is identical to paragraph 9 of the First Davis Declaration. For the reasons discussed above, paragraphs 7 and 8 shall not be stricken.

- **Paragraphs 9 and 10** – Paragraphs 9 and 10 discuss the uniqueness testing algorithm in the CardRangerVerifier tool, as well as the functionality and benefits thereof. The statements are based on technical or other specialized knowledge within the scope of Rule 702 and are stricken.

- **Paragraphs 11 through 16 –** Paragraphs 11, 12, 13, 14, 15, and 16 with respect to the uniqueness testing algorithm are substantially similar to the statements contained in the First Davis Declaration's paragraphs 14, 15, 16, 17, 18, and 19, respectively (discussing the bingo card generation

> algorithm). Thus, for the same reasons discussed above, Castle Hill's objections to paragraph 11 are overruled; paragraph 12 is stricken, except for Davis's qualified statement that, to his knowledge, VGT has not given the documents describing the algorithm to casino operators; paragraph 13 is stricken; Castle Hill's objections to the first sentence of paragraph 14 are overruled but the second sentence is stricken; and paragraph 15 is stricken. Castle Hill had no objection to paragraph 19 in the First Davis Declaration and therefore any objection to paragraph 16 is overruled.

Based on the foregoing, Castle Hill's Motion to Strike the First Davis Declaration is granted with respect to the second and third sentences of paragraph 6; Davis's characterization of the reference manuals as confidential in paragraph 10; paragraph 15, except for Davis's qualified statement that, to his knowledge, VGT has not given the documents describing the bingo card generation algorithm to any casino operators; paragraph 16; paragraph 17 except for the first sentence; and paragraph 18. The Motion to Strike the First Davis Declaration is otherwise denied. Castle Hill's Motion to Strike the Second David Declaration is granted with respect to paragraphs 9 and 10; paragraph 12 except for Davis's qualified statement that, to his knowledge, VGT has not given the documents describing the algorithm to any casino operators; paragraph 13; the second sentence of paragraph 14; and paragraph 15. The Motion to Strike the Second Davis Declaration is otherwise denied.

*C. Shults Declaration*

In opposition to Castle Hill's motion for summary judgment, VGT submits the declaration of VGT senior software engineer, Chris Shults. *See* [Doc. 239-153]. Like the Second Davis Declaration, Castle Hill asks the court to strike the Shults Declaration, arguing the declaration includes improper expert opinions and opinions not based on personal knowledge.[7]

[7] Castle Hill also objects to the Shults Declaration as containing "information that VGT failed to provide in discovery." [Doc. 272, p. 3]. However, Castle Hill does not identify what information, if any, included in the Shults Declaration was not disclosed during discovery and therefore the court overrules Castle Hill's objection to the extent based on failure to disclose.

Castle Hill specifically identifies paragraphs 6, 9, and 12 of the declaration as containing improper expert opinion—specifically that VGT's confidential information, if known, would be helpful to VGT's competitors in the class II gaming market. *See* [Doc. 272, p. 3]. The court agrees. Shults's statements that VGT's "know how," if disclosed to class II competitors, would be of benefit to those competitors arise from Shults's professional experience and therefore "fall[] squarely within the scope of Rule 702 and thus by definition outside of Rule 701." *James River Ins. Co.*, 658 F.3d at 1215 (quoting. *Smith*, 640 F.3d at 365). Additionally, the court strikes Shults's paragraph 10 statement that "[d]eveloping entertaining win presentations is important to game performance" and paragraph 11 statements that:

> **[REDACTED]** In Class II game development, an important metric is how long it takes for the reels to start spinning after the player presses the play button. **[REDACTED]**

[Doc. 272-4, pp. 5-6, ¶ 11]. These statements are expert opinions—not statements of fact—and require technical or other specialized knowledge. Thus, Rule 702, rather than Rule 701, is implicated, and the statements are stricken.

Castle Hill also objects to paragraphs 7 and 8 because VGT failed to establish Shults's personal knowledge of the topics as required by Federal Rule of Evidence 602. Paragraphs 7 and 8 relate to VGT's investigation of customer reactions to jackpot frequency. Castle Hill argues Shults does not establish that he was involved in the investigation or that his participation in the investigation provided the basis for his averments. *See* [Doc. 272, p. 4]. However, Shults avers that he is a senior software engineer and has worked as a software engineer for VGT since 2007. Shults's responsibilities include developing EGM and server software for VGT's class II systems, and he has general familiarity with the design and functionality of VGT's class II gaming systems.

[Doc. 272-4, p. 3, ¶¶ 1-2]. **[REDACTED]** is persuaded that paragraphs 7 and 8 reflect matters of which Shults would likely have personal knowledge by virtue of his position and experience at VGT. Castle Hill's objections to paragraph 7 and 8 are overruled.

Accordingly, the court grants Castle Hill's Motion to Strike the Shults Declaration as to the above-referenced portions of paragraphs 6 and 9-12. The Motion to Strike the Shults Declaration is otherwise denied.

*D. North Declaration*

Finally, Castle Hill asks the court to strike the Declaration of Ryan North, product marketing manager of Aristocrat Technologies, Inc., parent corporation of VGT. *See* [Doc. 239-155]. Therein, North avers as follows:

> In both my professional and personal capacities, I spend a significant amount of time in casinos. Based on this experience and my general knowledge of VGT's product strategy, I estimate that the majority of VGT's mechanical reel games in the standard-sized LS cabinet in casinos today do not have edge lighting.

[*Id.* p. 1, ¶ 2].

Castle Hill first argues North's statement is "plainly nothing more than speculative guesswork, which is neither appropriate nor sufficient for a declaration in opposition to a summary judgment motion." [Doc. 272, p. 5]. Rule 701 permits a lay witness to testify in the form of an opinion provided that the opinion is (1) rationally based on the witness's perception; (2) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (3) not based

on scientific, technical, or other specialized knowledge within the scope of Rule 702. FED. R. EVID. 701. Thus, a lay witness may offer opinions relating to matters such as size, weight, or distance "that cannot be described factually in words apart from inferences." FED. R. EVID. 701 advisory committee notes (quoting *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1196 (3d Cir. 1995)).

North avers that his opinion is based on his experience and general knowledge obtained through his employment with VGT. Thus, the opinion is rationally based on North's perceptions. Nor is the opinion based on scientific, technical or other specialized knowledge. Finally, to the extent Castle Hill argues that opinion is not helpful to the trier of fact, the objection bears on the weight, not admissibility, of the evidence, particularly as this matter will be tried to the court in a bench trial. Based on the foregoing, the court concludes North's estimate falls within one of the "endless number of items" that cannot be described apart from inferences and Castle Hill's speculation objection is overruled.[8]

Finally, Castle Hill argues that it requested information regarding "the number and location of the games and the various cabinet configurations," including "jukebox lighting," in discovery, but that VGT failed to provide responsive information. Castle Hill argues VGT should be precluded from offering the evidence now. However, North did not execute his declaration as a corporate designee of VGT, but rather, offers his opinion in an individual capacity. North's opinion is not binding on VGT and therefore not contrary to the prior Rule 30(b)(6) deposition testimony. The court will consider North's opinion and assign it the appropriate weight. Castle Hill's motion to strike the North Declaration is denied.

---

[8] The court notes VGT's Rule 30(b)(6) corporate representative testimony that VGT's systems prohibit VGT from tracking the number of machines that have lights. *See* [Doc. 272-5].

## III. Conclusion

WHEREFORE, Defendants' Motion to Strike Declarations of Stacy Friedman and Josh Davis Submitted in Support of Plaintiff's Motion for Partial Summary Judgment [Doc. 237] and Defendants' Motion to Strike Declarations Submitted in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment [Doc. 273] are granted in part and denied in part. The parties may file proposed redactions, or state their non-objection to public filing of this order, no later than June 21, 2019.

DATED this 7th day of June, 2019.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE